THE WHEATON LAW GROUP
Peter L. Haviland (State Bar No. 144967)
havilandp@thewheatongroup.com
1507 7th Street, Suite 318
Santa Monica, CA 90401
Telephone: (310) 309-7823

Attorneys for Defendants and Counter-Complainants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MGA Entertainment Inc., | CASE NO. 2:20-cv-11548-JVS-AGR |
| Plaintiff, | **DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM** |
| vs. | |
| Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC, and Does 1-10 inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |
| Grand Hustle, LLC, Pretty Hustle, LLC and OMG Girlz LLC, | |
| Counterclaimants, | |
| MGA Entertainment Inc., Isaac Larian, and Does 1-10 inclusive, | |
| Counterdefendants. | |

1

**PRELIMINARY STATEMENT TO ANSWER AND COUNTER-CLAIM**

1.  Defendants Grand Hustle LLC, incorrectly sued as Clifford "T.I." Harris, and Pretty Hustle LLC, also doing business as the OMG Girlz LLC, incorrectly sued as Tameka "Tiny" Harris, answer and counter-claim against MGA Entertainment Inc., a toy and doll producer -- and its controlling owner, Isaac Larian.[1]

2.  Larian and MGA ("MGA") have engaged in both cultural appropriation and outright theft of the intellectual property, brand and image of a musical recording group of young multicultural women known as the OMG Girlz. After MGA announced years ago that they would create a line of dolls modelled after the OMG Girlz, MGA has now done so, advertising its toys as "OMG" Dolls. But MGA has released the OMG Dolls with no compensation or recognition to the OMG Girlz' creators.

3.  A comparison of examples of the images of the young multicultural women who comprise the OMG Girlz with photos of the OMG Dolls modelled after them makes clear that the OMG Dolls were intentionally designed to trade on the OMG Girlz likeness and brand.



---

[1] Named Defendants "Clifford "T.I." Harris, Tameka "Tiny" Harris and the "OMG Girlz LLC", to avoid waiver of any rights despite being incorrectly named, join in this answer and mandatory counterclaim while not conceding personal jurisdiction.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28










3

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

4.     In a vast advertising campaign on You Tube and other social media outlets, animated OMG Dolls – sometimes also identified as "L.O.L. Dolls" – sing and perform as young musical artists strikingly similar to the OMG Girlz.  The animated OMG Dolls copy the OMG Girlz' distinctive hair styles and hair colors, fashion dresses and outfits, and musical recordings in hip-hop genre released by the OMG Girlz.  By this marketing, MGA drives consumers to purchase its OMG Dolls on-line and at retail outlets—toys which similarly merchandise and copy the trade dress, name and brand of the OMG Girlz without consent.  A Google search for "OMG Girlz dolls" directs consumers to MGA "L.O.L" and "OMG" products and videos.

5.     In or around 2009, Grand Hustle LLC and Pretty Hustle LLC also doing business as OMG Girlz LLC ("Grand Hustle and Pretty Hustle") developed a recording and performance group of three young women of color that they named the OMG Girlz.

6.     Grand Hustle and Pretty Hustle released OMG Girlz musical recordings and promoted OMG Girlz music performance tours.  Recordings and performances by the OMG Girlz are currently publicly available through all Digital Music platforms including, but not limited to, Spotify, Apple Music, Soundcloud, Amazon, Music, YouTube, and all social media platforms.  The OMG Girlz brand has received widespread recognition through their performances, which prominently feature unique fashion design, visual image and hair styling blatantly copied by MGA's OMG Dolls.



DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

7.      The OMG Girlz have been featured on both Black Entertainment Television's ("BET") "The Tiny & Toya Show," where they first appeared in 2009, and VH1's "T.I. & Tiny: The Family Hustle."  Their release of the single, "GUCCI THIS (GUCCI THAT)," and their performance on the "SCREAM Tour," garnered them nationwide popularity.

