UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motions to Dismiss and Strike**

    Plaintiffs/ Counter-Defendants MGA Entertainment, Inc. ("MGA Entertainment") and Isaac Larian ("Larian") (together, "Plaintiffs" or "Counter-Defendants") filed a motion to dismiss the First Amended Counterclaims ("FACC") of Defendants/ Counter-Claimants Grand Hustle, LLC ("Grand Hustle"), Pretty Hustle, LLC ("Pretty Hustle"), and OMG Girlz, LLC ("OMG Girlz") (collectively, "Defendants" or "Counter-Claimants"). Mot., Dkt. No. 33. Counter-Defendants also filed a motion to strike various paragraphs of Counter-Claimants' answer. Mot., Dkt. No. 31. Counter-Claimants filed a consolidated opposition. Opp'n., Dkt. No. 39. Counter-Defendants filed a response. Reply, Dkt. No. 42.

    After the Court posted its tentative order, Plaintiffs requested a hearing. Hr'g Req., Dkt. No. 46. Defendants then responded to the request. Hr'g Resp., Dkt. Nos. 47 and 49. The Court finds that no hearing is necessary at this time, but addresses the arguments made below. L.R. 7-18.

    For the following reasons, the Court **DENIES in part and GRANTS in part the motion to dismiss , DENIES both requests for judicial notice and GRANTS the motion to strike.** Defendants have thirty days to replead their trademark dilution counterclaim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

## I. Background

**A. Factual Allegations in the Complaint**

Plaintiffs filed the present action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that determines that the name and mark "L.O.L. Surprise! O.M.G." and the associated toy products do not infringe on the intellectual property ("IP") rights of Defendants T.I. and Tameka Harris, and OMG Girlz, and/or their "OMG Girlz" mark. See FAC, Dkt. No. 16 ¶ 1.

MGA Entertainment is a designer, developer, marketer, and distributor of children's toys. Id. ¶ 13. Some of MGA Entertainments's most popular and successful products are its "L.O.L. Surprise!" toys and dolls. Id. ¶ 14. MGA Entertainment has federal registrations for the "L.O.L. SURPRISE!" word mark and logo mark for toys and playthings. Id. ¶ 15. MGA Entertainment also owns the unregistered rights, including trade dress rights, in the L.O.L. Surprise! products. Id. The L.O.L. Surprise! marks have been continuously in use in commerce in connection with L.O.L. Surprise! products since October 12, 2016. Id. ¶ 16. The L.O.L. Surprise! YouTube channel has over 1.6 million subscribers and has been viewed over 500 million times. Id. ¶ 17.

In July 2019, MGA Entertainment launched the L.O.L. Surprise! O.M.G. fashion doll line, which MGA Entertainment and its fans refer to as the big sister of L.O.L. Surprise! dolls. Id. ¶ 18. "L.O.L." is an acronym for "Little Outrageous Littles" on the L.O.L. Surprise! products, and "O.M.G." is an acronym for "Outrageous Millennial Girls" on the L.O.L. Surprise! O.M.G. products. Id. "Outrageous Millennial Girls" is spelled out for clarity in MGA Entertainment's branding and advertising. Id

L.O.L. Surprise! has won over 60 toy awards just in 2020, including over a dozen attributable to its to L.O.L. Surprise! O.M.G. line of fashion dolls. Id. ¶ 19. L.O.L. Surprise! O.M.G. was an immediate success and won the Toy Association's Fashion Doll of the Year award the year it launched. Id. ¶ 20. MGA Entertainment has spent substantial time, money, and effort in developing consumer recognition, awareness, and goodwill in the L.O.L. Surprise! products and marks. Id. ¶ 21. The success of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 20-11548 JVS (AGRx)                                      Date   Aug. 27, 2021

Title   MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al.

L.O.L. Surprise! Products is due to MGA Entertainment's marketing, promotional, and distribution efforts, as well as its use of high-quality materials and processes in making the products. Id. ¶¶ 23-24. Members of the public have become familiar with the L.O.L. Surprise! products and marks and have come to associate them exclusively with their source, MGA Entertainment. Id. ¶ 25. MGA Entertainment has gone to great lengths to protect its interests in and to the L.O.L. Surprise! marks, as no one other than MGA Entertainment is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing L.O.L. Surprise! marks without the express written permission of MGA Entertainment. Id. ¶ 26.

On or around December 8, 2020, MGA Entertainment received a cease and desist letter stating that the Harris Parties hold the IP and related rights to "OMG Girlz." Id. ¶ 27. MGA Entertainment further alleges that "OMG Girlz are a disbanded American teenage girl group that peaked at #77 on Billboard's Hot R&B/Hip-Hop Songs chart in 2012." Id. ¶ 28. The cease and desist letters states that "MGA [Entertainment] has sold and advertised toys labeled and styled 'OMG' dolls under its 'LOL Surprise!' line which commercially exploit already existing trade dress, name, image and brand popularity of the 'OMG Girlz.' Your 'OMG' dolls are plainly derivative of and intended to profit from the 'OMG Girlz' image and brand." Id. ¶ 29. The cease and desist letter further states: "[t]his willful and malicious misappropriation subjects you to liability for, without limitation, disgorgement of profits you obtained from the unlawful sales of these infringing products; lost business opportunities for the Harris Parties; punitive damages and attorneys' fees." Id. ¶ 30.

MGA Entertainment also alleges that: (1) OMG Girlz have been disbanded since March 2015, (2) that the USPTO trademark registration number 4374691 for "OMG Girlz" owned by OMG Girlz was cancelled on March 6, 2020, (3) that USPTO trademark registrations for any other "OMG Girlz" trademarks owned by Defendants have been abandoned, and (4) that the OMG Girlz acronym stands for "Officially Miss Guided." Id. ¶¶ 31-34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

### B. Factual Allegations in the FACC

Defendants/ Counter-Claimants filed an Answer and FACC on May 4, 2021. The Counter-Claimants allege the following facts.

In or around 2009, Grand Hustle and Pretty Hustle (also DBA OMG Girlz LLC) developed a recording and performance group of three young Black women that they named the "OMG Girlz." FACC, Dkt. No. 27 ¶ 2. Grand Hustle and Pretty Hustle released and promoted OMG Girlz musical recordings and tours, and the OMG Girlz music is currently available through platforms including Spotify, Apple Music, Soundcloud, Amazon Music, and YouTube. Id. ¶ 3. The OMG Girlz received widespread recognition through their performances, which prominently feature unique fashion design, visual image and hair styling copied by MGA's OMG Dolls. Id. The OMG Girlz have been featured on both Black Entertainment Television's"The Tiny & Toya Show," and VH1's "T.I. & Tiny: The Family Hustle." Id. ¶ 7. The release of their single, "GUCCI THIS (GUCCI THAT)," and their performance on the "SCREAM Tour," garnered them nationwide popularity. Id. The OMG Girlz' first video, "GUCCI THIS (GUCCI THAT)," received 15,504,509 views, was an instant hit on the Top 10 list of Black Entertainment Television's 106 & Park. Id. ¶ 8. Their viral video for the song, "Pretty Girl Bag," also gained 6,083,206 views on YouTube. Id.

At an event held at Radio One Atlanta on December 18, 2010, MGA Entertainment publicly announced that they would create a line of dolls modeled after the OMG Girlz. Id. ¶ 11. Grand Hustle and Pretty Hustle were willing to enter into negotiations for a licensing agreement with MGA Entertainment, but no agreement was reached between. Id. ¶¶ 12, 13. In 2019, MGA Entertainment went forward with a release of a line of OMG dolls, copying the name, image and trade dress of the OMG Girlz without permission from the creators. Id. ¶ 14. Fans of the OMG Girlz and saw the OMG Dolls brought this issue to the attention of Grand Hustle and Pretty Hustle, which privately demanded that MGA Entertainment properly license the dolls. Id. ¶ 15. Rather than discuss a licensing agreement, MGA Entertainment preemptively filed a lawsuit claiming that they alone created and owned the name and image of the OMG Dolls. Id. ¶ 16, 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To resolve a Rule 12(b)(6) motion under Twombly, a court must follow a two-pronged approach. First, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. As such, a pleading must allege facts that permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Twombly, 550 U.S. at 555). A court considering a motion to dismiss may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific; the Court must draw on its experience and common sense, but there is no plausibility where the court cannot "infer more than the mere possibility of misconduct." Id.

### B. Motion to Strike

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law.  Kaiser

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice. SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Sands, 902 F. Supp. at 1165-66 (alteration in original) (internal quotation marks omitted). Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F.Supp.2d 1028, 1033 (C.D.Cal.2002)).

### C. Request for Judicial Notice

Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see Fed. R. Evid. 201(b).

Because factual challenges have no bearing under Rule 12(b)(6), generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cnty. of Santa Clara, 307 F. 3d 1119, 1125 (9th Cir. 2002). There are, however, three exceptions to this rule that do not demand converting the motion to dismiss into one for summary judgment. Lee, 250 F.3d at 688. First, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018), cert. denied sub nom.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

Hagan v. Khoja, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019) (citing Lee, 250 F.3d at 689); see Fed. R. Evid. 201(b).  Second, the Court also may take judicial notice of documents attached to or "properly submitted as part of the complaint." Lee, 250 F.3d at 688. Third, if the documents are "not physically attached to the complaint," they may still be considered if the documents' "authenticity . . . is not contested" and the documents are necessarily relied upon by the complaint. Id.; United States v. Corinthian Colleges, 655 F.3d 984, 998–99 (9th Cir. 2011). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and cannot be incorporated by reference. Khoja, 899 F.3d at 1002.

### III. DISCUSSION

**A. Motion to Dismiss**

*I. Trade Dress Infringement*

Counter-Defendants urge the Court to dismiss the counterclaim for Trade Dress infringement under the Lanham Act. Mot., Dkt. No. 33, at 4.

"Trade dress involves 'the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques." Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792,8 08 n. 13 (9th Cir. 2003) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n.1 (1992)). In evaluating a trade dress claim, a court should not focus on individual elements but instead must examine "the overall visual impression that the combination and arrangement of those elements create." Clicks Billiards, Inc. v. Sixshooters, Inc. , 251 F.3d 1252, 1259 (9th Cir. 2001). In short, "[t]rade dress is the composite tapestry of visual effects." Id. To prove trade dress infringement, a plaintiff must demonstrate: (1) ownership of a protectable trade dress that serves a source-identifying role either because it is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) that the matter sought to be protected is not "functional"; and (3) the defendant's trade dress infringes upon the plaintiff's trade dress by creating a likelihood of confusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
|---|---|---|---|

| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. |
|---|---|

among consumers about the origin or source of the product. 15 U.S.C. § 1125(a)(3).

Counter-Defendants argue that the trade dress allegations impermissibly include "elements that are not part of the visual image of the purported trade dress." Mot., Dkt. No. 33, at 5. For example, Counter-Defendants contend that the words/ acronyms "OMG" and "Girlz" do not warrant trade dress protection because "the performers neither wear nor display 'OMG' and/or 'Girlz' as part of their trade dress." Id. They also argue that the vocals of the OMG Girlz are not properly part of trade dress. Id.

In response, Counter-Claimants state that "the plain language of the Lanham Act permits Defendants to base their Section 1125(a) claim on 'any combination' of a 'word, term, name, symbol, or device' likely to cause confusion as to the origin of the goods sold in commerce, and the combination of these elements as alleged in the FAC states a claim under the Lanham Act." Opp'n., Dkt No. 39, at 3. The Court finds that Counter-Claimants' trade dress descriptions satisfy the requirements of Rule 8, as the Trade Dress is described in detail with attached photographs. The Court declines Counter-Defendants' invitation to take each individual element (e.g., the words or the vocals) and to determine on a case-by-case basis whether they are visual enough to state a claim for trade dress. As Counter-Defendants themselves note: "trade dress refers to 'a combination of any elements in which a product is presented to a buyer, including the shape and design of a product.'" Mot., Dkt. No. 33, at 4 (citing Art Attacks Ink, LLC v. MGA Entm't. Inc., 581 F.3d 1138, 1145 (9th Cir. 2009)). The Court finds that Counter-Claimants have created a total image of the OMG Girlz brand that they allege Counter-Claimants have infringed

For example, Counter-Claimants describe the OMG Girlz' hair and wardrobe as being constituted of "unique combinations of vibrant hair colors combinations in non-monochromatic and contrasting hues primarily in pink, purple, and blue, makeup, contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup creating a unique composite tapestry of appearance for the multi-cultural OMG girls." FACC, Dkt. No. 27 ¶ 19. Counter-Defendants argue that "as Counterclaimants' own exhibits demonstrate, the OMG Girlz did not consistently incorporate their purported trade dress into their aesthetic, and often did not even comport with the above description at all." Mot., Dkt. No. 33, at 6. However, the Court does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 20-11548 JVS (AGRx)                                Date   Aug. 27, 2021

Title      MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al.

not find that the Exhibits to which Counter-Defendants cite serve to undermine the trade dress description. Counter-Defendants make much of the fact that, for example, "[i]n Exhibit 3, the bandmember shown has pink and black hair; in Exhibit 4, the bandmember shown has neon green hair with black roots; and in Exhibit 6, bandmember shown merely has brown hair." Setting aside the fact that Exhibit 6 appears to show a band-member with pink hair in one picture and an ombré style in another (as opposed to "merely" brown hair, as Counter-Defendants suggest), the Court finds that these images comport with Counter-Claimants' description of the hair as typically consisting of "unique combinations of vibrant hair colors combinations in non-monochromatic and contrasting hues, primarily in pink, purple, and blue." Of the images of band-members attached to the FACC, seven of them include unique combinations of vibrant hair colors in non-monochromatic and contrasting hues, and six of them contain the colors blue, pink, or purple. See FACC, Dkt. No. 27, Ex. 1-6. The Court accordingly finds that Counter-Claimants sufficiently describe the visuals at issue to state a claim for trade dress.

Counter-Defendants next argue that Counter-Claimants' allegations regarding non-functionality are threadbare assertions that lack the facial plausibility required by Twombly and Iqbal. Mot., Dkt. No. 33, at 9. In response, Counter-Claimants state that "[t]his case involves a musical performance group whose images and performances are 'knocked off' by toy dolls and video streaming modeled after them without authorization. There is no utilitarian functionality at issue. . ..." Opp'n., Dkt. No. 39, at 6. The Court agrees with Counter-Claimants that their complaint sufficiently alleges nonfunctionality under the plausibility pleading standard established by Twombly and Iqbal. In analyzing the functionality of a given trade dress, courts consider: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F.Supp.2d 1072, 1085 (C.D.Cal. 2006). The Court finds that, for the purposes of a motion to dismiss, the allegations are sufficient because the total image of the OMG Girlz is facially nonfunctional. Accordingly, the Court finds that nonfunctionality is plausibly plead, and the Court will not dismiss the trade dress claim on this ground.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 20-11548 JVS (AGRx)                    Date   Aug. 27, 2021

Title    MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al.

    Counter-Defendants also argue that the trade dress claim fails because Counter-Claimants "fail to establish secondary meaning" and "fail to establish likelihood of confusion." Mot., Dkt. No. 33, at 11, 12. The Court first notes that at the motion to dismiss stage it is not concerned with what Counter-Claimants have "established"– it is only concerned with their well-plead allegations. Secondary meaning is the "mental association by a substantial segment of consumers and potential consumers between the alleged [trade dress] and a single source of the product." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). It occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." Wal-Mart Stores, Inc. v. Samara Bros. Inc., 529 U.S. 205, 211 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n. 11 (1982)). The test for likelihood of confusion is whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Entrepreneur Medica, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002).

    The Court finds that Counter-Defendants seek too much evidence at this stage in the proceeding when all that is required is well-plead allegations. Accordingly, the Court finds that Counter-Claimants have sufficiently alleged both secondary meaning and likelihood of confusion. To that end, the Court notes that Counter-Claimants have alleged the following: "In 2019, MGA went forward with release of a line of OMG dolls, copying the unique name, image and trade dress of the OMG Girlz without permission from the creators," and that "[f]ans of the OMG Girlz and consumers seeing the OMG Dolls and viewing the on-line animated videos have brought this issue to the attention of Grand Hustle and Pretty Hustle." FACC, Dkt. No. 27 ¶¶ 14,15. Counter-Claimants also allege that "[a] comparison of examples of the images of the young women of color who comprise the OMG Girlz with photos of the OMG Dolls modeled after them makes clear that the OMG Dolls were intentionally designed to trade on the OMG Girlz' likeness and brand," and include several images as exhibits supporting the allegations that the dolls are likely to cause confusion. Id. ¶ 19; Exs. 2-6. Finally, Counter-Claimants allege that "Google searches for 'OMG Girlz Dolls' drive consumers directly to MGA's products." Id. ¶ 20. Accordingly, the Court DENIES the motion to dismiss the trade dress counterclaim. The Court will also not engage in an element-by-element analysis of the trade dress counterclaim as Plaintiffs essentially seek in their request for hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

*ii. Dilution*

Counter-Defendants next argue that Counter-Claimants fail to state a claim for dilution. Mot., Dkt. No. 33, at 15. To state a claim for dilution, a plaintiff must allege that: (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2007). In a dilution action "for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that(A) the claimed trade dress, taken as a whole, is not functional and is famous …" 15 U.S.C. § 1125(c)(4)(A). Counter-Defendants argue that Counter-Claimants have not alleged that their trade dress was registered when the O.M.G. dolls were released, meaning that they are required to plead that the claimed trade dress is both non-functional and famous. Mot., Dkt. No. 33, at 15. Counter-Defendants argue that Counter-Claimants "fail to establish how the claimed dress is nonfunctional" and "Counterclaimants also fail to set forth any facts establishing that their trade dress is sufficiently famous." Id.

At this stage, Counter-Claimants are only required to allege facts and elements, not to establish them. However, the Court agrees with Plaintiffs' argument in their request for hearing, namely, that Defendants failed to sufficiently allege sufficient fame or notoriety for such a claim.

15 U.S.C. § 1125(c)(2)(A) provides a number of factors to consider when determining whether a product is entitled to a trademark dilution claim, including (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A). With respect to allegations of fame, the Court finds that these are insufficient. Counter-Claimants allege that the OMG Girlz have been featured and performed on several television shows and that their videos have been viewed millions of times. FACC, Dkt. No. 27 ¶¶ 7-10. The FACC also alleges that it was specifically due to the success of the OMG Girlz that MGA Entertainment sought to launch a line of dolls

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

modeled on them. Id. ¶ 11. However, the FACC is otherwise silent as to the remaining § 1125(c)(2)(A) factors. See e.g. Stone Brewing Co., LLC v. MillerCoors LLC, 445 F. Supp. 3d 1113, 1146 (S.D. Cal. 2020) (analyzing allegations of a trademark dilution claim in a complaint against § 1125(c)(2)(A) and finding the complaint failed to allege sufficient fame); see also Parts.com, LLC v. Yahoo! Inc., 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013) (same). The Court finds that Counter-Claimants have failed to state a claim for dilution, and GRANTS the motion to dismiss this counterclaim. Counter-Claimants have 30 days to replead.

*iii. False Designation of Origin*

Next, Counter-Defendants seek dismissal of the false designation of origin claim, arguing that Counter-Claimants fail to allege facts indicating confusion over the producer or source of the O.M.G. dolls, but that Counter-Claimants instead allege that MGA Entertainment "copied the idea of the OMG Girlz – an issue governed by copyright law." Mot., Dkt. No. 33, at 18. In support of this argument, Counter-Defendants cite to Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S. 23, 32 (2003), which made clear that Lanham Act claims based on misappropriation and confusion can proceed only where there is confusion as to "the producer of the … product sold in the marketplace" and not as to the "person or entity that originated the ideas or communications that 'goods [or services]' embody or contain." See Mot., Dkt. No. 33, at 17. By way of response, Counter-Claimants point out that "Courts have recognized false endorsement claims under the Lanham Act for unauthorized imitation of distinctive attributes where those attributes amount to an unregistered commercial 'trademark.'" Opp'n., Dkt. No. 39, at 4 (quoting Butler v. Target Corp., 323 F.Supp.2d 1052, 1058 (C.D. Cal. 2004).

The Court notes that "[t]he federal Copyright Act does not preempt the federal Lanham Act, or vice versa." Alameda Films S.A. de C.V. v. Authors Rights Restoration, Corp. Inc., 331 F.3d 472, 483 (2003). Accordingly, the same conduct can lead to both a Copyright and Lanham Act claim. Counter-Claimants here bring a false designation of origin claim as a false endorsement claim, which, "alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

sponsorship or approval of the product." Butler, 323 F.Supp.2d at 1058. Accordingly, the Court DENIES the motion to dismiss the false designation of origin claim.

*iv. Misappropriation*

Counter-Defendants next seek to dismiss the counterclaims for misappropriation of name or likeness under California Civil Code § 3344 and for common law misappropriation of name or likeness. Mot., Dkt. No. 33, at 18. Specifically, Counter-Defendants argue that Counter-Claimants lack standing to bring these counterclaims on the grounds that OMG Girlz themselves (the band members) have a right of publicity, but that the Counter-Claimants do not have that right unless the bandmembers assigned it to them. Id. Counter-Defendants state that Counter-Claimants "baldly assert" that the OMG Girlz assigned their IP and related rights, but that "no facts are set forth to substantiate this claim" and that for the common law misappropriation claim, "Counterclaimants do not even assert that they were assigned the necessary rights in the OMG Girlz." Id., at 19-20.

In their opposition, Counter-Claimants respond that "[t]he use of the name and likeness of the artists is an essential element of distribution of musical recordings in all media, and the FACC's allegation of the assignment of the right to such use by the musical group created by [Counter-Claimants] is disputed by MGA with no foundation." Opp'n., Dkt. No. 39, at 9. Furthermore, Counter-Claimants argue that Counter-Defendants' implied demand that they "must attach or refer to evidence to 'prove' standing in its pleading is inconsistent with Rule 8." Id. Once again, the Court finds that Counter-Defendants are making summary judgment arguments in a motion to dismiss. In fact, the case they cite for the proposition that Counter-Claimants must substantiate their claim that the IP rights have been assigned to them involves a summary judgment motion. See Apple Corps Ltd. v. Button Master, P.C.P., Inc., No. CIV. A. 96–5470, 1998 WL 126935 at *14 (E.D.Pa. Mar. 19, 1998).

The Court finds that the allegation that the OMG Girlz assigned their IP and related rights to Counter-Claimants is sufficient to confer standing for the purposes of a misappropriation claim. Furthermore, the Court rejects Counter-Defendants' arguments that Counter-Claimants do not sufficiently define the features of the OMG Girlz that were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

allegedly misappropriated. See Mot., Dkt. No. 33, at 20. As the Court has noted previously, the FACC contains numerous, specific, factual allegations (including photographs) regarding the alleged misappropriation. Counter-Claimants do far than make "conslcusory claim[s]." See id. Accordingly, the Court DENIES the motion to dismiss the misappropriation claim.

### *v. Unfair Competition*

Finally, Counter-Defendants argue that the Court should dismiss both Counter-Claimants' statutory and common law unfair competition counterclaims. Mot., Dkt. No. 33, at 20. The Court will address each in turn.

### *a) Unfair Competition Under Cal. Bus. & Prof Code § 17200*

California's Unfair Competition Law ("UCL") defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. With respect to the "unfair" prong of the UCL, Counter-Defendants argue that because the "claims for Lanham Act violations and misappropriation all fail and should be dismissed... their UCL claim under the unlawful prong similarly fails and should be dismissed." Mot., Dkt. No. 33, at 22. Given that the Court has not dismissed the Lanham Act counterclaim, the Court finds no reason to dismiss the UCL counterclaim unfair the "unlawful" prong. The Court agrees with Counter-Defendants that Counter-Claimants do not appear to have pled a UCL claim based on the "fraud" or "unfair" prongs, but stating a claim under the "unlawful" prong is sufficient. Accordingly, the Court DENIES the motion to dismiss the UCL claim.

### *b) Common Law Unfair Competition*

Counter-Defendants next ague that "[t]o the extent [the Common Law Unfair Competition] claim is based on the allegation that MGA exploited their trade name, for all of the reasons discussed above, they fail to set forth sufficient supporting facts therefor." Mot., Dkt. No. 33, at 23. As discussed above, the Court finds that Counter-Claimants have set forth sufficient facts alleging trade dress infringement, which also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

serve to underpin the common law unfair competition claim. Accordingly, the Court DENIES the motion to dismiss the common law unfair competition claim.

### B. Request for Judicial Notice re Motion to Dismiss

Counter-Defendants filed a request for judicial notice ("RJN") in support of their motion to dismiss. See RJN, Dkt. No. 34. Specifically, Counter-Defendants seek judicial notice of (1) a screen print of the webpage located at URL "https://www.lolsurprise.com/collections/ fashion-dolls" taken April 13, 2021 (Ex. 1), and (2) Screen captures of the webpage located at URL "https://www.youtube.com/watch?v=TI1sDdv1qqk" taken April 12, 2021. Id.

Counter-Claimants urge the court to deny the RJN. Opp'n., Dkt. No. 39, at 11. They argue that Counter-Defendants' "selective screenshots lack proper foundation and are misleading because they show a radically incomplete picture of the facts the purported evidence is presented to support. To properly respond, [Counter-Claimants] would need to submit properly authenticated and comprehensive responsive evidence, which is beyond the purview of the pleading requirements under Rule 8." Id.

The Court agrees with Counter-Claimants, and finds that these screenshots are inappropriate for judicial notice, as they are do not qualify as matters of public record or documents that are "not subject to reasonable dispute." See Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). Accordingly, the Court DENIES the RJN attached to the motion to dismiss.

### C. Motion to Strike

Counter-Defendants also filed a motion to strike paragraphs 21 through 26 on pages 8 through 10 of the FACC. See Mot. Dkt. No. 31, at 1. These allegations refer generally to cultural appropriation and are based on an argument that "MGA and Larian's misappropriation from, rather than collaborating with the Black creators who over many years worked to develop the OMG Girlz brand, is a classic example of Larian's habit, and MGA's routine practice, of cultural appropriation." FACC, Dkt. No. 39 ¶ 26. Counter-Claimants argue that "[t]his cultural appropriation is legally actionable where, as here, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

has resulted in MGA's unlawful copying and dilution of the OMG Girlz brand, and misappropriation of their name and likeness." Id. Counter-Defendants seek to strike these allegations on the grounds that they are immaterial, impertinent and "intended to serve no purpose other than to cast MGA and Larian in an extremely derogatory light in an environment ripe for social media criticism, to disparage their reputation for promoting diversity and showcasing multicultural expression in the doll business, and to prejudice, inflame and distract the jury." Mot., Dkt. No. 31, at 2.

In opposition, Counter-Claimants argue that Counter-Defendants put diversity at issue by arguing that they have a commitment to diversity and multiculturalism. They state that "[e]vidence on these issues is relevant to proof
of intent in the federal and state causes of action alleged and to the scope of damages." Opp'n., Dkt. No. 39, at 10. The Court disagrees, and finds that the FACC's statements regarding cultural appropriation have no bearing on any of the counterclaims, and that they are accordingly immaterial and impertinent. As such, the Court GRANTS the motion to strike paragraphs 21 through 26 of the FACC.

### D. Request for Judicial Notice re Motion to Strike

Finally, Counter-Defendants filed a RJN in support of their motion to strike. See RJN, Dkt. No. 32. This RJN asks the Court to take judicial notice of the following documents:

(1) a screen-print of the webpage at URL "https://www.imdb.com/title/tt0492571/" taken April 12, 2021(Ex. 1);
(2) a screen-print of the webpage at URL "https://www.lolsurprise.com/collections/remix" taken April 12, 2021 (Ex. 2);
(3) a screen-print of the webpage at URL "https://www.amazon.com/L-L-Surprise-Theme- Doll/dp/ B085B1XTT4", taken April 12, 2021(Ex. 3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

(4) a screen-print of the webpage at URL "https://www.lolsurprise.com/products/l-o-l-surprise-omg-2- pack?variant=31901707829346&utm_source=google&utm_medium=cpc&utm_campaign=MGA_Shopping_US_N_AllProducts_N_Branded_N&utm_content=Dolls&utm_term=&gclid=EAIaIQobChMI4p6hk_TY7wIVzQ5yCh0-bAGmEAQYAyABEgLUsfD_BwE" taken April 13, 2021 (Ex. 4)

(5) Screen captures of the webpage at URL "https://www.youtube.com/watch?v=oO79s52RTdk" taken April 12, 2021 (Ex. 5);

(6) a screen-print of the webpage at URL "https://www.lolsurprise.com/products/l-o-l-surprise-o-m-g-remixsuper-surprise-70-surprises-including-4-fashion-dolls-4-dolls-and-4-rock-instruments-that-play-music" taken April 12, 2021 (Ex. 6).

RJN, Dkt. No. 32.

For the same reasons that the Court denied Counter-Defendants' RJN in support of their motion to dismiss, the Court also denies this RJN: the screenshots in question are subject to reasonable dispute and are, in fact, disputed by Counter-Claimants regarding their authenticity. They are not incorporated into the complaint and are not public records otherwise appropriate for judicial notice. Accordingly, the Court DENIES the RJN.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES in part and GRANTS in part the motion to dismiss , DENIES both requests for judicial notice and GRANTS the motion to strike.** Defendants have thirty days to replead their trademark dilution counterclaim.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-11548 JVS (AGRx) | Date | Aug. 27, 2021 |
| Title | MGA Entertainment, Inc. v. Clifford "T.I." Harris, et al. | | |

                                                                              :     0

                                          Initials of Preparer     lmb