Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Bobby Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@winston.com
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002
Telephone:   (713) 651-2794
Facsimile:    (713) 651-2700

*Attorneys for Defendants and Counter-Counterclaimants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MGA Entertainment Inc.,<br>Plaintiff,<br>vs.<br><br>Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC, and Does 1-10 inclusive,<br>Defendants.<br><br><br>Grand Hustle LLC, Pretty Hustle LLC, d/b/a OMG Girlz LLC, Major Star LLC,<br>Counterclaimants,<br>vs.<br><br>MGA Entertainment Inc., Isaac Larian, and Does 1-10 inclusive,<br>Counterdefendants. | CASE NO. 2:20-cv-11548-JVS-AGR<br><br>**DEFENDANTS' / COUNTER-CLAIMANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE**<br><br>**Hearing:    June 21, 2022**<br>**Time:       1:30 p.m.**<br><br>[PUBLIC VERSION -- REDACTED] |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 20, 2022 at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 10C of the above-entitled court, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Defendants and Counter-Claimants OMG Girlz LLC, Grand Hustle, LLC, Pretty Hustle, LLC, Tameka Harris and Clifford Harris (collectively, "the Grand Parties") will and hereby move the Court for an order imposing certain evidentiary sanctions, permitting adverse inferences and/or other relief deemed appropriate against Plaintiff and Counterclaim-Defendant MGA Entertainment Inc. ("MGA") for its willful failure to preserve certain relevant evidence.

MGA failed to implement any process let alone a systemic means of preserving information constituting the reference files relevant to the design of the dolls at issue in this case. MGA then neglected to issue any litigation hold despite the Grand Parties' demand letter and before filing this case; meanwhile, several relevant designers and other key supervisory employees left MGA. As third-party productions reveal, MGA also apparently failed to maintain a complete universe of relevant consumer surveys for the dolls in question. MGA's preservation and retention failures have impeded the Grand Parties' investigation into the facts of this case and prevented the Grand Parties from obtaining a complete production of documents responsive to their requests. The Grand Parties s seek adverse instructions about certain elements and issues that these deficiencies have impacted.

The Grand Parties met and conferred with MGA on this issue on May 9, 2022. *See* Ranahan Decl. ¶ 19.

This Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the accompanying Declaration of Erin R. Ranahan, and such other pleadings, documents, and arguments as the Court may consider in connection with this Motion.

Dated: May 24, 2022                    WINSTON & STRAWN LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ *Erin Ranahan*
Erin R. Ranahan
Chante B. Westmoreland
*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE,*
*LLC, PRETTY HUSTLE, LLC and OMG*
*GIRLZ LLC*

DEFENDANTS'/COUNTER-CLAIMANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS DUE TO THE SPOLIATION OF EVIDENCE

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................7

II.   STATEMENT OF FACTS .....................................................................7

    A.   Procedural History ........................................................................7

    B.   The Grand Parties Seek Brief Extension After a Change of Counsel, and MGA Objects that Fact Discovery is Complete ......................................8

    C.   MGA Refuses to Indicate What Evidence was Available, What it was Searching for, and What it was Producing ...............................................8

    D.   MGA Fails to Take Basic Steps to Preserve Relevant Evidence and Witnesses Testify Regarding Haphazard Evidence Retention ..............11

    E.   External History of MGA's Spoliation.................................................14

    F.   Third-Party Discovery Demonstrates That MGA Spoliated Evidence .14

III.  LEGAL STANDARD ...........................................................................15

IV.   ARGUMENT .......................................................................................17

    A.   MGA Violated Its Obligation to Preserve Relevant Evidence..............17

        1.   MGA's Duty to Preserve Evidence Was Triggered Upon Receiving The Grand Parties' Cease and Desist Letter ..............18

        2.   MGA Failed to Implement a Litigation Hold..............................18

        3.   MGA Failed to Search for Responsive Documents ....................20

    B.   The Court Should Sanction MGA for Failing to Implement a Litigation Hold and Refusing to Search for Documents ........................................21

        1.   The Court Should Provide an Adverse Inference Instruction .....22

        2.   Preclusion Sanctions are Warranted............................................25

V.    CONCLUSION ....................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
  888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................... 18, 20, 25

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  2016 WL 6609208 (C.D. Cal. July 12, 2016) ............................................. 19, 20

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
  No. 518CV00420JGBSHK, 2020 WL 1496444 (C.D. Cal. Feb. 27,
  2020) .................................................................................................................. 17

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ...................................................... 17, 20

*Glover v. BIC Corp.*,
  6 F.3d 1318 (9th Cir. 1993) ........................................................................ 17, 19

*GN Netcom, Inc.*,
  No. 12-1318-LPS, 2016 WL 3792833, at *5 .................................................... 19

*Hous. Rts. Ctr. v. Sterling*,
  No. CV 03-859 DSF, 2005 WL 3320739
  (C.D. Cal. Mar. 2, 2005) .................................................................. 22, 23, 24, 26

*Keithley v. Homestore.com, Inc.*,
  629 F. Supp. 2d 972 (N.D. Cal. 2008) .............................................................. 23

*Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006) .................................... 17

*Lewis v. Ryan*,
  261 F.R.D. 513 (S.D.Cal.2009) ......................................................................... 24

*Mattel, Inc., et al v. MGA Entertainment, Inc., et al*,
  Case No. 11-56357 (9th Cir. 2013) ................................................................... 15

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*,
  306 F.3d 806 (9th Cir. 2002) ............................................................................ 19

*In re Napster*,

    462 F. Supp. 2d 1060 (N.D. Cal. 2006) .......................................................*passim*

*Qualcomm Inc. v. Broadcom Corp.*,

    2008 WL 66932 (S.D. Cal. Jan.7, 2008), *vacated in part on other*

    *grounds*, 2008 WL 638108 (S.D. Cal. Mar.5, 2008) ........................................ 24

*Rev 973 LLC v. Mouren–Laurens*,

    2009 WL 273205 (C.D. Cal. Feb. 2, 2009) ....................................................... 24

*Richard Green (Fine Paintings) v. McClendo*n,

    262 F.R.D. 284 (S.D.N.Y.2009) ...................................................................... 24

*Sanders v. Los Angeles Cnty.*,

    No. CV 15-00907-AG (RAO), 2019 WL 12831725

    (C.D. Cal. Aug. 1, 2019) .................................................................................... 8

*Sunrider Corp. v. Bountiful Biotech Corp.*,

    2010 WL 4590766 (C.D. Cal. Oct. 8, 2010) .................................................... 18

*Surowiec v. Capital Title Agency, Inc.*,

    790 F.Supp.2d 997 (D.Ariz.2011) ................................................................... 24

*United States v. Kitsap Physicians Serv.*,

    314 F.3d 995 (9th Cir. 2002) ........................................................................... 18

*Wm. T. Thompson v. Gen. Nutrition Corp.*,

    593 F. Supp. 1443 (C.D. Cal. 1984.) ........................................................ 18, 20

*Zubulake v. UBS Warburg LLC*,

    220 F.R.D. 212 (S.D.N.Y. 2003) ..................................................... 18, 19, 20, 24

*Zubulake v. UBS Warburg LLC*,

    229 F.R.D. 422 (S.D.N.Y. 2004) ..................................................................... 22

## MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION

Though MGA initiated this action against the Grand Parties, MGA failed to take basic steps in this case to preserve relevant evidence.  MGA's obligation to preserve and search for information began, at a minimum, on December 8, 2020 when the Grand Parties sent a demand letter about MGA's infringement of the Grand Parties' rights. Two weeks after MGA's original duty to preserve was triggered, MGA filed a complaint against the Grand Parties, but failed to meet its preservation obligations then and throughout the two-year duration of this case by not implementing a litigation hold, not preserving or collecting its employees' documents, and not conducting a proper search of its documents. Though MGA's failure to do so has made it impossible to ascertain all of what was destroyed, responsive information that MGA has produced appears lacking. MGA has deliberately or at least recklessly failed to preserve, search for, and produce documents that are damaging to their case. The mere failure to preserve and search for evidence constitutes spoliation.

As a result of MGA's actions, the Grand Parties are prejudiced and their ability to litigate their claims and defenses are irreversibly impaired. MGA's intentional, or at the very least reckless, spoliation and failure to preserve warrants sanctions, which, for the behavior here, include awarding the Grand Parties an adverse inference instruction against MGA.

## II.    STATEMENT OF FACTS

### A.     Procedural History

On December 8, 2020, the Grand Parties sent MGA a letter about the L.O.L. Surprise! O.M.G. Dolls ("OMG Dolls") because they infringed on the Grand Parties' OMG Girlz trademark and trade dress rights and misappropriated the OMG Girlz's name and likeness. *See* Dkt. No. 169-13. MGA did not respond to the letter or make any attempt to contact the Grand Parties. Instead, just two weeks later, on December 22, 2020, MGA sued the Grand Parties in federal court by filing a Declaratory Relief

Complaint. Dkt. 1. The Grand Parties responded to the Complaint by filing Counterclaims. Dkt. 13. After MGA filed a motion to dismiss, which was denied in part (Dkt. 53), the Grand Parties filed their Third Amended Counterclaims on November 1. Dkt. 63.

**B.** **The Grand Parties Seek Brief Extension After a Change of Counsel, and MGA Objects that Fact Discovery is Complete**

On February 9, 2022, the Grand Parties' prior counsel, Peter Haviland, withdrew from the case. Dkt. 72. On February 18, 2022, the Grand Parties substituted counsel. Dkt. 79. The prior schedule had discovery closing February 18, 2022, expert reports due February 22, 2022, and trial June 7, 2022. Dkt. Nos 18-19. The Grand Parties immediately moved *ex parte* application to seek a brief adjustment to the schedule, including a 58-day fact discovery extension, which was granted. *See* Dkt. 82. In opposing the Grand Parties' *ex parte* application, MGA insisted that there was no need for any more document discovery or time to complete depositions because the Grand Parties "should not get a do-over." Dkt. 84 at 1. The Court granted the Grand Parties' *ex parte* noting that it was "not a 'do-over' but rather a reasonable opportunity to allow the applicants to 'do' what has not been done." Dkt. 88 at 1.

**C.** **MGA Refuses to Indicate What Evidence was Available, What it was Searching for, and What it was Producing**

Nearly two years into the case, as of February 18, 2022 – the original close of fact discovery, MGA had produced just over 3,000 documents, the majority of which were plainly not responsive to the Grand Parties' requests. *See* Declaration of Erin R. Ranahan ("Ranahan Decl.") at ¶3. MGA's responses and objections to the discovery propounded by the Grand Parties' prior counsel made clear that MGA had refused to produce documents in all but 5-6 requests, instead indicating that it required a meet and confer before documents would be searched or produced. *See* Ranahan Decl. ¶ 4, Ex. A, Ex. B. As of the original close of fact discovery, MGA had not supplemented its responses to indicate that it was searching for responsive documents. *Id.*

Following the Court's order extending discovery (Dkt. 81), the Grand Parties requested that MGA meet and confer concerning MGA's boilerplate objections and lack of any indication as to what MGA was agreeing to search for. *See* Ranahan Decl., Ex. C. The Grand Parties further wanted to understand what MGA was withholding and on what grounds and decipher what MGA could not produce. *Id.* at ¶ 6. The parties conferred about MGA's responses whereupon the Grand Parties learned that MGA's in-house counsel selected which witnesses to run its own, narrow, search terms across, omitting those witnesses from its initial disclosures, except for one. *See* Ranahan Decl., ¶¶ 7-8, *compare* Ex. D *with* Ex. E.

Moreover, MGA limited its search terms to a select few of the OMG Dolls, taking the position that the Grand Parties' claims were limited to those photographs included in the Grand Parties' Complaint. MGA simultaneously delayed to produce a complete catalog of the OMG Dolls it had created, which MGA has continued to produce throughout this lawsuit. The Grand Parties have made clear to MGA throughout the case that the claims always encompassed the entire OMG Dolls line. *See* Dkt. No. 13 at ¶ 2. Email communications between counsel in this case revealed that was patently untrue. *See* Ranahan Decl., ¶ 10, Ex. G. Through this, MGA has unilaterally constricted the case to its preferred scope despite never having had an order or representation to the contrary. This has caused MGA to omit a substantial subset of documents.

The Grand Parties endeavored to refine the proposed search terms. It was not until Magistrate Judge Alicia Rosenberg stated during a hearing on March 15, 2022, that MGA should add custodians and produce documents for witnesses they intended to rely on. *See* Ranahan Decl., ¶ 11, Ex. H at 23:18-24:4. Only after this instruction did MGA agree to run the Grand Parties' terms and add additional custodians, but not without push-back.

The Grand Parties also raised their concern about MGA's lack of substantive, and conclusive, responses in response to the Grand Parties' First Set of Requests for

Production multiple times before Judge Rosenberg. *See* Ranahan Decl., Ex. H at 5:7-7:19 (noting that it could not be discerned from MGA's responses which of the documents they agreed to produce or sought documents for as it objected to nearly every request); *see also* Ex. I at 5:8-12. At the March 22, 2022 hearing, MGA stated that the earliest it could provide such revisions was April 4, 2022, which Judge Rosenberg allowed despite the Grand Parties' concerns that April 4 would be too late to seek resolution on issues with those responses before the close of fact discovery on April 13, 2022. *Id.* at 9:23-10:12.

In the interim, the Grand Parties served its Second Set of Requests for Production on MGA. *See* Ranahan Ex. J. On April 4, 2022, MGA served its responses and fully objected to every request and refused to search for and produce any documents. *Id.*, Ex. K. That same day, MGA served its supplemental responses to the Grand Parties' First Set of Requests for Production. Ranahan Decl., Ex. L. For those requests MGA did not otherwise object to as overly burdensome, MGA indicated it would produce those documents "found through an ESI search using the agreed-upon search terms." *Id.* This indicated MGA was limiting the scope of its search for responsive documents to only its chosen custodians' files through search terms and was not otherwise locating responsive documents beyond its initial collection. the Grand Parties learned long after discovery ended, on May 16, 2022, that MGA had *again* limited its collection and production of responsive, purported, design inspiration documents to select OMG Dolls. *See* Ranahan Decl., Ex. M. MGA did not indicate this limitation in their supplemental responses. *Id.* at Ex. L. And despite agreeing to add some custodians from its Initial Disclosures as custodians, relevant witnesses that the Grand Parties learned of after the close of discovery – Shir-Ami Thompson, Irene Garcia, Alen Halijevak, and Danna Darma – were never disclosed, added as custodians, nor deposed. *Id.* at ¶ 17. Those witnesses were not disclosed on MGA's supplemental initial disclosures served only two months ago. *See* Ranahan Decl., Ex. N. The Grand Parties requested to take Mr. Thompson and Ms. Garcia's depositions

shortly before summary judgment briefing, and though MGA responded, no dates were provided and summary judgment briefing is nearly complete. *See* Ranahan Decl., ¶ 18, Ex. O.

### D.   MGA Fails to Take Basic Steps to Preserve Relevant Evidence and Witnesses Testify Regarding Haphazard Evidence Retention

MGA is a ███████████████████████████████████████████ ████████████████████████████████████████████████. *See* Ranahan Decl., Ex. P at 167:9-19. Despite being a large-scale corporation, MGA did not appear to issue any legal hold at the outset of the litigation it initiated. *See* Ranahan Decl., Ex. Q at 200:19-201:14 (MGA witness testified ████████████████████ █████████████); Ex. R at 164:22-165:10 (Separate MGA witness testified the same); Ex. S at 12:24-14:10 (Separate witness testified the same). When counsel for the Grand Parties asked MGA's witnesses and former employees █████████████ ████████████████████████████, an innocuous and permissible question, MGA's counsel objected on privilege grounds and/or instructed the witnesses not to answer. For example, during the Grand Parties' deposition of MGA's first 30(b)(6) designee, █████████████████████████the Grand Parties███████████ ███████████████████████████████████████████████████ ████████████████████████. *See* Ranahan Decl., Ex. P at 180:8-183:22. Similar objections prevented the Grand Parties from exploring the full scope of MGA's initial document retention and collection. *See id*. Ex. T at 343:18-352:25 ███████████████████████████████████████████████████ █████(Ex. S at 138:24-142:2) █████████████████████████ ███████████████████████████████████████████████████ █████). During the May 9, 2022 meet and confer for this motion, MGA refused to answer whether it implemented a litigation hold and ignored the Grand Parties' request for a copy. *See* Ranahan Decl. ¶ 19.

Nearly every MGA witness testified that they were either unaware whether MGA had retention policies or that there were communications and/or documents of theirs that were not collected.

Critically, Gilbert Key, who MGA designated as a 30(b)(6) witness on the topic of MGA's effort to collect, review, and produce documents in the matter, testified that ██████████████████████████████████████████████████████████ ████████████████████████████████████. *See* Ranahan Decl., Ex. U at 165:3-17. Mr. Key also testified that he was ████████████████████████████████ (*id.* at 36:13-17, 70:16-21), ████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.* at 53:16-19, 100:21-101:7, 103:12-19.

Lora Stephens, an MGA designer who designed some of the L.O.L Surprise! O.M.G. dolls, testified that she ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████. *See* Ranahan Decl., Ex. V at 113:25-114:12; 115:16-117:19; 121:16-23; 124:9-125:6. Mr. Key confirmed at his deposition that he ████ ████████████████████████████████████████████████████████████. *See* Ranahan Decl., Ex. U at 95:5-96:11. MGA's counsel later confirmed that the relevant work files from Ms. Stephens's personal devices had not been collected and they had attempted to retrieve what may have been left on her computer after her deposition. *See* Ranahan Decl., ¶19.

Carlos Borja, another designer at MGA who designed the L.O.L Surprise! O.M.G. dolls testified that ████████████████████████████████████████ ████████████████████████████████████████████████████. *See* Ranahan Decl., Ex. W at 81:3-9, 97:5-17, 104:22-105:15. Thus, MGA had neither collected nor produced relevant discovery from Mr. Borja, including the mood boards he created for the dolls he designed, until April 11, 2022 – the night before his deposition on April 12, 2022. Mr. Borja also recalled that when IT asked for his

1   computer two weeks before his deposition, there was a folder that was corrupted. *See*
2   Ranahan Decl., Ex. W at 101:9-102:4.

3       Paula Garcia, the supervisor for the designers and liaison to MGA's CEO, Isaac
4   Larian, testified ████████████████████████████████████████████████████
5   ██████████████████████████████████████████████████████████████████████████
6   ██████████████████████████████████████████████████████████████████████████
7   ████████████████████████████████████. *See* Ranahan Decl., Ex. X at 79:14-
8   82:11).

9       Chelsea Green testified that ████████████████████████████████████████
10  ██████████████████████████████████████████████████████████████████████████
11  ██████████████████████████████████████████████████████████████████████████
12  ██████ *See* Ranahan Decl., Ex. Y (Green Dep. at 28:12-29:4, 284:8-10, 237:18-239:25,
13  240:8-17.

14      Former designer Blanche Consorti testified ███████████████████████████
15  ██████████████████████████████████████████████████████████████████████████
16  ████████████████. *See* Ranahan Decl., Ex. Z at 157:16-158:2.

17      Marketing Vice President Kathy Brandon testified that █████████████████
18  ████████████████████████████████████████████████████████████████████. *See*
19  Ranahan Decl., Ex. AA at 183:19-184:6. However, MGA's 30(b)(6) witness on
20  document collection and MGA's record custodian, Mr. Key, testified that he was
21  ██████████████████████████████████████████████████████████████████████████
22  ██████████████████████████████████. *Id.* at Ex. U at 89:3-18. He clarified that his
23  testimony referred ████████████████████████████████████████████████████
24  ████████████████████████████████. *Id.* at 94:23-95:15. Mr. Key testified that █████
25  ██████████████████████████████████████████████████████████████████████████
26  ██████████████████████████████████████████████████████████████████████████
27  ██████████████████████████████████████████████████████████████████████████
28

13

1 ████████████. *Id.* at 94:10-95:1; 96:12-23; 99:7-103:25; 104:1-25; 105:5-17;
2 110:1-20; 201:2-12.

3       **E.**    **External History of MGA's Spoliation**

4       MGA and its owner, CEO and Counter-Defendant here, Mr. Isaac Larian, have
5 a history of spoliation in civil intellectual property litigation with which Mr. Larian
6 was directly involved. *See Mattel, Inc., et al v. MGA Entertainment, Inc., et al*, Case
7 No. 11-56357 (9th Cir. 2013). There, Mr. Larian repeatedly testified that MGA had
8 produced "everything but the evidence showed otherwise. *See* Ranahan Decl., Ex. CC.

9      • Brian Wing, executive vice president at MGA, testified that
10          Mr. Larian specifically instructed him to have Mr. Tiongco,
11          MGA's head of IT, remove from MGA's servers a specific
12          Mattel-related email. *Id.*

13      • In a late-produced email from Mr. Larian's custodial files
14          an MGA Vice President wrote to Mr. Larian under the
15          subject line "Deleted!" The text of the email is only two
16          words: "All Deleted." *Id.*

17      • It was confirmed that 10-12 boxes of documents and a USB-
18          drive relevant to Mattel's claims against MGA were
19          destroyed by Farhad Larian, co-founder of MGA, after he
20          asked Isaac Larian "if there is anything I can do to help"
21          with the Mattel litigation. *Id.* Ranahan Decl., *Id.*

22       As a result, Mr. Larian was ordered to turn over his hard drive for review to find
23 any evidence of spoliation. *See* Ranahan Decl., Ex. DD.

24       **F.**    **Third-Party Discovery Demonstrates That MGA Spoliated**
25           **Evidence**

26       Through issuing subpoenas to certain third-party research companies, the Grand
27 Parties recovered documents through third-party discovery that MGA should have
28 been preserved and produced but did not, supporting MGA's spoliation of evidence.

14

1   Specifically, the Grand Parties requested all documents constituting either formal or
2   informal investigations, polls, surveys, etc. that MGA conducted or caused to be
3   conducted concerning the L.O.L. Surprise! O.M.G. marks and/or trade dress, or the
4   markets for the goods offered. *See* Ranahan Decl., Ex. A, RFP No. 59. In response,
5   MGA stated that "after a reasonable search . . . it currently has no responsive
6   documents in its possession, custody, or control." *Id.* at Ex. L. In response to the Grand
7   Parties' subpoena *deuces tecums,* Prodege, LLC, Market Track, LLC d/b/a Numerator,
8   and Dynata, LLC, all which MGA used to conduct surveys and consumer research,
9   produced documents in their possession relating to the consumer insight surveys they
10  conducted on behalf of MGA involving the L.O.L. Surprise! line. *See e.g.,* Ranahan
11  Decl., Ex. BB. The Grand Parties specifically requested MGA to provide information
12  like the above-referenced documents and communications. Despite the research being
13  conducted at MGA's request specifically about the L.O.L. Surprise! O.M.G. Dolls and
14  the fact that MGA employees appeared on the e-mails, MGA never produced them.
15  Had MGA conducted a reasonable search for responsive documents when it received
16  the Grand Parties' requests for production, MGA certainly should have found and
17  produced such documents and communications.

18  ## III.   LEGAL STANDARD

19          District courts possess the inherent power to impose sanctions against a party
20  who destroys evidence. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.
21  2006) ("There are two sources of authority under which a district court can sanction a
22  party who has despoiled evidence:  the inherent power of federal courts to levy
23  sanctions in response to abusive litigation practices, and the availability of sanctions
24  under Rule 37 against a party who 'fails to obey an order to provide or permit
25  discovery.'"); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial
26  court has the inherent discretionary power to make appropriate evidentiary rulings in
27  response to the destruction or spoliation of relevant evidence."); *see also Colonies
28  Partners, L.P. v. Cnty. of San Bernardino,* No. 518CV00420JGBSHK, 2020 WL

15

1496444, at *3 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve [evidence,] ... in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051-52 (S.D. Cal. 2015) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). To determine whether spoliation has occurred, courts employ a three-part test: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

The obligation to preserve relevant evidence is triggered when litigation is "pending or reasonably foreseeable." *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). In the Ninth Circuit, the duty to preserve is triggered, ""[a]s soon as a potential claim is identified." *Apple, Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citations omitted). Moreover, the duty to preserve extends to evidence that the party knew or should have known may be relevant to the litigation. *See Wm. T. Thompson v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984.) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information."). "A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions[,]" but the party's motive or degree of fault is relevant to determining what sanction to impose. *In re Napster*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citations omitted). The Court may employ a variety of sanctions

including, monetary sanctions, evidentiary sanctions, civil contempt sanctions, and default judgment. *See id.*

Spoliation sanctions should be "commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Cottle-Banks*., 2013 WL 2244333, at *13 (quoting Apple, 888 F. Supp. 3d at 992-93). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence," which includes the power "to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993) *(citing Akiona v. United States,* 938 F.2d 158 (9th Cir.1991)); *accord Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.,* 306 F.3d 806, 824 (9th Cir. 2002). The party seeking an adverse inference bears the burden of showing ESI was destroyed in "bad faith." *GN Netcom, Inc.*, No. 12-1318-LPS, 2016 WL 3792833, at *5.

## IV.   <u>ARGUMENT</u>

### A.   <u>MGA Violated Its Obligation to Preserve Relevant Evidence</u>

MGA did not preserve evidence that it knew was responsive in this case. The existence and scope of its duty to preserve depended on two inquiries: "*when* does the duty to preserve attach" and "*what* evidence must be preserved[.]"  *Zubulake*, 220 F.R.D. at 216 (S.D.N.Y. 2003). Regarding the first, MGA's duty to preserve was triggered as soon as a potential claim was identified. *See In re Napster*, 462 F. Supp. 2d at 1067; *see also Blumenthal Distrib., Inc. v. Herman Miller, Inc*., 2016 WL 6609208, at *10 (C.D. Cal. July 12, 2016), report and recommendation adopted, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (noting that the duty to preserve "extends to the period before litigation") (citations omitted). And for the second, the scope of MGA's duty included what they knew, or reasonably should have known, was "relevant to the action, [wa]s reasonably likely to be requested during discovery and/or [wa]s the subject of a pending discovery request." *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

1          1.    MGA's Duty to Preserve Evidence Was Triggered Upon
2                Receiving the Grand Parties' Cease and Desist Letter

3       MGA's duty to preserve evidence attached on December 8, 2020 when the
4   Grand Parties sent MGA a cease-and desist letter alleging infringement and
5   misappropriation. *See* Dkt. No. 169-13. The Grand Parties' letter was sufficient to
6   alert MGA of a potential claim and for MGA to "reasonably anticipate litigation."
7   *Blumenthal Distrib., Inc. v. Herman Miller, Inc.,* No. EDCV141926JAKSPX, 2016
8   WL 6609208, at *11 (C.D. Cal. July 12, 2016), report and recommendation
9   adopted, No. EDCV1401926JAKSPX, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016).
10  Even if the Grand Parties' cease and desist letter did not trigger the obligation, it is
11  undeniable that MGA was obligated to preserve evidence on December 22, 2020 at
12  the latest. ECF No. 1.

13          2.    MGA Failed to Implement a Litigation Hold

14      Upon the filing and/or service of its complaint, MGA had an obligation to
15  "preserve what it knows, or reasonably should know, is relevant to the action, is
16  reasonably calculated to lead to the discovery of admissible evidence, is reasonably
17  likely to be requested during discovery and/or is the subject of a pending discovery
18  request." *Zubulake,* 220 F.R.D. at 217. Here, record evidence suggests that evidence
19  relevant to MGA's claims and defenses was not well-preserved, as MGA employees
20  could recall no policy or practice to systematically save their work files.

21      Accordingly, when MGA received the Grand Parties' cease and desist letter, or,
22  at the latest, when MGA filed its complaint, it was required to "suspend its routine
23  document retention/destruction policy and put in place a 'litigation hold' to ensure the
24  preservation of relevant documents." *Id.* at 218; *see also Compass Bank*, 104 F. Supp.
25  3d at 1052. "Some effort" to preserve documents does not meet this obligation – a full
26  litigation hold is necessary to ensure that relevant documents are preserved. *Apple*
27  *Inc.*, 888 F. Supp. 2d at 991-92. As such, "[s]anctions may be imposed against a
28  litigant who is on notice that documents and information in its possession are relevant

1  to litigation, or potential litigation, or are reasonably calculated to lead to the discovery
2  of admissible evidence, and destroys such documents and information." *Wm. T.*
3  *Thompson v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984.).

4        Despite the clear obligation under federal law, MGA did not meet its duty.
5  When the Grand Parties asked MGA's witnesses whether they were put on a litigation
6  hold, ███████████████████████████████████. *See* Ranahan Decl.,
7  Ex. P at 183:16-22; *see also* Ex. T at 98:4-17; *see also* Ex. S at 149:9-14. Specifically,
8  designer Blanche Consorti ████████████████████████████████████
9  ██████████████████████████████████████████████████
10 ██████████████████████. *See* Ex. Z at 163:13-22. Notably, each time counsel
11 for the Grand Parties asked MGA's witnesses about the litigation hold, MGA's
12 counsel objected to the line of questioning. *See id.* Ex. T at 343:18-352:25 ████████
13 ████████████████████████████████████████████ (Ex.
14 S at 138:24-142:2) ████████████████████████████████
15 █████████████████████). Moreover, when the Grand Parties asked MGA to
16 confirm whether it had implemented a litigation hold, including most recently at the
17 May 9, 2022 meet and confer, MGA did not respond. *See* Ranahan Decl., ¶ 19.

18       MGA's preservation efforts were also impacted because it never implemented
19 clear guidelines for document retention and storage – even after filing its complaint in
20 this case. Indeed, Kotomi Nanjo and Maggie Wong, both MGA's 30(b)(6) witnesses
21 ██████████████████████████████████████████. *See*
22 Ranahan Ex. Q at 200:19-201:14; Ex. R at 164:22-165:10. Mr. Larian, MGA's CEO
23 testified ██████████████████████████████. *See* Ranahan Decl, Ex. T at
24 91:3-22. Paula Garcia confirmed that ██████████████████████████████
25 ██████████████████████████████████████████████.
26 *Id.* at Ex. X at ████████. Gilbert Key, MGA's 30(b)(6) witness on MGA's
27 document collection for the matter, testified ████████████████████████
28 ██████████████████████████████████████████████

1   ██████████████████████████████████. *See* Ranahan Decl., at Ex. U

2   at 165:3-17. MGA made little effort to retain relevant files despite its clear obligation

3   to do so.

4          MGA's discovery was further tarnished by its incomplete document collection.

5   Mr. Key testified that for █████████████████████████████████████

6   ███████████████████████████████████████████████████████████

7   ████████. Ex U at 94:10-95:1; 96:12-23; 99:7-103:25; 104:1-25; 105:5-17; 110:1-

8   20; 201:2-12. This was despite record evidence that ██████████████████

9   █████████████████. Indeed, Ms. Brandon testified ████████████████

10  █████████████████████████████████████ *See* Ranahan Decl., Ex.

11  AA at 183:19-184:6. Ms. Green testified that █████████████████████

12  ███████████████████████████████████████████████████████████

13  ████████████████████████████████████████. *Id.* Ex. Y

14  at 28:12-29:4, 284:8-10, 237:18-239:25, 240:8-17. Designer Ms. Stephens testified

15  that ███████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████

17  ██████████ *See* Ranahan Decl., Ex. V at 113:25-114:12; 115:16-117:19; 121:16-

18  23; 124:9-125:6. Ms. Consorti testified that █████████████████████████

19  ███████████████████████████████████████████████████ *See*

20  Ranahan Decl., Ex. Z at 157:16-158:2.  Ms. Garcia ██████████████████

21  █████████████████████████████ *See* Ranahan Decl., Ex. X at 79:14-

22  82:11).

             3.   <u>MGA Failed to Search for Responsive Documents</u>

24          Implementation of a litigation hold is only the beginning; "[c]ounsel must

25  oversee compliance with the litigation hold, monitoring the party's efforts to retain

26  and produce the relevant documents."  *Zubulake v. UBS Warburg LLC*, 229 F.R.D.

27  422, 432 (S.D.N.Y. 2004); *see also Hous. Rts. Ctr. v. Sterling*, No. CV 03-859 DSF,

28  2005 WL 3320739, at *5 (C.D. Cal. Mar. 2, 2005). MGA violated this duty by their

continuous refusal to adequately search for relevant documents. Before the Grand Parties substituted counsel, the only search terms MGA had run were its own, 16 terms against custodians selected by MGA's in-house counsel. *See* Ranahan Decl., ¶¶ 7-8. Moreover, the terms were run across an improperly preserved and collected pool of documents for a subset of the OMG Dolls at issue. *Id.* at ¶¶ 7-10.

The Grand Parties were also prevented from fully understanding which requests MGA's productions responded to, if any, as in MGA's amended responses it either refused to produce documents or agreed to only apply the search terms to its incomplete document repository – and never agreed to conduct independent collections outside of search terms. *See* Ranahan Decl., Ex. L. As such, responsive discovery was never collected nor produced. The Grand Parties would often learn of responsive documents during MGA's witnesses' depositions that existed but inevitably were not produced through MGA's limited searching procedure. *See* Ranahan Decl., at ¶¶ 20. Recognizing this, MGA in some instances produced such documents after the depositions had been completed. *Id.* In other instances, however, MGA have refused to produce such documents on the grounds of relevance – as with the OMG Dolls beyond the four in the Grand Parties' Counter-complaint. *See e.g.,* Ranahan Decl., Ex. O. MGA is beholden to this mistaken belief despite the Grand Parties' assertions otherwise.

Because of MGA's spoliation, relevant discovery was never produced.

## B.   The Court Should Sanction MGA for Failing to Implement a Litigation Hold and Refusing to Search for Documents

Failure to implement a litigation hold when a party becomes aware of a potential lawsuit is grounds for sanctions. *See, e.g.*, *Keithley v. Homestore.com, Inc*., 629 F. Supp. 2d 972, 977 (N.D. Cal. 2008) (upholding magistrate judge's decision to sanction defendants for failing to have a litigation hold and document retention policy in place); *Housing Rights Center*, 2005 WL 3320739, at *8-10 (C.D. Cal. Mar. 2, 2005) (awarding an adverse inference instruction and monetary sanctions where defendants,

among other things, failed to implement a litigation hold).  Additionally, the failure to properly search for relevant and responsive documents is an additional ground for sanctions.  *Id.* *5-7.

### 1.   The Court Should Provide an Adverse Inference Instruction

A party seeking an adverse inference instruction based on the spoliation of evidence must establish:  (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *In re Napster*, 462 F. Supp. 2d at 1078 *Zubulake IV,* 220 F.R.D. at 220 (citing *Residential Funding Corp. v. DeGeorge Fin'l Corp.,* 306 F.3d 99, 108 (2d Cir.2002)); *see also Apple II,* 888 F.Supp.2d at 989–90; *Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp.2d 997, 1005 (D.Ariz.2011); *Lewis v. Ryan,* 261 F.R.D. 513, 521 (S.D.Cal.2009); *Rev 973 LLC v. Mouren–Laurens,* 2009 WL 273205 at *3 (C.D. Cal. Feb. 2, 2009).

As noted above, MGA's duty to preserve evidence was triggered at the latest on December 12, 2020 when MGA filed its original complaint.  *See Zubulake*, 220 F.R.D. at 216. The obligation was reinforced upon the filing of its First Amended Complaint on March 16, 2021 (Dkt. 16).  At these points, MGA was required to implement a litigation hold to preserve potentially relevant evidence and engage in adequate document collection.

As the record reflects, however, MGA did not have a proper litigation hold nor a document retention policy in place. ("[T]he failure to implement a litigation hold is, by itself, considered grossly negligent behavior." *Richard Green (Fine Paintings) v. McClendo*n, 262 F.R.D. 284, 290 (S.D.N.Y.2009)); *see also Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, at *9 (S.D. Cal. Jan.7, 2008), *vacated in part on other grounds*, 2008 WL 638108 (S.D. Cal. Mar.5, 2008) ("[A]ttorneys and clients must work together to ensure that both understand how and where electronic

22

documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search."). Moreover, MGA has failed to collect relevant documents from its witnesses, either through neglect or because the evidence no longer exists.

The Grand Parties can only surmise as to the full extent of MGA's spoliation, but testimony suggests that repositories containing responsive documents were not searched and not produced. Moreover, MGA's counsel admitted that documents purportedly reflecting the inspiration behind certain OMG Dolls were not produced based on relevance, despite the Grand Parties never limiting the scope of their claims to a subset of OMG Dolls. *See* Ranahan Decl. Ex. O. In addition, third party productions have revealed that documents MGA informed the Grand Parties did not exist, did in fact exist. *See* Ranahan Decl., Ex. BB.

"[S]poliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.... [I]f spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Apple II*, 888 F.Supp.2d at 998 (N.D.Cal.2012). One of the primary areas of the Grand Parties' investigation into MGA's documents was centered on what served as the inspiration behind the OMG Dolls, thus any documents that MGA may have that it used to design the OMG Dolls are not only relevant, but critical to the case. Nearly every discovery request and every deposition has sought this information. *See* Ranahan Decl., Ex. A. Sanctions are warranted where record evidence has shown that discovery from designers was not properly maintained, collected, or searched.

Another key piece of relevant discovery central to the Grand Parties' claims is the research conducted to determine consumers' desires for dolls and how that

impacted how MGA designed the OMG Dolls and whether the results from such research changed their sources of inspiration. And while the Grand Parties have obtained some of this survey discovery from, MGA maintained in its responses that it did not exist. *See* Ranahan Decl., Ex. L, No. 54.

MGA's actions do not comport with their legal obligation to comply with the rules in good faith. *See Housing Rights Center*, 2005 WL 3320739, at *8 (C.D. Cal. Mar. 2, 2005) ("The culpable state of mind factor is satisfied by showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently. . . . Once a duty to preserve attaches, any destruction of documents is, at a minimum, negligent.") (internal quotation marks and citations omitted); *see also In re Napster*, 462 F.Supp.2d at 1078 (imposing an adverse inference where defendant's conduct amounted to gross negligence). In light of the evidence that was not preserved or otherwise withheld, a reasonable fact finder could infer that any missing evidence was unfavorable to MGA. *See Hous. Rts. Ctr. v. Sterling*, 2005 WL 3320739, at *8 (C.D. Cal. Mar. 2, 2005) ("When a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Moreover, as evidenced in depositions and third-party productions, relevant documents exist and have either been purposefully withheld or destroyed due to MGAs lack of a litigation hold and are yet another indication that MGA acted in bad faith.  In addition, the MGA's "purposeful sluggishness in responding to discovery responsibilities can equate to gross negligence[,]" further justifying an imposition of sanctions. *Id.* at *8.

Therefore, based on MGA's failure to implement a litigation hold, preserve and maintain relevant documents, and search for responsive documents, the Court should, at the very least, provide an adverse inference instruction.

The Grand Parties propose the following adverse inference instruction be read to the jury:

**MGA did not satisfy its obligations to preserve all relevant evidence in this case when its duty to do so was triggered. You can use this lack of complete information to infer intent, to infer wrongdoing, to infer willfulness, or to infer knowledge.**

**You may also infer that just because MGA has not turned over certain documents, including any more photographs or files with the OMG Girlz, does not mean such documents never existed, and that such documents may have once existed that were not helpful to MGA's case, or that may have helped the Grand Parties case, but are no longer available.**

### 2. Preclusion Sanctions are Warranted

Additionally, the Court has the power to "exclude evidence that, given the spoliation, would unfairly prejudice an opposing party." *In re Napster*, 462 F. Supp. 2d at 1077 (internal quotation marks and citations omitted). The Grand Parties have been prejudiced by MGA's failure to implement a litigation hold and adequately search for relevant documents. The full extent of the Grand Parties' prejudice is unknown at this point, though it is clear from record evidence, including third party productions that their productions were incomplete.

As a result of MGA's conduct, the Grand Parties have been prejudiced and are unable to fully develop their case or prepare for summary judgment or trial, warranting an imposition of preclusion sanctions, at the least. *See In re Napster*, 462 F. Supp. 2d at 1075-78 (issuing preclusion sanctions where defendant's document destruction policy resulted in the loss of "volumes" of documents over the relevant time period and only a small number of e-mails were produced).

Along these lines, the Grand Parties seek the following:

**MGA shall be precluded from using the incomplete production of mood boards and other incomplete, non-systematic collection of reference photos**

1    **to argue that these mean that the OMG Girlz were never referenced by the**

2    **designers who designed the OMG Dolls.**

3

4    **V.      CONCLUSION**

5          For all the foregoing reasons, the Grand Parties respectfully request that the

6    Court grant its Motion for Sanctions due to Spoliation of Evidence.

7

8    Dated:  May 24, 2022                        WINSTON & STRAWN LLP

9

10

11                                               By:  /s/ *Erin R. Ranahan*

12                                                    Erin R. Ranahan
                                                     Chante B. Westmoreland
13                                                   Bobby Li

14
                                                     *Attorneys for Defendants*
15                                                   *CLIFFORD "T.I." HARRIS, TAMEKA*
16                                                   *"TINY" HARRIS, OMG GIRLZ LLC, and*
                                                     *Counterclaimants GRAND HUSTLE,*
17                                                   *LLC, PRETTY HUSTLE, LLC and OMG*
18                                                   *GIRLZ LLC*

19

20

21

22

23

24

25

26

27

28

DEFENDANTS'/COUNTER-CLAIMANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS DUE TO THE SPOLIATION OF EVIDENCE