1  UMBERG ZIPSER LLP
   Dean J. Zipser (SBN 94680)
2  dzipser@umbergzipser.com
   Mark A. Finkelstein (SBN 173851)
3  mfinkelstein@umbergzipser.com
   1920 Main Street, Suite 750
4  Irvine, CA 92614
   Telephone: (949) 679-0052
5
   MGA ENTERTAINMENT, INC.
6  Elizabeth Lachman (SBN 261644)
   ELachman@mgae.com
7  Laurence Cheng (SBN 306299)
   Laurence.cheng@mgae.com
8  9220 Winnetka Avenue
   Chatsworth, CA 91311
9  Telephone: (818) 894-2525

10 Attorneys for Plaintiff and Counter-Defendant
   MGA Entertainment, Inc., and Counter-Defendant
11 Isaac Larian

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14 MGA ENTERTAINMENT, INC., a          Case No. 2:20-cv-11548-JVS-AGR
   California corporation,             ASSIGNED TO: Hon James V. Selna
15
                                       **OPPOSITION TO DEFENDANTS**
16              Plaintiff,             **AND COUNTER-CLAIMANTS'**
                                       **MOTION TO EXCLUDE**
17 vs.                                 **TESTIMONY OF DR. BRUCE**
                                       **ISAACSON**
   CLIFFORD "T.I." HARRIS, an
18 individual; TAMEKA "TINY" HARRIS,
   an individual; OMG GIRLZ LLC, a     **[REDACTED PUBLIC VERSION]**
19 Delaware limited liability company; and
   DOES 1 - 10 inclusive,
20
                Defendants,
21
   _____
22 GRAND HUSTLE, LLC, PRETTY           Final Pretrial Conference
   HUSTLE, LLC and OMG GIRLZ LLC,      Date:  June 21, 2022
23                                     Time:  8:30 a.m.
                Counter-Claimants,     Place: Courtroom 10C
24                                     Judge: Hon. James V. Selna
   vs.
25
   MGA ENTERTAINMENT, INC.,            Complaint Filed: December 20, 2020
26 ISAAC LARIAN and DOES 1 - 10,       Trial Date:  August 2, 2022
   inclusive,
27
                Counter-Defendants.
28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                    Case No. 2:20-cv-11548-JVS-AGR
                                       OPPOSITION TO MOTION TO EXCLUDE
                                       TESTIMONY OF DR. ISAACSON

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD ...........................................................................2

III.   ARGUMENT........................................................................................3

   A.   The Eveready Format Was Properly Employed Here, and Any Criticisms of that Format go to Weight, not Admissibility ...................................................3

      1.   The Grand Parties Have Alleged, and Testified at Deposition, that the OMG Girlz are "Well-Known." ............................................................4

      2.   The Eveready Survey is Useful Even for Marks that are not "Top of Mind."........................................................................................7

      3.   Dr. Isaacson's Alternate Conclusions are Helpful to the Jury...............11

   B.   Dr. Isaacson Surveyed The Proper Audience..................................................13

   C.   Dr. Isaacson Asked Appropriate Questions ...................................................16

   D.   The Grand Parties Do Not Challenge Dr. Isaacson's Likeness/Misappropriation Survey ..............................................................17

IV.   CONCLUSION...................................................................................17

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                         i                          Case No. 2:20-cv-11548-JVS-AGR
                                                                             OPPOSITION TO MOTION TO EXCLUDE
                                                                             TESTIMONY OF DR. ISAACSON

## CASES

*3M Co. v. Mohan*, No. 09-1413ADM/FLN, 2010 U.S. Dist. LEXIS
    81094 (D. Minn. Aug. 9, 2010)............................................................ 12

*Active Sports Lifestyle USA LLC v. Old Navy, LLC*,
    Case No. SACV 12-00572 JVS (Ex) 2013 WL 11239385
    (Nov. 12, 2013) ....................................................................................... 6

*Akiro LLC v. House of Cheatham, Inc.*,
    946 F. Supp. 2d 324 (S.D.N.Y. 2013)................................................... 13

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988).................................................................. 8

*Citigroup Inc. v. AT&T Services, Inc.*,
    120 U.S.P.Q.2d 1888, 1895–1898, 2016 WL 4362206
    (S.D. N.Y. 2016) ...................................................................................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc*
    509 U.S. 579 (1993)....................................................................... passim

*Fancaster, Inc. v. Comcast Corp.*,
    832 F. Supp. 2d 380 (D.N.J. 2011) ..................................................... 12

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) .............................................................. 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management,
    Inc.*, 618 F.3d 1025 (9th Cir. 2010) .................................................... 19

*GoSmile, Inc. v. Levine*,
    769 F. Supp. 2d 630 (S.D.N.Y. 2011)................................................... 11

*Joules v. Macy's Merchandising Grp.*,
    Civil Action No.: 1:15-cv-03645-KMW (S.D.N.Y. 2016)................... 11

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988)................................................................. 19

*Kelly-Brown v. Winfrey*,
    95 F. Supp. 3d 350 (S.D.N.Y. 2015)..................................................... 11

*Kreation Juicery v. Shekarchi*, Case No. CV 14–658 DMG (ASx),
    2014 WL 7564679 (C.D. Cal. Sept. 17, 2014) .................................... 13

*Kumho Tire Co., Ltd. v. Carmichael*
    526 U.S. 137 (1999)............................................................................ 5, 6

*Limited v. Macy's Merchandising Group Inc*,
    2016 WL 4094913 (S.D. N.Y. 2016)..................................................... 12

*Pharmacia Corp. v. Alcon Laboratories, Inc.*,
    201 F. Supp. 2d 335 (D. N.J. 2002) ..................................................... 19

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010)................................................................... 6

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
    326 F.3d 1333 (11th Cir. 2003 .............................................................. 6

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134, at n.8 (9th Cir. 1997).................................................. 15

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
    987 F. Supp. 2d 1023 (C.D. Cal. 2013) ............................................... 18

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    ii                    Case No. 2:20-cv-11548-JVS-AGR
                                                    OPPOSITION TO MOTION TO EXCLUDE
                                                    TESTIMONY OF DR. ISAACSON

*THOIP v. Walt Disney Co.*,
    690 F. Supp. 2d 218, 2225 (S.D.N.Y. 2010) .................................................. 12

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ........................................................................ 5

*Valador, Inc. v. HTC Corporation*,
    241 F. Supp. 3d 650 (E.D. Va. 2017) ........................................................... 11

*Walker v. Life Ins. Co. of the Southwest*, Case No. CV 10-09198-JVS
    (RNBx), 2018 WL 11362384 (C.D. Cal. Dec. 14, 2018) ............................. 15

*Wendt v. Host Intern., Inc.*,
    125 F.3d 806 (9th Cir. 1997)........................................................................ 15

*White v. Arco/Polymers, Inc.*,
    720 F.2d 1391 (5th Cir. 1983) ....................................................................... 8

*WIZKIDS/NECA, LLC v. TIII Ventures, LLC*,
    2019 WL 1454666 (S.D. N.Y. 2019)............................................................ 12

## OTHER AUTHORITIES

1 *McCarthy on Trademarks and Unfair Competition* (5th ed. 2022)..... 7, 9, 12, 16

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                        iii                        Case No. 2:20-cv-11548-JVS-AGR
                                                                      OPPOSITION TO MOTION TO EXCLUDE
                                                                        TESTIMONY OF DR. ISAACSON

# I.    INTRODUCTION

In a motion filed after the deadline imposed by this Court's Scheduling Order,[1] Defendants and Counter-Claimants (the "Grand Parties") seek to exclude the testimony of Dr. Bruce Isaacson, who was retained by Plaintiff and Counter-Defendants (collectively, "MGA") to conduct consumer surveys in order to test the Grand Parties' claim of a likelihood of consumer confusion based on their alleged trademark and trade dress, as well as to test the claim that the OMG Girlz' likeness was misappropriated.

The Grand Parties' main criticism of Dr. Isaacson's report is that he used the "Eveready" format for his confusion survey. The Grand Parties argue that was improper because they claim that survey is reserved for "well-known" marks and Dr. Isaacson should not have relied on the Grand Parties' allegations of fame in their operative counter-claims, nor should he have relied on the deposition testimony of Ms. Tameka Harris when she confirmed the OMG Girlz are "well-known" throughout the country.

The Eveready format is well-established and highly regarded. Indeed, the Grand Parties' own rebuttal expert witness, Dr. Susan McDonald, opined that the Eveready survey method used by Dr. Isaacson ███████████████████ ████████████████████████████████████████████████ In other words, there is ongoing disagreement amongst certain academics regarding how "well-known" a mark has to be for the Eveready survey to be "appropriate." In addition to disregarding their own allegations and testimony of fame, the Grand Parties cite to only one side of that debate and, on that basis, ask the Court to either

---

[1] The Scheduling Order requires that all motions *in limine*, including *Daubert* motions, be filed and served "a minimum of four (4) weeks prior to the scheduled pretrial date in accordance with Local Rule 6." (Dkt. No. 18, at p. 4.) Thus, this motion was due by May 24, 2022, but was not filed until early in the morning on May 25, 2022, without any request for relief from the Scheduling Order's deadline or even an explanation as to why it could not be timely filed (such as an ECF issue). The Court has discretion, therefore, to disregard this motion. Local Rule 7-12.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                1                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1  exclude Dr. Isaacson's survey "or instruct the jury that his opinions in this case be

2  given minimal weight."  (Mot. to Exclude the Report of Dr. Isaacson ["Mot."], Dkt.

3  No. 189, at 8:1–2.)

4     The Grand Parties also claim that Dr. Isaacson's survey universe was

5  improper, arguing that he should have screened for survey respondents who would

6  be familiar with the OMG Girlz.  But that argument is contrary to the positions

7  taken by their own expert Dr. McDonald and Professor McCarthy.

8     Finally, the Grand Parties take issue with the framing of one of

9  Dr. Isaacson's survey questions, even though—according to Dr. McDonald—

10  Dr. Isaacson asked a standard question that is "used in virtually all confusion

11  surveys in some form."

12     At most, the Grand Parties' criticisms go to the weight, not the admissibility,

13  of Dr. Isaacson's opinions.  They are best left to the rigors of cross-examination,

14  and this motion should be denied.

15  **II.    LEGAL STANDARD**

16     Federal Rule of Evidence 702 provides that witnesses qualified as experts

17  may testify in the form of an opinion if "(a) the expert's scientific, technical, or

18  other specialized knowledge will help the trier of fact to understand the evidence or

19  to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

20  the testimony is the product of reliable principles and methods; and (d) the expert

21  has reliably applied the principles and methods to the facts of the case."  *Id.*

22     In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court

23  recognized and explained the "gatekeeping role" of the trial court to "ensure that

24  any and all scientific testimony . . . is not only relevant, but reliable."  509 U.S. 579,

25  589, 597 (1993); *see also United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.

26  2000).  In a companion case, *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme

27  Court made clear that the principles of *Daubert* apply not just to "scientific"

28  testimony, but to all expert testimony offered under Rule 702.  526 U.S. 137, 151

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    2                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

(1999).  Further, the Supreme Court in *Kumho* explained that "[t]he objective of the [*Daubert*'s gatekeeping] requirement is . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the relevant field."  *Id.* at 152.

In *Daubert*, the Court described several factors used to consider the reliability of expert testimony, including (1) whether a theory "can be (and has been tested)[,]" (2) "whether the theory or technique has been subjected to peer review and publication[,]" (3) "the known or potential rate of error[,]" and (4) whether the theory or method has attained "[w]idespread acceptance."  509 U.S. at 593–94.  Importantly, these factors are used to answer the ultimate question of "whether this particular expert ha[s] sufficient specialized knowledge *to assist the jurors* 'in deciding the particular issues in the case.'"  *Kumho*, 526 U.S. at 156 (citation omitted) (emphasis added).

The court's "gatekeeper role under Daubert is 'not intended to supplant the adversary system or the role of the jury.'"  *Active Sports Lifestyle USA LLC v. Old Navy, LLC*, Case No. SACV 12-00572 JVS (Ex) 2013 WL 11239385, at *10 (Nov. 12, 2013) (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341(11th Cir. 2003)).  That is, the court is not supposed "to make ultimate conclusions as to the persuasiveness of the proffered evidence."  *Id.*; *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

## III.  ARGUMENT

### A.  The *Eveready* Format Was Properly Employed Here, and Any Criticisms of that Format go to Weight, not Admissibility

The Grand Parties' primary argument to exclude Dr. Isaacson is his decision to employ the "Eveready" survey method.  They do not, however, criticize the use of that survey method in general.  This is not surprising, as Dr. McDonald acknowledged in her report that the Eveready format ████████████████

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                  3                    Case No. 2:20-cv-11548-JVS-AGR
                                                          OPPOSITION TO MOTION TO EXCLUDE
                                                          TESTIMONY OF DR. ISAACSON

1 ███████████████████████████████████████████ among experts regarding when

2 an Eveready format should be used.  (Rebuttal Report of Dr. McDonald

3 ["McDonald Report"], Dkt. No. 186-1, at 6:16–19, 6:27–7:7; *see also* Deposition of

4 Dr. McDonald ["McDonald Dep."], attached as Ex. A to Declaration of Mark A.

5 Finkelstein ["Finkelstein Decl."], at 93:16–19 ["█████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████████████████████████████.".].)

8      Professor McCarthy states the following about the Eveready format:

9         A survey format first approved by the Seventh Circuit in

10         its 1976 *Eveready* decision has become a standard and

11         widely accepted survey format for testing to shed light on

12         whether confusion is likely or not.  Many courts have

13         accepted and approved it. The Eveready survey format is

14         widely regarded as an appropriate method of testing for

15         likelihood of confusion.

16 1 *McCarthy on Trademarks and Unfair Competition* § 32:174 (5th ed. 2022).

17      The Grand Parties do not attempt to criticize the Eveready methodology in

18 general, but instead criticize the use of Eveready in this particular case, claiming

19 that the intellectual property at issue has not been proven to be well-known enough

20 for this survey format to be effective.

21      This argument suffers from three main flaws, as follows:

22         1.   <u>The Grand Parties Have Alleged, and Testified at Deposition,</u>

23            <u>that the OMG Girlz are "Well-Known."</u>

24      In the operative counter-claims, the Grand Parties repeatedly allege that the

25 OMG Girlz are "well-known," (Dkt. No. 63, at p. 11, ¶ 50, p. 14, ¶ 2, p. 17, ¶ 19, p.

26 19, ¶ 29, p. 20, ¶ 38) and that "the OMG Girlz have achieved nationwide fame and

27 popularity."  (*Id*. at p. 17, ¶ 18.)  The Grand Parties now seek to avoid responsibility

28 for the accuracy of allegations made in a signed pleading that was filed with the

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{237531.1}                    4                Case No. 2:20-cv-11548-JVS-AGR
                                                OPPOSITION TO MOTION TO EXCLUDE
                                                TESTIMONY OF DR. ISAACSON

1  Court.  (Mot., at 11:7–13 [citing authority for the proposition that "Pleadings are

2  not considered evidence"].)  In fact, "[f]actual assertions in pleadings and pretrial

3  orders, unless amended, are considered judicial admissions conclusively binding on

4  the party who made them."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226

5  (9th Cir. 1988), citing *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.

6  1983).  Dr. Isaacson, therefore, was entitled to rely on allegations the Grand Parties

7  made to this Court and have never withdrawn.

8  　　　In addition, and contrary to the Grand Parties' argument, that pleading was

9  not the "sole" basis to use the Eveready format in this case.  To be sure, Tameka

10  Harris—who was the 30(b)(6) designee on "the fame and notoriety of the OMG

11  Girlz"—was unequivocal in her deposition testimony regarding the Grand Parties'

12  position on how "well-known" the OMG Girlz are throughout the country:



Umberg Zipser llp
Attorneys At Law
Irvine

{237531.1}                    5                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

(Deposition of Tameka Harris, attached as Ex. B to Finkelstein Decl., at 77:8–25.)

The Grand Parties are careful in their motion to avoid asserting that the OMG Girlz are *not* famous or well-known. Instead, they repeatedly claim that Dr. Isaacson should not have made that "assumption." (*E.g.*, Mot. at 9:16–20, 11:7–9, 13:6–11.) It is not surprising that the Grand Parties are unwilling to make such a concession here. Indeed, the day before they filed their *Daubert* motion against Dr. Isaacson, in which they argue that the Eveready methodology is not suitable unless the OMG Girlz are "'well known' by respondents in the relevant universe" (Mot., at 13:16–19), they argued in their summary judgment opposition that the OMG Girlz were "fashion icons," amassed millions of fans, starred in reality TV shows, graced the covers of magazines, and were publicly praised by Lady Gaga and Beyoncé. (Dkt. No. 178–1, at 1:17-24.)

The Grand Parties want to argue that they are well-known in all contexts except in connection with whether the Eveready survey format was appropriate. Professor McCarthy called such a position "risky":

> It is a risky strategy for plaintiff to criticize a low percentage revealed by a defendant's Eveready survey on the ground that plaintiff's mark is not a "top of the mind," well-known trademark. This requires the court to accept that the plaintiff's mark is not familiar enough to the target group of buyers to be the subject of an Eveready survey while at the same time is so well-known to those buyers that the defendant's similar mark will be likely to cause confusion.

1 *McCarthy on Trademarks and Unfair Competition* § 32:174; *see also Citigroup Inc. v. AT&T Services, Inc.*, 120 U.S.P.Q.2d 1888, 1895–1898, 2016 WL 4362206, *7–11, (S.D.N.Y. 2016) (In denying a preliminary injunction, court noted the "tension" between plaintiff's argument that its marks were strong enough that

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                    6                          Case No. 2:20-cv-11548-JVS-AGR
                                                                          OPPOSITION TO MOTION TO EXCLUDE
                                                                          TESTIMONY OF DR. ISAACSON

1  confusion was likely but were not "top-of-mind" so as to be proper for defendant's

2  Eveready survey that showed minimal confusion.).

3       Because the Grand Parties have claimed in pleadings, and in deposition

4  testimony, that they are "well-known," Dr. Isaacson was permitted to accept those

5  representations in conducting his survey.  If the Grand Parties want to try to

6  disavow those allegations, as well as their deposition testimony, at trial, that might

7  impact the weight of Dr. Isaacson's report, but not its admissibility.

8          2.   <u>The Eveready Survey is Useful Even for Marks that are not</u>

9             <u>"Top of Mind."</u>

10       Even if the OMG Girlz are determined not to be "well known" or "top of

11  mind," that does not mean the results of Dr. Isaacson's Eveready survey would not

12  assist the jurors.  In fact, according to a 2019 article published by Hal Poret, a

13  highly regarded survey expert who has conducted more than 500 trademark

14  surveys, Eveready survey results provide meaningful information even for marks

15  that are not famous or well-known.  As Mr. Poret explained, if a senior user's mark

16  is almost entirely unknown to the general public, and if an Eveready survey shows

17  no confusion, "the fact that prospective consumers of the junior user may not be

18  aware of the senior mark does not render the finding of the Eveready survey (0%

19  confusion) inaccurate or unreliable.  Rather, lack of awareness of the senior mark

20  may serve to explain *why* confusion is not likely to occur—both in the survey and in

21  the real world—namely, because confusion simply will not occur when consumers

22  are both unaware of the senior mark and unlikely to encounter the senior mark in

23  reasonably close proximity to the junior mark in the marketplace."  Hal Poret, *An*

24  *Empirical Assessment of the Eveready Survey's Ability to Detect Significant*

25  *Confusion in Cases of Senior Marks That Are Not Top-of-Mind*, 109 Trademark

26  Rptr. 935, 954 (2019), attached as Ex. C to Finkelstein Decl. (emphasis added).

27       Indeed, this is exactly one of the conclusions reached by Dr. Isaacson in his

28  expert report:

Umberg Zipser LLP
Attorneys At Law
Irvine

{237531.1}         7        Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1       Confusion can occur only when marks interact in some manner.

2       For example, interaction could take place cognitively, in

3       consumers' minds, such as when consumers know of one mark

4       and see another mark that is confusingly similar. The results of

5       my confusion survey indicate that the L.O.L. Surprise! O.M.G.

6       Dolls and the OMG Girlz do not interact in a manner that is

7       likely to result in confusion, either because the L.O.L. Surprise!

8       O.M.G. Dolls and OMG Girlz are not confusingly similar, or

9       because the OMG Girlz are not famous and not well-known, or

10      because both conditions are true, meaning that the L.O.L.

11      Surprise! O.M.G. Dolls are not confusingly similar and the

12      OMG Girlz are not well-known.

13  (Dkt. No. 144-2 ["Isaacson Report"], at p. 51.)

14       In his article, Mr. Poret concluded that "the proposition that there must

15  always be consumer awareness of a senior mark for an Eveready survey to

16  accurately assess whether confusion is likely to occur in the actual marketplace is

17  objectively unsupportable."  109 Trademark Rptr. at 954.  As Mr. Poret points out,

18  "many courts have accepted in evidence and/or relied on Eveready surveys in cases

19  where the relevant mark did not have high consumer awareness, but where an

20  Eveready survey was the appropriate replication of marketplace conditions.  *Id*. at

21  n.11, citing *Valador, Inc. v. HTC Corporation*, 241 F. Supp. 3d 650,  669 n.22

22  (E.D. Va. 2017) (Valador's VIVE mark) (noting that defendant's Eveready survey

23  finding 0% confusion was conducted in accordance with "well settled and accepted

24  methods" although unnecessary to support the court's finding of no confusion);

25  *Joules v. Macy's Merchandising Grp.*, Civil Action No.: 1:15-cv-03645-KMW

26  (S.D.N.Y. 2016) (accepting Eveready survey where senior mark was JOULES);

27  *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 362 (S.D.N.Y. 2015) (accepting

28  Eveready survey where senior mark was OWN YOUR POWER); *GoSmile, Inc. v.*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}      8      Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

*Levine*, 769 F. Supp. 2d 630, 643 (S.D.N.Y. 2011) (accepting Eveready survey where senior mark was GOSMILE mark); *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 405-07 (D.N.J. 2011) (crediting results of Eveready survey commissioned by defendant); *THOIP v. Walt Disney Co*., 690 F. Supp. 2d 218, 2225-27 (S.D.N.Y. 2010) (declining to exclude results of Eveready survey commissioned by defendant); *3M Co. v. Mohan*, No. 09-1413ADM/FLN, 2010 U.S. Dist. LEXIS 81094, at *21 (D. Minn. Aug. 9, 2010) (accepting Eveready survey where senior mark was Littman stethoscope design mark).

Here, Dr. Isaacson concluded that his survey *did* replicate marketplace conditions because he is "not aware of any allegation that the L.O.L. Surprise! O.M.G. Dolls and OMG Girlz share a marketplace setting." (Isaacson Report, at p. 51 n.99.) Similarly, Dr. McDonald conceded that ██████████████████████ ███████████████████████████████████████████████████████████ ███████████████████ (McDonald Report, at p. 9.)

In their motion, the Grand Parties ignore Mr. Poret's article and, instead, cite to an article written by Jerre Swann. (Mot., at 10:14–19.) That there is not uniform agreement on this issue by experts in the field does not render Dr. Isaacson's report inadmissible.

Indeed, Professor McCarthy states that the "courts have not adopted" the restriction that is being advanced by the Grand Parties—that an Eveready survey is appropriate only if the senior mark is "top-of-mind." 1 *McCarthy on Trademarks and Unfair Competition* § 32:174, citing *Limited v. Macy's Merchandising Group Inc*, 2016 WL 4094913, *10 (S.D. N.Y. 2016), *aff'd*, 695 Fed. Appx. 633 (2d Cir. 2017) (rejecting plaintiff's argument that defendant's Eveready format was "inappropriate where a mark is not widely known or recognized" and should be used "only when the senior mark has 'top-of-mind' awareness." No likelihood of confusion was found.); *WIZKIDS/NECA, LLC v. TIII Ventures, LLC*, 2019 WL 1454666, *12 (S.D.N.Y. 2019) (Defendant submitted an Eveready-type survey to

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    9                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1   prove a lack of likelihood of confusion and plaintiff (citing the Swann article)

2   challenged it because its mark was not "top-of-mind." "But [plaintiff] cites no case

3   and the court has found none, in which an Ever-ready survey was excluded on the

4   grounds that the mark being tested was not so strong as to be considered a 'top-of-

5   mind' mark." Granted summary dismissal of the infringement claim.).

6       In *Kreation Juicery*, the main case relied upon by the Grand Parties, the

7   Court was considering a motion for a preliminary injunction and did *not* exclude

8   Dr. Isaacson's survey. This decision is thus consistent with Professor McCarthy's

9   observation. The Court decided that, because "Kreation" was not well known, that

10  impacted the *weight* of the survey. *Kreation Juicery v. Shekarchi*, Case No. CV

11  14–658 DMG (ASx), 2014 WL 7564679, at n. 4 (C.D. Cal. Sept. 17, 2014); *cf Akiro*

12  *LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 334 (S.D.N.Y. 2013) (the

13  Court praised Dr. Isaacson's use of the Eveready format, saying that it "easily

14  concludes for purposes of this motion that MISS JESSIE'S is a strong mark.").

15      The Grand Parties' efforts to portray Dr. Isaacson's survey as being in

16  conflict with an article he co-authored, which discusses the proper context for using

17  an Eveready format, are similarly unpersuasive. (Mot., at 13:14–23.) As

18  Dr. Isaacson testified at length in his deposition, the Grand Parties misread

19  Dr. Isaacson's article. (Deposition of Dr. Isaacson ["Isaacson Dep."], attached as

20  Ex. D to Finkelstein Decl., at 182:11–185:23 ["what I am describing [in the article]

21  is two poles in the debate over when to use an Eveready survey. And then in the

22  next paragraph, I go on to reconcile those two seemingly contradictory

23  positions."].) The Grand Parties' quotation to that article is incomplete and, thus,

24  misleading. Dr. Isaacson's article assesses "conflicting views as to when to use an

25  Eveready survey to measure likelihood of confusion" and concludes that "a wider

26  range of brands may be appropriate for Eveready surveys than was previously

27  appreciated." Bruce Isaacson and Keith Botner, *When to conduct an "Eveready"*

28  *Survey: The importance of Aided Awareness*, 111 Trademark Rep. 694, 709 (2021),

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    10                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1   attached as Ex. E to Finkelstein Decl.

2       The Grand Parties also argue that Dr. Isaacson should have conducted an

3   initial awareness survey, and they cite to a prior matter in which they claim that

4   Dr. Isaacson "did in fact take preliminary steps" that included an awareness survey.

5   (Mot., at 11:14–26.)  In that matter, the Plaintiff was relatively new to the

6   marketplace and did not claim to be well-known or famous.  Thus, as Dr. Isaacson

7   wrote in his article, "It is not always necessary to conduct an awareness survey to

8   evaluate whether the context is appropriate for Eveready . . . ."  111 Trademark

9   Rep. at 710.

10       Finally, the Grand Parties suggest that, instead of an Eveready format,

11   Dr. Isaacson "could have relied upon the Squirt format." (Mot., at 14:7–8.)  As

12   Dr. Isaacson explained in his deposition, that format would "absolutely not" be

13   appropriate in this case. (Isaacson Dep., at 219:1–220:9.)  Even the Grand Parties'

14   own expert, when asked if she would have used a Squirt survey here, replied

15   ██████████████████████████████████████████████████

16   ████████████████████████████████ (McDonald Dep., at 94:12–95:11;

17   106:22–107:18.)

18       Finally, the Grand Parties try to claim that, because nobody was confused,

19   that must mean that the survey was somehow improper. (Mot., at 14:22–15:18.)

20   MGA argues that nobody was confused because there is no confusing similarity

21   between the L.O.L. Surprise! O.M.G. dolls, on the one hand, and the OMG Girlz,

22   on the other hand.  That the parties do not agree what conclusions can be drawn

23   from an expert survey report is not grounds to exclude the report.  Instead, the

24   Grand Parties are free to cross-examine Dr. Isaacson at trial and the jury can decide

25   how much weight to give his report and opinions.

26       3.    Dr. Isaacson's Alternate Conclusions are Helpful to the Jury.

27       Dr. Isaacson explained that the results of his survey would occur "either if the

28   L.O.L. Surprise! O.M.G. Dolls are not confusingly similar to the OMG Girlz, or if

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}          11          Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1    the OMG Girlz are not well-known, or if both conditions are true." (Isaacson

2    Report, Dkt. No. 144-2, ¶ 121). The Grand Parties claim that these conclusions are

3    "in complete contradiction," and that Dr. Isaacson "improperly relied upon" the

4    survey to conclude that the OMG Girlz are not well-known. (Mot., 12:18–

5    13:11.) The Grand Parties have not explained why these conclusions are

6    contradictory, nor can they. If the OMG Girlz are not well-known (despite the

7    Grand Parties' judicial admissions and testimony to the contrary), it is still possible

8    that MGA's dolls are unlikely to be confused with the OMG Girlz, as explained

9    above and elsewhere in Dr. Isaacson's report.

10        But even if the Grand Parties are able to convince the jury that Dr. Isaacson's

11   survey only confirms that the OMG Girlz are not well-known, and says nothing

12   about likelihood of confusion, that conclusion itself is helpful to the trier of fact,

13   making Dr. Isaacson's testimony admissible. To be sure, that conclusion directly

14   contradicts allegations and testimony given by the Grand Parties, and is relevant to

15   other issues in this case, including the element of secondary meaning and whether it

16   is possible for confusion to exist in the marketplace. Dr. McDonald herself claimed

17   that ███████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████

19   ████████████████████████ (McDonald Dep., at 44:8–24.)

20        As the Ninth Circuit has made clear, "[i]n trademark cases, surveys are to be

21   admitted so long as they are conducted according to accepted principles and are

22   relevant." *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). Thus,

23   "[c]hallenges to survey methodology go to the weight given the survey, not its

24   admissibility." *Id.*; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d

25   1134, at n.8 (9th Cir. 1997) (ruling that "as long as they are conducted according to

26   accepted principles," "survey evidence should ordinarily be found sufficiently

27   reliability under *Daubert*." (internal citation omitted); *Walker v. Life Ins. Co. of the*

28   *Southwest*, Case No. CV 10-09198-JVS (RNBx), 2018 WL 11362384, at *3 (C.D.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    12                    Case No. 2:20-cv-11548-JVS-AGR
                                                    OPPOSITION TO MOTION TO EXCLUDE
                                                    TESTIMONY OF DR. ISAACSON

1   Cal. Dec. 14, 2018) ("Criticisms such as the format of the surveys . . . go to the

2   weight of the survey results.").

3   **B.    Dr. Isaacson Surveyed the Proper Audience**

4   As explained in the *Daubert* motion filed as to Dr. McDonald (Dkt. No. 185),

5   the Grand Parties' criticism as to the universe that Dr. Isaacson should have

6   surveyed is based on inaccurate facts.  Thus, this criticism as to Dr. Isaacson cannot

7   form a basis to exclude his survey under Rule 702 and *Daubert*.

8   Dr. McDonald criticized Dr. Isaacson's survey, asserting that the survey did

9   not "fit the target market definition."  McDonald Report, at 10:4-5.  Dr. McDonald

10  agrees that, in a forward confusion case, the proper survey universe is the potential

11  buyers of the <u>junior user's</u> goods or services:

12  █  ████████████████████████

13  ████████████████████████████

14  ████████████████████████

15  █  █████████████

16  (McDonald Dep., at 34:2–6.)

17  This is consistent with Professor McCarthy's view.  1 *McCarthy on*

18  *Trademarks and Unfair Competition* § 32:159 ("In a traditional case claiming

19  "forward" confusion . . . the proper universe to survey is composed of the potential

20  buyers of the *junior* user's goods or services" (emphasis in original)).  Further,

21  Dr. McDonald agrees that, here, MGA is the "junior user."  (McDonald Dep., at

22  97:5–7.)

23  Accordingly, Dr. McDonald agrees that Dr. Isaacson should have surveyed

24  MGA's potential buyers since he ██████████████████████ (*Id.*, at

25  33:7–15.)  Nevertheless, the Grand Parties fault Dr. Isaacson for failing to "put in

26  place any sampling criteria that would allow the universe to reflect respondents who

27  would (1) [*sic*] have known or would be likely to know the OMG Girlz, as required

28  when implementing a 'Eveready' survey or purchase [*sic*] O.M.G. Dolls."  Mot., at

Umberg Zipser llp
Attorneys At Law
Irvine

{237531.1}                                    13                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    OPPOSITION TO MOTION TO EXCLUDE
                                                                    TESTIMONY OF DR. ISAACSON

20:3-6.[2]  That is, the Grand Parties argue that, contrary to the opinions of their own expert and of Professor McCarthy, Dr. Isaacson should not have surveyed MGA's potential buyers, but instead should have made sure survey respondents would know the OMG Girlz.  This argument should be rejected.

Echoing the conclusion reached by their rebuttal expert, the Grand Parties next argue that diversity should have been an important component of Dr. Isaacson's survey universe because the L.O.L. Surprise! O.M.G. dolls "are diversity-themed dolls that specifically appeal to diverse consumers . . . ." (*Id*. at 20:7–9.)  The Grand Parties do not provide any support for their conclusion that the L.O.L. Surprise! O.M.G. dolls are not meant to appeal to all consumers of all ethnicities and backgrounds.  In fact, there is no evidence for such a claim.  As explained in MGA's motion to strike portions of Dr. McDonald's report, Mr. Larian testified that, for the L.O.L. Surprise! O.M.G. Dolls, ██████████ ██████████████████████████████████ (Deposition of Isaac Larian, Dkt. No. 212-3, at 254:16–18 [emphasis added].)

Other MGA witnesses have also testified that MGA markets and sells its dolls to everyone, and not solely diverse people. ████████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████ ██████████████████████████ ████████████████████████████████████ ███████████████

The Grand Parties also argue that Dr. Isaacson should have qualified survey

---

[2] Lines 1-3 of page 20 are redacted, but the Grand Parties neither filed, nor served, an unredacted version of their motion.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}    14    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

1  participants among other lines, such as parenthood or certain (undefined)

2  socioeconomic status.  (Mot. at 22:5–13.)  L.O.L. Surprise! O.M.G. dolls are

3  described as a "fashion doll" on the packages measured in his survey, so

4  Dr. Isaacson appropriately screened for consumers likely to purchase the category

5  as it is described by MGA.  (Isaacson Dep., at 110:5–111:7, 114:10–117:22; 136:7–

6  137:25 [explaining that screening for parents would be "a terribly under-inclusive

7  universe," and screening for age, income, or diversity "wouldn't be appropriate for

8  a survey like this."].)

9      While the Grand Parties claim Dr. Isaacson should not have focused on

10  "fashion-doll" purchasers, Dr. McDonald herself agreed that the products are sold

11  as fashion dolls and she did not think ██████████████████████████

12  ███  (McDonald Dep., at 133:2–21, 134:23–135:9.)

13      The Grand Parties also claim—again without any supporting evidence—that

14  "[i]t is among non-white consumers where opportunities for relevant brand

15  awareness and risk of confusion are greatest . . . ."  (Mot., at 21:6–8.)

16  Dr. Isaacson's survey was very large—with about 2800 interviews, it is one of the

17  largest surveys Dr. Isaacson has ever conducted.  (Isaacson Dep., at 71:3–6.)  The

18  confusion was *zero* across *everyone*—including all diverse survey respondents.

19  (*See id.*, at 115:25–116:12 [explaining that "one of the reasons why online surveys

20  are considered reliable is -- is that they represent the general population of the U.S.

21  So one would expect that, for a survey like this, the universe would look a lot like --

22  in terms of racial and ethnic, one would expect the survey population to look like --

23  a lot like the general population of the U.S."].)

24      Dr. Isaacson's survey universe was entirely appropriate and sound, and any

25  criticism of that universe goes to weight.  *E.g., Stonefire Grill, Inc. v. FGF Brands,*

26  *Inc.*, 987 F. Supp. 2d 1023, 1038 (C.D. Cal. 2013) ("Dr. Jacoby's critiques of the

27  survey on the basis of the test protocol used, the universe defined and tested, and

28  the questions asked go to the weight, not the admissibility of the survey.").

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                    15                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

### C.    Dr. Isaacson Asked Appropriate Questions

For their final critique of Dr. Isaacson, the Grand Parties argue that his survey is "inherently flawed" because it included a "permission" question.  (Mot., at 22:4–24:5.)

Dr. Isaacson did not merely ask a simple "permission" question.  Instead, he asked a series of questions, including questions about who makes or puts out the doll and/or package (Question 1), what other products or services are made or put out by whoever makes or puts out the doll and/or package (Question 4), and what company or person gave permission or approval to whoever makes or puts out the doll and/or package (Question 7).  (Isaacson Report, at pp. 18–19.)

While the Grand Parties claim that Dr. Isaacson's "permission" question was somehow inappropriate, their expert called the question ███████████████████ ████████████████████████████████████████████████ (McDonald Report, at 12:25–16, 13:16–17.)  S*ee, e.g., Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1070 (9th Cir. 2015) (holding that a jury could rely on permission/approval question survey evidence to find likelihood of confusion); *Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp. 2d 335, 365-66 (D. N.J. 2002) (relying on an expert who conducted a survey that used a "permission" question, in ruling on an injunction motion, finding the expert was a "very credible witness").

The Grand Parties' criticism of the framing of one of the survey questions goes to the weight of the survey.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("Furthermore, we have made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." ) (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                16                    Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON

**D.    The Grand Parties Do Not Challenge Dr. Isaacson's Likeness/Misappropriation Survey**

Dr. Isaacson performed two separate surveys—a confusion survey and a likeness/misappropriation survey.  (*See* Isaacson Report, Dkt. No 144-2.)  Although the Grand Parties' motion is styled to exclude "the testimony of Dr. Bruce Isaacson," the body of the motion does not challenge Dr. Isaacson's likeness survey.  One sentence in the introduction mentions the likeness survey (Mot., at 7:26-28), but that survey is not addressed anywhere in the body of the motion.  That one sentence is not sufficient to raise a *Daubert* challenge as to that portion of Dr. Isaacson's report, nor may that survey be challenged for the first time in reply.  To the extent that sentence is intended to mimic arguments made by Dr. McDonald, MGA refers the Court to its motion to strike Dr. McDonald's report.  (Dkt. No. 185.)

Thus, Dr. Isaacson's likeness/misappropriation survey should not be excluded under any circumstances.

## IV.    CONCLUSION

Accordingly, and for the foregoing reasons, to the extent this Court accepts the late-filed motion to exclude Dr. Isaacson's testimony, it should be denied.

Dated: May 29, 2022                                    UMBERG ZIPSER LLP

_____
Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}                                    17                        Case No. 2:20-cv-11548-JVS-AGR
                                                                        OPPOSITION TO MOTION TO EXCLUDE
                                                                        TESTIMONY OF DR. ISAACSON

1

## **PROOF OF SERVICE**

2
3

    I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 1920 Main Street, Suite 750, Irvine, CA 92614.

4
5
6

    On May 31, 2022, I served on the interested parties in this action the within document(s) entitled:  **OPPOSITION TO DEFENDANTS AND COUNTER-CLAIMANTS' MOTION TO EXCLUDE TESTIMONY OF DR. BRUCE ISAACSON**

7
8
9

    [ X ]    **BY EMAIL:**  The document was sent electronically to each of the individuals at the email addresses(es) indicated on the attached service list, pursuant to C.C.P. Section 1010.6 and C.R.C. Rules 2.256 and 2.251. The transmission as made with no error reported.

10
11
12
13
14

    Erin R. Ranahan
    Jiepu (Bobby) Li
    WINSTON & STRAWN LLP
    333 S. Grand Avenue
    Los Angeles, CA 90071-1543
    Telephone: (213) 615-1700
    Facsimile:   (213) 615-1750
    Email: eranahan@winston.com
    Email: bli@winston.com

15
16
17
18

    Chante B. Westmoreland
    WINSTON & STRAWN LLP
    800 Capitol St., Suite 2400
    Houston, TX 77002
    Telephone: (713) 651-2794
    Facsimile:   (713) 651-2700
    Email: cwestmoreland@winston.com

19
20

    Attorneys for Attorneys for Defendants
    and Counter-Claimants

21
22

    I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.  Executed on May 31, 2022, at Irvine, California

23
24
25

_____
Patricia Grenner

26
27
28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{237531.1}          18          Case No. 2:20-cv-11548-JVS-AGR
OPPOSITION TO MOTION TO EXCLUDE
TESTIMONY OF DR. ISAACSON