Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Bobby Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@winston.com
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002
Telephone: (713) 651-2794
Facsimile: (713) 651-2700

*Attorneys for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS,
OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC,
PRETTY HUSTLE, LLC and OMG GIRLZ LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Cross-Complainants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br><br>**DEFENDANTS AND COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS AND COUNTER DEFENDANTS' MOTION *IN LIMINE* NO. 3 REGARDING ACCUSATIONS OF CULTURAL APPROPRIATION AND RACISM**<br><br>**Hearing:** June 21, 2022<br>**Time:** 8:30 a.m.<br>**Place:** Courtroom 10C<br>**Judge:** Hon. James V. Selna<br><br>[PUBLIC VERSION -- REDACTED] |

## I. INTRODUCTION

Counter-Claimants OMG Girlz LLC, Pretty Hustle LLC, and Grand Hustle LLC (the "Grand Parties") have no intention of asserting at trial any claim or allegation of "cultural appropriation," or accusing anyone of "racial bias." The Grand Parties are not seeking damages here for MGA misappropriating any particular culture or as a result of any racism by MGA, but for MGA producing its L.O.L. Surprise! O.M.G. Dolls ("OMG Dolls") in a manner that trades off the specific intellectual property owned by the Grand Parties regarding the OMG Girlz. Accordingly, and consistent with the prior order by the Court, MGA's Motion *in Limine* No. 3 is unnecessary.

While the parties could have stipulated to this had there been a more fulsome pre-filing discussion about the basis for this motion, it appears that MGA may be seeking an order that extends beyond these reasonable boundaries of precluding the stricken allegations regarding cultural appropriation and accusations of racial bias. Instead, MGA appears to seek to improperly restrict the Grand Parties from presenting to the jury pertinent facts about this case that implicate racial diversity issues.

As broad as the preclusion order MGA seeks, the Grand Parties could arguably be foreclosed from:

(a) discussing the likely demographics of both the fans of the OMG Girlz and likely purchasers of the OMG Dolls;

(b) challenging Dr. Isaacson's "universe" of OMG Dolls' consumers;

(c) asking about statements in MGA's own marketing and consumer research results;

(d) asking about public statements by MGA that relate to its express and repeated commitment to diversity;

(e) asking about other testimony provided in this case.

There are certain pertinent facts and evidence in this case from both sides that inevitably implicate race, and the Grand Parties should not be foreclosed from eliciting any relevant testimony or fact because MGA claims it might tangentially or remotely

1

1  imply some arguable or perceived racial bias. Indeed, facts bearing on racial diversity
2  are necessary so that the Grand Parties may demonstrate why a jury can infer that
3  confusion resonates far higher with the population that overlaps as being both fans of
4  the OMG Girlz and within the likely and intended market of the OMG Dolls. The Court
5  should reach an appropriate balance here and limit any restriction to referencing
6  "cultural appropriation" or accusations of racism while allowing the facts of the case to
7  come in with necessary substance and context.

## II. FACTUAL BACKGROUND

### A. The OMG Girlz' Fans and The Relevant Markets at Play Here

Though the OMG Girlz are multi-racial and have millions upon millions of fans from all different racial backgrounds, they resonate most strongly with female Black Americans age 35 and under. The OMG Girlz



███████

[*See* Westmoreland Decl., Ex. N.]

This information about racial and other demographics of OMG Girlz fans relates squarely to the potential level of confusion present among the parties' respective markets, especially when contrasted to the flawed universe that Dr. Isaacson tested in his survey. [*See* Westmoreland Decl., Ex. G 263:7-13.] Indeed, Dr. Isaacson concluded there was no confusion amongst a poll of mostly older (over 35) survey participants, who may all be repeat survey takers that have never considered purchasing an OMG Doll. [*See id*.] Yet in certain communities, including fans of reality TV, multiple consumers have been confused into believing that the OMG Dolls were affiliated with the OMG Girlz. [*See, e.g.*, Declarations of Confused Consumers, Dkts. 161-166.]

Indeed, when OMG Girlz member, Zonnique Pullins, polled her fans, 95% out of over 16,000 people agreed there was recognizable invocation of the OMG Girlz' brand that warranted some recognition or compensation:



Similarly, the Shade Room, a well-known Instagram page very popular with non-white populations that has over 26 million followers also showed strong support for finding familiarity between the OMG Girlz and the OMG Dolls.



Under the broad relief sought by MGA here, lodging a challenge to MGA's expert Dr. Isaacson's survey method could be perceived as improperly inferring racial bias for ignoring any racial diversity issues altogether, despite being aware that MGA's goal is to appeal to racially diverse consumers. Dr. Isaacson's standard method defaulted generally to the census demographics, with the exception of skewing higher with females, as opposed to seeking to account for the likely or actual more racially diverse (and younger) market for the OMG Dolls that likely overlaps with the OMG Girlz' fanbase. Because MGA has not tracked this information precisely, the Grand Parties are only left to present available information to allow the jury to make reasonable inferences into the levels of potential confusion. The Grand Parties should not be prevented from allowing the jury to infer the overlap between the OMG Girlz' fans and the OMG Dolls' market with the relief sought here.

In fact, Dr. Isaacson testified that he had never attempted to factor in racial diversity into any of his surveys, thus ensuring that his research will inevitably underestimate confusion where brands resonate well within certain racial minorities,

1  because they are considered to essentially wash out amongst the standard United States
2  population. There should not be a presumption that Dr. Isaacson's overly broad market
3  was proper to apply here, as explained in part by Dr. McDonald, especially when the
4  market for the OMG Dolls also likely resonates higher in non-white communicates than
5  other more conventional fashion dolls. [Westmoreland Decl., Ex. M.] Clearly these
6  issues are disputed in this case, which could arguably be precluded under MGA's overly
7  broad framing of Motion *in Limine* No. 3.

### B. The OMG Dolls Appeal to Racially Diverse Consumers

According to MGA's own witnesses, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [*See* Westmoreland Decl., Ex. A at 250:19-253:4.] MGA's Mr. Larian claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

MGA's Ms. Kathy Brandon testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*See* Westmoreland Decl., Ex. B at 184:15-186:9.] MGA's Kotomi Nanjo testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [*See* Westmoreland Decl., Ex. C at 175:2-176:18.]

MGA and OMG Dolls designer, Lora Stephens, is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Westmoreland Decl., Ex. D at 105:14-24, 342:5-20.]

1     MGA's witness Ms. Mosche testified that 

6     [Westmoreland Decl., Ex. U at 50:11-19.]

7 MGA undertook specific promotions of the OMG Dolls for Black History month. *Id.* at 53:8 - 54:3.

9     MGA's former head designer Blanche Consorti noted that

13 [Westmoreland Decl., Ex. F at 148:13-20.]

14     Ms. Chelsea Green, who took over after Ms. Consorti left, testified that

18 [Westmoreland Decl., Ex. S at 66:1-67:12.]

19     A recent MGA marketing survey found nearly a 20% point swing between non-white moms and white moms when it came to approval of an initial commercial spot. [Westmoreland Decl., Ex. M.] The percentage of "Ethnic" moms who gave the commercial the highest score was 55%, while only 38% of white moms ranked the commercial equally as high. *Id.* Presumably the same outcome in approval disparity is potentially likely with the OMG Dolls themselves, creating a potential inference that Dr. Isaacson has underestimated confusion.

26     In other words, while MGA—a company that makes billions each year from its dolls—of course wants to sell broadly and massively to the American population at large, the way the OMG Dolls are designed and marketed can be reasonably expected

1  to have a greater percentage of non-white moms in their market, as many white moms
2  would be expected to opt for more conventional dolls like Barbie or American Girl
3  dolls.  [*See* Westmoreland Decl., Ex. Z at 10.]  And because of this evidence—none of
4  which implies cultural bias—at least there is a reasonable inference a jury could make
5  that there is likely considerable market overlap between the OMG Girlz fanbase and the
6  OMG Dolls actual or likely (as opposed to broadly targeted) market.
7      While the Grand Parties sought to obtain a complete reservoir of consumer
8  research about the OMG Girlz in an effort to learn who the actual market for the OMG
9  Dolls was, MGA provided only an incomplete set of these research studies, as evidenced
10 by the research produced by third parties in response to subpoenas. *See* Dkt. 192, Ex.
11 BB.

**C. The Court's Prior Rulings**

13     The Order on the motion to strike in this case (Dkt. 53) was responding to specific
14 allegations that have been struck from the Complaint about "cultural appropriation"—
15 which the Grand Parties do not seek to enforce as a claim and have no intent to raise at
16 trial.
17     MGA's Motion *in Limine* No. 3 does not simply seek to restrict argument or
18 mention of cultural appropriation or accusations of racial bias, but MGA makes the
19 vague and amorphous request that the Grand Parties be restricted "from arguing or
20 offering, or seeking to elicit, testimonial or documentary evidence" *that "implies or in*
21 *any way suggests"* that Counter-Defendants are racist.
22     Moreover, misappropriation from other celebrities is not the equivalent of
23 cultural appropriation. The Grand Parties should be allowed to make the argument that
24 they used other celebrities as a source of inspiration, so had no enforced policies
25 stopping it here either, as such introducing such facts are not the same as calling MGA
26 racist or as having appropriated other cultures.

### III. LEGAL DISCUSSION

MGA spends much of its discussion raising issues that were resolved many months ago, which it then uses in an effort to exclude a host of relevant topics and evidence for any purpose, even legitimate purposes. This is improper. Indeed, MGA phrases its requested relief in an unspecific manner, which could result in excluding from this case basic relevant facts depending on how broadly one determines subjectively that a subject could be implied or suggestive of certain racial biases, even if it was not introduced for that purpose.

For instance, can the Grand Parties ask about MGA's design features that expressly implicate race? Or that MGA prides itself on "inventing diversity" to expand the doll purchasing market by offering dolls that resemble more than blonde and blue-eyed girls? May the Grand Parties challenge MGA's alleged inspiration for the dolls and how MGA generally handles its intellectual property issues? May the Grand Parties inquire as to which sources MGA admits to pulling from? The list of questions that MGA's overly broad request here may cut off is extensive. The Motion should be denied or limited expressly to claiming cultural appropriation or accusing witnesses of racial bias.

### IV. CONCLUSION

This motion is unnecessary, as the Grand Parties will not reference cultural appropriation or argue that racial bias has any bearing on the claims at issue. But the Court should decline MGA's attempt to foreclose introduction of relevant facts and context that is key to understanding this case. The Court should limit any restriction here to allegations of cultural appropriation and express accusations of racial bias.

Dated: May 31, 2022                    WINSTON & STRAWN LLP

                                       By: */s/ Erin R. Ranahan*
                                       Erin R. Ranahan