## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**REDACTED**

Proceedings:   **[IN CHAMBERS] Order Regarding Motion for Summary Judgment**

Plaintiffs/Counter-Defendants MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") (together, "Counter-Defendants") moved for summary judgment, or in the alternative, partial summary judgment, on the counterclaims of Defendants/Counterclaimants Grand Hustle, LLC ("Grand Hustle"), Pretty Hustle, LLC ("Pretty Hustle"), and OMG Girlz, LLC ("OMG Girlz") (collectively, "Counterclaimants"). Mot., Dkt. No. 157.[1] Counterclaimants filed an opposition. Opp'n, Dkt. No. 204.[2] Counter-Defendants replied. Reply, Dkt. No. 216.

Both parties filed requests for hearing. Counter-Def. Hearing Request, Dkt. No. 305; Countercl. Hearing Request, Dkt. No. 298. The parties submitted additional responses regarding Counterclaimants' initial hearing request. Dkt. Nos. 308, 312, 314, 317. Having considered the parties' briefing, the Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15.

For the following reasons, the motion is **GRANTED** in part and **DENIED** in part. Parties shall meet and confer and submit proposed redactions to this Order within fourteen days of the entry of this Order.

---

[1] Counter-Defendants filed a redacted motion, Dkt. No. 142, but the Court will refer throughout the order to the unredacted memorandum of points and authorities, Dkt. No. 157.

[2] Counterclaimants filed a redacted version of their opposition, Dkt. No. 160, but the Court will refer throughout the order to the unredacted memorandum of points and authorities filed in opposition under seal, Dkt. No. 204.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)          Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

# I. BACKGROUND

### A.   The OMG Girlz and the OMG Dolls

MGA is a toy giant that designs, develops, markets, and distributes children's toys. In 2001, MGA released the enormously successful "Bratz" doll. Decl. of Erin Ranahan ("Ranahan Decl."), Ex. A ("Larian Dep."), Dkt. No. 204-6 at 22.[3] MGA CEO Isaac Larian credits MGA with having "invented diversity in dolls," starting with the Bratz doll. Id. at 24.

In 2009, Tameka Harris formed a female vocal group called the OMG Girlz. Decl. of Tameka "Tiny" Harris ("Tameka Harris Decl."), Dkt. No. 169 ¶ 3. The core group of OMG Girlz became Zonnique Pullins, Breaunna Womack, and Bahja Rodriguez. Tameka Harris Decl. ¶ 4. The OMG Girlz signed first with Tameka Harris's company, Pretty Hustle, and eventually with the major record label, Interscope Records. Decl. of Breaunna Womack ("Womack Decl."), Dkt. No. 178-7 ¶ 3.

Tameka Harris, along with a friend, Lakiesha Miles, came up with the name "OMG" in connection with the OMG Girlz. Statement of Genuine Issues ("SGI"), Dkt. No. 178-2 ¶ 10. In 2013 or 2014, it was decided that the "OMG" in the OMG Girlz's name stood for "Officially Miss Guided." SGI ¶ 11. OMG is otherwise a common acronym that means "oh my god."

The OMG Girlz have worked with and been recognized by some of the biggest names in the music industry, including T.I., Lil Wayne, Drake, Xscape, Beyoncé, and Lady Gaga. Tameka Harris Decl. ¶¶ 21-26. Two of their most popular songs feature over 16 million and 17 million views on YouTube. Id. ¶ 27. OMG Girlz music could be heard on tours and performances throughout the country as well as on YouTube, Spotify, the radio, and television channels like MTV. SGI ¶ 35. The OMG Girlz have also been featured on reality television, in online music videos, on magazine covers, and engaged in other promotional activities. Decl. of Zonnique Pullins ("Pullins Decl."), Dkt. No. 171 ¶¶ 36, 40, 43. They have been recognized by famous artists including Lady Gaga

---

[3] For the page citations to exhibits to declarations, the Court refers to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

and Beyoncé. Id. ¶¶ 20-22.  The OMG Girlz's social media presence includes having 3.2 million followers on Facebook, 307,000 subscribers on two YouTube channels; 278,000 followers on Twitter; and 211,000 followers on Instagram.  Id. ¶¶ 44-48. The OMG Girlz group disbanded in 2015, but reunited in 2017 to perform at a New Year's Eve show.  Id. ¶ 50.

In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!.  The "L.O.L." stands for "Lil' Outrageous Littles."  SGI ¶ 16.  The products were small, three-inch child dolls ("L.O.L. Tots"), and were called a "surprise" because they were sold in mystery capsules with opaque packaging such that the purchaser did not know what specific Tot they were buying.  Id. ¶ 16.  The L.O.L. Tots collection sold out within weeks and became the number one selling toy in the United States from 2017 through 2019.  SGI ¶ 17.

In 2019, MGA released another line of dolls called L.O.L. Surprise! O.M.G. (the "OMG Dolls"), which are the subject of this action.  SGI ¶¶ 18-19.  MGA contends the OMG Dolls are meant to be a "spin off" of and the "big sister" dolls to the Tots.  Id.  The OMG Dolls were very successful, generating gross revenues ████████████████ ████.  SGI ¶ 22.

*B.    Basis for Claims of Infringement by OMG Girlz*

Counterclaimants contend that the OMG Dolls are based on and created to imitate the OMG Girlz.  In support of this contention, Counterclaimants assert that MGA not only knew of the OMG Girlz but at some point intended to create a line of dolls based on them.  This assertion is largely based on a hazy and speculative recollection of a statement made to Tameka Harris following an event at which the OMG Girlz performed.  SGI ¶¶ 1, 3; Dep. of Tameka "Tiny" Harris ("Tameka Harris Dep."), Dkt. No. 148-3 at 16-17.

Counter-Defendants present declarations from their doll designers in support of the assertion that the "designers of the [OMG Dolls] did not base any of their designs on the OMG Girlz or pictures of the OMG Girlz."  SGI ¶ 24.

Counterclaimants assert that the OMG Dolls infringe upon the trade dress of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

OMG Girlz and misappropriate their likeness. The parties agree that both the OMG Girlz and OMG Dolls have multiple variations of looks in terms of hairstyle, clothes, and accessories. SGI ¶¶ 5, 6. The OMG Girlz consist of a group of "racially diverse girls" wearing combinations of pink, purple, or blue hair with tutus or voluminous skirts and layered clothing, which Counterclaimants assert are part of their distinctive and recognizable look and brand. SGI ¶ 6. The OMG Dolls are characterized by a racially ambiguous look combined with trendy and bold outfits and often brightly colored or boldly styled hair. Counterclaimants assert that many of the accused dolls share common visual elements with the OMG Girlz, such as brightly colored hair, racially diverse skin tones, and voluminous and multilayered clothing in bold, bright colors. SGI ¶ 5.

Counterclaimants sent a cease-and-desist to MGA dated December 8, 2020, asserting that the OMG Dolls infringed upon the OMG Girlz trademark. Tameka Harris Decl., Ex. 13, Dkt. No. 169-13. On December 22, 2020, Counter-Defendants filed suit seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that determines that the name and mark "L.O.L. Surprise! O.M.G." and the associated toy products do not infringe on the intellectual property ("IP") rights of Defendants T.I. and Tameka Harris, and OMG Girlz, and/or their "OMG Girlz" mark. See Dkt. No. 1.[4] On February 22, 2021, Counterclaimants answered and filed counterclaims alleging violation of the Lanham Act, statutory and common law misappropriation of name or likeness, and statutory and common law unfair competition claims. Dkt. No. 13.

On May 16, 2022, Counter-Defendants moved for summary judgment or partial summary judgment on Counterclaimants' claims as stated in their third amended counterclaims, Dkt. No. 63. Mot.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there

---

[4] Counter-Defendants' operative complaint is their first amended complaint, Dkt. No. 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)            Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[5]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

## III.  EVIDENTIARY OBJECTIONS

The Court has reviewed the parties' evidentiary objections and specifically addresses certain objections here.  Countercl. Evid. Objections, Dkt. No. 174; Counter-Def. Evid. Objections, Dkt. No. 271.  To the extent the Court does not address any of the other evidentiary objections, it is because the Court did not rely on the objected-to evidence in reaching its ruling.  Any such objections are **OVERRULED** as moot.

---

[5] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |

| | |
|---|---|
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |

    *A.*    *Counterclaimants' Objections to Darma, I. Garcia and Haljevac Declarations*

    Counterclaimants object to the inclusion of the Darma, I. Garcia and Haljevac Declarations because these individuals were not disclosed as witnesses. Countercl. Evid. Objections at 1-2. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. Lanard Toys Ltd. v. Novelty, Inc., 375 F. App'x 705, 713 (9th Cir. 2010). The burden is on the party facing exclusion to prove the delay was justified or harmless. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001).

    Counter-Defendants do not explain why they failed to properly disclose these witnesses. Producing these declarations for the first time just before the motion for summary judgment, when they had many months of opportunities to do so, was not harmless, as Counterclaimants did not have the opportunity to review the exhibits included in the declaration nor depose the witnesses. For that reason, the Court orders these declarations and witnesses excluded for all purposes.[6]

---

    [6] The parties briefed a similar issue regarding witness declarations Counterclaimants submitted after the close of the discovery of confused consumers who had responded to social media posts by Tameka Harris and Zonnique Pullins (the "Confused Consumer Declarations"). The Court excluded the Confused Consumer Declarations for purposes of the summary judgment motion but allowed Counterclaimants to use the witnesses for purposes of trial. Dkt. No. 322. In that instance, Counterclaimants demonstrated that they discovered the Confused Consumers around the time of the close of discovery and disclosed them shortly thereafter. This matter is distinguishable because the additional witnesses in this instance are MGA employees and were presumably known to MGA through the course of the litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

B.    *Counter Defendants' Objections to Tameka Harris Testimony Regarding "Talk" At Event of Basing Line of Dolls off OMG Girlz*

Counter-Defendants object to Tameka Harris' testimony regarding her belief that MGA had expressed interest in creating a line of dolls based on the OMG Girlz on the basis of hearsay. This belief is based on "some talk in the air" at a 2010 event and statements that Tameka Harris heard from another person regarding interest expressed at that event. See Counter-Def. Evid. Objections ¶ 3. To the extent that this statement is being offered for the truth of the matter asserted, i.e., that an MGA representative had actually expressed interest in creating a line of dolls based on the OMG Girlz at that event, it is inadmissible hearsay not subject to any exception. See Fed. R. Evid. 801(c).

C.    *Counter Defendants' Objections to Tameka Harris' and Zonnique Pullins Social Media Posts*

Counter-Defendants argue that the Tameka Harris and Pullins declarations include several inadmissible hearsay statements. Harris and Pullins each posted on their social media side-by-side images of certain OMG Dolls and an image of the OMG Girlz inviting comment on whether the images looked alike. Counter-Def. Evid. Objections ¶ 9. Both declarations include images of these posts, and Harris and Pullins both include statements in their declarations about the responses they received, in which the commenters expressed that they believed the dolls to be similar, or that the commenters had purchased the Dolls believing they were affiliated with the OMG Girlz. Id.; Harris Decl., Exs. 9, 10, Dkt. Nos. 169-9 and 169-10 ("Social Media Posts"). Counter-Defendants contend that statements made by Harris or Pullins in the declarations regarding these posts, as well as the accompanying exhibits to the Harris declaration of images of the social media posts, are inadmissible as hearsay.

The images of the social media posts and accompanying comments constitute hearsay because they are out-of-court statements that are offered for the truth of the matter asserted, i.e., that the commenters believed that the OMG Dolls look like the OMG Girlz or that the commenters believed the two entities were affiliated. See Fed. R. Evid. 8. Statements by customers that demonstrate confusion may fall within the state-of-mind exception to the hearsay rule. Lahoti v. Vericheck, Inc., 636 F.3d 501, 509 (9th Cir. 2011)). In Chroma Makeup Studio LLC v. Boldface Grp., Inc., the court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

applied this principle to consider certain comments on social media posts. No. 12-cv-9893-ABC (PJWx), 2013 WL 12114826, at *14 n.19 (C.D. Cal. Jan. 23, 2013). Here, there are a few comments that arguably fall within the state-of-mind exception including: "I'm so lost. Hell all this time I thought these were [the OMG Girlz] dolls. . . that's why I bought them"; "I always thought these dolls were them!??. . .my daughter has a lot of these!"; "All of these dolls I bought and heck I thought it was them." Social Media Posts. A small number of these could be considered to express a "then-existing state of mind" because of the way the commenters convey their realization in the moment that they had been wrong in their belief about the source of the OMG Dolls.[7]

But even the few comments that might fall under a hearsay exception have a different problem: authentication. "Evidence may be offered to support or dispute a fact on summary judgment . . . if it could be presented in an admissible form at trial." S. California Darts Ass'n v. Zaffina, 762 F.3d 921, 925-26 (9th Cir. 2014) (internal quotation marks and citation omitted); Fed.R.Civ.P. 56(c)(2). Although Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated, the amended Rule still requires that such evidence "would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(4). Courts have considered social media comments and posts authenticated where the comments were authored by parties or witnesses, see, e.g., Eschert v. City of Charlotte, No. 3:16-CV-295-FDW (DCKx), 2017 WL 3633275, at *6 (W.D.N.C. Aug. 23, 2017), or even where the comment could be associated with what appeared to be a real account and profile with an identifying photo and name. Harris cannot authenticate the comments because she cannot even demonstrate that these commenters are real people. See United States v. Browne, 834 F.3d 403 (3d. Cir. 2016) ("The authentication of social media evidence in particular presents some special challenges because of the great ease with which a social media account may be falsified or a legitimate account may be

---

[7] The Court also notes that at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony. See JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1110 (9th Cir. 2016) (citing Fraser v. Goodale, 342 F.3d 1032, 1036 37 (9th Cir. 2003)). But here, Counterclaimants have not argued that the hearsay declarants featured in this post would be available to testify at trial (as discussed further in footnote 7, infra, the Confused Consumer Declarants are not those featured in the comments provided with the Harris declaration) or that its hearsay evidence would be admissible at trial in some other form.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

accessed by an impostor.").  Here, the comments featured in the images of the social media posts are not authenticated, nor do Counterclaimants propose how they might be authenticated.[8]  Accordingly, these images and accompanying commentary in the declaration are **INADMISSIBLE** for purposes of this motion.

## IV. DISCUSSION

### A.  *Trade Dress Infringement*

In order to prove trade dress infringement under the Lanham Act, 15 U.S.C. section 1125(a), a plaintiff must demonstrate that "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." Art Attacks Ink, LLC v. MGA Ent. Inc., 581 F.3d 1138, 1145 (9th Cir. 2009) (citing Disc Golf Ass'n v. Champion Discs, 158 F.3d 1002, 1005 (9th Cir. 1998)); 15 U.S.C. § 1125(a).

"Trade dress involves 'the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques." Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792,8 08 n. 13 (9th Cir. 2003) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n.1 (1992)). Trade dress protection applies to "a combination of any elements in which a product is presented to a buyer," including the shape and design of a product.  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8-3 (4th ed.2008).

In evaluating a trade dress claim, a court should not focus on individual elements but instead must examine "the overall visual impression that the combination and arrangement of those elements create."  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1259 (9th Cir. 2001).  In short, "[t]rade dress is the composite tapestry of visual effects."  Id.

---

[8]The Confused Consumer Declarations (Dkt. Nos. 161-166), which the Court declined to consider for purposes of this ruling on the motion for summary judgment, see Dkt. No. 322, do not provide any basis for authentication, as none of the usernames in those declarations match the comments featured in the screenshot image of the Harris Instagram post, Dkt. No. 169-9 and 169-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     2:20-cv-11548-JVS (AGRx)                    Date     July 29, 2022

Title        MGA Entertainment Inc. v. Clifford T.I. Harris et al.

          *i.*     *Whether OMG Girlz Trade Dress is Nonfunctional*

A plaintiff who asserts infringement of a nonregistered trade dress "has the burden of proving that the matter sought to be protected is not functional." TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001) (quoting 15 U.S.C. § 1125(a)(3)).

The Parties propose different tests for evaluating the functionality of the trade dress of the OMG Girlz.  Counterclaimants argue in terms of the four functionality factors as set forth in Disc Golf.[9]  Counter-Defendants argue in terms of the aesthetic functionality test, an "alternative test" that "inquiries whether protection fo the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1072 (9th Cir. 2006).  The Court finds the aesthetic functionality test discussed in Au-Tomotive Gold to be more useful in this analysis, where questions of the utilitarian design of the OMG Girlz style are less applicable.

In Au–Tomotive Gold, the Court discussed the development of the doctrine and set out a two-step test for aesthetic functionality.  First, the court must ask whether the alleged "significant non-trademark function" of the mark "[is] essential to the use or purpose of the article [or] affects [its] cost or quality." Au–Tomotive Gold, 457 F.3d at 1072 (citation omitted).  If so, then the feature is functional in the utilitarian sense and the inquiry ends.  If not, the court moves onto the second step, which is determining if "protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." Id.  If so, the mark is aesthetically functional and does not trigger liability for infringement.

Trade dress may be functional if "protection of the [trade dress] as a trademark would impose a significant non-reputation related competitive disadvantage." Id. at

---

[9] The four functionality factors articulated by the Ninth Circuit that originated in Disc Golf are: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Millenium Labs, 817 F.3d at 1129 (citing Disc Golf, 158 F.3d at 1006)).  If these factors weigh in favor of nonfunctionality, a court next considers whether the asserted trade dress would provide a competitive disadvantage to others. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |

| | |
|---|---|
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |

1072. As a general matter, "aesthetic functionality has been limited to product features that serve an aesthetic purpose wholly independent of any source-identifying function." Id. at 1073. Thus, although cases may use somewhat different language to describe the test for aesthetic functionality, the focus of the inquiry turns on whether the use of the mark has a source-identifying or "reputation-related" function. In other words, an aesthetic may be nonfunctional where consumer demand for a product based on aesthetic features is tied to "source identification," including the reputation and association with the brand. Id. at 1074.

Counter-Defendants argue that the OMG Girlz's 'look' fails to satisfy this aesthetic functionality test because the group's "ever-changing image is simply fashion and decoration" that serves "aesthetic purposes only and plays no source identifying role." Mot. at 15. In opposition, Counter-Claimants argue that "even if certain elements of the OMG Trade Dress seem functional on their own, taken as a whole, the mark serves as a source identifier." Opp'n at 19 (citing Spirit Clothing Co. v. N.S. Enters., Inc., 2013 WL 12144107, at *3 (C.D. Cal. July 23, 2013)).

Counterclaimants describe their protectable trade dress as follows:

The name "OMG GIRLZ" coupled with combinations of vibrant hair color in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and shades of blue—contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup has become a signifier for the OMG Girlz brand. Layered clothing, voluminous skirts (i.e., tutus and other poofy skirts), and bold, over the top clothing and accessories also became staples of the signature OMG Girlz brand.

Tameka Harris Decl. ¶ 5.

In the declaration of Zonnique Pullins, one of the OMG Girlz known as "Star," Pullins includes several of the "highly publicized photographs" that she asserts reflect the OMG Girlz' signature style and brand. Decl. of Zonnique Pullins ("Pullins Decl."), Dkt. No. 204-1 at 4-6. These photographs reflect a consistent style that is sufficiently recognizable to be "source identif[ying]" through the combination of signature elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

described in the definition of the OMG Girlz trade dress. The images of the band-members include unique combinations of vibrant hair colors in nonmonochromatic and contrasting hues, and almost all of them contain the combination of blue, pink and purple colors. Even the clothes, which as Counter-Defendants point out, vary, in many of the images presented include the features described, including layers, "voluminous skirts," combined with bold accessories like big necklaces or hair ornaments. Another key part of the trade dress largely ignored by Counter-Defendants is the image of the girl group (including the clothing and appearance characteristics discussed) combined with the name, the "OMG Girlz." Tameka Harris Decl. ¶ 5.

In sum, Counterclaimants have presented evidence that the OMG Girlz had a distinctive style that was consistent enough to be recognizable as the OMG Girlz brand. Although bold accessories, vibrant hair colors, or any of these other elements alone, their combination as demonstrated by photographic evidence tends to reflect a consistent look, described in their trade dress definition.

In their request for hearing, Counter-Defendants continue to insist that the asserted trade dress is insufficiently defined. A plaintiff must "clearly articulate its claimed trade dress to give a defendant sufficient notice." Denims v. Ram Imports, Inc., No. 20-cv-9254-DSF (JCX), 2020 WL 11884712, at *2 (C.D. Cal. Dec. 10, 2020) (citation omitted). Counter-Defendants selectively quote Counterclaimants' briefing and this Court's Tentative Order to create the impression that the trade dress definition is "everchanging" or "vague." Counter-Def. Hearing Request at 2-3; Mot. at 7-8. Although the asserted trade dress appears multiple times, e.g., in the counter-claims, declaration, and a prior order, and the language defining the trade dress may vary slightly, the definition has consistently been the combination of the elements described above: a girl group with the "OMG" name; distinctive hair with vibrant colors; a colorful and monochromatic wardrobe consisting of layers, voluminous skirts, and bold accessories. The photos of the OMG Girlz group comport with this trade dress definition despite the fact that certain aspects, such as outfits and hair, vary slightly. Further, Counterclaimants do not rely solely on these photos as their trade dress definition; rather, the photos affirm and provide context and guidance around Counterclaimants' description of the trade dress. Counter-Defendants' continued insistence that they do not have notice of the asserted trade dress strains credulity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)              Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Counter-Defendants present evidence of other musical artists and groups that have
colorful styles, and particularly, bold and colorful outfits and hair.  Finkelstein Decl. Ex.
D, Dkt. No. 142-14.  Counter-Defendants argue that these demonstrate that they do not
have sufficient notice of the trade dress because any of these artists could fall under the
described trade dress.  Several of these example artists feature blue or pink hair,
"voluminous skirts," and other features characteristic of the trade dress that
Counterclaimants assert.  Id.  However, these images underscore the sufficiency of the
asserted trade dress definition: even though isolated similarities exist, none of them
combines all of the same elements as the OMG Girlz trade dress to create a comparable
look and feel.  Counter-Defendants' argument on this point ignores the "overall visual
impression" and improperly "focus on the individual element."  Clicks Billiards, 251
F.3d at 1259.  "Courts have repeatedly cautioned that, in trademark—and especially [in]
trade dress—cases, the mark must be examined as a whole, not by its individual
constituent parts."  Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 842 (9th
Cir. 1987).

Counter-Defendants raise two additional arguments related to the distinctiveness
of the OMG Girlz brand.  First, Counter-Defendants argue that the asserted trade dress is
"not unique or unusual in the industry" because "[m]usicians have for decades use
'vibrant hair color' and 'experimental, fun, urban, and edgy wardrobes and makeup.'"
Mot. at 11.  As previously discussed,  these examples of the other musical groups tend to
demonstrate that the OMG Girlz trade dress can be distinctive despite certain of their
claimed elements (colorful hair or bold clothing) being present in other artists or groups.
See Lisa Frank, Inc. v. Orb Factory Ltd., No. CV-15-433-TUC-DCB, 2017 WL 6000477,
at *4 (D. Ariz. Sept. 21, 2017) ("[I]it is irrelevant to the functionality analysis that
Plaintiff's trade dress includes certain commonly-used aesthetic features, such as bright
colors").  This also supports a finding of nonfunctionality when analyzing through the
lens of the second Disc Golf factor, which is the existence of alternative designs.  Disc
Golf, 158 F.3d at 1006; see also Blumenthal Distrib., Inc. v. Herman Miller, Inc., 963
F.3d 859, 866 (9th Cir. 2020), cert. denied, 141 S. Ct. 1514 (2021) ("The proper standard
for whether a claimed trade dress consisting of an overall appearance is functional is
whether protecting the trade dress threatens to eliminate a substantial swath of
competitive alternatives in the relevant market.").  After all, if the OMG Girlz have a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)                    Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

distinctive look despite sharing several of those elements in common with other musical artists, there must exist "competitive alternatives" to their look.

Second, Counter-Defendants contend that the fact that the asserted trade dress is everchanging not only fails to provide notice, but also supports their argument that it is not distinctive or source-identifying. In support, Counter-Defendants include several photographs of the OMG Girlz featuring looks that are inconsistent with the asserted distinctive style. Such evidence raises a question of credibility or fact, but does not defeat Counterclaimants' showing at the summary judgment stage, particularly as Counterclaimants presented their own photographs that do reflect a distinctive style.[10] See also Fuddruckers, 826 F.2d at 843 ("Functionality is a question of fact.").

### ii.    Whether Trade Dress Has Acquired Secondary Meaning

"Unlike inherent distinctiveness, 'secondary meaning is a learned association' between the producer and the packaging, or 'an acquired distinctiveness.'" Mattel, Inc. v. MGA Ent., Inc., 782 F. Supp. 2d 911, 1004 (C.D. Cal. 2011) (quoting Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 824 (9th Cir. 1993)). Secondary meaning occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 211 (2000) (citation omitted).

Secondary meaning can be established in several ways, including "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place

---

[10] One of the issues raised in Counterclaimants' Statement of Genuine Disputes is the implication that every photograph of the OMG Girlz submitted with evidence "purports to demonstrate the distinctive look, style, and brand of the OMG Girlz." SGI ¶ 6. Counterclaimants assert that "[m]any of the photos depict members of the OMG Girlz group in casual setting, when they are not in character as OMG Girlz performers 'Star,' 'Babydoll,' and 'Beauty.'" Id. While the Court takes these photographs into consideration, see Counter-Def. Hearing Request at 3, whether the photographs that seem inconsistent with the asserted 'distinctive style' of the OMG Girlz demonstrate that the OMG Girlz have no distinctive style or simply depict them casually remains a question of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)                    Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999) (citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed.1997)).

Counter-Defendants assert that Counterclaimants have not identified any facts to support a finding of secondary meaning. Mot. at 13. Counter-Defendants focus heavily on the scant evidence of dollars spent on advertising and evidence that the OMG Girlz never generated substantial revenue, as well as the absence of survey evidence in Counterclaimants' favor. Counter-Defendants assert that the "only evidence of advertising spend is a single tax return showing $750." Mot. at 14 (citing Decl. of Mark Finkelstein ("Finkelstein Decl."), Ex. M, Dkt. No. 148-6). Counterclaimants do, however, present two primary categories of evidence relevant to this element: (1) evidence of advertising and promotion of the OMG Girlz; and (2) evidence regarding the popularity of the OMG Girlz as a group and as artists.

First, despite what might be considered a low advertising spend, Counterclaimants present evidence in the form of declarations that the OMG Girlz were promoted through various media for over twelve years. See Tameka Harris Decl. ¶ 3. This included being featured on reality television, in online music videos, in live performances, on magazine covers, and on social media. Counterclaimants also point to the OMG Girlz having licensed their images for use in promoting the WAT-AAH water brand, which featured bottle labels in pink, purple, and blue in honor of the promotion. Id. ¶ 36. Moreover, Counterclaimants argue that social media became a substantial means of advertisement for entertainers, much of which can be done for little to no cost. Id. ¶ 29; Pullins Decl. ¶¶ 44-48. In today's age of social media, traditional advertising is not necessarily required for promotion or strong public engagement.

Second, Counterclaimants establish the significant public following of the OMG Girlz, particularly on social media platforms. The OMG Girlz have 3.2 million followers on Facebook, 307,000 subscribers on two YouTube channels; 278,000 followers on Twitter; and 211,000 followers on Instagram. Pullins Decl. ¶¶ 44-48. The group amassed over 16 million views each on several of their most popular music videos on YouTube, and some of these songs also reached top Billboard charts. Tameka Decl. ¶ 27. Counterclaimants produce evidence of present day analytics information

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | |

demonstrating that the OMG Girlz continue to gain new fans despite having disbanded
as an official group years ago.  Id. ¶ 28, Ex. 8, Dkt. No. 178-3.

Counter-Defendants argue that popularity is not synonymous with secondary
meaning, citing to Goodyear Tire & Rubber Co. v. Interco Tire Corp., 49 U.S.P.Q.2d
1705 (T.T.A.B. 1998).  Goodyear Tire presents an entirely distinguishable situation,
where the court refused to find that the commercial success of tires made by Goodyear
necessarily established that consumers associated the tires with the Goodyear brand.  Id.
at *16.  In contrast, the OMG Girlz enjoyed popularity among fans and followers, who
by definition, knew who they were supporting.  This does not mean that the OMG Girlz
have established their fame nor that their brand acquired secondary meaning because of
their fame, but the evidence is relevant to the inquiry.  Moreover, "[w]hile evidence of a
manufacturer's sales, advertising and promotional activities may be relevant in
determining secondary meaning, the true test of secondary meaning is the effectiveness
of this effort to create it."  Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 824
(9th Cir. 1993).  The evidence not only of past promotion efforts, but also the continued
following and engagement of the OMG Girlz fanbase, is certainly sufficient to establish
a question of fact as to secondary meaning.  See Sazerac Co., Inc. v. Fetzer Vineyards,
Inc., 251 F. Supp. 3d 1288, 1304 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th Cir.
2019) (thousands of followers on major social media outlets demonstrates dispute of fact
regarding secondary meaning).

Accordingly, there is at least a triable issue as to whether the OMG Girlz' trade
dress has acquired secondary meaning.

### iii. *Whether there is a Substantial Likelihood of Confusion*

"The test for likelihood of confusion is whether a 'reasonably prudent consumer'
in the marketplace is likely to be confused as to the origin of the good or service bearing
one of the marks."  Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir.
2002) (citation omitted).  In AMF Inc. v. Sleekcraft Boats, the Ninth Circuit developed
an eight factors intended to guide courts in assessing the question of likelihood of
confusion.  599 F.2d 341, 348 (9th Cir. 1979), abrogated on other grounds by Mattel,
Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003).  The Sleekcraft factors
are:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)          Date   July 29, 2022

Title      MGA Entertainment Inc. v. Clifford T.I. Harris et al.

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and the degree of care likely to be exercised by the
purchaser;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines.

Id. at 348-49.  The Sleekcraft factors are not a scorecard or a checklist; and "the relative
importance of each individual factor will be case-specific."  Fortune Dynamic, Inc. v.
Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010)
(additional citations omitted).

Counter-Defendants focus on factors one, three, and four, asserting that (1) the
OMG Girlz trade dress is weak; (2) the marks are dissimilar; and (3) Counter-Defendants
have compelling evidence of lack of actual confusion.

Regarding the first and second arguments, Counter-Defendants assert that the
OMG Girlz trade dress is weak because the OMG Girlz have no one distinctive image.
Relatedly, Counter-Defendants assert that the marks are dissimilar because there are a
variety of OMG Doll designs, and the individual elements that the OMG Dolls share in
common with the OMG Girlz–namely, the OMG in the name, the racial diversity of the
Dolls, the brightly colored hair on certain of the dolls, the similar clothing on certain of
the dolls, and the fact that some of the dolls feature a "musical theme"–do not create a
"total effect" that is similar.  Mot. at 16.  Counter-Defendants argue that the marks are
dissimilar "both individually and collectively" because there is no one individual doll or
group of dolls featuring all of the elements of the OMG Girlz trade dress, and
collectively there are over 70 dolls, many of which do not resemble the OMG Girlz trade
dress.  Id. at 16-17.

It is far from clear that the combination of the similar elements of the OMG Girlz
trade dress in the Dolls results in a "total effect" that "is distinctly different, obviating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|----------|--------------------------|------|---------------|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|-------|--------------------------------------------------------|

any likelihood of confusion. . . ." Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d
819, 825 (9th Cir. 1993).  The side-by-side comparison images, particularly when
combined with the large "OMG" in the logo, at least raise the question of whether the
viewer is looking at a doll version of one of the OMG Girlz.  Cf. Walkowicz v. Am. Girl
Brands, LLC, No. 20-CV-374-JDP, 2021 WL 510729, at *6 (W.D. Wis. Feb. 11, 2021)
(well-known astronomer adequately alleged likelihood of confusion where doll had
similar name, hairstyle, clothing, and interest in astronomy).

 

Finkelstein Decl., Ex. A, Dkt. No. 148-1 at 41 (included here for demonstrative
purposes).  These images are helpful not as a test or conclusive demonstration of the
element of likelihood of confusion, see Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d
817, 822 (9th Cir. 1980) (a "side-by-side comparison is not the test" of the likelihood of
confusion).   Instead, they serve as a visual demonstration that the marks are similar
under the third Sleekcraft factor, and to reject the contention that the marks are so
dissimilar that there can be no likelihood of confusion as a matter of law.  See First
Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383-84 (9th Cir. 1987) (district
court's finding that there was no likelihood of confusion not clearly erogenous where
marks were "substantially dissimilar"); Mot. at 16-17.  This issue of similarity is further
demonstrated by the way the Dolls were marketed.  Although the above pictured Dolls
were not necessarily marketed together as a trio, the OMG Dolls were marketed in
groups featuring several combined aspects of the OMG Girlz look, like their hair colors,
wardrobe, and even the band element.  See Mot., Ex. B, Dkt. No. 142-12; Womack

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)                    Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Decl., Dkt. No. 178-7 ¶ 52; Robinson Decl., Ex. 1, Dkt. No. 168-1 (including image of
four OMG Dolls with vibrant hair colors, including blue and pink); Ranahan Decl., Ex.
M, Dkt. No. 172-13 (Google search of OMG Dolls showing multiple images of doll
groups featuring OMG Girlz hairstyles or clothing, or both); Tameka Harris Decl., Ex.
12, Dkt. No. 169-12.



Remix Super Surprise multipack (Released in 2020)

Finkelstein Decl., Ex. A, Dkt. No. 148-1 at 12 (included here for demonstrative
purposes).

There is also evidence that the OMG Girlz and the OMG Dolls are marketed on at
least some of the same channels, including social media and YouTube. As a notable
example, the OMG Dolls are marketed by being featured in music videos on YouTube,
like the OMG Girlz. Decl. of Breaunna Womack, Dkt. No. 178-7 ¶ 50; Ranahan Decl.
Ex. S, Dkt. No. 178-24 at 18. As such, the fifth Sleekcraft factor also weighs in
Counterclaimants' favor.

Counterclaimants argue that they have evidence of actual consumer confusion in
the form of social media comments that express actual consumer confusion. These
exhibits were largely ruled inadmissible. Nonetheless, "[b]ecause of the difficulty in
garnering" evidence of actual confusion, "the failure to prove instances of actual
confusion is not dispositive." Sleekcraft, 599 F.2d at 353; see also JL Beverage Co.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1111 (9th Cir. 2016) (overruling district
court's grant of summary judgment despite agreeing that declaration containing
statements of consumer confusion was inadmissible hearsay). Moreover, "[b]ecause the
determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry," the
Ninth Circuit has repeatedly cautioned courts against granting summary judgment in
cases turning on the likelihood of confusion. Id. (collecting cases); see also Clicks
Billiards, 251 F.3d at 1267 ("[T]rial courts disfavor deciding trademark cases in
summary judgments because the ultimate issue is so inherently factual.").

Counterclaimants have presented sufficient evidence of the likelihood of
confusion to create a triable issue of fact. Accordingly, Counter-Defendants' motion is
**DENIED** as to the trade dress infringement claim.

Counterclaimants have included over 70 individual OMG Dolls in their trade
dress/trademark and right of publicity claims. See Ranahan Decl. ¶, Ex. Q, Dkt. No.
172-17 ("Infringing Dolls Index"); see also Reply (referencing Infringing Dolls Index).[11]
Counter-Defendants assert that this is overinclusive, as many of the dolls do not have the
elements of the asserted trade dress. This issue will be addressed in greater detail
following the discussion of the trademark claim.

### B.   *Trademark Infringement*

Counter-Defendants point out that the basis of several of Counterclaimants'
Lanham Act claims against the OMG Dolls are based solely on the use of the "OMG" in
the name and branding of the Dolls. Mot. at 18; see also Counter-Def. Hearing Request
at 1 (citing Infringing Dolls Index).

To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C.
§ 1114, a party must prove: (1) that it has a protectable ownership interest in the mark;
and (2) that the defendant's use of the mark is likely to cause consumer confusion.
Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th

---

[11] Counterclaimants explicitly reserved the right to supplement this Index, titled "List of
Infringing LOL Surprise! OMG Dolls." Infringing Dolls Index at 1. As the parties do not provide a
different index, the Court considers this to be the list of OMG Dolls at issue in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)                    Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Cir. 2011) (citing Dept of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)).

Counter-Defendants do not challenge the validity of the "OMG Girlz" mark for purposes of the summary judgment motion.  Instead, Counter-Defendants argue that this protection does not extend to the Dolls because the use of "OMG" for its line of dolls is not confusingly similar and there is no evidence to suggest a likelihood of consumer confusion.

The Court agrees.  Use of the term "OMG" alone is unlikely to cause consumer confusion for two main reasons.  First, on its own, the term "OMG" is commonly used slang that means "Oh, my god/gosh" as a text or verbal shorthand.  Because of the routine and everyday use of "OMG," consumers are less likely to associate the term, on its own, with a brand.  See 2 McCarthy on Trademarks and Unfair Competition § 11:87 (5th ed.) ("Undoubtedly, common phrases and bits of slang which are in routine, everyday use are relatively weak as trademarks simply because their common occurrence makes it difficult for them to stand out as source identifiers.").

Second, Counter-Defendants have presented evidence of prevalent third-party use of the "OMG" mark, presenting evidence that as of April 2022, there were over 120 registered trademarks that included the word "OMG," including several in the fields of music and toys.  Mot. at 30; Finkelstein Decl, Ex. U, Dkt. No. 142-30.  Courts in the trademark infringement context consider whether third parties use similar marks in finding that there is no likelihood of confusion.  Arcona, Inc. v. Farmacy Beauty, LLC, 976 F.3d 1074, 1081 (9th Cir. 2020), cert. denied, 141 S. Ct. 2800 (2021) (affirming summary judgment where party presented evidence that other companies use the same phrase in their product names, underscoring that the mark was not unique or strong); see also Springboards To Educ., Inc. v. Houston Indep. Sch. Dist., 912 F.3d 805, 815 (5th Cir. 2019), as revised (Feb. 14, 2019) (recognizing that third parties used similar and identical marks, and finding no reasonable jury could find a likelihood of confusion). The use by other companies demonstrates that the term "OMG" is not a unique or strong mark.  See Arcona, 976 F.3d at 1081 (evidence that a term was used by other companies underscored that the mark was "not so unique or strong").  This is particularly true where, as here, the "common term is a generic or non-distinctive term."  Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1373

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

(Fed. Cir. 2005) (citing Kellogg Co. v. Pack 'em Enters., Inc., 951 F.2d 330 (Fed. Cir. 1991) and Keebler Co. v. Murray Bakery Prods. Inc., 866 F.2d 1386 (Fed. Cir. 1989)).

As discussed, there is an issue of fact as to whether the term "OMG" paired with other distinctive elements of Counterclaimants' asserted trade dress is likely to cause consumer confusion.  But Counterclaimants have put forth no evidence that the term "OMG" alone on the Dolls' packaging and in the name has caused or is likely to cause consumer confusion, under the Sleekcraft factors or otherwise.  Given the term's prevalent use in language and third-party use of the mark, the Court finds that summary judgment is warranted on the trademark claim.

As Counter-Defendants point out, Counterclaimants have included over 70 OMG Dolls' personas in their trademark and trade dress claims.  See Infringing Dolls Index. Counterclaimants have compiled a table with each individual infringing doll with columns describing how the Doll falls under either their trademark/trade dress claims or their right of publicity claims, or both ("Infringing Doll Index").  Given the Court's conclusion regarding the trademark claim, summary judgment is **GRANTED** as to the Dolls that feature only the "OMG" term as justification for inclusion without any other elements of the OMG Girlz asserted trade dress.  The Court further **GRANTS** summary judgment as to the Dolls that do not feature a combination of at least some of the trade dress elements, particularly the OMG Girlz unique hairstyle, wardrobe, music themes, and association with a group of similarly styled individuals.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     2:20-cv-11548-JVS (AGRx)                     Date     July 29, 2022

Title        MGA Entertainment Inc. v. Clifford T.I. Harris et al.

| | Doll No.[12] |
|---|---|
| Dismissed under Trademark and Trade Dress Claims | 14,[13] 19,[14] 20, 26, 27, 29- 32, 37, 39[15]-58, 60-64, 66-70 |
| Remain under Trade Dress Claim | 1-13, 15-18, 21-25,[16] 28, 33-36, 38, 59, 65, 71 |

C.     *Right to Publicity and Misappropriation of Likeness Claims*

i.     *Counterclaimants' Standing*

As an initial matter, Counter-Defendants argue that Counterclaimants have no standing to assert claims for misappropriation of name or likeness under California Civil Code § 3344 and common law.  Counter-Defendants argue that the right to publicity is a personal right held by Breanna Womack, Zonnique Pullins, and Bahja Rodriguez

---

[12] Numbers are based on Appendix A to this Order.  This is the Infringing Doll Index, Exhibit Q to the Ranahan declaration, Dkt. No. 172-17, altered to number the dolls for reference.  The Court uses the Index for reference and does not adopt the arguments included in this document.

[13] Counterclaimants assert in the "Trade Dress/Trademark" column that Doll No. 14 (NYE Queen Doll) "[p]ortrays [an] iconic moment from Ms. Pullins of OMG Girlz individual solo listening party."  Infringing Dolls Index at 14.  This individual instance does not have bearing on the trade dress claim where trade dress elements are not otherwise present.

[14] Doll No. 19 (Splash Beauty Doll) is one of a few dolls that features only one element of the asserted trade dress: the colorful hair.  This alone, even if combined with the "OMG" term on the packaging, cannot support the trade dress claim.

[15] Counterclaimants assert in the "Trade Dress/Trademark" column that Doll No. 39 (Groovy Babe) "[e]vokes the look worn by the OMG Girlz" in one performance in which they wore black, white, and silver outfits.  Even if true, this isolated incident does not constitute the asserted OMG Girlz trade dress.

[16] Although the "Trade Dress/Trademark" column for Doll No. 22 ("Miss Glam") has only the inclusion of the "OMG" term by way of explanation, the Court notes that the "Right of Publicity" column describes several of the OMG Girlz trade dress elements and declines to exclude this doll as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

themselves, none of which are party to the suit, and none of which assigned their right to a party.  Mot. at 24.

The right of publicity is assignable.  <u>Timed Out, LLC v. Youabian, Inc.</u>, 229 Cal. App. 4th 1001, 1009 (2014).  The question is whether the individual members of the OMG Girlz assigned their right to publicity to any of the Counterclaimants in this action. The Court finds that they did.

Counterclaimants contend that the OMG Girlz assigned all of their intellectual property rights, including the rights to their likeness and right of publicity, to OMG Girlz LLC, which is a party to this action.  Pullins Decl. at ¶ 63, Ex. 8, Dkt. No. 178-6.  In support, Counterclaimants produce an agreement that "reconfirmed" the assignment of their right of publicity.  This agreement was signed on May 12, 2022, and was allegedly served upon Counter-Defendants on the Friday before the motion for summary judgment was due, giving them no time to incorporate the new assignment agreement into their briefing.  Reply, Dkt. No. 216 at 17.  Counter-Defendants object to this as an "attempt to manufacture standing" after the fact and that in any case, the agreement is invalid because it lacks the signature of the third of the OMG Girlz (Rodriguez).

Counter-Defendants assert that a previous agreement between the individual members of the OMG Girlz and Counterclaimants Grand Hustle, LLC and Pretty Hustle, LLC, does not sufficiently assign any right of publicity.  Finkelstein Decl., Ex. N, Dkt. No. 148-7.  In relevant part, that agreement gives those companies the exclusive right to "use an publish Artists name (including all current professional group and assumed or fictitious names), approved photographs and approved biographical material" for the purpose of promotion and sale of songs.  <u>Id.</u> at 10.  At least two other courts in this district have found that similar contractual language constitutes assignment of the right of publicity. <u>Bravado Int'l Grp. Merch. Servs., Inc. v. Zhao</u>, No. 13-cv-01032-MMM (JCGx), 2014 WL 12579810, at *5 (C.D. Cal. June 20, 2014);<u>Del Amo v. Baccash</u>, No. 07-cv-663-PSG (JWJx), 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) ("The contractual assignments are sufficiently broad to assign the [parties'] rights of publicity under Section 3344.").  The Court agrees and finds that the OMG Girlz assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which are party to this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |

| | |
|---|---|
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |

   ii.   *Statutory and Common Law Claims of Misappropriation*

   The right of publicity is both a statutory and a common law right.  Comedy III
Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 391 (2001).  To sustain a common
law cause of action for commercial misappropriation, a plaintiff must prove: "(1) the
defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or
likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and
(4) resulting injury."  Newcombe v. Adolf Coors Co., 157 F.3d 686, 692 (9th Cir. 1998).
Cal. Civ. Code § 3344 provides in relevant part, "Any person who knowingly uses
another's name, voice, signature, photograph, or likeness, in any manner ... for purposes
of advertising ... without such person's prior consent ... shall be liable for any damages
sustained by the person."  Cal. Civ. Code § 3344(a).  California's common law cause of
action is complemented legislatively by section 3344, though the common law action
more broadly encompasses the plaintiff's identity and "is not limited to the appropriation
of name or likeness."  Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 414 (9th Cir.
1996); White v. Samsung Elecs. Am., Inc., 971 F.2d 1395 (9th Cir.1992) (holding that
the common law right of publicity extends not just to the name, likeness, voice and
signature of a famous person, but to anything at all that evokes that person's identity).

   White v. Samsung Elecs. Am., Inc. also stands for the proposition that a similar
style of dress and accessories invoking an individual's identity does not necessarily
support a statutory misappropriation of likeness claim under section 3344.  The White
court upheld the district court's grant of summary judgment to the defendants on White's
claim under section 3344(a), in which White alleged that the advertisement had used her
"likeness."  Id. at 1397.  The court noted that the statutory claim failed because
defendants had "used a robot with mechanical features, and not, for example, a manikin
molded to White's precise features."  Id.

   In sum, the White court distinguished between a broad common-law claim based
on the use of a person's overall "identity" and a narrower statutory claim based on the
use of a person's particular "likeness."  Id. at 1399.  Significantly, the court declined to
decide "when a caricature or impressionistic resemblance might become a 'likeness.'"
Id. at 1397.  The degree to which the OMG Dolls resemble, caricature, or bear an
impressionistic resemblance to the OMG Girlz is therefore material to a claim of
violation of section 3344.  See Wendt v. Host Int'l, Inc., 125 F.3d 806, 810 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)               Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

1997).

In <u>Wendt</u>, the Ninth Circuit reversed a grant of summary judgment where the district court, relying on <u>White</u>, determined that there was not a close enough resemblance between the animatronic robots and the live persons they apparently represented.  125 F.3d 806.  The Ninth Circuit reasoned that the district court erred in determining that the robots were not the likenesses of the appellants because the "likeness" need not be identical or photographic.  <u>Id.</u> at 809.  <u>Wendt</u> involved animatronic robots that resembled actors from the popular sitcom Cheers sitting at a bar, and are closer to a "mannikin molded in [the actors'] precise features" than a caricature.

The Court finds that White is more applicable here.  Even if the dolls are "readily identifiable" in the sense that they invoke the identity of the OMG Girlz, they are not realistic like the animatronic robots at issue in Wendt.  As in White, Counterclaimants have sufficiently created an issue of fact as to their common law claim but not their section 3344 claim.  Accordingly, the motion for summary judgment is **GRANTED** on Counterclaimants' section 3344 claim.

Counter-Defendants assert that the OMG Dolls do not meet the standard required to be the "likeness" of the OMG Girlz, even for the common law claim, because the Dolls are not "readily identifiable" as the band.  Mot. at 27-28 (citing <u>Newcombe</u>, 157 F.3d at 692).  They repeat the assertion that the OMG Girlz have an ever-changing "look" and argue that this is fatal to the claim.  <u>See id.</u>  Counter-Defendants also present evidence from a likeness survey conducted by their expert, which tested eight of the dolls emphasized by Counterclaimants and found that zero respondents identified the dolls as the OMG Girlz.  Finkelstein Decl. ¶ 9, Ex. H ¶ 119.  The Court rejects these arguments at this stage for the reasons already discussed in analyzing whether the OMG Girlz trade dress plays a source-identifying role or whether there is a likelihood of confusion between the OMG Dolls and OMG Girlz.  <u>See supra</u>.  Counterclaimants have established a question of fact as to whether the OMG Dolls evoke the identity of or are "readily identifiable" as the OMG Girlz for purposes of the common law right to publicity claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)          Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

iii.    *First Amendment Defense*

Counter-Defendants argue that the First Amendment fair use doctrine affords a
complete defense to the causes of action for appropriation of name and likeness.  Mot. at
28-29.  Counterclaimants argue that the Dolls are commercial speech and thus not
protected under the First Amendment.  But in In VIP Prod. LLC v. Jack Daniel's Props.,
Inc., 953 F.3d 1170, 1172 (9th Cir. 2020), the Ninth Circuit found that dog toys could
constitute protected speech under the First Amendment.  Considering this, and Counter-
Defendants' evidence of the work that goes into designing and creating the OMG Dolls,
the OMG Dolls could be considered expressive works.  Accordingly, the Court next
considers whether any defense under the First Amendment applies to these facts.

The California Supreme Court has recognized the "tension between the right of
publicity and the First Amendment."  Comedy III Prods., Inc. v. Gary Saderup, Inc., 25
Cal. 4th 387, 396 (2001) ("Comedy III").  In response, California courts apply a test that
examines "whether the new work merely supersede[s] the objects of the original creation
... or instead adds something new, with a further purpose or different character."  Ross v.
Roberts, 222 Cal. App. 4th 677, 685 (2013) (internal quotations and citation omitted).
The central inquiry is whether a work is "transformative."  Id. (citing Comedy III, 25
Cal. 4th at 396)).  A work is transformative if the "product containing a celebrity's
likeness is so transformed that it has become primarily the defendant's own expression
rather than the celebrity's likeness."  Comedy III, 25 Cal. 4th at 407.

California courts and the Ninth Circuit have set a few guideposts for determining
whether the transformative defense applies as a matter of law.  In Comedy III, the
California Supreme Court found that the transformative defense did not apply to the sale
of lithographed copies of a sketch of the likenesses of deceased personalities (the Three
Stooges) or t-shirts bearing the sketch.  In outlining the transformative defense, Comedy
III also proposes a "subsidiary inquiry" for close cases, which asks: "[D]oes the
marketability and economic value of the challenged work derive primarily from the fame
of the celebrity depicted?"  Comedy III, 25 Cal. 4th at 390.  In that case, the court found
that the marketability and economic value of the artistic expression derived primarily
from the fame of the celebrities depicted.

In Kirby, the court examined whether the transformative defense applied where a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS (AGRx) | Date | July 29, 2022 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. |
|---|---|

well-known dancer claimed that her likeness was being used by a video game character. Kirby v. Sega of Am., Inc., 144 Cal. App. 4th 47, 59 (2006). The court found that plaintiff had raised an issue of material fact as to whether the video game character constituted plaintiff's likeness but dismissed the claim on grounds of the First Amendment defense. The court found that the work was transformative because the character was not a literal depiction of plaintiff, the character was designed based in part on the Japanese style of anime, and hair and costumes differed slightly. Id. The court considered significant the fact that the character was depicted in a very different context than plaintiff's: plaintiff was a musician while her depiction was a "space-age reporter." Id.

Winter v. DC Comics provides another example of a case in which the court found that the transformative defense applied. 30 Cal. 4th 881 (2003). In Winter, the California Supreme Court held that the publisher of a comic book was entitled to summary judgment on the grounds of the transformative use defense. The cover of the comic book showed cartoon figures based on two musicians (Johnny and Edgar Winter) that were "distorted for purposes of lampoon, parody, or caricature" and drawn as "half-human and half worm [characters] in a larger story, which [wa]s itself quite expressive." Id. at 890. The court observed that the characters and their portrayals in the comic books "d[id] not greatly threaten plaintiffs' right of publicity" because fans who would want to purchase depictions of those celebrities would find the comicbook drawings "unsatisfactory as a substitute for conventional depictions." Id.

The Ninth Circuit discussed these cases in Hilton v. Hallmark Cards, 599 F.3d 894, 910 (9th Cir. 2010). Hilton involved a greeting card containing the image of celebrity plaintiff Paris Hilton's head on top of a generic cartoon body, holding a plate of food and saying Hilton's catchphrase, "That's hot." Id. at 899. Hilton argued that defendant Hallmark lifted the entire scene from an episode of Hilton's television show in which she worked at a fast-food restaurant. Id. at 911. Defendant Hallmark argued that the transformative defense applied because the restaurant and clothing style was different, the image of Hilton's oversized head on a cartoon body was not a literal depiction, and the meaning of the catchphrase was transformed. Id. In declining to declare that the transformative defense applied as a matter of law, the Ninth Circuit stated that the California Supreme Court "envisioned the application of the defense as a question of fact." Id. at 910 (citing Comedy III, 25 Cal. 4th at 409).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)                Date    July 29, 2022

Title       MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Here, the Dolls are not realistic human depictions: they are highly stylized and
cartoonish, with enormous heads and eyes, and tiny hands and noses.  The outfits and
hairstyles, while very similar to the OMG Girlz' asserted signature style, do differ, and
the many dolls come with a wide variety of outfit and styling options.  There are dozens
of OMG Dolls that Counterclaimants do not challenge featuring designs and looks that
differ greatly from the OMG Girlz.  In these ways, the Dolls are analogous to Kirby,
where a cartoon-ish digital avatar with a stylized look and notable other visual
differences to plaintiff was sufficiently transformative for the defense to apply.  In
support of their argument that the depictions need not be "literal" or necessarily human-
like to preclude the transformative defense, Counterclaimants point to No Doubt v.
Activision Publ'g, Inc., in which a California appellate court found that the defense did
not apply as a matter of law where digital avatars of plaintiff bandmembers were used in
a rock band-styled video game. 192 Cal. App. 4th 1018, 1035 (2011).  Unlike the
depictions at issue in No Doubt, however, the OMG Dolls do not bear the official
identity of the individual bandmembers of OMG Girlz as did the avatars in No Doubt, as
the Dolls have different individual names, despite sharing the "OMG" branding.

On the other hand, several of the Dolls do feature a musical theme or come as a
band; several Dolls are even featured in music videos.  Unlike Kirby, the "setting" in
which the Dolls are placed is–at least at times–similar to the public depictions of the
OMG Girlz, both as a band and as featured in popular music videos on YouTube.  And
unlike Winter, there is no strong evidence that the Dolls would be "unsatisfactory as a
substitute for conventional depictions" of the OMG Girlz.  Winter, 30 Cal. 4th at 890.  In
fact, there is reason to believe that the OMG Girlz market overlaps with the potential
purchasers of OMG Dolls. At this stage, Counter-Defendants have not conclusively
proven that the Dolls do not "threaten the markets for celebrity memorabilia that the
right of publicity is designed to protect."  Comedy III, 25 Cal. 4th at 405.

The Court cannot say that the Dolls have been sufficiently transformed to apply
the defense as a matter of law.  Accordingly, the Court finds that whether the
transformative defense applies here is more properly reserved for the trier of fact.  See id.
at 409 ("Although the distinction between protected and unprotected expression will
sometimes be subtle, it is no more so than other distinctions triers of fact are called on to
make in First Amendment jurisprudence.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)          Date   July 29, 2022

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Nonetheless, not all of the Dolls included in the Infringing Dolls Index present a genuine dispute of fact as to whether they share the likeness of the OMG Girlz. Having reviewed the Infringing Doll Index, the Court finds that the Dolls for which there is a question of fact regarding trade dress infringement also create a dispute of fact as whether those Dolls are "readily identifiable" for purposes of the common law likeness claim. Counterclaimants have an additional column in the Infringing Dolls Index specifically as to the likeness claim and identify a few dolls that they claim to be almost identical to one of the members of the OMG Girlz at an "iconic" event. However, Counterclaimants do not point to evidence that these one-off events are so "iconic" that a Doll dressed in a similar outfit, alone, will invoke the identity of the original bandmember in that moment. In any event, the individual bandmembers that compose the OMG Girlz are not parties to this action. Accordingly, the Court **GRANTS** in part and **DENIES** in part the motion for summary judgment on the common law misappropriation claim as to the same Dolls that were found to present a question of fact as to trade dress infringement.

|  | Doll No.[17] |
|---|---|
| Dismissed under Misappropriation Claim | 14, 19, 20, 26, 27, 29-32, 37, 39-58, 60-64, 66-70 |
| Remain under Misappropriation Claim | 1-13, 15-18, 21-25, 28, 33-36, 38, 59, 65, 71 |

### D.   Unfair Competition Law ("UCL") Claims

Counter-Defendants argue that Counterclaimants' UCL claims are "purely derivative of the other claims and therefore also fail." Mot. at 30 (Cel-Tech Commc'ns v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999); Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994). Counterclaimants do not respond to the motion regarding the UCL claims in their opposition. Accordingly, Counterclaimants have abandoned their UCL claim. See Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir.

_____

[17] Numbers are based on the attached App'x A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)              Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

2008) (claims not raised in opposition to summary judgment are deemed abandoned).
The motion for summary judgment on the UCL claim is **GRANTED**.

   E.    *Disgorgement and Restitution Remedies*

   Counter-Defendants argue that they are entitled to summary judgment on the
disgorgement remedy sought by Counterclaimants, arguing that Counterclaimants have
failed to raise a genuine dispute regarding willfulness.  Mot. at 22-23.  In response,
Counterclaimants merely point out, albeit correctly, that willfulness is not a precondition
to recovery of profits.  Opp'n at 30.

   Although "willfulness is not an 'inflexible precondition to recovery' of a
defendant's profits under § 35(a)" of the Lanham Act, "defendant's mental state is a
highly important consideration in determining whether an award of profits is
appropriate."  Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc., 28 F.4th 35,
38 (9th Cir. 2022) (quoting Romag Fasteners, Inc v. Fossil, Inc., 140 S. Ct. 1492, 1497
(2020)).  Principles of equity and restitution recognize that disgorgement of profits is
typically appropriate in cases involving "conscious wrongdoers;" in these cases,
plaintiffs seek disgorgement of profits not necessarily to be made whole, but to prevent
the defendant from retaining gains made possible by its wrongdoing.  See Restatement
(Third) of Restitution and Unjust Enrichment § 51 (2011) ("This profit-based measure of
unjust enrichment determines recoveries against conscious wrongdoers and defaulting
fiduciaries.  Recovery so measured may potentially exceed any loss to the claimant.").

   As instructed by Romag, the Court considers Counter-Defendants' mental state
with regards to the inquiry of whether the award of profits is appropriate here.  Under
Ninth Circuit law, "[w]illful infringement carries a connotation of deliberate intent to
deceive."  Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993),
superseded by statute on other grounds, Trademark Amendments Act of 1999, Pub. L.
No. 106–43, 113 Stat. 218. "Willfulness and bad faith 'require a connection between a
defendant's awareness of its competitors and its actions at those competitors' expense.'"
Id. at 1406 (quoting ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 966 (D.C.
Cir. 1990)).  The merits of the infringement claim are not identical to willfulness inquiry:
a jury could find that Counter-Defendants infringed upon the OMG Girlz trade dress
even if Counterclaimants fail to provide sufficient evidence to show that Counter-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS (AGRx)           Date   July 29, 2022

Title     MGA Entertainment Inc. v. Clifford T.I. Harris et al.

Defendants were willful in their actions, which is a higher bar to meet.  Razor USA LLC
v. Vizio, Inc., No. 14-cv-01586-SJO (JCGx), 2015 WL 12656941, at *6 (C.D. Cal. Oct.
19, 2015).

        Here, Counterclaimants present evidence of knowledge of infringement in the
form of an email exchange in which MGA employees discuss the lyrics of a song, which
they believe to include a line about the "OMG Dolls."  Ranahan Decl., Ex. O, Dkt. No.
204-11.  Later on, an employee corrects the group, stating "I think they're talking about
OMG Girlz, not OMG Dolls[.]"  Id. at 2.  Counterclaimants further present the testimony
from Tameka Harris regarding her belief that MGA discussed basing a line of dolls on
the OMG Girlz as early as 2010, at an event featuring a giveaway of Bratz dolls, not
sponsored by MGA, and at which the OMG Girlz performed.  This was deemed
inadmissible hearsay.  In any case, neither of these pieces of evidence demonstrates
willfulness sufficient to create a dispute of fact.  The email exchange only demonstrates
that an employee, who was not the designer on the email thread, knew who the OMG
Girlz were; not that the OMG Girlz had an influence on the design.  Counter-Defendants
present evidence refuting willfulness, including declarations from several of the Dolls'
designers, who declared that the Dolls were not based on the OMG Girlz, see Dkt. Nos.
142-8, 142-9, 149.

        However, the question of willfulness is at issue in Counterclaimants' motion for
sanctions for spoliation of evidence, which in particular centers on the preservation of
evidence relevant to the design of the dolls at issue.  Dkt. No. 190.  In that motion,
Counterclaimants seek an adverse instruction including the inference that documents
may have existed that would help their case and to infer willfulness and wrongdoing.  In
relevant part, Counterclaimants point to the testimony of one of MGA's marketing vice
president who stated that "the bulk of [the designers'] files are stored" on the department
drive.  Dep. of Kathy Brandon, Dkt. No. 192-13.  MGA's witness on document
collection testified that this drive was not searched and responsive documents not
produced for responsive custodians.  Dep. of Gilbert Key, Dkt. No. 192-7.

        Although willfulness is no longer a precondition to recovery, it remains an
important consideration.  Morever, to the extent that Counterclaimants seek a
disgorgement of wrongful gains and thereby prevent it from being unjustly enriched, that
is an equitable claim to which Counterclaimants are not entitled a jury decision.  See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS (AGRx)                Date    July 29, 2022

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al.

McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund, Inc., 339 F.3d 1087, 1093 (9th Cir. 2003) ("[U]njust enrichment is an equitable remedy"). Accordingly, it is not necessary to reach the merits of either the motion for sanctions for spoliation of evidence nor the disgorgement issue at this time. The Court orders the disgorgement remedy issue **BIFURCATED** from the liability and damages portion of the trial. If the jury finds that Counter-Defendants are liable for infringement, the Court will take up this equitable issue at the end of trial. The Court notes that to the extent that Counterclaimants seek profits as a surrogate measure of their own damages, they may present evidence of the profits at trial; Counterclaimants may also present evidence of knowledge or willfulness if relevant to their claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the motion for summary judgment as follows:

1.    The Motion is **GRANTED** as to Counterclaimants' trademark claim and the statutory right of publicity claims under Cal. Civ. Code § 3344.

2.    The Motion is **DENIED** as to Counterclaimants' trade dress infringement and common law right of publicity claims, except as to certain of the Dolls as detailed in the Order.

3.    The disgorgement remedy issue is ordered **BIFURCATED** from the liability and damages portion of the trial.

   **IT IS SO ORDERED.**

Initials of Preparer            :            lmb

# Appendix A

**APPENDIX A: OMG GIRLZ LLC'S SECOND SUPPLEMENTAL RESPONSES TO COUNTER-DEFENDANT ISAAC LARIAN'S FIRST SET OF INTERROGATORIES NOS. 8, 15, & 16**

<u>List of Infringing LOL Surprise! OMG Dolls</u>

Below are examples that we have been able to identify related to MGA's infringement of the trademark and trade dress rights of the Grand Parties, and misappropriation of likeness/violations of right of publicity. The Grand Parties expressly reserve the right to amend or supplement these responses. Specifically, given that The Grand Parties do not have the dolls, packaging, alternate outfits, and other accessories (and have only seen all OMG Dolls products as they are shown in the catalog or advertised online), we reserve the right to add additional connections and associations to the extent they are uncovered throughout the remainder of the case.

**(1)**

| Product Name | Image | Right of Publicity | Trade Dress/ Trademark |
|---|---|---|---|
| L.O.L. Surprise! O.M.G. Remix Super Surprise – 70+ Surprises, 4 Fashion Dolls & 4 Dolls<br><br>"O.M.G. Remix Rock" individual dolls, "Bhad Gurl" |  | OMG Girlz and/or Ms. Pullins<br><br>Wearing strikingly similar hair color to Star/Ms. Pullins, including black underneath, bangs, and flourescent yellow-green coloring throughout. This is an iconic look from the OMG Girlz's 2017-18 NYE Concert, and is one of Star's signature OMG Girlz looks<br><br>Wearing similar black outfit as Star/Ms. Pullins at same show, including black and silver accents, fish net stockings, and black bustier<br><br>Wearing similar shade of maroon or berry lipstick and yellow or lime eyeshadow | Traded under the "OMG" name<br><br>Sold in a box prominently bearing "OMG"<br><br>Sold in a box that transforms into a stage for musicians/ entertainers to perform (some versions of this box include a cassette player on the front and back of the box, further reinforcing the musical theme)<br><br>Wearing strikingly similar hair color to Star/Ms. Pullins, including black underneath,bangs, and flourescent yellow-green coloring throughout. This is an iconic look from the OMG Girlz's 2017-18 NYE Concert, |

| | | Named "Bhad Gurl" reminiscent of OMG Girlz's song named "Baddie," with 1.65 million streams on Soundcloud.<br><br>Portrayed as a musician<br><br>Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the look of OMG Girlz at 2017/2018 NYE reunion concert. | and is one of Star's signature OMG Girlz looks.<br><br>Wearing similar black outfit as Star/Ms. Pullins at same show, including black and silver accents, fish net stockings, and black bustier<br><br>Wearing similar shade of maroon or berry lipstick and yellow or lime eyeshadow<br><br>Named "Bhad Gurl" reminiscent of OMG Girlz's song named "Baddie," with 1.65 million streams on Soundcloud.<br><br>Portrayed as a musician<br><br>Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the look of OMG Girlz at 2017/2018 NYE reunion concert.<br><br>Marketed and sold in a "girl group" box set, including the doll Metal Chick, who has strikingly similar outfit(s), hair, and makeup to the stage look of OMG Girlz's Beauty at the OMG Girlz's 2017/2018 NYE reunion concert |
|---|---|---|---|

| (2) | L.O.L. Surprise! O.M.G. Remix Super Surprise – 70+ Surprises, 4 Fashion Dolls & 4 Dolls<br><br><br>"O.M.G. Remix Rock" individual dolls, "Metal Chick" |  | OMG Girlz<br><br>Bears a striking similarity to OMG Girl Beauty at iconic 2017-2018 reunion concert, and sold in "remix" pack of OMG Girlz playing at concert—box opens up to a concert stage<br><br>Portrayed as a musician<br><br>Wearing strikingly similar look to OMG Girlz's Beauty, including half-black and half-pink hair coloring, black and silver outfit with fishnet stockings pink tutu/puffy skirt, pink eye shadow, and dark eyeliner/ mascara around the doll's eyes. This is an iconic look from the OMG Girlz's 2017-18 NYE Concert, and includes elements of Beauty's most recognizable OMG Girlz looks. | Traded under the "OMG" name<br><br>Sold in a box prominently bearing "OMG"<br><br>Sold in a box that transforms into a stage for musicians/ entertainers to perform (some versions of this box include a cassette player on the front and back of the box, further reinforcing the musical theme)<br><br>Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the look of OMG Girlz at 2017/2018 NYE reunion concert<br><br>Marketed and sold in a "girl group" box set including the doll "Bhad Gurl" who has strikingly similar outfit(s), hair, and makeup to the stage look of OMG Girlz's Star/MS. Pullins at the at the OMG Girlz's 2017/2018 NYE reunion concert<br><br>Marketed and sold in a "girl group" box set featuring a doll named "Bhad Gurl" reminiscent of OMG Girlz's song named "Baddie," with |
| --- | --- | --- | --- | --- |

| | | | | |
|---|---|---|---|---|
| | | | | 1.65 million streams on Soundcloud<br><br>Bears a striking similarity to OMG Girl Beauty at icon<u>ic 2017-2018</u> reunion concert, and sold in "remix" pack of OMG Girlz playing at concert—box opens up to a concert stage<br><br>Portrayed as a musician<br><br>Wearing strikingly similar look to OMG Girlz's Beauty, including half-black and half-pink hair coloring, black and silver outfit with fishnet stockings pink tutu/puffy skirt, pink eye shadow, and dark eyeliner/ mascara around the doll's eyes. This is an iconic look from the OMG Girlz's 2017-18 NYE Concert, and includes elements of Beauty's most recognizable OMG Girlz looks. |
| **(3)** | L.O.L. Surprise! O.M.G. Remix Super Surprise – 70+ Surprises, 4 Fashion Dolls & 4 Dolls<br><br><br>"O.M.G. Remix Rock" individual dolls, Ferocious |  | OMG Girlz and/or Ms. Pullins<br><br>Brown/auburn curly hair in an updo in which the curls cascade forward, similar to another of Zonnique Pullins' iconic looks<br><br>Portrayed as a musician in a girl group while also featuring elements of OMG Girlz's iconic outfit | Traded under the "OMG" name<br><br>Sold in a box prominently bearing "OMG"<br><br>Sold in a box that transforms into a stage for musicians/ entertainers to perform (some versions of this box include a cassette |

| | | combinations including tutus/puffy skirts, layered clothing, fishnet stockings, bold accessories, and bold hair styles | player on the front and back of the box, further reinforcing the musical theme)

Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the look of OMG Girlz at 2017/2018 NYE reunion concert

Marketed and sold in a "girl group" box set, including the dolls Metal Chick and Bhad Gurl, who have strikingly similar outfit(s), hair, and makeup to the stage look of OMG Girlz's Beauty and Star, respectively, at the OMG Girlz's 2017/2018 NYE reunion concert

Portrayed as a musician in a girl group while also featuring elements of OMG Girlz's iconic outfit combinations including tutus/puffy skirts, layered clothing, fishnet stockings, bold accessories, and bold hair styles

Marketed and sold in a "girl group" box set featuring a doll named "Bhad Gurl" reminiscent of OMG Girlz's song named "Baddie," with |
|---|---|---|---|

| | | | 1.65 million streams on Soundcloud |
|---|---|---|---|
| **(4)** L.O.L. Surprise! O.M.G. Remix Super Surprise – 70+ Surprises, 4 Fashion Dolls & 4 Dolls<br><br>"O.M.G. Remix Rock" individual dolls, "Fame Queen" |  | OMG Girlz<br><br>Portrayed as a musician in a girl group while also featuring elements of OMG Girlz's iconic outfit combinations including tutus/puffy skirts, layered clothing, fishnet stockings, bold accessories, and crimped/straight hair styles | Traded under the "OMG" name<br><br>Sold in a box prominently bearing "OMG"<br><br>Sold in a box that transforms into a stage for musicians/ entertainers to perform (some versions of this box include a cassette player on the front and back of the box, further reinforcing the musical theme)<br><br>Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the look of OMG Girlz at 2017/2018 NYE reunion concert<br><br>Portrayed as a musician in a girl group while also featuring elements of OMG Girlz's iconic outfit combinations including tutus/puffy skirts, layered clothing, fishnet stockings, bold accessories, and bold hair styles<br><br>Includes elements of OMG Girlz's iconic outfit combinations including tutus/puffy |

| | | | | skirts, layered clothing, fishnet stockings, bold accessories<br><br>Marketed and sold in a "girl group" box set, including the dolls Metal Chick and Bhad Gurl, who have strikingly similar outfit(s), hair, and makeup to the stage look of OMG Girlz's Beauty and Star, respectively, at the OMG Girlz's 2017/2018 NYE reunion concert<br><br>Marketed and sold in a "girl group" box set featuring a doll named "Bhad Gurl" reminiscent of OMG Girlz's song named "Baddie," with 1.65 million streams on Soundcloud |
|---|---|---|---|---|
| **(5)** | LOL Surprise! O.M.G. Shadow Winter Disco Bigger Surprise with 5 Exclusive Dolls and 60+ Surprises |  | OMG Girlz<br><br>Features strikingly hair style to OMG Girlz's Baby Doll, including long, straight purple locks with pink accents, which are elements of Baby Doll's most recognizable OMG Girlz looks—in addition to layered clothing bold accessories (i.e., hat and jelwelry) | Traded under the "OMG" name.<br><br>Sold in a package prominently bearing "OMG"<br><br>Hair color substantially similar to Baby Doll's purple with strips in front hair (see Counterclaims comparison)<br><br>This doll is part of the CORE-SERIES 2.8 which features two other dolls resmbling, and positioned to resemble in |

| | | | | marketing, the two other OMG Girlz' members. The three dolls are positioned exactly how the OMG Girlz would stand for pictures with Babydoll in the middle and Star and Beauty on either side of her. |
|---|---|---|---|---|
| **(6)** | LOL Surprise OMG Series 3 Chillax Fashion Doll with 20 Surprises |  | OMG Girlz<br><br>Wearing bold, blue hair featuring shades of teal and turquoise similar in style to the iconic looks of Star/Ms. Pullins, all of which are elements of the OMG Girlz's recognizable looks<br><br>Features an outfit that is strikingly similar to an outfit that was custom made for the OMG Girlz, and that was worn by the OMG Girlz for the "All Around the World Tour" in the summer of 2013<br><br>Has been sold in a package with "Roller Chick" who features a pink hairstyle and outfit similar to OMG Girlz's Beauty. This is a combination of two dolls sold together both of which feature the OMG Girlz's iconic hairstyles and looks | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Wearing bold, blue hair featuring shades of teal and turquoise similar in style to the iconic looks of Star/Ms. Pullins, all of which are elements of the OMG Girlz's recognizable looks<br><br>Features an outfit that is strikingly similar to an outfit that was custom made for the OMG Girlz, and that was worn by the OMG Girlz during a well publicized performance<br><br>Has been sold in a package with "Roller Chick" who features a pink hairstyle and outfit similar to OMG Girlz's Beauty. This is a combination of two dolls sold together both of which feature the OMG Girlz's iconic hairstyles and looks. |

| | | | | |
|---|---|---|---|---|
| **(7)** | LOL Surprise OMG Series 3 Roller Chick fashion doll with 20 Surprises |  | OMG Girlz<br><br>Features iradescent bottoms, layered tops, and long pink ponytails with various banded sections, similar to the hairstyle worn by Beauty in another iconic look from the photoshoot and artwork associated with the OMG Girlz's song "Baddie"<br><br>Has been sold in a package with "Chillax" who features bold, blue hair including shades of teal and turquoise, similar in style to the iconic looks of Star/Ms. Pullins, all of which are elements of the OMG Girlz's recognizable looks. This is a combination of two dolls sold together both of which feature the OMG Girlz's iconic hairstyles and looks | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Features iradescent bottoms, layered tops, and long pink ponytails with various banded sections, similar to the hairstyle worn by Beauty in another iconic look from the photoshoot and artwork associated with the OMG Girlz's song "Baddie"<br><br>Has been sold in a package with "Chillax" who features bold, blue hair including shades of teal and turquoise, similar in style to the iconic looks of Star/Ms. Pullins, all of which are elements of the OMG Girlz's recognizable looks. This is a combination of two dolls sold together both of which feature the OMG Girlz's iconic hairstyles and looks |
| **(8)** | LOL Surprise OMG Remix Rocker Boi and Punk Grrrl 2 Pack -2 Fashion Dolls with Music |  | OMG Girlz and/or Ms. Pullins<br><br>Features Star/Ms. Pullins' blue hair and "mohawk-like" updo from the OMG Girlz's performances during the Scream Tour<br><br>While on the Scream Tour, Ms. Pullins was rumored | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Marketed and sold in a box that has a musical theme, including words associated with touring |

| | | | | |
|---|---|---|---|---|
| | | | to be close with a member of a boy band with whom the OMG Girlz were on tour. This band member notoriously wore his hair long<br><br>Marketed and sold in a box that has a musical theme, including words associated with touring and entertainment, like "Tour" and "Scream" and "O.M.G. (Rock the Stage)" | and entertainment, like "Tour" and "Scream" and "O.M.G. (Rock the Stage)"<br><br>Portrayed as musicians on tour together<br><br>Features Star/Ms. Pullins' blue hair and "mohawk-like" updo from the OMG Girlz's performances during thefScream Tour<br><br>While on the Scream Tour, Ms. Pullins was rumored to be close with a member of a boy band with whom the OMG Girlz were on tour. This band member notoriously wore his hair long |
| **(9)** | LOL Surprise OMG Downtown B.B. Fashion Doll with 20 Surprises |  | OMG Girlz and/or Ms. Pullins<br><br>Features signature hair color and style of Star (including blue and darker blue shares) and style of Star in OMG Girlz<br><br>The "B.B. Doll" name evokes Baby Doll's name in the OMG Girlz<br><br>Also features camoflauge clothing, specifically camoflauge pants, reminiscent of another look worn during an iconic photo opportunity with the OMG Girlz on the BET television show,"106 & | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Features signature hair color and style of Star (including blue and darker blue shares) and style of Star in OMG Girlz<br><br>Also features camoflauge clothing, specifically camoflauge pants, reminiscent of another look worn during an iconic photo opportunity with the |

| | | Park" where the group appeared numerous times, both alone as a girl group and together with Star/Ms. Pullins's parents, T.I. and Tiny | OMG Girlz on the BET television show,"106 & Park" where the group appeared numerous times, both alone as a girl group and together with Star/Ms. Pullins's parents, T.I. and Tiny |
|---|---|---|---|
| | | Has the name "Downtown B.B.," evoking the "urban" or "city" vibe, reminiscent of the OMG Girlz's numerous appearances on "106 & Park," and overall urban and edgy style | Has the name "Downtown B.B.," evoking the "urban" or "city" vibe, reminiscent of the OMG Girlz's numerous appearances on "106 & Park," and overall urban and edgy style |
| | | | This doll is part of the CORE-SERIES 2.8 and 3.8 which features two other dolls resmbling, and positioned to resemble in marketing, the two other OMG Girlz' members. The three dolls are positioned exactly how the OMG Girlz would stand for pictures with Babydoll in the middle and Star and Beauty on either side of her. |

| | |  | OMG Girlz and/or Ms. Pullins<br><br>Dark hair with colored accents, similar to how the early/young OMG Girlz added bolder colors to their natrual hair color for performances<br><br>Featuring a red layered outfit (jacket and pants) similar to the outfit worn by Star/Ms. Pullins in the OMG Girlz's Myspace photo. OMG Girlz also wore red leather outfit components during a notable and well photographed stage performance<br><br>The name of the doll features "Babe," which is reminiscent of "Baby Doll from the OMG Girlz | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Dark hair with colored accents, similar to how the early/young OMG Girlz added bolder colors to their natrual hair color for performances<br><br>The name of the doll features "Babe," which is reminiscent of "Baby Doll from the OMG Girlz<br><br>Featuring a red layered outfit (jacket and pants) similar to the outfit worn by Star/Ms. Pullins in the OMG Girlz's Myspace photo. OMG Girlz also wore red leather outfit components during a notable and well photographed stage performance |
|---|---|---|---|---|
| **(10)** | LOL Surprise OMG Spicy Babe fashion dolls - Series 4 Doll with 20 Surprises | | | |
| **(11)** | LOL Surprise OMG Dance Dance Dance Miss Royale Fashion Doll with 15 Surprises |  | Marketed with Major Lady in Quartet Dance Group | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | |
|---|---|---|---|
| **(12)** | LOL Surprise OMG Dance Dance Dance B-Gurl Fashion Doll with 15 Surprises |  | Marketed with Major Lady in Quartet Dance Group | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(13)** | LOL Surprise OMG Dance Dance Dance Virtuelle Fashion Doll with 15 Surprises |  | Marketed with Major Lady in Quartet Dance Group | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(14)** | LOL Surprise Holiday OMG 2021 Collector NYE Queen fashion doll with Gold Fashions and Accessories |  | Ms. Pullins<br><br>Replicates the sheer, gold dress worn by Ms. Pullins during a highly publicized listening party. Like Ms. Pullins's dress, the doll's dress is sheer on the bottom, cut out in the back, and features gold glitter accents.<br><br>The doll—like Ms. Pullins—also features a blonde curly updo and burgundy lipstick as worn by Ms. Pullins during her listening party | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Portrays iconic moment from Ms. Pullins of OMG Girlz individual solo listening party |

| | | | | |
|---|---|---|---|---|
| **(15)** | LOL Surprise OMG Lady Diva fashion doll |  | Ms. Pullins<br><br>Reminiscent of curly yellow updo worn by Ms. Pullins on the cover of her EP, "Love Jones" both the doll and Ms. Pullins are wearing fur coats<br><br>Name of the doll "Lady Diva" resembles **Beauty'** alter ego name **"The Diva."**<br><br>Musical theme, including headset /microphone | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Musical theme, including headset /microphone |
| **(16)** | LOL Surprise OMG Remix Honeylicious fashion doll - 25 Surprises with Music |  | OMG Girlz<br><br>Dark braided hair with colored accents, similar to how the early/young OMG Girlz added bolder colors to their natrual hair color for performances, and similar to band member Beauty's looks on Instagram<br><br>Also features camoflauge clothing, specifically camoflauge pants, reminescent of another look worn during an iconic photo opportunity with the OMG Girlz on the BET television show,"106 & Park" where the group appeared numerous times, both alone as a girl group and together with Star/Ms. Pullins's parents, T.I. and Tiny<br><br>Performing in a musical group with other female | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Dark hair with colored accents, similar to how the early/young OMG Girlz added bolder colors to their natrual hair color for performances<br><br>Also features camoflauge clothing, specifically camoflauge pants, reminescent of another look worn during an iconic photo opportunity with the OMG Girlz on the BET television show,"106 & Park" where the group appeared numerous times, both alone as a girl group and together |

| | | members while wearing outfit(s), hair and makeup that are strikingly similar to the looks of OMG Girlz<br><br>Portrayed as a musician in a girl group<br><br>Includes elements of OMG Girlz's iconic outfit combinations including camopflauge, layered clothing, colorful accents in hair, and bold accessories | with Star/Ms. Pullins's parents, T.I. and Tiny<br><br>Performing in a musical group with other female members while wearing outfit(s), hair and makeup that are strikingly similar to the looks of OMG Girlz<br><br>Portrayed as a musician in a girl group<br><br>Includes elements of OMG Girlz's iconic outfit combinations including camopflauge, layered clothing, colorful accents in hair, and bold accessories |
|---|---|---|---|
| **(17)** LOL Surprise OMG Series 3 Class Prez fashion doll with 20 Surprises |  | OMG Girlz<br><br>Beauty's signature hot pink hair and Star/Ms. Pullins' red and turquise look during a well publicized photoshoot | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>To the extent hair is pink, Beauty's signature color |

| | | | | |
|---|---|---|---|---|
| **(18)** | LOL Surprise OMG Dance Dance Dance Major Lady fashion doll with 15 Surprises |  | Named after Tameka Harris' nickname "Major Girl" with her signature reddish/orange ponytail; reference to Stardust while Tameka's daughter is Star in OMG Girlz; Marketed in a quartet dance group of similar composition to singing and dance group Tameka is in Xscape | Traded under the "OMG" name<br><br>Named after Tameka Harris' nickname "Major Girl" with her signature reddish/orange ponytail; reference to Stardust while Tameka's daughter is Star in OMG Girlz; Marketed in a quartet dance group of similar composition to singing and dance group Tameka is in Xscape |
| **(19)** | LOL Surprise OMG Queens Splash Beauty fashion doll with 125+ Mix and Match Fashion Looks |  | OMG Girlz and/or Ms. Pullins<br><br>Name includes "Beauty" like "Beauty" in OMG Girlz<br><br>Blue/Turquoise hair and style like the signature style of Star/Ms. Pullins, and pink ornate gown as worn by Ms. Pullins during her "Sweet 16" birthday party<br><br>Fun colorful makeup | Traded under the "OMG" name.<br><br>Name includes "Beauty" like "Beauty" in OMG Girlz<br><br>Blue/Turquoise hair and style like the signature style of Star/Ms. Pullins<br><br>Fun colorful makeup |
| **(20)** | L.O.L. Surprise OMG Doll Series 4.5 - Sunshine Gurl |  | OMG Girlz<br><br>Resembles the long pink hair styled half up half down with two top knots that Beauty wore in the OMG Girlz | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Pink hair and half up half down bun hair style, reminiscent of Beauty's images in OMG Girlz ` |

| | | | | |
|---|---|---|---|---|
| **(21)** | L.O.L. Surprise! O.M.G. Miss Independent Fashion Doll with 20 Surprises | | OMG Girlz and/or Ms. Pullins<br><br>Blue/Turquoise hair like the signature style of Star/Ms. Pullins<br><br>Layered clothing, and bold accessories, including star shaped earrings (Ms. Pullins's stage name is Star) | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Blue/Turquoise hair like the signature style of Star/Ms. Pullins<br><br>Layered clothing, and bold accessories, including star shaped earrings (Ms. Pullins's stage name is Star) |
| **(22)** | LOL Surprise OMG Present Surprise Fashion Doll Miss Glam | | OMG Girlz<br><br>Dark, natural colored hair with oversized bows, similar to early/young OMG Girlz's looks, and Tutu skirt identical to those worn by the OMG Girlz. The tutu skirt was one of the OMG Girlz' main accessories and part of their brand | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(23)** | LOL Surprise OMG Queens Runway Diva fashion doll with 20 Surprises | | OMG Girlz<br><br>Features strikingly similar hair style to OMG Girlz's Baby Doll, including long, straight purple locks with pink accents, which are elements of Baby Doll's most recognizable OMG Girlz looks.<br><br>Also features layered bold clothing, including iradescent tutu and sheer stockings, in addition to the other elements described above. This look is reminiscent of | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Marketed with the other OMG "Queens" who feature an OMG t-shirt, and iconic hair colors and outfits worn by the OMG Girlz during an iconic red carpet moment and during their WAT-AAH photoshoot |

| | | another iconic photoshoot/red carpet look. | |
|---|---|---|---|
| **(24)** LOL Surprise OMG Queens Miss Divine fashion doll with 20 Surprises |  | OMG Girlz<br><br>Features the iconic pink hair worn by Beauty, plus layered bold clothing, including iradescent tutu and sheer stockings, multi-colored accessories and shoes, in addition to the other elements described above. This look is reminiscent of another iconic photoshoot/red carpet look. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Marketed with the other OMG "Queens" who feature an OMG t-shirt, and iconic hair colors and outfits worn by the OMG Girlz during an iconic red carpet moment and during their WAT-AAH photoshoot |
| **(25)** LOL Surprise OMG Queens Prism fashion doll with 20 Surprises |  | OMG Girlz and/or Ms. Pullins<br><br>Features the iconic blue hair (including pink-ish stripes all gathered in an updo) as worn by Star/Ms. Pullins, plus layered bold clothing, including blakc and white full skirt and sheer stockings, multi-colored accessories and shoes, in addition to the other elements described above. This look is reminiscent of another iconic photoshoot/red carpet look. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Features the iconic blue hair (including pink-ish stripes all gathered in an updo) as worn by Star/Ms. Pullins, plus layered bold clothing, including blakc and white full skirt and sheer stockings, multi-colored accessories and shoes, in addition to the other elements described above. This look is reminiscent of another iconic photoshoot/red carpet look. |

| | | | |
|---|---|---|---|
| | | | Marketed with the other OMG "Queens" who feature an OMG t-shirt, and iconic hair colors and outfits worn by the OMG Girlz during an iconic red carpet moment and during their WAT-AAH photoshoot |
| **(26)** LOL Surprise OMG Queens Sways fashion doll with 20 Surprises |  | OMG Girlz<br><br>Evokes OMG Girlz' style with the bright, multi-colored braids | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Features "OMG" t-shirt, layered clothing, colorful hairstyles |
| **(27)** LOL Surprise OMG Crystal Star 2019 Collector Edition fashion doll |  | OMG Girlz<br><br>Evokes OMG Girl Star by featuring pink curly hair, layered clothing, and including "Star" in name<br><br>Evokes the look worn by Ms. Pullins during her highly publicized baby shower, including the light pink har and white/silver jumpsuit, as well as the theme of the baby shower itself | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Evokes OMG Girl Star by featuring pink curly hair, layered clothing, and including "Star" in name |

| (28) | LOL Surprise OMG Sweets fashion dolls - Series 4 Doll with 20 Surprises |  | OMG Girlz<br><br>Pink and blue hair, reminiscent of both Star and Beauty, tutu skirt with layered clothing style | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Pink and blue hair, reminiscent of both Star and Beauty, tutu skirt with layered clothing style |
| (29) | LOL Surprise OMG Swag fashion doll |  | Ms. Pullins<br><br>Evokes a look worn by Ms. Pullins during a photoshoot in which her hair was blonde and she wore a red jumpsuit in which the pants featured a high leg slit | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| (30) | LOL Surprise OMG Royal Bee fashion doll |  | Ms. Pullins<br><br>Ms. Pullins' is known for wearing natural, curly hair as a solo artist | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(31)** | LOL Surprise OMG Neonlicious fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(32)** | LOL Surprise OMG Winter Disco Dollie fashion doll & Sister |  | OMG Girlz<br><br>Name of the doll resembles and sounds like the short version/ nickname for Baby Doll (who was also referred to as "doll" or "a /the doll") | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Name of the doll resembles and sounds like the short version/ nickname for Baby Doll (who was also referred to as "doll" or "a /the doll") |
| **(33)** | LOL Surprise OMG Winter Disco Cosmic Nova fashion doll & Sister |  | OMG Girlz<br><br>Hair color resembles Ms. Pullins's/Star's hair in the OMG Girlz. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Hair color resembles Ms. Pullins's/Star's hair in the OMG Girlz. |

| | | | | |
|---|---|---|---|---|
| **(34)** | LOL Surprise OMG Winter Disco 24K D.J. fashion doll with 20 Surprises |  | OMG Girlz<br><br>The shade of purple hair color resembles Baby Doll's hair color (which dyed her hair different shades of purple all the time.) Also the doll is posing with headphones like Baby Doll did for a photoshoot where all the OMG Girlz were wearing Beats headphones to have new pictures for tour. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>This doll is part of the CORE-SERIES 3.8 which features two other dolls resmbling, and positioned to resemble in marketing, the two other OMG Girlz' members. The three dolls are positioned exactly how the OMG Girlz would stand for pictures with Baby Doll in the middle and Star and Beauty on either side of her.<br><br>The shade of purple hair color resembles Baby Doll's hair color (which dyed her hair different shades of purple all the time.) Also the doll is posing with headphones like Baby Doll did for a photoshoot where all the OMG Girlz were wearing Beats headphones to have new pictures for tour. |
| **(35)** | LOL Surprise OMG Winter Disco Snowlicious fashion doll & Sister |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(36)** | LOL Surprise OMG Uptown Girl fashion doll with 20 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>This doll is part of the CORE-SERIES 2.8 and 3.8 which features two other dolls resmbling, and positioned to resemble in marketing, the two other OMG Girlz' members. The three dolls are positioned exactly how the OMG Girlz would stand for pictures with Babydoll in the middle and Star and Beauty on either side of her. |
| **(37)** | LOL Surprise OMG Busy B.B. fashion doll with 20 Surprises | | Ms. Pullins<br><br>Red bandana and denim combination reiminscent of several photographs of Ms. Pullins available online and on her social media accounts | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(38)** | LOL Surprise OMG Candylicious fashion doll with 20 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(39)** | LOL Surprise OMG Lights Groovy Babe fashion doll |  | OMG Girlz<br><br>Evokes the look worn by the OMG Girlz during a performance in which the girls' outfits appeared to be black, white, and silver, but actually lit up | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Evokes the look worn by the OMG Girlz during a performance in which the girls' outfits appeared to be black, white, and silver, but actually lit up |
| **(40)** | LOL Surprise OMG Lights Dazzle fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(41)** | LOL Surprise OMG Lights Angles fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(42)** | LOL Surprise OMG Lights Speedster fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(43)** | LOL Surprise OMG Series 3 Da Boss fashion doll with 20 Surprises |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(44)** | LOL Surprise OMG Winter Chill Missy Meow fashion doll & Baby Cat doll with 25 Surprises |  | | Traded under the "OMG" name. |

| | | | | |
|---|---|---|---|---|
| **(45)** | LOL Surprise OMG Alt Grrrl Fashion Doll with 20 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(46)** | LOL Surprise OMG Winter Chill Big Wig fashion doll & Madame Queen doll with 25 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(47)** | LOL Surprise OMG Winter Chill Camp Cutie fashion doll & Babe in the Woods doll with 25 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(48)** | LOL Surprise OMG Winter Chill Icy Gurl fashion doll & Brrr B.B. doll with 25 Surprises |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(49)** | LOL Surprise OMG Remix Pop B.B. fashion doll - 25 Surprises with Music |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(50)** | LOL Surprise OMG Remix Kitty K fashion doll - 25 Surprises with Music |  | The light, purple (lilac) hair color and the doll's hairstyle with bangs is styled how Baby Doll in OMG Girlz often styled her hair | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(51)** | LOL Surprise OMG Remix Lonestar fashion doll - 25 Surprises with Music |  | The doll's cowgirl style resembles Baby Doll's style because she would wear cowgirl boots and cowgirl hats while on tour and at meet and greets with fans to showcase her love for being a southern girl. Also the lilac pants relate to Baby Doll because that was her brand color in OMG Girlz. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(52)** | LOL Surprise OMG Remix 2020 Collector Edition Jukebox B.B with Music |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(53)** | LOL Surprise OMG Guys fashion doll Cool Lev |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(54)** | LOL Surprise OMG Sports Cheer Diva fashion doll with 20 Surprises |  | The apparel of the doll resembles OMG Girlz' merchandise which also had "OMG" on it to represent their brand. | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(55)** | LOL Surprise OMG Sports Vault Queen Artistic Gymnastics fashion doll with 20 Surprises |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(56)** | LOL Surprise OMG Swim Coastal Q.T. fashion doll |  | The name of the doll resembles Q.T. Jazz name | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(57)** | LOL Surprise OMG Swim Paradise V.I.P. fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(58)** | LOL Surprise OMG Swim Coral Waves fashion doll |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(59)** | LOL Surprise OMG Movie Magic Gamma Babe fashion doll with 25 Surprises |  | Purple (lilac) hair color with the bangs looks like Baby Doll's hair. The fashion of the doll resembles the style also of the OMG Girlz whose style was colorful, unique, edgy, and fun | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Marketed alongside other girls positioned in a way that is reminiscent of how the OMG Girlz would position themselves for photographs with fans |

| | | | | |
|---|---|---|---|---|
| **(60)** | LOL Surprise OMG Movie Magic Spirit Queen fashion doll with 25 Surprises | | | Traded under the "OMG" name. |
| **(61)** | LOL Surprise OMG Movie Magic Ms. Direct fashion doll with 25 Surprises | | Red and purple hair resembles Babydoll's red and purple hair in the OMG Girlz | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(62)** | LOL Surprise OMG Movie Magic Starlette fashion doll with 25 Surprises | | The name "Starlette" is reminiscent of Star's of OMG Girlz | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Marketed alongside other girls positioned in a way that is reminiscent of how the OMG Girlz would position themselves for photographs with fans |
| **(63)** | LOL Surprise OMG Movie Magic Studios with 70+ Surprises to unbox, including 12 dolls | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| (64) | LOL Surprise OMG Movie Magic 2 Pack fashion dolls - Tough Dude & Pink Chick |  | The name using the color pink in it relates to Beauty's hair color and her social media page on Tumblr where she referred to herself as "pinkyinthebrain" | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| (65) | LOL Surprise OMG World Travel City Babe fashion doll with 15 Surprises |  | Pink hair with the black highlights resembles Beauty's hair color and style in the OMG Girlz | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| (66) | LOL Surprise OMG World Travel Fly Gurl fashion doll with 15 Surprises |  | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

| | | | | |
|---|---|---|---|---|
| **(67)** | LOL Surprise OMG World Travel Sunset fashion doll with 15 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(68)** | LOL Surprise OMG Present Surprise Series 2 fashion doll Miss Celebrate | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(69)** | LOL Surprise OMG Skatepark Q.T. fashion doll with 20 Surprises | | Name resembles Q.T. Jazz name | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |
| **(70)** | LOL Surprise OMG Trendsetter fashion doll with 20 Surprises | | | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG" |

**(71)**

| LOL Surprise OMG Moonlight B.B. Fashion Doll - Dress Up Doll Set with 20 Surprises |  | Black hair with blue highlights resembles Star's hairstyle in the OMG Girlz where she would mix blue highlights with one dominate hair color | Traded under the "OMG" name.<br><br>Sold in a box prominently bearing "OMG"<br><br>Appears to have multi-tone blue hair like Star |
| --- | --- | --- | --- |