KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Ave., Ste. 930
Irvine, California  92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California  92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
Laurence Cheng (SBN 306299)
Laurence.cheng@mgae.com
9220 Winnetka Avenue
Chatsworth, California  91311
Telephone:  (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: Hon James V. Selna<br><br>**REPLY IN SUPPORT OF PLAINTIFF AND COUNTER-DEFENDANTS' *EX PARTE* APPLICATION FOR EVIDENTIARY AND MONETARY SANCTIONS AND TO PRECLUDE COUNTER-CLAIMANTS FROM CALLING OR RELYING ON TESTIMONY FROM CONSUMER WITNESSES**<br><br><u>Final Pretrial Conference:</u><br>Date:   December 19, 2022<br>Time:   11:00 a.m.<br>Place:  Courtroom 10C<br>Judge:  Hon. James V. Selna<br><br>Complaint Filed:  December 20, 2020<br>Trial Date:   January 17, 2023 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     COUNTER-CLAIMANTS HAVE FAILED TO REFUTE MGA'S
        SHOWING THAT EVIDENTIARY AND MONETARY SANCTIONS ARE
        WARRANTED AND NECESSARY ..............................................................2

        A.   Counter-Claimants Do Not Address—Let Alone Refute—MGA's
             Showing That Ms. Ranahan Engaged in Prejudicial Misconduct and
             Coaching Which Irreparably Tainted The Instagram Witnesses'
             Testimony ..............................................................................2

        B.   Counter-Claimants Falsely And Without Any Evidence Blame MGA
             To Distract From Their Counsel's Egregious Misconduct ...................8

        C.   Counter-Claimants Grossly Misrepresent Judge Rosenberg's Order
             And Erroneously Suggest Their Counsel Was Permitted To Interject
             Disruptive "Speaking Objections" ......................................................10

        D.   Counter-Claimants' Attempts To Claim *Ex Parte* Relief Was Not
             Necessary Or Appropriate Are Ineffectual............................................13

        E.   Counter-Claimants' Attempt to Blame MGA For The Cancellation Of
             Ms. Osborne's Deposition Ring Hollow ..............................................14

III.    CONCLUSION..................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 9268118 (N.D. cal. Dec. 21, 2015) ........................................................................... 8

*Rodriguez v. City of Los Angeles*, 2021 WL 4692401 (C.D. Cal. Aug. 6, 2021) ................................................................................. 13

*Tattersalls Ltd. v. Wiener*, 2020 WL 13518326 (S.D. Cal. June 8, 2020)......................................................................................... 13

**Rules**

Fed. R. Civ. P. 30(c)(2) ............................................................................. 12

Fed. R. Civ. P. 30(d)(2) ............................................................................. 12

Fed. R. Civ. P. 30, Notes of Advisory Committee on Rules (1993 Amendment)................................................................................. 12

# I.   **INTRODUCTION**

That MGA's *ex parte* application became necessary reflects the severity of Counter-Claimants' counsel's misconduct and its prejudicial impact.   Counter-Claimants' opposition only confirms and reinforces that evidentiary and monetary sanctions are appropriate and necessary.   Counter-Claimants do not provide any legitimate explanation or excuse for Ms. Ranahan's behavior.  Nor is there one.  They do not provide any cogent or credible explanation to refute MGA's showing of irreparable prejudice.   There isn't one.   The record unambiguously shows Ms. Ranahan's coaching influenced the Instagram Witnesses—from educating the witnesses about Counter-Claimants' litigation positions, to giving suggestions and hints which the witnesses then adopted as their testimony, to commending the witnesses for giving answers deemed helpful to Counter-Claimants, and to correcting their testimony when it veered off track from what Ms. Ranahan wanted them to say. The Instagram Witnesses' testimony has been compromised beyond repair.

Counter-Claimants' strategy in their opposition is clear—to obscure the record and distract from Ms. Ranahan's pervasive violations.   In doing so, Counter-Claimants and Ms. Ranahan "double down" on their misconduct and make even more false allegations and baseless attacks on MGA's counsel.   To be clear, MGA's counsel engaged in no wrongdoing, acted professionally and appropriately at all times, and merely tried to question witnesses belatedly disclosed by Counter-Claimants.  MGA's counsel did nothing to prompt Ms. Ranahan's conduct.  Nor does Ms. Ranahan's mendacious characterizations of Mr. Scolnick's deposition questioning excuse or justify Ms. Ranahan's conduct or mitigate the irreparable impact it had on the Instagram Witnesses' testimony.

Indeed, if Mr. Scolnick had acted as Ms. Ranahan now suggests, Counter-Claimants would have jumped at MGA's proposal for a special master to oversee the remaining depositions.  But, instead, they rejected that proposal and forced MGA to seek relief from Magistrate Judge Rosenberg, whose comments and order were

1   directed squarely at Ms. Ranahan, not to Mr. Scolnick or both sides as Counter-

2   Claimants' opposition insinuates.    Judge Rosenberg recognized Ms. Ranahan's

3   conduct was "out of line" and "beyond the pale."    Yet, at the depositions which

4   followed, Ms. Ranahan continued to coach the witnesses, engage in lengthy speaking

5   objections, and levy personal attacks and insults at MGA's counsel.

6       Counter-Claimants and Ms. Ranahan apparently hope to confuse the Court to

7   believe both parties are to blame for her misbehavior.    But Counter-Claimants do not

8   and cannot dispute that Ms. Ranahan engaged in a pattern of egregious speaking

9   objections, offensive insults, and coaching which materially influenced the Instagram

10  Witnesses' testimony and aimed to mold it to Counter-Claimants' litigation positions.

11  The damage caused by Ms. Ranahan's conduct cannot be undone.    And the only

12  sufficient remedy is an evidentiary sanction precluding Counter-Claimants from

13  calling or using testimony from the Instagram Witnesses at trial and monetary

14  sanctions to at least partially recompensate MGA for fees and costs it incurred solely

15  due to Ms. Ranahan's misbehavior.

16  **II.    COUNTER-CLAIMANTS HAVE FAILED TO REFUTE MGA'S
17  SHOWING THAT EVIDENTIARY AND MONETARY SANCTIONS
    ARE WARRANTED AND NECESSARY**

18      **A.    Counter-Claimants Do Not Address—Let Alone Refute—MGA's
19      Showing That Ms. Ranahan Engaged in Prejudicial Misconduct
        and Coaching Which Irreparably Tainted The Instagram
20      Witnesses' Testimony**

21      Counter-Claimants' opposition engages in misdirection, misrepresentations,

22  and bluster to obscure the record.    Importantly, Counter-Claimants do not dispute or

23  refute key issues demonstrated in MGA's application.    Their silence speaks volumes.

24  These admissions reinforce the egregiousness of Ms. Ranahan's misbehavior and the

25  negative impact it caused to MGA's ability to question the Instagram Witnesses:

26      First, Counter-Claimants submitted at least two declarations from the

27  Instagram Witnesses that were materially false.    As detailed in MGA's application,

28  deposition testimony from Maia Smith and Dominque Alexander confirmed their

2

prior declarations—prepared and filed by Counter-Claimants' counsel—were incorrect. *See* Dkt. No. 408 at pp. 16, 19-20 (of 30). Counter-Claimants' opposition does not dispute this. As to Ms. Smith, Counter-Claimants suggest they cannot be faulted because they too learned at the deposition that the witness had not actually purchased any of the L.O.L. Surprise! O.M.G. dolls at issue here. Dkt No. 416-2 at pp. 11-12 (of 33). That explanation is as incredible as it is improper. Counter-Claimants' counsel interviewed the witnesses, prepared the declarations with patently false information not was not provided by the witnesses, secured signatures under oath from the witnesses, and then submitted the declarations to the Court as truthful evidence to defeat MGA's dispositive motion. Counter-Claimants cannot claim ignorance as to these important foundational facts once they are revealed on cross-examination.

Second, Counter-Claimants do not dispute that Ms. Ranahan repeatedly insulted MGA's counsel and MGA during the Instagram Witnesses' depositions. Instead, as set forth below, Ms. Ranahan tries to conceal that wrongdoing by levying baseless counterattacks on Mr. Scolnick. In an attempt to blame MGA's new counsel for her behavior, Ms. Ranahan declared under penalty of perjury that her abusive and unprofessional conduct was limited to the recent depositions of the Instagram Witnesses. *See* Dkt. No. 416-3 ("I . . . have never been approached by MGA concerning any attorney misconduct throughout the entire discovery period of this case."). But that too is demonstrably false. As just one example, during Ms. Ranahan's examination of Blanche Consorti (taken before Mr. Scolnick and Keller/Anderle appeared in this case), MGA's counsel, Mark Finkelstein, referred to Ms. Ranahan's conduct as "unprofessional" five times and referred to her persistent behavior as "rude" eleven times. Scolnick Supp. Decl., ¶ 2, Ex. 6. Ms. Ranahan's behavior during that deposition was not only rude and unprofessional, it was also bizarre. She made faces and stuck her tongue out at MGA's counsel during the deposition:

3

1
2
3
4

> Mr. Finkelstein: Don't do that to me, Ms. Ranahan; it's very rude.
> Okay? Let the record reflect Ms. Ranahan is taking her finger and
> running it across her mouth so I should be quiet and I'm not allowed to
> speak during the deposition.  That's unprofessional, and it's rude.  And
> now she's made a face at me with her tongue out; so let the record
> reflect that as well.

5   Scolnick Supp. Decl., Ex. 6 (B. Consorti Depo.) at p. 286.  That MGA's counsel did

6   not raise Ms. Ranahan's misbehavior earlier should not distract from or excuse her

7   conduct here.  Ms. Ranahan's repeated insults of MGA and MGA's counsel in

8   throughout the depositions and front of the witnesses irreparably prejudiced MGA by

9   biasing the witnesses against MGA and preventing it from obtaining fair and genuine

10  testimony.

11          Third, Counter-Claimants fail to address Ms. Ranahan's repeated attacks on

12  Mr. Scolnick, including her repeatedly berating and mocking him—before the

13  witnesses—for having sought judicial intervention to address Ms. Ranahan's

14  behavior.  *See* Dkt No. 408 at pp. 15, 19 (of 30).  Ms. Ranahan's repeated insults and

15  attacks on Mr. Scolnick further prejudiced MGA because they turned the witnesses

16  against MGA and its counsel—the culmination of a risk recognized by Judge

17  Rosenberg.  *See, e.g.*, Dkt. No. 408-5 (11/18/22 RT) at p. 3 (stating concern that Ms.

18  Ranahan's conduct was "trying to turn a witness against the other side").

19          Fourth, Ms. Ranahan made numerous misrepresentations to Judge Rosenberg

20  to justify her misbehavior at Ms. Wagner's deposition.  *See* Dkt. No. 408 at pp. 9-10

21  (of 30).   Counter-Claimants do not address Ms. Ranahan's demonstrably false

22  statements to the Court.  For example, Ms. Ranahan attempted to justify her behavior

23  by claiming to Judge Rosenberg that Mr. Scolnick spent "the bulk of his

24  examination", "literally hours and hours and hours" questioning the witnesses about

25  criminal history.  See Dkt. No. 408-5 (11/18/22 RT) at pp. 7-8.  The deposition

26  transcript demonstrates that is a brazen misrepresentation.  The witness answered

27  approximately six questions regarding Counter-Claimants' criminal history and

28  limited questions about her own criminal history after falsely denying any prior

4

1    convictions.

2        <u>Fifth</u>, Counter-Claimants do not address MGA's argument of prejudice.  They

3    claim the Instagram Witnesses ultimately gave answers to the depositions questions.

4    But that is not what MGA has argued.   That Ms. Ranahan did not instruct the

5    witnesses not to answer does not make her conduct—among other things, suggesting

6    responses, correcting unhelpful responses, and commending helpful responses—any

7    less prejudicial.  If anything, her conduct was *more* prejudicial because she influenced

8    and witness testimony which Counter-Claimants presumably will use at trial absent

9    the evidentiary sanctions warranted by Ms. Ranahan's conduct.

10       Even the few excerpts cited in Counter-Claimants' opposition show the impact

11   Ms. Ranahan had on the witness's substantive answers.   For example, Maxine

12   Wagner testified she purchased an MGA doll for her niece because she thought it

13   looked like the OMG Girlz, which Ms. Wagner claims to know have good morals

14   and come from a good family from watching the Harris' reality show.  Ms. Ranahan

15   interjected with a lengthy speaking objection to Mr. Scolnick's questioning of Ms.

16   Wagner about her knowledge of Mr. Harris' felon gun offense, ultimately directing

17   Ms. Wagner, "But you can answer, or if you don't know, you can just say you don't

18   know."  Dkt. No. 416-2 at p. 16 (of 33).   Ms. Wagner adopted Ms. Ranahan's

19   suggestion, answering, "I don't know."

20       But the Harris' reality show—and especially the entire first season, which Ms.

21   Wagner apparently watched—was focused on Mr. Harris' impending incarceration

22   and his subsequent release from prison.  Mr. Scolnick focused nearly all of his limited

23   questioning on Mr. Harris's convictions that were the subject of the reality show (his

24   conviction for being a felon in possession of a firearm and the predicate drug

25   trafficking offense) and shied away from Mr. Harris's many other arrests.   Ms.

26   Wagner's suggestion she was familiar with the OMG Girlz' "morals" and family and

27   regularly watched the show, but was ignorant of Mr. Harris's criminal history is not

28   believable.   That Ms. Wagner acquiesced to Ms. Ranahan's coaching shows how

5

1    impactful and prejudicial Mr. Ranahan's deposition conduct has been.

2          Ms. Ranahan also successfully coached Dominique Alexander to conform her

3    testimony to Counter-Claimants' litigation positions.  Ms. Alexander adopted nearly

4    all of Ms. Ranahan's improper suggestions, which sought to undermine the obvious

5    distinctions between the L.O.L. Surprise! O.M.G. dolls and the OMG Girlz.  *See*

6    Scolnick Supp. Decl., Ex. 7 (D. Alexander Depo.) at p. 83 (adopting Ms. Ranahan's

7    suggestions regarding doll hair color); at pp. 91-92, 95-95 (adopting Ms. Ranahan's

8    suggestion that the term "rock music" is too vague to understand).  And in response

9    to Ms. Ranahan's improper suggestions that the apparent race of a blonde-haired,

10   blue-eyed doll was "ambiguous," Ms. Alexander testified she did know whether the

11   doll was African American:

12             Q: When you purchased that doll, did you believe it was depicting an
13             African American?
               Ms. Ranahan: Objection to the extend that's not – that's not what this
14             case was about.  Again, it was about – it's about biracial dolls and she's
               talking about it being an OMG girl, not about whether it's African
15             American.
                     But go ahead if you – and not to mention, I'll also object to the
16             fact that you've taken the position, and MGA has, that this is not human.
               They're not human dolls.  They don't have real races.  They're
17             ambiguous.  And now you're trying to infuse races during this witness,
               which is the complete opposite position that your team before you has
18             taken.
                     So just for the record, this is inconsistent with your entire legal
19             theory throughout the case, but go ahead.
               Mr. Scolnick: Can we mark the transcript, please?
20             Ms. Ranahan: Just mark the entire transcript, Belle.  It's fine.  All of it's
21             going to go to the judge.
               Mr. Scolnick: When you purchased that doll, did you believe that it
22             depicted and African American?
               A: I didn't believe –
23             [Ms. Ranahan]: Objection to the extent that African American is
24             dependent on necessarily the skin tone, which there's obviously light-
               skinned African Americans and all sorts of different shades.  So go
25             ahead.
               A: I didn't think about it one way or the other if the doll was African
26             American.
27

28   Scolnick Supp. Decl., Ex. 7 (D. Alexander Depo.) at pp. 86-88.

1    Ms. Ranahan does not dispute that she coached Ms. Alexander extensively
2    during her deposition on the many differences between the L.O.L. Surprise! O.M.G.
3    dolls she claims to have purchased and the OMG Girlz.   Instead Ms. Ranahan
4    attempts to justify her behavior by claiming the affected testimony is "irrelevant."
5    *See* Dkt. No. 408 at pp. 12 n. 4.  To the contrary, MGA's examination was directed
6    to the heart of Ms. Alexander's testimony:  Counter-Claimants seek to present Ms.
7    Alexander as a confused consumer and MGA's questioning, which was intended to
8    undermine the basis for her alleged confusion go to the heart of her testimony.

9    Ms. Ranahan's objections also caused Ms. Alexander to change her testimony
10   regarding her declaration.  In her declaration submitted this Court, Ms. Alexander
11   stated she had confused the L.O.L. Surprise! O.M.G. dolls with the OMG Girlz in
12   part because of the "correlation between the individual doll's names and the OMG
13   Girlz names . . . ." Dkt. 161 at  ¶ 3.  At her deposition, Ms. Alexander testified she
14   did not, in fact, know any L.O.L. Surprise! O.M.G. dolls names or the names of any
15   OMG Girlz.  Scolnick Decl., Ex. 4 (D. Alexander Depo.) at pp. 44:5-9, 44:18-23,
16   154:17-155:7.  When Mr. Scolnick attempted to question Ms. Alexander about her
17   misleading declaration, Ms. Ranahan interrupted and suggested to the witness the
18   statement was not inaccurate because, "you can read this to think this is referring to
19   the OMG Girlz names . . ." *Id.* at pp. 153: 16-24; *see also* p. 42:14-16 ("OMG Girlz
20   is the name. So vague and confusing."); *id.* at p. 44:10-12 ("objection, again to
21   relevance and to form and misstates what the declaration says."); *id.* 154:7-11 ("I'll
22   just object to that because there's no specific names listed. It's still the OMG Girlz's
23   names used on each of the individual boxes so go ahead.").  In immediate response
24   to one of Ms. Ranahan's improper speaking objections coaching the witness, Ms.
25   Alexander explicitly adopted Ms. Ranahan's statement as her testimony.  *Id.*

26   Sixth, Counter-Claimants do not directly address MGA's argument that
27   Instagram Witnesses' testimony should be excluded under FRE 403 because it lacks
28   sufficient probative value.  Counter-Claimants clearly did not view these witnesses

7

as critical or important.  They did not even attempt to find them until after discovery closed, and then concealed their identities for weeks thereafter.  Counter-Claimants suggest the Instagram Witnesses are important because they were "actual consumers."  But as set forth in the application, the six witnesses that Counter-Claimants found by polling their own social media fans do not comprise an appreciable number of consumers.  Counter-Claimants chose not to conduct a consumer survey or retain an expert witness on such basis.  They cannot fill that evidentiary gap by calling a handful of carefully curated fans to say they were confused.  If their testimony were found to be relevant, then MGA would need to rebut that testimony with other consumers.  Otherwise, Counter-Claimants would give the jury the false impression these six witnesses are somehow representative of the public and satisfy the threshold legal standards of a reasonably confused consumer.  And that risk of misleading the jury would only be furthered by allowing the testimony of the Instagram Witnesses, after Counter-Claimants' coaching and speaking objections influenced their deposition testimony.

### B.   Counter-Claimants Falsely And Without Any Evidence Blame MGA To Distract From Their Counsel's Egregious Misconduct

In their opposition, Counter-Claimants attempt to deflect from their lead counsel, Erin Ranahan's, own wrongdoing by blaming MGA and its counsel, Chase Scolnick.  And they try to draw a false equivalency in hopes the Court finds there is enough blame to go around and does not impose sanctions on Counter-Claimants, which are entirely justified.  But there's a glaring problem with their strategy.  It is factually unsupported.  There is *zero* evidence of any wrongdoing or improper behavior by Mr. Scolnick or any of MGA's other counsel.  Counter-Claimants do not cite to any misconduct by Mr. Scolnick in its opposition.  Nor did Judge Rosenberg identify or suggest Mr. Scolnick engaged in any wrongdoing at all.  None exists.  *Cf. Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 9268118, at *6 (N.D. cal. Dec. 21, 2015) ("Plaintiff's counsel's attempt to deflect attention from their own

8

1   misconduct at this stage is without merit.”).

2        This is not a situation where both attorneys deserve some blame to permitting
3   a deposition to devolve into the mutual exchange of bickering or disruptions.  Mr.
4   Scolnick simply sought to obtain testimony from witnesses belatedly identified by
5   Counter-Claimants.   His questioning was entirety appropriate.   He asked limited
6   questions about Ms. Wagner's criminal history after she perjured herself by falsely
7   denying and then misrepresenting her prior convictions.[1]   There was nothing
8   improper about Mr. Scolnick's attempts to prevent Counter-Claimants from
9   presenting this false testimony to the jury.   The questioning was not repetitive,
10  harassing, or unnecessarily time-consuming.   There is no evidence Mr. Scolnick
11  demeaned or insulted Ms. Wagner about anything, much less her morals.  The reason
12  Counter-Claimants' opposition does not <u>cite</u> to a single example of Mr. Scolnick
13  arguing with any witness, raising his voice, arguing or insulting Ms. Ranahan, or
14  asking repetitive questions is because he never did.  Nor did Mr. Scolnick engage in
15  any of the petty, disruptive, and unprofessional conduct that Ms. Ranahan engaged
16  in throughout the depositions of the Instagram Witnesses, which is verifiably
17  described in detail in MGA's application.  *See* Dkt. No. 407 at pp. 8-15 (of 30).

18        MGA and its recently-added counsel, Mr. Scolnick and Keller/Anderle LLP,
19  have not "changed MGA's strategy to personal attacks on attorneys and witnesses,"
20  as claimed in Counter-Claimants' opposition.  See Dkt. No. 418 (Opp. to EPA) at p.
21  9.   Counter-claimants' opposition tries hard to obfuscate the record, confuse the
22  issues, and redistribute blame.   But in the end, nothing in Counter-claimants'
23  opposition explains or excuses Ms. Ranahan's behavior because such conduct is
24  inexcusable, not justifiable, and never necessary under any circumstances.

25
26  [1]    The questioning regarding Ms. Wagner's criminal history raises another
    problem with the Instagram Witnesses.  Counter-Claimants' delayed disclosure has
27  prevented MGA from conducting other third-party discovery to obtain documents
    and information necessary to fully examine these witnesses, including arrest records,
28  court documents, and customer receipts.

9

1

2

### C.     Counter-Claimants Grossly Misrepresent Judge Rosenberg's Order And Erroneously Suggest Their Counsel Was Permitted To Interject Disruptive "Speaking Objections"

3      As set forth in MGA's Application, Ms. Ranahan's behavior forced MGA to

4    seek relief from Magistrate Judge Rosenberg after the first two depositions of the

5    Instagram Witnesses because of counsel's repeated coaching, speaking objections,

6    and combativeness undermined the entire deposition process.   Judge Rosenberg

7    admonished Ms. Ranahan at that hearing, describing her behavior was "out of line"

8    and "beyond the pale."

9      Contrary to Counter-Claimants' claims, Judge Rosenberg did ***not*** find MGA's

10   request for a special master was inappropriate or without cause.   Judge Rosenberg

11   observed, "I can understand why the other side – Mr. Scolnick, you had a reaction of

12   we need a special master here."   Dkt. No. 408-5 (11/18/22 RT) at p. 3.   Despite

13   recognizing that a special master could be appropriate, Judge Rosenberg was mindful

14   of the short time period within which to complete the depositions (which was a

15   consequence of Counter-Claimants' delays).     MGA's counsel, Mr. Scolnick,

16   suggested that if there was insufficient time to appoint a special master – which was

17   the preferred course – then perhaps "we can agree to some ground rules." *Id*. at p. 5.

18   Judge Rosenberg accepted that invitation and stated, "I could certainly put an order

19   that contains some guidelines and that may be best." *Id*. at p. 6.   The hearing

20   transcript shows Judge Rosenberg's order with deposition conduct guidelines was

21   done at MGA's suggestion and following discussion that focused on Ms. Ranahan's

22   misconduct.

23     It was not prompted by or directed at anything done by MGA or Mr. Scolnick.

24   And while Ms. Ranahan sought to justify her misconduct by baldly stating Mr.

25   Scolnick's questioning was excessive or inappropriate, Counter-Claimants do not

26   point to anything in the record to support that assertion, as MGA did when it asked

27   for the hearing to address Ms. Ranahan's verifiable misconduct.   Ultimately, Judge

28   Rosenberg disagreed that Ms. Ranahan's speaking and argumentative objections and

10

interruptions could be justified by the questions asked in any event, stating:

> …[M]aybe you think the criminal conviction is ridiculous or it will never come into evidence but that's not really the witness's problem. [¶] That's the thing. You're only there to get the witness' testimony and the argument between you about what the judge will or will not do ultimately – first of all, nobody knows and, secondly, it's not really appropriate to have this argument in front of the witness. So that's my concern.

*Id*. at p. 12. 11/18 at 12.

Judge Rosenberg also admonished Ms. Ranahan for making personal attacks and political statements designed to "turn the witness against the other side. . ." Dkt. No. 408-5 (11/18/22 RT) at p. 3. In another effort to misdirect blame, Ms. Ranahan astonishingly asserts Judge Rosenberg's admonishment was directed at Mr. Scolnick for asking the witness limited questions about her awareness of Mr. Harris's criminal history. But Ms. Ranahan omitted reference to the rest of Judge Rosenberg's statement on this subject, which make plain the Court's comments were addressed to Ms. Ranahan's use of speaking objections to insult MGA's counsel (including about his former employment as a Federal public defender) and to espouse misleading political views.

> You could simply say, objection relevance because, otherwise, putting aside that this isn't – a deposition is not a political rally but I'm also concerned that there's an issue about trying to turn a witness against the other side or some of the legal propositions may be misleading about the Second Amendment and whether you can have a conviction for a felon in possession of a firearm.

> I mean, this – the discussions at this deposition are so far afield that I'm wondering, just because of the time constraints, whether we couldn't just talk about the problems here and maybe all agree that political discussions are off limits, **commentary about opposing counsel's technique or prior employment history is off limits**.

*Id*. at pp. 3-4 (emphasis added).

Contrary to Counter-Claimants' suggestions, Judge Rosenberg's comments were never critical of the subject matter of Mr. Scolnick's questions. Rather, they focused on Ms. Ranahan's improper attempts to argue with counsel about the

11

appropriateness of lines of questions, as opposed to simply stating her objection on the record:

> Yeah. Defending the client is one thing but I think maybe you are feeling defensive in some way about the questions. Some of that are, are you aware that whoever it was had a prior conviction for being a felon in possession? So the witness is aware of it, not aware of it. It's – and then you just move on.
>
> I think what ends up happening, you do feel strongly certainly that this evidence should be exclude and I understand that. . . . So you just have to put your objection on the record and then just keep going.

*Id*. at pp. 11-12.

Counter-Claimant's opposition also suggests Judge Rosenberg somehow condoned Ms. Ranahan's "speaking objections." Again, the hearing transcript shows that is simply not true. As an initial matter, "speaking objections" are expressly prohibited by Federal Rule of Civil Procedure 30 itself, and there was no need for a prior court order to require Ms. Ranahan to refrain from them. Rule 30 states that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). And sanctions are appropriate against anyone "who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The Advisory Committed Notes explain the rule was adopted because "[d]epositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond." Fed. R. Civ. P. 30, Notes of Advisory Committee on Rules (1993 Amendment).

Judge Rosenberg's order reinforces this rule against speaking objections. Besides citing the rule, the order recognized that "speaking objections consist of objections that go beyond a statement of the basis and become argumentative." Dkt. No. 375 at p. 2. "An attorney representing the witness may not coach the witness or use speaking objections to telegraph answers to the witness." *Id*. Judge Rosenberg did recognize an objecting attorney is not limited to simply saying the words, "objection" but also may succinctly state the basis for the objection, such as "lacks

12

foundation." *Id*. at p. 1.  But that hardly condones or justifies Ms. Ranahan's behavior here, as Counter-Claimants suggest in the opposition.  Ms. Ranahan's behavior goes far beyond even that found sanctionable by other courts.

For example, in *Tattersalls Ltd. v. Wiener*, 2020 WL 13518326, at *8 (S.D. Cal. June 8, 2020), the court found that objections such as "You can answer, if you know" and "You can answer if you know what he means by frequently" constituted improper coaching.  These statements gave "clues" to the witness as to how to respond and "clearly influenced" how the witness responded.  *Id*.  The witness "would often catch the drift and parrot back counsel's suggestions."  *Id*. at *10 (internal quotations omitted).  These objections make it unclear what the witness's testimony "would have been without the coaching objections."  *Id*.  Here, Ms. Ranahan's speaking objections were far more disruptive and suggestive.

### D.    Counter-Claimants' Attempts To Claim *Ex Parte* Relief Was Not Necessary Or Appropriate Are Ineffectual

Counter-Claimants fault MGA for bringing the application on an *ex parte* basis, claiming there is no urgency or "crisis."  But this too attempts to distract from Counter-Claimant's misconduct, as the exigent circumstances which exist were entirely created by and result from Counter-Claimants' misbehavior.  With discovery long closed, trial less than two months away, and the Final Status Conference less than two weeks away, MGA's only option was to seek relief on an *ex parte* basis. MGA cannot be expected to wait until the very eve of trial while Ms. Ranahan's misconduct only escalates and MGA's substantive rights are compromised as a result. Courts have the authority to issue the sanctions MGA seeks on an *ex parte* basis, and they often do under circumstances like those here.  *See, e.g., Rodriguez v. City of Los Angeles*, 2021 WL 4692401, at *2 (C.D. Cal. Aug. 6, 2021) (recognizing that evidentiary sanctions sought on an *ex parte* application "were within the Court's discretion to impose given the circumstances outlined above").

Finally, Counter-Claimants suggest they were forced to rush a response to the

13

1   application because it was brought on an *ex parte* basis.  Besides Counter-Claimants
2   hardly having room to complain about a fire they set, their claim is false or, at most,
3   grossly misleading.  MGA proposed a briefing schedule on its application that would
4   have permitted Counter-Claimants seven (7) calendar days to file a written
5   opposition, which is the same amount of time they would have had on a noticed
6   motion under C.D. Cal. Local Rules 6-1 and 7-9.  And more time to oppose the
7   application cannot save Counter-Claimants.  Ms. Ranahan's misconduct and the
8   prejudicial impact it has had on the Instagram Witnesses cannot be changed.

9   ### E.   Counter-Claimants' Attempt to Blame MGA For The Cancellation Of Ms. Osborne's Deposition Ring Hollow

11   Counter-Claimants assert the deposition of a fifth witness, Windellyn Osborne,
12   was unnecessarily cancelled and suggest it was improper for MGA to request the
13   assistance of Judge Rosenberg.  That is absurd.  Mr. Scolnick repeatedly pleaded with
14   Ms. Ranahan to behave during Ms. Wagner's deposition or he would need to seek
15   judicial intervention.  Ms. Ranahan's behavior continued.  Mr. Scolnick promptly
16   requested that Ms. Ranahan agree to a special master to oversee the following
17   depositions, but Ms. Ranahan refused.   Mr. Scolnick then contacted Judge
18   Rosenberg's chambers to request a discovery conference.  Mr. Scolnick followed
19   Judge Rosenberg's procedures for requesting the conference (just as both parties have
20   done throughout the discovery phase) and explained to chambers that Ms. Ranahan's
21   "speaking objections disrupted the proceedings and prevented MGA's counsel from
22   fairly and completely questioning the witness."  Scolnick Supp. Decl., ¶¶ 4-5, Exs.
23   8-9.  Mr. Scolnick requested multiple times that Ms. Ranahan respond to the Court
24   with her availability for the conference so that Ms. Osborne's deposition could
25   proceed as scheduled.  *Id*.  Ms. Ranahan refused to provide the Court with her
26   availability for a conference until November 18th, which necessitated the
27   cancellation of Ms. Osborne's deposition.

28

14

III.  **CONCLUSION**

MGA respectfully requests the Court grant its *ex parte* application, preclude Counter-Claimants from calling or relying on any testimony from the Instagram Witnesses at trial, and order Counter-Claimants and their counsel to pay MGA monetary sanctions in the amount of at least $93,382.21.[2]

Dated: December 5, 2022          KELLER/ANDERLE LLP

By:  _____

Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

---

[2]  *See* Scolnick Supp. Decl., ¶ 10, Ex. 10.  As stated in the application, MGA has updated the amount of requested monetary sanctions to include the deposition-related costs for which MGA only very recently received the invoices.

15