KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
Laurence Cheng (SBN 306299)
Laurence.cheng@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants, | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR FURTHER SANCTIONS**<br><br>Hearing Date:  March 13, 2023<br>Time:          1:30 p.m.<br>Place:         Courtroom 10C<br>Judge:         Hon. James V. Selna |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Complaint Filed:  December 20, 2020<br>Trial Date:   May 9, 2023 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 13, 2023, at 1:30 p.m., or as soon thereafter as may be heard before the Honorable James V. Selna, United States District Judge, in Courtroom 10C of the Ronald Reagan Federal Building and U.S. Courthouse, located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiff and Counter-Defendant MGA Entertainment, Inc. and Counter-Defendant Isaac Larian ("MGA") will, and hereby do, move the Court for an order issuing further sanctions against attorney Erin Ranahan and/or her firm, Winston & Strawn, as described below and in the accompanying memorandum.

This motion is made under the Court's inherent authority, 28 U.S.C. § 1927, Local Rule 83-7, and other rules and case law authorizing the Court to impose sanctions for misconduct. This motion is made on the grounds that misconduct by Ms. Ranahan and her firm following mistrial have been unprofessional, prejudicial, and justify further sanctions. MGA respectfully requests that the Court: (1) award $11,202.50 in fees to compensate MGA the cost of having to prepare and file a reply brief regarding the motion for mistrial necessitated only by Ms. Ranahan's accusations in her opposition brief; (2) strike Counter-Claimants' opposition to the mistrial motion (Dkt. 570) or, at minimum, page 6, line 13 to page 7, line 12; (3) award $30,262.50 in fees to compensate MGA the cost of having to prepare and file an opposition to Counter-Claimants' frivolous *ex parte* application regarding emotional distress damages; (4) award $34,020 in fees to compensate MGA the cost of having to prepare and file this motion; (5) refer Ms. Ranahan to the Central District's Standing Committee on Discipline; (6) advise Ms. Ranahan to publicly apologize to Ms. Keller for the insidious accusations in the opposition to MGA's mistrial motion; (7) admonish Counter-Claimants and their counsel that any further misconduct will result in even more severe sanctions; and (8) impose any additional remedial sanction or action the Court deems necessary.

1   This motion is made following the conference of counsel pursuant to L.R. 7-3
2   which took place via e-mail on February 3-6, 2023 and via telephonic conference on
3   February 6, 2023.  *See* Scolnick Decl., ¶ 12, Ex. E.

4   This motion is based on this Notice of Motion, the Memorandum of Points and
5   Authorities, the Declaration of Chase Scolnick filed concurrently herewith, the
6   Proposed Order lodged concurrently herewith, the records and filings in this action,
7   and upon such further evidence and argument submitted at or before the hearing on
8   this Motion.

Dated: February 13, 2023                KELLER/ANDERLE LLP

                                        By:  _____

                                        Chase A. Scolnick
                                        Attorneys for Plaintiff and Counter-Defendant
                                        MGA Entertainment, Inc., and Counter-
                                        Defendant Isaac Larian

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................ 3

        A.    Ms. Ranahan's Conduct At Alleged Consumer Depositions Forced MGA To Seek Judicial Intervention From The Magistrate Judge And, Eventually, Sanctions Against Her ................................................................................ 3

        B.    The Court Finds Ms. Ranahan Engaged In Misconduct And Issues Monetary Sanctions Against Her ................................................................................ 5

        C.    Ms. Ranahan's Misconduct Continued At Trial ............................................ 6

        D.    Ms. Ranahan's Unprofessional And Insidious Personal Attacks On Counsel Only Escalated After Mistrial .................................................................. 6

        E.    Counter-Claimants File A Frivolous *Ex Parte* Application Seeking Reconsideration of Court's Order Precluding Evidence of Emotional Distress Damages ................................................................................. 8

        F.    Ms. Ranahan Makes Numerous Extrajudicial Comments To The Media ...... 8

        G.    The February 2, 2023 Status Conference ...................................................... 9

        H.    Counsel For The Parties Conferred About This Motion In Compliance With Local Rule 7-3 ................................................................................ 10

III.    THE COURT CAN AND SHOULD ISSUE FURTHER SANCTIONS AGAINST MS. RANAHAN ................................................................................ 10

        A.    The Court Has Broad Authority And Discretion To Award Sanctions ........ 10

        B.    Ms. Ranahan And Her Firm's Continuing Conduct Warrants The Further Sanctions Requested By This Motion ........................................................ 14

IV.     CONCLUSION ................................................................................................... 18

i

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Centeno v. City of Carlsbad*,
2021 WL 2779576 (S.D. Cal. July 2, 2021) ................................................... 12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................ 11, 12

*Coats v. Pierre*,
890 F.2d 728 (5th Cir. 1989)..................................................................... 13

*Conklin v. Warrington Twp.*,
2006 WL 22464155 (M.D. Pa. Aug. 4, 2006) ............................................ 13

*Davis v. TRM Copy Centers, Corp.*,
1988 WL 92921 (N.D. Ill. Aug 16, 1988) .................................................. 13

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001).............................................................. 11, 12

*Forte v. County of Merced*,
2014 WL 47455923 (E.D. Cal. Sept. 23, 2014).......................................... 13

*Gas-A-Tron of Arizona v. Union Oil Co. of Cal.*,
534 F.2d 1322 (9th Cir. 1976) ................................................................... 11

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006)..................................................................... 11

*Pigford v. Veneman*,
215 F.R.D. 2 (D.D.C. 2003)....................................................................... 13

*Trulis v. Barton*,
107 F.3d 685 (9th Cir. 1996)..................................................................... 11

*Valle v. Karagounis*,
2022 WL 17485644 (D.D.C. Dec. 7, 2022)............................................... 13

*Wilkerson v. Butler*,
229 F.R.D. 166 (E.D. Cal. 2005) .............................................................. 16

**STATUTES**

28 U.S.C. § 1927 ......................................................................................... 11

Fed. R. Civ. P. 11(c)(3) .............................................................................. 10

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This is not a motion MGA envisioned having to bring, especially after the Court appropriately issued monetary sanctions against Counter-Claimants' attorney, Erin Ranahan, for her misconduct at various pre-trial depositions which violated the Federal Rules of Civil Procedure and the Magistrate Judge's order.   But Ms. Ranahan's and her firm's misconduct only escalated after the recent mistrial.   Given Ms. Ranahan's personal attacks on MGA's counsel, and Counter-Claimants' improper filings untethered from legal arguments or the merits of the case, which have prejudiced MGA, caused it to incur unnecessary expense, and vexatiously multiplied the proceedings, MGA has no choice but to seek further sanctions.

The Court's statements at the outset of trial that it would enter the sanctions order following trial, and the ultimate entry of that sanctions order, did little to deter Ms. Ranahan's misconduct.   Most egregiously, in her opposition to the already-decided mistrial motion, Ms. Ranahan personally attacked MGA's lead counsel, making grossly inappropriate, false, and inflammatory claims that she is a racist.   This outlandish personal attack had no basis in fact, intentionally misrepresented Ms. Keller's cross-examination of Zonnique Pullins, and was not made in response to any argument by MGA or based on any legal principle.   It was done only with vitriol, to publicize her false claims of racism, and to shock, deflect, and draw attention away from Ms. Ranahan's and Counter-Claimants' misconduct, including their playing prohibited deposition testimony which caused the mistrial.

Ms. Ranahan succeeded in producing headline-grabbing claims with her baseless attacks. Her claims of racism were highly publicized, only more so by her public statements made soon after that MGA and its counsel aimed to "demean" and "bully[]" her clients.[1]   Besides giving a megaphone to her defamatory comments, this

---

[1]     At least two social media reporters were present in the courtroom during trial,

1

1    also jeopardized the proper administration of justice, as it threatens to mislead and

2    taint the view of the public from which a new jury will be selected.

3          Separately, Ms. Ranahan's firm filed a baseless and improper *ex parte*

4    application seeking reconsideration of the Court's order precluding evidence of

5    Counter-Claimants' alleged emotional damages.  This application was not based on

6    any emergency or exigent circumstances justifying its filing.   Nor was the

7    reconsideration request based on any new fact or law.  Instead, Counter-Claimants

8    repeated arguments this Court already rejected.  But Counter-Claimants' improper

9    filing forced MGA to incur the costs and expense of preparing and filing an

10   opposition within 24 hours.

11         This Court already warned Ms. Ranahan multiple times and, ultimately,

12   sanctioned Ms. Ranahan for her pre-trial misconduct.  As this Court recognized,

13   "through much of the trial," the Court had to direct "Ms. Ranahan to curtail her

14   objections and cease further argument."  Scolnick Decl., Ex. A (2/2/23 RT) at 13.

15   The Court "tried directly and . . . tried indirectly to get that word across.  But for the

16   fact that the case terminated, at least for the present at that point, [the Court] did not

17   hold Ms. Ranahan in contempt." *Id*. at 13-14.  She engaged in this conduct *after* the

18   Court stated it would sanction her for her deposition misconduct, but held off entering

19   the order until after trial.  Despite the Court's impending sanctions order, Ms.

20   Ranahan's misconduct did not stop.  Over the course of the trial, and after the mistrial,

21   her conduct only got more unprofessional, scandalous, and vitriolic.  With retrial set

22   to begin in May, the Court can and should issue further sanctions against Ms.

23   Ranahan and her firm.

24         MGA respectfully requests that the Court grant this motion and (1) award

25   $11,202.50 in fees to compensate MGA the cost of having to prepare and file a reply

26   brief regarding the motion for mistrial necessitated only by Ms. Ranahan's

27   _____

28   one of whom uses multiple social media platforms including Twitter, YouTube, and
     Substack, and avidly follows trials involving rappers.

accusations in her opposition brief; (2) strike Counter-Claimants' opposition to the mistrial motion (Dkt. 570) or, at minimum, page 6, line 13 to page 7, line 12; (3) award $30,262.50 in fees to compensate MGA the cost of having to prepare and file an opposition to Counter-Claimants' frivolous *ex parte* application regarding emotional distress damages; (4) award $34,020 in fees to compensate MGA the cost of having to prepare and file this motion, which was made necessary only due to Ms. Ranahan's and her firm's misconduct and improper filings;[2] (5) refer Ms. Ranahan to the Central District's Standing Committee on Discipline; (6) advise Ms. Ranahan to publicly apologize to Ms. Keller for the insidious accusations in the opposition to MGA's mistrial motion; (7) admonish Counter-Claimants and their counsel that any further misconduct will result in even more severe sanctions; and (8) impose any additional remedial sanction or action the Court deems necessary.

## II.   FACTUAL BACKGROUND

### A.   Ms. Ranahan's Conduct At Alleged Consumer Depositions Forced MGA To Seek Judicial Intervention From The Magistrate Judge And, Eventually, Sanctions Against Her

In November 2022, MGA took the deposition of four witnesses who allegedly purchased L.O.L. Surprise! O.M.G. dolls and were confused about their lack of association with the OMG Girlz.  Besides representing Counter-Claimants, Ms. Ranahan represented each of these four witnesses—Moniece Campbell, Maxine Wagner, Maia Smith, and Dominique Alexander—at their depositions.  Her conduct at these depositions was the subject of MGA's *ex parte* application for monetary and evidentiary sanctions filed November 30, 2022 and is discussed extensively in those application papers.  *See* Dkt. 407 (sealed), Dkt. 412-3 (unsealed); Dkt. 420 (reply).  In short, Ms. Ranahan engaged in a pattern of disruptive conduct, personal attacks,

---

[2]    MGA has broken down the monetary sanctions it seeks by category.  The total amount of monetary sanctions MGA seeks against Ms. Ranahan and/or Winston & Strawn is $75,485.  Scolnick Decl., ¶ 9.

and speaking objections designed to coach the witness and steer their substantive testimony in ways Ms. Ranahan deemed favorable to her clients.

After the depositions of Ms. Campbell and Ms. Wagner, MGA sought judicial intervention from Magistrate Judge Rosenberg.  At the hearing, Judge Rosenberg admonished Ms. Ranahan, stating:

> **I must say, Ms. Ranahan, your comments at the deposition were out of line.** I – you seem to have very strongly-held views about political issues, maybe your opposing counsel's previous employment, whatever it is but this really doesn't have a place at a deposition at all and particularly in front of the witness.  Whatever your views about the Second Amendment or the dolls or whatever, this is just – **I think it's beyond the pale.**

Dkt. 408-5 (11/18/22 RT) at 3-4 of 27 (emphasis added).  Judge Rosenberg also noted her concern that Ms. Ranahan was "**trying to turn a witness against the other side**. . ." and described some of Ms. Ranahan's comments as "misleading" the witness.  *Id*. at 4 (emphasis added).  Ms. Ranahan attempted to deflect blame by falsely accusing Mr. Scolnick of "harassing" the witness and spending "hours and hours" on irrelevant lines of questioning.  As set forth in prior briefing, these accusations were unsubstantiated and baseless.  *See, e.g.*, Dkt. 407 at 15.

Following the hearing, Magistrate Judge Rosenberg issued an order reminding counsel of the protocol for the remaining objections.  Dkt. No. 375.  Judge Rosenberg stated any objections at deposition must be stated succinctly and in a non-argumentative manner.  *Id*.  The Court further warned that "speaking objections consist of objections that go beyond a statement of the basis and become argumentative," and that "[a]n attorney representing the witness may not coach the witness or use speaking objections to telegraph answers to the witness."  *Id*.

Despite Magistrate Judge Rosenberg's order, Ms. Ranahan's misconduct continued unabated—and, if anything, only increased—at the subsequent depositions of Ms. Smith and Ms. Alexander.  As she had before, Ms. Ranahan defended the depositions by engaging in frequent speaking objections, personal attacks, and coaching of the witness.  MGA's prior *ex parte* application seeking monetary and

4

evidentiary sanctions provides extensive examples of Ms. Ranahan's coaching at these depositions.  *See* Dkt. 407, 412-3, 420.

### B. The Court Finds Ms. Ranahan Engaged In Misconduct And Issues Monetary Sanctions Against Her

On January 12, 2023, the Court issued a tentative ruling partially granting MGA's *ex parte* application for sanctions and then heard argument on the matter on the morning of January 17, 2023, before jury selection commenced.  Scolnick Decl., ¶ 3.  The Court ultimately issued its final order on January 26, 2023, with the final order resulting in the same disposition and taking substantially the same form as the tentative ruling ("Sanctions Order").  *See* Dkt. No. 595.  The Court ordered Ms. Ranahan to pay monetary sanctions of $1,000 to partially reimburse attorneys' fees incurred as part of the alleged consumer witness depositions.  *Id*.  In doing so, the Court found several instances at Ms. Smith's deposition in which Ms. Ranahan engaged in conduct that was "clearly coaching . . . in direct violation of the Magistrate Judge's Minute Order," "unnecessarily argumentative," and "failed to refrain from arguing with opposing counsel in direct violation of the Minute Order."  *Id*. at 6.

Likewise, the Court identified ten exchanges at Ms. Alexander's deposition in which Ms. Ranahan "clearly violate[d] the Magistrate Judge's Minute Order."  *Id*. at 6-7.   Although MGA's counsel was able to elicit substantive testimony, Ms. Ranahan's "statements were disruptive and appear to, at times, guide Alexander and Smith's answers."  *Id*. at 7.  Ms. Ranahan "impeded, delayed, and frustrated the deposition of the Consumer Witnesses."  *Id*. at 8.

The Court further found Ms. Ranahan's conduct at Ms. Campbell and Ms. Wagner's depositions violated Federal Rule of Civil Procedure 30.  *Id.* at 8, n. 2.  In particular, the Court found Ms. Ranahan's conduct at Ms. Wagner's deposition "was outrageous, antagonistic, and unprofessional, and resulted in a gross waste of time. This conduct would merit separate sanctions which the Court has not imposed in the hope that Ranahan has learned her lesson."  *Id*. at  9, n. 3.

5

While the Court did not preclude the alleged consumer witnesses from testifying at trial, the Court did order Ms. Ranahan to pay $1,000 in monetary sanctions, hoping it "may deter Ranahan from engaging in similar misconduct in the future." *Id*. at 9.

## C.   Ms. Ranahan's Misconduct Continued At Trial

The Court observed Ms. Ranahan's conduct during trial firsthand.   She engaged in frequent speaking objections before the jury and persisted in argument after the Court ruled.  After the mistrial, the Court recognized Ms. Ranahan's conduct during trial brought her to the brink of contempt:

> One final matter, through much of the trial, I directed Ms. Ranahan to curtail her objections and cease further argument. . . .
>
> [¶] After Ms. Keller's rebuttal, Ms. Ranahan stood up again and presented further arguments, and I literally told her to be seated.  I've tried directly and I've tried indirectly to get that word across.  But for the fact that the case terminated, at least for the present at that point, I did not hold Ms. Ranahan in contempt.

Scolnick Decl., Ex. A (2/2/23 RT) at 13-14.

## D.   Ms. Ranahan's Unprofessional And Insidious Personal Attacks On Counsel Only Escalated After Mistrial

On January 25, 2023, the Court granted MGA's motion for mistrial and excused the jury after Counter-Claimants played video deposition testimony from Ms. Campbell which blatantly violated the Court's *in limine* order prohibiting any testimony about cultural misappropriation. *See, e.g*., Dkt 569.  Later that day, after the Court had ordered a mistrial and excused the jury, Counter-Claimants filed an Opposition to MGA's Mistrial Memorandum (Dkt. 570), which Ms. Ranahan signed. MGA does not assert Counter-Claimants acted improperly by submitting their position in writing despite the Court already having granted the motion.  A significant portion of that Opposition, however, went far beyond Counter-Claimants' legal position.  Rather than merely making a written record that described  Counter-Claimants' legal position regarding the propriety of granting a mistrial, Ms. Ranahan

improperly used the brief as a vehicle to levy false personal attacks and accusations against MGA's lead counsel, Jennifer Keller.

The most appalling section of Ms. Ranahan's Opposition appears at page 6, line 13 to page 7, line 12.  There, Ms. Ranahan sheds any illusion she was merely laying out Counter-Claimants' position on the merits of the dispute and instead engaged in a vitriolic diatribe against Ms. Keller with no justification.  Ms. Ranahan accuses Ms. Keller of engaging in "racist behavior" and trying "to weaponize a term, the 'N-word,' that the black community has fought so hard to gain control over."  *Id*. at 6.  As Ms. Ranahan knew full well, Ms. Keller had quoted Zonnique Pullins' own offensive lyrics in questioning her about them, directly rebutting Counter-Claimants' trial theme that the OMG Girlz's image is compatible with a children's doll line.  But Ms. Ranahan ignored that reality and instead claimed Ms. Keller's use of the word was "superfluous, unrelated to the claims in the case, and her use evolved from one with a soft 'a' at the end to one with a hard 'er,' which significantly changes its effect."  *Id*.

Ms. Ranahan also claimed Ms. Keller raised her middle finger during the examination of Ms. Pullins to "evoke hate and sensationalize an innocent pose," rather than to mimic the gesture Ms. Pullins did the day prior in the courtroom bathroom down the hall from where she was testifying.  *Id*. at 7.  Ms. Ranahan claimed Ms. Keller was "flipping [Ms. Pullins] off," which is patently false.  Ms. Ranahan then (falsely) concluded that Ms. Keller's examination "as a whole" was "a very real attack with an undercurrent of racism" and that "the groundwork of racism had already been laid . . . by MGA's counsel."  *Id*.

The Court already had decided the mistrial motion and its substantive merits.  But after Ms. Ranahan used the written opposition to lob false and inflammatory claims of racism against a highly respected member of the bar, MGA had no choice but to respond in a reply brief filed January 26, 2023.  *See* Dkt. 572.  In its reply, MGA pointed out that the above-referenced section of Counter-Claimants'

opposition was "not included for a legitimate purpose" as it "does not respond to any of the arguments made in MGA's motion," "is not tethered to a legal principle nor cites a single case," and was included "solely to smear Ms. Keller by falsely accusing her of being a racist." *Id*. at 1.  As MGA pointed out in its reply, Ms. Ranahan used the Court's ECF system "to issue disguised press releases" that would and did get picked up by the media and threatened to influence the jury pool for the upcoming retrial. *Id*. at 2.

> **E.   Counter-Claimants File A Frivolous *Ex Parte* Application Seeking Reconsideration of Court's Order Precluding Evidence of Emotional Distress Damages**

Before trial commenced, the Court issued an order precluding Counter-Claimants from seeking, or presenting evidence relating to, alleged emotional distress damages. *See, e.g*., Dkt. 521.  After the mistrial, Counter-Claimants filed an *ex parte* application on January 31, 2023 seeking reconsideration of that order.  Dkt. 577.  This *ex parte* application forced MGA to prepare and file an opposition within 24 hours. *See* Dkt. 585.  Counter-Claimants' application stated no emergency or exigent circumstances warranting *ex parte* relief, nor did it set forth any grounds for reconsideration of the Court's prior order precluding emotional distress damages. Instead, it disagreed with the Court's interpretation of legal precedent, which is not proper grounds for reconsideration.

> **F.   Ms. Ranahan Makes Numerous Extrajudicial Comments To The Media**

Besides using her court filings as *de facto* press briefings and to make defamatory claims under the cloak of litigation privilege, Ms. Ranahan also made extrajudicial comments directly to the media in violation of California's ethical rules. *See, e.g*., Cal. R. Prof. Resp. 3.6 (providing that an attorney "shall not make an extrajudicial statement that the lawyer knows or reasonably should know will (i) be disseminated by means of public communication and (ii) have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter").

The same day (or next day) after the mistrial and the scandalous and false claims included in her opposition to MGA's mistrial motion, Ms. Ranahan issued a public statement picked up by multiple media outlets, including *The Rolling Stone* magazine.  Scolnick Decl., Exs. C and D.[3]  In her statement, Ms. Ranahan asserted, "Since the beginning of this case, MGA and Mr. Larian's strategy has been to deny accountability, distract from the facts, and demean our clients—the OMG Girlz, and Mr. and Mrs. Harris. . . . The attempted intimidation and bullying tactics by Mr. Larian and his legal team are finally coming to light."  *Id*.  That her public comment came on the heels of the highly publicized claims from her Opposition to MGA's mistrial motion confirms that her references to "demean[ing]" her clients and "intimidation and bullying tactics" by MGA's "legal team" were referring to her accusations of racism against Ms. Keller.

### G.   The February 2, 2023 Status Conference

Following the mistrial, the Court held a status conference on February 2, 2023.  At the conference, the Court denied Counter-Claimants' *ex parte* application seeking reconsideration of the order precluding Counter-Claimants from seeking emotional distress damages, stating in part, "there is no emergency that would cause me to consider that on an expedited basis, and I deny that simply for that reason."  Scolnick Decl., Ex. A (2/2/23 RT) at 11.  The Court also stated, "Were I to get to the merits on that application, I would likely deny it on the merits, because I don't believe in a passing reading that it really provides anything new and doesn't come with any of the requirements of Rule 7-18 or Federal Rule of Civil Procedure 59."  *Id*. at 12.

Further, the Court denied Counter-Claimants "Response and Objection" to the Court's Sanction Order, finding no basis to delay or defer publication of the order until after retrial.  *Id*. at 6-8.  The Court also declined to consider MGA's sanction

---

[3] *See, e.g.*, https://www.rollingstone.com/music/music-news/t-i-tiny-mga-entertainment-omg-girlz-lawsuit-mistrial-1234668553/; *see also* https://atlantablackstar.com/2023/01/26/judge-declares-mistrial-in-tiny-and-t-i-trial-against-mga-entertainment-over-omg-dolls/

request made in the reply to Counter-Claimants' Opposition to the mistrial motion but invited MGA to bring a noticed motion on the issue if it felt it appropriate. *Id.* at 6.

### H. Counsel For The Parties Conferred About This Motion In Compliance With Local Rule 7-3

On February 3-6, 2023, MGA's counsel and Ms. Ranahan met and conferred via e-mail, with MGA providing a detailed explanation for the basis and grounds for this motion. Scolnick Decl., ¶ 12, Ex. E. In her final response, Ms. Ranahan again attempted to deflect blame and accountability, claiming, "Appealing to the inherent powers of the court for issuance of sanctions appears to be effort to deflect attention away from the actions undertaken by MGA and its counsel in this case." Besides the e-mail correspondence, counsel for the parties also conferred via telephone on February 6, 2023. During that call, Counter-Claimants' counsel, John Keville, verified that MGA had satisfied the requirements of Local Rule 7-3. *Id.*

## III. THE COURT CAN AND SHOULD ISSUE FURTHER SANCTIONS AGAINST MS. RANAHAN

### A. The Court Has Broad Authority And Discretion To Award Sanctions

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court,[4] (2) 28 U.S.C. § 1927, which is aimed at

---

[4] MGA's motion does not affirmatively seek sanctions under Federal Rule of Civil Procedure 11, which disposes with any need to comply with the 21-day "safe harbor" period under subdivision (c)(2) of that rule (to the extent Ms. Ranahan even could mitigate or undo the damage done by her false accusations, which is not possible). However, on its own motion, the Court can issue an order to show cause why sanctions should not be issued under Rule 11. *See* Fed. R. Civ. P. 11(c)(3). Further, when given the opportunity during the Local Rule 7-3 correspondence to attempt to mitigate her misconduct by at least agreeing to withdraw the offending portions of the opposition to the mistrial motion and apologizing for it, Ms. Ranahan

10

penalizing conduct that unreasonably and vexatiously multiplies the proceedings,[5] and (3) the court's inherent power."  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *see also Gas-A-Tron of Arizona v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976) ("Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised.  It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." (citation omitted)).  Further, under Local Rule 83-7, the Court can impose sanctions against a party or counsel for violation of the local rules including (1) monetary sanctions if the offending conduct was willful, grossly negligent, or reckless, and/or (2) imposition of costs and attorneys' fees if the conduct constitutes bad faith or a willful disobedience of a court order.

The Supreme Court has emphasized the continuing need for district courts to exercise their inherent power to levy sanctions for misconduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  The power "extends to a full range of litigation abuses" and can be used to sanction a party or counsel who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in a litigation for an improper purpose."  *Fink*, 239 F.3d at 992; *see also* Sanctions Order, at 8 (*citing Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)).

---

refused to take any remedial steps and instead "doubled down" by falsely claiming the anticipated motion was designed to "deflect attention away from the actions undertaken by MGA and its counsel in this case."  Scolnick Decl., Ex. E.

[5]    28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The decision to award sanctions under this statutes rests in the sound discretion of the district court.  *See, e.g., Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1996).

11

The Court has considerable discretion in imposing attorneys' fees as a sanction under its inherent power. *Chambers*, 501 U.S. at 50. The court's inherent power can not only fill in the gaps for conduct not covered by another sanctioning authority but also where the conduct could be sanctionable under a statute or other rule. *Id*. Sanctions are available "if the court specifically finds bad faith or conduct tantamount to bad faith," which does not require an action to be "totally frivolous" or meritless. *Fink*, 239 F.3d at 992, 994 (citations omitted). Sanctions also are available "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*.

Courts routinely exercise their inherent authority to sanction counsel who engages in abusive, hostile, or overly combative behavior. For example, in *Centeno v. City of Carlsbad*, 2021 WL 2779576, at *4 (S.D. Cal. July 2, 2021), the court found two letters sent by an attorney to the opposing counsel warranted sanctions due to the "vitriolic and highly personal nature of conduct at issue." In the letters, the sanctioned attorney called his counterpart an "unmitigated liar," like "Goebbels, a Nazi thug," and other insults. *Id*. at *5. His attacks were motivated by a belief that the other attorney had mocked him during a deposition even though he knew opposing counsel and others who attended the deposition had a benign explanation for what the sanctioned attorney took offense to. *Id*. The sanctioned attorney's "missives are vitriolic, hate-filled, and degrading personal attacks that can neither redress the perceived transgressions that motivated them nor allow any possibility of a working relationship between counsel going forward." *Id*. The court found monetary sanctions were designed to partially compensate the target of the sanctioned attorneys' attacks "for the distress that would naturally flow from the receipt of such personal, vitriolic, and degrading written attacks." *Id*. The court further referred the sanctioned attorney to the Southern District's Standing Committee on Discipline "to investigate his fitness to practice law in this District and determine whether additional discipline is appropriate." *Id*.

12

Similarly, in *Forte v. County of Merced*, 2014 WL 47455923, at *1 (E.D. Cal. Sept. 23, 2014), the plaintiff's claims concerned alleged excessive force and lack of probable cause for two separate arrests.  During the case, plaintiff engaged in a pattern of behavior that "has resulted in uncivil, unprofessional, insulting, and otherwise inappropriate behavior toward both opposing counsel and this Court," including "ad [hominem]  attacks on opposing counsel and this Court."  *Id*. at *2.  The court found such conduct warranted *dismissal* of plaintiff's claims, although the court ultimately declined dismissal subject to a final admonition that plaintiff cease his improper behavior.  *Id*. at *10.  The court recognized it would "be acting within its considerable discretion to dismiss [plaintiff's] claims pursuant to its inherent authority to combat conduct abusive of the judicial process.  [Plaintiff's] name calling, mudslinging, scandalous pleadings, and hostility toward opposing counsel undermine the integrity of the judicial proceedings."  *Id*.

And courts across the country regularly find that scandalous allegations of racism against an opposing party or counsel deserve sanctions and the striking of the portion of any pleading with such claims.  *See, e.g., Valle v. Karagounis*, 2022 WL 17485644, at *4 (D.D.C. Dec. 7, 2022) (finding attorney's accusation that defendants and their counsel made racist arguments "demean the legal profession and constitute a gross abuse of the judicial process" and therefore ordering attorney to show cause why such conduct should not be sanctioned); *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (striking filing and finding attacks describing opposing counsel as racist was "abusive language" that "has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11");  *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989); *Conklin v. Warrington Twp*., 2006 WL 22464155, at *2 (M.D. Pa. Aug. 4, 2006), aff'd, 304 F. App'x 115 (3d Cir. 2008) (issuing sanctions and referring attorney to State Bar for attorney's accusations of racism); *Davis v. TRM Copy Centers, Corp*., 1988 WL 92921, at *1-3 (N.D. Ill. Aug 16, 1988) (striking paper filed by pro se plaintiff that

13

1   accused judge of racism and taking bribes as impertinent and scandalous under Rule

2   12(f) and referring plaintiff for Rule 11 sanctions).

3   **B.   Ms. Ranahan And Her Firm's Continuing Conduct Warrants The Further Sanctions Requested By This Motion**

4

5       MGA previously sought sanctions against Ms. Ranahan due to her behavior at

6   the consumer witness depositions.  In its Sanctions Order, the Court partially granted

7   that motion and issued monetary sanctions of $1,000 against Ms. Ranahan.  MGA

8   does *not* seek sanctions for Ms. Ranahan's misconduct which was the subject of

9   MGA's prior application and the Court's prior order.  That Ms. Ranahan's

10  misconduct has continued—and, if anything, has only escalated—demonstrates the

11  need for further sanctions.  Throughout the trial, she was subject to the Court's to-be-

12  entered sanctions order.  It did not dissuade her misconduct.  She clearly has not

13  "learned her lesson" or been deterred from making baseless personal attacks on

14  counsel.

15      Due to Ms. Ranahan's outlandish conduct after being warned and sanctioned

16  by this Court, MGA seeks further sanctions:

17      First, MGA seeks its attorneys' fees for having to prepare and file the reply

18  brief in support of its motion for mistrial, in the amount of $11,202.50.  Scolnick

19  Decl., ¶ 6.  That reply brief was necessitated not because of the merits of Counter-

20  Claimants' opposition—indeed, MGA's motion already had been granted and the

21  jury dismissed—but due to Ms. Ranahan's scandalous and vitriolic claims on pages

22  6-7 of that brief accusing Ms. Keller of being a racist.[6]

23      The Court granted the mistrial because it recognized "race is the most

24  inflammatory issue in this case."  Scolnick Decl., Ex. B (1/25/23 RT) at 16:1-13.  And

25  Counter-Claimants' counsel, David Scheper, assured the Court that Counter-

26

27  _____

28  [6]  Indeed, the Reply expressly stated it was prepared to rebut those reprehensible allegations, and not to address the legal arguments in the balance of the Opposition. Dkt. 572 (Reply) at 1.

14

Claimants would not make this case a "race fight."  Id.  But mere hours later, Ms. Ranahan filed a brief that attempted to do just that, disregarding any semblance of a legal position or a factual basis and instead baselessly branding a distinguished attorney as a racist.

There can be no doubt Ms. Ranahan made these accusations in bad faith and for an improper purpose.  Having attended trial and Ms. Pullins' examination, Ms. Ranahan knew full well that the n-word was only repeated by MGA's counsel when directly quoting Ms. Pullins' own lyrics and was ***always*** prefaced by an apology for having to use the word in open court.  Ms. Ranahan also claimed that Ms. Keller's use of the n-word "evolved from one with a soft 'a' at the end to one with a hard 'er,' which significantly changes its effect."  Dkt. 570 at 6.  This is a lie.  The transcript reflects no instance in which Ms. Keller used the "hard er," even in quoting Ms. Pullins' own lyrics.  Scolnick Decl., ¶ 5.  Ms. Ranahan's insistence to the contrary attributed a nefarious and racist intention behind Ms. Keller's questioning that simply did not and does not exist.

As this Court observed, Counter-Claimants' primary theme for their case was that Mr. and Ms. Harris created the OMG Girlz, which MGA then copied for their L.O.L. Surprise! O.M.G. dolls to capitalize on any popularity the Harris' group had achieved, with their most prolific public exposure being on Mr. and Ms. Harris' reality television show.  To support that theory, Counter-Claimants elicited testimony and played videos portraying the OMG Girlz and the Harris family in a misleading, sanitized light.  MGA appropriately cross-examined Ms. Pullins about her offensive song lyrics and public statements she posted for her followers.  To elicit such testimony, Ms. Keller had to quote Ms. Pullins' own profane lyrics, which included the n-word and various other expletives.  This line of questioning directly rebutted Counter-Claimants' position that the O.M.G. Girlz and their public persona are compatible with a line of dolls marketed to young children.

The reputational harm caused by Mr. Ranahan's demeaning and caustic accusations are bad enough. But they are even worse when viewed in the context in which she made them. Ms. Ranahan made these claims against Ms. Keller in a needless opposition to a motion already decided, and with full knowledge and intent they would be reported on social media and in the press, which they were almost immediately. Her actions jeopardized the administration of justice, by directing a propaganda campaign against MGA's lead attorney to influence the public and any jury pool from which the jury will be selected for the retrial. This bad faith purpose only is reinforced by Ms. Ranahan's public comments to the media made the day after her scandalous filing. While her public comment did not directly restate her claims of racism against Ms. Keller, her press statement that MGA and its counsel aimed to "demean" her clients and that "[t]he attempted intimidation and bullying tactics by Mr. Larian and his legal team are finally coming to light" were intended to refer to and invoke Ms. Ranahan's highly publicized accusations of racism in her filing made the day before. *Compare* Scolnick Decl., Exs. C & D *with* Dkt. 570 at 6-7.

Ms. Ranahan's claims in her Opposition went even further, to claim that Ms. Keller made a middle finger gesture directed at Ms. Pullins designed "to evoke hate." Dkt. 570 at 7. Again, this is demonstrably false. As the Court observed, Ms. Keller mimicked Ms. Pullins' gesture made in the courthouse the day prior, as the postings themselves were not in evidence. The questioning aimed to juxtapose Ms. Pullins' manicured trial demeanor before the jury with that she exhibited moments later once outside the jury's presence. As Ms. Ranahan knew when she made these false claims, Ms. Keller did not direct the gesture at Ms. Pullins or use it to "evoke hate."

Second, besides these monetary sanctions, MGA also respectfully requests that the Court strike Counter-Claimants' opposition to the mistrial motion (Dkt. 570) or, at minimum, page 6, line 13 to page 7, line 12 of that pleading. *See, e.g., Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (finding that allegations may be

16

stricken including "impertinent" allegations which "do not pertain and are unnecessary to the issues in question" and "scandalous" allegations which "improperly casts a derogatory light on someone, usually a party").

<u>Third</u>, MGA seeks its attorneys' fees and costs in the amount of $30,262.50 for having to prepare and file an opposition to Counter-Claimants' baseless *ex parte* application seeking reconsideration of the Court's order precluding Counter-Claimants from presenting evidence of alleged emotional distress damages. Scolnick Decl., ¶ 7. There was no good faith basis to bring the application on an *ex parte* basis, especially given there was no retrial date set. Nor was there any good faith basis for the reconsideration request itself, as the application was a restatement of arguments Counter-Claimants already had made and the Court already had rejected. Despite the frivolous nature of Counter-Claimants' application, MGA could not reasonably be expected to simply ignore the substantive relief Counter-Claimants sought. Instead, MGA was forced to incur considerable expense preparing and filing an opposition to the application, as it was due within 24 hours.

<u>Fourth</u>, MGA seeks its attorneys' fees and costs in the amount of $34,020 for having to prepare and file this motion for further sanctions, which was made necessary only due to Ms. Ranahan's and her firm's misconduct and frivolous filings. Scolnick Decl., ¶ 8.

<u>Fifth</u>, MGA respectfully requests that the Court refer Ms. Ranahan to the Central District's Standing Committee on Discipline, as the Court may do under its inherent authority and Local Rule 83-3.1.

<u>Sixth</u>, MGA respectfully requests that the Court advise Ms. Ranahan to issue a public apology to Ms. Keller for the claims made on pages 6-7 of her brief in opposition to the mistrial motion.

<u>Seventh</u>, given this matter will proceed to retrial, MGA also respectfully requests that the Court admonish Ms. Ranahan, Counter-Claimants' other counsel,

and Counter-Claimants that any further misconduct will result in further and/or more severe sanctions.

Finally, MGA respectfully requests that the Court impose any other sanction and take any additional remedial action the Court deems necessary under the circumstances.

## IV.   **CONCLUSION**

MGA respectfully requests that the Court grant this motion, impose a monetary sanctions against Ms. Ranahan and her firm in the total amount of at least $75,485, strike Counter-Claimants' opposition to the mistrial motion (Dkt. 570) or at minimum page 6, line 13 to page 7, line 12, refer Ms. Ranahan to the Central District's Standing Committee on Discipline, advise Ms. Ranahan to publicly apologize to Ms. Keller, warn Counter-Claimants and their counsel that any further misconduct will result in even more severe sanctions, and impose any additional remedial sanction or action the Court deems necessary.

Dated: February 13, 2023                KELLER/ANDERLE LLP

                                        By:   _____
                                              Chase A. Scolnick
                                              Attorneys for Plaintiff and Counter-
                                              Defendant MGA Entertainment, Inc., and
                                              Counter-Defendant Isaac Larian

1

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

2

3     The undersigned, counsel of record for Plaintiff and Counter-Defendant

MGA Entertainment, Inc., and Counter-Defendant Isaac Larian, certifies that this

4

brief contains 5,839 words, which complies with the word limit of L.R. 11-6.1

5

6     Dated: February 13, 2023          KELLER/ANDERLE LLP

7                                   By:  _____

8                                        Chase A. Scolnick

9                                        Attorneys for Plaintiff and Counter-
                                         Defendant MGA Entertainment, Inc., and
10                                       Counter-Defendant Isaac Larian

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28