# Exhibit A

```
             UNITED STATES DISTRICT COURT

            CENTRAL DISTRICT OF CALIFORNIA

                   SOUTHERN DIVISION

                        - - -

    THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


    MGA ENTERTAINMENT, INC.,      )CERTIFED TRANSCRIPT
                    Plaintiff,    )
        vs.                       )
                                  )  CV-20-11548-JVS
    CLIFFORD T.I. HARRIS, et al., )
                    Defendants    )
    ------------------------------)




         REPORTER'S TRANSCRIPT OF PROCEEDINGS

               Santa Ana, California

                  February 2, 2023



                  SHARON A. SEFFENS, RPR
                  United States Courthouse
                  411 West 4th Street, Suite 1-1053
                  Santa Ana, CA  92701
                  (612) 804-8655
```

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   CHASE SCOLNICK
     JENNIFER L. KELLER
 4   KELLER ANDERLE, LLP
     18300 Von Karman Avenue, Suite 930
 5   Irvine, CA  92612
     (949) 476-8700
 6

 7   For the Defendants:

 8   ERIN R. RANAHAN
     DAVID C. SCHEPER
 9   WINSTON STRAWN, LLP
     333 South Grand Avenue, 38th Floor
10   Los Angeles, CA  90071-1543
     (213) 615-1700
11
     JOHN R. KEVILLE
12   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
     700 Louisiana Street, Suite 2750
13   Houston, TX  77002-2791
     (713) 431-7100
14
     CHANTE B. WESTMORELAND
15   SHEPPARD MULLIN RICHTER HAMPTON, LLP
     700 Lousiana Street, Suite 2750
16   Houston, TX  77002
     (713) 431-7100
17

18

19

20

21

22

23

24

25
```

|  |  |
|---|---|
|  | 1 SANTA ANA, CALIFORNIA; THURSDAY, FEBRUARY 2, 2023; 9:00 A.M. |
| 09:00 | 2 THE CLERK: Calling Case CV-20-11548-JVS, MGA |
| 09:00 | 3 Entertainment, Inc., versus Clifford T.I. Harris, et al. |
| 09:00 | 4 Counsel, please state your appearances for the |
| 09:00 | 5 record. |
| 09:00 | 6 MR. SCOLNICK: Good morning, Your Honor. Chase |
| 09:00 | 7 Scolnick on behalf of MGA and Mr. Larian. |
| 09:00 | 8 MS. KELLER: Good morning, Your Honor. Jennifer |
| 09:00 | 9 Keller also for MGA and Mr. Larian. |
| 09:00 | 10 MR. SCHEPER: Good morning, Your Honor. David |
| 09:00 | 11 Scheper on behalf of the Harris parties and OMG Girlz, LLC, |
| 09:00 | 12 and I would like to introduce Your Honor to Mr. John |
| 09:00 | 13 Keville. He has a pro hac vice pending. |
| 09:01 | 14 MS. RANAHAN: Good morning, Your Honor, Erin |
| 09:01 | 15 Ranahan on behalf of defendants and counterclaimants. |
| 09:01 | 16 MS. WESTMORELAND: Good morning, Your Honor. |
| 09:01 | 17 Chante Westmoreland also on behalf of the defendants and |
| 09:01 | 18 counterclaimants. |
| 09:01 | 19 THE COURT: Good morning. |
| 09:01 | 20 Well, we have a number of matters to take up. |
| 09:01 | 21 First of all, have you had any discussions about a new trial |
| 09:01 | 22 date? |
| 09:01 | 23 MS. KELLER: Your Honor, Mr. Scheper and I briefly |
| 09:01 | 24 discussed a new trial date, and we haven't got a specific |
| 09:01 | 25 date in mind. We do on our part, but my understanding is |

```
09:01   1    Mr. Scheper is going to defer to the Court.
09:01   2              MR. SCHEPER:  As early as Your Honor can have it.
09:01   3              THE COURT:  Well, I have four trials stacked up.
09:01   4    There are going to go ten days each.  I wouldn't be
09:01   5    available to set anything until maybe mid May.
09:02   6              MS. KELLER:  I'm going to be out of the country
09:02   7    the whole month of June, and I'm starting another trial in
09:02   8    July in Oakland.
09:02   9              THE COURT:  When do you think you will be
09:02   10   available?
09:02   11             MS. KELLER:  I should be available by October.
09:02   12   We will make it work somehow.
09:02   13             THE COURT:  Well, when is your July trial going to
09:02   14   conclude?
09:02   15             MS. KELLER:  The July trial has a six-week
09:02   16   estimate, but I also have a mid-September trial in federal
09:02   17   court here in L.A.
09:02   18             THE COURT:  Well, let's see if we can squeeze it
09:03   19   in the last half of August.  This trial is going to last ten
09:03   20   days.
09:03   21             MR. SCHEPER:  We will be ready in August.  We will
09:03   22   be ready in February.
09:03   23             THE COURT:  Okay.
09:03   24             MR. KEVILLE:  Your Honor, if I may.  I know I am
09:03   25   not admitted yet.
```

```
09:03   1              THE COURT:  Sure.
09:03   2              MR. KEVILLE:  This is Mr. Keville.  You said
09:03   3   mid-May.  Do you have an exact date in time, because I have
09:03   4   looked at the case, and we may be able to tighten it?  I'm
09:03   5   wondering if we can fit it in before counsel has to leave.
09:03   6              MS. KELLER:  Your Honor, we have been trying to
09:03   7   consult with witnesses.  If we started it May 2, I think we
09:03   8   could do it, but I do have to leave for Europe the very
09:04   9   beginning of June.
09:04  10              THE COURT:  I don't think I could start it before
09:04  11   mid-May with other matters for trial.
09:04  12              What is your departure date?
09:04  13              MS. KELLER:  My departure date is June 1.  I have
09:04  14   a conference, a trial I am supposed to attend, and another
09:04  15   conference --
09:04  16              THE COURT:  Well, let's schedule it for May 9 and
09:04  17   see what we can do.
09:04  18              MS. KELLER:  I know May 9 wouldn't work for me.
09:04  19              THE COURT:  You'll still be in another trial?
09:04  20              MS. KELLER:  I won't able to finish this trial
09:04  21   before I leave.
09:04  22              THE COURT:  We start May 9.  It's ten days.
09:04  23              MS. KELLER:  Well, except we have got to do voir
09:04  24   dire, opening statements --
09:04  25              THE COURT:  We can get voir dire done in a day, a
```

```
09:04    1   day and a half.
09:05    2              MR. SCHEPER:  I think we can get it done, Your
09:05    3   Honor.  I will work with counsel to try and trim it down.
09:05    4              MS. KELLER:  That would be great.
09:05    5              THE COURT:  I'm going to set it for May 9 at 8:30
09:05    6   a.m.  To the extent we need any further status conferences,
09:05    7   contact Ms. Vargas, and we will set them up.
09:05    8              MS. KELLER:  Yes, Your Honor.  We may ask the
09:05    9   Court to revisit the date because we are going to have to
09:05   10   contact all our people.
09:05   11              THE COURT:  That may be.  Let's have something to
09:05   12   shoot for.  If need be, we will go out to the fall, but I
09:05   13   think everybody would be better served getting this back on
09:05   14   track as soon as we can.
09:05   15              MS. KELLER:  I agree with you.
09:05   16              THE COURT:  Okay.
09:05   17              As part of the briefing for the motion for
09:05   18   mistrial, there was a suggestion that the Court ought to
09:05   19   entertain sanctions motions.  I obviously wouldn't do that
09:06   20   in the course of briefing for another motion.  If any party
09:06   21   thinks a sanction motion is appropriate at this time, they
09:06   22   are free to notice up such a motion.
09:06   23              Any questions about that?
09:06   24              MR. SCOLNICK:  No, Your Honor.
09:06   25              THE COURT:  Okay.  The motion at Docket 407, a
```

```
09:06   1    request for sanctions, was filed under seal at Docket 571.
09:06   2    The purpose of filing it under seal was to allow the party
09:06   3    to make any suggestions for redactions on the basis of trade
09:06   4    secrets or other issues.  When 571 was issued, the Court
09:06   5    indicated it would wait seven days for any suggestions for
09:06   6    redaction.  The order was issued on 1/26.  The seventh day
09:07   7    is today.  I have received no requests for redaction.  If I
09:07   8    don't receive anything by the end of the day, I will unseal
09:07   9    that order.
09:07  10              I don't think that the Harris parties properly
09:07  11    understood my statement when I indicated to Ms. Ranahan that
09:07  12    I would entertain a slight delay.  That delay was in the
09:07  13    face of her request for an extension of time to pay the
09:07  14    sanctions that the Court awarded.  That exact language is
09:07  15    quoted at Docket 580, defendants/counterclaimants' response
09:07  16    and objections to Court's January 26, 2023, order regarding
09:07  17    Docket 407.  The passage quoted there is correctly quoted.
09:07  18              "Ms. Ranahan:  If Your Honor still believes
09:07  19    monetary sanctions are appropriate, if you could delay that
09:08  20    order until just the end of the trial so that you can reduce
09:08  21    the time that I need to pay just so it doesn't become a
09:08  22    high-profile trial.
09:08  23              "The Court:  That's fine.  I'm going to continue
09:08  24    with monetary sanctions so you have plenty of time to deal
09:08  25    with it."
```

```
09:08   1            I did not indicate that I would hold the order,
09:08   2   and I will not hold the order.  It seems the public is
09:08   3   entitled to know what is going on in this case whether good,
09:08   4   bad, or otherwise.  As I indicated, if I don't receive any
09:08   5   other redaction requests by the end of the day, I will
09:08   6   unseal that order at 571 tomorrow.
09:08   7            Part of the contentiousness in the case is
09:08   8   centered around the theory that MGA would not have copied
09:08   9   the OMG Girlz in light of certain conduct.  At trial, we
09:09  10   heard testimony elicited from Zonnique Pullins with regard
09:09  11   to lyrics and other things.  Particularly during
09:09  12   Ms. Keller's cross-examination at pages 15 to 20 of the a.m.
09:09  13   session on January 19, she was asked questions about the use
09:09  14   of what most people would find crude language either in
09:09  15   lyrics or otherwise, and it culminated with a question at
09:09  16   page 19.  Question by Ms. Keller:
09:09  17            "Q.  Am I correct you wouldn't want your child
09:10  18   hearing that kind of language?
09:10  19            "A.  Correct."
09:10  20            It also seems some of the contentiousness has been
09:10  21   generated by efforts to introduce other factors that might
09:10  22   cause MGA not to want to copy the OMG Girlz.  I've indicated
09:10  23   previously that I don't think that testimony is relevant
09:10  24   unless there is predicate evidence in the record that MGA
09:10  25   knew of the principals on the other side and knew of the
```

```
09:10   1    conduct.
09:10   2              I'm going to issue Order to Show Cause as to why I
09:10   3    shouldn't require that predicate be shown such that MGA was
09:10   4    aware of the various grounds it asserts for not wanting to
09:10   5    copy the OMG Girlz prior to the introduction of such
09:10   6    evidence.  Such evidence would include crude language,
09:11   7    alleged criminal conduct, and other similar evidence.
09:11   8              I want to give the parties a fair opportunity to
09:11   9    brief that issue.  It was really discussed just sort of in
09:11  10    passing during the course of trial.  The way I see it is
09:11  11    somewhat like this analogy I will offer for you.  Suppose
09:11  12    I'm a competing carmaker and I'm accused of copying Edsels,
09:11  13    and I say I would never copy an Edsel.  It has a horrible
09:11  14    design and a bad reputation in the community.  In my
09:11  15    hypothetical, I knew about Edsel and its problems.  So I
09:11  16    offer that analogy for what it's worth.
09:11  17              In any event, an Order to Show Cause why the
09:11  18    predicate evidence shouldn't be introduced or at least an
09:11  19    offer of proof made before I receive such evidence.  So is
09:12  20    that clear?
09:12  21              MS. KELLER:  Yes, Your Honor.  It is, and we
09:12  22    intend to offer that.
09:12  23              THE COURT:  Well, that's fine.  How much time do
09:12  24    you need to respond?  We are not in a rush.
09:12  25              MS. KELLER:  Can we have two weeks?
```

```
09:12   1              THE COURT:  How much would you like to respond,
09:12   2   Mr. Scheper?
09:12   3              MR. SCHEPER:  Two weeks to respond.
09:12   4              THE COURT:  That's fine, and one week for a reply.
09:12   5   I will set a hearing as necessary when I see the briefs.
09:12   6              MS. KELLER:  Thank you, Your Honor.
09:12   7              THE COURT:  Part of the trouble with the last
09:12   8   trial is that it was conducted in rushed and pressured
09:12   9   circumstances.  We will not have that for the second trial.
09:12  10   If I am asked to make rulings, whatever material I'm asked
09:12  11   to ruled upon will be submitted to me in sufficient time so
09:13  12   that I make a considered, thoughtful, and timely ruling.  If
09:13  13   we need to delay things, I will delay things.  I will not
09:13  14   rush.  I will not be rushed.
09:13  15              The situation somewhat reminds me of an early
09:13  16   experience in private practice.  I thought at one point I
09:13  17   wanted to be a corporate lawyer, and I worked on a secondary
09:13  18   offering for a savings and loan.  The savings and loan had
09:13  19   been established after World War II by two veterans.  Both
09:13  20   of them had only completed high school, but they built this
09:13  21   billion dollar financial empire.  One of them had on his
09:13  22   desk this little sign that said:  "If you can't find time to
09:13  23   do it right the first time, when are you ever going to find
09:13  24   time to do it again?"  Needless to say, I remembered that.
09:13  25   There is obviously some real wisdom in that statement.
```

```
09:13    1              So is there any question about my attitude
09:14    2   concerning how the second trial will proceed and all the
09:14    3   in-court and out-of-court activities that lead to that?
09:14    4              MR. SCHEPER:  Crystal clear, Your Honor.  Thank
09:14    5   you.
09:14    6              MS. KELLER:  Very clear, Your Honor.
09:14    7              To that end, we may submit to the Court a proposed
09:14    8   schedule for the parties to submit various things to the
09:14    9   Court and hopefully with plenty of lead time?  I assume the
09:14   10   Court is going to enforce a 300-page depo designation limit.
09:14   11   If that's the case, that's a big help.
09:14   12              THE COURT:  I'm going to stick to that unless
09:14   13   somebody comes to me with good cause for doing more.  I
09:14   14   think even 300 pages of depositions to be read to the jury
09:14   15   at 30 to 35 pages an hour or to be played videos is somewhat
09:14   16   deadening and would take up an undue amount of the time
09:15   17   budget I have provided to the parties.  Unless I'm shown why
09:15   18   I should do something else, that's what we are going to do.
09:15   19              MS. KELLER:  Thank you.
09:15   20              THE COURT:  In that same vein, I'm denying the
09:15   21   ex parte submitted seeking reconsideration of the Court's
09:15   22   ruling with regard to the admission of emotional distress
09:15   23   and like damages.  One, there is no emergency that would
09:15   24   cause me to consider that on an expedited basis, and I deny
09:15   25   that simply for that reason.  I believe the parties have
```

```
09:15   1    resorted far too often to the ex parte procedure, and they
09:15   2    ought to take seriously the Court's statement in its
09:15   3    standing order and web page that ex parte applications are
09:16   4    reserved for truly exigent circumstances.
09:16   5             Were I to get to the merits on that application, I
09:16   6    would likely deny it on the merits, because I don't believe
09:16   7    in a passing reading that it really provides anything new
09:16   8    and doesn't come with any of the requirements of Rule 7-18
09:16   9    or Federal Rule of Civil Procedure Rule 59, so I ask you to
09:16   10   be quite sparing with ex parte applications from this point
09:16   11   forward.
09:16   12            We ran into some timing difficulties with the
09:16   13   principals in the last trial.  Mr. Larian was going to be
09:16   14   gone for a period, and Mr. Harris was going to be gone for a
09:17   15   period.  And, particularly, Mr. Harris's absence had an
09:17   16   effect on the events that transpired during the last week of
09:17   17   the trial.  The parties will know well in advance when we
09:17   18   are going to go to trial.  All witnesses including the
09:17   19   parties will make themselves available consistent with that
09:17   20   trial schedule.  If they are not here, they are not here.
09:17   21            When I dismissed the jury, I encouraged the jury
09:17   22   to talk to the parties.  I indicated that the parties often
09:17   23   learn a great deal from their reactions even to a partial
09:17   24   case.  I won't ask for a response, but I assume that you
09:17   25   conversed with at least some of the jurors and gained some
```

```
09:17   1   of their insights.  You know, not quite a full mock trial
09:17   2   but pretty much equivalent.
09:17   3           Who was your settlement officer?
09:18   4           MS. RANAHAN:  We met with Magistrate Judge
09:18   5   Rosenberg.
09:18   6           THE COURT:  I direct you in the next 60 days to go
09:18   7   back to Judge Rosenberg or a private mediator of your
09:18   8   selection and to undertake further settlement discussions.
09:18   9   You now have the benefit of the jury's evaluation, and I
09:18  10   think that's a material change in circumstances that causes
09:18  11   me to direct you within 60 days to engage in further
09:18  12   settlement discussions.
09:18  13           One final matter, through much of the trial, I
09:18  14   directed Ms. Ranahan to curtail her objections and cease
09:18  15   further argument.  On the day I declared a mistrial,
09:18  16   Mr. Scheper presented the Harris parties' position.  He
09:19  17   argued quite articulately and stated accurately and
09:19  18   forcefully the case law would cause one to think twice
09:19  19   before declaring a mistrial and think twice before one would
09:19  20   steer away from the usual presumption that the jurors
09:19  21   understand and follow the Court's instruction.
09:19  22           After Ms. Keller's rebuttal, Ms. Ranahan stood up
09:19  23   again and presented further argument, and I literally told
09:19  24   her to be seated.  I've tried directly and I've tried
09:19  25   indirectly to get that word across.  But for the fact that
```

```
09:19   1    the case terminated, at least for the present at that point,
09:19   2    I did not hold Ms. Ranahan in contempt.
09:19   3            Let me say every lawyer is going to abide by the
09:19   4    usual rules.  Once the Court has ruled, the Court has ruled.
09:19   5    It's time consuming and unfair to the other parties to take
09:20   6    up the Court's time by repeating arguments that have been
09:20   7    well made previously by the parties.
09:20   8            So let me be clear, Ms. Ranahan, do you understand
09:20   9    what I am saying?
09:20  10            MS. RANAHAN:  I absolutely understand.  I asked
09:20  11    for permission to speak at that point.  I thought I could
09:20  12    add one thing, but I understand your directive.
09:20  13            THE COURT:  Okay, is there anything else anyone
09:20  14    would like to take up?
09:20  15            MS. KELLER:  Not from MGA, Your Honor.
09:20  16            MR. SCHEPER:  No, Your Honor.  Thank you.
09:20  17            THE COURT:  Okay.  As I say, if we need any
09:20  18    interim status conferences, please just contact Ms. Vargas.
09:20  19    I think it would be helpful if the parties developed an
09:20  20    interim schedule for disclosures in advance leading to the
09:20  21    May trial.
09:21  22            (Whereupon, the proceedings were concluded.)
09:21  23                         *     *     *
09:21  24
09:21  25
```

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  February 10, 2023

/s/   Sharon A. Seffens  2/10/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER