KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
Laurence Cheng (SBN 306299)
Laurence.cheng@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: The Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR FURTHER SANCTIONS**<br><br>Complaint Filed: December 20, 2020<br>Trial Date:   May 9, 2023 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. THE OPPOSITION DOES NOT REFUTE THAT MS. RANAHAN AND HER FIRM'S ACCUSATIONS MS. KELLER ACTED IN A RACIST MANNER AND "FLIPP[ED] OFF" A WITNESS WERE MADE IN BAD FAITH AND FOR AN IMPROPER PURPOSE ...............................................3

    A. The Opposition Misrepresents MGA's Position. MGA Does Not Contend The Harris Parties Acted Improperly By Filing An Opposition To The Mistrial Motion; Instead, MGA Contends The Libelous Accusations In That Brief Are Sanctionable ........................................4

    B. The Opposition Misrepresents And Minimizes Ms. Ranahan's Personal Attacks, Which The Record Shows Were Made In Bad Faith And For An Improper Purpose ...................................................................4

    C. The Opposition Fails to Rebut Or Distinguish MGA's Authorities Showing Sanctions Are Appropriate Here ...............................................8

III. MS. RANAHAN AND HER FIRM'S PUBLIC COMMENTS WERE MADE IN BAD FAITH AND FOR THE IMPROPER PURPOSE OF REINFORCING THE ATTACKS ON MS. KELLER MADE THE SAME DAY ...................................................................................................................11

IV. THE OPPOSITION PROVIDES NO LEGITIMATE JUSTIFICATION FOR THE HARRIS PARTIES' FRIVOLOUS *EX PARTE* APPLICATION RE EMOTIONAL DAMAGES ..............................................................................12

V. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Centeno v. City of Carlsbad*,
   2021 WL 2779576 (S.D. Cal. July 2, 2021) ....................................................... 9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................ 9

*Coates v. Pierre*,
   890 F.2d 728 (5th Cir. 1989) ........................................................................... 10

*Conklin v. Warrington Township*,
   2006 WL 2246415 (M.D. Pa. Aug 4, 2006) ................................................... 10

*Davis v. TRM Copy Centers, Corp.*,
   1988 WL 92921 (N.D. Ill. Aug. 16, 1988) ...................................................... 10

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ............................................................................ 9

*Forte v. County of Merced*,
   2014 WL 47455923 (E.D. Cal. Sept. 23, 2014) ............................................... 9

*Miller v. Cardinale (In re DeVille)*,
   361 F.3d 539 (9th Cir. 2004) ............................................................................ 9

*Pigford v. Veneman*,
   215 F.R.D. 2 (D.D.C. 2003) ........................................................................... 10

*Valle v. Karagounis*,
   2022 WL 17485644 (D.D.C. Dec. 7, 2022) .................................................... 10

## I. INTRODUCTION

The Court previously issued monetary sanctions against Ms. Ranahan and admonished her for disruptive and improper conduct at depositions. In its sanctions order, the Court expressed hope the order would deter her further misbehavior. It did not. Besides persistently engaging in argument and interjections during trial that the Court suggested brought her perilously close to being held in contempt, Ms. Ranahan and her firm's behavior became even more vitriolic and personal following the mistrial. She and her firm filed a brief that made reprehensible and entirely false accusations that MGA's counsel, Jennifer Keller, exhibited racism and "flip[ed] off" a witness during a cross-examination.

Yet, in the Opposition to MGA's Motion for Further Sanctions ("Opposition"), Ms. Ranahan and her firm, Winston & Strawn, show no remorse. Instead, Ms. Ranahan doubles down. She attempts to minimize and justify demonstrably false accusations which cannot be justified, explained, minimized—or undone. Ms. Keller is a seasoned trial lawyer with an impeccable reputation that speaks for itself, with the resumé, accolades, and professional involvement to match. She is not thin-skinned. But that hardly permits Ms. Ranahan and her firm to make baseless attacks on Ms. Keller's character. The harm flows not just to Ms. Keller but also to MGA and this Court, as Ms. Ranahan's assertions were made knowing they would be reported by the media to the public from which a jury will be selected for retrial. In bad faith and for an improper purpose, Ms. Ranahan and her firm made accusations not only from the personal animus they may harbor toward Ms. Keller, but to gain a tactical advantage for retrial by egregiously labeling MGA and its counsel as racists.

This case is not about race, despite the numerous attempts to make it so by Ms. Ranahan, her firm, and her clients. Ms. Ranahan and her firm have cried "racism" as a tactic to intimidate MGA from using clearly relevant evidence due to

controversies the Harris Parties have instigated. But this is not Black v. White.[1] This is not David v. Goliath. This is a case about the Harris family's attempt to seek money they did nothing to earn by claiming that the appearance of some dolls in a line of children's toys were stolen from or resemble a long-disbanded girl group with which the Harris family was closely associated.

MGA has not judged or criticized the Harris Parties for using whatever artistic license they deem desirable to appeal to their audience, whether that includes lyrics laced with profanity, frequent use of the n-word, or even the misogynistic language and sexual exploitation themes found throughout Mr. Harris's songs. But the Harris Parties cannot build a public brand, image, and persona around these offensive lyrics and themes, and then turn around and claim that a toy manufacturer co-opted that same brand and image to market dolls to children. At minimum, MGA must be permitted to rebut the Harris Parties's implication they were perfect models for MGA to copy.

It is not credible to believe MGA would have based its dolls on the Harris family or those publicly associated with them. Mr. Ranahan and her firm knew full well the legal basis of MGA's position, and that MGA's arguments and Ms. Keller's questioning did not arise from racial animus or anything close to it. Instead, MGA and its counsel would be remiss to not point out the inherent conflict and absurdity in the Harris Parties' position that MGA would steal trade dress to generate market confusion between the Harris family's public image and MGA's children's dolls.

Yet, in a span of about 24 hours, Ms. Ranahan and/or her firm (1) played previously excluded deposition testimony from an alleged consumer witness about "cultural misappropriation," which led to a mistrial, (2) were informed by the Court that it believes race is *the* most inflammatory issue in this case, (3) filed an opposition

---

[1] Contrary to the Harris Parties' insinuation, Mr. Larian is not white. He is an Iranian immigrant who takes offense to Ms. Ranahan and her firm's false accusations of racism.

2

to an already-decided motion that included two pages of bad faith, inaccurate claims of alleged "racist behavior" by Ms. Keller unrelated to what caused the mistrial ("Mistrial Opposition"), and (4) gave a media statement highlighting the abhorrent accusations in their just-filed brief.  They followed that a few days later with a spurious *ex parte* application for reconsideration that was procedurally defective not only because it lacked any emergency rationale and failed to comply with the Local Rules, but because it offered no new grounds warranting reconsideration at all.

Ms. Ranahan and her firm's conduct has been no accident.  Ms. Ranahan is an experienced partner at Winston & Strawn, an international law firm with over a billion dollars of annual revenue.[2]  Given that Ms. Ranahan's conduct has persisted (and indeed escalated) despite the prior sanctions order, that her actions have caused prejudice, undue expense, and harm to MGA and its counsel, and that such conduct must cease once and for all to allow retrial to proceed professionally and efficiently, the Court should grant this motion and impose the further sanctions requested by MGA.

**II.   THE OPPOSITION DOES NOT REFUTE THAT MS. RANAHAN AND HER FIRM'S ACCUSATIONS MS. KELLER ACTED IN A RACIST MANNER AND "FLIPP[ED] OFF" A WITNESS WERE MADE IN BAD FAITH AND FOR AN IMPROPER PURPOSE**

In the moving papers, MGA laid out the repeated pattern of improper and prejudicial conduct by Ms. Ranahan and her firm before, during, and after trial.  That misconduct culminated in the bad faith accusations in the Harris Parties' opposition to MGA's already-decided motion for mistrial, for which MGA now seeks further sanctions.  Ms. Ranahan and her firm had no reason or basis for such attacks, nor does the Opposition provide any legitimate justification for them.

---

[2]   https://www.law.com/law-firm-profile/?id=333&name=Winston-%26-Strawn-LLP

> **A.    The Opposition Misrepresents MGA's Position.  MGA Does Not Contend The Harris Parties Acted Improperly By Filing An Opposition To The Mistrial Motion; Instead, MGA Contends The Libelous Accusations In That Brief Are Sanctionable**

In the Opposition, Ms. Ranahan first concocts a strawman argument that the Harris Parties had "the right under the local rules and due process to file a written opposition brief to MGA's mistrial motion." *See* Opp. (Dkt. 601) at 15 (of 26).  But MGA has never claimed otherwise.  Even in its reply to the mistrial motion, MGA made clear it did not dispute the Harris Parties' ability to file a written opposition setting forth their position, but instead objected only to the illegitimate and inflammatory accusations on pages 6-7 of that brief.  *See* Dkt. 572 at 2.  And in the present Motion, MGA emphasized it "does not assert Counter-Claimants acted improperly by submitting their position in writing despite the Court already having granted the motion," but does condemn Ms. Ranahan for "improperly us[ing] the brief as a vehicle to levy false personal attacks and accusations against MGA's lead counsel, Jennifer Keller." *See* Motion (Dkt. 599) at 11-12 (of 24).

The Opposition's primary defense to the motion for further sanctions is, therefore, irrelevant, as it purports to rebut an argument MGA does not make.  Of course, that Ms. Ranahan and her firm included the personal attacks against Ms. Keller in a brief opposing a motion already granted, and which were wholly unrelated to the grounds for mistrial sought by MGA or ordered by the Court, only underscores the bad faith and improper purpose inherent in the false claims.

> **B.    The Opposition Misrepresents And Minimizes Ms. Ranahan's Personal Attacks, Which The Record Shows Were Made In Bad Faith And For An Improper Purpose**

The Opposition next attempts to downplay the seriousness and egregiousness of Ms. Ranahan's personal attacks on Ms. Keller, claiming they were merely "subjective characterization[s] that MGA disagree with." *See* Opp. (Dkt. 601) at 16. But Ms. Ranahan and her firm cannot dilute the vitriol with which their accusations

were made.  The claims in the Harris Parties' Mistrial Opposition (Dkt. 570) were not merely "subjective characterization[s]," nor were Ms. Ranahan and Winston & Strawn merely providing rigorous legal representation of their clients

A closer look at Ms. Ranahan's statements at page 6-7 of that Mistrial Opposition shows the implausibility of her current attempt to minimize her misconduct.  She now claims that brief "did not state that Ms. Keller is a racist person." *See* Opp. (Dkt. 601) at 3.  But Ms. Ranahan's accusations in that opposition brief unmistakably smear Ms. Keller and her character by calling her a racist.  The heading for the subsection in the Mistrial Opposition references "Counsel's Racist Behavior." Dkt. 570 at 7.  Ms. Ranahan further claimed in that opposition—falsely and without foundation—that MGA and Ms. Keller tried to "weaponize" the n-word. *Id*.  Ms. Ranahan further asserted—again, falsely and without foundation—that Ms. Keller's use of the n-word was "superfluous," "unrelated to the claims in the case," constituted "a very real attack with an undercurrent of racism," and laid "the groundwork of racism." *Id*. at 7-8.  Ms. Ranahan understood the significance and seriousness of these bad faith accusations.

Nor were these attacks on Ms. Keller addressing or responding to any argument made in MGA's mistrial motion or the Court's order on it.  Ms. Keller's examination of Ms. Pullins was completely independent from and unrelated to whether a mistrial was necessitated by the Harris Parties' playing deposition testimony on subject matter expressly forbidden by the Court's order on MGA's Motion *in Limine* No. 3.  Ms. Ranahan attempts to justify her attack on Ms. Keller by suggesting that the claims of cultural misappropriation levelled by third-party witness Moneice Campbell, in the unauthorized testimony the Harris Parties played for the jury, could be excused because, in Ms. Ranahan's view, Ms. Keller already had injected racial tension into the case by making racist attacks against Ms. Pullins.  But that asserted rationale is specious, illogical, and simply untrue.  If anything, Ms. Ranahan and her firm injected

racial tension into the case through their reliance on the improper testimony from Ms. Campbell. Their unrelated personal attack on Ms. Keller is undeniable.

While Ms. Ranahan purports that Ms. Keller's use of the n-word was unnecessary, she knew full well MGA's position: that it would not have attempted to misappropriate the trade dress or likeness of individuals with a public brand and image incompatible with a line of children's dolls. The offensiveness of the n-word only reinforces that it would be exceedingly unlikely MGA would have wanted to copy the OMG Girlz or cause confusion between them and MGA's dolls given that the n-word and other offensive words and phrases permeate Ms. Pullins' lyrics. That the lyrics are inappropriate and offensive is the point. MGA was not required to tiptoe around the Harris Parties' offensive lyrics to sugarcoat them or assuage the apparent sensitivities of the same artists who wrote and sang them. And for Ms. Ranahan to disingenuously claim this line of questioning was unrelated to the claims or MGA's defense is transparently self-serving, as her clients undoubtedly wish to conceal from the jury the inherent contradictions in their trial narrative that a toy manufacturer would copy them. Ms. Ranahan wishes to characterize Ms. Keller's cross-examination as unnecessary to justify Ms. Ranahan's own abhorrent accusations.

The Opposition also attempts to rationalize the personal attacks against Ms. Keller by claiming the Mistrial Opposition "offered ample evidence from the record." *See* Opp. (Dkt. 601) at 18. But that too is false. The Harris Parties' accusations in their mistrial brief contain *no* citations to the record or trial transcripts. *See* Dkt. 570 at 6-7. The trial transcripts *undermine* Ms. Ranahan's accusations. Ms. Ranahan claimed that Ms. Keller's "use [of the n-word] evolved from one with a soft 'a' at the end to one with a hard 'er,' which significantly changes its effect." Dkt. 570 at 7. As set forth in the Motion, and left uncontroverted by the Opposition, the transcript shows *no* instance in which Ms. Keller used the "hard 'er'" when *quoting* Ms. Pullins' lyrics (which ended in "a" rather than "er."). *See, e.g.*, Scolnick Decl. (Dkt. 599-1),

¶ 5. Ms. Ranahan's unsubstantiated insistence otherwise only makes the accusation that much more vile, as Ms. Ranahan asserts the use of the "hard 'er'" to attribute a racist motivation to Ms. Keller that simply did not exist.

The Opposition next seeks cover for Ms. Ranahan's accusations by referencing a media interview with one of the dismissed jurors. But Ms. Ranahan ignores that the Mistrial Opposition makes no mention of that juror's statements. Nor does the Opposition claim Ms. Ranahan or her firm knew of that juror's statements when they prepared and filed the Mistrial Opposition. Instead, Ms. Ranahan seeks a *post-hoc* fig leaf for her bad faith accusations by referencing a juror interview that was not the basis for her malicious accusations. And even the juror's comments themselves do not support Ms. Ranahan's position. As the mistrial occurred before MGA presented its case, that juror had not fully heard MGA's position about the importance of that evidence, *i.e.*, that MGA would not have copied an artist with a public image incompatible with children's toys. But Ms. Ranahan certainly knew MGA's position and the relevance of Ms. Keller's questioning.[3]

Besides the florid accusations of racism, the Mistrial Opposition also accused Ms. Keller of "flipping [Ms. Pullins] off" during cross-examination and "directing the gesture at Ms. Pullins . . . to evoke hate and sensationalize an innocent pose."[4] Dkt. 570 at 8. Again, these are false statements, as shown in the Motion. *See, e.g.*, Motion (Dkt. 599) at 12, 21; Scolnick Supp. Decl., Ex. G. The Opposition does not explain the misrepresentations in the Mistrial Opposition other than to again suggest that the gesture was somehow racist, claiming "the optics of a white attorney for a

---

[3] Ms. Ranahan and Ms. Alvarez also reference for the first time vague conversations they had with two unnamed individuals in the courthouse eating area. Such unsubstantiated and self-serving claims are blatant hearsay and should be disregarded.

[4] The Opposition claims "Ms. Keller could have made her point without raising her own middle finger . . ." Opp. (Dkt. 601) at 9. The Harris Parties therefore appear to have no objection to MGA introducing the photographs of Ms. Pullins from her social media account at the retrial.

7

billionaire toy giant gesturing her middle finger to a young, black woman on the stand are clear." Opp. (Dkt. 601) at 9. Ms. Ranahan does not explain how that line of questioning suggested anything racially motivated or driven by racial animus, yet she falsely realleges that claim. As Ms. Keller informed the Court at the time, MGA sought to introduce Ms. Pullins' photographing herself making an obscene gesture in the courthouse just down the hall from the courtroom, and sharing it with her social media followers, to impeach her prior claims she was treating the proceedings and the Court respectfully. *See, e.g.*, Scolnick Supp. Decl., Ex. F (1/18/23 PM RT) at 37:4-6; *id*., Ex. G. The photograph was also essential evidence of Ms. Pullins' demeanor while testifying and her credibility. There was nothing "racial" about this questioning. That the Court sustained Ms. Westmoreland's objection to the questioning does not change that. Nor does it change the bad faith of Ms. Ranahan's accusations that Ms. Keller directed the obscene gesture at Ms. Pullins—instead of merely demonstrating the gesture Ms. Pullins herself had made one day earlier and asking her if she had made it—and did so out racism.[5]

### C. The Opposition Fails to Rebut Or Distinguish MGA's Authorities Showing Sanctions Are Appropriate Here

The Opposition suggests that no sanction can be issued absent a specific finding of bad faith, or conduct tantamount to bad faith. While Ms. Ranahan and her

---

[5] The Opposition also mentions that MGA attorney Chase Scolnick sought to introduce evidence to counter the Harris family's depiction of themselves in reality television show clips they played to the jury. *See* Opp. (Dkt. 601) at 9. Ms. Ranahan claims there was a racial motivation or insinuation in that request that simply does not exist. As Ms. Ranahan knows, MGA sought to exclude those clips from trial because they were irrelevant and misleading. After the Harris Parties played the clips over MGA's objection, MGA sought to introduce testimony to rebut the clips' misleading implication that the Harris family had a family-friendly public image. If the Harris Parties believe the clips' relevance extends only to "evidence of the OMG Girlz' trade dress, likeness, look, and name and as evidence of how the OMG Girlz appeared on the show" (Opp. at 10, n. 17), then the Harris Parties can simply seek to introduce still images from the videos at retrial, rather than the prejudicial and misleading clips.

8

firm's conduct certainly surpasses that threshold, the Ninth Circuit has clarified that bad faith is not the only instance in which a court can impose sanctions under its inherent authority. In *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001), the Ninth Circuit confirmed that "a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppression reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose."[6] This Court has discretion to impose sanctions under its inherent authority for "a full range of litigation abuses." *Id.*[7] And for the same reason, the Opposition's suggestion that MGA's Motion somehow violates the "American Rule" regarding payment of attorneys' fees (Opp. at 23) is without merit. Sanctions are not attorneys' fees. The Supreme Court and Ninth Circuit have repeatedly confirmed a district court may impose "fee-based sanctions." *See, e.g., Fink*, 239 F.3d at 992.

The Opposition also asserts that the cases cited in MGA's motion are "readily distinguishable." *See* Opp. (Dkt. 601) at 16 of 26. But the Opposition ignores the two authorities described in detail in MGA's moving papers – *Centeno v. City of Carlsbad*, 2021 WL 2779576, at *4 (S.D. Cal. July 2, 2021) and *Forte v. County of Merced*, 2014 WL 47455923, at *1 (E.D. Cal. Sept. 23, 2014). Both cases involved vitriolic personal attacks that justified sanctions. *See* Motion (Dkt. 599) at 17-18 of 24 (discussing both cases).

---

[6] The Opposition's citation to *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir. 2004) is misleading. The quoted portion from that opinion is actually a quote from a Third Circuit case describing the Supreme Court's opinion in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *See Miller*, 361 F.3d at 548. As noted by the Ninth Circuit in *Fink*, the *Chambers* court undoubtedly listed circumstances other than bad faith in which a court has imposed sanctions under its inherent authority, although the *Fink* court recognized that some later courts used the term "bad faith" as a catch-all to encompass the "broad range of conduct" that may be sanctionable. *Fink*, 239 F.3d at 992.

[7] As argued in the Motion, the Court also has authority to impose the sanctions requested here under 28 U.S.C. § 1927 and the local rules, as well as the ability to issue *sua sponte* an order to show cause why sanctions should not by levied under Rule 11. *See, e.g.*, Motion (Dkt. 599) at 15-16.

And even the Opposition's attempts to distinguish other cases cited by MGA are ineffectual. In *Valle v. Karagounis*, 2022 WL 17485644, at *4 (D.D.C. Dec. 7, 2022), the court found that plaintiffs' unsubstantiated personal attacks of racism against defendants and their counsel "demean the legal profession and constitute a gross abuse of the judicial process." *Id*. Recognizing it could impose Rule 11 sanctions *sua sponte* against an attorney, the court issued an order to show cause why the attorney's conduct did not violate Rule 11. *Id*. In *Pigford v. Veneman*, 215 F.R.D. 2, 3 (D.D.C. 2003), the court found the attorney's unsupported claims of racism were "a form of harassment, and are scandalous." *Id*. The court therefore granted the requested relief, struck the inappropriate filings, and admonished the attorney. Likewise, in *Coates v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989), the court found "[a]busive language toward opposing counsel has no place in documents filed with our courts" and "is one form of harassment prohibited by Rule 11." *Id*. And in *Conklin v. Warrington Township*, 2006 WL 2246415, at *1-2 (M.D. Pa. Aug 4, 2006), the court found its prior sanctions against an attorney did not deter improper conduct, necessitating a more severe sanction after the attorney filed submissions "accus[ing] the court of incompetence, deception, and racism." *Id.; see also Davis v. TRM Copy Centers, Corp*., 1988 WL 92921, at *1 (N.D. Ill. Aug. 16, 1988) (striking pleading and referring *pro se* plaintiff for sanctions after he made "empty accusations" of "racism and unethical conduct" which "are nothing but impertinent and scandalous"). These cases are uniform in holding that unfounded accusations of racism are reprehensible and sanctionable. Each case therefore supports MGA's request for sanctions against Ms. Ranahan and her firm for their continuing pattern of misconduct culminating in their baseless and vitriolic personal attacks against Ms. Keller.

### III. MS. RANAHAN AND HER FIRM'S PUBLIC COMMENTS WERE MADE IN BAD FAITH AND FOR THE IMPROPER PURPOSE OF REINFORCING THE ATTACKS ON MS. KELLER MADE THE SAME DAY

The same day that Ms. Ranahan filed the Mistrial Opposition, she also issued a media statement aimed to highlight and reinforce the unfounded accusations she made against Ms. Keller in her brief. The statement claimed that MGA and its attorneys aimed to "demean our clients" and engage in "intimidation and bullying tactics," which were "finally coming to light." *See, e.g.*, Motion (Dkt. 599) at 13-14; Opp. (Dkt. 601) at 12. Ms. Ranahan's attempts to defend her public statement utterly fail.

First, the timing of the statement reinfores that Ms. Ranahan's public comments alluded to the false allegations she made against Ms. Keller in the Mistrial Opposition. In her declaration, Ms. Ranahan acknowledges providing the statement in response to several media inquiries, and an e-mail exchange she attaches to her declaration shows the statement was given to at least one reporter approximately two hours after the Mistrial Opposition was filed. *Compare* Ranahan Decl. (Dkt. 601-18, 601-19), ¶ 7, Ex. A (showing e-mail with statement was sent to a reporter on January 25, 2023, at 7:14 p.m.) *with* Opp. (Dkt. 601) at 12 (stating the Mistrial Opposition was filed on January 25, 2023, at 5:10 p.m.).

Second, Ms. Ranahan attempts to distance herself from the public statement, claiming it was sent to the media by several members of the team. This is belied by Ms. Ranahan's own declaration. She acknowledges she participated in the statement's preparation and sent it to media members in response to their inquiries, and the articles attribute the statement to Ms. Ranahan. *See, e.g.*, Dkt. 599-4 at 4; Dkt. 599-5 at 4.

Third, Ms. Ranahan attempts to deflect attention from her media release by pointing to a statement issued by MGA. But MGA's statement—which was issued by the company, not by counsel—made no accusation against the Harris family (nor

did it even mention the Harris family or Counter-Claimants at all).  And California Rule of Professional Conduct 3.6 applies to attorneys, not parties.

Ms. Ranahan's statement was made in bad faith and for an improper purpose. She aimed to focus the public on her false accusations of racism, and steer the media attention away from her own misconduct, in a way that would improperly influence the jury pool and prejudice MGA.

### IV. THE OPPOSITION PROVIDES NO LEGITIMATE JUSTIFICATION FOR THE HARRIS PARTIES' FRIVOLOUS *EX PARTE* APPLICATION RE EMOTIONAL DAMAGES

Finally, the Opposition fails to justify the Harris Parties' *ex parte* application for reconsideration of the Court's order precluding evidence of emotional distress damages.  While the Harris Parties attempt to deflect blame by pointing to the *ex parte* applications filed by MGA earlier in this case, the situations could not be more different.

For example, MGA's *ex parte* application regarding the testimony of Breaunna Womack (Dkt. 536) was necessary and time-sensitive because the Harris Parties informed MGA for the first time on a Saturday during trial they intended to call Ms. Womack as a live witness—and as their first live witness once court resumed—after repeatedly insisting they would only call her via deposition (and causing MGA to incur time and expense to prepare counter-designations for her).  And the Court granted in part that application.  MGA's *ex parte* application regarding trial consolidation (Dkt. 496) was made after the Court *sua sponte* consolidated the case at the Final Status Conference.  And MGA's *ex parte* application regarding preclusion of emotional distress damages (Dkt. 500), which the Court granted, was made after the Harris Parties claimed for the first time at the Final Status Conference that they would seek emotional distress damages at trial.  These applications were necessary given the recency of the issues raised by them, and the inability to file them on a regularly noticed schedule because of the imminent start of trial.  And this Court already found that MGA's *ex parte* application seeking evidentiary and monetary

sanctions was procedurally appropriate and granted in part MGA's sanctions request. Dkt. 595.

Unlike the circumstances in which MGA sought *ex parte* relief, the Harris Parties' *ex parte* application for reconsideration of the order on emotional distress damages was made after the mistrial, before any new trial date had been set, and with no urgency or emergency circumstances justifying its filing, as the Court recognized at the February 2, 2023 status conference. *See* Dkt. 599-2 at 12. In addition to the improper filing, the Harris Parties had no legitimate basis for seeking reconsideration, as the motion merely restated the same arguments already rejected by the Court, with no change in the facts or law. Yet MGA was forced to incur considerable expense opposing the application because Ms. Ranahan's firm insisted on proceeding *ex parte*.

## V. CONCLUSION

The egregious misconduct of Ms. Ranahan and her firm have only continued since the Court sanctioned Ms. Ranahan. To ensure such misconduct does not persist, to compensate MGA for fees incurred solely because of Ms. Ranahan and her firm's wrongdoing, and to partially mitigate the prejudice to MGA and its counsel from that wrongdoing, MGA respectfully requests that the Court grant this motion and impose the requested sanctions.

In particular, MGA respectfully requests that the Court: (1) award $11,202.50 in fees to compensate MGA for the cost of having to prepare and file a reply brief regarding the motion for mistrial necessitated only by Ms. Ranahan's accusations in her opposition brief; (2) strike Counter-Claimants' opposition to the mistrial motion (Dkt. 570) or, at minimum, page 6, line 13 to page 7, line 12; (3) award $30,262.50 in fees to compensate MGA for the cost of having to prepare and file an opposition to Counter-Claimants' frivolous *ex parte* application on emotional distress damages; (4) award $34,020 in fees to compensate MGA for the cost of having to prepare and file this motion; (5) refer Ms. Ranahan to the Central District's Standing Committee

on Discipline; (6) advise Ms. Ranahan to publicly apologize to Ms. Keller for the accusations in the opposition to MGA's mistrial motion; (7) admonish Counter-Claimants and their counsel that any further misconduct will result in even more severe sanctions; and (8) impose any additional remedial sanction or action the Court deems necessary.

Dated: February 27, 2023

KELLER/ANDERLE LLP

By: _____

Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian, certifies that this brief contains 4,551 words, which complies with the word limit of L.R. 11-6.1

Dated: February 27, 2023

KELLER/ANDERLE LLP

By: _____
Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian