| | |
|---|---|
| 1 | KELLER / ANDERLE LLP |
| 2 | Jennifer L. Keller (SBN 84412)<br>jkeller@kelleranderle.com |
| 3 | Chase A. Scolnick (SBN 227631)<br>cscolnick@kelleranderle.com |
| 4 | Jay P. Barron (SBN 245654)<br>jbarron@kelleranderle.com |
| 5 | 18300 Von Karman Ave., Ste. 930<br>Irvine, California 92612 |
| 6 | Telephone: (949) 476-8700 |

| | | |
|---|---|---|
| 7 | | |
| 8 | UMBERG ZIPSER LLP<br>Mark A. Finkelstein (SBN 173851) | MGA ENTERTAINMENT, INC.<br>Elizabeth Lachman (SBN 261644) |
| 9 | mfinkelstein@umbergzipser.com<br>1920 Main Street, Suite 750 | ELachman@mgae.com<br>Laurence Cheng (SBN 306299) |
| 10 | Irvine, California 92614<br>Telephone: (949) 679-0052 | Laurence.cheng@mgae.com<br>9220 Winnetka Avenue |
| 11 | *Attorneys for Plaintiff and Counter-* | Chatsworth, California 91311<br>Telephone: (818) 894-2525 |
| 12 | *Defendant MGA Entertainment, Inc., and*<br>*Counter-Defendant Isaac Larian* | |

13
14

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 15 | MGA ENTERTAINMENT, INC., a<br>California corporation, | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: The Hon. James V. Selna |
| 16 | Plaintiff, | |
| 17 | vs. | **PLAINTIFF AND COUNTER-**<br>**DEFENDANTS' REPLY IN** |
| 18 | CLIFFORD "T.I." HARRIS, an | **SUPPORT OF RESPONSE TO**<br>**OSC AND OFFER OF PROOF AS** |
| 19 | individual; TAMEKA "TINY" HARRIS,<br>an individual; OMG GIRLZ LLC, a | **TO THE ADMISSIBILITY OF**<br>**CERTAIN EVIDENCE** |
| 20 | Delaware limited liability company; and<br>DOES 1 - 10 inclusive, | Complaint Filed: December 20, 2020 |
| 21 | Defendants, | Trial Date:        May 9, 2023 |
| 22 | | |
| 23 | GRAND HUSTLE, LLC, PRETTY<br>HUSTLE, LLC, and OMG GIRLZ LLC, | **[REDACTED VERSION]** |
| 24 | Counter-Claimants, | |
| 25 | vs. | |
| 26 | MGA ENTERTAINMENT, INC.,<br>ISAAC LARIAN and DOES 1 - 10, | |
| 27 | inclusive, | |
| 28 | Counter-Defendants. | |

# TABLE OF CONTENTS

I.   Introduction ..................................................................................................... 1

II.  Consistent With The Court's Directive, MGA Proffered A Designer Witness Who Indisputably Had Pre-Existing Knowledge Of Negative Facts About The Harrises. The Harris Parties' Disparagement Of MGA's Evidence And Its Significance Does Not And Cannot Change That It Is Relevant And Admissible ........................................................................................................ 3

III. The Opposition Misconstrues The Harris Parties' Own Allegations. They Allege The OMG Girlz Had A Brand Appropriate For Children's Dolls And That MGA Directly Copied The OMG Girlz. MGA Must Be Permitted To Rebut These Claims With The Proffered Evidence ........................................... 7

IV. The Proffered Evidence By MGA Does Not "Open The Door" To The Irrelevant Evidence Raised By The Harris Parties, Much Of Which This Court Already Excluded ............................................................................... 10

V.  Evidence of Mr. Harris' and Ms. Pullin's Criminal Histories ....................... 12

VI. Conclusion .................................................................................................... 13

i

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

## I. Introduction

Contrary to the Harris Parties' assertion, MGA does not seek to introduce evidence in the Offer of Proof to "slime" anyone.[1]  Instead, this evidence is essential to key issues of intent and willfulness, which directly pertain to elements of the Harris Parties' causes of action and claims for damages.

The Harris Parties seek tens of millions of dollars from MGA for alleged trade dress infringement and misappropriation of likeness.  The Harris Parties contend the OMG Girlz have a brand and image appropriate for a line of children's dolls, and that "all children could benefit from exposure to dolls resembling" them.  They acknowledge what image and popularity the OMG Girlz have are based on the group's close affiliation with Mr. and Mrs. Harris.  That affiliation allowed the group to gain its most significant public exposure from appearing on Mr. and Mrs. Harris's reality television show and having Mr. Harris appear in the group's most watched music video.  The Harris Parties seek to introduce evidence to support their trial narrative that the OMG Girlz had a girl-positive, family-friendly image.  And they claim MGA knew of the OMG Girlz and intentionally copied them to capitalize on the OMG Girlz's brand.

The Harris Parties cannot legitimately offer their one-sided, sanitized image to the jury without allowing MGA to present evidence contradicting their narrative.  MGA must be permitted to rebut the Harris Parties' claims by showing the OMG Girlz had a much more negative public brand and image than those they present now, and that MGA therefore would not have modeled children's dolls on them.

The Harris Parties' opposition also ignores that MGA has provided the very "predicate" requested by the Court.  MGA designer Lora Stephens knew of Mr. Harris's lyrics and other "bad act" evidence before she designed a doll and

---

[1] The Harris Parties reference a statement by the Court before trial.  The Court later clarified that "[w]ell, in some cases, slime can be relevant.  A horrific conviction may nevertheless be relevant.  Other conduct may be relevant."  *See* Scolnick Supp. Decl., Ex. K (1/18/23 PM RT) at 115-116.

collaborated on the design of other dolls at issue. Ms. Stephens will testify that neither she nor MGA would have risked the negative publicity and boycotting that might have followed had MGA had created dolls affiliated with individuals whose public images were incompatible with a line of children's dolls.

As a final salvo, the Harris Parties argue that if MGA is permitted to introduce the highly relevant evidence in the Offer of Proof, then they would seek to introduce various other unrelated evidence. But this threatened "parade of horribles" is a mirage. MGA's licensing deal ███████████████████ related to an entirely different MGA property, which is geared to a more mature audience. The alleged "scandals" with some of MGA's products only reinforce why MGA would not risk its brand by being associated with the OMG Girlz and the Harris family, known for their inappropriate music and allegations of criminal behavior. And the Harris Parties brazenly suggest that if MGA could introduce the evidence in the Offer of Proof, they would seek to introduce irrelevant accusations of infringement and cultural misappropriation evidence which the Court already has ruled on and which led to the prior mistrial. The Harris Parties create a false equivalency between MGA's proffered evidence—which directly relates to the Harris Parties' claims and the themes they seek to advance at trial—and the other purported evidence they threaten to introduce—which truly has no purpose other than to "slime" MGA.

MGA respectfully requests the Court accept MGA's Offer of Proof and allow it to present evidence at trial of (1) defendant Clifford "T.I." Harris' profane and misogynistic lyrics, (2) Zonnique Pullins' profane lyrics and social media posts, (3) Ms. Pullins' arrest for unlawful gun possession (4) Mr. Harris' criminal history, and (5) allegations of sexual misconduct against Mr. Harris and defendant Tameka "Tiny" Harris.

//

//

2

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

**II.  Consistent With The Court's Directive, MGA Proffered A Designer Witness Who Indisputably Had Pre-Existing Knowledge Of Negative Facts About The Harrises. The Harris Parties' Disparagement Of MGA's Evidence And Its Significance Does Not And Cannot Change That It Is Relevant And Admissible.**

During trial, the Court denied MGA's offer of proof about certain evidence, mostly social media videos of the Harris Parties' drug use. *See* Dkt. 527.  At that time, the Harris Parties' counsel, David Scheper, acknowledged that "there's some aspect of relevance to that" evidence offered by MGA, but argued it was too prejudicial. *See* Dkt. 608-2 at 3 (77:7-8).  The Court ultimately agreed.  In excluding a 2016 video showing marijuana use, the Court stated, "to the extent it's offered to support the theory that they never would have done business had they known, for example, that Mr. Harris did use marijuana in 2016, no one has come forward and said we knew about that conduct and we wouldn't have done business with him. To me that's the predicate for that type of evidence." *See* Dkt. 608-2 at 3; Dkt. 608-1 (Unredacted Opp.) at 8.  But after Mr. Scolnick foreshadowed potential testimony of a designer witness who knew about the Harris' bad acts, the Court stated it would evaluate such evidence when it was offered.  Dkt. 608-2 at 3 (79:4-13).

In the Opposition, the Harris Parties try to leverage the Court's comment about the narrow evidence before the Court at that time to suggest that all evidence in MGA's current Offer of Proof must be rejected.  ***But MGA has now satisfied the Court's predicate for admission by submitting a declaration from a designer witness with prior knowledge of the "bad acts" and music described in MGA's current Offer of Proof***.

MGA designer, Lora Stephens, designed one of the L.O.L. Surprise! O.M.G. dolls in the "Queens" set.  That "Queens" set lies at the heart of the Harris Parties' claims and was prominently featured in the Harris Parties' opening statement. *See, e.g.*, Scolnick Supp. Decl., Ex. J (1/18/23 AM RT) at 50:4-7 ("Queens is where we

3

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

began the presentations. Queens is where we end the side by side which again is a subset of eight out of 31 dolls.")

Ms. Stephens will testify she was aware of "the rap music of Clifford Harris," and his "words and conduct from seeing some episodes of his reality television shows, hearing his music, and seeing his music videos." Dkt. 600-11 (Stephens Decl.) at p. 2, ¶ 3.[2] She further will testify about the close association in her mind between the OMG Girlz and Mr. Harris, known by his stage name "T.I." *Id*., ¶ 4. As the designer of tot dolls and an L.O.L. Surprise! O.M.G. doll on which the Harris Parties' claims are based, Ms. Stephens will testify she "ha[s] not, and would not, base any design of the Tots and/or the L.O.L. Surprise! O.M.G. dolls on the OMG Girlz and their affiliates." *Id*.; *see also id*., ¶ 5 ("I can unequivocally state that neither MGA nor I would design a doll that would be directly or indirectly affiliated or associated with T.I. or the OMG Girlz."). As Ms. Stephens attests, that is "because T.I.'s music uses profanity, embraces illegal hard drug use, and, most importantly, is disrespectful and demeaning to women." *Id*., ¶ 5; *see also id*., ¶ 8. She has "personal knowledge of T.I.'s lyrics and . . . would not design, nor would [she] support MGA's design team submitting for approval, a doll based directly or indirectly on T.I. or his affiliated brands, which includes the OMG Girlz." *Id*., ¶ 9.

Ms. Stephens also learned that Mr. and Mrs. Harris were accused by numerous women of sexual assault and trafficking before she designed dolls, including the "Queens" line. *Id*., ¶ 5. She also will testify that when MGA created the "Queens" line, she knew about a controversy in which Mr. Harris forced his daughter to submit to a "virginity test" at her gynecologist appointment. *Id*., ¶ 6. That incident was featured on the Harris Parties' own reality television show and received widespread

---

[2]   The Opposition incorrectly claims Ms. Stephens' statements in her declaration about Mr. Harris' music stem primarily from her claim to "know about rap music" in general. *See* Dkt. 610-1 (Unredacted Opp.) at 14. But at ███████ and in her declaration, Ms. Stephens attested to hearing and being familiar specifically with *Mr. Harris's* music.

4

1  negative publicity. Dkt. 600 at 10.  Indeed, one of the Harris Parties' own witnesses,
2  Windellyn Osborne, testified ███████████████████████████████████████
3  ████████████████████████████████████████████████████████.  Scolnick Supp.
4  Decl., Ex. M (Osborne Depo.) at 100-101.

5        MGA's Offer of Proof more than satisfies the Court's requested predicate
6  showing that before designing at least some of the MGA dolls at issue, MGA's
7  designer (1) knew of the OMG Girlz and closely associated them with Mr. Harris, (2)
8  knew of Mr. Harris's offensive music and lyrics, including their use of offensive
9  language, glorification of hard drug use, and promotion of sexual violence and
10 disrespectful attitudes toward woman, (3) knew of the sexual assault and sex
11 trafficking allegations against Mr. and Mrs. Harris, (4) knew of the "virginity tests"
12 that Mr. Harris subjected his daughter to, and (5) would never design an L.O.L.
13 Surprise! O.M.G. doll based on the OMG Girlz because of this knowledge.[3]

14       The Harris Parties attempt to resist introduction of this evidence by attacking
15 it, claiming Ms. Stephens's testimony is not credible.  But their attacks on Ms.
16 Stephens ring hollow. The Harris Parties assert Ms. Stephens "expressed no concerns
17 about any criminal allegations or lyrics during her deposition."  Dkt. 610-1
18 (Unredacted Opp.) at 13.  But this is not surprising, since the Harris Parties *did not*
19 *ask any such questions at her deposition*.  The words "lyric" and "lyrics" appear
20 nowhere in Ms. Stephens' deposition transcript.  Scolnick Supp. Decl., ¶ 2.  Despite
21 the Harris Parties' attempt to cast Ms. Stephens as untruthful and to anoint themselves
22 the final arbiters of a witness's credibility, there is nothing inconsistent between Ms.
23 Stephens' declaration and her testimony at deposition.  The Harris Parties complain

---

[3] The Harris Parties' claims about Mr. Larian, Ms. Garcia, and Ms. Consorti not having any specific knowledge of the OMG Girlz or the Harris family (*see* Dkt. 610-1 at 11-12) is immaterial.  The Court has never found that *everyone* on MGA's management team needed to be aware of the "predicate" evidence.  Nor would such a requirement make any sense, as the dolls are created in the first instance by the designers.

5

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

that certain alleged omissions in Ms. Stephens' deposition testimony make her declaration not credible. But they did not even ask Ms. Stephens about the information they now claim was missing from her deposition testimony.

And Ms. Stephens *did* testify ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Scolnick Supp. Decl., Ex. N (Stephens Depo.) at 189:22-191:8. That is unsurprising given that the themes in Mr. Harris' music are not appropriate for children's toys, as detailed in MGA's Offer of Proof. Ms. Stephens was not asked about her personal "concerns" over such music or to evaluate whether it would be compatible with the dolls she was designed.

The Harris Parties also try to diminish Ms. Stephens' role, claiming she did not have ultimate authority or power over other designers' work. But, again, this misses the point. Ms. Stephens was the primary designer for a "Queens" doll that the Harris Parties allege was a copy of the OMG Girlz' trade dress. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See, e.g.*, Scolnick Supp. Decl. (Stephens Depo.) at 154:10-21, 160:1-5, 173:3-15, 176:5-13. As stated in her declaration, she would not support anyone on MGA's design team submitting for approval a doll based directly or indirectly on the OMG Girlz. *See* Dkt. 600-11 (Stephens Decl.) at ¶ 9. That Ms. Stephens does not have ultimate design authority over dolls for which she was not the primary designer is immaterial—she was involved in the collaborative design process and would have opposed any doll she perceived as potentially causing confusion with the OMG Girlz. Ms. Stephens' testimony about her preexisting knowledge of the Harrises is directly relevant and admissible. The Harris Parties are free to cross-examine Ms. Stephens at trial on any alleged inconsistencies in her testimony. But their pretrial attack on Ms. Stephens' credibility does not make her

6

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

testimony any less relevant or require that the jury be deprived of this probative evidence.

The Harris Parties' attacks on Ms. Stephens' credibility are designed to obscure that MGA has provided the predicate necessary for the lyrics and "bad acts" of which Ms. Stephens was aware before designing dolls at issue.

**III. The Opposition Misconstrues The Harris Parties' Own Allegations. They Allege The OMG Girlz Had A Brand Appropriate For Children's Dolls And That MGA Directly Copied The OMG Girlz. MGA Must Be Permitted To Rebut These Claims With The Proffered Evidence.**

As stated above, MGA has satisfied the necessary "predicate" for the proffered evidence, showing MGA and Ms. Stephens had pre-existing knowledge of Mr. Harris's music and lyrics (Category 1 in the Offer of Proof), Mr. Harris's criminal history and public glorification of drugs and violence (Category 4), and the allegations of the sexual assault and trafficking allegations against Mr. and Mrs. Harris (Category 5). But even absent any such predicate, this evidence and that of Ms. Pullins' lyrics and social media posts (Category 2) and of Ms. Pullins' arrest for gun possession (Category 3) is highly relevant and admissible to rebut the Harris Parties' claims.

The OMG Girlz do not appear on any mood board or other reference or "inspiration" material for any doll. But that has not stopped the Harris Parties from alleging MGA knew of and copied the OMG Girlz in designing the L.O.L. Surprise! O.M.G. dolls. In their operative Third Amended Counterclaims, the Harris Parties allege the "animated OMG Dolls copy the OMG Girlz' distinctive physical appearance, hair styles and hair colors, dress and mimic the OMG Girlz' released sound recordings." Dkt. 63 at 3 (¶5) & 14 (¶1). They further allege MGA's dolls were "*modelled* after [the OMG Girlz]" and that MGA "*intentionally* tried to trade on the OMG Girlz' likeness and brand." *Id*. at 6 (¶19) (emphases added). They allege MGA has "*knowingly* appropriate[ed], us[ed] and exploit[ed] the names and/or likeness of the OMG Girlz." *Id*. at 20 (¶41) (emphasis added).

7

1	The Harris Parties repeated these positions at trial. Their opening statement compared various images of the OMG Girlz and MGA's dolls, and asserted, "What your eyes are showing you is that there was copying." Dkt. 600-2 at 55. The Harris Parties further argued to the jury that MGA paid attention to the OMG Girlz, watched their reunion show closely, and then modeled dolls on the outfits the OMG Girlz wore during that show. *See* Dkt. 600 (Offer of Proof) at 3; Dkt. 600-2 at 115-116. Ms. Pullins testified that certain of MGA's dolls were a copy of her. Scolnick Supp. Decl., Ex. K (1/18/23 PM RT) at 111:7-11. Ms. Harris likewise testified that MGA knowingly stole the OMG Girlz' likeness. *Id*., Ex. L (1/19/23 PM RT) at 37:22-24.

The Harris Parties allege MGA willfully stole and copied the OMG Girlz' likeness because the OMG Girlz had an image appropriate for a line of children's dolls. The Third Amended Counterclaims allege the Harris Parties "believe[] that all children could benefit from exposure to dolls resembling the OMG Girlz and the positive image of girls of color they represented." Dkt. 63 at 5 (¶12) & 14 (¶1). Ms. Pullins repeated these claims at trial, asserting the OMG Girlz' message was "basically women getting together to do something positive . . ." Scolnick Supp. Decl, Ex. J (1/18/23 AM RT) at 95:19-24. The Harris Parties therefore affirmatively allege the OMG Girlz have a public brand and image appropriate for a line of children's dolls like the ones MGA created, and the Harris Parties made this a central theme for their case at trial. MGA's proffered evidence shows otherwise.

The Opposition also attacks MGA's proffered evidence as "untethered to the OMG Girlz brand or MGA's misappropriation and/or infringement of the same." Dkt. 610-1 (Unredacted Opp.) at 7. But that is simply not true. As MGA has shown, and as the Harris Parties acknowledged in their own opening presentation and trial testimony, the public brand and image of the OMG Girlz is inextricably intertwined with the Harris family. The OMG Girlz' biggest source of public exposure was through their appearance on the Harris family's reality television shows; indeed, that is where MGA designer Lora Stephens, and the Harris Parties' consumer witnesses,

8

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

learned of the OMG Girlz' existence. Concurrently with the OMG Girlz' appearances on those shows, Mr. Harris released music with offensive lyrics and sexual exploitation themes, as discussed in the Offer of Proof.

The Harris Parties claim that "individuals asserting their [trade dress] rights are under no duty to prove morality or sanctity of actions." Dkt. 610-1 (Unredacted Opp.) at 8. But that is not MGA's argument and ignores the point. The Harris Parties cannot unilaterally present a girl-positive, family-friendly image of themselves, claim their brand would be perfect for a line of children's dolls, and contend MGA stole their brand for its dolls—all while MGA is precluded from correcting the record and rebutting that theory with countervailing evidence. The Harris Parties have put their brand and image in controversy by the nature of their claims. MGA need not accept the misleading narrative the Harris Parties spin for the jury, and should be allowed to counter the Harris Parties' claims with the critical evidence in the Offer of Proof.

Besides impeaching and rebutting the Harris Parties' evidence, the proffered evidence undermines the issues of intentionality and willfulness, which are alleged throughout the Harris Parties' operative pleading and are factors in determining liability. An element of the Harris Parties' trade dress infringement claim is whether their trade dress has a secondary meaning. And a factor in determining whether trade dress has a secondary meaning is "copying," *i.e.*, "Whether the MGA Parties intentionally copied The OMG Girlz' claimed trade dress." Dkt. 491 (Proposed Jury Instructions) at 36 (MGA version) & 41 (Harris Parties' version). Likewise, another element of the Harris Parties' infringement claim is likelihood of confusion. And a factor for evaluating likelihood of confusion under the well-established *Sleekcraft* Test is "The MGA Parties' Intent." *Id*. at 46 (MGA version) & 49 (Harris Parties' version). If MGA is found to have intentionally and knowingly used the Harris Parties' claimed trade dress, then this factor "may strongly show an intent to derive benefit from the reputation of the Harris Parties' dress." *Id*. For the Harris Parties' misappropriation claim, they must show that "MGA ma[de] the use [of the Harris

9

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

Parties' likeness] for the purpose of exploiting or taking advantage of the OMG Girlz' reputation, prestige, social or commercial standing, or any public interest or other value attached to the OMG Girlz' name, likeness, or identity." *Id.* at 60 (joint). The Harris Parties also seek a jury finding that MGA intentionally infringed on their trade dress. *Id.* at 88 (Harris Parties' version).

Therefore, MGA's alleged intentional copying of the OMG Girlz is directly relevant to the Harris Parties' claims, as MGA's intent is a factor in determining the necessary elements for liability. The Harris Parties allege the OMG Girlz had a public image appropriate for a line of children's dolls, and they claim MGA intentionally copied them to capitalize on their brand and image without their consent. Yet they seek to hamstring MGA by precluding it from introducing evidence rebutting these claims. And if MGA were not permitted to introduce the proffered evidence, the Harris Parties should be precluded from suggesting or presenting any evidence that the OMG Girlz' image was suitable or appropriate for children or children's toys like the L.O.L. Surprise! O.M.G. line.

## IV. The Proffered Evidence By MGA Does Not "Open The Door" To The Irrelevant Evidence Raised By The Harris Parties, Much Of Which This Court Already Excluded

Faced with the undeniable relevance of the evidence in MGA's Offer of Proof, the Harris Parties resort to scare tactics, saying MGA's evidence will open the door to a panoply of other evidence. But the evidence the Harris Parties claim should be admissible is nothing like the evidence MGA seeks to introduce in its Offer of Proof.

First, the Harris Parties point to a single licensing agreement between ▮▮▮ ▮▮▮ and MGA, and maintain they must be able to explore this deal and ▮▮▮ ▮▮▮ "lifestyle, convictions, or controversies." Dkt. 610-1 (Unredacted Opp.) at 14-15. But MGA's doll ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

▮▮▮▮▮. The ▮▮▮▮ doll has nothing to do with the L.O.L. Surprise! line of dolls, or the L.O.L. Surprise! O.M.G. dolls on which the Harris Parties' claims are based. The ▮▮▮▮ doll is not marketed to the same age group as MGA's L.O.L. Surprise! Line of dolls. And unlike Ms. Stephens, who was aware of certain acts making the Harris family unsuitable to MGA's consumers, there is no evidence any MGA ▮▮▮▮ designers were aware of ▮▮▮▮.

Second, the Harris Parties claim MGA's evidence would require them to introduce evidence of various "scandals" with MGA's L.O.L. Surprise! line of dolls. They allege the images on the mood boards include profanity and images "far more mature than would be expected for a kids' brand." Dkt. 610-1 (Unredacted Opp.) at 15. But as the Harris Parties acknowledge, these images were only to generate a mood, and the "more mature" aspects of those inspiration images were not intended to make their way into the actual doll design.[4]

The other "scandal" raised by the Harris Parties concerns certain L.O.L. Surprise! tot dolls perceived to appear in lingerie or other inappropriate clothing when the dolls were dipped in water. But an association with the Harris Parties would be far more objectionable to MGA's consumers than a doll's apparently revealing style. And when the issue of the dolls' clothing when dipped in water came to light, MGA promptly issued a press release stating it was taking corrective measures to ensure "the essence of the brand is kept intact." Dkt. 610-1 at 16. As noted in the media articles the Harris Parties submitted, the controversy spurred calls for boycotts of MGA's L.O.L. Surprise! brand and resulted in negative publicity for MGA. The Harris Parties' argument inadvertently proves MGA's point here. MGA needed to be, and was, very careful about its L.O.L. Surprise! O.M.G. brand, and was sensitive

---

[4] The Harris Parties falsely claim that MGA "appears to make dolls modeled" after Beyonce. Dkt. 610-1 at 16-17 n. 6. While Beyonce appears on various mood boards, that is only inspiration material that would be used by any designer. The evidence is consistent that MGA does not have any L.O.L. Surprise! tot or big sister doll modeled after likeness of Beyonce.

11

to any associations the public could make between its dolls and those with a public image incompatible with children's dolls.

Third, the Harries Parties rehash claims they should be able to introduce evidence about Amina Mucciolo's unrelated allegations that MGA stole her likeness and falsely asserted MGA has a practice of exploiting Black creatives. But these issues were already addressed by the Court when it granted MGA's Motions *in Limine* Nos. 2 and 3 to exclude purported evidence of other claims of infringement and cultural misappropriation. The Harris Parties threaten that if MGA could introduce the evidence in Offer of Proof, the Harris Parties should be allowed to introduce the very type of irrelevant and prejudicial cultural misappropriation and exploitation evidence that led to the mistrial. But one has nothing to do with the other. The Court should not be pressured by the Harris Parties' tactics and should abide by its prior rulings to exclude that evidence.

## V. Evidence of Mr. Harris' and Ms. Pullin's Criminal Histories

Contrary to the Harris Parties' complaints, the evidence about past allegations of criminal behavior by Mr. Harris and Ms. Pullins are relevant and admissible. The Harris Parties' claims are premised on their public image, which they say was appropriate for a line of children's dolls. The allegations of criminal behavior against Mr. Harris and Ms. Pullins prove otherwise. MGA does not seek to introduce this evidence to attack any witness' character for truthfulness or any other prohibited purpose under FRE 404 or 608. Instead, MGA seeks to introduce this evidence to rebut elements of the substantive claims the Harris Parties must prove at trial. As stated in the Offer of Proof, whether the allegations are true or not is beside the point. That those closely associated with the OMG Girlz were publicly accused of drug, weapon, sexual assault, and sex trafficking allegations before MGA designed the dolls at issue is critical to MGA's ability to rebut the Harris Parties' claims it stole the OMG Girlz' trade dress and likeness. MGA would not have invited the boycotts and negative publicity which might have resulted if MGA had designed dolls

12

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

modeled after a music group associated with individuals accused of such heinous crimes.

## VI. Conclusion

MGA respectfully requests the Court rule that MGA may introduce the evidence in each of the five categories in its Offer of Proof. Alternatively, to the extent the Court rules that any aspect of the Offer of Proof may not be admissible, MGA respectfully requests that the Court do so without prejudice to MGA's raising the issue with the Court during trial and outside the presence of the jury if MGA has a good faith basis for believing circumstances warrant reconsideration.

Dated: March 9, 2023　　　　　　　　　　KELLER/ANDERLE LLP

By: _____

Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

13

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian, certifies that this brief contains 4,358 words, which complies with the word limit of L.R. 11-6.1

Dated: March 9, 2023       KELLER/ANDERLE LLP

                           By: _____
                               Chase A. Scolnick

                           Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

14

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF RESPONSE TO OSC AND OFFER OF PROOF AS TO THE ADMISSIBILITY OF CERTAIN EVIDENCE