1  KELLER / ANDERLE LLP
   Jennifer L. Keller (SBN 84412)
2  jkeller@kelleranderle.com
   Chase A. Scolnick (SBN 227631)
3  cscolnick@kelleranderle.com
   Jay P. Barron (SBN 245654)
4  jbarron@kelleranderle.com
   18300 Von Karman Avenue, Suite 930
5  Irvine, California  92612
   Telephone: (949) 476-8700
6
   UMBERG ZIPSER LLP                          MGA ENTERTAINMENT, INC.
7  Mark A. Finkelstein (SBN 173851)           Elizabeth Lachman (SBN 261644)
   mfinkelstein@umbergzipser.com              ELachman@mgae.com
8  1920 Main Street, Suite 750               9220 Winnetka Avenue
   Irvine, California  92614                  Chatsworth, California  91311
9  Telephone: (949) 679-0052                  Telephone:  (818) 894-2525

10 *Attorneys for Plaintiff and Counter-*
   *Defendant MGA Entertainment, Inc., and*
11 *Counter-Defendant Isaac Larian*

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14 MGA ENTERTAINMENT, INC., a            Case No. 2:20-cv-11548-JVS-AGR
   California corporation,                Assigned To: The Hon. James V. Selna
15
                 Plaintiff,              **PLAINTIFF AND COUNTER-**
16                                       **DEFENDANTS' TRIAL BRIEF RE**
   vs.                                   **HARRIS PARTIES' COMPLIANCE**
17                                       **WITH COURT'S PRIOR ORDERS**
   CLIFFORD "T.I." HARRIS, an            **DURING UPCOMING RETRIAL**
   individual; TAMEKA "TINY" HARRIS,
18 an individual; OMG GIRLZ LLC, a        Complaint Filed:  December 20, 2020
   Delaware limited liability company; and   Trial Date:   May 9, 2023
19 DOES 1 - 10 inclusive,

20                 Defendants,

21 GRAND HUSTLE, LLC, PRETTY
   HUSTLE, LLC, and OMG GIRLZ LLC,      **[REDACTED VERSION]**
22
                 Counter-Claimants,
23
   vs.
24
   MGA ENTERTAINMENT, INC.,
25 ISAAC LARIAN and DOES 1 - 10,
   inclusive,
26
                 Counter-Defendants.
27

28

I. **INTRODUCTION**

MGA respectfully submits this trial brief to ensure the retrial scheduled for May 9, 2023 proceeds in a fair and efficient manner consistent with the Court's pretrial orders regarding evidentiary issues.  At the last trial, besides their playing prohibited deposition testimony that led to the mistrial, the Harris Parties elicited testimony prohibited by the Court's pretrial rulings in some instances and came close to doing so in others.  Regardless whether these violations were deliberate, MGA seeks to ensure the Harris Parties do not elicit or reference any prohibited evidence at the retrial.  Further, given the Harris Parties have new lead counsel and new co-counsel for the retrial, MGA believes it prudent to highlight these issues now.

II. **THE HARRIS PARTIES MUST COMPLY WITH THE COURT'S PRIOR ORDERS DURING RETRIAL, AS WILL MGA**

The Court previously issued several orders which MGA expects all parties and witnesses to follow during the retrial.  Those include:[1]

      1. **Order on MGA's Motion *In Limine* No. 2 re Other Acts of Alleged Infringement or Misappropriation**

MGA's Motion *in Limine* No. 2 ("MIL No. 2") sought to preclude the Harris Parties "from introducing or referring to testimony or evidence related to other purported acts of trademark or trade dress infringement or appropriation of likeness supposedly committed by Counter-Defendants, including purported infringement by Counter-Defendants' other dolls, not at issue in this case, of the likeness of any celebrities or individuals other than the OMG Girlz."  *See, e.g.*, Dkt. No. 209 at 2.  MGA's motion sought to exclude this entire category of evidence, and it explicitly referenced the Harris Parties' allegation that MGA allegedly copied Black female influencer Amina Mucciolo, which the Court previously struck from the operative

---

[1]   In this trial brief, MGA does not provide an exhaustive list of the Court's prior orders.  MGA will comply with the Court's orders and expects the Harris Parties to do the same, even those not specifically described below.

1   complaint, and celebrities Victoria Monet and Billie Eilish.  *Id*. at 4-5.  MGA's
2   motion also specifically sought exclusion of allegations of trademark infringement or
3   misappropriation of likeness for dolls not at issue such as "Jade Hunter of the
4   Rainbow High doll line, Rainbow Raver of the L.O.L. Surprise! doll line, and Bratz
5   dolls."  *Id*. at 12.

6       The Court granted MGA's MIL No. 2 and precluded the purported evidence
7   and testimony articulated in MGA's motion.  *See* Dkt. No. 502.  In doing so, the
8   Court found that "mere allegations of other infringements or misappropriation do
9   no[t] support a material point with regard to alleged misconduct in this case."  *Id*. at
10  5.  Such evidence "reduces to inadmissible character evidence."  *Id*.  The Court also
11  rejected the Harris Parties' claims that MGA's alleged copying of third parties could
12  be admissible as habit evidence under FRE 406.  *Id*. at 6.

13      Despite this explicit ruling, the Harris Parties came dangerously close to
14  violating this order on numerous occasions during the first trial.

15      First, during the direct examination of Tameka Harris, the Harris Parties'
16  counsel, Erin Ranahan, elicited testimony that plainly violated the Court's order on
17  MIL No. 2.  After a question from Ms. Ranahan, Ms. Harris testified in part, "So I
18  started to research [MGA], and I found that we're not the only ones complaining
19  about this type of behavior."  *See* Scolnick Decl., Ex. C (1/19/23 PM RT) at 22.
20  MGA's counsel promptly objected.  The Court sustained that objection and ordered
21  counsel to sidebar.  *Id*.  At the sidebar, Ms. Ranahan claimed MIL No. 2 only
22  encompassed "habit" evidence and not other alleged bad acts of misappropriation.
23  *Id*. at 22-23.  During a later discussion outside the jury's presence, the Court rejected
24  that claim and clarified that in its order on MIL No. 2, "the Court excluded bad acts
25  evidence whether offered by way of 404(b) or as a matter of habit."  *Id*. at 64.  After
26  further argument from Ms. Ranahan, the Court again reiterated that "[t]he Court
27  clearly eliminated bad acts evidence. . . The Court was quite adamant about bad acts
28  evidence and that it be excluded."  *Id*. at 65.  Undeterred, the Harris Parties filed a

-2-

1   purported offer of proof regarding Ms. Harris' alleged knowledge of other

2   accusations as state of mind evidence. *See* Dkt. No. 531. The Court stated it was

3   inclined to exclude the purported "state of mind" evidence under FRE 403 even if it

4   was not specifically addressed in MIL No. 2. The Court never found the Harris

5   Parties could introduce Ms. Harris' offered testimony as "state of mind" evidence,

6   nor did it reconsider or deviate from its order on MIL No. 2.

7          Second, during the direct examination of alleged consumer witness, Windellyn

8   Osborne, the Harris Parties' counsel attempted to elicit testimony regarding the

9   reasons Ms. Osborne purchased none of MGA's dolls after seeing social media posts

10  from Ms. Harris. *See* Scolnick Decl., Ex. D (1/20/23 AM RT) at 121-122. Ms.

11  Osborne began to answer with a response that appeared to violate MIL No. 2 (as well

12  as MIL No. 3) before MGA's counsel promptly objected. *Id*. The Court directed the

13  Harris Parties' counsel to move on to another subject until the matter could be

14  addressed during the lunch break. *Id*. Later, after the jury was excused, the Court

15  addressed the issue and recognized that Ms. Osborne was "on the doorstep of getting

16  into a bad act." *Id*. at 123. The Harris Parties then made an offer of proof that Ms.

17  Osborne would testify that "she felt deceived into thinking the O.M.G. dolls were the

18  OMG Girlz. I believe she would say that she feels like this was an attempt to steal

19  from her community. I don't believe she would reference prior bad acts from MGA

20  specifically." *Id*. at 124. The Court ultimately prohibited Ms. Osborne from

21  testifying she believed MGA was attempting to steal from the black community. *Id*.

22  at 124-125.

23         The Harris Parties also made other references at trial that violate the Court's

24  order on MIL No. 2. During opening statement, the Harris Parties's counsel, David

25  Scheper, claimed MGA's founder, Isaac Larian, "doesn't think much of the U.S. legal

26  system." *See* Scolnick Decl., Ex. B (1/18/23 AM RT) at 53. That statement referred

27  to Mr. Larian's deposition testimony in response to Ms. Ranahan's extensive

28  questioning about ███████████████████████████████

1   ████████████████████████████████████.  *See, e.g.*, Scolnick Decl.,

2   Ex. A (Larian Depo.) at 48-61.  In particular, Mr. Larian explained h██████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ███████████████████████  *Id*. at 58-59.  While a mistrial was declared before Mr.

6   Larian testified at trial, MGA suspects the Harris Parties intended to pursue this same

7   line of questioning during his cross-examination, ███████████████████

8   █████████████████████████████████.  The Harris Parties'

9   attempt to introduce evidence of the infringement claims ███████████ against

10  MGA, the contentious legal battle that ensured, and its impact on Mr. Larian's view

11  of the U.S. legal system would violate MIL No. 2 and is wholly irrelevant and

12  prejudicial.  To the extent the Harris Parties attempt to reference or introduce such

13  purported evidence in their opening statement or in any witness examination, the

14  Harris Parties should raise the issue with the Court before doing so, as MGA believes

15  such matters would violate the Court's order.

16      Relatedly, even after the mistrial, the Harris Parties have made statements in

17  their briefs that suggest an intention to make arguments during retrial that violate

18  MIL No. 2.  In recent briefing, the Harris Parties falsely claimed that "MGA appears

19  to make dolls modeled after [Beyonce]."  *See* Dkt. No. 610-1 at 16-17 n. 6.  Although

20  MGA's designers employ "mood boards" that may show images of celebrities in

21  generating a mood or feel for a doll—as is typical throughout the industry—any claim

22  that MGA misappropriates Beyonce's likeness not only is false but would plainly

23  violate MIL No. 2.  In that same brief, the Harris Parties also suggest they should be

24  permitted to introduce evidence related to Amina Mucciolo/Rainbow Raver even

25  though such evidence was specifically addressed in MIL No. 2 and excluded by the

26  Court's order.  *See id.* at 16-17.

27

28

1

2

### 2.    Order on MGA's Motion *in Limine* No. 3 re Claims of Cultural Misappropriation

3       The Court granted MGA's Motion *in Limine* No. 3 ("MIL No. 3") that sought

4  to exclude any alleged evidence or testimony about cultural appropriation, which was

5  consistent with the Court's prior order striking portions of the Harris Parties' First

6  Amended Counterclaims with such statements.  Dkt. No. 502 at 6-7.  In its order on

7  MIL No. 3, the Court excluded "evidence that expressly goes to cultural appropriation

8  or racism" and warned that "[v]eiled, calculating remarks are no less objectionable

9  than the attribution of outright racist statements.  If there is any doubt that specific

10 inquiries will run afoul of the Court's rulings, counsel shall raise the issue in advance

11 outside the presence of the jury." *Id*. at 7.

12      At the first trial, the Harris Parties played deposition testimony from alleged

13 consumer witness Moniece Campbell that violated the Court's order on MIL No. 3.

14 The Court granted MGA's resulting motion for mistrial.  In doing so, the Court stated

15 it believed race was the most inflammatory issue in the case, which contributed to the

16 conclusion the prejudice from Ms. Campbell's testimony could not be cured.  *See,

17 e.g.*, Scolnick Decl., Ex. E (1/25/23 AM RT) at 15-16.

18      Even before Ms. Campbell's testimony, the Harris Parties had come close to

19 violating the Court's order on MIL No. 3, including in the questioning of Ms.

20 Osborne described above.  And even after the Court granted the mistrial motion and

21 dismissed the jury, the Harris Parties filed an opposition claiming race cannot be

22 "eradicated" from the case and made inflammatory accusations of racism against

23 MGA's lead counsel, for which MGA filed a motion for further sanctions currently

24 pending with the Court.  *See, e.g*., Dkt. Nos. 570, 599, 612.

25      MGA hopes the same violations of the Court's orders do not plague the retrial

26 and expect the Harris Parties' new lead counsel and new co-counsel to be especially

27 mindful of complying with the Court's Order on MIL No. 3.

28

### 3.   Order Precluding Evidence or Testimony Regarding Alleged Emotional Distress

Before trial, the Court issued an order precluding the Harris Parties from seeking, or presenting evidence related to, emotional distress damages. *See* Dkt. No. 521.  As stated in MGA's brief on the issue, the Harris Parties had failed to plead or disclose any emotional damage claim at all; instead, the Harris Parties *first* mentioned a claim for emotional distress damages at the Final Status Conference in early January 2023. *See* Dkt. No. 500.  Nor would any emotional distress claim even be proper given Counter-Claimants are entities and any emotional distress claims are personal and non-assignable under controlling law. *See id.*; *see also* Dkt. No. 585.

Following the mistrial, the Harris Parties filed an *ex parte* application seeking reconsideration of that ruling, which MGA opposed. *See* Dkt. Nos. 577, 585.  The Harris Parties argued they should be permitted to present evidence of their purported "feelings of embarrassment, frustration, and powerlessness, including from unwillingly being associated in the public eye with MGA's dolls." Dkt. No. 577 at 8.  The Court denied that application on February 2, 2023. *See* Dkt. No. 590.  At the hearing, the Court stated it denied the motion as procedurally improper but that were it to consider the merits of the application, it "would likely deny it on the merits, because I don't believe in a passing reading that it really provides anything new and doesn't come with any of the requirements of Rule 7-18 or Federal Rule of Civil Procedure Rule 59." *See e.g.*, Scolnick Decl., Ex. F (2/2/23 RT) at 11-12.  The Harris Parties have not refiled their reconsideration motion on regular notice.

Consistent with the Court's repeated orders, the Harris Parties are prohibited at retrial from introducing any testimony or evidence about any alleged "emotional harm suffered by the members of the OMG Girlz" or other Harris Parties, such as their claimed feelings of embarrassment, frustration, or powerlessness. *See* Dkt. No. 577 at 4, 8; Dkt. Nos. 521, 585.

**4.    Order    on    MGA's    Motion    *in    Limine*    No.    4    re Abandoned/Undisclosed Damages Theories**

Before the first trial, MGA's Motion *in Limine* No. 4 ("MIL No. 4") sought to preclude the Harris Parties from presenting evidence or pursuing any damages theory at trial which was not adequately disclosed.  The Court granted that motion, noting that the Harris Parties' expert's report only presented a claim for disgorgement.  Dkt. No. 502 at 8-9.  The Court "exclude[d] all other damages theories, including loss opportunities and direct lost profits calculation or the Harris Parties's damages.  It is too late in the day to embark on other paths." *Id.*

Since the mistrial, the parties' experts have received updated financial figures and will be updating their calculations as a result.  But these minor updates still apply only to the Harris Parties' disgorgement theory, and the Court's order on MIL No. 4 remains in full force and effect.

**5.    Order re Statements Made by Third-Parties on Social Media**

In opposition to MGA's summary judgment motion, the Harris Parties submitted declarations from Tameka Harris and Zonnique Pullins that described inadmissible statements made on their social media webpages by third-parties and included images of those social media comments. *See, e.g.*, Dkt. No. 169 at 11 (¶32); Dkt. No. 171 at 25-27 (¶57); Dkt. Nos. 169-9, 171-6.  MGA objected to these statements on several grounds, including that they were inadmissible hearsay. *See, e.g.*, Dkt. No. 271 at 14-17.  In its order partially granting MGA's summary judgment motion, the Court sustained these objections and found the commenters' statements to be inadmissible. *See* Dkt. No. 323 at 7-8.

In particular, Ms. Harris' and Ms. Pullins' declarations described and included statements they received in response to their social media posts soliciting supportive opinions to use in this litigation on the perceived similarities between images of the OMG Girlz and MGA's L.O.L. Surprise! O.M.G. dolls. *Id.*  Ms. Harris and Ms. Pullins claimed they received various responses in which alleged unidentified third-

party commenters "expressed that they believed the dolls to be similar, or that the commenters had purchased the Dolls believing they were affiliated with the OMG Girlz." *Id.* at 8.  The declarations also included exhibits showing images of the social media comments.  *Id.*

The Court found these statements constituted inadmissible hearsay because they were being offered for the truth of the matter asserted, "i.e., that the commenters believed the OMG Dolls look like the OMG Girlz or that the commenters believed the two entities were affiliated."  *Id.*  And while the Court stated a small number of the posts could fall within a "state of mind" exception, the Court found that even those posts were inadmissible because they lacked authentication.  *Id.*  The Harris Parties were unable to demonstrate that the comments even were made by real people. *Id.*  Nor did the Harris Parties argue that any of the third-party commenters would testify at trial (at least as to all comments other than those made by the few alleged consumer witnesses who have since been deposed).  *Id.* at 8 & n. 7.  The Court therefore found the statements by Ms. Harris and Ms. Pullins, and the accompanying images of the social media posts, were inadmissible.  *Id.* at 7-9.

Despite this evidentiary finding, the Harris Parties repeatedly attempted to introduce this hearsay evidence from alleged online commenters, including after the Court sustained MGA's multiple trial objections.  *See, e.g.*, Scolnick Decl., Ex. B (1/18/23 AM RT) at 23:17-25:18, 32:4-33:6.  The Court again ruled that such materials are inadmissible.  *Id.*

During retrial, MGA expects the Harris Parties to comply with these prior evidentiary rulings and refrain from attempting to offer any testimony or documents about social media comments or surveys for any purpose.

## III.  CONCLUSION

MGA respectfully requests that the Harris Parties ensure their compliance with the Court's prior orders, including those described above.  MGA will do the same.

1

Dated: April 28, 2023                          KELLER/ANDERLE LLP

2                                   By:   _____

3                                         Chase A. Scolnick

4                                         Attorneys for Plaintiff and Counter-
                                          Defendant MGA Entertainment, Inc., and
5                                         Counter-Defendant Isaac Larian

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-