| | |
|---|---|
| Erin R. Ranahan (SBN: 235286)<br>eranahan@winston.com<br>Cesie Alvarez (*pro hac vice*)<br>calvarez@winston.com<br>Jiepu (Bobby) Li (SBN: 342224)<br>bli@winston.com<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071-1543<br>Telephone:  (213) 615-1700 | John R. Keville (*pro hac vice*)<br>jkeville@sheppardmullin.com<br>Chante B. Westmoreland (*pro hac vice*)<br>cwestmoreland@sheppardmullin.com<br>SHEPPARD MULLIN RICHTER &<br>HAMPTON LLP<br>700 Louisiana Street, Suite 2750<br>Houston, TX 77002<br>Telephone: 713-431-7100 |

*Attorneys for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and
*Counter-Claimants* GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | **Case No.  2:20-cv-11548-JVS-AGR**<br><br>**DEFENDANTS' / COUNTERCLAIMANTS' BRIEF IN RESPONSE TO PLAINTIFF/COUNTER-DEFENDANTS' TRIAL BRIEF** |

## I. INTRODUCTION

MGA's "trial brief" has no procedural basis and seeks no relief from the Court. The pretext for filing this brief is to "highlight" certain issues for the OMG Girlz' current counsel and ask that they follow the Court's orders. Neither were necessary. In addition to serving no purpose, MGA's brief misrepresents the Court's limine rulings, preemptively argues evidentiary issues that will be resolved at trial, and denigrates the OMG Girlz counsel by implying they would intentionally violate a Court order. None of those are a proper reason to take up this Court's time with a "trial brief."

Limine rulings ensure certain issues are raised with the Court for a final ruling before the jury hears them. They are not final rulings on admissibility. Testimony and other arguments at trial can open the door to evidence that may have otherwise been excluded. The OMG Girlz counsel will of course comply with the Court's limine rulings and, to the extent counsel believes certain evidence addressed in those rulings becomes admissible, will raise it with the Court out of the presence of the jury. But MGA's filing is an effort to preemptively argue those issues before they are even ripe, or in some cases to expand or amend the limine rulings. MGA's arguments and self-serving misrepresentation of the limine rulings should be ignored.

## II. THE OMG GIRLZ WILL COMPLY WITH THE COURT'S LIMINE RULINGS

### 1. The OMG Girlz Will Not Submit Evidence About MGA's Prior History of Copying and Infringement Without First Approaching the Court

MGA's first issue is the Court's limine ruling on MGA's prior bad acts. The OMG Girlz will of course follow the Court's order on those issues. The OMG Girlz will therefore not seek to introduce "mere allegations of other infringements or misappropriation" made against MGA without first raising the issue outside the jury's presence. Dkt. 502 at 5. The OMG Girlz will also not introduce allegations by third parties of MGA copying to try and prove a habit, without first raising the issue with the

1

Court. *Id.* at 6.[1]

The problem with MGA's filing—and part of why it necessitates a response despite seeking no relief and serving no proper purpose—is that MGA is attempting to alter the Court's limine rulings. One of MGA's examples is testimony from Ms. Osborne that the Court felt was close to getting into a bad act. As MGA notes, the anticipated testimony was that "she felt deceived into thinking the O.M.G. dolls were the OMG Girlz" and that she felt it was "an attempt to steal from her community." Dkt. 638 at 3. The Court ruled the cultural appropriation statement was improper, and pursuant to other limine rulings the OMG Girlz will of course not offer such testimony without first approaching the Court. But the first portion of her anticipated answer relates only to Ms. Osborne's belief that MGA deceived her into purchasing the dolls, which is directly relevant to the likelihood of confusion and not objectionable. MGA's conflation of the two is misplaced, and could be misconstrued at trial to form an improper objection or allegation of a limine violation.

MGA's next attempt to broaden the limine is to belatedly take issue with Mr. Larian's testimony that he does not think much of the U.S. legal system. In an effort to contort this into a "bad act," MGA injects its own explanation for the statement, including discussing a case that was not mentioned in opening. But Mr. Larian's testimony in this case is not a "bad act." To be clear, the OMG Girlz will not "attempt to introduce evidence of the infringement claims made by Mattel" against MGA without first approaching the Court. But Mr. Larian's testimony, like the public statements of any witness, is fair game for impeachment. The OMG Girlz do not need to seek pre-approval to impeach a witness on their prior statements, and do not understand the Court's limine ruling concerning allegations against MGA to contain any such general requirement. Rather, the OMG Girlz must, and will, approach the Court on issues within the limine rulings—"other acts of infringement or misappropriation" alleged against

---

[1] A portion of MGA's brief takes issue with the OMG Girlz' counsel submitting an offer of proof for excluded evidence. Dkt. 638 at 2. It is not clear why MGA believes this standard procedure is improper.

MGA. Dkt. 502 at 3.

MGA's last example faults the OMG Girlz for mentioning the obvious fact that MGA based a doll on Beyonce. But MGA concedes that it uses celebrities as references for its dolls, MGA just prefers the term "mood board" to describe that process. But most importantly, MGA's example flies in the face of the Court's in limine order, which states: "Obviously, if the Harris Parties have evidence of a source for the MGA dolls, such evidence is admissible." Dkt. 502 at 5. The Court then noted that "the Harris Parties outline such evidence in their opposition," thus indicating such evidence is admissible. The evidence on those pages is MGA's own documents showing that it bases dolls on celebrities, including specifically Beyonce. Per the Court's ruling this "source" evidence is admissible, unlike allegations of infringement or copying that other creators have made against MGA, which is subject to the limine.

### 2. The OMG Girlz Do Not Intend to Elicit Evidence of MGA's Cultural Appropriation But Will First Approach the Court If The Circumstances Change

In its second issue, MGA implies that the OMG Girlz may violate the Court's limine ruling on cultural appropriation. MGA is attempting to rehash the issue and denigrate the OMG Girlz' counsel, despite the Court finding no ill intent and recognizing that there were "shortcomings" from everyone, including MGA who failed to properly object to the testimony in question. 1.25.23 Tr. 28:1–5. Putting aside the impropriety of MGA's filing, the OMG Girlz' counsel want to ensure the Court that they have no intent to introduce evidence on cultural appropriation that would violate the limine rulings and have taken steps to ensure no such violation occurs. Should something change due to comments or evidence from MGA, or should there be a close question, the OMG Girlz will "raise the issue in advance outside the presence of the jury" as the Court noted. Dkt. 502 at 6.

### 3. MGA Cannot Exclude Emotion From The Case

MGA's third argument is that because the Court overruled its prior ruling, that emotional damages could be sought, the OMG Girlz should be precluded from testifying about "their claimed feelings of embarrassment, frustration, or powerlessness." Dkt. 638 at 6. The OMG Girlz do not understand the Court's ruling to preclude any mention of witnesses' personal genuine emotions and reactions to having seen MGA's infringing dolls, as that is plainly relevant to the motive for the lawsuit which MGA has repeatedly called into question. Indeed, MGA itself opened the door to such testimony by falsely claiming that the OMG Girlz "fabricated" allegations to "shakedown" MGA and "perpetrate their grandest hustle yet." 1.18.23 Tr. 58:16–20, 59:23–25, 89:2–5. The OMG Girlz witnesses' emotions surrounding the lawsuit and their likenesses being used in the OMG dolls is relevant to rebut the nefarious intent that MGA has ascribed to them, and is also relevant to rebut several defenses and for other equitable considerations.

### 4. There Is No Basis For Any Further Ruling On Undisclosed Damages Theories

MGA's fourth request is that the OMG Girlz not use the newly produced calculations to argue any actual damages theories such as lost opportunities. The OMG Girlz have no intention of using the new calculations to support any new damages theory.

### 5. MGA's Last Argument Has No Basis

MGA's final issue is nothing more than a premature evidentiary argument. MGA doesn't assert that the OMG Girlz violated any motion in limine in the prior trial because there was none. Instead, MGA implies that seeking to introduce evidence at trial was improper because the Court previously found it inadmissible on summary judgment. MGA summarizes the Court's ruling, calling it an "evidentiary finding," but omitting that the Court was only ruling on admissibility "***for purposes of this [summary***

*judgment] motion*." Dkt. 326 at 9 (emphasis added). The OMG Girlz do not understand that to have been a final ruling that forever excluded the evidence, nor did the Court address it that way at trial. The Court's reasoning for its summary judgment ruling is important and underscores that point. The Court found several of the comments could overcome hearsay objections under the "state of mind" exception, but that there was not a basis to authenticate the commenters as real humans. *Id.* at 8 ("Harris cannot authenticate the comments because she cannot even demonstrate that these commenters are real people."). If the OMG Girlz can remedy that issue and lay the foundation at trial, however, then MGA has no valid objection.

The OMG Girlz believe they can meet the authentication burden at trial, which is when the Court should take up the issue. To meet the standard for authenticity, as set forth in the case cited by the Court in its ruling, the OMG Girlz must proffer "enough evidence such that the jury could reasonably find" them authentic. *United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016). In *Browne*, "the Third Circuit held that simply providing a certification from Facebook does not self-authenticate the ownership of the records." *United States v. Lamm*, 5 F.4th 942, 947 (8th Cir. 2021). When direct authenticating is not available, the party seeking admission can "provide additional extrinsic evidence—which can be circumstantial—to authenticate evidence and establish authorship." *Id.* (citing Brown 834 F.3d at 412-415). In *Browne*, it was also important that the government tie the social media accounts to a specific individual because "the relevance of the Facebook records hinges on the fact of authorship," as they were communications between the accused criminal and his victims. *Id.* at 405–406, 410. The relevance here is slightly different because it is not important that any specific individual be tied to the comments. It only matters that *someone* was confused by MGA's infringement. *See Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993) ("Consumer perceptions are relevant in determining whether a non-inherently distinctive mark has acquired secondary meaning and should therefore be treated as a strong mark."). Here, as the Court put it, the authentication threshold is

whether there is sufficient basis for a factfinder to conclude the comments came from "real people." Dkt. 326 at 8.

Per *Browne*, this can be shown "through a wide range of evidence," including "many forms of circumstantial evidence." *Browne*, 834 F.3d at 412–13 (emphasizing that "conclusive proof of authenticity is not required and that the jury, not the court, is the ultimate arbiter" of whether an item of evidence is authentic). For example, the OMG Girlz could show the comments come from a human if a witnesses testifies they communicated with the commenter after connecting through Instagram's direct messages, or that they obtained information from these accounts that contained corroborating evidence of humanity, or offer evidence of technical procedures used by the platform to verify that account holders are real people and not bots. *See United States v. Barber*, 937 F.3d 965, 970–71 (7th Cir. 2019) ("This court has relied on evidence such as the presence of a nickname, date of birth, address, email address, and photos on someone's Facebook page as circumstantial evidence that a page might belong to that person."); *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 625–26 (D. Ariz. 2020) ("[C]ircumstantial evidence can authenticate the content of a Facebook post where a document's contents, in conjunction with other circumstances, reflect distinctive characteristics.") (citing *Browne*).

Additionally, while the OMG Girlz can provide evidence such that the jury can reasonably conclude comments came from real humans, trial courts have admitted this type of evidence without such a showing. *See e.g., Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993) (explaining that the trial court admitted letter envelopes from non-testifying consumers over authentication objection as evidence of confusion, but not addressing the issue substantively on appeal). In *Eschert v. City of Charlotte*, the trial court admitted screenshots of Facebook posts, finding they were properly authenticated when the witness testified he took some of the screenshots, that they were publicly available, and that they showed the date and time. 2017 WL 3633275, at *6 (W.D.N.C. Aug. 23, 2017). Because the witness "testified as to the process he

performed to download the screenshots, and there did not appear to be any procedural defects in his process, the Court concluded at trial that Plaintiff presented a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* Any questions as to whether the individual was a similarly-situated employee—an issue not present here—or whether the declarant actually posted the comments "were arguments that Defendant could make on cross-examination," since it is "up to the jury thereafter to determine the weight to give to the evidence." *Id.*

Like many trial evidentiary issues, these are typically addressed at trial, when the Court has the benefit of hearing and seeing the evidence in context. Either way, MGA's premature attempt to preemptively argue for exclusion of evidence, without requesting any actual relief from the Court, is not the appropriate way to address the issue.

### III. CONCLUSION

For the foregoing reasons, the OMG Girlz request that MGA's unnecessary and improper brief be ignored.

Dated: May 3, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/ *John R. Keville*
John R. Keville

*Attorney for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and *Counter-Claimants* GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC