KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Avenue, Suite 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
Laurence Cheng (SBN 306299)
Laurence.cheng@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Cesie Alvarez (*pro hac vice*)
calvarez@winston.com
Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:    (213) 615-1700

John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: 713-431-7100

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants*
*GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>                    Defendants, | Case No. 2:20-cv-11548-JVS-AGR<br><br>Assigned To: Hon James V. Selna<br><br>**JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Trial Date:   May 9, 2023 |

1  GRAND HUSTLE, LLC, PRETTY
   HUSTLE, LLC, and OMG GIRLZ LLC,

2              Counter-Claimants,

3  vs.

4  MGA ENTERTAINMENT, INC.,
   ISAAC LARIAN and DOES 1 - 10,

5  inclusive,

6              Counter-Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS

**Joint Statement by the Parties:**

In an effort to comply with the Court's Pre-Trial Order, the Parties have jointly proposed a number of jury instructions, with citations to authority, which may overlap with the Court's own exemplary instructions. The Parties agree to the Court's Initial Instructions 1-15, and for the Court's convenience offer the following chart matching the Court's instructions with the Parties' joint proposed instructions.

| **Parties Jointly Proposed Instruction** | **Court's Instructions** |
|---|---|
| 1 Burden of Proof | 3 |
| 3 What is Evidence | 4 |
| 4 What is not Evidence | 5 & 7 |
| 6 Direct and Circumstantial | 6 |
| 7 Ruling on objections | 8 |
| 8 Credibility of Witnesses | 10 |
| 9 Conduct of the Jury | 11 |
| 11 Taking Notes | 12 & 13 |
| 17 Deposition in Lieu of Live Testimony | 9 |

-1-

## <u>JURY INSTRUCTION NO. 1 (Joint)</u>

[Burden of Proof—Preponderance of the Evidence]

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source:** Instruction 1.6 [Burden of Proof – Preponderance of the Evidence] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

## <u>JURY INSTRUCTION NO. 2 (Joint)</u>

[Two or More Parties—Different Legal Rights]

You should decide the case as to each [plaintiff] [defendant] [party] separately. Unless otherwise stated, the instructions apply to all parties.

**Source:** Instruction 1.8 [Two or More Parties—Different Legal Rights] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 3 (Joint)</u>

[What Is Evidence]

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I [may instruct] [have instructed] you to accept as proved.

**Source:** Instruction 1.9 [What is Evidence] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

## JURY INSTRUCTION NO. 4 (Joint)

[What Is Not Evidence]


In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)   Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)   Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Source:** Instruction 1.10 [What Is Not Evidence] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## **JURY INSTRUCTION NO. 5 (Joint)**

[Evidence for Limited Purpose]

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.]

**Source:** Instruction 1.11 [Evidence for Limited Purpose] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

JOINT PROPOSED JURY INSTRUCTIONS

## **JURY INSTRUCTION NO. 6 (Joint)**

[Direct and Circumstantial Evidence]


Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Source:** Instruction 1.12 [Direct and Circumstantial Evidence] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 7 (Joint)

[Ruling on Objections]

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Source:** Instruction 1.13 [Ruling on Objections] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

## JURY INSTRUCTION NO. 8A (Joint)

### [Credibility of Witnesses]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)   the opportunity and ability of the witness to see or hear or know the things testified to;

(2)   the witness's memory;

(3)   the witness's manner while testifying;

(4)   the witness's interest in the outcome of the case, if any;

(5)   the witness's bias or prejudice, if any;

(6)   whether other evidence contradicted the witness's testimony;

(7)   the reasonableness of the witness's testimony in light of all the evidence; and

(8)   any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

9

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Source:** Instruction 1.14 [Credibility of Witnesses] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 9 (Joint)

### [Conduct of the Jury]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider returning a verdict: Do not read, watch or listen to any news or media

accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**Source:** Instruction 1.15 [Conduct of the Jury] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## **JURY INSTRUCTION NO. 10 (Joint)**

[Publicity During Trial]


If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.


**Source:** Instruction 1.16 [Publicity During Trial] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 11 (Joint)</u>

[Taking Notes]


If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.


**Source:** Instruction 1.18 [Taking Notes] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 12 (Joint)

### [Questions to Witnesses by Jurors]

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses.  If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

**Source:** Instruction 1.19 [Questions to Witnesses by Jurors] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 13 (Joint)

[Bench Conferences and Recesses]

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source:** Instruction 1.20 [Bench Conferences and Recesses] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 14 (Joint)

[Cautionary Instructions]

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

If you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.

**Source:** Instruction 2.0 [Cautionary Instructions] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 15 (Joint)</u>

[Stipulations of Fact]

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

**Source:** Instruction 2.2 [Stipulations of Fact] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

# JURY INSTRUCTION NO. 16 (Joint)

## [Judicial Notice]

      The court has decided to accept as proved the fact that [state fact]. You must accept this fact as true.

**Source:** Instruction 2.3 [Judicial Notice] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 17 (Joint)

[Deposition in Lieu of Live Testimony]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Source:** Instruction 2.4 [Deposition in Lieu of Live Testimony] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>JURY INSTRUCTION NO. 18 (Joint)</u>

[Impeachment Evidence—Witness]

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Source:** Instruction 2.9 [Impeachment Evidence—Witness] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 19 (Joint)</u>

[Use of Interrogatories]


Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.


**Source:** Instruction 2.11 [Use of Interrogatories] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 20 (Joint)</u>

[Expert Opinion]


You [have heard] [are about to hear] testimony from [name] who [testified] [will testify] to opinions and the reasons for [his] [her] opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.


**Source:** Instruction 2.13 [Expert Opinion] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 21 (Joint)

[Evidence in Electronic Format]

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside"

website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

**Source:** Instruction 2.16 [Evidence in Electronic Format] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## <u>JURY INSTRUCTION NO. 22 (Joint)</u>

[Definition—Trade Dress (15 U.S.C. § 1125(a))]

Trade dress is the non-functional physical detail and design of a product or its packaging, which identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A person who uses the trade dress of another may be liable for damages.

**Source:** Instruction 15.3 [Definition—Trade Dress (15 U.S.C. § 1125(a))] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

## <u>JURY INSTRUCTION NO. 23A (MGA)</u>

[Infringement—Elements and Burden of Proof—Trade Dress

(15 U.S.C. § 1125(a)(1))]

On the Harris Parties' claim for trade dress infringement, the Harris Parties have the burden of proving by a preponderance of the evidence each of the following elements:

1.   that the OMG Girlz' alleged trade dress of [TO BE DEFINED BY THE HARRIS PARTIES] has acquired secondary meaning;

2.   the Harris Parties own the alleged trade dress;

3.   said trade dress is nonfunctional; and

4.   the MGA Parties used trade dress similar to The OMG Girlz without the consent of the Harris Parties in a manner that is likely to cause confusion among ordinary consumers of MGA's products as to the source, sponsorship, affiliation, or approval of the MGA Parties goods.

If you find that each of the elements on which the Harris Parties has the burden of proof has been proved, your verdict should be for the Harris Parties. If, on the other hand, the Harris Parties have failed to prove any of these elements, your verdict should be for the MGA Parties.

**Authorities:** Instruction 15.7 [Infringement—Elements and Burden of Proof— Trade Dress (15 U.S.C. § 1125(a)(1))] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*. Summary Judgment Order, at p. 9, *citing Art Attacks Inc., LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (*citing Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998)).

**MGA's Objections to Harris Parties' Proposed Jury Instruction No. 23B:**

(1) The language of the Harris Parties' proposed jury instruction gives the misleading impression that the former members of the OMG Girlz music group are themselves parties to this lawsuit.

Defendants/Counterclaimants in this lawsuit are Grand Hustle, LLC; Pretty Hustle, LLC; and OMG Girls, LLC. The individual members of the OMG Girls band – Zonnique Pullins, Bahja Rodriguez, and Breaunna Womack – are not and have never been parties to this lawsuit. *See* Doc. 323 ("MSJ Order") at 30 ("the individual bandmembers that compose the OMG Girlz are not parties to this action."). While this Court has found that the OMG Girls band members "assigned their rights of publicity to Grand Hustle and Pretty Hustle, both of which are party to this action," MSJ Order at 24, it is Pretty Hustle and Grand Hustle who now seek to assert their own purported rights over the OMG Girlz trademark and the OMG Girlz's likeness, not the bandmembers themselves, *see* Doc. 178-1 at 24.

The incorrect impression that the OMG Girls band members are parties to this lawsuit may unfairly prejudice the jury against MGA and in favor of Defendants/ Counterclaimants. Furthermore, unnecessarily identifying Defendants/Counterclaimants with the term "OMG" is likely to unnecessarily confuse the jury by suggesting that Defendants/ Counterclaimants may have an independent protectible interest in the use of the mark "OMG," a conclusion which this Court has already rejected. *See* MSJ Order at 19-20. While Parties may, of course, express a preference as to how the Court refers to them, there are obvious limits to the weight the Court must give such preference, particularly when it does not clearly refer to an actual party to the dispute and is likely to cause jury confusion.

This particular instruction exemplifies the risk of confusion caused by referring to the Harris Parties as the "OMG Girlz," as it directly identifies Defendants/Counterclaimants with an element of the alleged trade dress The final jury instructions should therefore eliminate all identifications of Defendants/ Counterclaimants as "OMG Girlz" and replace them with "Defendants/Counterclaimants" or "Harris Parties."

(2) The Harris Parties' objection and proposed instruction attempts to relitigate an issue already correctly decided by Court and governed by binding Supreme Court precedent. While product packaging can qualify as inherently distinctive without a showing of secondary meaning, product design can *only* qualify as distinctive upon a showing of secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213(2000). MGA argued in its summary judgment briefing that, because it is unclear whether OMG Girlz' purported trade dress is "packaging" or "design," a showing of secondary meaning should be required. *See* Doc. 157 (MGA's MSJ Br.) at 9-10. This question was briefed extensively, and the Court held that, in order to prove trade dress infringement under the Lanham Act, the Harris Parties "must demonstrate that '(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, *and* (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products.'" MSJ order at 9 (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)) (emphasis added). The Court then found a triable issue of fact as to whether the OMG Girlz' trade dress has acquired secondary meaning. *Id.* at 16.

The Harris Parties should not be allowed to relitigate this issue under the guise of a proposed jury instruction. Further, eliminating the secondary meaning requirement threatens from this instruction could allow the jury to

find MGA liable without the Harris Parties having been required to prove an essential element of their trade dress claim. The Supreme Court has cautioned that applying the inherent distinctiveness test to design based claims *without* the requirement of a showing of secondary meaning "renders application of an inherent-distinctiveness principle more harmful to other consumer interests." *Wal-Mart Stores, Inc.*, 529 U.S. at 213.

(3) The Harris Parties' misleadingly modify the model civil jury instructions by improperly adding: "Trade dress infringement, in general, does not require any deliberate attempt to copy. A trade dress infringer could never have seen or had access to the original trade dress. Likelihood of confusion can arise regardless of copying or intent or access."  The factors for secondary meaning and for likelihood of confusion are addressed in other instructions. The inclusion of these statements here not only is unnecessary but it unfairly presents the factors discussed in other jury instructions.  Contrary to the Harris Parties' suggestion, MGA's intent is a factor to be considered in the jury's evaluation of secondary meaning and likelihood of confusion.  The Harris Parties' addition to this model instruction makes it appear as if intent is irrelevant.  The Court should reject this addition and adopt MGA's Proposed Instruction 23A which tracks the Ninth Circuit's model instruction.

(4) The Harris Parties' proposed instruction fails to clarify that the relevant audience for likelihood of confusion is the potential buyers of MGA's goods and services.  The Harris Parties' own expert agreed that the proper survey universe is potential buyers of the alleged junior users' good or services.  See also 1 McCarthy on Trademarks and Unfair Competition § 32:159 ("In a traditional case claiming 'forward' confusion . . .the proper universe to

survey is composed of the potential buyers of the junior user's goods or services."). And the Court previously found that MGA's expert, Dr. Isaacson, "sampled the correct potential buyers of the junior mark as required in a forward confusion case." Dkt. 502.

**Defendants/Counter-Claimants' Reply to MGA's Objections:**

The Final Pretrial Conference Order specifically states that one of the disputed issues to be tried in this case is "[w]hether the Counter-Claimants' asserted trade dress has acquired secondary meaning **and/or is distinctive**." (Dkt. 492 at 22) (emphasis added). The Court has not precluded the OMG Girlz (in its MSJ Order or otherwise) from presenting evidence of both inherent distinctiveness and secondary meaning to the jury. MGA correctly states that the Court "already correctly decided" this issue, but misrepresents the Court's decision by citing to a separate ruling on secondary meaning. In the prior section of the Court's Order stated: "Counterclaimants have presented evidence **that the OMG Girlz had a distinctive style that was consistent enough to be recognizable as the OMG Girlz brand**. Dkt. 326 at 12. That the Court also ruled that a question of fact remains as to whether the OMG Girlz' brand has acquired secondary meaning just means both issues will be decided at trial, consistent with the Final Pretrial Conference Order. Plaintiffs' argument is directly contrary to the Court's rulings. They do not point to any language from the Court precluding a theory of inherent distinctiveness, and in fact included "inherent distinctiveness" as an element of trade dress infringement to be tried in its own Contentions of Fact and Law. *See* Dkt. 492 at 4 (MGA recitation of the elements of trade dress infringement).

Defendants/Counter-Claimants further dispute MGA's contention in its objections that intent should not be discussed. MGA does not and cannot dispute that intent is not required for the Defendants/Counter-Claimants to prevail on the trade dress claim. *See Glob. Tobacco, LLC v. R.K. Co.*, 2015 WL 12911451, at *5 (C.D.

Cal. Sept. 24, 2015) ("The Ninth Circuit has explained that such an intent is not required for a finding of infringement."); *see also* Dkt. 326 (The Court's summary judgment order rejecting any willfulness requirement). MGA has repeatedly tried to conflate this trade dress claim with a copyright claim by implying that the individual elements of the OMG Girlz' claimed trade dress were not "invented" by the OMG Girlz. This instruction is needed to prevent jury confusion on the requirements of the trade dress claim at issue here.

Finally, Defendants Counter-Claimants object to MGA's modification of the word "consumers" from the Ninth Circuit Model Jury Instructions to read "consumers *of MGA's products*" or "*potential* consumers *of MGA's products*." This insertion contradicts well-established principles for likelihood of confusion under the *Sleekcraft* factors. The OMG Girlz have pleaded and the Ninth Circuit recognizes a broader pool of potential confusion than MGA's proposal contemplates. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1215 (9th Cir. 2012) ("Our recognition that non-consumer confusion can properly factor into the 'likelihood of confusion' inquiry is consistent with circuit precedent."); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (9th Cir.2005); *Karl Storz Endoscopy–America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir.2002). The model instructions and the Ninth Circuit agree that the standard for evaluating likelihood of confusion is from the perspective of an "ordinary consumer" generally, not from the limited perspective of MGA's customer base. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (C.D. Cal. 2010) ("Likelihood of confusion is determined on the basis of *a 'reasonably prudent consumer*'") (emphasis added); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (agreeing that "the likelihood of *any* mistaken consumer belief that the two operations had the same source constitutes infringement"). Indeed, to adopt this jury instruction would be impliedly narrow the analysis only to consumers that already have

specialized knowledge of MGA's products. It would exclude anyone who has not acted on a likelihood of confusion by actually purchasing MGA's dolls, conflating the evidence of actual confusion factor with a required element for establishing infringement. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

## JURY INSTRUCTION NO. 23B (Defendants/Counter-Claimants)

[Infringement—Elements and Burden of Proof—Trade Dress

(15 U.S.C. § 1125(a)(1))]

Counter-Claimants, on behalf of the OMG Girlz (and hereinafter, the "OMG Girlz"), have brought a claim for trade dress infringement. On the OMG Girlz' claim for trade dress infringement, the OMG Girlz have the burden of proving by a preponderance of the evidence each of the following elements:

1. The trade dress at issue, consisting of: the name "OMG GIRLZ" coupled with combinations of vibrant hair color in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and shades of blue—contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup, layered clothing, voluminous skirts (i.e., tutus and other poofy skirts), and bold, over the top clothing and accessories is distinctive or has acquired secondary meaning;

2. The OMG Girlz own the trade dress;

3. The trade dress is nonfunctional; and

4. The MGA Parties used trade dress similar to the OMG Girlz without their consent in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the MGA Parties' goods.

Trade dress infringement, in general, does not require any deliberate attempt to copy. A trade dress infringer could never have seen or had access to the original trade dress. Likelihood of confusion can arise regardless of copying or intent or access.

If you find that each of the elements on which the OMG Girlz have the burden of proof has been proved, your verdict should be for the OMG Girlz. If, on the other hand, the OMG Girlz have failed to prove any of these elements, your verdict should be for MGA.

**Authority:** Manual of Model Civ. Jury Instr. 9th Cir. 15.7 (2022); § 24:4. Differences between copyright and trade dress protection, 1 Trade Dress Protection § 24:4 (2d ed.).

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 23A:**

Defendants/Counter-Claimants object to element 1 of MGA's instruction, which changes the phrasing in the Model Jury instructions by deleting "is distinctive" and leaving only the alternate "has acquired secondary meaning" without noting those modifications as required by the March 18, 2021, Trial Order, Doc. 18 at 6. *See* Manual of Model Civ. Jury Instr. 9th Cir. 15.7 (2022) (listing the first element as "[describe the plaintiff's trade dress] is distinctive;"). It is well-settled, black letter law that trade dress is valid and protectable if it is inherently distinctive *or* has acquired secondary meaning. 1 McCarthy on Trademarks and Unfair Competition § 8:8 (5th ed.) ("Prior to 1992, the traditional rule was that all types of trade dress required proof of secondary meaning to establish validity. In its 1992 *Two Pesos v. Taco Cabana* decision, the U.S. Supreme Court changed that rule and held that trade dress that qualifies as inherently distinctive is protectable under Lanham Act § 43(a) without a showing that it has acquired secondary meaning.").

Defendants Counter-Claimants object to MGA's modification of the words "likely to cause confusion among ordinary consumers" from the Ninth Circuit Model Jury Instructions to read "likely to cause confusion among ordinary consumers *of MGA's products*." This insertion contradicts well-established principles for likelihood of confusion under the *Sleekcraft* factors. The model instructions and the Ninth Circuit agree that the standard for evaluating likelihood of confusion is from the perspective of an "ordinary consumer" generally, not from the limited perspective of MGA's customer base. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp.

36

2d 1165, 1180 (C.D. Cal. 2010) ("Likelihood of confusion is determined on the basis of *a 'reasonably prudent consumer'*") (emphasis added); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (agreeing that "the likelihood of *any* mistaken consumer belief that the two operations had the same source constitutes infringement"). Indeed, to adopt this jury instruction would be impliedly narrow the analysis only to consumers that already have specialized knowledge of MGA's products. It would exclude anyone who has not acted on a likelihood of confusion by actually purchasing MGA's dolls, conflating the evidence of actual confusion factor with a required element for establishing infringement. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz. The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC." The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz. Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz. MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz. Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually. Thus, it makes no sense to refer to the parties collectively as the "Harris Parties." Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323.

Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

Defendants and Counter-Claimants intend this to be an overarching objection throughout the jury instructions, to apply to all instructions that suggest that the OMG Girlz should change how they define and refer to themselves.

## JURY INSTRUCTION NO. 24A (MGA)

[Infringement—Elements—Validity—Distinctiveness—Secondary Meaning]

Trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You must find that the preponderance of the evidence shows that a significant number of potential consumers of MGA's products associate the alleged trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the alleged trade dress has acquired a secondary meaning, consider the following factors:

    (1)    Consumer Perception.  Whether the people who purchase the L.O.L. Surprise! O.M.G. Dolls that bear the claimed trade dress associate the trade dress with The OMG Girlz;

    (2)    Advertisement.  To what degree and in what manner The OMG Girlz may have advertised under the claimed trade dress;

    (3)    Demonstrated Utility.  Whether The OMG Girlz successfully used this trade dress to increase the sales of their music;

(4)   Extent of Use.  The length of time and manner in which The OMG Girlz used the claimed trade dress;

(5)   Exclusivity.  Whether The OMG Girlz use of the claimed trade dress was exclusive;

(6)   Copying.  Whether the MGA Parties intentionally copied The OMG Girlz' claimed trade dress;

(7)   Actual Confusion.  Whether the MGA Parties' use of the OMG Girlz' claimed trade dress has led to actual confusion among a significant number of potential consumers of MGA's products; and

(8)   Survey Evidence.  Whether the Harris Parties have introduced any survey evidence to support secondary meaning.

(9)   Direct Consumer Testimony.  The amount of testimony from consumers that would indicate that, in the minds of potential consumers of MGA's products, the primary significance of the OMG Girlz' claimed trade dress is to identify the source of the product rather than the product itself.

The presence or absence of any particular factor should not necessarily resolve whether The OMG Girlz' alleged trade dress has acquired secondary meaning.

The Harris Parties have the burden of proving that the trade dress has acquired a secondary meaning.

The mere fact that the Harris Parties used the alleged trade dress, or that the Harris Parties began using it before the MGA Parties, does not mean that the trade dress has acquired secondary meaning. There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

**Authorities:** Instruction 15.11 [Infringement—Elements—Validity—Distinctiveness—Secondary Meaning] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last*

*Updated September 2022*.  Summary Judgment Order, at p. 14, citing Filipino
Yellow Pages, Inc. v. Asian J. Publications, Inc., 198 F.3d 1143, 1151 (9th Cir.
1990) (internal citation omitted).

**MGA's Objections to Harris Parties' Proposed Jury Instruction No. 24B:**

(1) MGA objects to identifying Defendants/Counterclaimants as "OMG Girlz,"
for the reasons stated in MGA's objection to the Harris Parties' Proposed
Jury Instruction No. 23B. The Harris Parties should not be referred to as the
"OMG Girlz" in the jury instructions.

(2) The Harris Parties' proposed instruction unnecessarily repeats, again, their
definition of the allegedly protected trade dress. This unnecessarily lengthens
the instruction and may contribute to jury confusion.

(3) The Harris Parties' proposed instruction fails to include an important ways of
establishing whether a trade dress has acquired secondary meaning: survey
evidence. This Court, citing binding Ninth Circuit precedent, has held that
survey evidence and direct consumer testimony are relevant to establishing
secondary meaning. *See* MSJ Order at 14 (citing *Filipino Yellow Pages, Inc.
v. Asian J. Publications, Inc.*, 198 F.3d 1142, 1151 (9th Cir. 1999).

(4) As discussed in MGA's objections to the Harris Parties' Proposed Jury
Instruction No. 23, The Harris Parties' again attempts to relitigate an issue
already correctly decided by Court and governed by binding Supreme Court
precedent. While product packaging can qualify as inherently distinctive
without a showing of secondary meaning, product design can *only* qualify as
distinctive upon a showing of secondary meaning. *See Wal-Mart Stores, Inc.
v. Samara Bros.*, 529 U.S. 205, 213(2000). MGA argued in its summary
judgment briefing that, because it is unclear whether OMG Girlz' purported
trade dress is "packaging" or "design," a showing of secondary meaning

should be required. *See* Doc. 157 (MGA's MSJ Br.) at 9-10. This question was briefed extensively, and the Court held that, in order to prove trade dress infringement under the Lanham Act, the Harris Parties "must demonstrate that '(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, *and* (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products.'" MSJ order at 9 (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)) (emphasis added). The Court then found a triable issue of fact as to whether the OMG Girlz' trade dress has acquired secondary meaning. *Id.* at 16.

The Harris Parties should not be allowed to relitigate this issue under the guise of a proposed jury instruction. Further, eliminating the secondary meaning requirement threatens from this instruction could allow the jury to find MGA liable without the Harris Parties having been required to prove an essential element of their trade dress claim. The Supreme Court has cautioned that applying the inherent distinctiveness test to design based claims *without* the requirement of a showing of secondary meaning "renders application of an inherent-distinctiveness principle more harmful to other consumer interests." *Wal-Mart Stores, Inc.*, 529 U.S. at 213.

(5) The Harris Parties' instruction adds an introductory sentence that deviates from the model rule.  It is unnecessary and is contrary to the Court's prior findings, as discussed above.

(6) The Harris Parties improperly add the phrases "number of consumers" and "and establish their place in the market" to the third factor for determining secondary meaning. These additions are vague, confusing and duplicative given the model rule already references increases in sales.  The third factor listing in this instruction should therefore only reference increase in sales, as set forth in the model rule, and should omit these unnecessary additions.

1    Accordingly, this Court should adopt MGA's proposed jury instruction on
2 secondary meaning, MGA Proposed Jury Instruction No. 24, which both includes
3 two factors relevant to establishing secondary meaning and avoids needless
4 repetition of the Harris Parties' definition of alleged trade dress.

## JURY INSTRUCTION NO. 24B (Defendants/Counter-Claimants)

[Infringement—Elements—Validity—Distinctiveness—Secondary Meaning]

If you determine that the OMG Girlz' trade dress is inherently distinctive, you do not need to determine secondary meaning.

If you determine that the OMG Girlz' trade dress is not inherently distinctive, you must consider the recognition that the trade dress has among prospective consumers in order to determine whether it is valid and protectible. This market recognition is called "secondary meaning." Trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the prospective consumers associate the OMG Girlz' trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the OMG Girlz' trade dress has acquired a secondary meaning, consider the following factors:

1.    Consumer Perception.  Whether the people who purchase the product that bears the claimed trade dress associate the trade dress with the OMG Girlz;

2.    Advertisement.  To what degree and in what manner the OMG Girlz may have advertised under the claimed trade dress;

3.    Demonstrated Utility.  Whether the OMG Girlz successfully used this trade dress to increase the sales and number of consumers of the OMG Girlz' music and entertainment services, and establish their place in the market;

JOINT PROPOSED JURY INSTRUCTIONS

4.      Extent of Use.  The length of time and manner in which the OMG Girlz used the claimed trade dress;

5.      Exclusivity.  Whether the Harris Parties' use of the claimed trade dress was exclusive;

6.      Copying.  Whether MGA intentionally copied the OMG Girlz' trade dress; and

7.      Actual Confusion.  Whether the MGA's use of the OMG Girlz trade dress has led to actual confusion among a significant number of consumers.

8.  Direct Consumer Testimony.  The amount of testimony from consumers that would indicate that, in the minds of the public, the primary significance of the OMG Girlz' claimed trade dress is to identify the source of the product rather than the product itself.

The presence or absence of any particular factor should not necessarily resolve whether the OMG Girlz' trade dress has acquired secondary meaning.

The OMG Girlz have the burden of proving that the OMG Girlz' trade dress has acquired a secondary meaning. MGA has the burden of proving that the OMG Girlz' trade dress lacks secondary meaning.

**Authority:** Manual of Model Civ. Jury Instr. 9th Cir. 15.11 (2022); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288 (N.D. Cal. 2017); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999); *Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 793 (9th Cir. 1982); 2 McCarthy on Trademarks and Unfair Competition § 15:30 (5th ed.).

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 24A:**

Defendants/Counter-Claimants object to MGA's instruction because it implies that secondary meaning is required. MGA is correct that this issue was "already correctly decided by Court" and should not be relitigated. But the issue was decided against MGA: "Counterclaimants have presented evidence **that the OMG Girlz had a <u>distinctive</u> style that was consistent enough to be recognizable as the OMG Girlz brand**." Dkt. 326 at 12 The Final Pretrial Conference Order reflects that decision, specifically stating that one of the disputed issues to be tried in this case is "Whether the Counter-Claimants' asserted trade dress has acquired secondary meaning and/or is distinctive." (Dkt. 492 at 22) (emphasis added). These are correct because it is well-settled, black letter law that trade dress is valid and protectable if it is inherently distinctive **or** has acquired secondary meaning. 1 McCarthy on Trademarks and Unfair Competition § 8:8 (5th ed.) ("Prior to 1992, the traditional rule was that all types of trade dress required proof of secondary meaning to establish validity. In its 1992 *Two Pesos v. Taco Cabana* decision, the U.S. Supreme Court changed that rule and held that trade dress that qualifies as inherently distinctive is protectable under Lanham Act § 43(a) without a showing that it has acquired secondary meaning.").

Second, MGA's proposed factor 3 is confusing as worded. The description of "Demonstrated Utility" implies an inquiry into functionality, which is separate from a secondary meaning analysis. *See Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288 (N.D. Cal. 2017), *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999)

Third, as to MGA's proposed factor 8, the addition of "survey evidence" as a factor–in a case in which neither side has produced a survey of secondary meaning—is confusing and prejudicial because it wrongly suggests the OMG Girlz were

required to produce such evidence to prevail. Survey evidence of secondary meaning is not required. 2 McCarthy on Trademarks and Unfair Competition § 15:30 (5th ed.). If the Court is inclined to allow this instruction, the OMG Girlz should be permitted to introduce its timely produced online consumer testimonial evidence and allow the jury to consider the weight of this evidence. *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1074–75 (E.D. Cal.), aff'd, 348 F. App'x 288 (9th Cir. 2009); *see also Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993); *United States v. Lamm*, 5 F.4th 942, 946 (8th Cir. 2021) ("The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be.").

Fourth, with respect to MGA's proposed factor 9, while Counter-Claimants do not object to the general proposition of referring to the consideration of direct consumer testimony, they reject the notion that the "amount of [consumer] testimony" should be considered by the jury.

Fifth, Defendants Counter-Claimants object to MGA's modification of the word "consumers" from the Ninth Circuit Model Jury Instructions to read "consumers *of MGA's products*" or "*potential* consumers *of MGA's products*." This insertion contradicts well-established principles for likelihood of confusion under the *Sleekcraft* factors. The OMG Girlz have pleaded and the Ninth Circuit recognizes a broader pool of potential confusion than MGA's proposal contemplates. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1215 (9th Cir. 2012) ("Our recognition that non-consumer confusion can properly factor into the "likelihood of confusion" inquiry is consistent with circuit precedent."); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (9th Cir.2005); *Karl Storz Endoscopy–America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir.2002). The model instructions and the Ninth Circuit agree that the standard for evaluating likelihood of confusion is from the perspective of an "ordinary consumer" generally, not from the limited perspective of MGA's customer base. *See First Brands Corp. v. Fred Meyer, Inc.*,

Case 2:20-cv-11548-JVS-AGR   Document 698   Filed 05/10/23   Page 49 of 130   Page ID #:37451

809 F.2d 1378, 1384 (9th Cir. 1987); *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (C.D. Cal. 2010) ("Likelihood of confusion is determined on the basis of *a 'reasonably prudent consumer'*") (emphasis added); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (agreeing that "the likelihood of *any* mistaken consumer belief that the two operations had the same source constitutes infringement"). Indeed, to adopt this jury instruction would be impliedly narrow the analysis only to consumers that already have specialized knowledge of MGA's products. It would exclude anyone who has not acted on a likelihood of confusion by actually purchasing MGA's dolls, conflating the evidence of actual confusion factor with a required element for establishing infringement. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

Finally, Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz. The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC." The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz. Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz. MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz. Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually. Thus, it makes no sense to refer to the parties collectively as the "Harris Parties." Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle,

JOINT PROPOSED JURY INSTRUCTIONS

including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

## **JURY INSTRUCTION NO. 25 (Joint)**

[Infringement—Elements—Validity—Trade Dress
—Non–Functionality Requirement]

For a product's design to be protected under trade dress law, the design must be non-functional.

A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress's protection under trade dress law would impose a significant non-reputation-related competitive disadvantage on its owner's competitors. The inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source (e.g., the alternative designs would not have as much intrinsic aesthetic appeal).

Counter-Claimants have the burden of proving non-functionality by a preponderance of the evidence in order to show that the trade dress is valid and protected from infringement.

**Source:** Instruction 15.12 [[Infringement—Elements—Validity—Trade Dress —Non–Functionality Requirement] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

**MGA's Revisions to Ninth Circuit Model Civil Jury Instruction 15.12:**
For a product's design to be protected under trademark law, the design must be non-functional.

1   [A product may be functional in either of two ways. They are referred to as
2   "utilitarian functionality" and "aesthetic functionality."]
3   A claimed trade dress has [utilitarian] functionality if it is essential to the use or
4   purpose of a product or affects its cost or quality. To determine whether this
5   definition is satisfied, you should consider the following factors:
6   (1) whether the design yields a utilitarian advantage in how well the product works;
7   (2) whether alternative designs are available;
8   (3) whether advertising touts the utilitarian advantages of the design; and
9   (4) whether the particular design results from a comparatively simple or
10  inexpensive method of manufacture.
11  No one factor is dispositive; all should be weighed together.

12  [A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose
13  wholly independent of any source identifying function, such that the trade dress's
14  protection under trademark law would impose a significant non-reputation-related
15  competitive disadvantage on its owner's competitors. The inquiry is whether, if one
16  seller were given exclusive rights to use the claimed trade dress, other sellers would
17  be forced to use alternative designs that make their products more costly to sell, or
18  for which consumers' willingness to pay would be lower for reasons having nothing
19  to do with the reputation of any source (e.g., the alternative designs would not have
20  as much intrinsic aesthetic appeal).]

21  [The plaintiff has the burden of proving non-functionality by a preponderance of the
22  evidence [in order to show that the trade dress is valid and protected from
23  infringement].]

24
25
26
27
28

JOINT PROPOSED JURY INSTRUCTIONS

## <u>JURY INSTRUCTION NO. 26A (MGA)</u>

[Infringement—Likelihood of Confusion—Factors—Sleekcraft Test

(15 U.S.C. §§ 1114(1) and 1125(a))]


You must consider whether the MGA Parties' use of the trade dress is likely to cause confusion about the source of the L.O.L. Surprise! O.M.G. dolls.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)   Strength or Weakness of the Harris Parties' claimed trade dress.  The more the consuming public of MGA's products recognizes the Harris Parties' claimed trade dress as an indication of origin of the Harris Parties' goods, the more likely it is that consumers would be confused about the source of each of the L.O.L. Surprise! O.M.G. being accused of infringement if they use a similar dress.

(2)   The MGA Parties' Use of the Harris Parties' claimed trade dress.  If the MGA Parties and the Harris Parties use their trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)   Similarity of the Harris Parties' claimed trade dress to each of the L.O.L. Surprise! O.M.G. dolls being accused of infringement.  If the overall impression created by the Harris Parties' claimed trade dress in the marketplace is similar to that created by the MGA Parties' trade dress in appearance, there is a

greater chance that consumers are likely to be confused by MGA Parties' use of a dress.

(4)    Actual Confusion.  If use by each of the L.O.L. Surprise! O.M.G. dolls of the Harris Parties' claimed trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, the MGA Parties' use of the Harris Parties' claimed trade dress may still be likely to cause confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)    The MGA Parties' Intent.  Knowing use by the MGA Parties of the Harris Parties' claimed trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of the Harris Parties' dress, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that the MGA Parties acted knowingly, the use of the Harris Parties' claimed dress to identify similar goods may indicate a likelihood of confusion.

(6)    Marketing/Advertising Channels.  If the Harris Parties' and MGA Parties' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)    Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the

52

more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the Harris Parties' claimed trade dress and each of the L.O.L. Surprise! O.M.G. dolls being accused of infringement.

(8)   Product Line Expansion. When the parties' products differ, you may consider how likely the Harris Parties are to begin selling the products for which the each of the L.O.L. Surprise! O.M.G. dolls are accused of using the Harris Parties' claimed trade dress. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

(9)   Survey Evidence: Any survey evidence introduced by the parties regarding whether there is a likelihood of confusion.

**Source:** Instruction 15.18 [Infringement—Likelihood of Confusion—Factors—Sleekcraft Test (15 U.S.C. §§ 1114(1) and 1125(a))] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

**MGA's Substantive Changes to Ninth Circuit Model Jury Instruction 15.18 (additions in *italics*):**

You must consider whether the defendant's use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all

relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.

(2) Defendant's Use of the Mark. If the defendant and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in [appearance] [sound] [or] [meaning], there is a greater chance [that consumers are likely to be confused by defendant's use of a mark] [of likelihood of confusion]. [Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.]

(4) Actual Confusion. If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendant's Intent. Knowing use by defendant of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the plaintiff's and defendant's [goods] [services] are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

[(9) ~~Other Factors. Insert any other factors that bear on likelihood of confusion.~~] *Survey Evidence: Whether the parties have introduced evidence through consumer surveys regarding whether there is a likelihood of confusion. If the Harris Parties are not known or recognized by a large portion of the consuming public, there is a smaller likelihood of confusion.*

**MGA's Objections to Harris Parties' Proposed Jury Instruction No. 26B:**

(1) MGA objects to identifying Defendants/Counterclaimaints as "OMG Girlz," for the reasons stated in MGA's objection to the Harris Parties' Proposed Jury Instruction No. 23B. The Harris Parties should not be referred to as the "OMG Girlz" in the jury instructions.

(2) The Harris Parties' proposed instruction does not include survey data as a relevant factor in deciding likelihood of confusion under the *Sleekcraft* test. But the Ninth Circuit and Central District of California courts have held that survey data is relevant to determining likelihood of confusion. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (survey evidence may establish actual confusion, which can support a finding of likelihood of confusion); *Hansen Beverage Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRX), 2009 WL 5104260, at *16 (C.D. Cal. Nov. 4, 2009) (considering survey evidence in evaluating *Sleekcraft* factors).

Accordingly, the Court should adopt MGA's proposed jury instruction on likelihood of confusion, which is substantially similar to the Harris Parties' proposed instruction but includes survey data as a relevant factor.

**Defendants/Counter-Claimants' Response to MGA's Objections to Harris Parties' Proposed Jury Instruction No. 26B:**

Defendant and Counter-Claimants use of OMG Girlz is appropriate for the reasons discussed in other instructions. Defendant and Counter-Claimants omission of "survey evidence" as a separate category to consider is proper for the reasons stated above in their objections.

**JURY INSTRUCTION NO. 26B (Defendants/Counter-Claimants)**

[Infringement—Likelihood of Confusion—Factors—Sleekcraft Test

(15 U.S.C. §§ 1114(1) and 1125(a))]

You must consider whether MGA's use of the OMG Girlz' trade dress is likely to cause confusion about the source of MGA's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) **Strength or Weakness of the OMG Girlz trade dress**.  The more the consuming public of MGA's L.O.L. Surprise! OMG dolls recognizes the OMG Girlz' trade dress as an indication of origin of the OMG Girlz, the more likely it is that consumers would be confused about the source of MGA's goods if MGA uses a similar trade dress.

(2) **MGA's Use of the Trade Dress.**  If the OMG Girlz and MGA use the trade dress in the same, related, or complementary ways there may be a greater likelihood of confusion about the source of the L.O.L. Surprise! OMG dolls than otherwise.

(3) **Similarity.**  If the overall impression created by the OMG Girlz' trade dress in the marketplace is similar to that created by MGA's L.O.L. OMG Girls dolls in appearance, there is a greater chance that consumers are likely to be confused by MGA's use of the trade dress.  Similarities in appearance, sound or meaning weigh more heavily than differences in finding the trade dress is similar.

(4) **Actual Confusion.**  If use by MGA of the OMG Girlz' trade dress has led to instances of actual confusion, this strongly suggests a

likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, MGA's use of the trade dress may still be likely to cause confusion.  As you consider whether the trade dress used by MGA creates for consumers a likelihood of confusion with the OMG Girlz' trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)   **MGA's Intent.**  Knowing use by MGA of the OMG Girlz' trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of the OMG Girlz' trade dress, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that the MGA acted knowingly, the use of the OMG Girlz' trade dress to identify similar goods may indicate a likelihood of confusion.

(6)   **Marketing/Advertising Channels.**  If the parties' brands are likely to be seen in similar stores or marketplaces, or advertised in similar media, this may increase the likelihood of confusion.

(7)   **Consumer's Degree of Care.**   The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the parties' trade dress.

(8)     **Product Line Expansion.** When the parties' products differ, you may consider how likely the OMG Girlz are to begin selling the products for which MGA is using the OMG Girlz' trade dress such as their own line of dolls or other characters based on the OMG Girlz in the metaverse. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

**Authority:** Manual of Model Civ. Jury Instr. 9th Cir. 15.18 (2022).

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 26A:**

Defendants and Counter-Claimants object to MGA's instruction to the extent that it attempts to emphasize "survey evidence" as though it is separate and apart from "Actual Confusion." The alleged purpose of MGA's proffered likelihood of confusion survey is to show their expert's opinion on "actual confusion." Thus, adding a separate element specifically naming "survey evidence" is confusing and over-emphasizes one specific piece of evidence.

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz. The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC." The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz. Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz. MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later

assignment, the asserted trade dress is of the OMG Girlz.  Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

Defendants and Counter-Claimants object to MGA's modification of "consumers" from the Ninth Circuit Model Jury Instructions to read "consumers *of MGA's products*." This insertion contradicts well-established principles for likelihood of confusion under the *Sleekcraft* factors. The model instructions and the Ninth Circuit agree that the standard for evaluating likelihood of confusion is from the perspective of an "ordinary consumer" generally, not from the limited perspective of MGA's customer base. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (C.D. Cal. 2010) ("Likelihood of confusion is determined on the basis of *a 'reasonably prudent consumer*'") (emphasis added); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (agreeing that "the likelihood of *any* mistaken consumer belief that the two operations had the same source constitutes infringement"). Indeed, to adopt this jury instruction would be impliedly narrow the analysis only to consumers that already have specialized knowledge of MGA's

products. It would exclude anyone who has not acted on a likelihood of confusion by

actually purchasing MGA's dolls, conflating the evidence of actual confusion factor

with a required element for establishing infringement. *See AMF Inc. v. Sleekcraft*

*Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking*

*Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

## <u>JURY INSTRUCTION NO. 27A (MGA)</u>

[Expressive Works]

The MGA Parties' work, the L.O.L. Surprise! O.M.G. dolls, are an expressive work that is protected by the First Amendment.

Therefore, you may find for the Harris Parties on their trade dress infringement claim only if the Harris Parties prove by a preponderance of the evidence that:

1.   the MGA Parties' use of the Harris Parties' trade dress is explicitly misleading as to the source or content of the L.O.L. Surprise! O.M.G. dolls; and

2.   the MGA Parties' use of the Harris Parties' trade dress is likely to cause confusion about the source of the Harris Parties' or the MGA Parties' goods.

The MGA Parties' use of the trade dress is explicitly misleading only if it explicitly misleads potential consumers of MGA's products into believing that the Harris Parties sponsored or is somehow associated with the L.O.L. Surprise! O.M.G. dolls.

**Source:** Instruction 15.19A [Expressive Works] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

**MGA's Objections to Harris Parties' Proposed Jury Instruction 27B:**

Contrary to the Harris' Parties representation, the Court's analysis of MGA's First Amendment Defense assumed that the OMG Dolls could be expressive works, but held that it could not decide, as a matter of law, whether the transformative use

defense applied. MSJ Order at 26-27. While the transformative use defense is described in detail in later instructions, this instruction on expressive works is necessary and consistent with the Court's prior order.

The Harris Parties' instruction also deviates from the Ninth Circuit's model rule and incorrectly assumes the expressive works standard only applies if it already has been determined that there is an "infringing use."

## JURY INSTRUCTION NO. 27B (Defendants/Counter-Claimants)

### [Expressive Works]

MGA asserts an expressive works defense. If you find that MGA has infringed on the OMG Girlz trade dress, you may consider this defense. To assert this defense, MGA must make a threshold legal showing that its infringing use is part of an expressive work protected by the First Amendment.

An expressive work is a work that is communicating ideas and expressing points of view.

If you find that MGA has demonstrated that its OMG Dolls are expressive works, then you may find for the OMG Girlz on their trade dress infringement claim only if they prove by a preponderance of the evidence that:

1.      MGA's use of the OMG Girlz' trade dress is explicitly misleading as to the source or content of the OMG dolls; and

2.      MGA's use of the OMG Girlz' trade dress is likely to cause confusion about the source of the OMG Girlz' or MGA's goods.

MGA's use of the trade dress is explicitly misleading only if it explicitly misleads consumers into believing that the OMG Girlz sponsored or is somehow associated with the OMG dolls.

**Source:** Instruction 15.19A [Expressive Works] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022* and comments.

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 27A:**

Defendants and Counter-Claimants object to MGA's instruction because the summary judgment order in this case states that whether the OMG Dolls are

expressive works is a question of fact for the jury. Dkt. 323 at 27-9 (stating that while the dolls "*could* be considered expressive works," the Court "cannot say that the dolls have been sufficiently transformed to apply the defense as a matter of law.") (emphasis added); *see* objection to MGA's Instr. No. 31A *infra*. MGA's instruction improperly instructs the jury that the OMG Dolls "are expressive works," thus usurping their role as factfinder.

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC."  The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz.  MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz.  Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to

choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

Defendants Counter-Claimants object to MGA's modification of the word "consumers" from the Ninth Circuit Model Jury Instructions to read "*potential consumers of MGA's products.*" This insertion contradicts well-established principles for likelihood of confusion under the *Sleekcraft* factors. The OMG Girlz have pleaded and the Ninth Circuit recognizes a broader pool of potential confusion than MGA's proposal contemplates. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1215 (9th Cir. 2012) ("Our recognition that non-consumer confusion can properly factor into the "likelihood of confusion" inquiry is consistent with circuit precedent."); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (9th Cir.2005); *Karl Storz Endoscopy–America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir.2002). The model instructions and the Ninth Circuit agree that the standard for evaluating likelihood of confusion is from the perspective of an "ordinary consumer" generally, not from the limited perspective of MGA's customer base. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (C.D. Cal. 2010) ("Likelihood of confusion is determined on the basis of *a 'reasonably prudent consumer'*") (emphasis added); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (agreeing that "the likelihood of *any* mistaken consumer belief that the two operations had the same source constitutes infringement"). Indeed, to adopt this jury instruction would be impliedly narrow the analysis only to consumers that already have specialized knowledge of MGA's products. It would exclude anyone who has not acted on a likelihood of confusion by actually purchasing MGA's dolls, conflating the evidence of actual confusion factor with a required element for establishing infringement. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

**MGA's Reply to the Defendants/Counter-Claimants' Objections:**

      Contrary to the Harris' Parties representation, the Court's analysis of MGA's First Amendment Defense *assumed* that the OMG Dolls could be expressive works, but held that it could not decide, as a matter of law, that the transformative use defense applied. MSJ Order at 26-27. While the transformative use defense is described in detail in later instructions, this instruction on expressive works is necessary and consistent with the Court's prior order.

## <u>JURY INSTRUCTION NO. 28A (MGA)</u>

[Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof (15 U.S.C. § 1127)]

The Harris Parties cannot exclude others from using the alleged trade dress if it has been abandoned.

The MGA Parties contend that the trade dress has become unenforceable because the Harris Parties abandoned it.  The MGA Parties have the burden of proving abandonment by a preponderance of the evidence.

The [owner] [assignor] [licensor] of a trade dress abandons the right to exclusive use of the dress when the [owner] [assignor] [licensor]:

1.    discontinues its [good faith] use in the ordinary course of trade, intending not to resume using it;

2.    [acts] [or] [fails to act] so that the trade dress [primary significance] [primary meaning] [principal significance] [principal meaning] to prospective consumers has become the [product] [service] itself and not the [producer of the product] [provider of the service]; or

3.    fails to exercise adequate quality control over the [goods] [services] sold under the trade dress by a licensee.

Evidence of non-use of trade dress for three consecutive years is prima facie evidence of abandonment.  When the MGA Parties prove the necessary consecutive years of non-use, the burden shifts to the Harris Parties to go forward with evidence to prove that circumstances do not justify the inference of intent not to resume use.

**Source:** Instruction 15.22 [Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof (15 U.S.C. § 1127)] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022* and comments; *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 220CV04556ABJCX, 2021 WL 4535351, at *6 (C.D. Cal. Aug. 5, 2021), *aff'd*, 55 F.4th 1354 (Fed. Cir. 2022) ("Nonuse for 3 consecutive years shall

be prima facie evidence of abandonment." 15 U.S.C. § 1127 . . . .

The prima facie case " 'eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [its] case,' and creates a rebuttable presumption that the registrant has abandoned the mark without intent to resume or continue use under the statute.'") (citation omitted).

**MGA's Substantive Changes to Ninth Circuit Model Jury Instruction 15.22 (additions in *italics*):**

The [owner] [assignee] [licensee] of a trademark cannot exclude others from using the trademark if it has been abandoned.

The defendant contends that the trademark has become unenforceable because the [owner] [assignee] [licensee] abandoned it. The defendant has the burden of proving abandonment by [clear and convincing] [a preponderance of the] evidence.

The [owner] [assignor] [licensor] of a trademark abandons the right to exclusive use of the trademark when the [owner] [assignor] [licensor]:

1. discontinues its [good faith] use in the ordinary course of trade, intending not to resume using it;

2. [acts] [or] [fails to act] so that the trademark's [primary significance] [primary meaning] [principal significance] [principal meaning] to prospective consumers has become the [product] [service] itself and not the [producer of the product] [provider of the service]; or

3. fails to exercise adequate quality control over the [goods] [services] sold under the trademark by a licensee.

*Evidence of non-use of trade dress for three consecutive years is prima facie evidence of abandonment. When the MGA Parties prove the necessary consecutive years of non-use, the burden shifts to the Harris Parties to go forward with evidence to prove that circumstances do not justify the inference of intent not to resume use.*

69

1

2  **MGA's Objections to Harris Parties' Proposed Jury Instruction 28B:**

3        MGA's proposed instruction tracks the Ninth Circuit's model rule, while

4  adding a paragraph to the instruction consistent with the rule's Comment.  In

5  contrast, the Harris Parties' proposed instruction improperly attempts to heighten

6  the burden of proving this defense in several ways.  First, it claims that the defense

7  must be proven by clear and convincing evidence.  But, as the Comment notes,

8  there is no Ninth Circuit case establishing that the heightened burden applies to this

9  defense.  Second, the Harris Parties' proposed instruction includes additional

10  language about "complete cessation or discontinuance" of the mark that runs

11  contrary to the model rule and applicable law.  Third, the Harris Parties' instruction

12  incorrectly suggests that the Harris Parties can rebut or explain away their non-use

13  of the abandoned mark. That, again, is contrary to the model rule and applicable

14  law.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS

## **JURY INSTRUCTION NO. 28B (Defendants/Counter-Claimants)**

[Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof

(15 U.S.C. § 1127)]

MGA contends that the trade dress has become unenforceable because the OMG Girlz abandoned it.   MGA has the burden of proving abandonment by clear and convincing evidence.

The owner of the trade dress abandons the right to exclusive use of the dress when the owner:

1.  discontinues its good faith use in the ordinary course of trade, intending not to resume using it; or

2.  acts or fails to act so that the trade dress primary significance to prospective consumers has become the product or service itself and not the producer or provider

Abandonment requires complete cessation or discontinuance of trademark use. The owner of the trade dress may rebut a prima facie case of abandonment by showing valid reasons for nonuse or lack of intent to abandon the mark. The OMG Girlz can rebut the prima facie case by showing valid reasons for nonuse or lack of intent to abandon the mark.

The term "use in commerce" means the bona fide use of a trade dress in the ordinary course of trade. A trade dress shall be deemed to be in use in commerce on goods when it appears on documents associated with the goods or their sale, and/or when it is used or displayed in the sale or advertising of services and the services are rendered in interstate commerce.

**Defendants/Counter-Claimants' Substantive Changes to Ninth Circuit Model Jury Instruction 15.22**

~~The [owner] [assignee] [licensee] of a trademark cannot exclude others from using the trademark if it has been abandoned.~~

The defendant contends that the trademark has become unenforceable because the [owner] [assignee] [licensee] abandoned it. The defendant has the burden of proving abandonment by [clear and convincing] [a preponderance of the] evidence.

The [owner] [assignor] [licensor] of a trademark abandons the right to exclusive use of the trademark when the [owner] [assignor] [licensor]:

1. discontinues its [good faith] use in the ordinary course of trade, intending not to resume using it;

2. [acts] [or] [fails to act] so that the trademark's [primary significance] [primary meaning] [principal significance] [principal meaning] to prospective consumers has become the [product] [service] itself and not the [producer of the product] [provider of the service]; or

3. ~~fails to exercise adequate quality control over the [goods] [services] sold under the trademark by a licensee.~~

*Abandonment requires complete cessation or discontinuance of trademark use. The owner of the trade dress may rebut a prima facie case of abandonment by showing valid reasons for nonuse or lack of intent to abandon the mark. The OMG Girlz can rebut the prima facie case by showing valid reasons for nonuse or lack of intent to abandon the mark.*

*The term "use in commerce" means the bona fide use of a trade dress in the ordinary course of trade. A trade dress shall be deemed to be in use in commerce on goods when it appears on documents associated with the goods or their sale, and/or when it is used or displayed in the sale or advertising of services and the services are rendered in interstate commerce.*

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 28A:**

Defendants and Counter-Claimants object to the modified portion of MGA's instruction on the grounds that that MGA's addition is not part of the model jury instructions, incorrectly describes the burden-shifting, and incorrectly describes the burden of proof (clear and convincing evidence is required, not merely a preponderance of the evidence). *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 952 (9th Cir. 2007) ("In my view, meeting a strict burden requires proof by clear and convincing evidence."); *Cash Processing Servs. v. Ambient Ent., Inc.*, 418 F. Supp. 2d 1227, 1232 (D. Nev. 2006) ("While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAPEEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("the burden of proof is on the party seeking to show abandonment, and abandonment must be shown by clear and convincing evidence."); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."). MGA has not cited to and the OMG Girlz have not found any cases supporting the use of "a preponderance of the evidence" as the correct standard.

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC."  The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz.  MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure

and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz. Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually. Thus, it makes no sense to refer to the parties collectively as the "Harris Parties." Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand. In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

**Source:** Instruction 15.22 [Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof (15 U.S.C. § 1127)] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition; 15 U.S.C.A. § 1127; *Abdul–Jabbar v. Gen'l Motors Corp.*, 85 F.3d 407, 411 (9th Cir.1996));*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938 (9th Cir. 2006); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 220CV04556ABJCX, 2021 WL 4535351, at *6 (C.D. Cal. Aug. 5, 2021), aff'd, 55 F.4th 1354 (Fed. Cir. 2022).

**MGA's Response to the Harris Parties' Objections**

As noted in the Comment to the Ninth Circuit's model instruction 15.20, no Ninth Circuit case clearly describes the standard of proof required to prove

abandonment. MGA notes that the Harris Parties' objection improperly cites the concurring opinion of Judge Wallace in *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 952 (9th Cir. 2007) as though it were binding authority. As demonstrated by Judge McKeown's concurrence in that same case, the mean of the "strictly proved" standard remains unsettled. *See id*. at 953-654 ("In my view, the language of 15 U.S.C. § 11272 does not support an elevated standard of "clear and convincing." . . . The federal courts of appeals that have considered the issue are in accord and have consistently applied the preponderance of the evidence standard in the trademark abandonment context." (McKeown, J., concurring). As noted by Judge McKeown, nothing in the language of 15 U.S.C. § 1127 requires a heightened standard of proof, so the Court should adopt the preponderance of the evidence standard here.

JOINT PROPOSED JURY INSTRUCTIONS

## <u>JURY INSTRUCTION NO. 29 (MGA)</u>

[Defenses – "Classic" Fair Use (15 U.S.C. § 1115(b)(4))]

The owner of a trade dress cannot exclude others from making a fair use of that trade dress.  A defendant makes fair use of a trade dress when the defendant uses it as other than a trade dress, to accurately describe the defendant's own products.

The MGA Parties contend that it fairly used the trade dress to fashion the MGA Parties' products. The MGA Parties have the burden of proving its fair use of the trade dress by a preponderance of the evidence.

The MGA Parties make fair use of trade dress when the MGA Parties:

1.     used the dress other than as a trade dress;

2.     used the mark fairly and in good faith; and

3.     used the dress only to fashion the MGA Parties' goods or services as those of the MGA Parties' and not at all to describe the Harris Parties' product.

**Source:** Instruction 15.24 [Defenses – "Classic" Fair Use (15 U.S.C. § 1115(b)(4))] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 29:**

Defendants/Counter-Claimants object to the inclusion of this instruction as MGA has abandoned and/or waived this defense (*see* Dkt. 492, Final Pre-Trial Conference Order) (omitting any mention of a "classic" fair use defense). These are different doctrines. A "classic" fair use defense forbids the mark owners from taking a "descriptive term for exclusive use and prevent others from accurately describing characteristic of their goods." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992). MGA does not and has never argued that "OMG" is a merely descriptive term. A First Amendment defense is the opposite—it protects "expressive works…[with] some artistic relevance to the underlying work." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013).

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC."  The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz.  MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz.  Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle,

including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

**Source:** *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150–51 (9th Cir. 2002); *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1028 (C.D. Cal. 2006), *aff'd*, 547 F.3d 1095 (9th Cir. 2008); 15 U.S.C. § 1115(b); 2 McCarthy on Trademark and Unfair Competition § 11:45 (4th ed. 2001).

**MGA's Response to Harris Parties' Objections to Proposed Jury Instruction No. 29:**

Contrary to the Harris Parties' claim, the Final Pre-Trial Conference Order reflects a fair use defense.  *See, e.g.*, Dkt. 492 at 4, 7, 15.  Also, the Harris Parties previously agreed to this instruction, which was submitted as a joint instruction for the prior trial.  *See* Dkt. 491 at 59.  Therefore, the Harris Parties acknowledged they had notice that this defense would be asserted at trial, and they therefore waived and should be estopped from any objection otherwise.

## <u>JURY INSTRUCTION NO. 30A (MGA)</u>

[Appropriation of Name or Likeness - Essential Factual Elements]

The Harris Parties claim that the MGA Parties violated their right to privacy. To establish this claim, the Harris Parties must prove all of the following:

1.   That the MGA Parties used the Harris Parties' name, likeness, or identity;

2.   That the Harris Parties did not consent to this use;

3.   That the MGA Parties gained a commercial benefit by using the Harris Parties' name, likeness, or identity;

4.   That the Harris Parties were harmed; and

5.   That the MGA Parties' conduct was a substantial factor in causing the Harris Parties' harm.

A mere incidental use of a name or likeness or identity is not an appropriation. A use is not merely incidental when MGA makes the use for the purpose of exploiting or taking advantage of the OMG Girlz' reputation, prestige, social or commercial standing, or any public interest or other value attached to the OMG Girlz' name, likeness, or identity.

**Source:** Instruction No. 1803 [Appropriation of Name or Likeness - Essential Factual Elements] California Civil Jury Instructions for Judges and Attorneys (CACI) – 2021 Edition, *as adopted by the Judicial Council November 2021.*

**Substantive Changes to CACI No. 1803 (additions in *italics*):**

The Harris Parties claim that the MGA Parties violated their right to privacy. To establish this claim, the Harris Parties must prove all of the following:

1.   That the MGA Parties used the Harris Parties' name, likeness, or identity;

2.     That the Harris Parties did not consent to this use;

3.     That the MGA Parties gained a commercial benefit by using the Harris Parties' name, likeness, or identity;

4.     That the Harris Parties were harmed; and

5.     That the MGA Parties' conduct was a substantial factor in causing the Harris Parties' harm.

*A mere incidental use of a name or likeness or identity is not an appropriation. A use is not merely incidental when MGA makes the use for the purpose of exploiting or taking advantage of the OMG Girlz' reputation, prestige, social or commercial standing, or any public interest or other value attached to the OMG Girlz' name, likeness, or identity.*

**MGA's Objections to Harris Parties' Proposed Instruction 30B:**

The Harris Parties previously agreed to the instruction now listed as 30A, as it was listed as joint instruction in the parties' submission for the last trial. Dkt. 491 at 60. The Harris Parties now backtrack on that position and falsely claim the latter portion of MGA's instruction has no legal support. But, as the California Supreme Court has recognized, "mere incidental use [is] not actionable." *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1, 26 n. 6 (1994), citing Restatement Second of Torts, § 652B.

In contrast, the Harris Parties' addition to the CACI instruction is misleading and makes claims inconsistent with the Harris Parties' claims. The Harris Parties' common law misappropriation claim is based on the alleged misappropriation of the OMG Girlz name and likeness. Dkt. 63. There is no allegation that MGA misappropriated the Harris Parties voice, signature, photograph, or hair/clothing alone (as opposed to the alleged trade dress of which hair/clothing are only an aspect). Among other thing, this proposed instruction suggests—falsely—that misappropriation may be found only where the alleged use was of hair or clothing.

## <u>JURY INSTRUCTION NO. 30B (Defendants/Counter-Claimants)</u>

[Misappropriation of Name, Likeness, or Identity - Essential Factual Elements]

The OMG Girlz' claim that MGA misappropriated their name, likeness, or identity. To establish this claim, the OMG Girlz must prove all of the following:

1. That MGA used the OMG Girlz' name, likeness, or identity;

2. That the OMG Girlz did not consent to this use;

3. That MGA gained a commercial benefit by using the OMG Girlz' name, likeness, or identity;

4. That the OMG Girlz were harmed; and

5. That MGA's conduct was a substantial factor in causing the OMG Girlz harm.

This claim does not require that appropriations of identity be accomplished through particular means to be actionable. For example, use of the OMG Girlz' identity can include MGA's use of the OMG Girlz' name, voice, likeness, signature, photograph, and distinctive hair/clothing.

**Source:** Instruction No. 1803 [Appropriation of Name or Likeness - Essential Factual Elements] California Civil Jury Instructions for Judges and Attorneys (CACI) – 2021 Edition, *as adopted by the Judicial Council November 2021*; *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992), *as amended* (Aug. 19, 1992).

**Defendants'/Counter-Claimants' Substantive Changes to CACI No. 1803 (additions in *italics*):**

The OMG Girlz' claim that MGA misappropriated their name, likeness, or identity. To establish this claim, the OMG Girlz must prove all of the following:

1. That MGA used the OMG Girlz' name, likeness, or identity;

2.     That the OMG Girlz did not consent to this use;

3.     That MGA gained a commercial benefit by using the OMG Girlz' name, likeness, or identity;

4.     That the OMG Girlz were harmed; and

5.     That MGA's conduct was a substantial factor in causing the OMG Girlz harm.

*This claim does not require that appropriations of identity be accomplished through particular means to be actionable. For example, use of the OMG Girlz' identity can include MGA's use of the OMG Girlz' name, voice, likeness, signature, photograph, and distinctive hair/clothing.*

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 30A:**

MGA's modifications to the model instructions are not supported by the model instructions themselves, and MGA offers no legal authority for including these argumentative statements. By contrast, Defendants/Counter-Claimants' proposed addition is supported by both the drafter's comments to the model instructions and by Ninth Circuit authority previously cited by the Court in its Summary Judgment Order on this issue. *See* CACI No. 1803 ("Directions for Use" and "Sources and Authority") (recognizing that "protect the economic value of one's name, voice, signature, photograph, or likeness, and explaining that "the judge may need to explain that a person's voice, for example, may qualify as 'identity' if the voice is sufficient to cause listeners to identify the plaintiff."); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992), *as amended* (Aug. 19, 1992) (finding that "a robot, dressed in a wig, gown, and jewelry which Deutsch consciously selected to resemble White's hair and dress" can form the basis of a misappropriation claim).

Defendants and Counter-Claimants object to MGA's instruction because it uses the confusing name of the "Harris Parties." As discussed for other instructions, using "OMG Girlz" is simpler and will prevent confusion. That is particular the case here. MGA Instruction 30A asks whether "MGA Parties **used the Harris Parties' name, likeness, or identity**," wrongly and confusingly suggesting that the name, likeness, or identify of all members of the Harris family are issue and must have been misappropriated for Defendant/Counter-Claimants to prevail. This is exactly why OMG Girlz is the better choice for the jury instructions.

## <u>JURY INSTRUCTION NO. 31A (MGA)</u>

[Affirmative Defense to Use or Appropriation of Name or Likeness - First Amendment (Comedy III)]

The MGA Parties claim that they have not violated the Harris Parties' right of privacy because the L.O.L. Surprise! O.M.G. dolls are protected by the First Amendment's guarantee of freedom of speech and expression. To succeed, the MGA Parties must prove either of the following:

1. That the L.O.L. Surprise! O.M.G. dolls add something new to the Harris Parties' likeness, giving it a new expression, meaning, or message; or

2. That the value of the L.O.L. Surprise! O.M.G. dolls does not result primarily from the Harris Parties' fame.

**Source:** Instruction No. 1805 [Affirmative Defense to Use or Appropriation of Name or Likeness - First Amendment (Comedy III)] California Civil Jury Instructions for Judges and Attorneys (CACI) – 2021 Edition, *as adopted by the Judicial Council November 2021.*

**MGA's Objections to Harris Parties' Proposed Jury Instruction No. 31B:**

(1) MGA objects to identifying Defendants/Counterclaimaints as "OMG Girlz," for the reasons stated in MGA's objection to the Harris Parties' Proposed Jury Instruction No. 23B. The Harris Parties should not be referred to as the "OMG Girlz" in the jury instructions.

(2) The Harris Parties' proposed instruction is likely to confuse the jury because it is overlong and dense with language drawn verbatim from California Court of Appeal decisions. Instead of distilling the First Amendment affirmative defense to its essential elements for the jury, the proposed instruction

provides no less than three alternative statements of the standard governing whether a work is "transformative." *See United States v. Field*, 625 F.2d 862, 872 (9th Cir. 1980) (trial court need not give a lengthy and involved jury instruction when the matter is covered by simpler instructions); *Serv. Emps. Int'l Union v. Roselli*, No. C 09-00404 WHA, 2010 WL 2524796, at *1 (N.D. Cal. June 23, 2010) (legally technical explanation could overly complicate jury instructions and confuse the jury).

Not only is this likely to overwhelm and confuse the jury, it also has the misleading effect of diluting the importance of the inquiry into whether the value of the MGA products derives primarily from the OMG Girlz' fame. *See Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001) ("Furthermore, in determining whether a work is sufficiently transformative, courts may find useful a subsidiary inquiry, particularly in close cases: does the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted?"). MSJ Order at 27 (citing *Comedy III*). That question is essential and should not be diluted because "[i]f [it] answered in the negative, then there would generally be no actionable right of publicity." *Comedy III*, 25 Cal. 4th at 407.

Accordingly, the Court should adopt MGA's proposed instruction on the First Amendment, which directly follows the California Civil Jury Instructions for Judges and Attorneys and more clearly summarizes the issues for the jury.

## JURY INSTRUCTION NO. 31B (Defendants/Counter-Claimants)

[Misappropriation of Name, Likeness, or Identity—First Amendment Defense]

Counter-Claimants seek to recover damages for misappropriation of the OMG Girlz' name, likeness, or identity. MGA has asserted as a defense that the use of the OMG Girlz' name or likeness or identity in question in connection with its use of "OMG" dolls is protected by the First Amendment to the United States Constitution. The First Amendment guarantees, among other rights, freedom of speech and expression. However, this right is not absolute. Courts afford no First Amendment protection where the product is commercial speech or otherwise fails to convey an explicit message (i.e., is not an expressive work). In the context of a right of publicity claim, the First Amendment protects use of a name, likeness, identity in a work that contains significant transformative elements. MGA has the burden of proving all the facts necessary to establish this defense.

A work is "transformative" when it does not merely supersede the object or objects of the original creation, but instead adds something new, such as a new context or significant visual differences, with a further purpose or different purpose or character, altering the first with new expression, meaning or message. Another way of stating the inquiry as to whether MGA's work is significantly transformative is whether the celebrity name or identity or likeness is one of the raw materials from which an original work is synthesized, or whether the depiction or imitation is the very sum and substance of the work in question. In other words, is the work containing a celebrity's name or identity or likeness so transformed that it has become primarily MGA's own expression rather than the celebrity's name or identity or likeness. As used here, "expression" means something other than the name or identity or likeness of the celebrity. A work is not transformative where the marketability and economic value of the artistic expression derive primarily from the fame of the celebrities depicted in the work or product.

In determining whether the work is transformative, you are not to be concerned with the quality of the MGA's contribution. The inquiry is in a sense more quantitative than qualitative, asking whether the literal and imitative or the creative elements predominate in the work.

**Authority:** ECF 298; *Kirby v. Sega of America, Inc.*, 144 Cal.App.4th 47, 50 (2006); *Hilton v. Hallmark Cards*, 599 F.3d 894 (2009); *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 396 (2001); Cal. Jury Instr.--Civ. 7.24.1.

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 31A:**

Counter-Claimants object to MGA's Instruction 31A as it provides the jury with no context as to what to consider for the First Amendment defense. As written, MGA's instruction wrongly assumes the OMG Dolls are expressive works and that the First Amendment defense is available. Counter-Claimants' instruction is adapted from Cal. Jury Instr.--Civ. 7.24.1, which relies on the very cases the Court considered when it decided that "whether the transformative defense applies here is more properly reserved for the trier of fact." *See* Dkt 323 at 29. In Cal. Jury Instr.--Civ. 7.24.1, the applicability of the defense is presented as a jury issue where the underlying facts are in dispute, as the Court intended. MGA's instruction obfuscates this nuance and is a threadbare recitation of elements that are disputed.

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC."  The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if

the OMG Girlz were not named the OMG Girlz.  MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz.  Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

# JURY INSTRUCTION NO. 32A (MGA)

[Trademark Damages—Defendant's Profits (15 U.S.C. § 1117(a))]

If you determine the Harris Parties have proved by a preponderance of competent evidence that one or more of the L.O.L. Surprise! O.M.G. dolls infringe the Harris Parties' trade dress, then the Harris Parties are entitled to any profits earned by MGA that are attributable to the infringement of those dolls. The Harris Parties are not entitled to any profits earned by MGA from L.O.L. Surprise! O.M.G. dolls that the Harris Parties have not proved infringe the Harris Parties' trade dress.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of MGA's receipts from using the Harris Parties' alleged trade dress in the sale of any L.O.L. Surprise! O.M.G. dolls that the Harris Parties prove infringe the Harris Parties' trade dress. The Harris Parties have the burden of proving, by a preponderance of the evidence, MGA's gross revenue from any L.O.L. Surprise! O.M.G. doll that infringes the Harris Parties' trade dress.

Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. MGA has the burden of proving, by a preponderance of the evidence, the expenses and the portion of its profit from any L.O.L. Surprise! O.M.G. doll that infringes the Harris Parties' trade dress that is attributable to factors other than use of the Harris Parties' trade dress by a preponderance of the evidence.

Unless you determine that a portion of the profit from the sale of the L.O.L. Surprise! O.M.G. dolls the Harris Parties prove infringes their alleged trade dress, if any, is attributable to factors other than use of the Harris Parties' trade dress, you should find that the total profit of any such dolls is attributable to the infringement.

JOINT PROPOSED JURY INSTRUCTIONS

**Source:** Instruction 15.29 from the Manual of Model Civil Jury Instructions for the District Courts for the Ninth Circuit – 2017 Edition, *Last Updated September 2022* (modified).

**MGA's Objections to Harris Parties' Proposed Jury Instruction No. 32B:**

The Harris Parties' proposed instruction fails to guide the jury on how to calculate damages for each infringing doll. The jury can only properly award damages for actually infringing dolls, and so will be required to calculate MGA's profits from each infringing doll. The Harris Parties' instruction fails to provide guidance on this issue and so is likely to mislead and confuse the jury. In contrast, MGA's proposed instruction correctly instructs the jury on calculating damages only for infringing products.

The proposed jury instruction improperly disregards and conflicts with the Ninth Circuit's model jury instruction 15.29 "Trademark Damages – Defendant's Profits (15 U.S.C. § 1117(a))."  In contrast, MGA's proposed jury instruction 32A closely tracks the Ninth Circuit's model instruction.  The proposed jury instruction obscures the fundamental requirement that the plaintiffs is only entitled to profits earned by the defendant that are attributable to the infringement.  *See* Instruction 15.29 from the Manual of Model Civil Jury Instructions for the District Courts for the Ninth Circuit – 2017 Edition, *Last Updated March 2023* ("[T]he plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence.").  Indeed, the proposed jury instruction conflicts with the holding in the case that it cites, *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993), that concluded it was insufficient for a plaintiff to show a defendant's total sales when only a subset of those sales occurred in the infringing market.  *Id.* at 1408 (The plaintiff "had access through discovery to . . . records from which a

reasonable estimate could have been accomplished" of the defendant's profits from the infringing activity.)

The proposed jury instruction also inexplicably deviates from the Ninth Circuit's model jury instruction by including a specific, unique standard for determining applicable overhead expenses.  The Ninth Circuit's model jury instruction explicitly addresses expenses, including operating, overhead, and production costs.  *See id*. ("Expenses are all [operating] [overhead] and production costs incurred in producing the gross revenue.  The defendant has the burden of providing the expenses . . . by a preponderance of the evidence.").  The proposed jury instruction cites the Ninth Circuit's discussion of *Taylor v. Meirick*, 712 F.3d 1112, 1121-22 (7th Cir. 1983) in *Kamar Int'l v. Russ Berrie and Co.,* 752 F.2d 1326, 1332 (9th Cir. 1984), but in *Kamar* the Ninth Circuit did not adopt or otherwise endorse the Seventh Circuit's decision in *Taylor* with respect to determining applicable overhead expenses.  Furthermore, the proposed jury instruction improperly omits from the Ninth Circuit's model instruction the right and ability of the defendant to show that profits were attributable to factors other than the use of the infringed trade dress.  *Id*.  ("The defendant has the burden of proving . . . the portion of the profit attributable to factors other than use of the infringed trademark.").  The last paragraph of the proposed jury instruction improperly attempts to include a misleading and baseless discovery-type sanction in the instructions to the jury.   The jury should not be asked whether "detailed financial documents" have been produced, a term with no definition or objective standard for the jury to apply.  The jury similarly should not be asked whether a party "obstructs efforts to determine cost deductions," which again is a term without any definition or objective standard to apply.  The Ninth Circuit's model instruction clearly lays out the applicable standards and the burden-shifting framework for determining a defendant's profits.  There is no justification for the proposed jury instruction's

attempt to completely re-write the Ninth Circuit's model instruction in its misleading, self-serving way.

   While the proposed jury instruction cites the Seventh Circuit's model jury instruction, it bears little resemblance to the Seventh Circuit's model instruction, which is substantially similar to the Ninth Circuit's model instruction.  The proposed jury instruction cites the Ninth Circuit's model instruction 15.18 as well as 17 U.S.C. § 101(b), neither of which provide any support for the substance of the proposed jury instruction.

**Defendants/Counter-Claimants' Reply to MGA's Objection:**

   MGA's proposed methodology of calculating damages misstates the law. The Lanham Act broadly authorizes disgorgement of defendant's "profits from the infringing activity with reasonable certainty." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993). There is no requirement that the damages calculations be confined only to the direct sale of the infringing dolls, while ignoring all other potential wrongful gains as a result of selling infringing dolls. Nor is there a requirement that profits must be calculated for each individual product, where, as here, MGA represented that there is no sufficient information to determine costs and expenses attributable to individual accused dolls. *See A & M Recs., Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996) (awarding 70% of all Defendant's operating profits in the absence of financial information tied to the specific infringing goods).

   MGA's proposed instruction also obfuscates the well-established burden shifting framework for assessing damages in Lanham Act claims, wherein the claimant need only prove the defendant's gross sales, and then the "defendant has the burden of proof as to any deductions from his gross sales." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968).

## <u>JURY INSTRUCTION NO. 32B (Defendants/Counter-Claimants)</u>

[Trade Dress Infringement – MGA's Profits (15 U.S.C. § 1117(a))]

Counter-Claimants may recover the profits MGA gained from the trade dress infringement.

In assessing the amount of MGA's profits to which the Counter-Claimants are entitled, the Counter-Claimants shall only be required to prove MGA's sales. The Counter-Claimants only have the burden of establishing MGA's gross sales from the infringing activity with reasonable certainty. Once Counter-Claimants demonstrate gross sales, they are presumed to be the result of the infringing activity.

MGA has the burden to prove all elements of cost or deduction claimed. Deduction from MGA's profits for "overhead" should be allowed only if MGA can demonstrate that overhead was of actual assistance in the production, distribution, or sale of the infringing product. MGA bears the burden of showing how claimed overhead was reasonably calculated and how the claimed overhead actually contributed to the production of the infringing work. In other words, to the extent that MGA claims its general cost or deductions as overhead, it must explain how these costs or deductions actually contributed to the accused products.

Should you find that MGA has not produced detailed financial documents or obstructs efforts to determine cost deductions, it is allowable to award gross sales as damages without any deductions. If gross sales/profits for the specific infringing good are not available, the court can estimate sales based on the defendant's gross income/bank statements from all products.

**Authority**: Fed. Civ. Jury Instr. 7th Cir. 13.6.4 (2021); Manual of Model Civ. Jury Instr. 9th Cir. 15.18 (2022); 15 U.S.C.A. § 1117 (West); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993); 17 U.S.C. (1976 Ed.) § 101(b). *See Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (citing *Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir.1983)); *Frank Music Corp. v.*

*Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012); *A & M Recs., Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996), as amended (Nov. 21, 1996).

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 32A:**

As stated above, MGA's proposed methodology of calculating damages misstates the law. The Lanham Act broadly authorizes disgorgement of defendant's "gross profits from the infringing activity with reasonable certainty." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993). There is no requirement that the damages calculations be confined only to the direct sale of the infringing dolls, while ignoring all other potential wrongful gains as a result of selling infringing dolls. Nor is there a requirement that profits must be calculated for each individual product, where, as here, MGA represented that there is no sufficient information to determine costs and expenses attributable to individual accused dolls. *See A & M Recs., Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996) (awarding 70% of all Defendant's operating profits in the absence of financial information tied to the specific infringing goods). Further, Defendants object to MGA's omission of the actual assistance rule.  Deduction from infringer's profits for overhead should be allowed only when the infringer can demonstrate that overhead was of actual assistance in the production, distribution, or sale of the infringing product. *See Kamar Int'l Inc. v. Russ Berrie & Co.*, 752 F. 2d 1326, 1332 (9th Cir. 1984).

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC."  The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf

of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz.  MGA cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz.  Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323. Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

Finally, Defendants object to the placement of this instruction. It should appear either after the proposed instructions about the trade dress infringement claim (ending with Proposed Instruction 29) or else closer in proximity to any proposed instructions about damages (e.g., Proposed Instruction 50).

**MGA's Reply to the Harris Party's Objection**

The Harris Parties' proposed instruction departs substantially from the Ninth Circuit Model Jury Instruction to unfairly tilt the jury towards awarding damages based on gross *sales* rather than gross *profits*, in party by focusing on implied

concealment of evidence that has no basis in the record. This undue focus on sales risks inviting the jury to award damages far out of line with MGA's actual profits from infringing products.

JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 33 (Joint)

### [Duty to Deliberate]

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Source:** Instruction 3.1 [Duty to Deliberate] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## **JURY INSTRUCTION NO. 34 (Joint)**

[Consideration of Evidence—Conduct of the Jury]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses or the lawyers—until you have been excused as

jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**Source:** Instruction 3.2 [Consideration of Evidence -- Conduct of the Jury] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022.*

JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 35 (Joint)

### [Communication With Court]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**Source:** Instruction 3.3 [Communication With Court] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

**MGA's Substantive Changes to Ninth Circuit Model Jury Instruction 3.3 (additions in *italics*):**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some

time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged. *Do not disclose any vote count in any note to the court.*

JOINT PROPOSED JURY INSTRUCTIONS

## <u>JURY INSTRUCTION NO. 36 (Joint)</u>

[Return of Verdict]

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign, and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

**Source:** Instruction 3.5 [Return of Verdict] from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit - 2017 Edition, *Last Updated September 2022*.

## JURY INSTRUCTION NO. 37 (Joint)

### [General Introduction]

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law but consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**Authority**: O'Malley, Grenig, & Lee, 3 Fed. Jury Prac. & Instr. § 103:01 (6th ed.).

JOINT PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>JURY INSTRUCTION NO. 38 (Joint)</u>

[Judge's Questions to Witnesses]

During the trial, I may sometimes ask a witness questions. Please do not think I have any opinion about the subject matter of my questions. I may ask a question simply to clarify a matter, not to help one side of the case or harm another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

**Authority**: O'Malley, Grenig, & Lee, 3 Fed. Jury Prac. & Instr. § 101:30 (6th ed.).

## <u>JURY INSTRUCTION NO. 39 (Joint)</u>

[Judge's Comments to Lawyer]


It is my duty to caution or warn an attorney who does something I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side I may caution or warn during the trial.


**Authority**: O'Malley, Grenig, & Lee, 3 Fed. Jury Prac. & Instr. § 102:70 (6th ed.).

## **JURY INSTRUCTION NO. 43 (Joint)**

[Exhibits During Deliberations]

I am sending the exhibits that have been received in evidence during the trial with you as you retire for your deliberations.

JOINT PROPOSED JURY INSTRUCTIONS

1    **<u>JURY INSTRUCTION NO. 44 (Defendants/Counter-Claimants)</u>**

2    [INTENTIONALLY LEFT BLANK]

# <u>JURY INSTRUCTION NO. 45</u>

[INTENTIONALLY LEFT BLANK]

## JURY INSTRUCTION NO. 46 (Defendants/Counter-Claimants) (Should be placed after Proposed Instruction 23)

[Infringement—Elements—Validity—Unregistered Marks]

The OMG Girlz' trade dress consists of the name "OMG GIRLZ" coupled with combinations of vibrant hair color in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and shades of blue—contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup, layered clothing, voluminous skirts (i.e., tutus and other poofy skirts), and bold, over the top clothing and accessories is not registered.  Trade dress can be valid and provide the trade dress owner with the exclusive right to use that trade dress. Instruction 15.7 requires the Counter-Claimants to prove by a preponderance of the evidence that the OMG Girlz' trade dress is valid.  A valid trade dress is a word, name, symbol, device, or any combination of these items that is either:

1.      inherently distinctive; or

2.      has acquired a secondary meaning.

Only a valid trade dress can be infringed. Only if you determine the OMG Girlz proved by a preponderance of the evidence that their trade dress of the name "OMG GIRLZ" coupled with combinations of vibrant hair color in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and shades of blue—contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup, layered clothing, voluminous skirts (i.e., tutus and other poofy skirts), and bold, over the top clothing and accessories is a valid trademark should you consider whether the OMG Girlz own it or whether MGA's actions infringed it.

Only if you determine that the OMG Girlz' trade dress is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction 23.

**Authority:** Manual of Model Civ. Jury Instr. 9th Cir. 15.9 (2022).

**MGA's Objections to Harris Parties' Proposed Jury Instruction 46:**

(1) MGA objects to identifying Defendants/Counterclaimants as "OMG Girlz," for the reasons stated in MGA's objection to the Harris Parties' Proposed Jury Instruction No. 23B The Harris Parties should not be referred to as the "OMG Girlz" in the jury instructions.

(2) This proposed instruction, which the Harris Parties provide without citation to authority, is based on the Ninth Circuit Model Jury Instruction for the elements of valid unregistered marks, not trade dress. The Harris Parties have simply replaced the phrase "trademark" with "trade dress." *Compare* Model Civ. Jury Instr. 9th Cir. 15.9 [Infringement–Elements–Validity–Unregistered Marks] (2022). This is likely to confuse and mislead the jury. First, trademark is not at issue in this trial, as the Court has granted summary judgment to MGA on the Harris Parties' trademark claim based on its finding that the "OMG" mark is not a strong or unique mark due to its common use by third-party companies and as well-known slang. MSJ Order at 21-22. Second, the proposed jury instruction does not accurately describe the elements of trade dress infringement, the standard for which is explained in MGA's proposed Jury Instruction No. 23, discussed *supra and compare Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 n.14 (9th Cir. 2003) ("A trade dress is protectable if it is nonfunctional and has acquired secondary meaning and if its imitation creates a likelihood of consumer confusion.") (citation and quotation marks omitted) *with* Harris Parties' Proposed Instruction ("A valid trade dress . . . is either; 1. inherently distinctive; or 2. descriptive but has acquired a secondary meaning.").

Accordingly, the Court should omit this instruction in its entirety.

**Defendants/Counter-Claimants' Reply to MGA's Objections:**

As states *supra*, trade dress of product packaging or *tertium quid* requires either a showing of inherent distinctiveness or (if merely descriptive), secondary meaning. It does not require both. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) (distinguishing between the trade dress requirements for product design and product packaging). The *Mattel* case cited by MGA is distinguishable because it discusses product design, which is analyzed under a different standard that the one at issue here. *See Wal-Mart*, 529 U.S. at 765.

This definition of trade dress should be included much earlier in the instructions and in the order that it appears in the Model Instructions (i.e. Current proposed instruction 23 is from Manual of Model Civ. Jury Instr. 9th Cir. 15.7 and Current Proposed instruction 46 is from Manual of Model Civ. Jury Instr. 9th Cir. 15.9). MGA placed this here and the OMG Girlz assented to this mistaken location for purposes of the joint filing only, in an effort to avoid the parties having to renumber all of the foregoing Proposed Instructions.

1
2

## JURY INSTRUCTION NO. 47 (Defendants/Counter-Claimants) (Should be placed after Proposed Instruction 23)

3

[Trade Dress Infringement - Intentional Infringement]

4
5
6
7
8
9
10

If you find that MGA infringed the OMG Girlz trade dress, you must also determine whether the Counter-Claimants have proven that, at the time MGA used the trade dress, MGA acted willfully. MGA acted willfully if it knew that it was infringing the OMG Girlz' trade dress or if it acted with indifference to the OMG Girlz' trade dress rights. A finding of willfulness can also be determined if any of the following factors are present:

11

    1.  MGA's actual or constructive knowledge of another's trade dress;

12
13

    2.  no effort by MGA to seek legal advice or study possible confusion prior to use;

14
15

    3.  MGA's continued use of infringing trade dress after a lawsuit or cease and desist letter;

16

    4.  MGA's awareness of marketing trends and intelligence;

17
18

    5.  the unusual popularity of MGA's L.O.L. Surprise! OMG dolls under the OMG Girlz' trade dress; or

19

    6.  evidence of employee confusion.

20
21
22
23
24
25
26
27
28

**Authority**: Fed. Civ. Jury Instr. 7th Cir. 13.6.5 (2021); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1059 (9th Cir. 1999); *JL Beverage Co., LLC v. Jim Beam Brands Co*., 828 F.3d 1098, 1112 (9th Cir. 2016); E. *& J. Gallo Winery v. Gallo Cattle Co.*, No. CV-F-86-183 REC, 1989 WL 159628, at *13 (E.D. Cal. June 19, 1989), aff'd, 955 F.2d 1327 (9th Cir. 1992), opinion amended and superseded, 967 F.2d 1280 (9th Cir. 1992); *Fleischmann Distilling Corp. v. Maier Brewing Co*., 314 F.2d 149, 157 (9th Cir. 1963); *Marketquest Grp., Inc. v. BIC Corp*., 862 F.3d 927, 937 (9th Cir. 2017); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354

(9th Cir. 1979), abrogated by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1149 (9th Cir. 2002).

**MGA's Objections to Harris Parties' Proposed Jury Instruction 47:**

This proposed instruction should not be given as it is redundant and likely to confuse the jury. To the extent intentional infringement is relevant to this case, it is only relevant as one of the *Sleekcraft* factors for determining the likelihood of consumer confusion. But that is already discussed in both MGA and Hustle Parties' proposed jury instructions on likelihood of confusion, and its repetition as a separate instruction is unnecessary and likely to confuse the jury. Indeed, with the exception of the Seventh Circuit model jury instructions on which Hustle inexplicably relies, every authority cited by the Harris Parties in support of this proposed instruction discusses intentional infringement only in the context of the *Sleekcraft* analysis.

**Defendants/Counter-Claimants' Reply to MGA's Objections:**

Willfulness is one of the Sleekcraft factors for determining whether the OMG Girlz' trade dress has been infringed—which MGA concedes. MGA's state of mind is a central issue in this case, independent from the likelihood of confusion inquiry. Willfulness is a relevant factor in determining the existence of secondary meaning. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264 (9th Cir. 2001) ("Our cases recognize that evidence of deliberate copying is relevant to a determination of secondary meaning"); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 ("[W]e have held that proof of copying strongly supports an inference of secondary meaning.") (9th Cir. 1989).

Contrary to MGA's objection, willfulness will play a key role in the determination of damages, including any advisory opinions solicited by the Court from the jury. For example, the OMG Girlz will seek to recover attorney's fees allowed for "exceptional cases" under the Lanham Act by showing that MGA "acted maliciously, fraudulently, deliberately, or willfully." *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) (citing 15 U.S.C. § 1117(a)) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"); *SAS v. Sawabeh Info. Servs. Co.*, No. CV1104147, 2015 WL 12763541, at *5 (C.D. Cal. June 22, 2015) (explaining that the Ninth Circuit has held that a trademark case is exceptional where the district court finds that the "defendant acted maliciously, fraudulently, deliberately, or willfully."). In addition, as the court recognized, willfulness is also an "important consideration" in determining disgorgement of profits. *See* Dkt. 326 at 32 ("Although willfulness is no longer a precondition to recovery, it remains an important consideration.").

The inclusion of a willfulness instruction is not "merely duplicative." As the Court previously explained in its summary judgment order, "The merits of the infringement claim are not identical to willfulness inquiry: a jury could find that Counter-Defendants infringed upon the OMG Girlz trade dress even if Counter-Claimants fail to provide sufficient evidence to show that Counter-Defendants were willful in their actions, which is a higher bar to meet*." Razor USA LLC v. Vizio, Inc.*, No. 14-cv-01586-SJO (JCGx), 2015 WL 12656941, at *6 (C.D. Cal. Oct. 19, 2015). The jury should therefore be given guidance on what it may consider in determining willfulness, which this instruction provides.

This instruction should be included much earlier in the instructions, closer to the discussion of the other trade dress-related instructions. MGA placed this here and the OMG Girlz assented to this mistaken location for purposes of the joint filing only, in an effort to avoid the parties having to renumber all of the foregoing Proposed Instructions.

## <u>JURY INSTRUCTION NO. 48 (Defendants/Counter-Claimants)</u>

[Trade Dress Infringement – Mental Suffering and Emotional Distress

(Noneconomic Damage)]

In addition to commercial damages, the OMG Girlz seek damages for past mental suffering, loss of enjoyment of life, inconvenience, and/or emotional distress caused by MGA's wrongful conduct.

In order to recover mental suffering and emotional distress damages, it is not necessary for the plaintiff to consult a doctor, miss work, or alter his or her daily activities. Typically, the determination is made based upon the testimony of the plaintiff about his or her feelings caused by the appropriation of his or her identity. Then it will come down to the credibility of the testimony.

In other words, no fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

**Authority:** 31 Causes of Action 2d 121 (Originally published in 2006); McCarthy, The Rights of Publicity and Privacy 2d § 11:36.

**MGA Objections to Harris Parties' Proposed Instruction 48:**

The proposed instruction is vague and provides essentially no guidance to the jury as it deliberates. Failing to instruct the jury that it must award only such damages as will "reasonably and fairly compensate" Counter-Claimants for damages that they have shown they have sustained may mislead the jury as to the purpose of emotional damages, fail to hold Counter-Claimants to their burden of proof, and invite unfair and unwarranted damages.

The Court already has rejected the Harris Parties' claim for emotional distress damages, and it therefore should not be included in the instructions.

Further, the Harris Parties' only claim for monetary relief is for disgorgement of profits, which already is addressed in Proposed Instruction No. 32.

**Defendants/Counter-Claimants' Response to MGA's Objections to Proposed Jury Instruction No. 48:**

Defendants/Counter-Claimants object to MGA's Proposed Instruction 48B as overly broad and imprecise. Defendants' instruction relies on the Judicial Council of California Civil Jury Instructions specific to this claim and to the types of damages available under the Lanham Act, whereas MGA's proposed instruction is based off of a boilerplate instruction directed only to the burden of proof for damages generally. The Lanham Act allows for the OMG Girlz to recover emotional damages suffered as a result of MGA's trade dress infringement. *See Passante v. Moore*, 2012 WL 12878303, at *1 (C.D. Cal. Oct. 26, 2012).

Defendants/Counter-Claimants recognize that the Court has previously ruled that there is insufficient standing to assert emotional damages in this case, and has denied Defendants/Counter-Claimants' *ex parte* application to reconsider the issue of emotional damages on procedural grounds. Defendants/Counter-Claimants include emotional damages in this proposed instruction at minimum to preserve the issue for potential appeal.

# **JURY INSTRUCTION NO. 49**

# **[INTENTIONALLY LEFT BLANK]**

## JURY INSTRUCTION NO. 50A (Defendants/Counter-Claimants)

[Damages for Misappropriation of Name, Likeness, or Identity]

If you decide that the OMG Girlz have proved their claim against MGA, you also must decide how much money will reasonably compensate the OMG Girlz for the harm. This compensation is called "damages."

The OMG Girlz must prove the amount of their damages. The OMG Girlz do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by the OMG Girlz.

1. Humiliation, embarrassment, and mental distress, including any physical symptoms and/or harm to the OMG Girlz reputation. No fixed standard exists for deciding the amount of damages for such emotional damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

2. In addition, the OMG Girlz may recover any profits that MGA received from the use of the OMG Girlz' name or identity or likeness that have not already been taken into account with regard to the above damages. To establish the amount of these profits you must:

   i. Determine the gross, or total, revenue that MGA received from the use;

   ii. Determine the expenses that MGA had in obtaining the gross revenue; and

   iii. Deduct MGA's expenses from the gross revenue.

The OMG Girlz must prove the amount of gross revenue, and MGA must prove the amount of expenses.

**Authority:** Judicial Council of California Civil Jury Instruction 1821; Judicial Council of California Civil Jury Instruction 1820

**Defendants/Counter-Claimants' Objections to Harris Parties' Proposed Jury Instruction No. 50B:**

Defendants object to MGA's Proposed Instruction 50B as overly broad and imprecise. Defendants' instruction relies on the Judicial Council of California Civil Jury Instructions specific to this claim and to the types of damages available under California law, whereas MGA's proposed instruction is based off of a boilerplate instruction directed only to the burden of proof for damages generally.

Defendants/Counter-Claimants recognize that the Court has previously ruled that there is insufficient standing to assert emotional damages in this case, and has denied Defendants/Counter-Claimants' *ex parte* application to reconsider the issue of emotional damages on procedural grounds. Defendants/Counter-Claimants include emotional damages in this proposed instruction at minimum to preserve the issue for potential appeal.

Defendants object to the placement of this instruction. It should appear either after the proposed instructions about the trade dress infringement claim (ending with Proposed Instruction 29) or else closer in proximity to any proposed instructions about damages (e.g., Proposed Instruction 32).

Defendants/Counter-Claimants object to the use of "the Harris Parties" in this instruction. This lawsuit is about the image and likeness of the OMG Girlz.  The only party that is both a defendant and a counter-claimant is "OMG Girlz LLC." The Court has already determined Counter-Claimants, including defendant and counter-claimant OMG Girlz LLC, have been assigned the right to bring this lawsuit on behalf of the individual members of the OMG Girlz.  Indeed, there would be no lawsuit if the OMG Girlz were not named the OMG Girlz.  MGA

119

cannot obscure the foundation of the case by changing the name of the parties or the claimants to be more obscure and inject confusion about the source of the trade dress. Regardless of later assignment, the asserted trade dress is of the OMG Girlz. Referring to the "The OMG Girlz" as the OMG Girlz in a case about the OMG Girlz will not confuse the jury. It will make things simpler. Although MGA seeks declaratory equitable relief against the OMG Girlz LLC, along with Mr. and Mrs. Harris in their individual capacity, Mr. and Mrs. Harris are not Counter-Claimants individually.  Thus, it makes no sense to refer to the parties collectively as the "Harris Parties."  Mr. Harris and Mrs. Harris have counterclaimed through their companies, Pretty Hustle and Grand Hustle, including as interest holders in the relevant intellectual property. *See* Doc. 323.  Defendants/Counter-Claimants would agree to include a clarifying sentence in the opening instruction to help clarify for the jury and to address MGA's concerns, but believes that "The OMG Girlz" is easier to say and understand.  In addition to being simpler for the jury, Defendants and Counter-Claimants should have the right to choose the manner in which they are referred to in the instructions and throughout the trial, especially when it is consistent with the party names in this case.

## <u>JURY INSTRUCTION NO. 50B (MGA)</u>

[Damages—Proof, Measure of Types of Damages]

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the Harris Parties on their common law misappropriation claim, you must determine their damages. The Harris Parties have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Source:** Model Civ. Jury Instr. 9th Cir. 5.1 (2022), Model Civ. Jury Instr. 9th Cir. 5.1, 5.2 (2022).

**MGA Objections to Harris Parties Proposed Instruction 50A:**

The Harris Parties instruction cites only to the CACI model instructions for violations of the California statutory right to publicity, Cal. Civ. Cod § 3344. But the Court has dismissed Counterclaimants' cause of action for violations of § 3344, and only their common law misappropriation claim remains. While § 3344(a) explicitly provides for *statutory* damages in the form of "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages," there is no common law rule that MGA is aware of allowing for damages in the form of MGA's profits. Common law claims are governed by common law damages principles and require a showing of actual harm.

121

*Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 416 (9th Cir. 1996), cited by Counterclaimants, does not support the proposition that disgorgement is an available remedy for common law misappropriation claims: not only did that claim involve claims for both statutory and common law misappropriation, it does not discuss the statutory disgorgement damages, much less hold that they are available under common law. *Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979), cited by Counter-claimants, also does not support their position, as the only relevant discussion of this question appears in Justice Bird's dissent. Accordingly, the Harris Parties' instruction is not only incorrect, it is redundant with Proposed Instructions 48A and 48B, which describes the standard for non-economic damages. Any instruction on this issue must be consistent with the scope of common law damages and so must omit instructions allowing for recovery of MGA's profits.

Further, the Court already has rejected the Harris Parties' claim for emotional distress damages. It therefore should not be included in the instructions, but item 1 entirely concerns emotional damages already excluded from the case. The Harris Parties' instruction will confuse the jury and risk consideration of damages will include matters prohibited by the Court.

**Defendants/Counter-Claimants' Reply to MGA's Objections:**

This instruction, Proposed Instruction 50A, is directed to the separate claim of Misappropriation of Name, Likeness, and Identity, and articulates that the OMG Girlz are entitled to both MGA's wrongfully derived profits and to an award for emotional distress caused by MGA's misappropriation of their name, likeness, and public image. Defendants/Counter-Claimants can recover emotional damages suffered and/or disgorgement of MGA's profits as a result of either or both of its remaining claims. *See Passante v. Moore*, 2012 WL 12878303, at *1 (C.D. Cal.

Oct. 26, 2012) (Lanham Act); *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 416 (9th Cir. 1996) (California Right of Publicity).

As written, MGA's instruction for damages for Defendants/Counter-Claimants claim excludes their right to recover MGA's profits from misappropriation. Under either statutory or common law rules, disgorgement of the non-claimant's profits is available. § 11:34. Damages: commercial loss—Unjust enrichment and infringer's profits, 2 Rights of Publicity and Privacy § 11:34 (2d ed); *see also Lugosi v. Universal Pictures,* 25 Cal. 3d 813, 603 P.2d 425 (1979) (affirming without comment the lower court's holding that for a common law misappropriation claim, plaintiff could recover profits made by defendant movie company in its licensing of the use at issue).

1
2

## JURY INSTRUCTION NO. 51 (MGA)  (Should be placed after Proposed Instruction No. 26)

3

[Use Of The Term OMG]

4

5
6
7

     The term "OMG" is commonly used in slang that means "Oh, my God/gosh" as a text or verbal shorthand.  Further, there is prevalent third-party use of the "OMG" trademark, including several in the fields of music and toys.

8
9
10
11
12

     Based on these facts, the Court has already determined that use of the term "OMG" alone is unlikely to cause consumer confusion.  Accordingly, if you find that any of the L.O.L. Surprise! O.M.G. dolls use the "OMG" term without also incorporating distinctive and protectible elements of the Harris parties' alleged trade dress then, as to those dolls, you must find in favor of MGA.

13

14

**Source:** Summary Judgment Order, dated July 29, 2022.

15

16
17

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 51:**

18
19
20
21
22
23
24
25
26

Defendants/Counter-Claimants object to MGA's proposed instruction in its entirety. This proposed instruction will confuse the jury because it attempts to impermissibly splinter the various elements of the trade dress, rather than correctly requiring the jury to view the trade dress as a whole. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992). There is no claim in this case to the use of "OMG" on its own, and the Court has already taken Defendants/Counter-Claimants' trademark claim away from the jury, making the instruction improper and confusing. The material that MGA seeks to address through this improper instruction is already addressed, at a minimum, by the parties' competing proposals for Proposed Instruction 23.

27

28

**JURY INSTRUCTION NO. 52 (MGA) (Should be placed after Proposed Instruction No. 23)**

[Consistent Overall Look For Trade Dress Protection]

For a party to be entitled to trade dress protection, that party must articulate a specific trade dress and then demonstrate it has, in fact, consistently used that trade dress. Without a sufficiently consistent, stable visual appearance, the alleged trade dress is incapable of being used in such a manner as to distinguish it and denote its source to the consuming public. An alleged trade dress whose only impact is decorative and aesthetic, with no source-identifying role, cannot be given exclusive rights under trade dress law.

If a plaintiff cannot establish that its products or images have a consistent overall look, the trade dress that was allegedly infringed does not exist. While minor variations are acceptable, the overall look of the alleged trade dress must be present and consistent across all items of a claimed line of products or images in order for trade dress protection to exist.

**Source:** *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997); *Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F. Supp. 477, 486 (S.D.N.Y. 1998); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009); *Crafty Productions, Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019); *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir. 2000); *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1255 (10th Cir. 2016); *Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, 667 F. Supp. 1221, 1226, 1231 (N.D. Ill. 1987); *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1328 (Fed. Cir. 1999); 1 *McCarthy on Trademarks and Unfair Competition* §§ 3:1, 8:1(5th ed. 2022).

**Defendants/Counter-Claimants' Objections to MGA's Proposed Jury Instruction No. 52:**

Defendants/Counter-Claimants object to MGA's proposed instruction in its entirety. Not only is this instruction not in the Model instructions, this is an attempt by MGA to reargue aesthetic functionality, an issue that the Court has already decided on summary judgment. The Court overruled MGA's aesthetic functionality argument on summary judgment, holding that Defendants had "presented evidence that the OMG Girlz had a distinctive style that was consistent enough to be recognizable as the OMG Girlz brand. Although bold accessories, vibrant hair colors, or any of these other elements alone, their combination as demonstrated by photographic evidence tends to reflect a consistent look, described in their trade dress definition." (Dkt. 323 at 12). The "consistent overall look" doctrine cited by MGA has not been adopted as law in the Ninth Circuit. *See Paramount Farms Int'l LLC v. Keenan Farms Inc.*, No. 2:12-CV-01463-SVW-E, 2012 WL 5974169, at *2–3 (C.D. Cal. Nov. 28, 2012) ("The Ninth Circuit has not addressed whether it endorses the 'consistent overall look' test."); *Moroccanoil, Inc. v. Marc Anthony Cosms., Inc.*, 57 F. Supp. 3d 1203, 1223–24 (C.D. Cal. 2014); ("the Ninth Circuit has not yet adopted the 'consistent overall look' test for trade dress claims"); *Apple Inc. v. Samsung Electronics Co.*, 768 F.Supp.2d 1040, 1048 (N.D. Cal. 2011) (same).

Even if the "consistent overall look" test had been adopted in this jurisdiction, it would not be applicable to this case. The doctrine is meant to be applied to a "series" or "line of products," not where plaintiff "used multiple package designs for the same product." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir. 2000) (requiring a consistent overall look for trade dress claims based on a line of products and distinguishing between a "a single product" and "a whole line of products"); *Paramount Farms Int'l LLC v. Keenan Farms Inc.,* 2012 WL 5974169, at *2–3 (C.D. Cal. Nov. 28, 2012) ("Thus, to the extent that Defendant takes issue

with bins or other materials that do not share the five factors of the Claimed Trade
Dress, the Court need not consider such items in determining whether Plaintiff holds
a valid trade dress."); *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir.
2000) ("the fact that [plaintiff] packages the same product in several different types
of packaging does not prevent [plaintiff] from seeking trade dress protection for one
of these packaging designs.").

Any substantive points made by this instruction are more clearly and correctly
articulated in Joint Proposed Instruction 22 and 25, which are already agreed to and
based on the Manual of Model Civ. Jury Instr. 9th Cir., and portions of the parties'
competing proposals for Proposed Instruction 23.

**MGA's Reply to Harris Parties' Objections to Proposed Jury Instruction No.
52:**

The Harris Parties' objection is flawed for two reasons. First, it ignores that
numerous Ninth Circuit courts have required a party seeking to demonstrate trade
dress protection to establish a "consistent overall look," even if the Ninth Circuit
has not explicitly adopted that standard. *See Crafty Prods., Inc. v. Michaels
Companies, Inc.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) (applying "consistent
overall look" test even in absence of binding Ninth Circuit authority, relying on
out-of-circuit authority and leading trademark treatise); *Moroccanoil, Inc. v. Marc
Anthony Cosms., Inc.*, 57 F. Supp. 3d 1203, 1223 (C.D. Cal. 2014) (recognizing
lack of Ninth Circuit authority but applying overall look test in the alternative);
*Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1048 (N.D. Cal. 2011)
(same). This test is also supported by a leading trademark treatise. *See* 1 McCarthy
on Trademarks and Unfair Competition § 8:5.50 (5th ed. 2019) ("When the alleged
trade dress consists of a certain look or style of different packaging for a number of
different products, it is more difficult to prove that there is a common denominator

among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.'").

Second, the Harris Parties ignore that this Court has already implicitly adopted the "consistent overall look" test in its summary judgment order, wherein the Court held that the Harris Parties had presented sufficient evidence of a "consistent look" to overcome summary judgment on the nonfunctional trade dress question. Dkt. 323 at 12. The Harris Parties misread this order as *deciding* the overall look question, when of course at the summary judgment stage the Court only held that there was sufficient evidence for that question to be brought to the jury. *Id.* This holding in fact supports inclusion of a "consistent overall look" instruction, which would be consistent with the factors weighed by the Court at summary judgment.