KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Avenue, Suite 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants, | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: The Hon. James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' TRIAL BRIEF REGARDING CONDUCT OF DEFENDANTS' COUNSEL DURING CROSS-EXAMINATION OF MS. CONSORTI**<br><br>Complaint Filed: December 20, 2020<br>Trial Date: May 9, 2023 |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | |

{255247.4}

## I. INTRODUCTION

At the end of the day on Thursday, May 18, 2023, counsel for the Harris Parties engaged in the following cross-examination exchange with Ms. Consorti regarding Exhibit 1187, which is the mood board for the "Shadow" L.O.L. Surprise! O.M.G. doll:

> Q. Now, Exhibit 1187. Do you know what metadata is, ma'am?
> A. No.
> Q. It's the data about a document that shows when it was created.
> A. Okay.
> Q. You're not aware of that? I'll represent to you technically the Exhibit 1187 has no metadata, so we can't tell the date this was created. Did you remove the metadata?
> A. No.
> Q. Do you know who did?

Day 3 PM, at 111:16-25.

This line of questioning was predicated on a falsehood. The native file produced with Exhibit 1187 during discovery <u>contains date metadata</u>. And that date metadata shows the Shadow mood board was created on November 9, 2018, which is consistent with Ms. Consorti's testimony. Day 7 AM, at 49:19-51:12. Mr. Keville's question, which included an affirmative representation there was no metadata for the Shadow mood board, was designed to mislead the jury and give them the false impression Ms. Consorti, or someone else at MGA, had somehow created a fraudulent mood board. This was, literally, trial by ambush—done without warning through a statement made by counsel without any foundation. And it was done either in bad faith or with reckless disregard of the metadata in the native file produced to the Harris Parties.

The Harris Parties do not seek a trial on the merits but, instead, want to turn

1  this case into a trial about their spurious complaints over metadata—which not only
2  have no legitimate basis but which the Harris Parties should have pursued, but did
3  not, long ago during the discovery period. If this Court permits this tactic, the jury
4  will be misled and MGA will be prejudiced. Further, the trial likely will need to be
5  delayed so the parties can designate and depose expert witnesses before they testify
6  regarding metadata.

In response to Mr. Keville's improper conduct, the Court should (1) issue a curative instruction to the jury to dispel the false impression created by the Harris Parties' counsel, (2) permit MGA to introduce and publish metadata for the one mood board document raised by Mr. Keville in his questioning of Ms. Consorti, (3) admonish counsel for the Harris Parties and instruct them not to engage in such tactics going forward since they have not designated a witness to testify regarding the factual predicate for such questions; and (4) foreclose further questioning regarding metadata of the mood boards.

## II.  FACTUAL BACKGROUND

At the beginning of this case, counsel for MGA proposed an ESI protocol to govern this action. Dkt. No. 15, at pp. 6-13. The Harris Parties did not accept the proposal and no ESI agreement was ever reached, as confirmed by counsel for the Harris Parties in a discovery hearing regarding their failure to properly search for relevant emails: "we didn't have an ESI protocol in this case." Transcript of May 1, 2023 hearing, at 32:3-4 (attached as Ex. A to Finkelstein Decl.) Further, the Court never issued any orders regarding metadata—to either side.

Without an ESI protocol, and without any ESI orders, MGA was not obligated to produce any metadata. Having failed to agree to MGA's proposal for an ESI protocol, the Harris Parties know this, but seek to mislead the jury. In fact, MGA has in its possession metadata for all the L.O.L. Surprise! O.M.G. mood boards at issue, which metadata establishes the mood boards were created before the dolls were released.

1  Specific to the mood board for the Shadow doll that was marked as Ex. 1187
2  (which was the subject of Mr. Keville's cross-examination of Ms. Consorti), the
3  native file produced with that document included date metadata confirming the
4  document was created on November 9, 2018:



III. ARGUMENT

The Harris Parties have created a side-show regarding metadata to give the jury the false impression that MGA's witnesses, and specifically Ms. Consorti, engaged in some kind of document "cover-up." This is false, and the Harris Parties know it. The Shadow mood board that was the focus of Mr. Keville's cross-examination was produced with metadata showing a creation date of November 9, 2018. Despite this fact, counsel for the Harris Parties made an affirmative representation to the jury that there was no metadata associated with this document,

and even published for the jury information that purported to show one version of this document without metadata.  Without question, this was improper.[1]  *Globefill Inc. v. Elements Spirits, Inc.*, 640 F. App'x 682, 684 (9th Cir. 2016) (holding that the district court abused its discretion in denying a motion for new trial where counsel referred to document not in evidence and misrepresented contents of document concerning determinative issue).

If the Harris Parties truly believed there was some metadata "issue" associated with Ex. 1187 (or any other document produced by MGA), it was incumbent upon them to raise that issue during discovery so the Magistrate Judge could evaluate the matter and issue a ruling, if appropriate.  And, if the Harris Parties intended to raise metadata during trial, that should have been disclosed in the Final Pretrial Conference Order and an appropriate foundational witness should have been included on their witness list, especially given the mood boards for the dolls at issue have played a central role in this case and the Harris Parties hardly can claim surprise at MGA's witnesses testifying about them.

Instead, it is obvious the Harris Parties were lying in wait, ready to distract the jury with an irrelevant detour and unsubstantiated (and demonstrably false) insinuations.  This Court should not allow that to continue.  Indeed, the Harris Parties have presented absolutely no evidence MGA's mood boards have somehow been fabricated, or were not created when MGA's witnesses claim to have created them.

If the Court were to allow this improper line of attack to continue or let Mr. Keville's prior misrepresentation go uncorrected, it would only serve to confuse the

---

[1] Mr. Keville also claimed in one of his questions to Ms. Consorti that, because her Instagram account is private, "we can't see whether you followed or saw the OMG Girlz, correct?"  Day 7 PM, at 97:7-8.  That statement, also, is false.  Under Instagram's policies, anyone on Instagram can see who follows public accounts (like the OMG Girlz), even followers who keep their accounts private. https://help.instagram.com/517073653436611.

jury regarding the actual issues they need to decide. Further, it would likely result in a trial delay while the parties designate and depose metadata experts, to analyze metadata about which there is no legitimate claim of fabrication. Thus, to the extent metadata may be generally relevant, its probative value in this case is substantially outweighed by the risk of misleading the jury, causing undue delay, and wasting time. The evidence should be excluded under FRE 403.

## IV.   CONCLUSION

The Harris Parties have resorted to improper tactics—accusing MGA's main designer witness of "removing" metadata from a document that was produced <u>with metadata</u>. There was no ESI agreement, the Harris Parties never obtained any ESI Order during this case, and the Harris Parties never disclosed any metadata witnesses prior to trial. Yet the Harris Parties want to turn this case into a trial about metadata to cast illegitimate doubt about the design process for the dolls at issue.

The Court should admonish Mr. Keville, issue a curative instruction, permit MGA to introduce and publish the accurate metadata information for the one mood board raised by Mr. Keville thus far, and not permit the Harris Parties to continue to engage in this line of questioning.

Dated: May 22, 2023                     KELLER/ANDERLE LLP

By: _____
Chase A. Scolnick
Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian