Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Cesie Alvarez (*pro hac vice*)
calvarez@winston.com
Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

*Attorneys for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA
"TINY" HARRIS, OMG GIRLZ LLC, and
*Counter-Claimants* GRAND HUSTLE, LLC,
PRETTY HUSTLE, LLC and OMG GIRLZ LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | **Case No. 2:20-cv-11548-JVS-AGR**<br><br>**DEFENDANTS' / COUNTERCLAIMANTS' BRIEFS ON CERTAIN JURY INSTRUCTIONS** |

**OMG GIRLZ BRIEFS ON CERTAIN JURY INSTRUCTIONS**

Pursuant to the discussion at the preliminary charge conference, the OMG Girlz file the below briefs on certain jury instruction issues. For the Court's convenience, the briefs are compiled in this single filing, with each brief being two pages or less.

**JURY INSTRUCTION NO. 23B—Elements and Burden of Proof—Trade Dress**

The Court adopted the OMG Girlz proposed instruction for the trade dress elements. MGA's primary objection to this instruction is to the inclusion of the italicized and underlined portion below:

1. The trade dress at issue, consisting of: the name "OMG GIRLZ" coupled with combinations of vibrant hair color in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and shades of blue—contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup, layered clothing, voluminous skirts (i.e., tutus and other poofy skirts), and bold, over the top clothing and accessories *is distinctive or* has acquired secondary meaning;

The OMG Girlz do not believe there is any dispute that this is the correct standard. Indeed, the Final Pretrial Conference Order states that one of the issues for trial is "[w]hether the Counter-Claimants' asserted trade dress has acquired secondary meaning *and/or is distinctive*." Dkt. 492 at 22 (emphasis added). The premise of MGA's objection is an assertion that the Court already decided on summary judgment that the trade dress is an unregistered product design, which can only be protectable upon a showing of secondary meaning. Dkt. 698 at 30-31 (citing to *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000). But MGA did not move on that issue and the Court made no such finding.

What MGA argued was that "it is unclear" to MGA whether the OMG Girlz trade dress is product design or product packaging, "[b]ut even if deemed 'packaging,' *the trade dress is not inherently distinctive*." Dkt. 157 at 9 (emphasis added). Thus, MGA was arguing that the trade dress is not distinctive; it was not arguing that distinctiveness is irrelevant. Indeed, MGA spent the next pages of its motion arguing why it believed that the OMG Girlz trade dress was not distinctive, before turning to the secondary meaning issue. *Id.* at 9–13. MGA did not argue that the OMG Girlz trade dress cannot

1  be packaging.

2  In response, the OMG Girlz specifically noted that their trade dress is either
3  packaging or, as in *Two Pesos*, a "tertium quid that is akin to product packaging." Dkt.
4  204 at 13 (quoting *Walmart*, which distinguished the restaurant décor trade dress in *Two*
5  *Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992) from product design).

6  The Court's Summary Judgment Order made no finding on the issue (consistent
7  with MGA not moving on that issue). The Court's Order instead analyzed MGA's
8  arguments in turn and denied summary judgment on the trade dress claim. Dkt. 326 at
9  9-14. The Court even made several statements making clear that the OMG Girlz trade
10 dress could be distinctive, and thus was a live issue:

- "In sum, Counterclaimants have presented evidence that the OMG Girlz ***had a distinctive style*** that was consistent enough to be recognizable as the OMG Girlz brand" (*id.* at 12) (emphasis added);
- "As previously discussed, these examples of the other musical groups tend to demonstrate that the OMG Girlz trade dress ***can be distinctive*** despite certain of their claimed elements (colorful hair or bold clothing) being present in other artists or groups" (*id.* at 13) (emphasis added);
- "After all, if the OMG Girlz have a ***distinctive look*** despite sharing several of those elements in common with other musical artists, there must exist "competitive alternatives" to their look" (*id.* at 130-14) (emphasis added); and
- "Counterclaimants presented their own photographs that do ***reflect a distinctive style***." *Id.* (emphasis added).

Thus, contrary to MGA's arguments, this instruction is not "relitigating" an issue. Dkt. 698 at 30. It is providing the correct instruction on an issue that the Court left open for the jury to decide.

**JURY INSTRUCTION NO. 24B—Elements—Validity—Distinctiveness—Secondary Meaning**

The Court correctly adopted the OMG Girlz proposed jury instruction number 24 on secondary meaning. However, during the preliminary charge conference MGA raised an issue with the italicized and underlined portion of the final paragraph in the instruction:

> The OMG Girlz have the burden of proving that the OMG Girlz' trade dress has acquired a secondary meaning. *MGA has the burden of proving that the OMG Girlz' trade dress lacks secondary meaning.*

The OMG Girlz noted that they would review the issue. After consulting the comments to the model instruction, the OMG Girlz agree the second sentence should be removed. As explained in the comments, "this instruction specifies two different burdens of persuasion as to secondary meaning," since "[t]he burden is on the plaintiff if the mark is not registered, in which case part of the plaintiff's burden is to show the mark is distinctive (either by being inherently distinctive or by having acquired secondary meaning), and hence protectable." (citing *Self–Realization Fellowship Church v. Ananda*, 59 F.3d 902, 910-12 (9th Cir. 1995). Since the OMG Girlz trade dress is not registered, they agree they bear the burden and the second sentence should be removed.

**JURY INSTRUCTION NO. 29—Defenses—"Classic Fair (15 U.S.C. § 1115(b)(4))**

The Court's preliminary instructions use MGA's instruction on Classic Fair Use over the OMG Girlz objection that this defense had been waived and did not apply. As noted by the Court, the defense does not appear in the prior Pretrial Conference Order (Dkt. 492). However, it was inadvertently included in the initial jury instructions for the prior trial. There was no final charge conference in the prior trial (or even a preliminary one), so the OMG Girlz did not object to its inclusion. For this trial, where the OMG Girlz have objected throughout the jury instruction process, the defense should be removed since it was abandoned and/or waived by MGA.

If the Court does not find abandonment/waiver, the instruction should still be removed because the "classic fair use" defense is not applicable. As the Ninth Circuit explained, the classic fair use defense, "in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992); *see also Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002) ("We distinguish two types of fair use: 'classic fair use,' in which 'the defendant has used the plaintiff's mark to describe the defendant's *own* product,' and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the *plaintiff's* product' for the purpose of, for example, comparison to the defendant's product."). MGA has not asserted—nor has it presented any evidence—that its use of the trade dress is necessary to *describe* its OMG fashion dolls. Indeed, that defense would be at odds with MGA's First Amendment defense, which requires the use of the trade dress to be an expressive work with artistic relevance. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013). If MGA was merely using the trade dress to describe the product, then it is not using it to express something artistic.

During the preliminary charge conference, the Court inquired whether the recent decision in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith* has any impact

| | |
|---|---|
| 1 | on this issue. No. 21-869, 2023 WL 3511534, at *4 (U.S. May 18, 2023). It does not. |
| 2 | That case deals with the fair use defense in a copyright case, which has different |
| 3 | elements. 17 U.S.C.A. § 107 (West) ("In determining whether the use made of a work |
| 4 | in any particular case is a fair use the factors to be considered shall include--(1) the |
| 5 | purpose and character of the use, including whether such use is of a commercial nature |
| 6 | or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the |
| 7 | amount and substantiality of the portion used in relation to the copyrighted work as a |
| 8 | whole; and (4) the effect of the use upon the potential market for or value of the |
| 9 | copyrighted work."). Those elements do not track the "classic fair use" defense in the |
| 10 | trademark context, which focuses on the defendants' use of the mark to describe its |
| 11 | goods. |
| 12 |     The issue in the case was also limited to the first factor, and which party that |
| 13 | factor favored. *Warhol*, 2023 WL 3511534, at *5 ("In this Court, the sole question |
| 14 | presented is whether the first fair use factor, 'the purpose and character of the use, |
| 15 | including whether such use is of a commercial nature or is for nonprofit educational |
| 16 | purposes,' § 107(1), weighs in favor of AWF's recent commercial licensing to Condé |
| 17 | Nast."). The Supreme Court held it weighed in favor of the original photographer, Lynn |
| 18 | Goldsmith, because the "original photograph of Prince, and AWF's copying use of that |
| 19 | photograph in an image licensed to a special edition magazine devoted to Prince, share |
| 20 | substantially the same purpose, and the use is of a commercial nature." *Id.* at *20. To |
| 21 | the extent this copyright decision bears on the current case, it would favor the OMG |
| 22 | Girlz since they are the party rebutting a fair use defense. However, as discussed, the |
| 23 | "classic fair use" trade dress defense is simply inapplicable in the current case. |
| 24 | Accordingly, this instruction should be removed. |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**JURY INSTRUCTION NO. 50—Damages for Misappropriation of Name, Likeness, or Identity**

The Court adopted the OMG Girlz proposed instruction on damages for their right of publicity claim. MGA objected to this instruction because it states that "the OMG Girlz may recover any profits that MGA received from the use of the OMG Girlz' name or identity or likeness that have not already been taken into account with regard to the above damages." Dkt. 698 at 118. Specifically, MGA argues that "there is no common law rule that MGA is aware of allowing for damages in the form of MGA's profits." *Id.* at 121. But recovery of a defendant's profits is a widely used remedy in many analogous situations, such that the prevailing view is they are recoverable in a right of publicity claim. Restatement (Third) of Unfair Competition § 49 comment d (1995) ("Although there is little case law, it is widely assumed that the defendant's profits are an appropriate measure of relief in right of publicity cases under rules analogous to the recovery of profits in trademark, trade secret, and copyright cases.") (citing cases). Indeed, "the Restatement of Unfair Competition takes the position that in right of publicity cases, a recovery of the infringer's profits attributable to the infringement is an 'ordinarily available' remedy." § 11:35. Damages: commercial loss—Unjust enrichment and infringer's profits, 2 Rights of Publicity and Privacy § 11:35 (2d ed) (citing Restatement (Third) of Unfair Competition § 49 (1995)). That is because "monetary relief may be awarded for the pecuniary loss to the plaintiff ***or the pecuniary gain to the defendant*** resulting from the unauthorized use of the plaintiff's identity." Restatement (Third) of Unfair Competition § 49 (1995) (emphasis added). Notably, MGA has not cited any authority to go against this common understanding.

MGA's argument that the OMG Girlz cannot satisfy the "resulting injury" element of the common law right of publicity fails for the same reasons. The resulting injury is the infringement of the holder's economic right to "prevent others from misappropriating" the economic value associated with the celebrity's fame through the merchandising of the name, voice, signature, photograph, or likeness of the celebrity.

*Kieu Hoang v. Phong Minh Tran*, 60 Cal. App. 5th 513 (2d Dist. 2021); *see also White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992), *as amended* (Aug. 19, 1992) ("Considerable energy and ingenuity are expended by those who have achieved celebrity value to exploit it for profit. The law protects the celebrity's sole right to exploit this value."). Said another way, "if a person's identity (even that of a non-celebrity) is used in advertising or promotion, it will be presumed that the identity had some commercial value and its use caused some loss." 1 Rights of Publicity and Privacy § 6:50 (2d ed).

Since lost profits are recoverable, the jury should be instructed on them. MGA takes issue with the OMG Girlz instruction because it is based off of California Civil Jury Instructions (CACI) No. 1821, which relates to a statutory claim and puts the burden on the defendant to show deductions. Dkt. 698 at 121. But that methodology is consistent with the recovery of profits in analogous situations like trademark and trade dress infringement, and a recognized methodology for a common law right of publicity claim. § 11:35. Damages: commercial loss—Unjust enrichment and infringer's profits, 2 Rights of Publicity and Privacy § 11:35 (2d ed) ("Under either statutory or common law rules, if the trier of fact does not believe the infringer's evidence of cost deductions, then it can award to plaintiff the gross income resulting from sales of the infringing items, or attributable to the infringing uses."). MGA offers no competing proposal or any case law to say why the instruction is incorrect or should be altered. MGA's objection should be overruled. The Court was correct to adopt the OMG Girlz proposal for Instruction No. 50.

**JURY INSTRUCTION NO. 51—USE OF "OMG"**

The Court has indicated that it will adopt the following instruction from MGA related to the term OMG:

> The term "OMG" is commonly used in slang that means "Oh, my God/gosh" as a text or verbal shorthand. Further, there is prevalent third-party use of the "OMG" trademark, including several in the fields of music and toys. Based on these facts, the Court has already determined that use of the term "OMG" alone is unlikely to cause consumer confusion. Accordingly, if you find that any of the L.O.L. Surprise! O.M.G. dolls use the "OMG" term without also incorporating distinctive and protectible elements of the Harris parties' alleged trade dress then, as to those dolls, you must find in favor of MGA.

This instruction does not come from any model or case law, and should be rejected for because it risks confusing and misleading the jury. There are three fundamental flaws in the instruction.

*First*, the instruction is improperly premised on the Court's ruling regarding a now-dismissed *trademark* claim. The OMG Girlz' trademark claim was dismissed at summary judgment, in part, because the Court found that the "OMG" mark, alone, was too commonplace to cause consumer confusion (which is what MGA has now inappropriately adopted in its instruction). ECF No. 326 at 20-22. That has no bearing on the trade dress claim and could mislead the jury into thinking there is some separate trademark claim for "OMG" when there is not.

*Second*, the instruction is duplicative of two existing instructions. Instruction 23 instructs the jury on the asserted trade dress, including specifically that it is "the name 'OMG Girlz' ***coupled with*** combinations of" the other elements, and not "OMG" alone. Instruction No. 26 further instructs the jury on what to consider in determining likelihood of confusion, which includes whether "the overall impression created by the ***OMG Girlz' trade dress*** in the marketplace is similar to that created by MGA's L.O.L.

OMG Girls dolls in appearance." Thus, the jury is already asked to consider the trade dress—which is a combination of OMG Girlz and other elements—against the OMG Dolls. A separate instruction on whether "OMG" on its own, which does not relate to any claim in this case, is inappropriate and will confuse and mislead the jury.

*Third*, the instruction improperly suggests that each element of the claimed trade dress definition should be separately analyzed and that the jury must determine a single element alone is "distinctive" and "protectable." That is contrary to law. Trade dress infringement actions are based on the "total combination of elements of the 'trade dress' as defined by the plaintiff that is at issue" and "a defendant cannot avoid liability for infringing a trade dress by segregating out individual elements of the trade dress as defined by plaintiff and arguing that no one of these is valid and protectable in and of itself." 1 *McCarthy on Trademarks and Unfair Competition,* 8:2, 8–9; *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("It is crucial that we focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create"). MGA's proposed instruction incorrectly tells the jury they must look at each element other than OMG and determine that the element alone is distinctive and protectable, otherwise MGA wins. That is not the law and would be highly prejudicial to include.

Dated: May 24, 2023  

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/ *John R. Keville*
    John R. Keville

*Attorney for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and *Counter-Claimants* GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC