| | |
|---|---|
| Erin R. Ranahan (SBN: 235286)<br>eranahan@winston.com<br>Cesie Alvarez (*pro hac vice*)<br>calvarez@winston.com<br>Jiepu (Bobby) Li (SBN: 342224)<br>bli@winston.com<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071-1543<br>Telephone:  (213) 615-1700 | John R. Keville (*pro hac vice*)<br>jkeville@sheppardmullin.com<br>Robert L. Green (*pro hac vice*)<br>rgreen@sheppardmullin.com<br>Chante B. Westmoreland (*pro hac vice*)<br>cwestmoreland@sheppardmullin.com<br>SHEPPARD MULLIN RICHTER &<br>HAMPTON LLP<br>700 Louisiana Street, Suite 2750<br>Houston, TX 77002<br>Telephone: 713-431-7100 |

*Attorneys for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and
*Counter-Claimants* GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>          Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>          Counter-Claimants,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>          Counter-Defendants. | **Case No. 2:20-cv-11548-JVS-AGR**<br><br>**DEFENDANTS' / COUNTERCLAIMANTS' TRIAL BRIEF REGARDING DR. ISAACSON'S NEW SURVEY EVIDENCE AND OPINIONS REVEALED FOR THE FIRST TIME AT TRIAL** |

## I. INTRODUCTION

Yesterday, Dr. Isaacson revealed for the first time that he had conducted additional survey evidence of the survey panel following his reports and deposition. He revealed that information—not during his direct testimony, despite thoroughly discussing his surveys—but unprompted on cross-examination. Dr. Isaacson then proceeded to provide his opinion to the jury on what this undisclosed additional data showed. MGA did not disclose this additional data, analysis, or opinions as required by Rule 26 of the Federal Rules. Accordingly, Dr. Isaacson's testimony on this issue should properly be stricken. Mindful of the limited time available and the near-final completion of the evidence in this case, the OMG Girlz request that the Court preclude any further reliance by MGA on this post-deposition survey investigation Dr. Isaacson performed and a short curative instruction to the jury.[1]

## II. STATEMENT OF FACTS

Yesterday, during cross examination, Dr. Isaacson revealed for the first time that after his deposition he went back and gathered additional data from the survey panel, as follows:

> **Q. You didn't screen for race or ethnicity in your survey respondents either, did you?**
>
> A. At the time that I did the survey, I didn't ask people what their race or ethnicity was. **After I completed the survey, I went back and gathered some data on race and ethnicity.**
>
> **Q. But your survey was not specifically designed to control for that, right?**
>
> A. At the time that I did the survey, I didn't ask for that, **but I did gather data on that later**. Those questions were not designed into my survey at the time. **Again, I asked about that later**.
>
> Q. Do you recall answering that question differently during your deposition?
>
> A. **At the time of my deposition, I hadn't yet gone back to gather that additional data on race and ethnicity**.

---

[1] The OMG Girlz reached out to meet and confer with MGA on this issue. The parties addressed this issue before the Court this morning, and the OMG Girlz understand that the Court has granted permission for the OMG Girlz to file this short trial brief.

1

Q. So since your deposition, you've went back and looked, correct?

A. Correct.

Q. Did you provide any of that information to opposing counsel?

A. I don't know whether that information was provided to opposing counsel.

Q. So you don't know whether that was disclosed to us or not prior to your testimony today?

A. I don't know.

**Q. So once again, was the survey specifically designed to control for race or ethnicity?**

A. The survey was designed to reflect the broad population of U.S. consumers, including all races and all ethnicities. **After I did the survey and after my deposition, I went back, gathered some additional data from the panel that confirmed that in fact the survey represented a variety of races and ethnicities**.

Q. Which you didn't disclose, correct?

A. I think I just answered that. I don't know whether counsel disclosed that or not.

5/24 AM Tr. 115:12-116:23.

When pressed on whether any of that data or information had been disclosed to the OMG Girlz' counsel, Dr. Isaacson testified "I don't know" and then offered his opinion on what that data allegedly showed, asserting it "confirmed that in fact the survey represented a variety of races and ethnicities." 5/24 AM Tr. 116:18-20. MGA has not provided any of this data, analysis, or opinions to the OMG Girlz, and still has not. Keville Decl., ¶ 2.

### III.   ARGUMENT

The OMG Girlz were materially and significantly prejudiced by Dr. Isaacson's testimony on his further survey investigation—particularly without knowing what the underlying data from that investigation showed. Dr. Isaacson did not raise this on direct examination, despite devoting nearly his entire time to describing the surveys, 5/24 AM Tr.73-75, 80-103, and testifying on the general composition of the survey panel, 5/24 AM Tr. 88:24-89:3. Nor could he have raised this new evidence on direct

2

DEFENDANTS' / COUNTERCLAIMANTS' TRIAL BRIEF REGARDING DR. ISAACSON'S NEW SURVEY EVIDENCE AND OPINIONS REVEALED FOR THE FIRST TIME AT TRIAL

examination. Fed. R. Civ. P. 26(a)(2)(B). Instead, the OMG Girlz confronted all of this for the first time during cross examination *at trial*—which the Federal Rules prohibit. The OMG Girlz did not elicit this testimony as shown above, and the OMG Girlz had no opportunity to test the veracity of this underlying new evidence.

A trial by ambush, such as Dr. Isaacson's new survey evidence, is one of the primary litigation abuses that the discovery rules seek to prevent. *Vincent v. Classic Party Rentals, Inc.*, 2009 WL 10674433, at *3 (C.D. Cal. Oct. 22, 2009) ("The court notes that one of the principal goals of discovery is to prevent trial by ambush and surprise… Confronting [new] evidence for the first time at trial would place Classic at a material and significant disadvantage"). MGA's failure to timely disclose this clearly relevant and responsive evidence substantially prejudices the OMG Girlz and is neither justified nor harmless.

## IV.   CONCLUSION

For the foregoing reasons, the OMG Girlz respectfully request the Court to preclude MGA from further reliance on Dr. Isaacson's post-deposition investigation of the survey panel, and to issue a short curative instruction, as follows:

> On Wednesday, during cross-examination, Dr. Isaacson testified that following his deposition, he went back and gathered some additional data from the survey panel. The federal rules require disclosure of data underlying an expert's opinion. MGA and Dr. Isaacson did not provide this data. Accordingly, you should disregard Dr. Isaacson's testimony on this issue and you may further infer, though you are not required to do so, that if the additional data had been produced in court, it would have been unfavorable to MGA. You may give any such inference, whatever force or effect as you think is appropriate under all the facts and circumstances

This instruction will not unfairly prejudice either party, and alleviates the harm incurred from the untimely revealing of this information.

Dated: May 25, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/ *John R. Keville*
  John R. Keville

*Attorney for Defendants*
CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and *Counter-Claimants* GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC

4

DEFENDANTS' / COUNTERCLAIMANTS' TRIAL BRIEF REGARDING DR. ISAACSON'S NEW SURVEY EVIDENCE AND OPINIONS REVEALED FOR THE FIRST TIME AT TRIAL