KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Avenue, Suite 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: The Hon. James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANTS' BRIEF RE DR. BRUCE ISAACSON'S TRIAL TESTIMONY**<br><br>Complaint Filed: December 20, 2020<br>Trial Date: May 9, 2023 |

1  The Harris Parties' argument is wrong factually and directly conflicts with the Federal Rules of Civil Procedure's disclosure requirements. MGA requests the Court reject the argument and reject the Harris Parties' improper adverse inference request.

## I. THE FEDERAL RULES FORECLOSE THE HARRIS PARTIES' ARGUMENT THAT DR. ISAACSON WAS REQUIRED TO DISCLOSE EVIDENCE ELICITED DURING THE HARRIS PARTIES' CROSS-EXAMINATION

The Federal Rules are clear that an expert's report needs to include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(a)(1)(ii), in turn, requires disclosure of evidence "that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." The Advisory Committee Notes to the Federal Rules of Civil Procedure make clear that these provisions are only applicable to the opinions the expert indents to offer *on direct examination*. Specifically, the Notes of Advisory Committee on Rules—1993 Amendment discusses the disclosure obligations under Rule 26(a)(2)(B), stating:

> Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily **be permitted to use on direct examination** any expert testimony not so disclosed. Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports….Nevertheless, the report, **which is intended to set forth the substance of the direct examination**, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Fed. R. Civ. P. 26 Notes of Advisory Committee on Rules—1993 Amendment (emphases added); *see also U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652, 655 (C.D. Cal. 2007) ("[A] party will not ordinarily be permitted to use *on direct*

-1-

*examination* any expert testimony not so disclosed." (emphasis added)); *Thermolife International, LLC v. Myogenix Corp.*, 2016 WL 3952128, at *1 (S.D. Cal., July 22, 2016) ("[E]xpert reports must disclose the substance of an expert's testimony *for direct examination* and the bases for those opinions." (emphasis added)); *Avila v. Los Angeles Police Department*, 2012 WL 13008119, at *4 (C.D. Cal., Mar. 19, 2012) ("[A] party will not ordinarily be permitted to use, *on direct examination*, any expert testimony that does not conform to the disclosure requirements." (emphasis added)); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 2141296, at *2 (N.D. Cal., July 25, 2007) ("The [expert] report 'is intended to set forth the substance *of the direct examination*'" (emphasis added; citation omitted)); *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007) ("The purpose of the report is to set forth the substance *of the direct examination* . . ." (emphasis added)); *cf. Stallworth v. Nike Retail Servs., Inc.*, 2021 WL 6618781, at *1 (C.D. Cal. Dec. 1, 2021) (denying motion in limine "to the extent it seeks to exclude rebuttal and impeachment evidence not produced in the course of discovery"); *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2019 WL 266970, at *8 (C.D. Cal. Jan. 15, 2019) (denying motion to exclude undisclosed rebuttal evidence because "[t]he Court recognizes that plaintiff may present impeachment and rebuttal evidence in accordance with the Rule 26 and Rule 37.")

Dr. Isaacson's Report and direct examination trial testimony complied with these rules. The opinion Dr. Isaacson offered for MGA in his report and at trial was that he conducted two surveys: a likelihood of confusion survey and a likeness survey. Dkt. No. 144-2 ¶ 117. The surveys included over 2,700 interviews. *Id.* ¶ 118. The surveys did "not indicate any likelihood of confusion between the L.O.L. Surprise! O.M.G. Dolls and the OMG Girlz, and [the] likeness survey does not indicate that relevant consumers are likely to mistakenly identify the L.O.L. Surprise! O.M.G. Dolls as the OMG Girlz." *Id.* ¶ 120. Dr. Isaacson described the panel of people that the survey draws from, and explained how that panel is designed to be varied. He also explained how he had "a mix of ages, genders, and geography, parts

-2-

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO DEFENDANT AND COUNTER-CLAIMANTS' BRIEF RE DR. BRUCE ISAACSON'S TRIAL TESTIMONY

of the country, that would match consumers who buy fashion dolls."

The Harris Parties do not, and cannot, contend that Dr. Isaacson's report did not comply with Rule 26, or that his direct examination went beyond his report. Indeed, the testimony the Harris Parties rely on came from their cross-examination of Dr. Isaacson. Nevertheless, the Harris Parties are essentially arguing that MGA had to anticipate their impeachment questions and then provide additional evidence that may rebut their attempted impeachment. Rule 26 does not require this. *See Stallworth*, 2021 WL 6618781 at *1; *Mfg. Automation*, 2019 WL 266970 at *8. This is not a failure to disclose issue; this is the Harris Parties not liking an answer to a question they asked. At bottom, Dr. Isaacson was asked a question, and he was required to give a truthful answer. Moreover, if the Harris Parties believed that Dr. Isaacson's answer was non-responsive, they could have objected and asked the Court to strike the answer. Instead, they continued to ask him follow-up questions on this topic, by choice, hoping to impeach his credibility.

The Harris Parties' argument also fails to address the fulsome disclosures made in Dr. Isaacson's report and his testimony about the general panel the survey participants were drawn from during his deposition. Dr. Isaacson's report disclosed the background characteristics of the panel members contained within the database that responded to the survey and that he actually relied upon. *See, e.g.*, Dkt. No. 144-2 at 159-243 (Isaacson Report, Ex. 9), 248-295 (Isaacson Report, Ex. 12). The report also described "the recruiting methods [used] for the likelihood of confusion survey and the likeness survey, including information about the panel used to locate prospective survey respondents for both surveys." Dkt. No. 144-2 at 135. Specifically, "the surveys recruited respondents from a panel operated by a company called ProdegeMR. ProdegeMR's panel includes millions of consumers globally who have enrolled to become prospective survey respondents from time to time. Panel members are recruited from a wide variety of sources, and the panel can represent the general population of the United States according to demographics such

-3-

as gender, age, geography, and other variables." *Id.*

Dr. Isaacson's report also included a demographic breakdown of the panel members in the database, which reflects that "Black/African American" represent 10% of the panel:



*Id.* at 148.  Thus, Dr. Isaacson disclosed demographic information regarding the database of people from which the survey participants were selected and its quality control methods.  Dr. Isaacson also provided the breakdown of demographic characteristics for survey participants that he actually relied upon. *See* Dkt. No. 144-2, Exs. 9, 12.

During his deposition, Dr. Isaacson explained why racial and ethnic makeup is not important to a survey, but also stated that the surveys he conducts generally match the ethnic breakdown of the U.S.  Specifically, he was asked during his deposition:

-4-

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO DEFENDANT AND COUNTER-CLAIMANTS' BRIEF RE DR. BRUCE ISAACSON'S TRIAL TESTIMONY

1  Q. And wouldn't it be important to know the race or ethnicity of
2  participants, given the fact that the OMG dolls have a diversity theme
3  or are intended to appeal to a diverse audience?
4  A. No. I've never seen a litigation survey that screened people for --
5  along their race or ethnicity. And in this case, I would expect that the
6  racial or ethnic makeup of the survey would reflect the racial or ethnic
7  makeup of the population of the U.S.
8  **Q. Did you check for that to make sure that the racial or ethnic**
9  **makeup of the survey mirrored or reflected the racial or ethnic**
10 **makeup of the population of the U.S.?**
11 **A. So in general, yes. Not specifically for this survey. But one of the**
12 **reasons why online surveys are considered reliable is -- is that they**
13 **represent the general population of the U.S.**
14 **So one would expect that, for a survey like this, the universe would**
15 **look a lot like -- in terms of racial and ethnic, one would expect the**
16 **survey population to look like -- a lot like the general population of**
17 **the U.S.**
18 Decl. of Chase Scolnick, Ex. A (Isaacson Depo Tr.) at 115:15-116:12.  Thus, Dr.
19 Isaacson explained during his deposition why he believed the *general database of*
20 *panel participants* was appropriate.  He never opined that his survey was reliable
21 because the specific panel members were racially or ethnically diverse. Accordingly,
22 under Rule 26 neither he nor MGA was required to disclose evidence about an
23 opinion he *was not offering*.
24 **II.   THE HARRIS PARTIES' REQUESTED RELIEF IS IMPROPER**
25 Finally, the Harris Parties' proposed adverse inference is improper.  Dr.
26 Isaacson provided an opinion describing the general makeup of the panel members
27 and included exhibits in his report demonstrating that the panel's members matched
28 the U.S.'s ethnic breakdown.  He then explained during his deposition that the

surveys generally reflect ethnic makeup of the United States. At trial, all he did was answer a question posed by the Harris Parties, which confirmed what he said during his deposition, that the survey "reflected the racial or ethnic makeup of the population of the U.S." There was no testimony regarding any additional "data," yet the Harris Parties request draconian relief of an adverse inference instruction. This makes no sense – there was nothing hidden from them, there were no new opinions, and no new facts included that supported the opinions in his report or those he offered on direct exam at trial. There was no evidence that MGA failed to disclose in violation of Rule 26(a). Thus, the Harris Parties' special instruction—and particularly their request for an adverse inference—is inappropriate.

### III.   CONCLUSION

Realizing Dr. Isaacson's testimony is devastating to their claims of consumer confusion, the Harris Parties are now seeking this Court's intervention to provide an unwarranted special instruction based on a manufactured claim of impropriety. But the Federal Rules of Civil Procedure confirm that MGA did not need to offer evidence rebutting the Harris Parties' attempted impeachment of Dr. Isaacson; MGA needed only to produce the opinions and evidence supporting Dr. Isaacson's direct examination testimony. That's what MGA did. The Court should therefore reject the Harris Parties improper adverse inference request.

Dated: May 26, 2023

KELLER/ANDERLE LLP

By: _____
Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

-6-

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO DEFENDANT AND COUNTER-CLAIMANTS' BRIEF RE DR. BRUCE ISAACSON'S TRIAL TESTIMONY