1    John R. Keville (*pro hac vice*)
     jkeville@sheppardmullin.com
2    Robert L. Green (*pro hac vice*)
     rgreen@sheppardmullin.com
3    Chante B. Westmoreland (*pro hac vice*)
     cwestmoreland@sheppardmullin.com
4    SHEPPARD MULLIN RICHTER &
     HAMPTON LLP
5    700 Louisiana Street, Suite 2750
     Houston, TX 77002
6    Telephone: (713) 431-7100

7    *Attorneys for Defendants*
     *CLIFFORD "T.I." HARRIS, TAMEKA*
8    *"TINY" HARRIS, OMG GIRLZ LLC,*
     *and Counter-Claimants*
9    *GRAND HUSTLE, LLC, PRETTY*
     *HUSTLE, LLC and OMG GIRLZ LLC*

10
     Valerie E. Alter (SBN: 239905)
11   valter@sheppardmullin.com
     SHEPPARD MULLIN RICHTER &
12   HAMPTON LLP
     1901 Avenue of the Stars, Suite 1600
13   Los Angeles, CA 90067

Telephone: (310) 228-3700
Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

14

15                  **UNITED STATES DISTRICT COURT**
16                  **CENTRAL DISTRICT OF CALIFORNIA**

17   MGA ENTERTAINMENT, INC.,          Case No.  **2:20-cv-11548-JVS-AGR**
     a California corporation,
18                                      **DEFENDANTS' /**
                 Plaintiff,             **COUNTERCLAIMANTS' MOTION**
19                                      **FOR NEW TRIAL AND FOR**
             vs.                        **JUDGMENT AS A MATTER OF**
20                                      **LAW ON PLAINTIFF / COUNTER-**
     CLIFFORD "T.I." HARRIS, an         **DEFENDANTS' FIRST**
21   individual; TAMEKA "TINY" HARRIS,  **AMENDMENT DEFENSE**
     an individual; OMG GIRLZ LLC, a
22   Delaware limited liability company; and
     DOES 1-10, inclusive,
23
                 Defendants.
24
     GRAND HUSTLE, LLC, PRETTY
25   HUSTLE, LLC, and OMG GIRLZ LLC,

26               Counter-Claimants,

27           vs.

28   MGA ENTERTAINMENT, INC.,

ISAAC LARIAN, and DOES 1 – 10, inclusive,

Counter-Defendants.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   RELEVANT BACKGROUND FOR THIS MOTION ...................................... 2

III.  LEGAL STANDARD .................................................................................... 5

      A.    FRCP 59: Motion for New Trial or to Alter or Amend Judgement ........... 5

      B.    FRCP 50: Motion for Judgment as a Matter of Law or for a New Trial ..................................................................................................... 5

IV.   ARGUMENT ................................................................................................ 6

      A.    A New Trial Is Warranted Based on the *Jack Daniel's* Decision ............. 6

      B.    MGA Should Not Have Been Able to Assert Any First Amendment Defenses After Mr. Larian Testified the Dolls Have No Message ........................................................................................... 11

      C.    A New Trial Is Necessary Because the Jury Was Not Instructed on Inherent Distinctiveness ....................................................................... 13

      D.    The Court's Evidentiary Rulings Were Prejudicial and Warrant a New Trial ............................................................................................. 15

V.    CONCLUSION ........................................................................................... 20

i

1

## Table of Authorities

2

3

**Federal Cases**

4

*Chroma Makeup Studio LLC v. Boldface Grp., Inc.*, No. CV129893ABCPJWX, 2013 WL 12114826 (C.D. Cal. Jan. 23, 2013) ...................................................... 19

5

6

*Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999 (N.D. Cal. 2012) .................................................... 8

7

8

*Frost v. BNSF Ry. Co.*, 914 F.3d 1189 (9th Cir. 2019) ......................................... 12, 13, 17

9

10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, (2016) .......................................................... 12

11

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) .............................................. 18

12

13

*Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86 (1993) ........................................................ 9, 10

14

15

*in Jack Daniel's Prop. Inc. v. VIP Prods. LLC*
    Jack Daniel's Prop. Inc. v. VIP Prods. LLC, 143 S. Ct. 1578 (2023)
    ................................................................... 7, 4, 5, 6, 7, 10, 11

16

17

*Lahoti v. Vericheck, Inc.*, 636 F.3d 501 (9th Cir. 2011) .............................................. 19

18

19

*Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894 (9th Cir. 2002) .......................................... 14, 15

20

21

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007) ................................................ 8

22

23

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) .............................................. 18

24

*Robertson v. McNeil-PPC Inc.*, No. LACV 1109050JAKSSX, 2015 WL 12698313 (C.D. Cal. Mar. 20) ............................ 8, 11

25

26

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ............................................ 12

27

28

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) ...................................... 16

*U.S. v. Garrido*,
    713 F.3d 985 (9th Cir. 2013) ................................................................. 14

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*,
    555 F.3d 772 (9th Cir. 2009) ............................................................ 8, 14

*VIP Products LLC v. Jack Daniel's Properties Incorporated*,
    2021 WL 5710730 (D. Ariz. 2021) ........................................................ 12

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205 (2000) ............................................................................. 17

**State Cases**

*Bolen v. Woo*,
    96 Cal. App. 3d 944, 158 Cal. Rptr. 454 (Ct. App. 1979) ..................... 14

*No Doubt v. Activision Publ'g, Inc.*,
    192 Cal. App. 4th 1018 (2011) ........................................................ 12-13

**Federal Rules**

FRCP 50 ...................................................................................... 8, 9

DEFENDANTS' / COUNTERCLAIMANTS' MEMO AND AUTHORITIES

# I.     INTRODUCTION

A critical and heavily disputed issue throughout trial was whether the accused L.O.L. Surprise! O.M.G. Dolls were expressive works that were entitled to First Amendment protection. MGA contended they were, as the jury would then be instructed that the OMG Girlz would need to meet the heightened standard from *Rogers v. Grimaldi*—a burden that district courts have described as "nearly impossible" for trademark holders to satisfy absent blatant counterfeiting. The OMG Girlz objected to an instruction on this defense because MGA had not pleaded and because MGA's CEO and Founder Isaac Larian had unequivocally testified at trial that the dolls expressed no message, which at a minimum necessitated a jury question on whether the dolls were expressive works. The Court found the dolls were entitled to First Amendment protection and gave the *Rogers* instruction, relying on then-controlling Ninth Circuit precedent.

Two weeks after the verdict, however, that precedent was overruled by the Supreme Court in *Jack Daniel's Prop. Inc. v. VIP Prods. LLC*, 143 S. Ct. 1578, 1587 (2023). While the parties in *Jack Daniel's* sought to attack or defend *Rogers* broadly, the Supreme Court chose a "narrower path," holding that *Rogers* does not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." This case walks that narrow path. Like the accused infringer in *Jack Daniel's*, MGA conceded that it asserts trademark and trade dress rights in the OMG Dolls and that it aggressively uses them "as a source identifier" so consumers will "associate them exclusively with their source, MGA." Dkt. 16 ¶¶25, 36. Given that admission, and the clear prejudice caused by placing a "nearly impossible" burden on the OMG Girlz, a new trial is warranted.

Even absent *Jack Daniel's*, however, a new trade dress trial would be warranted because of Mr. Larian's mid-trial concession that the dolls are not expressive works at all. The same is true for the right of publicity claim, as there cannot be "a new expression, meaning, or message" when there is no message.  The OMG Girlz re-urge

their JMOL motion and request a new trial on these grounds.

Separate and apart from the *Rogers* issue, a new trial is also warranted because the Court instructed the jury that the OMG Girlz were required to establish secondary meaning to prevail. The OMG Girlz should have been able to prevail by showing inherent distinctiveness even without secondary meaning, consistent with Supreme Court precedent and the Joint Pretrial Order entered in the case.

Lastly, the OMG Girlz re-urge four of their objections to the Court's evidentiary rulings, any of which alone or in combination were prejudicial enough to warrant a new trial.

## II.    BACKGROUND

MGA filed this suit on December, 22, 2020 seeking declaratory judgment that its L.O.L. Surprise O.M.G. Dolls did not infringe any intellectual property or publicity rights of Tameka Harris, Clifford Harris, and OMG Girlz LLC. The OMG Girlz counterclaimed and asserted claims for trademark infringement, trademark dilution, trade dress infringement, common law and statutory right of publicity, common law and statutory right of publicity, and common law and statutory unfair competition. MGA moved for summary judgment on the claims, arguing *inter alia* that the trade dress claims failed because the OMG Girlz' trade dress was not distinctive. Dkt. 142-1 at 9-11. MGA also argued the right of publicity claims (but not trade dress claims) were barred by MGA's "First Amendment fair use" defense. Dkt. *Id.* at 28-30. The Court denied the motion as to trade dress, noting the OMG Girlz "have presented evidence that the OMG Girlz had a distinctive style that was consistent enough to be recognizable as the OMG Girlz brand." Dkt. 326 at 12. The Court also denied motion as to the First Amendment defense, but noted that the OMG Dolls could be expressive works entitled to First Amendment protection based on the Ninth Circuit's now-overruled decision in *VIP Prod. LLC v. Jack Daniel's Props., Inc*. Dkt. 142-1 at 28-29 (citing 953 F.3d 1170, 1172 (9th Cir. 2020)). The Court granted summary judgment on the trademark infringement, trademark dilution, statutory right of publicity, and unfair competition,

and on some of the trade dress and common law right of publicity claims. Dkt. 326 at 30-31, 33. The joint final pretrial order was entered on January 11, 2023. Dkt. 492. It stated that one of the issues to be tried was: "Whether the [OMG Girlz'] asserted trade dress has acquired secondary meaning and/or is distinctive." *Id.* at 22.

A jury trial was held between May 9 and May 26, 2023 on the OMG Girlz' trade dress and common law right of publicity claims. Before the close of evidence, the Court, relying on testimony from MGA's designers, ruled that the OMG Dolls are expressive works. Dkt. 788 at 16:9-21. But later that same day, MGA's CEO and corporate representative, Isaac Larian, testified that "a plastic doll doesn't send a message to anybody." Dkt. 788 at 78:8-19. Nevertheless, the jury was given the *Rogers* instruction, which stated that MGA's OMG Dolls "are an expressive work that is protected by the First Amendment" so the OMG Girlz could only prevail by proving that MGA's use of the trade dress "is explicitly misleading as to the source or content" of the OMG Dolls, or that "the use of the OMG Girlz trade dress is not artistically relevant to the underlying work." Dkt. 789 at 61:19-62:15. The OMG Girlz objected to this instruction and moved for judgment as a matter of law because (1) MGA never pleaded a *Rogers* defense and (2) Mr. Larian's testimony established that the OMG Dolls could not be expressive works as a matter of law, or at a minimum raised a fact issue for the jury. Dkt. 788 at 78:8-19; Dkt. 789 at 27:10-19. The overruled the objections and gave the instruction. *Id.* at 28:20-22; 29:1-6, 23. The OMG Girlz then asked for a special interrogatory on the *Rogers* defense, which was also denied. *Id.* at 45:12-23.

The Court gave a similar First Amendment instruction for the right of publicity claim, stating that MGA's OMG Dolls could be protected by the first amendment if MGA showed they "add something new to the OMG Girlz' likeness, giving it a new expression, meaning, or message." Dkt. 789 at 64:1-11. The OMG Girlz objected for the same reason they objected to the *Rogers* instruction—there can be no "new message" when there is no message at all. Dkt. 789 at 30:1-4.

The Court also instructed the jury on the elements of the trade dress, stating for

3

the first element that the OMG Girlz must prove their trade dress "has acquired secondary meaning." *Id.* at 55:6-14. The OMG Girlz objected to this instruction because it failed to include that a trade dress can also be "inherently distinctive," which obviates the need to show secondary meaning. *Id.* at 21:2-23:9. The Court overruled the objection. *Id.* at 24:21-22.

The jury was asked two general verdict liability questions and returned a "No" for both. Dkt. 771 at 2.

Two weeks after the verdict, the law on MGA's *Rogers* defense changed when the Supreme Court issued its ruling in *Jack Daniel's*, holding that *Rogers* does not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods."[1] 143 S. Ct. at 1587. The case concerned VIP Product's use of Jack Daniel's trademarks (including trade dress) for its "Bad Spaniels" dog toy. *Id.* at 1584-86. The Ninth Circuit, in the same decision relied on by this Court, had previously held that *Rogers* applied to any trademark claim, so long as the accused product was an expressive work. *Id.* 1586-87. The petitioner Jack Daniel's attacked the test in all applications, seeking to discard it entirely. *Id.* at 1587. But the Supreme Court chose the "narrower path" of limiting *Rogers* only to cases where the infringing mark is not used as a source identifier. *Id.* Even if a mark expresses other messages on top of source identification, *Rogers* still does not apply. *Id.* at 1590. Since VIP alleged trademark and trade dress rights in the Bad Spaniels product, it was using the marks as a source identifier. The Supreme Court thus reversed the Ninth Circuit and remanded the case for further analysis on whether Bad Spaniels was likely to cause confusion.

This change in law makes clear that *Rogers* should not have been applied to the

---

[1]    The decision applies to trade dress claims because trade dress is just a type of trademark. *Jack Daniel's*, 143 S. Ct. at 1583 (explaining the Lanham act defines trademark broadly to "encompasses . . . the overall appearance of a product and its packaging (a Hershey's Kiss, in its silver wrapper)."

OMG Girlz' trade dress claims. The OMG Girlz are seeking a new trial based on that ground, the Court's denial of their Rule 50(a) JMOL, the Court's instruction that omitted "inherent distinctiveness," and several evidentiary rulings.

## III.   LEGAL STANDARD

### A.   FRCP 59: Motion for New Trial or to Alter or Amend Judgement

A district court may grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law or in federal court." Fed. R. Civ. P. 59(a). "The decision as to whether to grant a new trial motion lies within the discretion of the district court." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1009 (N.D. Cal. 2012). Recognized grounds include "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citations omitted). "Erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Robertson v. McNeil-PPC Inc.*, No. LACV1109050JAKSSX, 2015 WL 12698313, at *3 (C.D. Cal. Mar. 20, 2015) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

Rule 59(e) allows the district court to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009).

### B.   FRCP 50: Motion for Judgment as a Matter of Law or for a New Trial

If a party has been fully heard on an issue during a jury trial and the district court finds that a reasonable jury would not have a sufficient evidentiary basis to find for the party on that issue, the court may: "(A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that,

5

1  under the controlling law, can be maintained or defeated only with a favorable finding

2  on that issue." Fed. R. Civ. P. 50(a). If the motion is denied, the moving party "may file

3  a renewed motion for judgment as a matter of law and may include an alternative or

4  joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). The district may then:

5  "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial;

6  or (3) direct the entry of judgment as a matter of law." *Id.*

7  **IV.   ARGUMENT**

8      **A.   A New Trial Is Warranted Based on the *Jack Daniel's* Decision**

9        Because the Court found the OMG Dolls are expressive works, the OMG Girlz

10  could only defeat MGA's First Amendment defense by meeting the heighted *Rogers*

11  burden of proving that MGA's use is "explicitly misleading as to the source or content"

12  of the OMG Dolls, or that the use "is not artistically relevant to the underlying MGA

13  work." Dkt. 789 at 61:25-62:8. But while this case was being litigated, the Supreme

14  Court was considering petitioner Jack Daniel's challenge to the *Rogers* test. That

15  opinion, issued after the verdict here, held that accused infringers cannot rely on *Rogers*

16  when they use the infringing trademark as a source identifier. *Jack Daniel's*, 143 S. Ct.

17  at 1587. That new law applies here, and requires a new trial, despite this Court not

18  having the benefit of the *Jack Daniel's* decision when instructing the jury. *Harper v.*

19  *Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of

20  federal law to the parties before it, that rule is the controlling interpretation of federal

21  law and must be given full retroactive effect in all cases still open on direct review and

22  as to all events, regardless of whether such events predate or postdate our announcement

23  of the rule."). Under this new law, the OMG Girlz should not have had needed to satisfy

24  the extremely high *Rogers* burden. The appropriate remedy for this prejudicial and

25  unfair result is a new trial without the *Rogers* instruction.

26

27

28

6

**1.   The Heightened *Rogers* Standard Does Not Apply Here Because MGA Uses the Accused Trade Dress as a Source Identifier**

Applying *Jack Daniel's* here, MGA was not entitled to a *Rogers* defense because MGA uses the accused trade dress as a source identifier. The facts in *Jack Daniel's* are directly on point. The Supreme Court found VIP "conceded" use of the mark as a source identifier when it alleged it was "the owner of all rights in its 'Bad Spaniels' trademark and trade dress for its durable rubber squeaky novelty dog toy." *Id.* at 1586. So here too. MGA alleged in its First Amended Complaint that "MGA also owns the rights to unregistered rights, including trade dress rights, in the L.O.L. Surprise! Products," which it referred to as the "L.O.L. Surprise! Marks."[2] Dkt. 16 ¶15. The "L.O.L. Surprise! Products" includes the OMG Dolls, thus confirming MGA alleges ownership of trademarks and trade dress in the OMG Dolls. *See* Dkt. 16 ¶22 (emphasis added). Indeed, MGA alleged to have "L.O.L. Surprise O.M.G. Marks" that consumers "associate . . . **with their source, MGA**."). *Id.* ¶25 (emphasis added); *see also id.* at 37 ("L.O.L. Surprise! O.M.G. fashion dolls and products are aggressively branded with the L.O.L. Surprise! Marks **as a source identifier**.") (emphasis added). Thus, MGA conceded it uses the alleged infringing trade dress as a source identifier.

Even without MGA's concession, the facts show MGA uses the trade dress as a source identifier. As MGA's witnesses testified, "O.M.G."—which is part of the OMG Girlz' trade dress and dismissed trademark—is prominently on the doll boxes in the largest lettering, right next to the registered "L.O.L. Surprise" word mark. 5/18/23(PM) at 110:1-6; Dkt. 787 at 53:6-10; 54:3-7; 55:3-7. VIP did the same, confirming they had used "Bad Spaniels" as a mark. *Jack Daniel's* 143 S. Ct. at 1591 ("[T]he Bad Spaniels logo sits opposite the concededly trademarked Silly Squeakers logo, with both appearing to serve the same source-identifying function."). And like VIP, MGA "has consistently argued in court that it owns, though has never registered, the trademark and

---

[2]     MGA defined L.O.L. Surprise! Marks as "[c]ollectively, the L.O.L. Surprise! Word Mark, L.O.L. Surprise! Logo Mark **and other associated marks and rights.**"). Dkt. 16 ¶15 (emphasis added).

trade dress in [other products]." *Id.* at 1591. For example, MGA has claimed unregistered trade dress rights in its "tots" line and in the outfits and facial features of its Bratz dolls. Dkt. 788 at 21:21-22:6; 28:12-18; 29:15-21. Taken together, "[MGA's] conduct is its own admission that it is using the [accused] trademarks as trademarks, to identify product source." *Jack Daniel's*, 143 S. Ct. at 1591.

## 2. The Court's Instruction on the *Rogers* Standard Was Severely Prejudicial and Mandates a New Trial

Because MGA uses the accused trade dress as a source identifier, the *Rogers* instruction should not have been given in this case. The simplest way to correct this error is to order a new trial under Rule 59(a) based on the prejudicial instruction caused by the Supreme Court's decision, as the OMG Girlz were unfairly held to a higher burden. *Robertson*, 2015 WL 12698313 at *3. *Alternatively*, if the Court chose to analyze the issue under Rule 59(e), a new trial would still be appropriate because Rule 59(e) allows the Court to set aside a judgment when there is an intervening change in controlling law. *Spectrum*, 555 F.3d at 789. With the trade dress judgment set aside, a new trial would then be needed to resolve the OMG Girlz' claims. Thus, regardless of the procedure or theory used, a new trial is the appropriate remedy for the erroneous *Rogers* instruction.

### *Rule 59(a) – Erroneous Instruction / Unfair Trial*

The simplest and most appropriate way to address the *Rogers* defense is as an instruction error, albeit one caused the Supreme Court's later decision, and order a new trial under Rule 59(a). That is what the Ninth Circuit did in *Inland Empire Waterkeeper v. Corona Clay Co.* when the Supreme Court changed a relevant legal standard. 17 F.4th 825, 836 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1444 (2022) ("The change in law affected not only the jury instructions, but also partial summary judgment, which were premised on the discharge. The parties deserve the ability to address whether the 'indirect' discharge admitted by Corona is the "functional equivalent" of a direct discharge into the waters of the United States, or whether that required discharge can

8

otherwise be established. As we did in similar circumstances in *County of Maui*, we therefore vacate the judgment below and remand for further proceedings in light of the Supreme Court's intervening opinion."). The Delaware District Court did the same thing in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.* when the court was confronted with a post-verdict change in law. 585 F. Supp. 2d 583 (D. Del. 2008). There, the standard for willful infringement changed ten months after the trial when the Federal Circuit issued *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).[3] *Id.* at 585. Recognizing that its prior instructions were now erroneous, the Delaware court applied *Seagate* and ordered a new trial on willfulness. *Id.* at 587-588. This Court should do the same for the trade dress infringement claims here.

In the Ninth Circuit an erroneous instruction like the *Rogers* instruction here is *presumed* to be prejudicial such that a new trial is necessary unless the benefiting party (MGA) "establish[es] that it is more probable than not that a properly instructed jury would have reached the same verdict." *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019) (internal quotations omitted). MGA cannot meet that burden given the well-recognized difficulty the *Rogers* standard presents a trademark holder. As the district court in *Jack Daniel's* noted when entering summary judgment for VIP (which was required by the Ninth Circuit's now overruled decision): "it appears ***nearly impossible*** for any trademark holder to prevail under the *Rogers* test" since it excuses infringement short of "slapping another's trademark on your own work and calling it your own." *VIP Products LLC v. Jack Daniel's Properties Incorporated*, 2021 WL 5710730, at *6 (D. Ariz. 2021) (emphasis added); *see also No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1040 (2011) (noting it would be "almost impossible" for the band No Doubt to show that a "non-transformative use of the No

---

[3]     Eight years later *Seagate* was abrogated by *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, (2016). That is not relevant here though as the OMG Girlz are not relying on the Delaware decision for its willfulness standard, but rather its treatment of a change in law at the time.

9

1  Doubt avatars was 'explicitly misleading.'"). MGA cannot show that holding the OMG

2  Girlz to a "nearly impossible" burden had no effect on the verdict.

3      Another hurdle for MGA is that the jury returned a general "No" verdict on the

4  trade dress claim, making it impossible for MGA to show the instruction had no effect.

5  *Frost*, 914 F.3d at 1198 ("Because we do not know how the jurors applied the honest

6  belief instruction, we cannot find that the presumption of prejudice is rebutted."). The

7  jury's "No" verdict is consistent with the instruction that they could *"only"* return a

8  Yes verdict if they found the OMG Girlz had satisfied the *Rogers* standard. Dkt. 789 at

9  61:19-62:15 (emphasis added). Recognizing that difficult burden would be the most

10 likely reason for an adverse verdict, it was actually the OMG Girlz who sought a special

11 interrogatory to show as much. Likely understanding the OMG Girlz were right, MGA

12 sat quiet when the Court denied the request. Dkt. 789 at 45:12-46:4.

13     MGA may claim that the jury *could* have found in their favor on other grounds,

14 like likelihood of confusion or abandonment. Mere possibility is not proof though,

15 especially when the *Rogers* standard "provided a shortcut that the jury may well have

16 taken." *Frost*, 914 F.3d at 1198. MGA's s actions show it was well aware of the

17 advantage *Rogers* provided. Despite not pleading the defense or raising it on summary

18 judgment, MGA capitalized on the Court's reliance on the now-overruled Ninth Circuit

19 *Jack Daniel's* decision and sought the jury instruction at issue—one that was heavily

20 disputed in submissions, the informal charge conferences, and the final charge

21 conference. *See, e.g.*, Dkt. 698 at 62-63; Dkt. 789 at 27:10-29:25. Then at trial, MGA

22 spent over 7 hours (over 60% of its case in chief) having Blanche Consorti testify about

23 the design of the OMG Dolls to convince the Court that they are expressive works. Dkts.

24 786 and 787, *passim*. MGA's counsel emphasized that finding in closing, claiming the

25 nearly impossible *Rogers* standard was important because otherwise "people couldn't

26 create anything." 5/26/23(PM) at 29:25-30:14. That is of course not true, but it framed

27 things for the jury: a verdict for the OMG Girlz is a verdict against the Constitution,

28 commerce, and creativity. *See id.* at 53:1-8 (arguing that MGA could prevail on the First

1  Amendment and the defense "is really in many ways not about trade dress at all. It's
2  about whether companies can safely operate in the marketplace, being creative,
3  producing goods without constantly having to face this kind of challenge."). MGA
4  cannot plausibly claim that the *Rogers* instruction was harmless after fighting tooth and
5  nail for that heightened burden and emphasizing it in closing. *See, e.g.*, *U.S. v. Garrido*,
6  713 F.3d 985, 996 (9th Cir. 2013) (finding prejudicial error when a theory was
7  emphasized in the jury instructions and closing argument); *Bolen v. Woo*, 96 Cal. App.
8  3d 944, 954, 158 Cal. Rptr. 454 (Ct. App. 1979) (finding that counsel's closing
9  argument compounded the error caused by the improper jury instruction).

10          *Rule 59(e) – Intervening Change in Law*

11          While the OMG Girlz believe instructional error under Rule 59(a) is the proper
12  pathway for relief, the Court could also set aside the trade dress judgment and order a
13  new trial under Rule 59(e). *Spectrum Worldwide*, 555 F.3d at 780. There can be no
14  dispute that *Jack Daniel's* constitutes an intervening change in law. It is a direct reversal
15  of the Ninth Circuit case this Court cited as a basis for applying the *Rogers* standard to
16  the OMG Dolls. Dkt. 326 at 27. While Rule 59(e) is reserved for unusual circumstances,
17  that is what occurred here. This Court, applying then-Ninth Circuit law, held the OMG
18  Girlz to a high burden on their trade dress claims. The Supreme Court ruled that is
19  incorrect in a case with the same substantive facts. The judgment that resulted from that
20  instruction should be set aside and a new trial should be ordered to resolve the OMG
21  Girlz trade dress claims.

22      **B.    MGA Should Not Have Been Able to Assert Any First Amendment
23             Defenses After Mr. Larian Testified the Dolls Have No Message**

24          Even absent the *Jack Daniel's* decision, the *Rogers* instruction was erroneous for
25  the independent reason that *Rogers* does not apply to cases involving products that have
26  no message. The *Rogers* defense is available for "expressive works," meaning works
27  that are "communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Recs.,*
28  *Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). The same is true for MGA's First Amendment

11

defense against the right of publicity claims, which allowed MGA to prevail by showing the OMG Dolls added something new, giving "a new expression, meaning, or message." Dkt. 789 at 64:7-9. MGA's unequivocal position at trial was that plastic dolls like the OMG Dolls do not send any message. MGA's CEO and founder Isaac Larian was asked if he recalled saying that "a plastic doll doesn't send a message to anybody" and he did not. Dkt. 788 at 77:21-78:2. After being shown the statement, he was asked if he stood by it today and he agreed unequivocally:

> Q.     Do you still agree that a plastic doll doesn't send a message to anybody?
>
> A.     Yes, I do.

*Id.* at 78:8-10. Mr. Larian was not just a fact witness with an opinion. He *is* MGA. *Id.* at 34:8-9. In relation to this lawsuit, he filed a separate action against his insurance company seeking to have them assume his defense because "Larian as an individual and MGA as an organization have a unity of interests" such that they are essentially the same for this case. *MGA Ent., Inc. v. Atl. Specialty Ins.*, 2:22-cv-08384, Dkt. 1-1 (C.D. Cal. 2022). MGA's First Amendment defenses should have been dismissed given Mr. Larian's testimony.

Before Mr. Larian's testimony, the Court was persuaded that the OMG Dolls are still expressive works because the designers testified about their own creative process. Dkt. 788 at 16:9-21. Even after Mr. Larian's testimony, the Court found the designer's testimony was sufficient. Dkt. 789 at 28:20-22; 29:1-6. But the designers are not parties, were not asserting a defense, and were testifying about their process not the expressive message of the dolls—their view is irrelevant and cannot override MGA's on-point corporate testimony. The contrast between MGA's unequivocal position and Ms. Consorti's strained "message" shows that the "expressive work" defense was a pretextual assertion developed on the eve of trial—consistent with MGA *never pleading the* Rogers *defense*. Indeed, Ms. Consorti's testimony about a "message" was clumsy and made inapt. When asked about the "message" of certain dolls, she simply described

the appearance of their shoes. Dkt. 786 at 66:20-67:1 (testified the messages were shoes being "a bit more dressy" versus "a bit more sporty" and "comfortable"). But even giving this testimony some force, it should have at most raised a fact question for the jury to resolve: are the OMG Dolls expressive works because the clothes are dressy or sporty, or not expressive works because MGA (Larian) said they send no message? Instead, the jury was wrongly instructed that the Girlz could only prevail if they met the *Rogers* standard.

The instruction for the right of publicity First Amendment defense was similarly erroneous, because the issue should not have gone to the jury once MGA conceded there was no "message" and thus no transformation.

As discussed above, MGA cannot show this instruction was harmless given the general verdict form and MGA's own arguments at trial. *Supra* at 10; *see also* 5/26/23(PM) at 29:4-9 (highlighting the defense in closing). The OMG Girlz renewed motion for judgment as a matter of law should be granted. The trade dress claim should be retried.

### C.    A New Trial Is Necessary Because the Jury Was Not Instructed on Inherent Distinctiveness

Under Supreme Court precedent, trade dress can be protected under the Lanham Act "based on a finding of inherent distinctiveness, without proof that the trade dress has secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765, 112 S. Ct. 2753, 2755, 120 L. Ed. 2d 615 (1992). But the jury here was instructed that the OMG Girlz could *only* prevail by proving their trade dress "has acquired secondary meaning." Dkt. 789 at 56:7-16. That was error and warrants a new trial.

The *Two Pesos* decision remains good law. MGA even *agreed* in the Joint Pretrial Order that was the standard and that inherent distinctiveness was an issue to be tried. Dkt. 492 at 22. Despite its agreement, MGA worked to mislead the Court into removing inherent distinctiveness by incorrectly claiming that the Court had already ruled the OMG Girlz trade dress was "product design" that required secondary meaning under

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000). Dkt. 698 at 30. The Court made no such finding and MGA did not even ask for one. To the contrary, MGA argued that the trade dress was not inherently distinctive because it was inconsistent, thus conceding that inherent distinctiveness was a relevant issue. Dkt. 142-1 at 9-10. The Court addressed and rejected MGA's argument, finding the OMG Girlz "presented their own photographs that do reflect a ***distinctive*** style." Dkt. 326 at 14 (emphasis added). MGA did not ask the Court to reconsider. Dkt. 324-1. Thus, there was no basis to remove inherent distinctiveness from the jury instructions. Even if MGA had, it would have been error to find the OMG Girlz trade dress is a product design. It is more akin to packaging, or more likely a "tertium quid" like the décor in *Two Pesos*, both of which can be protectable if inherently distinctive. *See Wal-Mart*, 529 U.S. at 215.

Since the instruction was wrong, MGA must prove by a preponderance of the evidence that the jury would have reached the same result regardless. *Frost*, 914 F.3d at 1194. It cannot. As noted for the *Rogers* instruction, the jury returned a general verdict so MGA cannot show the reason for the jury's decision. *Supra* at 10. MGA also put particular emphasis on the secondary meaning requirement, undercutting any claim that it was meaningless. Of note, secondary meaning was the first issue MGA's counsel discussed in closing, arguing that the consuming public was not aware of the OMG Girlz and improperly pointing to the jury pool's response to a *voir dire* question. 5/26/23(PM) at 13:7-17; 16:25-23; 17:10-12. That was no coincidence. The "lack of fame" was a consistent theme in MGA's case, including from its expert. *See, e.g.*, Dkt. 791 at 93-103; 5/24/23(PM) at 103:2-4. Had the jury been able to consider inherent distinctiveness the result likely would have been different (again especially true without the *Rogers* burden). This is especially true since the OMG Girlz, relying on the Joint Pretrial Order, focused on distinctiveness during their case in chief. Dkt. 783 at 18:16-19:17 (Ms. Alexander discussing what was distinct about the OMG Girlz); 5/12/23(PM) at 9:24-11:13 (Ms. Campbell doing the same); *id.* at 19:18-21:8 (Ms. Osborne doing the same). Given those circumstances, and that it is MGA that bears the burden of showing

14

1    no harm, a new trial is separately warranted on this round.

2         **D.**    **The Court's Evidentiary Rulings Were Prejudicial and Warrant a**
3                   **New Trial**

4         In addition to the faulty jury instructions, several of the evidentiary rulings at trial

5    warrant a new trial. If evidence is improperly excluded, a new trial is warranted when

6    the exclusion "more probably than not . . . tainted the verdict." *Harper v. City of Los*

7    *Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). For improperly admitted evidence, "the

8    burden [is] on the beneficiary of the error either to prove that there was no injury or to

9    suffer a reversal of his erroneously obtained judgment." *Obrey v. Johnson*, 400 F.3d

10   691, 700 (9th Cir. 2005) (citations omitted).

11        **1.**  **Social Media Comments Showing Actual Confusion Should Not**
12                **Have Been Excluded**

13        At trial, the OMG Girlz tried to offer screenshots of confused consumers

14   responding to Instagram posts made by Tameka Harris and Zonnique Pullins. Dkt. 781

15   at 6:1-15:14; *see also* Ex. A (exhibits at issue). Ms. Harris and Ms. Pullins had posted

16   images of the OMG Dollz and asked whether they looked familiar, comparing them to

17   images of the OMG Girlz. Many commenters did not respond to this actual question

18   ("do these look familiar?") but instead expressed shock and confusion as they had

19   believed the OMG Dolls were affiliated with the OMG Girlz. Ex. A; Dkt. 712-1. For

20   example, one commenter responded: "So OMG Girlz did not make those OMG Dolls??

21   [surprised emoji] wow." Dkt. Ex. A (Ex. 322.B); Dkt. 712-1 at 3. Notably, this comment

22   was a question, so there was not even a statement to offer for the truth. The Court

23   originally excluded these posts on authentication grounds, Dkt. 326 at 8, but

24   reconsidered once the OMG Girlz showed they could lay the necessary foundation. Dkt.

25   781 at 15:4-5. However, the Court still excluded the exhibits on the grounds that they

26   were hearsay, reasoning that "[t]here is absolutely no opportunity for cross-

27   examination." *Id.* at 15:4-14.

28        This exclusion was prejudicial error. As the Court noted on summary judgment,

15

the Ninth Circuit has found these type of comments are admissible under the state of mind exception to hearsay. Dkt. 326 at 7-8 (citing *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011). MGA argued that *Lahoti* is distinguishable because the comments were not being offered for the truth of the matter asserted. That fundamentally misunderstands the basics of hearsay exceptions. The purpose of the FRE 803 hearsay exceptions is not that they represent situations where something is not being offered for the truth of the matter asserted. Such statements are not hearsay and thus need no exception. What matters is that the truth being asserted by the commenters was their state of mind (confusion), which is a well-recognized exception. *See Chroma Makeup Studio LLC v. Boldface Grp., Inc.*, No. CV129893ABCPJWX, 2013 WL 12114826, at *14 (C.D. Cal. Jan. 23, 2013) ("[S]tatements by customers that they were confused are not barred as hearsay because they fall within the state-of-mind exception to the hearsay rule."). On this point, MGA's only argument was that *JL Beverage Co., LLC v. Jim Beam Brands Co.* precluded such use. Dkt. 719 at 2-3 (citing 828 F.3d 1098, 1111 (9th Cir. 2016)). That was misguided. The comments in *JL Beverage* were discussing *past* confusion, rather than the contemporaneous confusion that the Instagram commenters experienced when reading Ms. Harris and Ms. Pullin's posts. *JL Beverage*, 828 F.3d at 1111. Other comments were not even confusion at all. *Id.* And that case was distinguishable because the statements there came from the witness's personal friends. *Id.* at 1111. The comments here are not messages from Ms. Harris or Ms. Pullin's personal friends. They were contemporaneous reactions from individuals reading the posts. Thus, *JL Beverage* is not applicable. The comments should have come in.

The exclusion of this evidence more than likely tainted the verdict since it allowed MGA to claim the four consumer witnesses were not sufficient despite knowing there was more evidence of actual confusion. 5/26/23(PM) at 31:20-23. Had the jury seen many more examples of actual confusion—the gold standard—the result likely would have been different, especially under the proper burden rather than the *Rogers*

1    standard. Hence MGA's relentless opposition to the comments.

2         **2.  MGA Should Not Have Been Allowed to Launder False**

3             **Accusation Against the Harris's**

4         At MGA's urging, the Court allowed MGA employee Lora Stephens to

5    regurgitate false allegations being made against Mr. Harris by third parties. As the Court

6    noted, these allegations were incredibly heinous and prejudicial. One of the potential

7    jurors found them so offensive she could not be fair minded, even without knowing if

8    they were true. Dkt. 780 at 114:9-116:8. Although that juror was excused, the Court

9    rightly commented that "we haven't conducted this same inquiry with each of the

10   jurors," meaning it is possible others held a similar bias. *Id.* at 117:15-16. Of course,

11   that is why MGA wanted the allegations in the case. There was no relevant purpose, as

12   Ms. Stephens conceded that her pretext was false because she made no changes to any

13   doll designs based on any allegations against Mr. Harris. 5/23/23PM at 105:3-12. MGA

14   needed a mouthpiece to convey this prejudicial information, so it concocted a story

15   about Ms. Stephens' "state of mind." Over the OMG Girlz repeated objections, Ms.

16   Stephens was allowed to change her story and claim knowledge of Mr. Harris's music

17   lyrics and the allegations against him. MGA's gambit worked, as it was able to poison

18   the jury with vile falsehoods, thereby prejudicing the OMG Girlz case. This was

19   fundamentally unfair and should not have been allowed.

20        **3.  MGA Should Not Have Been Allowed to Discuss Withheld**

21            **Documents**

22        Consistent with its approach to discovery in the case, *see* Dkt. 205, MGA never

23   disclosed information about the racial makeup of its consumer base, the racial makeup

24   of Dr. Isaacson's likelihood of confusion survey, and the reason MGA added

25   "Outrageous Millennial Girls" to its OMG Doll packaging. Yet MGA was allowed to

26   provide evidence on all these points at trial knowing the OMG Girlz had not had the

27   opportunity to test the assertions.

28        As to MGA's consumer basis, MGA's internal documents stated that the OMG

17

Dolls did best with non-white consumers (specifically, black consumers), but MGA never produced information on racial demographics. The OMG Girlz tried to get this information but were unable to do so. *See, e.g.*, Ex. B, Contreras Tr. at 89:15-91:13. Yet somehow at trial, Mr. Larian was able to testify that 18% of OMG Doll consumers were black. Dkt. 788 at 66:9-67:1. This was extremely prejudicial because the OMG Girlz had no opportunity to test those claims, including analyzing whether it was collected during the relevant timeframe or how consumers skewed for the dolls at issue in the case.

The OMG Girlz also had no opportunity to tailor their case to these relevant facts because MGA did not produce the information. For example, the data behind this percentage would have also be critical to analyzing another datapoint revealed for the first time by MGA's expert witness—the racial composition of its survey participants. Dkt. 791 at 115-16. The Court issued a curative instruction for the expert disclosure violation (Dkt. 789 at 46:21-47:1), but that does not cure the prejudice. The OMG Girlz should have had this information to use affirmatively. Given the demographics of the OMG Girlz fan base, which skews heavily black, the racial composition of MGA's consumers and Dr. Isaacson's survey universe were directly relevant to showing flaws in his survey and the likelihood potential confusion among the true demographics. Preventing that analysis is likely why MGA withheld the information until trial.

Consistent with its hide-and-ambush strategy, MGA also blocked all discovery into its addition of "Outrageous Millennial Girls" to the OMG Doll packaging, claiming it related to a legal matter and was privileged. Ex. C, Moshe Tr. at 78:12-81:17; Ex. D. Then, having prevented any inquiry from the OMG Girlz, MGA tried to waive the privilege during the middle of Mr. Larian's testimony. Dkt. 788 at 104:12-14. While the Court precluded the withheld document from coming in, it allowed Mr. Larian to testify about its contents, thus doing the same damage. *Id.* at 105:23-106:15. MGA should not have been allowed to benefit from its improper gamesmanship.

1

2

### 4. Consumer Witnesses Should Not Have Been Precluded From Discussing Their Motivation for Testifying

3    After extensive briefing, the Court ruled that the historical phenomenon of large

4    companies using the creative works of black and African American people without

5    permission, attribution, or compensation could not be discussed at trial. Dkt. 502 at 5-

6    6. The Court made it clear it did not want this issue discussed at trial, and when it

7    inadvertently occurred during the first trial, the Court granted a mistrial.

8    While the OMG Girlz did not intend to make cultural appropriation an issue at

9    the second trial, and went to great lengths to avoid doing so, they did not expect MGA

10   to take advantage of the Court's ruling to prejudice the OMG Girlz. Specifically, despite

11   knowing that Moniece Campbell wanted to testify in this case because of her concern

12   about cultural appropriation from black artists (Ex. E, Campbell Tr. at 147:14-147:17),

13   MGA's questions intentionally suggested that the reason was because she was being

14   paid to do so, or was just a biased fan of the OMG Girlz and Ms. Harris and thus would

15   lie on their behalf. Dkt. 783 at 93:21-94:10. Ms. Campbell, who was properly prepped

16   not to violate the Court's order, was unable to truthfully explain to the non-black[4] jury—

17   that probably would not appreciate these motivations—exactly why she felt motivated

18   to take off work, fly across the country, and put herself through the stress of testifying

19   at trial for people to whom she have no personal connection. Of course, the same is true

20   for the other consumer witnesses that MGA attacked on the same basis. 5/25/23 PM at

21   35:6-19 (arguing the consumer witnesses participated so they would "get to be around

22   celebrities" and "tell their friends"). This was extremely prejudicial because it allowed

23   MGA to knowingly attack the OMG Girlz' confusion witnesses on false grounds,

24   knowing their hands were tied behind their backs. This error is severe and prejudicial

25   enough to warrant a new trial; one where the jury can hear the truth when MGA seek to

26

27   _____

     [4] The racial composition of the jury likely compounded the issue. While this unspoken
     motivation may have been clear to jurors who shared the same cultural experiences or
     background as the consumer witnesses and the OMG Girlz, it was likely lost on the
     jurors in the case, who could instead accept MGA's false narrative.

28

19

1    attacks witnesses on knowingly false bases.

2    **V.      CONCLUSION**

3          For the foregoing reasons, the OMG Girlz request the Court set aside the verdict

4    and grant a new trial on the OMG Girlz trade dress claims.

5

6    Dated:  July 11, 2023                    SHEPPARD MULLIN RICHTER &
                                              HAMPTON LLP
7

8                                             By: /s/ *John R. Keville*
                                                 John R. Keville
9                                                *Attorney for Defendants*
10                                               *CLIFFORD   "T.I."   HARRIS,   TAMEKA*
                                                 *"TINY" HARRIS, OMG GIRLZ LLC, and*
11                                               *Counter-Claimants GRAND HUSTLE, LLC,*
                                                 *PRETTY HUSTLE, LLC and OMG GIRLZ*
12                                               *LLC*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' / COUNTERCLAIMANTS' MEMO AND AUTHORITIES

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Defendant / Counter-Claimants, certifies that this brief contains 6,970 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *John R. Keville*
John R. Keville
*Attorney for Defendants*

*CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

21