John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

Valerie E. Alter (SBN: 239905)
valter@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | Case No. **2:20-cv-11548-JVS-AGR**<br><br>**DEFENDANTS' / COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES** **[REDACTED VERSION]**<br><br>Date: August 14, 2023<br>Time: 1:30 PM<br>Place: Courtroom 10C<br><br>Complaint Filed: December 20, 2020<br>Trial Date: May 9, 2023 |

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS.....................................................................................2
  A.   Little Discovery Was Taken Until Winston & Strawn Joined.........................2
  B.   Winston & Strawn Completed Discovery Quickly...........................................3
  C.   The Court Granted Summary Judgment on Some Claims and Let Others Proceed...................................................................................................................5
  D.   The First Trial Ended in a Mistrial..................................................................5
  E.   The OMG Girlz' New Lead Counsel Became the Target of MGA's Antagonism.............................................................................................................6
  F.   The Supreme Court Changes the Law Two Weeks After the Jury Verdict.......6

III. LEGAL STANDARD ............................................................................................7
  A.   Lanham Act .......................................................................................................7
  B.   Section 3344 Claim ..........................................................................................7

IV.  ARGUMENT..........................................................................................................7
  A.   MGA's Motion Should Be Deferred Until the OMG Girlz' Post-Trial Motions and Appeal Are Resolved ......................................................................................7
  B.   MGA's Request For $5.25 Million in Fees Should Be Denied Because the Case Was Not "Exceptional"........................................................................................10
     1.   The OMG Girlz' Case Had Objective Merit .................................................10
     2.   The Litigation Was Not Exceptional ............................................................11
     3.   If the Court Finds the Case Exceptional, It Should Still Not Award Fees In Light of MGA's Litigation Conduct.................................................................14
  C.   MGA's Requested Fees for the Cal. Civ. Code §3344 Claim Should Be Denied or Reduced.............................................................................................................16
  D.   MGA's Requested Fees are Unreasonable.....................................................18

V.   CONCLUSION ...................................................................................................20

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Agster v. Maricopa Cnty.*
  486 F. Supp. 2d 1005 (D. Ariz. 2007) ................................................................. 21

*ANT v. McPartlin*
  No. CV 09-7672 PSG RZX, 2010 WL 4572690 (C.D. Cal. Nov. 2, 2010) ....... 11

*Arcona, Inc. v. Farmacy Beauty, LLC*
  No. 217CV7058ODWJPRX, 2021 WL 2414856 (C.D. Cal. June 14, 2021),
  *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022) .................... 10

*Cleopatra Records, Inc. v. Bailey*
  No. CV 04-3120 GAF, 2005 U.S. Dist. LEXIS 32780 (C.D. Cal. May 23,
  2005) ..................................................................................................................... 19

*Cunningham v. County of Los Angeles*
  879 F.2d 481 (9th Cir. 1989) .............................................................................. 21

*Dufour v. Allen*
  No. 214CV5616CASSSX, 2015 WL 12819170 (C.D. Cal. Jan. 26, 2015) ......... 8

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*
  No. CV-16 8418-PSG, 2019 WL 10786009 (C.D. Cal. Oct. 28, 2019) .............. 8

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*
  778 F.3d 1059 (9th Cir. 2015) ............................................................................ 18

*Genesis Merch. Partners, LP v. Nery's USA, Inc.*
  No. 11-cv-1589 JM (WVG), 2013 U.S. Dist. LEXIS 190983 (S.D. Cal. Dec.
  6, 2013) ................................................................................................................. 21

*Gracie v. Gracie*
  217 F.3d 1060 (9th Cir. 2000) ...................................................................... 18, 20

*Grove v. Wells Fargo Fin. Cal., Inc.*
  Dkt. 803-1 ............................................................................................................ 10

*Hansen Cold Storage Constr. v. Cold Sys., Inc.*
  No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271 (C.D. Cal. Feb. 11, 2022)
  .................................................................................................................. 9, 10, 12

*Kirby v. Sega of Am., Inc.*
    144 Cal. App. 4th 47, 50 Cal. Rptr. 3d 607 (2006) ...............................18

*Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*
    No. CV 20-3286 PSG, 2022 WL 17184602 (C.D. Cal. Aug. 9, 2022)..............16

*Medicinova, Inc. v. Genzyme Corp.*
    No. 14-CV-2513 JLS (KSC), 2021 WL 3054874 (S.D. Cal. July 20, 2021).....16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
    572 U.S. 545 (2014)...........................................................7, 10, 11, 16

*Rimini St., Inc. v. Oracle USA, Inc.*
    139 S. Ct. 873 (2019)...........................................................................9, 10

*Sarieddine v. Alien Visions E-Juice, Inc.*
    No. CV 18-3658 PA, 2019 WL 4316245 (C.D. Cal. June 14, 2019).......3, 11, 12

*Shame on You Prods. v. Banks*
    No. CV 14-03512-MMM, 2016 WL 5929245 (C.D. Cal. Aug. 14, 2016) ........22

*SmartMetric, Inc. v. MasterCard Int'l, Inc.*
    No. CV-11-7126-MWF, 2015 WL 12582630 (C.D. Cal. Mar. 25, 2015),
    *aff'd*, 637 F. App'x 591 (Fed. Cir. 2016) ............................................................7

*Stillwater Ltd. v. Basilotta*
    No. 2:16-CV-1895-SK, 2021 WL 7285989 (C.D. Cal. Oct. 12, 2021) ...........8, 9

*SunEarth, Inc. v. Sun Earth Solar Power Co.*
    839 F.3d 1179 (9th Cir. 2016) .........................................................................1, 7

*Traditional Cat Ass'n v. Gilbreath*
    340 F.3d 829 (9th Cir. 2003) ..............................................................................18

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*
    953 F.3d 1170 (9th Cir. 2020) ...............................................................................8

Statutes

15 U.S.C. §1117(a) .................................................................................................7

28 U.S.C. §§1821, 1920...........................................................................................9

Cal. Civ. Code §3344.........................................1, 2, 7, 8, 9, 18, 19, 20, 22

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

<u>Other Authorities</u>

Federal Rule of Appellate Procedure 4(a)(4)(B)(i) ..................................................... 1

Federal Rule of Rule of Civil Procedure
    Rule 54(d)(2) 1993 ............................................................................................ 8
    Rule 59 .......................................................................................................... 1, 8

# I.    INTRODUCTION

MGA's motion for attorney's fees (Dkt. 803) should be deferred until the OMG Girlz' pending post-trial motions and subsequent appeal are resolved. Two weeks after the jury verdict, the Supreme Court issued *Jack Daniel's v. VIP Products*, which confirmed that the OMG Girlz should not have been required to satisfy the "nearly impossible" burden of proving MGA's use of the OMG Girlz trade dress was explicitly misleading or had no artistic relevance whatsoever. The OMG Girlz filed a post-trial motion seeking a new trial on several grounds, including this critical change in controlling law. Dkt. 813. They have also filed a notice of appeal raising that issue, the court's summary judgment ruling on the trademark claim, and other issues, which will take effect if the post-trial motions are denied. Given the likelihood of reversal on at least some issues, judicial economy is better served by deferring MGA's motion until the post-trial motions and/or appeal are resolved.

If the Court considers the motion, it should deny MGA's request for ~$6.1 million in "fees" under the Lanham Act, and deny MGA's requested ~$1.7 million in "fees" for the Cal. Civ. Code §3344 claim, or at least reduce them to be commensurate to the time spent litigating that claim. The Court should also deny MGA's request for $900,000 in non-taxable costs like "expert witness fees." These are not recoverable. MGA seeking them borders on frivolous. The OMG Girlz ask the Court to factor that into any determination on fees.

For the Lanham Act, MGA seeks $5.25 million under the "exceptional case" provision. A case is only exceptional if "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). This case was not "exceptional." The Court's findings on summary judgment and statements at trial show that the OMG Girlz' claims were not objectively meritless. That the jury went in MGA's favor—using the exceedingly high *Rogers* standard that we now know

1

was incorrect—does not change anything. Nor does MGA's speculation about the jury verdict, misplaced blame on why the case was "contentious," and strained efforts to frame normal trial conduct as improper. To the extent the Court finds the case exceptional, it should still decline attorney's fees based on MGA's own conduct in this case, which the Court found "disturb[ing]" and "simply offensive."

While MGA is entitled to some fees for its §3344 claim (if upheld), it is seeking fees for all claims through summary judgment. MGA is required to apportion its fees unless doing so is *impossible.* MGA's own filings and billing records show it is not, but MGA does not even try to apportion. The Court should deny the request outright for that failure, but alternatively MGA should recover no more than $221,000, which is more commensurate with the time spent on that claim.

## II.   STATEMENT OF FACTS

MGA's argumentative "Statement of Facts" selectively omits events to create the misleading impression that MGA was the victim of discovery abuse or improper conduct. For example, MGA complains that its attorney's fees "increased substantially" after Winston & Strawn appeared (Dkt. 803-5 at 3), blaming "overly-aggressive positions in discovery." Dkt. 803-1 at 3-4. But almost no discovery was done until Winston & Strawn appeared, and this was before dispositive motions and expert discovery. Of course fees increased when work was done. MGA also recounts two disputes during the case, one of which did not even require Court intervention. Dkt. 803-1 at 4. This was a hard fought case, but none of these typical discovery disputes warrant finding it "exceptional," especially given MGA's own contentious conduct. *Sarieddine v. Alien Visions E-Juice, Inc.*, No. CV 18-3658 PA (MAAX), 2019 WL 4316245, at *5 (C.D. Cal. June 14, 2019) (explaining that "[i]t is not exceptional that discovery disputes arose in a contentious litigation").

### A.   Little Discovery Was Taken Until Winston & Strawn Joined

The OMG Girlz were originally represented by one attorney, Peter Haviland. Dkts. 13; 72. During this time, the parties filed multiple stipulations to extend the

discovery deadline. Dkts. 51, 52, 68-71. Before the last extension was set to expire, Mr. Haviland withdrew and the OMG Girlz were given 30 days to get new counsel. Dkts. 72-73. Despite knowing the OMG Girlz lacked counsel, MGA moved to hold them in contempt for not confirming deposition dates. Dkt. 78. The Court denied MGA's request. Dkt. 86.

Winston & Strawn appeared on February 18, 2022, four days before the fact discovery deadline. Dkt. 79. At that time, no depositions had been taken and MGA had produced just over 3,000 documents, many of which were irrelevant. Decl. ¶3. The OMG Girlz promptly sought to extend fact discovery to April 13, 2022. Dkt. 82. MGA opposed any extension that would require it produce documents or provide a witness for a scheduled 30(b)(6) deposition, calling it a discovery "do over." Dkt. 84. The Court disagreed, recognizing it was only "a reasonable opportunity to allow the applicants to 'do' what is yet to be done." Dkt. 88 at 1.

## B. Winston & Strawn Completed Discovery Quickly

After the Court extended the pre-trial deadlines, the OMG Girlz tried to conduct a case worth of discovery, including scores of depositions, in a two month period. Decl. ¶10. The OMG Girlz served additional requests and addressed MGA deficient responses. Ex. 1. For example, in response to interrogatories about MGA's sales, MGA provided meaningless third-party data instead of data from the sales department. Exs. 2, 14. MGA refused to produce any documents related to dolls not pictured in the complaint. Ex. 3. MGA refused to negotiate new email search terms, claiming each party had already selected search terms. Decl. ¶9. And it refused to explain how the document custodians were selected or why they differed from the individuals that MGA belatedly offered as 30(b)(6) witnesses. *See id* . After unsuccessful meet and confers on these issues, the OMG Girlz requested discovery conferences with Magistrate Judge Rosenberg, who ordered that MGA begin producing documents, testing search terms, and providing deposition dates in addition to continuing to encourage the parties to

confer. Ex. 3. When MGA finally began cooperating, documents were often produced in close proximity, and sometimes after, the custodian's deposition. Decl. ¶11.

At the depositions MGA's counsel repeatedly interjected with long-winded, disruptive speaking objections, sometimes coaching the witness. Ex. 4, Consorti Tr., *passim* (making 300+ objections). After making a sarcastic comment, he was asked to stop but continued the disruption. *Id.* at 90-94. MGA's counsel also bullied associates by interrupting questioning, instructing witnesses not to answer on relevance grounds (not privilege), and misrepresenting a Magistrate Judge ruling. *See, e.g.*, Ex. 5, Garcia Tr. 228:15-229:2 (coaching); Ex. 6, Nanjo Tr. at (interrupting to demand an explanation, telling counsel what questions to ask, and initially instructing the witness not to answer); Ex. 7, Stephens Tr. 317-324 (threatening a first year associate by claiming the associate was violating a court order when he was not).[1] This hostile approach may have come as a directive from Mr. Larian, who responded to depositions questions by calling them "dumb," refusing to answer, and telling counsel to "go to the judge." Ex. 8, Larian Tr. at 111:11-112:7, 207:23-208:14, 372:4-373:12.

Winston & Strawn's pursuit of document and deposition discovery ultimately revealed what MGA had tried to keep secret: it had never issued a litigation hold. Dkt. 190-1 ¶19. The Court found, "MGA made little to no effort to ensure that relevant evidence was preserved and recovered in any systematic manner." Dkt. 478 at 9. MGA's designers admitted "███████████████████████████████████████ ████████████████████████████████████████" and therefore "haphazardly stored documents in a myriad of ways: ████████████████████████████████ ████████████████████████████████████████." *Id.* MGA knew this, but "looked only in two kinds of folders on employees' work computers" and made "[n]o efforts . . . to recover digital files elsewhere, including asking designers to turn over documents they ███████████████████████

---

[1]    While Winston & Strawn was sanctioned for deposition conduct, MGA's conduct was often worse.

1  █████████████ or searching for ████████████████████████

2  █████████.” *Id.* The Court concluded MGA was at least negligent, but declined to

3  order sanctions since the OMG Girlz were unable to identify any specific missing or

4  destroyed document. *Id.* at 11-12.

5      **C.    The Court Granted Summary Judgment on Some Claims and Let**

6          **Others Proceed**

7          In analyzing likelihood of confusion for MGA's summary judgment motion on

8  the trade dress claims, the Court declined to consider social media comments showing

9  confusion about the source of the OMG Dolls. Dkt. 326 at 7. The Court noted that the

10  evidence could fall within the state of mind hearsay exception, but the OMG Girlz could

11  not "demonstrate that these commenters are real people." *Id.*at 8.

12          The Court granted summary judgment on the trademark, §3344, and unfair

13  competition claims, but denied it for the trade dress and common law right of publicity

14  claims as to certain dolls. Dkt. 326 at 33. The Court found there were triable issues on

15  the distinctiveness and consistency of the OMG Girlz' trade dress, whether it had

16  acquired secondary meaning, and whether there was a substantial likelihood of

17  confusion. *Id.* at 12-14, 16, 20. The Court also found "an issue of fact" on the common

18  law right of publicity claim.

19      **D.    The First Trial Ended in a Mistrial**

20          This case originally proceeded to trial on January 17, 2023. MGA began the trial

21  calling the OMG Girlz extortionists and liars. Ex. 9 1/18/23 (AM) at 59-60. Personal

22  attacks remained a theme, as MGA engaged in an offensive cross examination of the

23  OMG Girlz first witness Zonnique Pullins. Ex. 10 1/19/23(AM) at 10-16, 76-78. The

24  trial ended in a mistrial because the video deposition testimony of Moniece Campbell

25  included her personal feelings about large companies exploiting the black community.

26  1/25/23(AM) at 21-33. This testimony was inadvertently included and exchanged with

27  MGA before being played. Despite its "excessive and unwarranted" objections, MGA

28  failed to object on MIL grounds, so it went unnoticed. Ex. 17 1/24/23(AM) at 5:12-

6:10. Contrary to MGA's implication that the OMG Girlz alone were responsible and did it maliciously (Dkt. 803-1 at 5), the Court found both parties at fault but made clear it did not "impugn any ill motive to any party as we've gone through this portion of the case." Dkt. 678 1/25/23 Tr. at 28:4-5.

E. **The OMG Girlz' New Lead Counsel Became the Target of MGA's Antagonism**

After the mistrial, the Court stated that the "the new trial turns a new leaf" where both parties would be held to "the highest ethical and professional standards." Dkt. 648. Leading up to the new trial, however, MGA repeatedly indicated that the OMG Girlz had purposefully failed to produce documents, even after the Magistrate Judge found it was an honest mistake. Dkt. 678 at 12-23 (MGA repeating that the mistake was "inadvertent *or otherwise*"). Then on day 2, MGA's lead counsel told the Court that the OMG Girlz' lead counsel John Keville was repeatedly violating court orders, including one regarding the redaction of a document. 5/10/23(PM) at 67:20-68:2. MGA later admitted it was mistaken. *Id.* at 124:11-15. Two weeks later, without conferring over a four-day weekend, MGA filed a brief with similar ill-founded allegations, accusing counsel of acting in "bad faith or with reckless disregard." Dkt. 743. The Court expressed its displeasure at MGA's conduct, stating it was "disturbed that the first premise from the [MGA] side always seems to be misconduct, contrived evil, et cetera" and the accusations were "simply offensive" when not supported by the evidence. Dkt. 787 at 19:24-20:9.

F. **The Supreme Court Changes the Law Two Weeks After the Jury Verdict**

At the end of the retrial, the jury was instructed that MGA's OMG Dolls "are an expressive work that is protected by the First Amendment" so the OMG Girlz could only prevail by proving that MGA's use of the trade dress "is explicitly misleading as to the source or content" of the OMG Dolls, or that "the use of the OMG Girlz trade dress is not artistically relevant to the underlying work." Dkt. 789 at 61:19-62:15. The

instruction was based on Ninth Circuit precedent applying the standard of *Rogers v. Grimaldi* to all trade dress cases. Dkt. 326 at 27 (citing *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1172 (9th Cir. 2020). The OMG Girlz objected to this instruction on several grounds and sought, but did not receive, a specific jury question on it. 789 at 27:10-19. The jury returned a "No" verdict on both liability claims on May 26, 2023. Dkt. 771 at 2. Two weeks later, the Supreme Court issued *Jack Daniel's Prop. Inc. v. VIP Prods. LLC*, overturning the Ninth Circuit case this Court had cited. 143 S. Ct. 1578, 1587 (2023). The OMG Girlz requested a new trial based on this case and other grounds. Dkt. 813.

## III.   LEGAL STANDARD

### A.   Lanham Act

The Lanham Act allows for attorney's fees in "exceptional cases," 15 U.S.C. §1117(a), which is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth*, 839 F.3d at 1181. Whether a case is exceptional depends on the totality of the circumstances. *Id.* The standard "presents a very high bar." *SmartMetric, Inc. v. MasterCard Int'l, Inc.*, No. CV-11-7126-MWF (AJWx), 2015 WL 12582630, at *4 (C.D. Cal. Mar. 25, 2015), *aff'd*, 637 F. App'x 591 (Fed. Cir. 2016).

### B.   Section 3344 Claim

California Civil Code §3344 states that "[t]he prevailing party in any action under this section shall also be entitled to attorney's fees and costs." Courts must attempt to apportion between work performed on claims were attorney's fees are recoverable versus claims where they are not. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000).

## IV.   ARGUMENT

### A.   MGA's Motion Should Be Deferred Until the OMG Girlz' Post-Trial Motions and Appeal Are Resolved

The OMG Girlz have requested a new trial under FRCP 59 and filed a notice of appeal should that motion be denied, either of which could substantially change liability and whether any fees are proper. Dkts. 813, 819. The Court can therefore "defer its ruling on the [fees] motion, or may deny the motion without prejudice." FRCP 54(d)(2) 1993 Advisory Notes. Courts in this district frequently do so. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, No. CV-16 8418-PSG (FFMx), 2019 WL 10786009, at *2 (C.D. Cal. Oct. 28, 2019); *Stillwater Ltd. v. Basilotta*, No. 2:16-CV-1895-SK, 2021 WL 7285989, at *1 (C.D. Cal. Oct. 12, 2021); *Dufour v. Allen*, No. 214CV5616CASSSX, 2015 WL 12819170, at *2 (C.D. Cal. Jan. 26, 2015).

Deferring the ruling is particularly appropriate here because the likelihood of a new trial is high. One of the critical fights in this case was whether MGA was entitled to a First Amendment *Rogers* defense. The Court found it was, and instructed the jury that the OMG Girlz could "only" win by proving the use of the trade dress "is explicitly misleading as to the source or content," or that "the use of the OMG Girlz trade dress is not artistically relevant to the underlying work." Dkt. 789 at 61:25-62:8. Under *Jack Daniel's* that instruction was erroneous because *Rogers* does not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." 143 S. Ct. at 1587; Dkt. 16 ¶¶22-25 (MGA admitting it uses the trade dress as a source identifier). This fees motion should be deferred until the Court and/or the Ninth Circuit can address this important issue. *Stillwater*, 2021 WL 7285989 at *1 (deferring is "especially prudent" when "the claim for fees involves substantial issues or is likely to be affected by the appellate decision").

## A. MGA's Request for Non-Taxable Costs Should Be Denied

If the Court considers MGA's motion, MGA's request for "non-taxable costs" of $915,309.65 should be denied. Dkt. 803 at 1; Dkt. 803-5 at 1-2. These represent "expert witness fees," "costs for videotaping depositions," and "MGA's jury selection consultant and trial graphic vendor fees." Dkt. 803-5 at 1-2. None are recoverable

because "courts may not award litigation expenses that are not specified in §§1821 and 1920 absent explicit authority." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 874 (2019). The Lanham Act only refers to "attorney's fees" and "costs" and therefore does not provide any explicit authority for other costs. *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271, at *7 (C.D. Cal. Feb. 11, 2022) ("The Lanham Act does not, however, provide the 'explicit statutory authority' required to award litigation expenses beyond the six categories of 'costs' specified by Congress in the general costs statute, 28 U.S.C. §§1821, 1920." (quoting *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 677 (9th Cir. 2020)). California Civil Code §3344 is the same—it only provides for "costs" and "attorney's fees" with no mention of other non-taxable costs. Cal. Civ. Proc. Code §1033.5 (stating that "[f]ees of experts not ordered by the court" are not recoverable absent express authorization); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996) ("Notable examples of non-recoverable costs are: fees of experts not ordered by the court . . . .").

MGA's brief ignores the cases above and relies on *Grove v. Wells Fargo Fin. Cal., Inc.,* Dkt. 803-1 at 6-7 (citing 606 F. 3d 577, 580 (9th Cir. 2010), which is inapplicable. In addition to predating *Rimini*, the case only states that certain costs (e.g., paralegal fees) are recoverable as attorney's fees "when it is the prevailing practice in a given community ***for lawyers to bill those costs*** separate from their hourly rates."[2] *Id.* at 580. MGA's non-taxable costs came from vendors, not lawyers, so MGA had no basis to seek these requests. MGA's brief even cites *Hansen* (Dkt. 803-1 at 12), which states that "the Lanham Act's costs provision does not provide explicit statutory authority to award litigation expenses beyond the six categories set forth in the general costs statute." *Hansen*, 2022 WL 1199271 at *8. That MGA sought plainly unrecoverable costs in the same motion that it wrongly accuses the OMG Girlz of taking

---

[2]   Unless noted, all emphasis is added.

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

"weak" or "frivolous" positions is worth consideration in evaluating MGA's fee request.

**B.     MGA's Request For $5.25 Million in Fees Should Be Denied Because the Case Was Not "Exceptional"**

**1.     The OMG Girlz' Case Had Objective Merit**

"Courts in this district have held that a party's litigating position must be objectively meritless for a case to be exceptional under the *Octane* standard." *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 217CV7058ODWJPRX, 2021 WL 2414856, at *2 (C.D. Cal. June 14, 2021), *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022). The OMG Girlz' claims were not "objectively meritless."

MGA starts by asserting that the OMG Girlz brought several "weak claims" like fraud and cultural misappropriation. Dkt. 803-1 at 11. But the fraud counterclaim was dropped in the Amended Counterclaim. Dkt. 27. Trimming claims is not exceptional. *Sarieddine v. Alien Visions E-Juice, Inc.*, No. CV 18-3658 PA (MAAX), 2019 WL 4316245, at *5 (C.D. Cal. June 14, 2019) (not exceptional that a party "abandoned his unfair competition claim"). Cultural appropriation was never asserted as a cause of action, so it does not make sense to call it a "weak claim." Dkts. 13, 27. That testimony about it was excluded for being potentially prejudicial (Dkts. 210, 502)—a ruling the Court made on many other evidentiary issues—is not exceptional. It is also not exceptional that the Court dismissed the dilution claim and granted summary judgment on others—summary rulings happen in many cases. *See ANT v. McPartlin*, No. CV 09-7672 PSG RZX, 2010 WL 4572690, at *6 (C.D. Cal. Nov. 2, 2010) ("Just because the Court determined that Defendant was entitled to judgment does not mean that Plaintiff's claim were groundless and that this case is 'exceptional.'"); *Sarieddine*, 2019 WL 4316245 at *5 (same).

MGA also attacks the trade dress and right of publicity claims that went to trial, but this Court already found those were not objectively meritless when it allowed them on summary judgment. Dkt. 326 at 33. That was reaffirmed that when the Court denied

MGA's JMOL Motion, stating "I find that the totality of the record provides sufficient evidence for a reasonable jury to return a verdict on each of the OMG Girlz's claims." Dkt. 789 at 40:11-14. MGA does not address these facts, instead claiming there was a "disparity of positions" because MGA called the OMG Girlz extortionists. Dkt. 803-1 at 12-13. But the exceptional case analysis looks at the *objective strength* of the cases, not the opposing party's viewpoint. *Arcona*, 2021 WL 2414856 at *2.

MGA also misleadingly cites to *Hansen* for the proposition that "a jury's finding may weigh in favor of deeming a case exceptional," (Dkt. 803-1 at 12) omitting that "the jury [in *Hansen*] found that Defendant 'acted with bad faith intent to profit from the mark.'" *Hansen*, 2022 WL 1199271, at *2. There was no finding like that here. MGA's speculation about the deliberation time is also irrelevant, especially when the case went to the jury late in the afternoon before a holiday weekend—a fact MGA's counsel emphasized in closing. 5/26/23(PM) at 55:4-5.[3] MGA finishes with the jury's question about attorney's fees, but that was because MGA requested them. Dkt. 788 at 20:15-17. The lay jury, unfamiliar with the American Rule or the exceptional case standard, heard a party say they wanted attorney's fees if they won and asked: is that something we're supposed to do? That does not mean they found the claims "objectively meritless." This Court certainly did not. MGA's request should be denied.

## 2.    The Litigation Was Not Exceptional

MGA also seeks an exceptional finding based on the conduct of the OMG Girlz' current and former counsel. In its "Facts" section, MGA blames the OMG Girlz for a contentious discovery period. As discussed, that is not what happened. *Supra* 3-5. In its argument, MGA focuses on the conduct of one individual attorney, the events leading to the mistrial, and supposed misconduct in the second trial. Dkt. 803-1 at 13-19. The Court addressed the first two issues in its sanctions and mistrial rulings, and the OMG

---

[3] As Neama Rahmani, the president of West Coast Trial lawyers explained: "Jurors rush through verdicts when the weekend is approaching, and even more so before an upcoming holiday." https://www.insider.com/jurors-feel-pressured-reach-verdict-before-holidays-2022-12.

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

Girlz do not seek to relitigate them here. What MGA is trying to do, however, is essentially convert that prior attorney sanction into a $5.25 million fees sanction against the clients by wrongly claiming there was misconduct in the second trial. The Court should not do so.

### *Arguments about Evidence:*

MGA claims that the OMG Girlz reargued rulings during the second trial. Not so. The only example given is when the OMG Girlz sought the admission of certain social media comments. Dkt. 803-1 at 14. The Court never indicated that was improper. In fact, before offering the exhibits the OMG Girlz notified the Court that they could overcome the authenticity issue identified on summary judgment. Dkt. 680. The Court agreed, but ultimately felt hearsay was still an issue. Dkt. 781 at 15:4-14. The OMG Girlz asked if they could still be used to cross examine MGA's expert, and the Court requested briefing. *Id.* at 15:16-16:10. The OMG Girlz also filed an offer of proof to preserve their evidentiary arguments for appeal, which MGA claims was somehow improper. Dkt. 803-1 at 14. It is hard to imagine anything less "exceptional" than a party trying to offer evidence and preserve issues for appeal.

### *Questions About MGA's Business Practices:*

MGA strains to present normal deposition questions as "impliedly accusing MGA of discriminatory practices," but the questions are banal, especially in context. Dkt. 803-1 at 15. Unable to recall many licenses (Ex. 5, Garcia Tr. at 47-48), MGA's corporate witness was asked if she recalled licenses with diverse celebrities. In addition to trying to jog the witnesses memory (who was supposed to have prepared), the OMG Girlz were entitled to explore that topic as it is plainly relevant to damages in a case about a diverse music group's IP rights. *Id.* Even if MGA viewed it as a question about "discriminatory practices"—it was not—it is unclear why that would be improper to *ask* during discovery. The other two questions were exploring what MGA's head designer Blanche Consorti claimed to use as inspiration. *Id.* MGA itself focused heavily on that

issue at trial, so it makes no sense to call the OMG Girlz' exploration of it in depositions "exceptional." Contrary to MGA's implication, this had nothing to do with the mistrial.

### *Supposedly "Improper" Arguments During Trial:*

MGA finishes by listing four supposedly "improper" arguments, each no more than typical disagreements about how to view the evidence. None of these were improper, much less exceptional, as demonstrated by the fact that MGA ***did not object to a single one at the time***. MGA's effort to twist these into misconduct after the fact only demonstrates the weakness of its motion.

*First*, MGA complains that the OMG Girlz' lead counsel accurately stated that Ms. Harris had "never recanted" that someone at a Bratz-themed charity event approached her and discussed making dolls of the OMG Girlz. Dkt. 803-1 at 16. MGA wrongly states that this argument occurred in "rebuttal closing" to give the false impression that MGA could not respond. Dkt. 803-1 at 16. It was in the OMG Girlz' chief closing so MGA could have addressed this supposed misrepresentation, but there was nothing to address because it was accurate. Ms. Harris testified that she had assumed the person was affiliated with the maker of—it was a ***Bratz doll giveaway*** after all—but that her assumption may have been wrong. Dkt 781 at 104-106. That is what she said in the very testimony MGA cites. Ex. 15 1/20/23(AM) at 48:7-11 ("I said that the conversation happened at a Bratz event, which it did, but I cannot confirm it."). That is exactly what the OMG Girlz' counsel argued. Dkt. 789 at 119:5-9 ("She never recanted it. She was just at an event, and she made an assumption that if someone at a Bratz event talks to me about making a doll, it must be somebody related to Bratz."). This was not remotely improper.

*Second*, MGA claims it was improper for counsel to reference the number of comments to an Instagram poll. This statement was made in the context of discussing the consumer witnesses' testimony, which is of course relevant to actual confusion. Dkt. 789 at 99:25-100:2. MGA also did not object to evidence about the number of comments during the testimony (783 at 85:8-11), and the Court suggested the number of comments

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

alone was fine. *Id.* at 118:11-13 ("There's no substantive comments in the number of comments."). MGA cannot claim it was improper now. Furthermore, the number of comments, regardless of their content, is relevant to rebut MGA's consistent theme that the OMG Girlz are simply not famous enough to have a trade dress. Dkt. 791 at 93. There was nothing exceptional about these statements.

*Third*, MGA complains about a Venn diagram demonstrative. MGA argues that the OMG Girlz should not have used the demonstrative based on MGA's view of evidence it admits "***was not introduced at trial.***" Dkt. 803-1 at 17. The OMG Girlz do not have to address things not in evidence. Even if the jury had seen it, the OMG Girlz are not obligated to accept MGA's view of the evidence in their demonstratives. The XOMG Group does not use the trade dress and came ***years after the OMG Girlz***. That is probably why MGA didn't introduce this weak "evidence." That MGA has to rely on it now fr its motion further shows this case was not exceptional.

*Fourth*, MGA points to the OMG Girlz' questions about websites that MGA itself put at issue. Dkt. 803-1 at 18-19. MGA identified these websites as proof of public use of the images in question. Ex. 19 5/23/23(PM) at 35-37. When the OMG Girlz investigated the sites, there were strange discrepancies in the timing of the posts. *Id.* at 37-48. MGA does not deny the discrepancies. It just takes offense that the OMG Girlz would dare to investigate them. Contrasting these with MGA's own accusations (repeated in its Motion) that the OMG Girlz are "extortionists" who "fabricate[d]" evidence, shows how tame these questions were. Dkt. 803-1 at 12. Investigating and challenging evidence is normal litigation conduct.

### 3. If the Court Finds the Case Exceptional, It Should Still Not Award Fees In Light of MGA's Litigation Conduct

Even if the Court finds the case "exceptional," fees are not mandatory. *Medicinova, Inc. v. Genzyme Corp.*, No. 14-CV-2513 JLS (KSC), 2021 WL 3054874, at \*5 (S.D. Cal. July 20, 2021) ("[E]ven if a court determines that a case is 'exceptional,' the court still has discretion to deny attorneys' fees."). A court can consider the

prevailing party's own conduct as a reason not to award fees. *Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*, No. CV 20-3286 PSG (PLAx), 2022 WL 17184602, at *4 (C.D. Cal. Aug. 9, 2022) ("[C]onsiderations of compensation and deterrence weigh against an award of fees because Defendant too has acted unreasonably throughout the litigation."). MGA's conduct warrants denying fees.

What MGA presents as "overly-aggressive positions" during discovery (Dkt. 803-1 at 3), was just MGA finally being forced to engage in discovery. *Supra* 3-5. Before Winston & Strawn appeared, MGA produced few documents and what it did produce was largely irrelevant. *Id.* Despite having done little to date, MGA fought tooth and nail against providing more. *Id.* MGA also refused to allow Mr. and Ms. Harris to see or discuss any financial damages information, even though it would later become public during trial, thus preventing them from knowing the possible damages. MGA's aggressive approach continued into the first trial, where it served "rote" and "unwarranted" objections to most the deposition testimony designated. Ex. 17 1/24/23(AM) at 5:12-6:10.

After the mistrial, the Court stated its view that "[t]he new trial turns a new leaf" where the parties would be held to "the highest ethical and professional standards." Dkt. 648. The OMG Girlz' counsel took that to heart. MGA's did not. Absent MGA seeking these fees, the OMG Girlz did not intend to revisit these issues, but must do so now. MGA and its counsel litigated the retrial in a disturbingly unprofessional manner. Before trial even started MGA falsely accused the OMG Girlz and its counsel of deliberate discovery misconduct, despite the Magistrate Judge finding otherwise. Dkt. 678 at 11-12. Then on day 2 of trial, MGA's lead counsel wrongly accused the OMG Girlz' lead counsel of trying to violate court orders. Ex. 18 5/10/23(PM) at 67:20-68:2 (accusations); *id.* at 124:11-15 (admitting it was wrong). Rather than taking more caution going forward though, MGA's behavior got more aggressive. On the Monday before the final week of trial, MGA filed a brief accusing the OMG Girlz' counsel of acting in "bad faith or with reckless disregard" based on cross examination questions

the previous Thursday. Dkt. 743. MGA chose not to discuss the issue with the OMG Girlz over the entire four-day weekend, instead filing it Monday evening before trial resumed Tuesday. The OMG Girlz then had to divert their attention from trial and spend the rest of the evening and late into the next morning preparing a response. Dkt. 744. The Court expressed its displeasure at MGA's conduct and stated its was "disturbed that the first premise from the [MGA] side always seems to be misconduct, contrived evil, et cetera," finding it "simply offensive" when not supported by the evidence. Dkt. 787 at 19:24-20:9.

MGA's unprofessional conduct did not go unnoticed in the gallery, with reporter Meghann Cuniff commenting: "This is the most vicious trial I've covered maybe ever in terms of how mean the attorneys are (one side only), and it's frankly just a bummer." *See* https://twitter.com/meghanncuniff/status/1661799425138884608; *see also* https://twitter.com/meghanncuniff/status/1662122023404072961 (discussing the courthouse conduct of an MGA attorney). Commenters also noted that, unfortunately, MGA's trial win will likely embolden such behavior. *See* https://twitter.com/meghanncuniff/status/1662254633664782336. Given MGA's actions, this is not a case where fees should be awarded.

**C.    MGA's Requested Fees for the Cal. Civ. Code §3344 Claim Should Be Denied or Reduced**

While Cal. Civ. Code §3344 awards fees to the prevailing party, only the portion of the fees dedicated to this claim should be awarded. MGA cites to a state court case from 2006, for the proposition that the Lanham Act is the federal equivalent of a right of publicity claim, but ignores Ninth Circuit precedent to the contrary. *Compare Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 57, 50 Cal. Rptr. 3d 607, 614 (2006) *with Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015) (the Lanham Act "is not tantamount to a federal right of publicity" in part because it requires consumer confusion). Because the right of publicity claims and Lanham Act

DEFENDANTS'/COUNTERCLAIMANTS' RESPONSE TO MGA'S MOTION FOR ATTORNEYS' FEES

claims in this case were not "inextricably intertwined," the hours spent and fees billed for the right of publicity claims must be apportioned.

MGA suggests it would be impossible to do so. But the Ninth Circuit has stated that "the impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment" for work done on non-recoverable claims even if that apportionment is "imprecise." *Gracie*, 217 F.3d at 1070. MGA has not even tried to meet that burden or provide an apportioned number, so the Court could deny MGA's request. At a minimum, however, the award should be reduced.

In deciding apportionment, the court can use its "personal knowledge of the case, the substance of the pleadings, orders and opinions, the course of the trial, and a sense of what the case was 'about' and what part the [ ] claims played in the overall makeup of the case. It also [can seek] to supplement the record through live testimony, making credibility judgments if necessary, additional declarations, or other documentation." *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003).

The heart of this case has always been the Lanham Act claims. Although the majority of MGA's billing records do not make it readily apparent the time allocated to claims under Cal. Civ. Code §3344 versus the other claims in the case, in part due to redactions, it is not "impossible" to apportion fees. Rather than go through the tedious of process of reviewing the narratives one by one (as MGA should have done at the outset), a review of the major filings in this case can help the Court quantify the centrality of the Lanham Act claims. For example, in its motion for summary judgment, MGA spent 18 out of 30 pages arguing the OMG Girlz' Lanham Act claims should be dismissed and only 5.5 pages on right of publicity. Dkt. 142-1. Earlier in the case, MGA spent 17.5 pages out of 23 moving to dismiss the OMG Girlz' Lanham Act claims and only 2.5 pages on right of publicity. Dkt. 33. That gives proportions of 10-20%. The Court can also take note that Lanham Act claims are notoriously more complicated than right of publicity claims under Cal. Civ. Code §3344 due to the numerous elements that

must be proven and defended against. *See Cleopatra Records, Inc. v. Bailey*, No. CV 04-3120 GAF (FMOx), 2005 U.S. Dist. LEXIS 32780, at *13 (C.D. Cal. May 23, 2005) (subtracting attorneys' fees from Lanham Act claims, which where the "heart of the case," and apportioning attorneys' fees for the §3344 claim accordingly). MGA even prioritized the Lanham Act claims while finding an expert, picking one with experience in marketing and likelihood of confusion surveys but who had never before done a "likeness" survey. Ex. 16 5/24/23(PM) at 13:3-6.

Because the allocation of time MGA likely spent on the Lanham Act claims greatly exceeded the time spent on the right of publicity claims, the OMG Girlz request that the Court award MGA, at most, 20% of its requested fees for the §3344 claim, which would be $260,000 before the 15% reduction discussed below.

### D.   MGA's Requested Fees are Unreasonable

To determine whether a fee award is reasonable "the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors . . . that have not been subsumed in the lodestar calculation. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993)).

Even if the Court finds this case "exceptional," MGA's purported fees are not reasonable for three reasons: (1) MGA had "top-heavy" staffing, with 11 partners on the case doing research and other tasks that should have been performed by associates or administrative personnel; (2) the hours billed are too high and incorporate entries for duplicative work between firms; and (3) MGA has not provided sufficient evidence to show that its billable rates are reasonable and comparable to attorneys in the community.

*First*, partners were used for work that could and should be performed by associates render their bills unreasonable. *See Cunningham v. County of Los Angeles*,

879 F.2d 481, 485 (9th Cir. 1989) (overstaffing counsels the court to reduce the number of hours). There were 11 partners from two law firms working on the case throughout. Courts will reduce fees where higher-billing partners and senior attorneys perform the majority of the work, or perform work that could have been performed by associates and staff. *See, e.g.*, *Genesis Merch. Partners, LP v. Nery's USA, Inc.*, No. 11-cv-1589 JM (WVG), 2013 U.S. Dist. LEXIS 190983, at *11 (S.D. Cal. Dec. 6, 2013) (finding the number of hours spent on the case "excessive" where "the majority of the time spent on this case was by three of the higher-billing attorneys," and applying a deduction accordingly). *Agster*, 486 F. Supp. 2d at 1015 ("The Court finds that only a finite amount of work requires lawyers in the senior associate or junior partner category. Associates at a lower rate should perform the remainder of the work.").

The two highest billers on this case for Umberg Zipser through summary judgment were two partners, Mark Finkelstein (856.4 hours) and Carol Reagan (490.6 hours). Dkt. 803-5. Ms. Reagan in particular spent most of these hours researching and drafting what presumably were first drafts of motions and other filings, including "prepar[ing]. . .exhibits." Dkt. 801-1 at 52. MGA's requested fees should be reduced to account for hours spent performing administrative tasks and to account for the amount of work performed by partners that should have been delegated to associates. Exhibit 11 shows examples of Umberg Zipser partners billing for work that should be delegated to an associate or administrative personnel and examples of overbilling. These examples are all pre-summary judgment, and thus apply equally to the §3344 fee request. Based on this overstaffing, the Court should reduce those fees by at least 15%, for a total of $221,000.

Second, many of the initial time entries from the eight Keller Anderle partners who worked on this case are "on-boarding" tasks, including reviewing the files to get up to speed in the case, etc. This should not be included in any fee award. *Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1016 (D. Ariz. 2007) ("Finally, the Court will make reductions from the hourly totals for certain timekeepers because of duplication

of effort, turnover of staff, and the inefficiencies inherent in utilizing so many timekeepers."). Moreover, much of this work is duplicative of work performed by co-counsel, Umberg Zipser. For example, multiple partners across both firms drafting or revising motions in limine (Dkt. 801-1 at 107-08 and 801-2 at 2-4) or gathering on several large group calls regarding "strategy" (Dkt. 801-1 at 108 and 801-2 at 2-3). This should result in a deduction to the Lanham Act fees, if any are awarded.

Third, MGA's support for its rates is a case in the Northern District of California from a team of Winston & Strawn lawyers based in New York City, and a brief from Sheppard Mullin attorneys that is from the Southern District of California and discusses national rates for lawyers. This is insufficient. MGA has failed to show that its billable rates are reasonable and comparable to other attorneys in the Central District of California, so any award should be reduced. *Shame on You Prods. v. Banks*, No. CV 14-03512-MMM, 2016 WL 5929245, at *12 (C.D. Cal. Aug. 14, 2016).

## V.   CONCLUSION

The Court should defer ruling on fee issues until after the appeal is resolved, or (1) deny MGA's request for $915,309.65 in "non-taxable costs" because they are expressly not recoverable costs, (2) deny MGA's $5,253,003.3 in attorney's fees because this case was not exceptional, and (3) deny MGA's fees for the §3344 claim, or alternatively award no more than $221,000.

Dated:  July 17, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/ *John R. Keville*
     John R. Keville

*Attorney for Defendants CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants/Counterclaimants certifies that this brief contains 6,976 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *John R. Keville*
     John R. Keville

*Attorney for Defendants  CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*