KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18290 Von Karman Ave., Ste. 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
9220 Winnetka Avenue
Chatsworth, CA 91311
Telephone: (818) 894-2525

Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: The Hon James V. Selna<br><br>**PLAINTIFF AND COUNTERDEFENDANTS' OPPOSITION TO DEFENDANTS' AND COUNTERCLAIMANTS' MOTION FOR NEW TRIAL AND FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF/ COUNTERDEFENDANTS' FIRST AMENDMENT DEFENSE**<br><br>Date:        September 11, 2023<br>Time:       1:30 p.m.<br>Place:       Courtroom 10C<br><br>Complaint Filed: December 22, 2020<br>Re-Trial Date:   May 9, 2023 |

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{258448.6}

Case No. 2:20-cv-11548-JVS-AGR

MGA'S OPPOSITION TO MOTION FOR NEW TRIAL

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  BACKGROUND ....................................................................................3

III.  LEGAL STANDARD ...........................................................................6

IV.  ARGUMENT..........................................................................................6

   A.  OMG Girlz Are Not Entitled To A New Trial On Trade Dress Infringement Based On The *Jack Daniel's* Decision ..........................6

     1.  The Court's *Rogers* Instruction Remains Appropriate After *Jack Daniel's* ....................................................................................6

     2.  This Court Should Exercise Its Discretion Not To Order A New Trial....................................................................................................9

      (a)  Any Error Surrounding The *Rogers* Instruction Was Harmless.9

      (b)  OMG Girlz Invited Any Error By Insisting On A General Verdict Form...................................................................................13

   B.  This Court Correctly Found The Dolls Were Expressive...................14

   C.  The Court Properly Found That OMG Girlz' Trade Dress Is Not Inherently Distinctive .........................................................................16

   D.  The Court's Evidentiary Rulings Were Proper But—At A Minimum—Were Not Sufficiently Prejudicial To Warrant A Third Trial.............18

     1.  Social Media Comments...............................................................18

     2.  Ms. Stephens' Knowledge Of Allegations Regarding The Harrises....................................................................................19

     3.  Testimony Regarding Racial Composition Of MGA's Customers And Logo Change.........................................................................20

     4.  The Court Properly Excluded Testimony Regarding Cultural Misappropriation.........................................................................21

V.  CONCLUSION ....................................................................................22

## **TABLE OF AUTHORITIES**

### **CASES**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't. of Treasury,*
686 F.3d 965 (9th Cir. 2012) ................................................................. 18

*Bolen v. Woo*, 96 Cal. App. 3d 944 (1979) ............................................. 10

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) ...................... 14

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001) .............. 16

*Counts v. Burlington Northern R. Co.*, 952 F.2d 1136 (9th Cir. 1991) ............... 12

*Crawford v. City of Bakersfield*, 944 F.3d 1070 (9th Cir. 2019) ............ 9

*Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003
(9th Cir. 2000) ...................................................................................... 15

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) ...... 6

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059
(9th Cir. 2015) ...................................................................................... 11

*Finnegan v. United States*, 2021 WL 8820874 (C.D. Cal. 2021) ........... 12

*Frost v. BNSF Railway Company*, 914 F.3d 1189 (9th Cir. 2019) .......... 12

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) .............. 11

*Greisen v. Hanken*, 925 F.3d 1097 (9th Cir. 2019) ................................ 9

*Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021), *cert.
denied*, 142 S. Ct. 2834 (2022) ............................................................. 9

*In re Oracle Corp.*, 627 F.3d 376 (9th Cir. 2010) .............................. 2, 13

*Jack Daniel's Properties, Inc. v. VIP Products LLC,* 143 S. Ct. 1578
(2023) ............................................................................................ passim

*JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098
(9th Cir. 2016) ...................................................................................... 19

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222
(9th Cir. 2001) ........................................................................................ 6

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042
(9th Cir. 1998) ...................................................................................... 13

*Kirby v. Sega of America, Inc.,* 144 Cal. App. 4th 47 (2006) ................. 11

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) ................. 17

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{258448.6}

ii

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES

*Madrigal v. Allstate Insurance Company,* 215 F. Supp. 3d 870
(C.D. Cal. 2016) .......................................................................... 9

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ........................ 14

*McCord v. Maguire*, 873 F.2d 1271 (9th Cir. 1989)................................................. 13

*MGA Ent. Inc. v. Harris*, 2022 WL 4596585
(C.D. Cal. Sept. 7, 2022)................................................................. 6

*MGA Entertainment, Inc. v. Zuru, LLC*, 2019 WL 5394176
(C.D. Cal., Oct. 21, 2019) ................................................................ 8

*Obrey v. Johnson*, 400 F.3d 691, 700 (9th Cir. 2005) ........................................... 18

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.,* 585
F. Supp. 2d 583 (D. Del. 2008).......................................................... 12

*Robertson v. McNeil-PPC Inc.*, 2015 WL 12698313 (C.D. Cal. 2015) ................ 6

*Shinseki v. Sanders,* 556 U.S. 396 (2009)............................................................... 18

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992)........................ 17

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772
(9th Cir. 2009)................................................................................ 12

*United States v. Angulo*, 671 F. App'x 532 (9th Cir. 2016) ................................. 13

*United States v. Garrido,* 713 F.3d 985 (9th Cir. 2013) ...................................... 10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000).................. 3, 17

**STATUTES**

FRCP 59(e).......................................................................................................... 6, 12

FRCP 50(b) ............................................................................................................. 6

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{258448.6}

iii

Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES

## I.   INTRODUCTION

After years of litigation, a mistrial, and a second trial that ended in a quick, unanimous jury verdict in MGA's favor, OMG Girlz ask this Court for a third try. Their request for a do-over—which is based largely on an ancillary issue that neither side focused on at trial and that only affects the trade dress claim—should be rejected.

The heart of OMG Girlz' motion for a third trial turns on the Supreme Court's recent decision in *Jack Daniel's*, which they claim bars MGA from pursuing a First Amendment defense to their trade dress claim and renders one of this Court's instructions legal error.  Dkt. 814 ("Mem.") 1 (citing *Jack Daniel's Properties, Inc. v. VIP Products LLC,* 143 S. Ct. 1578 (2023)).  But as OMG Girlz admit in the very next breath, *Jack Daniel's* applies only when the purported infringer uses the trade dress "'as a designation of source for infringer's own goods.'"  *Id.*  The instruction to which OMG Girlz object applied to MGA's *dolls* (as opposed to MGA's *boxes* for those dolls), and the dolls are not source-identifying—for example, the dolls themselves do not include any of MGA's stylized O.M.G. logos.  *Jack Daniel'*s "narrow" ruling is accordingly inapplicable here because MGA's dolls do not use "a mark … as a mark."  143 S. Ct. at 1592-1593.

Even if OMG Girlz were right on the merits (and they are not), the *Jack Daniel's* ruling does not require a new trial.  As OMG Girlz acknowledge, the jury's decision can stand if it "'is more probable than not that a properly instructed jury would have reached the same verdict.'"  Mem. 9.  Here, MGA's First Amendment defense to trade dress infringement was a tiny portion of the trial, which focused almost entirely on whether MGA's products were unduly similar to OMG Girlz' public image.  The First Amendment issue was not even mentioned by either side in opening and it merited no more than a few minutes in the middle of MGA's ninety-minute closing.

1   Relatedly, any possible ambiguity over whether the jury relied on the First

2   Amendment to rule in MGA's favor on the trade dress claim was invited error.  It

3   was *OMG Girlz* who proposed the general verdict form that this Court ultimately

4   adopted (with small modifications).  *See* Dkt. 716.  MGA expressly objected to

5   this approach and unsuccessfully asked this Court to use a special verdict form

6   that would have required the jury to state whether it was deciding the case on First

7   Amendment grounds.  Dkt. 715; TT May 26, 2023 A.M. at 6:2-6.  To the extent

8   that the general verdict form makes it difficult to establish the basis for the jury's

9   ruling, OMG Girlz cannot "invite the district court to err and then complain of that

10  very error."  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 386 (9th Cir.

11  2010).

12   OMG Girlz' remaining arguments have previously been rejected by this

13  Court and can be quickly dispatched.  *First*, the Court correctly found that MGA's

14  dolls are expressive works based on the testimony of two MGA designers.  TT

15  May 25, 2023 A.M. 16:8-21.  OMG Girlz largely ignore this testimony and instead

16  focus on a statement from Mr. Larian that was merely responding to the false

17  accusation that MGA's Bratz dolls are overly sexualized.  Indeed, Mr. Larian later

18  testified that the O.M.G. dolls were intended to send an affirmative message—one

19  of diversity and inclusion, reflecting that "America is a melting pot" and not

20  everyone has "blond hair [and] blue eyes."  TT May 24, 2023 P.M. 48:12-21.

21   *Second*, the Court was correct to instruct the jury that they had to find OMG

22  Girlz' purported trade dress had "acquired secondary meaning" in order for OMG

23  Girlz to prevail.  *See* TT May 26, 2023 A.M. at 56.  OMG Girlz are simply wrong

24  that the jury could have alternatively relied on a finding that the alleged trade dress

25  was inherently distinctive.  The inherent distinctiveness test applies only to

26  product *packaging* and—in cases like this one, where it is a "close call" whether

27  the purported trade dress is product packaging or product design—the Supreme

28

1   Court has held that the inherent distinctiveness test does not apply.  *See Wal-Mart*

2   *Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000).

3   *Finally*, OMG Girlz' challenges to this Court's evidentiary rulings are

4   meritless.  This is particularly so for OMG Girlz' argument that their witnesses

5   should have been permitted to discuss "cultural appropriation" at trial, a line of

6   argument that this Court previously deemed so prejudicial as to warrant a mistrial.

7   **II.   BACKGROUND**

8   This suit began on December 22, 2020, when MGA filed a complaint for

9   declaratory judgment.  Dkt. 1.  OMG Girlz filed counterclaims for trademark

10  infringement, trade dress infringement, trademark dilution, statutory

11  misappropriation of name or likeness, common law misappropriation of name or

12  likeness, statutory unfair competition, common law unfair competition, and fraud.

13  Dkt. 13.  After discovery closed, this Court granted much of MGA's motion for

14  summary judgment.  Dkt. 326 at 26, 31, 33.  As a result, only a small subset of

15  OMG Girlz' counterclaims—the trade dress and right of publicity claims, as

16  applied to less than half of the originally-accused dolls—remained at issue.

17  At trial, the parties devoted virtually all their time to addressing two issues:

18  (1) whether MGA had willfully copied and infringed OMG Girlz' trade dress, and

19  (2) whether MGA had willfully misappropriated OMG Girlz' name, likeness, and

20  identity.

21  Neither MGA's nor OMG Girlz' opening statement even mentioned the

22  First Amendment, free speech, or free expression.  Rather, MGA opened with an

23  explanation for why the company logically could not have copied OMG Girlz, as

24  MGA has long used a similar look for its dolls since before OMG Girlz even

25  existed.  TT May 10, 2023 A.M., at 59:2-9, 62:15-23 ("MGA created and styled

26  the original dolls for decades" before OMG Girlz entered the scene).  And MGA's

27  counsel ended with the separate point that no reasonable consumer could "confuse

28  [MGA's] dolls with the OMG Girlz."  *Id.* at 88:15-16.

Similarly, MGA's focus at trial was on the distinctive—and longstanding—designs of its dolls.  For example, one of the dolls' designers testified at length about the process of creating the dolls, focusing primarily on her creative process and sources of inspiration (namely, to show that neither involved OMG Girlz).  To the extent she referenced the dolls' expressive message, she did so largely to explain that the dolls were unrelated to OMG Girlz.  *See, e.g.,* TT May 18, 2023 P.M., at 30:15-21 (explaining that stars on one doll were not "reference[s] to Zonnique Pullins," but rather "represent[ed] the stars of the American flag").

MGA took a similar tack in its 90-minute closing argument, the bulk of which focused on responding to the theories of liability asserted by OMG Girlz.  Specifically, MGA explained that (1) the asserted trade dress was too broad (TT May 26, 2023 P.M., at 10:17-11:16, 25:20-26:16), (2) the trade dress lacked secondary meaning (*id.* at 11:3-19:13, 22:4-8, 26:19-29:3), (3) there were no damages (*id.* at 20:16-21:1), (4) there was no misappropriation (*id.* at 21:22-22:3), (5) there was no likelihood of confusion (*id.* at 22:11-15), (6) the trade dress was abandoned (*id.* at 22:16-17), and (7) the transformative use defense applied to the misappropriation claim (*id.* at 22:18-25:9).  MGA's counsel did not mention the trade dress First Amendment issue until 45 minutes into the closing.  Even then, she spent just four minutes on it.  *See id.* at 29:5-31:23.

OMG Girlz' lead attorney took the same basic approach in closing.  He devoted nearly all of his 75-minute closing statement and 15-minute rebuttal to the questions of infringement and misappropriation.  TT May 26, 2023 A.M., at 73:9-125:25; TT May 26 P.M., at 56:23-64:11.  He spent less than three minutes (in rebuttal) discussing whether the dolls' purported use of OMG Girlz' purported trade dress was so "explicitly misleading" as to preclude First Amendment protection.  *Id.* at 64:14-66:2.

The parties each submitted proposed verdict forms.  MGA's proposed form asked the jury to answer specific interrogatories regarding each element of OMG

Girlz' claims and MGA's affirmative defenses—including MGA's First Amendment defense to trade dress liability. *See* Dkt. 715. OMG Girlz, in contrast, requested a general verdict form that, with respect to liability, asked the jury only whether "at least one of MGA's L.O.L. Surprise! OMG dolls infringed on the OMG Girlz' trade dress" and whether "at least one of MGA's L.O.L. Surprise! OMG dolls misappropriated the OMG Girlz' name, likeness, or identity." Dkt. 716. This Court ultimately adopted a slightly modified version of OMG Girlz' proposal over MGA's objection. *See* TT May 26, 2023 A.M., at 6:2-6 (MGA's counsel stating that "[w]e have submitted specific questions, and we think given all of the factors and all of the issues that a general form is not appropriate in this case. Therefore, we object to that."); *see also* Dkt. 771 (verdict form).

Thirty minutes before jury instructions were set to begin—and nearly two weeks after OMG Girlz submitted their proposed general verdict form—OMG Girlz for the first time asked for this Court to add a single interrogatory to the verdict form. Specifically, during a discussion of expressiveness and Instruction 17, OMG Girlz requested "a jury instruction on the issue," without identifying the precise issue they had in mind. TT May 26, 2023 A.M., at 29:18-22. OMG Girlz did not provide any proposed specific language for their eleventh-hour suggestion, nor did they link their request to this Court's decision to instruct the jury on the *Rogers* test. Rather, their proposal would apparently have merely asked the jury to find whether the dolls were "expressive" rather than having the Court resolve that issue as a matter of law.

The jury deliberated for less than two hours and then ruled unanimously in MGA's favor. Shortly before the verdict was announced, the jury submitted the following question to the Court: "Does the jury have the right to award legal fees to be paid by either party? In other words, if party 'A' wins can we make losing party 'B' pay winning party 'A''s legal fees?" Dkt. 765. Six minutes after the

1   jury received its answer, it announced it had reached the unanimous verdict.  Dkt.

2   766, 767.

## III.   LEGAL STANDARD

4          OMG Girlz' motion primarily asks for a new trial under FRCP 59(a).  "In

5   considering a motion for a new trial, a district court is first to determine whether

6   an error occurred" and, if so, "whether the error caused prejudice to the party

7   seeking a new trial."  *See Robertson v. McNeil-PPC Inc.*, 2015 WL 12698313, at

8   *3 (C.D. Cal. 2015).  In the alternative, OMG Girlz seek the "extraordinary

9   remedy" of reconsideration under FRCP 59(e), which is available only in "highly

10  unusual circumstances."  *See MGA Ent. Inc. v. Harris*, 2022 WL 4596585, at *1-2

11  (C.D. Cal. Sept. 7, 2022).

12         OMG Girlz also seek judgment as a matter of law on MGA's First

13  Amendment defenses under FRCP 50(b).  A district court "may not substitute its

14  view of the evidence for that of the jury," and must uphold the jury's verdict if it is

15  supported by substantial evidence.  *Johnson v. Paradise Valley Unified Sch. Dist.*,

16  251 F.3d 1222, 1227 (9th Cir. 2001).  Moreover, because a Rule 50(b) motion is

17  "a renewed Rule 50(a) motion, … a party cannot properly 'raise arguments in its

18  post-trial motion for judgment as a matter of law that it did not raise in its

19  preverdict Rule 50(a) motion."  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d

20  951, 961 (9th Cir. 2009).

## IV.   ARGUMENT

### A.   OMG Girlz Are Not Entitled To A New Trial On Trade Dress Infringement Based On The *Jack Daniel's* Decision

#### 1.   The Court's *Rogers* Instruction Remains Appropriate After *Jack Daniel's*

26         OMG Girlz ask this Court to order a third trial on the trade dress

27  infringement claim based on a purported change in the law caused by *Jack*

28

*Daniel's*.  Mem. 6-8.[1]  But the Supreme Court's "narrow" ruling holds only that the *Rogers* test is inapplicable to "source-identifying" uses of another's mark.  143 S. Ct. 1578, 1593 (2023).  Where "the trademark is not being used to indicate the source or origin of a product," *id.* at 1589, *Rogers* continues to apply.  In this case, the accused items—the look of the L.O.L. Surprise! O.M.G. dolls—are not source identifying.  *Jack Daniel's* is inapplicable.

Specifically, in *Jack Daniel's*, the defendant created a "squeaky, chewable dog toy designed to look like a bottle of Jack Daniel's whiskey," called "Bad Spaniels." 143 S.Ct. at 1582.  It was part of a line of toys, most of which were expressly designed to look like (and thus parody) popular beverage brands.  *Id.* at 1585.  The toy's hangtag had "the Bad Spaniels logo sit[ting] opposite the concededly trademarked Silly Squeakers logo, with both appearing to serve the same source-identifying function." *Id.* at 1591.  The defendant conceded in its complaint that the "Bad Spaniel's trademark and trade dress" were used to "identify and distinguish [Defendant's] goods" and to "indicate [their] source." *Id.* at 1585, 1591.

Here, in contrast, MGA has never asserted trademark or trade dress rights in the *looks* of the O.M.G. dolls.  While MGA owns trademark rights to the stylized L.O.L. Surprise! O.M.G. logo, that logo only appears on the boxes for the dolls, and not on the dolls themselves.  That is, the boxes that contain the dolls feature the source-identifying L.O.L. Surprise! trademark, but the dolls do not.

The challenged *Rogers* instruction is fully consistent with this delineation. It states that the dolls themselves "are an expressive work that is protected by the First Amendment." Dkt. 764 at 24.  It makes no reference to the boxes that hold the dolls.  And prior to delivering the instruction, this Court ruled that "there is no issue as to whether *the dolls* are expressive works." TT, May 25, 2023 A.M. at 16

---

[1] OMG Girlz rightly have not argued that *Jack Daniel's* requires a new trial on the right of publicity claim, as the *Rogers* test does not apply in that context.

(emphasis added).  While the verdict form included pictures of the boxes, this was done at OMG Girlz' insistence—and over MGA's objection—so that the jury can more easily see which dolls are at issue.  TT May 26, 2023 A.M. at 6:7-7:14.  It had nothing to do with whether the dolls are expressive works.

OMG Girlz' arguments to the contrary are unavailing.  *First*, they cite to allegations in MGA's First Amended Complaint that they claim amount to a concession that the dolls are source-identifying.  Mem. 7.  To the contrary, the Complaint makes clear—even in a paragraph cited by OMG Girlz—that the dolls are only source-identifying when they are "branded with the L.O.L. Surprise! Marks as a source identifier[.]"  *E.g.*, Dkt. 16, ¶ 37, *cited in* Mem. 7.  Put slightly differently, while the trademark that appears on the boxes is source-identifying, the dolls themselves are not source-identifying without that "branding."  *See* Dkt. 16, ¶ 25 (alleging that consumers "associate" the "L.O.L. Surprise O.M.G. *Marks* … with their source, MGA." (emphasis added)).

*Second*, OMG Girlz assert that MGA's witnesses testified that the term "'O.M.G.'—which is part of the OMG Girlz' trade dress and dismissed trademark—is prominently on the doll boxes in the largest lettering, right next to the registered 'L.O.L. Surprise' word mark."  Mem. 7.  That is true, but is irrelevant to whether the dolls themselves serve a source-identifying function.  If anything, the testimony supports MGA, as it confirms that it is the name on the box—and not something about the look of the dolls—that is source identifying.

*Third*, OMG Girlz contend that MGA has claimed trade dress rights in the designs of dolls that are not at issue in this case (*e.g.*, Bratz).  Mem. 8.  But whether MGA alleged unregistered trade dress rights regarding *different products* is irrelevant.  MGA has not claimed trade dress rights in the specific dolls at issue here.  *Cf. MGA Entertainment, Inc. v. Zuru, LLC*, 2019 WL 5394176, at *4 (C.D. Cal., Oct. 21, 2019) ("[T]he written allegations in Plaintiff's complaint make clear Plaintiff only seeks trade dress and trademark protection for L.O.L. Surprise!'s

1  distinctive packaging and recognizability, not for the 'intellectual content' of the
2  toy itself.").

3       **2.    This Court Should Exercise Its Discretion Not To Order A**
4            **New Trial**

5            **(a)    Any Error Surrounding The *Rogers* Instruction**
6                    **Was Harmless**

7       Even if *Jack Daniel's* rendered this Court's *Rogers* instruction error, it is
8  probable (if not highly likely) that the jury's trade dress verdict did not rest on
9  First Amendment grounds.  Indeed, the First Amendment was barely mentioned at
10 trial.  Accordingly, this Court should exercise its discretion to hold that any error
11 was harmless.  *See Greisen v. Hanken*, 925 F.3d 1097, 1117-1118 (9th Cir. 2019)
12 (rejecting request for new trial where it was "more probable than not that the jury
13 would have reached the same verdict had it been properly instructed"); *see also*
14 *Hardeman v. Monsanto Co.*, 997 F.3d 941, 969 (9th Cir. 2021), *cert. denied*, 142
15 S. Ct. 2834 (2022) (noting the harmlessness analysis in this context is "less
16 stringent than review for harmless error in a criminal case").

17      Here, looking at the "proceedings as a whole," *Madrigal v. Allstate*
18 *Insurance Company*, 215 F. Supp. 3d 870, 910–911 (C.D. Cal. 2016), there is
19 every reason to believe the result would have been the same had the *Rogers*
20 instruction not been given.  As discussed, MGA's First Amendment argument was
21 not even mentioned in either side's opening statements, was alluded to only briefly
22 during witness testimony, and merited just a few minutes of discussion during the
23 three hours the parties collectively devoted to closing statements.  MGA's closing
24 argument in particular only mentioned the First Amendment defense after forty-
25 five minutes had passed and only after addressing every other theory in the case.
26 *See Crawford v. City of Bakersfield*, 944 F.3d 1070, 1080 (9th Cir. 2019) (the
27
28

1   "closing argument matters a great deal" in assessing whether an "error was

2   harmless").[2]

3        Notably, whether the dolls were a form of expressive speech was not a part of

4   either side's trial themes.  Rather, MGA's counsel emphasized that "this case is

5   about greed," explaining that the "[t]he Hustle parties want a hundred million

6   dollars for doing absolutely nothing."  TT May 10, 2023 A.M. at 61:14-16.  At

7   various points, counsel characterized the case as a "shakedown" (*id.*; TT May 26,

8   2023 P.M., at 4:16-18), extortion (TT May 10, 2023 A.M. at 61:14 at 85:24), "a

9   con" (TT May 26, 2023 P.M., at 4:23-24), an "attack" that was "fabricated" with

10  "no credible evidence" (*id.* at 7:17-19), and "a money grab" (*id.* at 38:12-13)—

11  adding that MGA had been subjected to "lies, falsehoods, and extortion." *Id.* at

12  53:18-20.

13       Counsel for OMG Girlz, for his part, argued that MGA willfully copied (TT

14  May 26, 2023 A.M., at 104:2-5) and infringed OMG Girlz' trade dress (*id.* at 123:2-

15  10, 125:13-14), and willfully misappropriated OMG Girlz' name, likeness, and

16  identity (*id.* at 125:15-16)—and damages should range from $98 million (*id.* at

17  125:16-18) to $333 million (TT May 10, 2023 A.M. at 55:20-24)  The witness

18  testimony from one of MGA's designers that OMG Girlz rely upon to purportedly

19  show that the First Amendment was a focus, Mem. 10, was intended largely as a

20  rebuttal to this line of argument—showing that MGA's dolls were not ripped off

21  and were in fact wholly original.  TT May 18, 2023 P.M. at 89:23-90:1 ("I can't

22  stand that somebody is wrongly accusing us of stealing, copying them when it's

23  absolutely not true.  So I had to speak my truth, which is the truth, and defend our

24  creations.").

25  ───────────────

26  [2] This distinguishes *United States v. Garrido* and *Bolen v. Woo*, where the
    instruction was a centerpiece of the closings.  *Garrido*, 713 F.3d 985, 997 (9th Cir.

27  2013) ("The prosecutor's closing argument leaves little doubt that its case focused
    almost entirely on a failure to disclose theory."); *Bolen*, 96 Cal. App. 3d 944, 954-

28  955 (1979) (similar).

Finally, the jury's finding for MGA on the misappropriation claim (which again, is unaffected by *Jack Daniel's*) underscores that the jury likely concluded that OMG Girlz had failed to establish trade dress infringement.  The Lanham Act "is the federal equivalent of a right of publicity claim." *Kirby v. Sega of America, Inc.,* 144 Cal. App. 4th 47, 57 (2006).  Here, the same issues of fact concerning likeness and identity which putatively supported the misappropriation claim also were alleged to support OMG Girlz' Lanham Act claim.  When the jury rejected the right of publicity claim, it therefore necessarily rejected the more exacting trade dress infringement claim.  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A.*, *Inc.,* 778 F.3d 1059, 1072 (9th Cir. 2015) (noting that the Lanham Act "claims require an additional element" not required by right of publicity claims—*i.e.*, "that the use be likely to confuse as to the sponsorship or approval of a defendant's goods.").

OMG Girlz' counter-arguments are not persuasive.  *First*, they appear to contend that any error was inherently prejudicial because a single Arizona district court has indicated that it is "nearly impossible" for a trademark holder to prevail under *Rogers*.  Mem. 9.  The Ninth Circuit has taken a different view, stating that "[t]he *Rogers* test is not an automatic safe harbor for any minimally expressive work that copies someone else's mark." *Gordon v. Drape Creative, Inc.,* 909 F.3d 257, 261 (9th Cir. 2018).  Regardless, whether OMG Girlz could have prevailed on one of MGA's affirmative defenses is hardly dispositive to the Ninth Circuit's test for harmless error, which looks to the proceedings as a whole.   Here, given that the focus of the trial was on whether OMG Girlz had established willful trade dress infringement, it is highly unlikely that the jury even reached the First Amendment question.

*Second*, OMG Girlz contend that the purported error was necessarily prejudicial because it is unclear from the general verdict whether the jury's decision turned on the First Amendment.  Mem. 10.  But the Ninth Circuit has rejected such a bright-line test, explaining that even when an "instruction state[s] incorrect law"

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{258448.6}

11

Case No. 2:20-cv-11548-JVS-AGR

MGA'S OPPOSITION TO MOTION FOR NEW TRIAL

1  as to one theory, a court "may construe a general verdict as attributable to one of

2  several theories if it was supported by substantial evidence and was submitted to the

3  jury free from error." *Counts v. Burlington Northern R. Co.*, 952 F.2d 1136, 1140

4  (9th Cir. 1991).[3]

5      *Third*, OMG Girlz cite three (inapposite) cases where courts have found that

6  a change in law required a new trial. Mem. 8-9 (citing *Inland Empire*, *Power*

7  *Integrations*, and *Frost*). None of those cases involved the situation here, where the

8  purportedly erroneous instruction affected an ancillary affirmative defense that was

9  not a focus at trial. Moreover, *Power Integrations* is an out-of-circuit district court

10 decision that was decided under a more demanding harmless error standard. *See*

11 585 F. Supp. 2d 583, 587 (D. Del. 2008) (noting Third Circuit case law requires a

12 showing that it is "highly probable that the error did not contribute to the

13 judgment[.]").

14     *Finally*, OMG Girlz suggests that this Court could treat their motion for a

15 new trial under FRCP 59(a) as a request for reconsideration under FRCP 59(e).

16 Mem. 8, 11. But OMG Girlz do not point to any place in the record where they

17 argued that the *Rogers* test does not apply when trade dress is used as a source-

18 identifier, and their own case law establishes that "a district court does not abuse its

19 discretion when it disregards legal arguments made for the first time" in a motion

20 for reconsideration. *See United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d

21 772, 780 (9th Cir. 2009). Further, FRCP 59(e) is "coextensive" with Local Rule 7-

22 18 and Rule 7-18 and requires a showing of "new *material* facts or a change of

23 law." *Finnegan v. United States*, 2021 WL 8820874, at *1 (C.D. Cal. 2021)

24 (emphasis). A change in the law that resulted in, at most, a harmless instructional

25

26 [3] *Frost v. BNSF Railway Company* is not to the contrary. There, the Court

27 considered both the evidentiary record and whether other (correct) jury instructions
   might have cured the error before finding the error was not harmless. *See* 914 F.3d

28 1189, 1197-1199 (9th Cir. 2019).

1    error is necessarily immaterial.

2    **(b)     OMG Girlz Invited Any Error By Insisting On A**

3    **General Verdict Form**

4         Were there any uncertainty about whether the jury's verdict depended on

5    the *Rogers* instruction—and as just explained, there is not—that would be an

6    unreviewable problem entirely of OMG Girlz' own making.   *In re Oracle Corp.*,

7    627 F.3d at 386).  Specifically, it is fundamental that a party cannot "invite the

8    district court to err and then complain of that very error." *Id.*  That basic principle

9    applies here—a party cannot argue against a verdict form that breaks out specific

10   issues, and then argue that the failure to break out those issues created reversible

11   error. *See, e.g., United States v. Angulo*, 671 F. App'x 532, 533 (9th Cir. 2016)

12   ("Angulo invited error by concurring in the verdict form and rejecting a different

13   'break-out' verdict form proposed by the district court judge.").

14        OMG Girlz argue that the supposedly erroneous *Rogers* instruction

15   irreparably tainted the jury's verdict because "the jury returned a general verdict

16   so MGA cannot show the reason for the jury's decision." Mem. 14.  But as

17   discussed, it was OMG Girlz who proposed a general verdict form and opposed

18   MGA's proposed special verdict form.  Had MGA's form been adopted, the jury

19   would not even have reached the First Amendment questions unless it first found

20   that liability for trade dress had otherwise been established—meaning that MGA

21   would have been able to easily and definitively prove that any instructional error

22   was harmless. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150

23   F.3d 1042, 1051 (9th Cir. 1998) (instructional error harmless where "the jury

24   found no [trade dress] infringement and thus did not reach the affirmative

25   defenses").  OMG Girlz cannot permissibly "play procedural brinkmanship with

26   the jury system and take advantage of uncertainties they could well have avoided."

27   *McCord v. Maguire*, 873 F.2d 1271, 1274 (9th Cir. 1989).

28        This invited error is not cured by OMG Girlz' last-second request for a

special interrogatory related to whether the jury found the dolls were expressive works.  Mem. 3, 9.  OMG Girlz did not submit a written version of the proposed interrogatory, but it appears that they were merely requesting a finding from the jury regarding whether the accused dolls were expressive.  *See* TT May 26, 2023, A.M. at 29:18-22 ("We would ask for a jury question on the issue" of whether "Mr. Larian's statement that dolls do not express anything" establishes that the dolls were not expressive).  A general verdict for MGA accompanied by a finding that the dolls were expressive would not have provided any further clarity on the grounds for the jury's decision.  The jury still could have found that OMG Girlz failed to prove liability—or even could have rejected MGA's First Amendment defense based on OMG Girlz' (meritless) argument that the dolls were explicitly misleading.  *See* Mem. 6 (noting that the jury could have found in OMG Girlz' favor on this ground).

> **B.     This Court Correctly Found The Dolls Were Expressive**

OMG Girlz "re-urge their JMOL motion" on the ground that Mr. Larian's supposed "mid-trial concession that the dolls are not expressive works at all" bars MGA from pursuing its First Amendment defenses.  Mem. 1-2; 11-13.

As to the trade dress claim, OMG Girlz' argument fails to justify a new trial for the reason already explained: the jury's verdict did not turn on whether the dolls at issue were expressive.  But in any event, the Court was correct to conclude that they were.

In determining whether a work is expressive, the court analyzes whether the work is "communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (citation omitted).  A work need not be the "expressive equal of Anna Karenina or Citizen Kane" to satisfy this requirement. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013).

Here, Ms. Consorti (one of MGA's designers) testified that the L.O.L. Surprise! O.M.G. dolls have their own back stories and themes.  TT May 17, 2023

1   P.M. 23:4-7.  The dolls are the older sisters of the Tots, "and they are fierce,

2   fabulous, fashionable." *Id.* 23:8-10.  They are also sisters in the sense of a chosen

3   family: they fit together, they stick up for each other, and they have fun along the

4   way.  *Id.* 23:11-13.  Each has her own varied interests or aesthetic in her clothing

5   and hair.  *Id.* 23:14-15.  Further, each loves to express herself through the way she

6   dresses and each piece of clothing tells a story.  *Id.* 22:6-23:20.  After hearing this

7   testimony, and the testimony of Ms. Stephens (another MGA designer), the Court

8   correctly found as a matter of law that "there is no issue as to whether the dolls are

9   expressive works."  TT May 25, 2023 A.M. 16:8-21.

10       OMG Girlz' contrary position relies on a single answer given by Mr. Larian

11   regarding whether a plastic doll "sends a message."  OMG Girlz cite no authority

12   for the proposition that the Court was required to consider only Mr. Larian's

13   testimony and ignore the testimony from MGA's designers.  In addition, Mr.

14   Larian was not opining on the legal issue of expressive works, but instead was

15   refuting alleged concerns about MGA's Bratz dolls "being overly sexualized for

16   young girls."  TT May 25 2023 A.M. at 77:15-78:10.  Elsewhere in his testimony,

17   Mr. Larian stated that the L.O.L. Surprise! O.M.G. dolls were intended to send a

18   message of diversity and inclusion because "America is a melting pot … There's a

19   lot of immigrants who make -- who are the backbone of this country in my

20   opinion, and they don't look always the same."  TT May 24, 2023 P.M. 48:12-18.

21   Accordingly, MGA "wanted to have a diversity for customers so they can buy

22   dolls in their likeness, not always the same … blond hair, blue eyes."  TT May 24,

23   2023 P.M. 48:19-21.  A message of diversity is an expressive message.  *See*

24   *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1012 (9th Cir. 2000)

25   (bulletin boards serve as an expressive vehicle for a school board's policy of

26   educating for diversity and promoting tolerance).

27       As to the misappropriation claim, OMG Girlz forfeited the right to raise this

28   argument by not pressing it in their oral Rule 50(a) motion.  *See Go Daddy*, 581

F.3d at 961.  Specifically, counsel for OMG Girlz argued:  "Just to be clear, we are moving under 50(a) that they cannot have a First Amendment expressive works defense under the *Rogers* test when the company has stated plastic dolls do not have a message[.]"   TT May 26, 2023 A.M. 41:16-22 (emphasis added).  The *Rogers*/trade dress First Amendment test is distinct from the right of publicity First Amendment test.  *Compare* TT May 26, 2023 A.M. 61 (trade dress instruction) *with id.* 64 (right of publicity instruction); *see also* Mem. 3 (distinguishing the two instructions).

Further, the First Amendment defense for misappropriation considers whether the work "contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame."  *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001).  Nothing in Mr. Larian's passing statement regarding the dolls' expressiveness says anything about whether the dolls were transformative, and the designers' testimony makes clear they were.

## C.   The Court Properly Found That OMG Girlz' Trade Dress Is Not Inherently Distinctive

OMG Girlz argue that (1) this Court erred by failing to instruct the jury that appearance can be protected as trade dress so long as it is based on "inherent distinctiveness" even if there is no secondary meaning and (2) that MGA "*agreed*" with this view of the law in the Joint Pretrial Order before changing position at trial.  Mem. 13-14 (emphasis in original).  OMG Girlz' argument misstates both the facts and the law.

As to the facts, the Joint Pretrial Order states only that "the disputed issues which remain to be tried to a jury and/or to the Court include … '[w]hether the Counter-Claimants' asserted trade dress has acquired secondary meaning and/or *is distinctive*.'"  Dkt. 492 at 22 (emphasis added).  The order does not say that the trade dress must be "inherently" distinctive.  And the term "distinctive" is not synonymous with "inherent distinctiveness."  Secondary meaning is itself a species

of distinctiveness: "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) (emphasis in the original).  In short, "[s]econdary meaning is another way of expressing the distinctiveness of a trademark." *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985) (*en banc*).

OMG Girlz also wrongly assert that MGA "misle[]d" the Court about whether it had previously ruled on the inherent distinctiveness issue.  Mem. 13.  To the contrary, MGA argued in its summary judgment briefing that a showing of secondary meaning was required, Dkt. 157 at 9-10, and this Court's summary judgment ruling adopted that argument by stating that OMG Girlz were required to show "the trade dress has acquired secondary meaning."  Dkt. 326 at 9.  Tellingly, OMG Girlz' claims on this front were fully aired during the jury instruction briefing, Dkt. 698 at 30, 32, and the Court did not credit them in the final instructions.

On the law, the Court's ruling was correct.  When a plaintiff alleges infringement of product *packaging*, it may prove distinctiveness either by showing that the packaging is "inherently distinctive," in that its "intrinsic nature serves to identify a particular source of a product," *Two Pesos,* 505 U.S. at 768, or that it has sufficiently "acquired" distinctiveness through secondary meaning, *Wal-Mart,* 529 U.S. at 210–11.  By contrast, trade dress based on product design or configuration (like color) can never be inherently distinctive since "product design almost invariably serves purposes other than source identification." *Id.* at 213.  Therefore, in order to gain the protection of product design trade dress under the Lanham Act, a plaintiff must demonstrate that its trade dress has "acquired" distinctiveness in the form of "secondary meaning." *Id.* at 212–13.

The Supreme Court acknowledged that drawing lines "between product-

1  design and product-packaging trade dress" will, at times, be "difficult." *Id*. at

2  215.  It has accordingly instructed courts in "close cases" to "err on the side of

3  caution and classify ambiguous trade dress as product design, thereby requiring

4  secondary meaning."  *Id*.  Here, even OMG Girlz do not provide any clear

5  explanation for why the claimed trade dress—which includes their "vibrant hair

6  color," "hair styling" and "bold, over the top clothing"—is comparable to the

7  packaging of a commercial product. *See* Mem. 14 (asserting without explanation

8  that the purported trade dress "is akin to packaging").

9         Finally, even if the instruction were erroneous (and it was not), any error was

10 harmless.  As explained above, this was not a close case—the jury delivered a

11 speedy and unanimous verdict in MGA's favor on all counts and apparently

12 believed OMG Girlz' case to be so weak as to warrant the punishment of an

13 attorney's fees award.

14        **D.     The Court's Evidentiary Rulings Were Proper But—At A**

15               **Minimum—Were Not Sufficiently Prejudicial To Warrant A**

16               **Third Trial**

17        OMG Girlz are incorrect (and rely on outdated case law in arguing) that

18 MGA has the burden in proving that an evidentiary ruling was not prejudicial.

19 Mem. 15 (citing *Obrey v. Johnson*, 400 F.3d 691, 700 (9th Cir. 2005)).  The

20 Supreme Court effectively rejected the *Obrey* approach in *Shinseki v. Sanders*,

21 holding that "the party seeking reversal normally must explain why the erroneous

22 ruling caused harm."  556 U.S. 396, 410 (2009); *accord Al Haramain Islamic*

23 *Found., Inc. v. U.S. Dep't. of Treasury*, 686 F.3d 965, 989-990 (9th Cir. 2012)

24 (citing *Shinseki*).  Regardless, the Court did not err and—even if it did—there was

25 no prejudice even under OMG Girlz' standard.

26        **1.     Social Media Comments**

27        OMG Girlz argue that the Court should have permitted them to introduce

28 emails and social media comments that they claim show consumers were confused

about whether MGA's dolls were connected to the band's members.  Mem. 15-16.  The Court rightfully rejected this assertion after briefing and argument.  *See* TT May 17, 2023 P.M. at 45-51; *see also* Dkt. 719 (MGA's briefing on the issue).  As the Court explained, Ninth Circuit case law permits the jury to consider unsolicited and contemporaneous statements that evidence confusion.  TT May 17, 2023 P.M. at 45 (citing *Lahoti*); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1111 (9th Cir. 2016) (articulating this basic test and excluding statements).  The emails and comments at issue here satisfied neither criterion.  As to the former, "[t]he e-mails [and comments] came in response to a post by Mrs. Harris.  They weren't spontaneous" and were particularly "suspect" because there was a "relationship between the sender of the e-mail [and comments] and" OMG Girlz.  TT May 17, 2023 P.M. at 45:15-16.  And as to the latter, the statements were not "contemporaneous with the purchase." *Id.* 45:24-46:1.  While OMG Girlz attempt to distinguish *JL Beverage* based on minute factual distinctions (*e.g.*, that the messages in *JL* came from friends rather than fans), such arguments were already considered and rejected by this Court at trial.  *See id.* 46-47.

In any event, there is no reason to think that the Court's decision to exclude a subset of OMG Girlz' evidence of confusion likely altered the jury's verdict.  Again, this was not a close case, and OMG Girlz concede that they had the opportunity to present four live witnesses to testify to the alleged confusion.  Mem. 16.  They do not explain why additional, cumulative evidence would have changed the result.

## 2.    Ms. Stephens' Knowledge Of Allegations Regarding The Harrises

OMG Girlz wrongly contend that Ms. Stephens' testimony about the allegations against the Harrises was irrelevant.  Mem. 17.  At the re-trial, the Court was extremely cautious in allowing any testimony regarding allegations against the Harrises.  Only once MGA established that Ms. Stephens (1) knew of specific

allegations, and (2) such knowledge was highly relevant to MGA's defense did the Court allow limited testimony on this matter.  TT May 23, 2023 P.M., at 62:19-64:10; *see also* Dkt. 681 (permitting Ms. Stephens to testify for a limited time on a limited number of issues).  Specifically, Ms. Stephens' testimony refuted OMG Girlz' assertions of copying, as Ms. Stephens explained that she would not have designed dolls based on the Harrises or their family due to her knowledge of those allegations.  *E.g.*, Dkt. 681 at 2 (quoting Ms. Stephens' declaration); TT May 23, 2023 P.M. at 84-87 (testimony).  OMG Girlz' only substantive response—that Ms. Stephens "conceded" that she did not make "*changes*" to the doll design based on the allegations, Mem. 17—is thus a red herring.  Ms. Stephens' consistent position has been that she never would have designed the dolls based on the Harrises in the first place.

In any event, this was not a close case and OMG Girlz provide no explanation for why three minutes of testimony that—by this Court's order—was not "received for the truth but simply for the fact that Ms. Stephens heard this and the effect on her," TT May 23, 2023 P.M. at 85:12-15, likely affected the jury's verdict.

### 3.     Testimony Regarding Racial Composition of MGA's Customers and Logo Change

OMG Girlz wrongly assert that this Court should not have permitted Mr. Larian to testify that "about" 18% of the customers for MGA's L.O.L. Surprise! O.M.G. dolls were black because the underlying information was not disclosed in discovery.  Mem. 17-18.  But it was OMG Girlz who put the composition of MGA's customer base at issue, asking Mr. Larian to confirm that "the target audience for the O.M.G. dolls [are] particularly young girls and moms in the black community," (TT May 25, 2023 AM at 51:8-10), and OMG Girlz were free to cross-examine Mr. Larian on that specific number.  Moreover, OMG Girlz did not object to Mr. Larian's testimony, and cannot object now for the first time.  *Id*. at

99:7-14.

As to Dr. Isaacson's testimony, OMG Girlz admit that the Court "issued a curative instruction," and provide no explanation for how that instruction did not cure any alleged prejudice.  Mem. 18.

OMG Girlz also accuse MGA of engaging in gamesmanship by asking Mr. Larian to testify regarding why MGA changed its logo to add the phrase "Outrageous Millennial Girls" after previously claiming privilege on the issue. Mem. 18, at 18:20-27.  But again, it was OMG Girlz who put that the logo change at issue by wrongly suggested that the name was changed in light of OMG Girlz. TT May 25, 2023 A.M. at 67:24-69:24; 104:12-14.  Mr. Larian simply corrected the record.[4]

Finally, this was not a close case and OMG Girlz do not even try to offer explain how these minor disputes on tertiary questions could have changed the jury's verdict.

### 4.    The Court Properly Excluded Testimony Regarding Cultural Misappropriation

OMG Girlz caused a mistrial when they played testimony from a consumer witness who "explicitly charged misappropriation of the values and looks of the African American community," which violated the Court's *in limine* ruling.  TT Jan. 25, 2023 A.M., at 21:23-22:3.  The Court was particularly troubled by that violation because it "was with respect to what [the Court] find[s] as the most inflammatory issue in the case."  *Id*. at 27:7-9.  Now, OMG Girlz claim it was so prejudicial for the Court to prevent the consumer witnesses from repeating that same inflammatory testimony that a third trial is necessary.  Mem. 19.  That

---

[4] Although OMG Girlz fault MGA for (properly) clawing back a privileged email discussing the name change, Mem. 18, they cite no authority suggesting a witness cannot testify regarding their independent knowledge of information in an excluded document.

1  argument cannot be squared with this Court's prior decision to declare a mistrial.

2  **V.    CONCLUSION**

3      OMG Girlz' motion should be denied in its entirety.

4  Dated: August 1, 2023               UMBERG ZIPSER LLP

5

6                                      _/s/ Mark A. Finkelstein_

7                                      Mark A. Finkelstein
                                       Attorneys for Plaintiff and Counter-
                                       Defendant MGA Entertainment, Inc., and
8                                      Counter-Defendant Isaac Larian

9

10

11

12

13              **CERTIFICATE OF COMPLIANCE**

14      The undersigned, counsel of record for MGA, certifies that this brief contains

15  6,999 words, which complies with the word limit of L.R. 11-6.1.

16  Dated: August 1, 2023               UMBERG ZIPSER LLP

17

18                                      _/s/ Mark A. Finkelstein_

19                                      Mark A. Finkelstein
                                       Attorneys for Plaintiff and Counter-
                                       Defendant MGA Entertainment, Inc., and
20                                      Counter-Defendant Isaac Larian

21

22

23

24

25

26

27

28