UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion to Certify Appeal and Stay [868]**

Plaintiff and Counter-Defendant MGA Entertainment, Inc. ("MGA Entertainment") and Counter-Defendant Isaac Larian ("Larian") (collectively, "MGA") move to certify the Court's September 15, 2023 new trial order ("Order") for interlocutory appeal and stay these proceedings pending Ninth Circuit review. (Mot., Dkt. No. 868-1.) Defendants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC, and Counter-Claimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC (collectively, the "Harris Parties") oppose. (Opp'n, Dkt. No. 874.) MGA replied. (Reply, Dkt. No. 876.)

For the following reasons, the Court **DENIES** the motion.

**I. BACKGROUND**

The facts of this case are well known to the Court and the parties. The Court recites only the facts necessary to resolve the present motions.

MGA filed suit against T.I., Tameka, and OMG Girlz LLC for declaratory relief. (Compl., Dkt. No. 1.) MGA produces L.O.L. Surprise! O.M.G. dolls and sought the Court's declaration as to the ownership of the dolls' trade dress rights. The Harris Parties counterclaimed. (Answer, Dkt. No. 13.) Following discovery and motion practice, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

case proceeded to trial.[1]

At trial, the Harris Parties pursued a claim for trade dress infringement under the Lanham Act and common law misappropriation of likeness. (Final Pretrial Conference Order, Dkt. No. 492, at 14.) MGA proceeded on its claim for declaratory relief. (Id. at 2.) The jury returned a verdict in favor of MGA, finding the Harries Parties did not prevail on either of their claims with respect to any of the thirty-one L.O.L. Surprise! O.M.G. dolls at issue. (Special Verdict, Dkt. No. 771.) The Court entered final judgment in favor of MGA. (Dkt. No. 777.) On September 15, 2023, the Court issued its Order granting the Harris Parties' motion for a new trial because it had given jury instructions pertaining to the First Amendment protection analysis under Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989) that were erroneous in light of the Supreme Court's holding in Jack Daniel's Properties, Inc. v. VIP Products, LLC, 599 U.S. 140 (2023). (Order, Dkt. No. 860.)

## II. Legal Standard

Under 28 U.S.C. § 1292(b), the party seeking certification must establish that: (1) there is a controlling question of law, (2) as to which there are substantial grounds for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of litigation. In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982). Only if all three factors are met may the Court certify an order for appeal. Id.; see also Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010) ("Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met."). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." James v. Price Stern Sloan, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). Such a departure is "to be applied sparingly and only in exceptional cases." United States v. Woodbury, 263 F.2d 784, 788 n.11 (9th Cir. 1959). Thus, the party seeking certification "has the burden of showing that exceptional circumstances justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'" Fukuda v. Cnty. of L.A., 630 F. Supp. 228, 229 (C.D. Cal. 1986) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)).

---

[1] The first trial resulted in a mistrial. (Dkt. No. 569.) The case proceeded to a second trial on May 10, 2023. (Dkt. No. 700.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

### III. DISCUSSION

MGA makes two arguments in support of interlocutory appeal, both of which relate to the Supreme Court's holding in Jack Daniel's. These arguments are familiar to the Court, and we address them in turn.

#### A. Source Identification

MGA argues that there is a controlling issue of law over whether, "under the Supreme Court's recent Jack Daniel's decision, a product's design is ineligible for First Amendment protection under Rogers solely because it is packaged in a box that is alleged to use another's mark or trade dress in a source-identifying manner." (Mot. at 10.) MGA asserts that the dolls are not trade dress (and thus not source-identifying) because they "are not themselves branded." (Id.) MGA goes on to argue that the Court's Order turned "on the view that, under Jack Daniel's, a product design that is not itself source identifying loses First Amendment protection as a matter of law when packaged in a source-identifying box." (Id. at 11.) MGA argues that this question materially affects the outcome of the litigation, perhaps ending the litigation altogether, because if the Ninth Circuit were to determine on appeal that "the dolls themselves do not lose First Amendment protection on account of their boxes" then the Order was incorrect because the delivery of the Rogers instruction at trial was not an error. (Id.) MGA contends that there are substantial grounds for difference of opinion because "courts have not weighed in" on the scope of Jack Daniel's. (Id. at 15.)

The Harris Parties argue that the question MGA asks is based on an "overly restricted reading" of the Court's Order, and that the decision did not rely entirely on the notion that "the dolls and boxes did come together as one." (Opp'n at 4.) The Harris Parties contend that the question "assumes a false premise" that the dolls are not source identifying, but MGA's filings admit that both the boxes and dolls are source-identifying. (Id. at 4–5.) Moreover, the Harris Parties assert that the question is "not a pure legal issue" because the Order "involved mixed questions of law and fact." (Id. at 5.)

MGA raises a question as to the scope of Jack Daniel's as it pertains to a distinction between a product and the packaging in which it is sold. Contrary to MGA's assertions that "courts have not yet weighed in," this very Court recently confronted the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

scope of source identification under Jack Daniel's in Davis v. Amazon.com, Inc., No. 2:21-cv-02090-JVS(JDEx), 2023 U.S. Dist. LEXIS 197341 (C.D. Cal. Nov. 2, 2023), and it does not present an obstacle here.

The Lanham Act defines trademark as "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Trademarks thus serve as "source identifiers," in that they "'indicate the source' of goods, and so to 'distinguish' them from ones 'manufactured or sold by others.'" Jack Daniel's, 599 U.S. at 156–57 (quoting 15 U.S.C. § 1127).

To show trademark infringement under the Lanham Act, the plaintiff must show that (1) the plaintiff owns a valid trademark; (2) the defendant is using the plaintiff's trademark without the plaintiff's authorization; and (3) the defendant's use of the trademark likely confuses consumers. Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (citing Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)). The "likelihood-of-confusion" test consists of eight factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003). This list is neither exhaustive nor exclusive. Id. at 348 n.11. It should be applied flexibly. JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016).

When infringement claims involve works of artistic expression, courts endeavor to balance the First Amendment concern for protecting free expression with the "danger of consumer deception" that arises when such works are sold in the marketplace. Rogers, 875 F.2d at 997. Thus, when an infringement claim involves an "expressive work," courts have first applied the threshold test under Rogers before reaching the likelihood-of-confusion analysis. Dr. Seuss Enters., L.P. v. ComicMix LLC, 983 F.3d 443, 461–62 (9th Cir. 2020). Under Rogers, a court must dismiss an infringement claim involving an expressive work unless one of two of the following may be shown: that the mark's use

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

"has no artistic relevance to the underlying work" or that it "explicitly misleads as to the source or the content of the work." Rogers, 875 F.2d at 999.

Jack Daniel's changed the framework for evaluating trademark infringement claims. When a trademark is used in a way that designates the source for an alleged infringer's goods, the Supreme Court held that the threshold Rogers test does not apply. Jack Daniel's, 599 U.S. at 153. In such uses, the "the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." Id. at 159. The Supreme Court reasoned that "few cases would even get to the likelihood-of-confusion inquiry if all expressive content triggered the Rogers filter" because "names, phrases, symbols, designs, and their varied combinations often 'contain some 'expressive' message' unrelated to source." Id. at 159–60 (quoting 6 J. Thomas McCarthy, Trademarks and Unfair Competition § 31:144.50 (5th ed. 2023)). The question of whether to bypass Rogers then becomes whether a mark serves as a "source identifier," or in other words, whether a "mark is used as a mark" regardless of any expressive function it may also serve. Id. at 159.

To grasp the impact of Jack Daniel's on this case, we must review the particular circumstances that led to the Supreme Court's holding. In Jack Daniel's, a chewable dog toy company designed and marketed a toy that resembles a bottle of Jack Daniel's whiskey. Id. at 144. The resemblance was effectuated by joking references to distinctive traits of the Jack Daniel's bottle, many of which are trademarked by Jack Daniel's. Id. The similarities include the words "Bad Spaniels" instead of "Jack Daniel's," the phrases "The Old No. 2 On Your Tennessee Carpet" instead of "Old No. 7 Brand Tennessee Sour Mash Whiskey," the square shape of the bottle, and the black-and-white ornamentation on the label. Id. The complaint alleged that the toy company "both 'own[s] and use[s]' the 'Bad Spaniels' trademark and trade dress for its durable rubber squeaky novelty dog toy,'" indicating to the Court that "[t]he company thus represented in this very suit that the mark and dress, although not registered, are used to 'identify and distinguish [the company's] goods' and to 'indicate [their] source.'" Id. at 160. The Court held that the marks were used "as a designation of source for the infringer's own goods . . . so the infringement claim here rises or falls on likelihood of confusion" rather than necessitating the intermediate step of the Rogers test. Id. at 153. The Court noted that the fact that the toy company uses the marks as "parody" of Jack Daniel's, while not triggering Rogers, is still an expressive aspect of the toy that may factor into the likelihood-of-confusion test.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

Id. ("[T]hat kind of message matters in assessing confusion because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking.").

Here, MGA argues that its products themselves are not marks or trade dress and thus are not source identifiers. In Davis, this Court noted that the Supreme Court in Jack Daniel's evaluated the source identifier in part by looking to how the trademark owner *uses* a mark in relation to a source. 2023 U.S. Dist. LEXIS 197341, at *14 n.1. (citing Jack Daniel's, 599 U.S. at 160 ("[The toy company]'s conduct is its own admission that it is using the Bad Spaniels (née Jack Daniel's) trademarks as trademarks, to identify product source.")). Notwithstanding the Harris Parties' assertion that MGA had in fact admitted that its products are marks just like the toy company had admitted that the dog toy is a mark in Jack Daniel's—MGA's claims that its products are not trade dress are not dispositive in the source identification analysis.

Black's Law Dictionary defines "trade dress" as "[t]he overall appearance and image in the marketplace of a product or a commercial enterprise." Trade Dress, Black's Law Dictionary (9th ed. 2009). While it goes on to note that "[f]or a product, trade dress typically comprises packaging and labeling," id., the Supreme Court has supplied a more expansive definition. "The 'trade dress' of a product is essentially its total image and overall appearance. It 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n.1 (1992). Whether MGA's products are fair game as trade dress is not as clear-cut as MGA makes it out to be, and is instead subject to a deeper analysis.

MGA's question about the scope of Jack Daniel's is not a controlling question of law because, as the Supreme Court made clear in its Jack Daniel's analysis, source identification is a fact-specific inquiry. In Jack Daniel's, the Supreme Court explicitly considered a variety of facts beyond just the labels on the product and the toy company's statements about its marks when determining source identification. The Court engaged in a visual analysis of the appearance of the products as they are presented in the marketplace—complete with images of the products themselves—and directed readers to "[r]ecall what the bottle looks like." Jack Daniel's, 599 U.S. at 148. When comparing the dog toy to a bottle of Jack Daniel's whiskey, the Court evaluated their appearances: "Bad Spaniels is about the same size and shape as an ordinary bottle of Jack Daniel's. The faux bottle, like the original, has a black label with stylized white text and a white

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS(AGRx)                              Date   December 8, 2023

Title     MGA Entertainment Inc. v. Clifford T.I. Harris et al.

filigreed border. . . . Above the arch is an image of a spaniel." Id. at 149. The Court *also* considers the toy's packaging—a cardboard hangtag—as part of its analysis. This is despite the fact that Jack Daniel's whiskey is not itself marketed with a hangtag. Id. at 150. The Supreme Court walked through precisely what consumers see when shopping for either item—painstakingly documenting their similarities and differences. The Supreme Court noted later in the opinion that on source identification, the toy company "conceded that point" in its filings, but the Court still looked to additional factors in the same discussion, such as "the way the product is marketed" and the toy company's "practice as to other products in the Silly Squeakers line." Jack Daniel's, 599 U.S. at 160. The inquiry, thus, does not rest solely on what a manufacturer claims about a product's source identification.

The fact that the Supreme Court engaged in this detailed, fact-specific analysis of source identification entirely undermines MGA's assertion that a controlling question of law exists in whether packaging and products should be distinguished when determining source identification generally (and ultimately the applicability of Rogers). The actual question presented, more pointedly, is whether packaging and product should be distinguished *in this case* and *on these particular facts* for the purpose of source identification. The Court is unconvinced that the Ninth Circuit could answer without reliance on the record such that it warrants exercising the Court's discretion to certify an interlocutory appeal.

Certification for interlocutory appeal under 28 U.S.C. § 1292(b) requires that all three elements be met. Given that the controlling question of law element fails, the Court need not reach the other two.

Accordingly, the motion with respect to the source identification issue is denied.

B.   *Invited Error*

MGA makes a second argument in support of its motion, positing that there is a controlling question of law in the following: "whether a granted petition for certiorari involving a direct challenge to the subject of a jury instruction suffices to put a party on notice that there may be a change in the law, such that it is invited error to demand a general verdict." (Mot. at 12.) MGA contends that the Supreme Court's Jack Daniel's "ultimate decision was, while not inevitable, at least reasonably foreseeable," because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

Court had granted certiorari. (Id. at 3–4.) MGA argues, "[g]iven the clear possibility that the Supreme Court would overrule a decision supporting one of the jury instructions, a reasonable judge could hold that it was invited error for OMG Girlz to object to the special verdict form MGA proposed—only to subsequently argue that the use of a general verdict form made it impossible to establish any instructional error was harmless." (Id. at 4.) MGA asserts that there are "reasonable grounds for differing opinions" on the question because the Supreme Court granted certiorari on an issue subject to a circuit split and two criminal cases hold that a change of law is reasonably foreseeable in such circumstances. (Id. at 18.)

The Harris Parties respond that the question would not control because it was MGA that invited the error by "push[ing] for the Rogers instruction over vigorous objection from [the Harris Parties]." (Opp'n at 6.) Thus, the Harris Parties argue that "if it was obvious that the Supreme Court would change the law in Jack Daniel's, then MGA should not have requested and fought for an instruction that '[t]here is no doubt' should not have been given." (Id. (citing Dkt. No. 863 at 13).) The Harris Parties also contend that MGA's requested special interrogatory, "Do you find that MGA Entertainment has proven that its L.O.L. Surprise! O.M.G. dolls are protected by the First Amendment?" did not ask for the underlying Rogers elements and "would have been meaningless" in light of the Court's instruction that the dolls were protected. (Id. at 6.) The Harris Parties contend that there is no reasonable basis for disagreement that a change in law was foreseeable because MGA's cited cases are not on point, as they deal with criminal law rather than instructional errors. (Id. at 10.) Additionally, the Harris Parties point out that the Court's stated practice of using a general verdict also supports their argument that there is no reasonable basis for disagreement because "[n]o other judge would dispute this Court's representation of its own procedures." (Id. at 10–11.)

In the Order, the Court addressed MGA's argument of invited error head-on:

> MGA argues the Harris Parties invited error by insisting on a general verdict form. (Opp'n 13–14.) If a party "both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable." United States v. Perez, 116 F.3d 840, 845 (9th Cir. 1997). In theory, had Jack Daniel's been decided prior to the finalizing of the jury instructions, an argument could be made the Harris Parties invited error by advocating for a general verdict form. But neither the Court nor the parties had any idea

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

> there would be a subsequent change in law. The Harris Parties cannot be faulted for their inability to predict the future. In any event, the Court's regular practice in jury trials is to use a general verdict form as to each claim. Moreover, there was no error in the Court's exercise of it discretion to use a general verdict per claim. Thus, the invited error doctrine is inapplicable.

(Order at 7.) MGA repeats the argument here, but with an ever-so-slight twist: whether *the granting of certiorari* in Jack Daniel's makes the Harris Parties' advocation for a general verdict form invited error.

MGA cites cases in the criminal context in support of its argument that a circuit split and the granting of certiorari make a change in law reasonably foreseeable. (Mot. at 18 (citing United States v. Rodgers, 466 U.S. 475 (1984); United States v. Qualls; 172 F.3d 1136 (9th Cir. 1999)).) In Rodgers, a defendant-respondent challenged criminal charges for making false statements to the Federal Bureau of Investigation ("FBI") and the United States Secret Service in violation of 18 U.S.C. § 1001 on the grounds that the statute did not encompass those agencies. Rodgers, 466 U.S. 476. The respondent argued that the rule of lenity and a contrary decision in Friedman v. United States, 374 F.2d 363 (8th Cir. 1967) counseled that the Supreme Court's decision—that the statute encompasses the agencies—should not apply retroactively to him. Id. at 484. The Supreme Court responded that "any argument by respondent against retroactive application to him of our present decision, even if he could establish reliance upon the earlier Friedman decision, would be unavailing since the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable." Id.

A plain reading of the Rodgers case does not evince a holding on foreseeability that applies broadly: "the existence of conflicting cases from other Courts of Appeals made review of *that* issue by *this Court* and decision against the position of *the respondent* reasonably foreseeable." Id. (emphasis added). In fact, a survey of the decisions citing Rodgers reveals that the case's foreseeability proposition is cited predominantly, if not exclusively, in criminal matters. See Qualls, 172 F.3d at 1136 (citing Rodgers for the foreseeability of a change in law where "where circuits were split on the proper construction of the federal felon-in-possession statute"); Moskal v. United States, 498 U.S. 103, 114 n.6 (1990) (citing Rodgers in a case that similarly deals with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

the rule of lenity in criminal cases); United States v. Muskett, 970 F.3d 1233, 1245 (10th Cir. 2020) ("[T]he Supreme Court instructs that the existence of a circuit split on the scope of a criminal statute is sufficient to supply defendants with fair notice that the broader construction might ultimately be adopted, even when the defendant's circuit has adopted the more narrow interpretation."); United States v. Russotti, 780 F. Supp. 128, 135 (S.D.N.Y. 1991) ("When one or more circuits have held that a criminal statute covers certain conduct, an individual cannot claim lack of fair warning that the Supreme Court would ultimately adopt that interpretation, even if one or more other circuit courts had construed the statute more narrowly."); cf. Moore v. Floro, 614 F. Supp. 328, 333 n.6 (N.D. Ill. 1985) (distinguishing the foreseeability proposition in Rodgers as "a single sentence at the end of a recent criminal decision" but a "prediction as to which way the Supreme Court would turn was unclear" in this civil rights case).

  Courts have applied Rodgers in contexts far different from those here, such that the Court is unconvinced that the granting of certiorari makes any difference here as to the foreseeability that the Supreme Court would rule a certain way in Jack Daniel's. The seeming dearth of on-point civil cases applying Rodgers and the weight of criminal cases applying it guide the Court's discretion in finding that there is not a substantial ground for difference of opinion on this issue. The Court's holding with respect to invited error in the Order remains sound: "Neither the Court nor the parties had any idea there would be a subsequent change in law. The Harris Parties cannot be faulted for their inability to predict the future." (Order at 7.) Even if it were foreseeable, invited error is not subject to substantial grounds for difference of opinion because, "[i]n any event, the Court's regular practice in jury trials is to use a general verdict form as to each claim." (Id.)

  As with MGA's first question on source identification, the second question pertaining to invited error fails on one of the required elements. The Court need not reach the rest.

  Accordingly, the motion with respect to the invited error issue is denied.

///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS(AGRx) | Date | December 8, 2023 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al. | | |

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.  The Pretrial Conference is set for August 12, 2024 at 11:00 a.m.  Trial is scheduled to begin on September 3, 2024 at 8:30 a.m.

**IT IS SO ORDERED.**