1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 MGA ENTERTAINMENT, INC., a California corporation, | Case No.: 2:20-cv-11548-JVS-AGR |
| 12 | Assigned to: The Hon. James V. Selna |
| 13                          Plaintiff, | **FINAL PRETRIAL** |
| 14 v. | **CONFERENCE ORDER** |
| 15 CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" | |
| 16 HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability | Final Pretrial Conference: |
| 17 company; and DOES 1 - 10 inclusive, | Date:   August 19, 2024 |
|    | Time:   11:00 a.m. |
| 18                          Defendants. | Place:  Courtroom 10C |
|    | Judge: The Hon. James V. Selna |

| | |
|---|---|
| 19 GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC, | |
| 20                          Counter-Claimants, | |
| 21 v. | Complaint Filed: December 20, 2020 |
| 22 MGA ENTERTAINMENT, INC., | Trial Date: September 3, 2024 |
| 23 ISAAC LARIAN and DOES 1 – 10, inclusive, | |
| 24                          Counter-Defendants. | |

25
26
27
28

Following pretrial proceedings, under Fed. R. Civ. P. 16 and L.R. 16-7, IT IS
ORDERED:

    1.    The parties are:

        (a)    Plaintiff and Counter-Defendants:

                i.    Plaintiff and Counter-Defendant MGA Entertainment,
Inc., and Counter-Defendant Isaac Larian (together, "MGA").

        (b)    Defendants and Counter-Claimants:

                i.    Defendant Clifford "T.I." Harris, Defendant Tameka
"Tiny" Harris, Defendant and Counter-Claimant OMG
Girlz LLC, Counter-Claimant Grand Hustle LLC, and
Counter-Claimant Pretty Hustle, LLC, (collectively, the
"OMG Girlz" or "Counter-Claimants").

Each of these parties has been served and has appeared.
The pleadings raising the issues the Parties *agree* are to be tried are:

        (a)    Counter-Claimants' Third Amended Counterclaims (Dkt. No.
63; "TACC"); and

        (b)    MGA's Answer to the TACC (Dkt. No. 65).

        (a)    MGA's First Amended Complaint for Declaratory Judgment
(28 U.S.C. § 2201(a)) (Dkt. No. 16; "FAC");

        (b)    The OMG Girlz Answer and Affirmative Defenses to MGA's
First Amended Complaint for Declaratory Relief (Dkt. No. 63)

    2.    Federal jurisdiction and venue are invoked upon the grounds:  This
Court has original jurisdiction under 28 U.S.C. §§ 2201(a) and 2202, 15 U.S.C.
§ 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C.
§ 1338 (trademark, trade dress, and unfair competition); and supplemental
jurisdiction over the OMG Girlz' common law misappropriation of name and/or
likeness claim under 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C.

FINAL PRETRIAL CONFERENCE ORDER

§ 1391(b)(2). The facts requisite to federal jurisdiction are admitted.

3.     The trial will consist of ten days of evidence. Each side will have 26.5 hours for all examinations and cross examination. That amount does not include time spent for opening or closing statements or for voir dire.

4.     The trial is to be a jury trial for all claims.  Verdicts on equitable issues will be regarded as advisory.

At least seven (7) days prior to the trial date the parties shall file and serve any special questions requested to be asked on voir dire.

5.     The parties attempted to but were unable to agree on any admitted facts that would require no proof.

6.     The parties attempted to but were unable to agree on any stipulated facts.

7.     This section of the Final Pretrial Conference Order provides, in advance of trial, the claims and defenses to be presented at trial.

**Plaintiff and Counter-Defendants [MGA]:**

a)     MGA plans to pursue the following claims and affirmative defenses to the Counter-Claimants' counterclaims:[1]

Claim 1:  Declaratory judgment against Defendants Clifford Harris, Tameka Harris, and OMG Girlz, LLC under 28 U.S.C. §§ 2201(a) and 2202.

Affirmative Defense 1: (Estoppel) Any of MGA's conduct alleged by the Counter-Claimants to be unlawful was taken as a result of conduct or omissions by the Counter-Claimants, and the Counter-Claimants are thus estopped from asserting any cause of action against MGA.  The TACC is barred by equitable estoppel and estoppel by conduct.

---

[1] Some of the defenses asserted in MGA's answer to the TACC are not affirmative defenses per Federal Rule of Civil Procedure 8(c). For example, although MGA addresses standing and lack of deliberate or willful conduct below, these are not technically affirmative defenses because MGA does not bear the burden of proof.

<u>Affirmative Defense 2:</u> (Unclean Hands) The TACC and each of the causes of action asserted therein are barred by the Counter-Claimants' own unclean hands. Among other things, the Counter-Claimants have made false and misleading claims regarding intentional copying by MGA.

<u>Affirmative Defense 3:</u> (Laches) The Counter-Claimants have failed to pursue their claims timely.

<u>Affirmative Defense 4:</u> (Standing) The Counter-Claimants lack standing to bring their counterclaims. The Counter-Claimants failed to show that they have the intellectual property rights of the OMG Girlz to sustain their Lanham Act claim.

<u>Affirmative Defense 5:</u> (Abandonment) The Counter-Claimants cannot exclude MGA or others from using their claimed trade dress because their purported trade dress was abandoned when the OMG Girlz officially disbanded on March 12, 2015.

<u>Affirmative Defense 6:</u> (Failure to Mitigate Damages) The Counter-Claimants' counterclaims are barred, in whole or in part, due to their failure to mitigate their damages, if any.

<u>Affirmative Defense 7:</u> (First Amendment Fair Use [with respect to Counter-Claimants' common law misappropriation of name and/or likeness claim only]) Any misappropriation of the OMG Girlz' name, image, or likeness is protected under the First Amendment.

<u>Affirmative Defense 8:</u> (Lack of Deliberate or Willful Conduct) The Counter-Claimants cannot show that MGA's alleged conduct was deliberate or willful.

b.    MGA asserts that the elements required to establish MGA's claims and affirmative defenses are:

<u>Claim 1:</u> (Declaratory Judgment) "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal

1   relations in issue, and (2) when it will terminate and afford relief from the

2   uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v.*

3   *Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (internal quotations omitted).

4       "[T]o prove trade dress infringement under the Lanham Act, 15 U.S.C.

5   § 1125(a), [the OMG Girlz] must demonstrate that '(1) the trade dress is

6   nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is

7   a substantial likelihood of confusion between the plaintiff's and defendant's

8   products." Dkt. No. 326 at 9 (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581

9   F.3d 1138, 1145 (9th Cir. 2009) and citing 15 U.S.C. § 125(a); *see also* 1

10  McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed. 2022). The OMG

11  Girlz also must show ownership of the asserted trade dress. *Lanard Toys Ltd. v.*

12  *Novelty Inc.*, 511 F. Supp. 2d 1020, 1040 (C.D. Cal. 2007).

13      To prevail on a common law misappropriation of name, image, or likeness

14  claim, the OMG Girlz must show (1) use of the OMG Girlz' name, image, or

15  likeness; (2) for MGA's advantage; (3) lack of consent; and (4) resulting injury.

16  *See Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413–14 (9th Cir. 1996).

17      <u>Affirmative Defense 1:</u> (Estoppel) To prevail on an equitable estoppel

18  defense, MGA must show that the Counter-Claimants intentionally, or through

19  culpable negligence, led MGA to rely on certain facts and that MGA was harmed

20  as a result.  *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 958 (N.D. Cal.

21  2015).

22      <u>Affirmative Defense 2:</u> (Unclean Hands) The unclean hands defense is an

23  equitable defense available to MGA where the Counter-Claimants engaged in

24  wrongful conduct that "in some measure affect[s] the equitable relations between

25  the parties in respect to [the claims] brought before the court for adjudication."

26  *Dream Games of Arizona, Inc. v. P.C. Onsite*, 561 F.3d 983, 990 (9th Cir. 2009)

27  (quoting *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863

28

1 (5th Cir. 1979)).  Additionally, MGA must demonstrate that it was injured by the
2 Counter-Claimants' alleged wrongful conduct.  *See id.*

3     Affirmative Defense 3: (Laches) To prevail on a laches defense, MGA must
4 show: (1) the Counter-Claimants unreasonably delayed in filing suit based on when
5 the claimant knew or should have known of the allegedly infringing conduct; and
6 (2) as a result of the delay, the defendant suffered prejudice. *Danjaq LLC v. Sony*
7 *Corp.*, 263 F.3d 942, 952–56 (9th Cir. 2001). "Prejudice" means that the claimant
8 "took actions or suffered consequences that it would not have, had the plaintiff
9 brought suit promptly." *Id.* at 955.

10     Affirmative Defense 4: (Standing) The Counter-Claimants bear the burden
11 of establishing that: (1) they have suffered an "injury in fact," meaning that the
12 injury is of a legally protected interest which is (a) concrete and particularized and
13 (b) actual or imminent; (2) there is a causal connection between the injury and the
14 conduct brought before the Court; and (3) it is likely, rather than speculative, that a
15 favorable decision by the Court will redress the injury. *Lujan v. Defs. of Wildlife*,
16 504 U.S. 555, 560–61 (1992).  To demonstrate they have standing to assert their
17 trade dress infringement claim or a common law misappropriation of name, image,
18 or likeness, the Counter-Claimants must establish that they own the intellectual
19 property rights being asserted.

20     Affirmative Defense 5: (Abandonment) Trade dress is deemed to be
21 "abandoned" when (1) its use has been discontinued with intent not to resume such
22 use, or (2) any course of conduct of the owner.  15 U.S.C. § 1127.

23     Affirmative Defense 6: (Failure to Mitigate Damages) The Counter-
24 Claimants have a duty to use reasonable efforts to avoid or reduce damages.  MGA
25 must show by a preponderance of the evidence: (1) that the Counter-Claimants
26 failed to use reasonable efforts to mitigate damages; and (2) the amount by which
27 damages would have been mitigated. *Harper as Tr. of Ludlow B. Creary 2000*
28 *Irrevocable Tr. v. Nationwide Life Ins. Co.*, No. 215CV09939ABASX, 2017 WL

1  11570801, at *10 (C.D. Cal. June 1, 2017) (citing Model Civ. Jury Instr. 9th Cir.

2  5.3 (2007)).

3       Affirmative Defense 7: (First Amendment Fair Use [with respect to Counter-

4  Claimants' common law misappropriation of name and/or likeness claim only])

5  Under the First Amendment, "a cause of action for appropriation of another's name

6  and likeness may not be maintained against expressive works, whether factual or

7  fictional." *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002); *see*

8  *also Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 50 (2006). For such cases,

9  the California Supreme Court formulated "a balancing test between the First

10  Amendment and the right of publicity based on whether the work in question adds

11  significant creative elements so as to be transformed into something more than a

12  mere celebrity likeness or imitation"; "the inquiry is whether the celebrity likeness

13  is one of the 'raw materials' from which an original work is synthesized, or

14  whether the depiction or imitation of the celebrity is the very sum and substance of

15  the work in question." *Comedy III Prods., Inc. v. Gary Saderup*, Inc., 25 Cal. 4th

16  387, 391, 406 (2001).

17       Affirmative Defense 8: (Lack of Deliberate or Willful Conduct) MGA

18  recognizes that lack of deliberate or willful conduct is "more akin to a negative

19  defense than an affirmative one." *See Core Nutritionals, LLC v. Performance*

20  *Nutrition Formulators, LLC*, No. CV1600705TJHJCX, 2016 WL 9175662, at *1

21  (C.D. Cal. May 16, 2016). Nevertheless, intent is a consideration under the

22  *Sleekcraft* eight-factor test to determine likelihood of consumer confusion and

23  damages for a Lanham Act claim. (*Id.*) Ninth Circuit law pre-dating *Romag*

24  *Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020) also remains instructive

25  in emphasizing deliberate or willful conduct in assessing whether there should be

26  any award of disgorgement of profits. *See Spin Master, Ltd. v. Zobmondo Entm't*,

27  944 F. Supp. 2d 830, 849 (C.D. Cal. 2012) (granting summary judgment against

28  disgorgement damages even though there was evidence that the defendant

"willfully attempted to 'seize'" the mark at issue, as there was no evidence the
mark was adopted to "trade on Plaintiffs' established name.").

c.    In brief, the key evidence MGA relies on for each claim and
affirmative defense to counterclaim is:

**MGA's Claim 1: (Declaratory Judgment):**

**A.    Key Evidence Demonstrating the OMG Girlz' Allegations of
Intentional Copying Are False**

- The Counter-Claimants alleged that "in 2010, MGA publicly announced
  that it would launch a line of dolls modelled on the OMG Girlz." (Dkt.
  No. 63 [TACC] at 4–5 ¶ 11.) The Counter-Claimants further claimed that
  when "no agreement was reached between MGA and [the Counter-
  Claimants]," MGA "went forward" with the doll line anyway, "copying
  the unique name, image and trade dress of the OMG Girlz without
  permission." (*Id.* at 5 ¶¶ 13–14.) In sworn discovery responses, the
  Counter-Claimants repeated that "there existed in 2010 an announcement
  to sell a line of Bratz dolls (owned by MGA) based on the OMG Girlz
  because of the widespread popularity of the OMG Girlz." (Dkt. No. 142-
  25 at 10.) Tameka Harris has since recanted this story, admitting in
  deposition she "cannot say" it ever happened. (Dkt. No. 148-3 ["Harris
  Dep."], at 69:20–70:10.) The Counter-Claimants also deleted the
  "copying" allegations from the proposed amended pleading they sought
  to file. (Dkt. No. 106-2; *see* Dkt. No. 117 [Court's order denying the
  Counter-Claimants' request as untimely].)
- The Counter-Claimants have no evidence that the Dolls' designers based
  any of their designs on the OMG Girlz or pictures of the OMG Girlz.
  MGA designers testified and submitted declarations that the Dolls were
  not based on the OMG Girlz or pictures of the OMG Girlz. (Dkt. Nos.
  142-4, 142-5, 142-6, 142-7, 142-8, 144-1 [collectively, "Designer

Decls."].)

**B.    Key Evidence Showing MGA Did Not Infringe OMG Girlz'
Asserted Trade Dress**

*1.    Key Evidence that the Counter-Claimants' Asserted Trade
Dress Is Functional*

- The OMG Girlz' asserted trade dress is not unique or unusual in the
industry. Musicians have for decades used vibrant hair color and
experimental, fun, urban, and edgy wardrobes and makeup. (Designer
Decls., *supra.*)

- Even specific looks the OMG Girlz claim as original theirs were
famously used by others before the OMG Girlz. (*E.g.*, *compare* Harris
Dep., at 138:25–139:13, 141:5–21 [asserting the OMG Girlz were
"trendsetters" in wearing tutus] with Dkt. No. 142-14 [showing multiple
other famous performers wearing tutus earlier and at the same time as the
OMG Girlz].)

*2.    Key Evidence that the Counter-Claimants Cannot Establish
They Have a Protectable Trade Dress*

- Since its inception around 2009, the OMG Girlz had a vast range of
looks. (Harris Dep., at 134:22–135:19, 136:14–137:11; Dkt. No. 148-4, at
70:9–71:8. Dkt. No. 142-13.)

- Defendant Tameka Harris and her daughter Zonnique Pullins, one
member of the OMG Girlz, could identify only two purported
"distinctive" elements: (1) pink, blue, and purple hair, and (2) wearing
tutus. (Harris Dep., at 138:25–139:9, 141:5–21; Dkt. No. 148-4["Pullins
Dep."], at 66:1–17.) Yet many times the OMG Girlz did not have either
or both of those things. (Dkt. No. 142-13.)

- The Counter-Claimants inconsistently claim that other, completely
different looks—such as green/black hair, brown curly hair, and

camouflage pants—are "iconic" OMG Girlz looks. (Dkt. No. 142-17 [Appendix A to OMG Girlz LLC's Second Supplemental Responses to Counter Defendant Isaac Larian's First Set of Interrogatories Nos. 8, 15, & 16].)

- The Counter-Claimants assert infringement based on any minute similarity between the Dolls and the OMG Girlz: *e.g.*, a Doll has an outfit "reminiscent" of one they wore once; a Doll has "star-shaped earrings" and a bandmember's stage name is "Star"; a Doll has "fun makeup"; a Doll has blue or pink hair like they often did; but another Doll has brown hair, which they also had; and another Doll has orange hair like a bandmember's mother. (*See id.*)

- Ms. Harris and Ms. Pullins testified that (1) the OMG Girlz used different looks; and (2) they purposely did so to maintain interest and freshness. (Harris Dep., at 135:3–5, 134:22–135:19, 136:14–137:11, 168:1–11; Pullins Dep., at 70:9–71:8.)

- The "mood boards" created and used by MGA designers in conceptualizing the various Dolls show that the OMG Girlz' looks reflect trends in fashion and among numerous celebrities other than the OMG Girlz. (Designer Decls., *supra*.)

- The Counter-Claimants' public image is not appropriate for a line of children's toys and would not be desired by toy consumers.

- The dolls display a panoply of hair colors and styles, with outfits from ball gowns to denim overalls, and a full range of skin tones. (See Dkt. No. 142-12.) Each is uniquely accessorized according to the character and theme of the doll, from a slumber party or roller skating to a shopping trip or punk rock show. (*See id.*)

- Ms. Harris, the corporate designee on the OMG Girlz' revenue, does not know how much revenue the group made, but said in her deposition that

it "could have been" a total of $500,000. (Harris Dep., at 37:19–23.)

- The sole (unsigned) tax return that was produced shows gross revenue for the OMG Girlz' company, called Money Team Enterprises LLC, in 2013 of about $400,000, with income of about $87,000. (Dkt. No.148-6.) That same tax return shows a total of $750 was spent in "advertising." (*Id.*)

- The 2011 recording agreement between the individual OMG Girlz and Counter-Claimants Pretty Hustle, LLC and Grand Hustle, LLC does not contain an assignment of rights to the OMG Girlz' trade dress, and merchandising rights are expressly excluded from the agreement as an "ancillary right" that remains with the artists. (Dkt. No. 148-7 §§ 7(a), 12(a)(ii).)

- The 2012 recording and related agreements between the parties and Interscope Records also did not contain an assignment of the OMG Girlz' trade dress, but rather only an obligation to pay Interscope a portion of any proceeds the OMG Girlz (the individual "artists" as defined therein) derived from merchandising or other exploitation of their likeness. (Dkt. No. 148-8 at 1.)

- Ms. Harris testified that, other than these agreements addressed above, the OMG Girlz are not aware of any other written agreements involving intellectual property rights and the OMG Girlz, and also are not aware of any oral agreements relating to or constituting an assignment of intellectual property rights. (Harris Dep., 98:18–99:2, 123:1–18.)

- The partially signed new "agreement" that purports to confirm that the OMG Girlz' intellectual property rights, including trade dress, belong to the OMG Girlz cannot change the fact that there is no evidence such rights were ever previously assigned. Further, any assignment must be in writing and signed.

3. *Key Evidence that the Counter-Claimants Cannot Show Likelihood of Confusion*

- The OMG Girlz have no distinct image, and the L.O.L. Surprise! O.M.G. dolls have a wide array of looks and characterizations. (Dkt. Nos. 142-12, 142-13.) There is no MGA Doll that displays all elements of the claimed trade dress. (Dkt. No. 142-12.)

- MGA's retained survey expert, Dr. Bruce Isaacson, conducted a survey of more than 1,500 potential purchasers of fashion dolls to measure likelihood of confusion. (Dkt. No. 144-2.) He tested multiple dolls in multiple ways (including with and without the packaging that bears the "L.O.L. Surprise! O.M.G." logo). (*Id*.) According to Dr. Isaacson's survey, *zero* people associated MGA's dolls with the OMG Girlz, and *zero* people believed the dolls look like the OMG Girlz or any of their members. (*Id*. ¶ 119.)

- The Counter-Claimants have not conducted any consumer surveys or otherwise produced any consumer data to determine whether there was likelihood of confusion.

- According to the Counter-Claimants' sworn discovery responses, "[T]he OMG Girlz have never engaged in any marketing, promotion, advertising, and sale of a line of dolls, nor have they planned any related marketing, promotion, or advertising." (Dkt. No. 142-27 [OMG Girlz LLC's Supp. Resp. to Plaintiff's Interrogatory No. 3, dated October 12, 2021].)

- The parties use different marketing channels. In the United States, L.O.L. Surprise! O.M.G. dolls are sold in stores and online, with Amazon.com, Target, and Wal-Mart being the primary retailers who carry the dolls. (Dkt. No. 142-9 ["Paula Garcia Decl."], ¶ 10.) The OMG Girlz music could be heard on tours they did as well as on YouTube, Spotify, and

other music streaming services. (Dkt. No. 142-16 at 8–9.)

- To the extent that evidence from a handful of commenters on social media is admitted into evidence, or a few biased fans claim they were confused, such evidence is insufficient to demonstrate likelihood of confusion given the volume of sales of the L.O.L. Surprise! O.M.G. dolls.

**C.    MGA's Key Evidence It Did Not Misappropriate the OMG Girlz' Name, Image, or Likeness**

- The 2012 recording and related agreements between the parties and Interscope Records also did not contain an assignment of likeness or publicity rights, but rather only an obligation to pay Interscope a portion of any proceeds the OMG Girlz (the individual "artists" as defined therein) derived from merchandising or other exploitation of their likeness.[2] (Dkt. No. 148-8 at 1.)

- Ms. Harris testified that, other than these agreements addressed above, the Counter-Claimants are not aware of any other written agreements involving intellectual property rights and the OMG Girlz, and also are not aware of any oral agreements relating to or constituting an assignment of publicity rights.[3] (Harris Dep., 98:18–99:2, 123:1–18.)

- The partially signed new "agreement" that purports to confirm that the OMG Girlz' likeness rights belong to the Counter-Claimants cannot change the fact that there is no evidence such rights were ever previously

---

[2] Counter-Claimants assert this issue is not appropriate for trial because the Court found Counter-Claimants have standing at summary judgment. *Id.*

[3] Counter-Claimants assert this issue is not appropriate for trial because the Court found Counter-Claimants have standing at summary judgment. *Id.*

assigned. Moreover, standing is determined at the time of filing.[4] The Dolls do not bear the name "OMG Girlz," nor the names of any of the individual members. (Dkt. No. 142-12)

- Dr. Isaacson also conducted a likeness survey that tested eight different L.O.L. Surprise! OMG dolls, and not a single person surveyed stated that any of these dolls bear the likeness of any of the OMG Girlz.(Dkt. No. 144-2.) The likeness survey confirms MGA's L.O.L. Surprise! O.M.G. dolls are not readily identifiable as the OMG Girlz. To the extent some perceived a likeness of any person, it was a smattering of other celebrities—further underscoring the lack of any unique association between the OMG Girlz and any of these "looks." (*Id.*)

- To the extent that evidence from a handful of commenters on social media is admitted into evidence, or a few biased fans claim they were confused, such evidence is insufficient to demonstrate likelihood of confusion given the volume of sales of the L.O.L. Surprise! O.M.G. dolls.

**MGA's Affirmative Defenses:**

MGA's key evidence in support of its declaratory judgment claim, (*see, supra,* Sections 1-2), will also be offered at trial in support of MGA's affirmative defenses. Additionally, MGA intends to rely upon the following key evidence to support its First Amendment Fair Use defense with respect to Counter-Claimants' common law misappropriation of name and/or likeness claim only:

- The dolls are part of the L.O.L. Surprise! line of dolls, meant to be

---

[4] Counter-Claimants assert this issue is not appropriate for trial because the Court found Counter-Claimants have standing at summary judgment (Dkt. 323 (Order at 23-24 ("The Court agrees and finds that the OMG Girlz assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which are party to this action").

integrated into "families."

- The dolls are mystery toys, with a unique "unboxing" experience, and the box packaging often doubles as a playset.

- The dolls are "fashion dolls," which means they come with various outfits, accessories, and props that enable imaginative play and allow the dolls to be altered to have several different looks.

**Defendants and Counter-Claimants [the Counter-Claimants]:**

**The OMG Girlz will pursue each of its remaining pleaded claims, which are as follows:**

- **Claim 1:** MGA violates the Lanham Act, 15 U.S.C. § 1125 by infringing on the OMG Girlz' trade dress

- **Claim 2:** MGA misappropriates he OMG Girlz' Name and Likeness in violation of the common law[5]

**Claim 1: MGA violates the Lanham Act, 15 U.S.C. § 1125 by infringing on the OMG Girlz' trade dress rights**

Summary:  The OMG Girlz hold the intellectual property rights (and all related rights) to the well-known OMG Girlz name (Reg. No. 6662847), the distinctive style and visual appearance of the OMG Girlz and the trade dress associated with the OMG Girlz name, brand, image and style.  The trade dress includes the names and images associated by fans with the OMG Girlz, including, without limitation:  (i) the acronym "OMG" "Girlz", a name trademarked to identify a young, confident, and positive young female musical recording and performance group; (ii) unique combinations of vibrant hair color combinations in non-monochromatic and contrasting hues—primarily in bright pink, vivid purple, and blue to teel shades of blue, makeup, contrasting wavy and straight hair styling, and experimental, fun, urban, and edgy wardrobes and makeup creating a unique

---

[5] MGA disputes the OMG Girlz' position on Claims One and Two.

composite tapestry of appearance for the multicultural OMG girls as exemplified in

the images included in the Preliminary Statement; (iii) music with young female

vocals and unique pop/R&B rhythm and cadence recorded and released in songs

by the OMG Girlz; (iv) images of the OMG Girlz on musical performance tours

and in celebrity events as depicted in their television performances and social

media releases; and (v) the stage names used by the band members in connection

with their stage personas. Through both their use in commerce, and their inherently

distinctive qualities, all of the foregoing elements have established a secondary

meaning in the public mind associated specifically with the OMG Girlz.  None of

these elements are functional, in that they do not serve a utility or function outside

of creating recognition in consumers' minds. MGA's infringing OMG Dolls copy

this trade dress in physical toys and animated videos which MGA has widely

disseminated and continues to disseminate. MGA's infringing OMG Dolls have

commercially exploited the existing trade dress, name, image, and brand popularity

of the OMG Girlz, leading to consumer confusion as to the origin of the goods.

MGA's infringement of the OMG Girlz trade dress was willful and malicious. As a

result of these infringing activities, MGA has caused economic harm to the OMG

Girlz through consumer confusion, loss of goodwill and reputation, and by

depriving the OMG Parties of the right to control the time, place, terms, and

manner by which to publicize said parties' special talents.  MGA has also derived

unlawful profits from its infringement and use of the OMG Girlz trade dress and its

profits from sales related to its O.M.G. line of dolls is subject to equitable

disgorgement.

Elements: (1) ownership of a protectable trade dress that serves a source-

identifying role either because it is inherently distinctive or has acquired

distinctiveness through secondary meaning; (2) that the matter sought to be

protected is not functional; and (3) the defendant's trade dress infringes upon the

claimant's trade dress by creating a likelihood of confusion among consumers

about the origin or source of the product. A party seeking trade-dress protection need only "fairly put the defendant (and factfinder) on notice of the distinctive elements and features of the trade dress at issue," and may point to a combination of verbal elements and visual depictions that create a product's distinctive appearance. *See, e.g.*, *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 78 (S.D.N.Y. 2009); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). A "trade dress is functional" only if it is "'essential to the use or purpose of the article.'" *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008). Courts in the Ninth Circuit use the eight Sleekcraft factors as an adaptable proxy for consumer confusion, not a rote checklist, and here, a fact issue remains as to each element. *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010)("This eight-factor analysis is [a] helpful guidepost[].")); *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (explaining the fluidity of the infringement analysis, "we do not count beans."). A contextualized analysis and weighing of factors is especially appropriate in the context where products are juxtaposed online. See *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145–46 (9th Cir. 2011) ("[w]e must be acutely aware of excessive rigidity when applying the law in the Internet context; emerging technologies require a flexible approach.") (Citations omitted). "[T]he core element of trademark infringement [likelihood of confusion] exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources marks or marketing techniques." *Sazerac*, 251 F. Supp. 3d at 1304 (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (quotation marks omitted)). Secondary meaning consists of an association by a segment of actual consumers and potential consumers "between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th

1  Cir. 1985).  In determining whether a claimant's trade dress has acquired

2  secondary meaning, courts consider a multitude of factors, including consumer

3  testimony, exclusivity, manner, and length of use of a mark, amount and manner of

4  advertising and sales, intentionality by the defendant. See *Filipino Yellow Pages,*

5  *Inc. v. Asian Journal Pubs., Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

6      When a violation of any right of the registrant of a mark registered in the

7  Patent and Trademark Office, a violation under section 1125(a) or (d) of this title,

8  or a willful violation under section 1125(c) of this title, shall have been established

9  in any civil action arising under this chapter, the claimant shall be entitled, subject

10  to the provisions of sections 1111 and 1114 of this title, and subject to the

11  principles of equity, to recover (1) defendant's profits, (2) any damages sustained

12  by the claimant, and (3) the costs of the action. The court shall assess such profits

13  and damages or cause the same to be assessed under its direction. In assessing

14  profits, the claimant shall be required to prove defendant's sales only; defendant

15  must prove all elements of cost or deduction claimed.

16      Source: 15 U.S.C. §§ 1117, 1125(a)(3). Ninth Circuit Manual of Model Jury

17  Instructions (2017 ed.), Instructions Nos. 1.2; 15.1; 15.2; 15.4; 15.6; 15.7.

18      Evidence:  The key evidence shows that the OMG Girlz meet all of the

19  elements above. The OMG Girlz will rely upon the following to support this claim:

20  deposition and/or live testimony of Tameka Harris, Zonnique Pullins, Breaunna

21  Womack explaining the creation of the trade dress and how fans and consumers

22  have come to associate the OMG Girlz trade dress and IP with the girl group. The

23  OMG Girlz will also rely on documents showing the trade dress and its notoriety,

24  images of the particular combinations of elements MGA infringes, and

25  declarations, social media comments, and/or testimony of individuals expressing

26  their actual confusion between the OMG Girlz and MGA's OMG Dolls. Expert

27  testimony, financial documents (including MGA's documents showing the profits

28  derived from the OMG dolls and the OMG Girlz financial documents regarding

1    past endorsement, merchandising, and distribution agreements), testimony from the

2    fact witnesses, and other evidence listed above will also demonstrate how (1) the

3    OMG Girlz were and continue to be damaged by MGA's conduct, and (2) the

4    amount of MGA's profits subject to equitable disgorgement. For example, the

5    OMG Girlz will rely on evidence showing that the OMG Girlz were exploring

6    creating a line of licensed dolls and that MGA's infringement deprived the OMG

7    Girlz of the opportunity to do so.

8         The OMG Girlz will also rely on deposition and/or live testimony of MGA

9    30(b)(6) witnesses, and/or Isaac Larian, Maggie Wong, Lora Stephens, Rachel

10   Moshe, and Blanche Consorti, internal MGA emails, and other documents

11   explaining how MGA first began and continues to willfully and maliciously

12   infringe the OMG Girlz trade dress.

13   **Claim 2: MGA misappropriates the OMG Girlz' Name and Likeness in**

14   **violation of California common law**

15        <u>Summary:</u>  The OMG Girlz hold the intellectual property rights (and all

16   related rights) to the well-known OMG Girlz name and likeness and the distinctive

17   style and visual appearance of each OMG Girlz member and the trade dress

18   associated with the OMG Girlz name, brand, image and style. MGA has knowingly

19   sold, offered for sale, manufactured and/or the infringing OMG Dolls which bear

20   the name(s) and/or likeness(es) of the OMG Girlz.  MGA has also used said

21   name(s) and/or likeness(es) in advertising for MGA's goods. MGA has used the

22   name and likeness without consent.  MGA has violated the OMG Girlz' rights by

23   knowingly appropriating, using and exploiting the name(s) and/or likeness(es) of

24   the OMG Girlz on the infringing OMG Dolls which MGA sold, offered for sale,

25   manufactured and/or distributed or in advertising for any goods for MGA's

26   commercial benefit without the consent of the OMG Girlz. As a result of the

27   infringing activities, MGA has deprived the OMG Girlz of the right to control the

28   time, place, terms, and manner by which to publicize said parties' special talents.

Elements: To prevail on a cause of action for common law misappropriation of name or likeness, the claimant must establish: "(1) the defendant's use of the [claimant's] identity; (2) the appropriation of [claimant's] name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793, 40 Cal.Rptr.2d 639 (1995).

Damages for the infringement of the right of publicity are based upon the commercial injury to the claimant. The first step in determining a value of these damages would be to assess the market value of the nonpermitted use. Another form of commercial loss by the claimant is loss of future potential earnings in his or her career or other licensing opportunities based on lost reputation. McCarthy, The Rights of Publicity and Privacy 2d § 11:33; *see also Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 827 (9th Cir.1974) (recognizing damages for humiliation, embarrassment, and mental distress); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) (awarding claimant for the fair market value of his services; for injury to his peace, happiness and feelings; and for injury to his goodwill, professional standing and future publicity value).[6]

Source: CACI No. 1804A; 31 Causes of Action 2d 121 (Originally published in 2006); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir.1974).[7]

---

[6] MGA objects to the Counter-Claimants recitation of the damages element to the extent it purports to encompass emotional distress damages, which the Court has already ruled Counter-Claimants cannot seek. *See* Dkt. Nos. 521, 590.

[7] MGA contends CACI No. 1804A is not relevant to Counter-Claimants' common law misappropriation of name or likeness claim. It is a jury instruction used for statutory misappropriation of name or likeness claims under California Civil Code § 3344. This Court has already granted summary judgment in favor of MGA on Counter-Claimants' statutory misappropriation of name or likeness claim. Dkt. No. 326 at 33.

1    <u>Evidence:</u> The key evidence shows that the OMG Girlz meet all of the

2    elements above. The OMG Girlz will rely upon the following to support this claim:

3    deposition and/or live testimony of Tameka Harris, Zonnique Pullins, Breaunna

4    Womack explaining that MGA's unauthorized use of the OMG Girlz' name and

5    likeness. The OMG Girlz will also rely on documents showing the OMG Girlz'

6    name and likeness, the obvious similarity of the OMG Dolls, and declarations,

7    social media comments, and/or testimony of individuals expressing their confusion

8    between the OMG Girlz and MGA's OMG Dolls. Expert testimony, financial

9    documents (including MGA's documents showing the profits derived from the

10   OMG dolls and the OMG Girlz financial documents regarding past endorsement,

11   merchandising, and distribution agreements involving the OMG Girlz name and

12   likeness), testimony from the fact witnesses, and other evidence listed above will

13   also demonstrate how (1) the OMG Girlz were and continue to be damaged by

14   MGA's conduct, and (2) the amount of MGA's profits subject to equitable

15   disgorgement. For example, the OMG Girlz will rely on evidence showing that the

16   OMG Girlz were exploring creating a line of licensed dolls and that MGA's

17   infringement deprived the OMG Girlz of the opportunity to do so. Further, the

18   OMG Girlz will rely on documents and testimony from fact witnesses to establish

19   that MGA's appropriation of the OMG Girlz likeness, including by making dolls

20   based on Ms. Pullins' dating life, caused non-economic injuries of humiliation,

21   embarrassment, and mental distress.

22        The OMG Girlz will also rely on deposition and/or live testimony of MGA's

23   30(b)(6) witnesses, and/or Isaac Larian, Maggie Wong, Lora Stephens, Rachel

24   Moshe, Blanche Consorti, declarations of individuals expressing their actual

25   confusion, internal MGA emails, and other documents explaining how MGA

26   financially and reputationally benefits from its unauthorized use of the OMG Girlz'

27   name and likeness.

28

**Summary of the OMG Girlz' Affirmative Defenses [L.R. 16-4.1(d), (e)][8]**

In December 2020, the OMG Girlz sent MGA a cease-and-desist letter providing notice of their concerns, rather than respond to the OMG Girlz even with a response letter, MGA filed a declaratory relief action two weeks later. The OMG Girlz asserted the following affirmative defenses to MGA's DJ.

Second Affirmative Defense (Estoppel) MGA is barred, in whole or in part, based on principles of estoppel.

Third Affirmative Defense (Unclean Hands) MGA is barred, in whole or in part, by the doctrine of unclean hands.

Fourth Affirmative Defense (Waiver) MGA is barred, in whole or in part, by the doctrine of waiver.

Fifth Affirmative Defense (Laches) MGA is barred, in whole or in part, by the doctrine of laches.

Sixth Affirmative Defense (Statute of Limitations) MGA is barred, in whole or in part, by the statute of limitations

Seventh Affirmative Defense (Standing) MGA is barred, in whole or in part, because MGA lacks standing.

**Summary of the OMG Girlz' Evidence in Opposition to MGA's Claim [L.R. 16-4.1(d), (e), (f)][9]**

a.      MGA claims that it is entitled to a First Amendment defense to the OMG Girlz' misappropriation of name and likeness claims. MGA does not qualify for a First Amendment defense. Under Ninth Circuit law, the OMG Dolls are not expressive works or publications, but consumer products, that do not otherwise communicate or evoke speech either through writing, speaking, or symbolism. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569

---

[8] MGA disputes the OMG Girlz' position.

[9] MGA disputes the OMG Girlz' position.

1  (1995) (finding that a parade was a medium of expression because of the

2  symbolism involved).  Furthermore, the rationale of the Supreme Court's ruling in

3  *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023) shows

4  that a first amendment defense in this context is inappropriate. Just as the First

5  Amendment does not override trademark law when a mark is used a source

6  identifier, it should not override rights of publicity. Indeed, a three justice

7  concurrence advised lower courts to be "attuned" to the fact that much of *Rogers*

8  was unaddressed and "it is not obvious that *Rogers* is correct in all its particulars."

9  While the *Rogers* test involved trademarks, it comes from a similar (faulty)

10  rationale as the defense MGA seeks to use. The Court should find MGA's First

11  Amendment defense is not applicable to this case.

12      8.     In view of the admitted facts and the elements required to establish the

13  claims, counterclaims and affirmative defenses, the following disputed issues

14  remain to be tried to a jury and/or to the Court:

15      • Whether MGA is entitled to declaratory relief (*see footnote 1*)

16      • Whether MGA violated the Lanham Act by infringing upon the

17         Counter-Claimants' trade dress

18      • Whether the Counter-Claimants hold protectable trade dress

19      • Whether the Counter-Claimants' asserted trade dress is, in

20         whole or in part, functional.

21      • Whether the Counter-Claimants' asserted trade dress is so

22         common in the industry that it cannot be said to identify a

23         particular source.

24      • Whether the Counter-Claimants' asserted trade dress is

25         inherently distinctive and/or has acquired secondary meaning.[10]

26  _____

27  [10] The Court previously ruled that Counter-Claimants' asserted trade dress cannot

28  be inherently distinctive and, instead, that Counter-Claimants must prove it has acquired a secondary meaning. *See* Dkt. No. 326 at 9, 14-16 (on summary

22

- Whether MGA infringed the Counter-Claimants' trade dress by creating a likelihood of confusion among consumers about the origin or source of the dolls

- Whether MGA acted willfully or deliberately.

- Whether the Counter-Claimants have standing to pursue their counterclaims.[11]

- Whether MGA misappropriated the Counter-Claimants' name and/or likeness under common law.

- Whether MGA's misappropriation of the Counter-Claimants' name and/or likeness under common law, if any, caused the Counter-Claimants any damages.

- Availability of and amount of damages against MGA for either or both claims.

- Whether the First Amendment bars recovery for MGA's misappropriation of the Counter-Claimants' name and/or likeness, if any.

---

judgment, decided that there a triable issue "as to whether the OMG Girlz' trade dress has acquired secondary meaning"); Dkt. No. 789 (Trial Day 1, Vol. 1 Tr.) at 20:25-24:22 (during arguments over jury instructions, rejecting Counter-Claimants' argument that the jury instruction for trade dress infringement claim should "include that the first element of trade dress [*i.e.*, whether their asserted trade dress has "acquired secondary meaning" (Dkt. No. 764 at 15)] can be met with a showing of inherent distinctiveness"); Dkt. No. 764 at 15-16 (jury instruction the Court issued for Counter-Claimants' trade dress infringement claim did not include Counter-Claimants' requested inclusion as to inherent distinctiveness). Thus, MGA disputes that the issue whether the Counter-Claimants' asserted trade dress is inherently distinctive remains to be tried to the jury and/or to the Court.

[11] The OMG Girlz assert MGA may not challenge the OMG Girlz' standing as to its counterclaim two because that issue was decided by the Court at summary judgment. MGA disputes this position.

- Whether the Counter-Claimants' counterclaims are barred, in whole or in part, by the doctrine of estoppel.
- Whether the Counter-Claimants' counterclaims are barred, in whole or in part, by the doctrine of laches.
- Whether the Counter-Claimants' counterclaims are barred, in whole or in part, by the doctrine of unclean hands.
- Whether the Counter-Claimants' counterclaims are barred, in whole or in part, by the Counter-Claimants' abandonment of their alleged trademark and trade dress.
- Whether the Counter-Claimants' counterclaims are barred, in whole or in part, by their failure to mitigate their damages.
- Whether equitable relief is appropriate.[12]
- Whether Counter-Claimants are entitled to any equitable relief.
- The amount of attorneys' fees MGA is entitled to as the prevailing party under the statutory misappropriation claim.
- Whether this case is exceptional and, if so, the appropriate relief that should be given as a matter of equity.

9.    With the exception of a potential supplemental expert report from MGA's proffered expert Russell Mangum and from the OMG Girlz' proffered expert Christian Tregellis, which may address certain supplemental financial information MGA recently produced, all discovery is complete. (The Parties expect that Mr. Mangum will produce his supplemental expert report by August 16, 2024, and Mr. Tregellis will produce any further supplemental expert report by August 23, 2024.)

_____

[12] The OMG Girlz object to these equitable claims regarding attorneys' fees and related issues being tried before the jury. MGA asserts the Court has already decided that equitable issues should not be bifurcated. (Dkt. No. 512 (1/5/23 Hrg. Tr.) 42:2-13).)

10.     Except as noted under below with respect to deposition designations, all disclosures under Federal Rule of Civil Procedure 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. (Dkt. No. 908.)

The OMG Girlz object to MGA's Exhibits on the following grounds:[13]

Bratz & Moxie Dolls Images: The OMG Girlz renew their objections to MGA's late produced Bratz & Moxie Doll Images (Dkt. No. 641), specifically Exhibits 5450, 5452, 5453, 5513. The OMG Girlz issued many discovery requests to MGA plainly directed towards documents concerning and challenging the OMG Girlz' intellectual property rights, including RFP Nos. 4, 5, 23, 25, 35, 36, 46, 59, 84. MGA objected to nearly all of these requests for months, and failed to timely produce documents responsive to the same. The OMG Girlz were unable to probe these documents during discovery, and the OMG Girlz would be prejudiced were MGA to use them at trial in support of a theory.

Unauthenticated Images of Third Parties: The OMG Girlz renew their objections to MGA's late produced "celebrity" and other third-party images. These images were not produced in discovery, nor has MGA provided any basis for or way to authenticate these images. The Court previously sustained this objection (Dkt. No. 782 at 15:7–22), disallowing admission (and in some cases, the use) of these images with the Counter-Claimants' witnesses.

The OMG Girlz further object to various of MGA's exhibits as irrelevant, confusing, misleading, lacking foundation, constituting inadmissible hearsay, and/or being unduly prejudicial.

In addition to the objections described above, OMG Girlz additional specific objections to MGA's exhibits are attached as Attachment A.

---

[13] MGA disputes the OMG Girlz' position on exhibits.

FINAL PRETRIAL CONFERENCE ORDER

1   MGA objects to the Counter-Claimants' Exhibits on the following

2   grounds.[14]

3       MGA objects to Exhibit 486 on the grounds that it is a duplicative entry.

4       MGA further objects to various of Counter-Claimants' exhibits on the

5   grounds that they are irrelevant, confusing, misleading, lack foundation, constitute

6   inadmissible hearsay, and/or are unduly prejudicial.

7       In addition to the objections described above, MGA's additional specific

8   objections to Counter-Claimants' exhibits are attached hereto as Attachment B.

9       11.   Witness lists of the parties have been filed with the Court. (Dkt. Nos.

10  907, 910.)

11      Only the witnesses identified in the lists will be permitted to testify (other

12  than solely for rebuttal or impeachment).

13      The Parties have agreed that each party intending to present evidence by

14  way of deposition testimony will mark such depositions in accordance with L.R.

15  16-2.7 pursuant to the following schedule:

16  • Identify designations:  August 7, 2024

17  • Objections (if any) to designations and proposed counter-

18    designations:  August 19, 2024

19  • Objections to counter-designations (if any) and/or further designations

20    to counter-designations: August 26, 2024

21      12.   The following law and motion matters and motions in limine, and no

22  others, are pending or contemplated:

23  • If necessary, the OMG Girlz intend to file a motion regarding the

24    admissibility of the Instagram posts.

25      13.   Bifurcation: The Court has already decided it will not bifurcate the

26

27  _____

28  [14] The OMG Girlz dispute MGA's position on exhibits.

1  case.[15]

2      14.    The foregoing admissions having been made by the parties, and the

3  parties having specified the foregoing issues remaining to be litigated, this Final

4  Pretrial Conference Order shall supersede the pleadings and govern the course of

5  the trial of this cause, unless modified to prevent manifest injustice.

6

7      **IT IS SO ORDERED.**

8

9  Dated: August 19, 2024

10                         Hon. James V. Selna
                        United States District Judge

11

12

13  **Approved as to form.**

14     */s/ Paul J. Loh*

15  Attorney for Plaintiff and Counter-Defendants

16

17

18     */s/ John R. Keville*

19  Attorney for Defendant and Counter-Claimants

20

21

22

23  _____

24  [15] Dkt. No. 512 (1/5/23 Hrg. Tr.) at 42:2-13 ("In ruling on the summary judgment

25  motion, I did indicate we would bifurcate the case. On further reflection, I think it makes a lot more sense and is a lot more efficient not to bifurcate but to have one

26  trial. To the extent that the jury is asked to answer questions of an equitable nature,

27  I consider those as advisory verdicts. I think one trial avoids the necessity of calling witnesses more than once although there may be minimal overlap. I think

28  it's better to do it all at once.").