8.      The OMG Girlz' first video, "GUCCI THIS (GUCCI THAT)," received 15,504,509 views, was an instant hit on the Top 10 list of BET's 106 & Park http://www.vevo.com/watch/the-omg-girlz/gucci-this-gucci-that/USUV71200123).  Their viral video for the song, "Pretty Girl Bag," also gained 6,083,206 million views on YouTube.  Lady Gaga proclaimed to her 20 million- plus followers via twitter that she was "obsessed with these little cuties."

9.      "Tiny and Toya," an American reality series featured the OMG Girlz and drew in more than three million viewers for its debut episode, the highest-rated series debut in BET history.

10.     "T.I. & Tiny: The Family Hustle," which premiered on VH1 on December 5, 2011, also featured the OMG Girlz and had aired more than 100 episodes as of May of 2017.

11.     MGA noted the commercial success of the OMG Girlz.  At a "Saving our Daughters Bratz Toy Giveaway" held at Radio One Atlanta on December 18, 2010, MGA publicly announced MGA's specific intention to launch a line of dolls modelled on the OMG Girlz.

12.     Grand Hustle and Pretty Hustle did not object to merchandising the OMG Girlz with OMG dolls pursuant to an industry-standard licensing agreement. Grand Hustle and Pretty Hustle believed that all children could benefit from exposure to dolls resembling the OMG Girlz and the positive image of girls of color they represented.

13.     But no agreement was reached between MGA and Grand Hustle and Pretty Hustle in 2010 or thereafter.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

14.     In 2019, MGA went forward with release of a line of OMG dolls, copying the unique name, image and trade dress of the OMG Girlz without permission from the creators.

15.     Fans of the OMG Girlz and consumers seeing the OMG Dolls and viewing the on-line animated videos have brought this issue to the attention of Grand Hustle and Pretty Hustle.  In turn, Grand Hustle and Pretty Hustle demanded that MGA properly license MGA's merchandising of the OMG Girlz.  Grand Hustle and Pretty Hustle made this demand to MGA privately and confidentially, hoping to avoid litigation and to avoid damage to a line of dolls modelled after the OMG Girlz.

16.     MGA, by contrast, responded arrogantly and in bad faith.  Rather than discuss a licensing agreement, MGA instead pre-emptively filed a lawsuit claiming that they alone owned the name and image of the OMG Dolls, seeking a federal Court's approval of their misappropriation of the OMG Girlz' brand.

17.     Grand Hustle and Pretty Hustle remain committed to a fair and equitable resolution to facilitate distribution of dolls that look like the OMG Girlz and give all children a positive example of young Black women.

18.     But because MGA and Larian continue to refuse to engage in any good faith discussions and seek to misuse the Courts to falsely claim that MGA can simply steal the OMG Girlz name and image without compensation, Grand Hustle and Pretty Hustle have no choice but to respond.

## CULTURAL APPROPRIATION

19.     Cultural appropriation has been defined as "the taking – from a culture that is not one's own – of intellectual property, cultural expressions or artifacts, history and ways of knowledge and profiting at the expense of the people of that culture."  (Bruce Ziff & Pratima V. Rao, *Introduction to Cultural Appropriation:  A Framework for Analysis*, in BORROWED POWER: ESSAYS ON CULTURAL

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

APPROPRIATION 1, 1 (Bruce Ziff & Pratima V. Rao eds., 1997) (quotation omitted).)

20.   In its broadest sense, "cultural appropriation" means "taking an existing cultural form from one social group and replaying it in another with different meanings or practices: perhaps taking the tune and playing it in a different key or at a different tempo so that it becomes something different, yet still the same." (Sally Engle Merry, *New Direction: Law, Culture, and Cultural Appropriation*, 10 YALE J.L. & HUMAN. 575, 585 (1998).) "The concept of cultural appropriation has been developed in the field of intellectual property to refer to processes by which dominant groups take, and often profit from, the artistic, musical, and knowledge productions of subordinate groups. (*Id.* at 585-86.)

21.   "Cultural appropriation . . . is harmful to the source community whose cultural product is appropriated by another group." (Sari Sharoni, *The Mark of a Culture: The Efficacy and Propriety of Using Trademark Law to Deter Cultural Appropriation*, 26 FED. CIR. B.J. 407, 413 (2016).) "[D]ominant cultures' appropriation of non-disparaging cultural products often causes source communities to suffer an economic harm because they are generally not compensated for the commercial use of their product, and they may even be disabled from using their own cultural product in commerce." (*Ibid.* (footnote omitted).) "When the appropriator is a dominant group in society, and the source community is subordinate, the appropriator's assumption of control over the meaning of the source community's product is said to entrench 'systems of dominance and control that have been used to colonize, subdue and destroy' the source community." (*Id.* at 414 (quotation omitted).) "The 'taking of a peoples' cultural symbols is akin to a taking of control over the people' because the people is no longer able to define itself and establish its own identity." (*Ibid.* (footnote omitted).)

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

22.   "[T]he process of cultural appropriation as it relates to Black music involves not so much a 'borrowing' as a virtual 'strip-mining' of Black musical genius and esthetic innovation."  (Perry A. Hall, *African-American Music Dynamics of Appropriation and Innovation*, *in* BORROWED POWER at 33.)

23.   MGA's stealing from, rather than collaborating with the Black creators who over many years worked to develop the OMG Girlz brand, is a classic example of cultural appropriation.  This conduct is legally actionable for MGA's unlawful copying and dilution of the OMG Girlz brand, misappropriation of name and likeness, unfair competition and fraud.

## ANSWER TO COMPLAINT

1.   Defendants deny with respect to each and every allegation of MGA's complaint that Clifford "T.I." Harris and Tameka "Tiny" Harris individually are proper parties to this action, but otherwise:

2.   Admit that MGA has filed suit claiming intellectual property rights to the OMG Dolls but otherwise deny every allegation in paragraph 1.

3.   Admit the allegations in paragraph 2.

4.   Deny the allegations in paragraph 3.

5.   Deny the allegations in paragraph 4.

6.   Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 5.

7.   Admit that Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC also doing business as OMG Girlz LLC hold the intellectual property (and all related rights) to the OMG Girlz but otherwise deny the allegations in paragraph 6.

8.   Admit that OMG GIRLZ LLC is a Delaware limited liability company but otherwise deny the allegations of paragraph 7.

9.   Deny the allegations in paragraph 8.

10.   Deny the allegations in paragraph 9.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

11.     Deny the allegations in paragraph 10.

12.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 11.

13.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 12.

14.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 13.

15.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 14.

16.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 15.

17.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 16.

18.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 17.

19.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 18.

20.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 19.

21.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 20.

22.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 21.

23.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 22.

24.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 23.

25.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 24.

26.     Admit that Defendants' counsel sent a confidential letter plainly marked "PRIVILEGED AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY" to Isaac Larian and MGA seeking a response concerning, *inter alia,* a licensing agreement.  Defendants otherwise object to the characterization of words taken out of context from the settlement letter, and on that basis deny the allegations in paragraph 25.

27.     Deny the allegations in paragraph 26.

28.     Admit that Defendants' counsel sent a confidential letter plainly marked "PRIVILEGED AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY" to Isaac Larian and MGA seeking a response concerning, *inter alia,* a licensing agreement.  Defendants otherwise object to the characterization of words taken out of context from the settlement letter, and on that basis deny the allegations of paragraph 27.

29.     Admit that Defendants' counsel sent a confidential letter plainly marked "PRIVILEGED AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY" to Isaac Larian and MGA seeking a response concerning, *inter alia,* a licensing agreement.  Defendants otherwise object to the characterization of words taken out of context from the settlement letter, and on that basis deny the allegations in paragraph 28.

30.     Deny the allegations in paragraph 29.

31.     Deny the allegations in paragraph 30.

32.     Deny the allegations in paragraph 31.

33.     Deny OMG Girlz are popularly known as "Officially Miss Guided" and deny the remaining allegations of paragraph 32.

34.     Deny the allegations in paragraph 33.

35.     Deny the allegations in paragraph 34.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

36.     Deny the allegations in paragraph 35.

37.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 36.

38.     Deny the allegations in paragraph 37.

39.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 38.

40.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 39.

41.     Deny the allegations in paragraph 40.

42.     Deny the allegations in paragraph 41.

43.     Lack information sufficient to form a belief and on that basis deny the allegations in paragraph 42.

44.     Admit the allegations in paragraph 43.

45.     Deny the allegations in paragraph 44.

46.     Deny the allegations in paragraph 45.

47.     Deny the allegations in paragraph 46.

48.     Deny the allegations in paragraph 47.

49.     Incorporate paragraphs 1-24 of the Preliminary Statement and their responses to paragraphs 1 through 48 of the Complaint.

50.     Admit that Counterclaimants Grand Hustle and Pretty Hustle also doing business as OMG Girlz LLC hold the intellectual property (and all related rights) to the well-known OMG Girlz name and the distinctive style and visual appearance of the OMG Girlz members and the trade dress associated with the OMG Girlz name, brand, image and style.

51.     Admit that counsel for the Defendants sent a confidential letter plainly marked "PRIVILEGED AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY" to Isaac Larian and MGA seeking a response concerning, *inter alia,* a licensing agreement.  Defendants otherwise object to the

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

characterization of words taken out of context from the settlement letter, and on that basis deny the allegations of paragraph 50.

52.    Admit that MGA asserts the denial stated in paragraph 51.

53.    Admit that counsel for the Defendants sent a confidential letter plainly marked "PRIVILEGED AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY" to Isaac Larian and MGA seeking a response concerning, *inter alia,* a licensing agreement.  Defendants otherwise object to the characterization of words taken out of context from the settlement letter, and on that basis deny the allegations of paragraph 52.

54.    Lack information sufficient to form a belief and on that basis deny.

55.    Admit that MGA seeks the declaration it asserts in Paragraph 54.

## AFFIRMATIVE DEFENSES

Defendants allege the following affirmative defenses to the claim set forth in MGA's Complaint.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.    Plaintiff's claim is barred in whole or in part because the Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Priority)

2.    Plaintiff's claim is barred by Defendants' senior rights.

### THIRD AFFIRMATIVE DEFENSE
### (Statute of Limitations and/or Laches)

3.    Plaintiff's claim is barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.

**FOURTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

4.    Plaintiff's claim is barred, in whole or in part, by the doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

**(Waiver)**

5.    Plaintiff's claim is barred, in whole or in part, by the doctrine of waiver.

**SIXTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

6.    Plaintiff's claim is barred, in whole or in part, by the doctrine of unclean hands.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Standing)**

7.    Plaintiff's claim is barred, in whole or in part, because Plaintiff lacks standing.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Failure to name necessary parties)**

8.    Plaintiff has sued the incorrect parties and has failed to include necessary parties.

**NINTH AFFIRMATIVE DEFENSE**

**(Lack of Personal Jurisdiction)**

9.    Plaintiff's claims are barred by lack of personal jurisdiction over the named Defendants.

**RESERVATION OF RIGHTS**

10.    Defendants reserve their right to assert additional affirmative defenses in the event Defendants learn, obtain, or discovers facts or information upon which

1   such affirmative defenses may be based, including information learned or obtained

2   through discovery or further investigation.

**PRAYER FOR RELIEF**

4        WHEREFORE, Defendants pray for judgment as follows:

5        1.      That Plaintiff take nothing by reason of its Complaint.

6        2.      That judgment be rendered in favor of Defendants;

7        3.      That Defendants recover their reasonable costs of suit, fees, interest,

8   and attorneys' fees incurred in defending this action; and

9        4.      For such other and further relief as the Court deems just and proper.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

## COUNTERCLAIMS

1.    Counterclaimants GRAND HUSTLE, LLC (sued incorrectly as Clifford "T.I." Harris) and PRETTY HUSTLE, LLC also doing business as OMG Girlz LLC (sued incorrectly as Tameka "Tiny" Harris), (collectively "Grand Hustle and Pretty Hustle" or the "OMG Parties") incorporate by reference paragraphs 1-23 of the "Preliminary Statement" in this pleading, and additionally allege as follows.

### NATURE OF THE ACTION

2.    Through hard work and creativity, Grand Hustle and Pretty Hustle created and developed a unique, distinctive and original musical performing group called the "OMG Girlz".  The OMG Girlz have released music singles, music videos, performed live on tour and made television appearances.  They continue to enjoy a significant fan base.  Grand Hustle and Pretty Hustle hold the intellectual property rights, and all related rights, to the well-known name and striking visual image and likeness of the OMG Girlz.

3.    Counterdefendant MGA Entertainment Inc. ("MGA") is a multi-billion dollar, privately-held corporation controlled by counterdefendant Isaac Larian, which manufactures toys, including dolls.  (MGA and Larian are collectively referenced herein as "MGA").

4.    In 2010, MGA publicly announced that it would launch a line of dolls modelled on the OMG Girlz.  MGA never entered into a licensing agreement with Grand Hustle and Pretty Hustle and has refused even to discuss any form of compensation for this misappropriation.

5.    Instead, in 2019, MGA unilaterally launched its infringing OMG Dolls.  MGA's OMG Dolls bear an unmistakable likeness to the OMG Girlz in name, visual appearance, depiction of the girl dolls as musical performers and imitation of the OMG Girlz' musical songs in animated videos songs and in certain OMG Dolls toys that can play recorded songs.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

6.      The OMG Dolls line received the Doll of the Year award at 2020's Annual Toy Industry Awards, and on information and belief MGA has substantially profited from this line.

## PARTIES

7.      Counterclaimant GRAND HUSTLE, LLC is a limited liability corporation with its principal place of business in the State of Georgia.

8.      Counterclaimant PRETTY HUSTLE, LLC, also doing business as OMG Girlz LLC, is a limited liability corporation with its principal place of business in the State of Georgia.

9.      Counterdefendant MGA ENTERTAINMENT INC. is a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California.

10.     Upon information and belief, Counterdefendant ISAAC LARIAN is a citizen of the State of California and otherwise conducts business in Los Angeles County, California.

11.     Upon information and belief, Counterdefendants DOES 1 through 10 are individuals and/or entities whose true names and capacities are presently unknown to Counterclaimants.  At such time as said Counterdefendants' true names and capacities become known to Counterclaimants, Counterclaimants will seek leave to amend this Counterclaim to insert said true name and capacities of such individuals and/or entities.

12.     Upon information and belief, at all times relevant herein, Counterdefendants, including Does 1 through 10, inclusive, and each of them, were and still are the partners, agents, employers, and/or employees of the other named Counterdefendants, and each of them; that in so doing the things alleged, said Counterdefendants were acting within the course and scope of said partnership, agency, or employment; and that in so doing the things alleged, said

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

1 Counterdefendants were acting at all times with the knowledge, consent, and

2 authorization of each of the other Counterdefendants.

3       13.     Upon information and belief, at all times relevant herein,

4 Counterdefendants, including Does 1 through 10, inclusive, and each of them, are

5 the alter egos of each other; are characterized by a unity of interest in ownership

6 and control among themselves such that any individuality and separateness between

7 them have ceased; are a mere shell instrumentality and conduit through which

8 Counterdefendants carried on their business by use of each other's names;

9 completely controlled, dominated, managed, and operated each other's business to

10 such an extent that any individuality or separateness of the Counterdefendants does

11 not and did not exist; completely failed to observe any corporate formalities; and

12 intermingled the assets of each other, and other entities affiliated with them, to suit

13 the convenience of themselves and in order to evade legal obligations and liability.

**JURISDICTION AND VENUE**

14

15       14.     This Court has federal subject matter jurisdiction pursuant to 28

16 U.S.C. sections 1331 and 1338(a) because it involves claims arising under the

17 Lanham Act, 15 U.S.C. section 1051 et seq.

18       15.     The Court has personal jurisdiction over the Counterdefendants

19 because each of them is domiciled in and/or regularly transacts or solicits business

20 in the State of California.

21       16.     Pursuant to 28 U.S.C. section 1391, venue is proper in this district

22 because: (1) all Counterdefendants reside in this State and one Counterdefendant

23 resides in this District; and/or (2) a substantial part of the events or omissions

24 giving rise to the claim occurred in this District.

**FIRST COUNTERCLAIM**

25

**(Violation of the Lanham Act, 15 U.S.C. § 1125)**

26

27       17.     Counterclaimants repeat and reallege paragraphs 1 through 23 of the

28 "Preliminary Statement" in this pleading as if fully set forth herein.

18.     Grand Hustle and Pretty Hustle created and developed the OMG Girlz as a unique, distinctive and original musical performing group and the OMG Girlz have achieved nationwide fame and popularity.

19.     Grand Hustle and Pretty Hustle hold the intellectual property rights (and all related rights) to the well-known OMG Girlz name, the distinctive style and visual appearance of the OMG Girlz, and the trade dress associated with the OMG Girlz name, brand, image and style.  The trade dress includes the names and images associated by fans with the OMG Girlz, including, without limitation: (i) the acronym "OMG" combined with "Girlz", a name trademarked to identify a young, female ("girls") musical recording and performance group; (ii) unique hair colors, hair styling and wardrobes creating a distinctive image for the multicultural OMG girls; (iii) music with female vocals and unique rhythm and cadence recorded and released in songs by the OMG Girlz; (iv) images of the OMG Girlz on musical performance tours and in celebrity events as depicted in their television performances and social media releases.

20.     MGA's infringing OMG Dolls copy this trade dress in physical toys and animated videos which MGA has widely disseminated and continues to disseminate.

21.     MGA's infringing OMG Dolls have commercially exploited the existing trade dress, name, image and brand popularity of the OMG Girlz.

22.     On information and belief, Isaac Larian is the principal owner of privately-owned MGA, and Larian is principally responsible as the driving force for making the decisions to distribute OMG Dolls that infringe on the OMG Girlz brand.  On information and belief, Isaac Larian is also principally responsible and the driving force for deciding not to grant any license or recognition to the Black creators of the OMG Girlz brand.  Accordingly, on information and belief, Larian has personal liability for the unlawful acts alleged here, which he has personally authorized and directed.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

23.     MGA's infringing OMG Dolls use a trade name and trade dress that is substantially similar to the OMG Girlz trade name and trade dress – without the OMG Parties' consent.

24.     MGA has commercially exploited the OMG Girlz trade name and/or trade dress in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the infringing OMG Dolls by the OMG Girlz.  Such use constitutes, without limitation, infringement of trade dress, dilution of the OMG Girlz brand, and false designation of origin.

25.     OMG Girlz' fans and consumers have been confused and misled by MGA regarding the source, sponsorship, affiliation, and/or approval of the infringing OMG Dolls, and there exists a substantial probability of the continued expansion and growth of such confusion should MGA be permitted to continue to operate unchecked.

26.     MGA's misuse of the OMG Parties' intellectual property has caused dilution of the OMG Parties' brand.

27.     MGA has acted willfully, with malice and in conscious disregard of the OMG Parties.

28.     The OMG Parties seek damages including disgorgement of MGA's profits associated with its sale of the infringing OMG Dolls, a reasonable royalty for such sales, enhanced damages, and reasonable attorneys' fees and costs in amounts to be proven at trial.

## SECOND COUNTERCLAIM

### (Misappropriation of Name or Likeness, *Cal. Civ. Code* § 3344)

29.     Counterclaimants repeat and reallege paragraphs 1 through 23 of the Preliminary Statement and 1 through 28 of this Counterclaim as if fully set forth herein.

30.     The OMG Parties have been assigned the intellectual property rights (and all related rights) to the well-known OMG Girlz name and likeness and the

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

distinctive style and visual appearance of each OMG Girlz member and the trade dress associated with the OMG Girlz name, brand, image and style.

31.    MGA has knowingly sold, offered for sale and manufactured the infringing OMG Dolls which bear the names and/or likenesses of the OMG Girlz. MGA has also used said names and/or likenesses in advertising for MGA's goods.

32.    MGA acted without consent to use the names and/or likenesses of the OMG Girlz on any items and/or in connection with advertising for any goods.

33.    MGA has violated California Civil Code section 3344 by knowingly appropriating, using and exploiting the names and/or likenesses of the OMG Girlz on the infringing OMG Dolls which MGA has sold, offered for sale, manufactured and/or distributed or in advertising for any goods for MGA's commercial benefit without the consent of the OMG Parties.

34.    As a result of the infringing activities, MGA has deprived the OMG Parties of the right to control the time, place, terms and manner by which to publicize said parties' special talents.

35.    MGA has acted willfully, with malice and in conscious disregard of the OMG Parties.

36.    The OMG Parties will suffer irreparable harm and injury as a result of MGA's infringing activities.

37.    The OMG Parties also seek reasonable attorneys' fees and costs.

## THIRD COUNTERCLAIM

### (Common Law Misappropriation of Name or Likeness)

38.    Counterclaimants repeat and reallege paragraphs 1 through 23 of the Preliminary Statement and 1 through 37 of this Counterclaim as if fully set forth herein.

39.    The OMG Parties hold the intellectual property rights (and all related rights) to the well-known OMG Girlz name and likeness and the distinctive style

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

and visual appearance of each OMG Girlz member and the trade dress associated with the OMG Girlz name, brand, image and style.

40. MGA has knowingly sold, offered for sale and/or manufactured the infringing OMG Dolls which bear the names and/or likenesses of the OMG Girlz. MGA has also used said names and/or likenesses in advertising for MGA's goods.

41. MGA has used these likenesses without consent.

42. MGA has violated California Civil Code section 3344 by knowingly appropriating, using and exploiting the names and/or likenesses of the OMG Girlz on the infringing OMG Dolls which MGA sold, offered for sale, manufactured and/or distributed or in advertising for any goods for MGA's commercial benefit without the consent of the OMG Parties.

43. As a result of the infringing activities, MGA has deprived the OMG Parties of the right to control the time, place, terms and manner by which to publicize said parties' special talents.

44. MGA acted willfully, with malice and in conscious disregard of the OMG Parties.

45. Due to MGA's conduct, the OMG Parties have suffered and continue to suffer irreparable harm.  Unless this Court enjoins MGA's activities, the OMG Parties will continue to suffer irreparable harm and injury and accordingly seek to enjoin MGA, absent an appropriate licensing agreement, from further acts as alleged herein, and seek all available damages, fees and costs.

## FOURTH COUNTERCLAIM

### (Unfair Competition, *Cal. Bus. & Prof. Code* § 17200 et seq.)

46. Counterclaimants repeat and reallege paragraphs 1 through 23 of the Preliminary Statement and 1 through 45 of this Counterclaim as if fully set forth herein.

47. California's Statutory Unfair Competition Law, Business & Professions Code section 17200, et seq. ("UCL") proscribes any unlawful, unfair or

1  fraudulent business act or practice and unfair, deceptive, untrue or misleading
2  advertising.

3      48.    An unlawful business practice includes anything that can properly be
4  called a business practice and that at the same time is forbidden by law.  A business
5  practice is fraudulent within the meaning of section 17200 if members of the public
6  are likely to be deceived.

7      49.    The UCL protects the public's right to protection from fraud, deceit,
8  and unlawful conduct.

9      50.    MGA's willful, knowing and unauthorized promotion, advertisement,
10 sale and offering for sale of the infringing OMG Dolls is causing confusion as to
11 the source of the goods; is causing harm to the OMG Parties' goodwill; and is an
12 unlawful appropriation of the OMG Parties' exclusive rights in the OMG mark and
13 trade dress.

14     51.    MGA's conduct constitutes unfair trade practices and unfair
15 competition under the UCL.

16     52.    MGA acted willfully, with malice and in conscious disregard of the
17 OMG Parties.  As such, the OMG Parties are entitled to appropriate damages in an
18 amount to be proven at trial.

19     53.    Due to MGA's conduct, the OMG Parties have suffered and continue
20 to suffer irreparable harm.  Unless this Court enjoins MGA's activities, the OMG
21 Parties will continue to suffer irreparable harm and injury and accordingly seek an
22 injunction, absent an appropriate licensing agreement, against MGA from
23 committing future unlawful acts as alleged here.

**FIFTH COUNTERCLAIM**

**(Common Law Unfair Competition)**

26     54.    Counterclaimants repeat and reallege paragraphs 1 through 23 of the
27 Preliminary Statement and 1 through 53 of this Counterclaim as if fully set forth
28 herein.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

55.     The same facts that support a claim for Trade Dress Infringement, False Designation of Origin, statutory and common law misappropriation of name and likeness, and statutory unfair competition also state a claim for common law unfair competition.

56.     MGA's conduct, as detailed above, constitutes unfair competition.

57.     As a result of MGA's activities, the OMG Parties have been damaged in an amount not yet determined or ascertainable.

58.     MGA acted willfully, with malice and in conscious disregard of the OMG Parties.  As such, the OMG Parties are entitled to appropriate damages in an amount to be determined at trial.

59.     Due to MGA's conduct, the OMG Parties have suffered and continue to suffer irreparable harm.  Unless this Court enjoins MGA's activities, the OMG Parties will continue to suffer irreparable harm and injury and accordingly seek an injunction, absent an appropriate licensing agreement, to prevent MGA from committing future unlawful acts as alleged here.

## SIXTH COUNTERCLAIM

### (Fraud)

60.     MGA publicly announced and informed the OMG Parties that it intended to release a line of dolls based on the OMG Girlz in collaboration with the OMG Parties, pursuant to a fair and industry-standard licensing agreement.  On information and belief, these representations, and each of the allegations of fraud herein, were made with the authorization of Isaac Larian individually as the driving force of MGA's intention to release dolls based on the OMG Girlz and the fraudulent misrepresentations made.

61.     The OMG Parties reasonably relied on MGA's representations, deferring any initiative to release OMG Girlz Dolls pending MGA's preparedness to move forward with such merchandising.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

62.     MGA's representations were knowingly false when made, and MGA has proceeded to release OMG Dolls without any licensing agreement with the OMG Parties.

63.     The OMG Parties have been damaged by MGA's false misrepresentations.  MGA has profited by the sales of its OMG Dolls without industry standard compensation to the OMG Parties; the OMG Parties have lost revenues by their reasonable reliance on MGA's promises; and the OMG Parties' goodwill with the OMG Girlz fan base has been damaged by the release of unauthorized OMG Girlz merchandise by MGA.

64.     MGA's – including Isaac Larian's – conduct has been willful and malicious and entitles the OMG Parties to recovery of both compensatory and punitive damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants respectfully pray that this Court grant the following relief:

1.     A permanent injunction restraining, enjoining and prohibiting the Counterdefendants from manufacturing, distributing, advertising or selling the infringing OMG Dolls without entering into a valid licensing agreement;

2.     Compensatory and/or statutory and exemplary or punitive damages;

3.     Reasonable attorneys' fees and costs;

4.     An award of interest, including pre-judgment interest, on the foregoing sums; and

5.     Such other and further relief that this Court deems to be just and proper.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

1

## DEMAND FOR JURY TRIAL

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, demand is
3   hereby made for a trial by jury in the above-styled action of all issues triable by
4   jury.

5

6    DATED: February 22, 2021                    Peter L. Haviland

7
                                        By: /s/ Peter L. Haviland
8                                       Attorneys for Defendants and Cross-
9                                       Complainants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM