Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen S. Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No.
312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc.,
and Counter-Defendant Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MGA ENTERTAINMENT, INC.,
a California corporation,

          Plaintiff,

vs.

CLIFFORD "T.I." HARRIS, an
individual; TAMEKA "TINY"
HARRIS, an individual; OMG
GIRLZ LLC, a Delaware limited
liability company; and DOES 1 -
10 inclusive,

          Defendants,

GRAND HUSTLE, LLC,
PRETTY HUSTLE, LLC and
OMG GIRLZ LLC,

          Counter-Claimants,

vs.

MGA ENTERTAINMENT, INC.,
ISAAC LARIAN and DOES 1 -
10, inclusive,

          Counter-Defendants.

Case No. 2:20-cv-11548-JVS-AGR
ASSIGNED TO: Hon James V. Selna

**PLAINTIFF AND COUNTER-DEFENDANTS' OPENING POST-TRIAL BRIEF REGARDING EQUITABLE ISSUES**

Complaint Filed: December 20, 2020
Trial Date:   September 3, 2024

Hearing Date: December 16, 2024
Hearing Time: 3:00 P.M.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 8

II. THE COURT SHOULD INDEPENDENTLY DECIDE THE AWARD AND ISSUE FINDINGS UNDER RULE 52 ................................................. 9

    A.  All Jury Awards Were Equitable ........................................................ 9

        1.  *The Lanham Act Disgorgement Award Was Equitable.* ............... 9

        2.  *The Common Law Misappropriation Disgorgement Award Was Equitable.* ............................................................... 10

        3.  *The Punitive Award, Based On The Disgorgement Award, Was Equitable.* ............................................................... 11

III. THE COURT SHOULD NOT AWARD DISGORGEMENT UNDER THE LANHAM ACT ............................................................................. 12

    A.  MGA Did Not Willfully Infringe Counterclaimants' Trade Dress.... 12

    B.  Equitable Considerations Do Not Support Disgorgement. ................ 14

    C.  None Of MGA's Profits Are Attributable To The Infringement. ...... 15

IV. ALTERNATIVELY, THE COURT SHOULD DISGORGE NO MORE THAN 10-15% OF MGA'S PROFITS ........................................................ 18

    A.  MGA's Profits Should Account For Fixed Overhead Costs. ............. 19

    B.  At Most, 10% Of MGA's Profits May Be Attributable To The Infringement Based On Dr. Mangum's Comparative Analysis. ........ 19

    C.  At Most, 15% Of MGA's Profits Are Attributable To The "Style" Of The Dolls. ................................................................................. 20

V.  THE COURT SHOULD NOT AWARD DISGORGEMENT FOR COMMON LAW MISAPPROPRIATION .................................................. 21

    A.  Disgorgement Is Not A Proper Remedy For Common Law Misappropriation. ............................................................................. 21

    B.  Even If Disgorgement Were Available For Common Law Misappropriation, It Cannot Be Awarded Without Proof Of Harm... 22

    C.  To the Extent The Court Finds Some Disgorgement Is Warranted, The Amount Must Be Attributable To The Misappropriation. .......... 22

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}

1

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

VI.    PUNITIVE DAMAGES ARE HIGHLY IMPROPER ............................... 23

    A.    Punitive Damages Are Unavailable For A Common Law Misappropriation Claim. ........................................................ 23

    B.    Punitive Damages Are Unavailable Where There Are No Compensatory Damages. ....................................................... 24

    C.    Regardless, MGA Did Not Act With Any Oppression, Fraud, Or Malice That Could Support A Punitive Award. ................................. 25

    D.    Any Punitive Damage Award Must Comply With Due Process Requirements. ...................................................... 27

VII.    CONCLUSION ........................................................ 29

Umberg Zipser llp
Attorneys At Law
Irvine

{277920.8}

2

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                         **Page(s)**

3

4
*Adams v. Murakami,*
   54 Cal. 3d 105 (1991) ..................................................................... 27

5
*Airhawk Int'l v. Ontel Prods. Corp.*,
6
   No. 18-cv-00073-MMA-AGS, 2020 WL 2306440 (S.D. Cal. May
7
   8, 2020) ........................................................................................... 12

8
*Am., Inc. v. Payless Shoesource, Inc.*,
   No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008).................... 29
9

10
*Aoki v. Gilbert*,
   No.2:11-cv-02797-TLN-CKD, 2020 WL 6741693
11
   (E.D. Cal. Nov. 17, 2020) ............................................................... 12

12
*B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC*,
13
   No. CV 20-03857 TJH (SPX), 2023 WL 11835516
14
   (C.D. Cal. July 20, 2023) ............................................................... 23

15
*Bardis v. Oates*,
   119 Cal. App. 4th 1 (2004) ............................................................. 25
16

17
*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)........................................................................ 28
18

19
*California v. Altus Fin. S.A.*,
   540 F.3d 992 (9th Cir. 2008)....................................................... 25, 28

20
*ConsumerDirect, Inc. v. Pentius, LLC*,
21
   No. 8:21-CV-01968-JVS, 2024 WL 3914667 (C.D. Cal. July 19,
22
   2024) (Selna, J.) .............................................................................. 9

23
*Curtis v. Loether*,
   415 U.S. 189 (1974)........................................................................ 11
24

25
*Eastwood v. Sera Labs, Inc.*,
   No. 2:20-cv-06503-RJK, 2021 WL 4439221 (C.D. Cal. June 23,
26
   2021)............................................................................................... 24

27
*Epic Systems Corp. v. Tata Consultancy Services, Ltd.*,
28
   980 F.3d 1117 (7th Cir. 2020) ........................................................ 25

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}             3             Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

*Feitelberg v. Credit Suisse First Bos., LLC*,
  134 Cal. App. 4th 997 (2005) ............................................................... 10

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) .................................................. 9, 12, 14

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
  198 F.3d 1143 (9th Cir. 1999) ............................................................. 18

*Globefill Inc. v. Elements Spirits, Inc.*,
  756 F. App'x 764 (9th Cir. 2019) ........................................................ 16

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  No. SACV 17-01613-CJC, 2023 WL 2652855
  (C.D. Cal. March 13, 2023) ................................................... 13, 14, 15

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ............................................................... 28

*Hunter v. Town of Mocksville, N.C.*,
  897 F.3d 538 (4th Cir. 2018) ................................................................. 9

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
  815 F. App'x 110 (9th Cir. 2020) .......................................................... 9

*JL Beverage Co., LLC v. Jim Bean Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ............................................................. 18

*Jogani v. Superior Ct.*,
  165 Cal. App. 4th 901 (2008) ............................................................. 10

*Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*,
  752 F.2d 1326 (9th Cir. 1984) ............................................................. 19

*Kars 4 Kids Inc. v. America Can!*,
  8 F.4th 209 (3d Cir. 2021) ................................................................... 15

*La Quinta Corp. v. Heartland Properties LLC*,
  603 F.3d 327 (6th Cir. 2010) ............................................................... 23

*In re Late Fee & Over-Limit Fee Litig.*,
  741 F.3d 1022 (9th Cir. 2014) ............................................................. 28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                    4                 Case No. 2:20-cv-11548-JVS-AGR
                                          COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                 BRIEF RE: EQUITABLE ISSUES

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ........................................................................... 22

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ........................................................... 14

*Liu v. SEC*,
    591 U.S. 71 (2020) ......................................................................... 9, 11

*Maier Brewing Co. v. Fleischman Distilling Corp.*,
    390 F.2d 117 (9th Cir. 1968)............................................... 15, 16, 18

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ........................................................................... 12

*Mattel, Inc. v. MGA Ent., Inc.*,
    801 F. Supp. 2d 950 (C.D. Cal. 2011) ............................................. 25

*Meister v. Mensinger*,
    230 Cal. App. 4th 381 (2014) ........................................................... 10

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ........................................................... 21

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
    9 Cal. 5th 279 (2020) ........................................................................ 10

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998)............................................................ 22

*Olive v. Gen. Nutrition Centers, Inc.*,
    30 Cal. App. 5th 804 (2018) ............................................................ 22

*Orgain, Inc. v. Iovate Health Scis. Int'l, Inc.*,
    No. 8:18-CV-01253-JLS-ADS, 2024 WL 2278194
    (C.D. Cal. Apr. 17, 2024).................................................................. 16

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) ..................................................................... 27, 28

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life
    Activists*, 422 F.3d 949 (9th Cir. 2005)............................................ 28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                    5                    Case No. 2:20-cv-11548-JVS-AGR
                                                      COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                BRIEF RE: EQUITABLE ISSUES

*Proofpoint, Inc. v. Vade USA, Inc.*,
 Nos. 23-16085 and 23-16175, 2024 WL 4003096
 (9th Cir. Aug. 30, 2024) .................................................................................. 11

*Reserve Media, Inc. v. Efficient Frontiers, Inc.*,
 No. CV 15-05072 DDP, 2017 WL 123420 (C.D. Cal. Jan. 11, 2017) .............. 14

*Riley v. Volkswagen Grp. of Am., Inc.*,
 51 F.4th 896 (9th Cir. 2022) .......................................................................... 28

*Romag Fasteners, Inc v. Fossil, Inc.*,
 590 U.S. 212 (2020) ........................................................................................ 12

*San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*,
 625 F. App'x 322 (9th Cir. 2015) .................................................................... 14

*Sherman-Bey v. Marshall*,
 No. CV 09-06494 JGB (RZ), 2014 WL 3557202
 (C.D. Cal. Mar. 14, 2014) .............................................................................. 24

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408 (2003) .................................................................. 25, 26, 28, 29

*Teutscher v. Woodson*,
 835 F.3d 936 (9th Cir. 2016) .......................................................................... 23

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
 895 F.3d 1304 (Fed. Cir. 2018) ................................................................ 10, 12

*W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*,
 427 F.3d 1269 (10th Cir. 2005) ...................................................................... 13

*Waits v. Frito-Lay, Inc.*,
 978 F.2d 1093 (9th Cir. 1992) ........................................................................ 22

*Winterland Concessions Co. v. Fenton*,
 835 F. Supp. 529 (N.D. Cal. 1993) ................................................................ 19

*Yuga Labs, Inc. v. Ripps*,
 No. CV 22-4355-JFW, 2023 WL 7089922 (C.D. Cal. Oct. 25,
 2023).................................................................................................................. 13

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                       6                    Case No. 2:20-cv-11548-JVS-AGR
                                                      COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                             BRIEF RE: EQUITABLE ISSUES

## Statutes

15 U.S.C. § 1117(a) ................................................................................. *passim*

Cal. Civ. Code § 3294(a) .......................................................................... 26

Cal. Civ. Code § 3344(a) ...................................................................... 21, 29

Cal. Civ. Code § 3344(g) (1971 ed.) ........................................................ 21

Cal. Civ. Code § 3344 ................................................................ 11, 21, 24, 28

Fed. R. Civ. P. 50 ..................................................................................... 29

Fed. R. Civ. P. 52 ..................................................................................... 8, 9

Fed. R. Civ. P. 59 ..................................................................................... 29

Umberg Zipser llp
Attorneys At Law
Irvine

{277920.8}                                        7                    Case No. 2:20-cv-11548-JVS-AGR
                                                                      COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                      BRIEF RE: EQUITABLE ISSUES

# I.    **INTRODUCTION**

There have been three trials in this case (including one mistrial).  The two juries that returned verdicts did so with wildly different outcomes.  In the second trial, the jury swiftly found in favor of MGA, finding no liability on either of Counterclaimants' claims.  Dkt. 771.  That jury was so convinced that MGA was in the right that it asked if it had the ability to award attorneys' fees to the winning party (MGA).  Dkt. 765.

Based on a different evidentiary record, the jury in this third trial found liability on several of MGA's L.O.L. Surprise! O.M.G. dolls and returned an advisory verdict of over $17 million as a disgorgement remedy on both of Counterclaimants' claims, plus precisely three times that amount—more than $50 million—for punitive damages.  Dkts. 1009, 1011.  These awards are unsupported by the evidence and grossly excessive, particularly where Counterclaimants suffered no actual harm.

Because each of the jury's monetary awards were equitable, they were merely advisory.  MGA respectfully submits that the Court should now independently decide the monetary questions and issue findings under Federal Rule of Civil Procedure 52.

The Court should find that Counterclaimants are not entitled to any disgorgement of MGA's profits earned on its dolls because equitable considerations (including lack of willfulness on MGA's part) fail to justify such disgorgement and none of those profits were attributable to the infringement found by the jury.  To the extent the Court disagrees then, at most, Counterclaimants should be awarded disgorgement of no more than 10-15% of MGA's profits.  And there should be no punitive award.  MGA did not act with the requisite oppression, fraud, or malice, and any punitive award is cabined by the Due Process Clause.  Moreover, punitive damages are not legally available when there is only a disgorgement remedy, as opposed to compensatory damages for actual harm.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                        8                        Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

## II.    THE COURT SHOULD INDEPENDENTLY DECIDE THE AWARD AND ISSUE FINDINGS UNDER RULE 52

### A.    All Jury Awards Were Equitable.

This Court ruled that any "[v]erdicts on equitable issues will be regarded as advisory."  Dkt. 924 at 2 (Final Pretrial Conference Order).  The only theory for monetary relief that Counterclaimants proffered at trial (and the only theory reflected in the jury instructions) is disgorgement of MGA's profits—an equitable remedy.  *See Liu v. SEC*, 591 U.S. 71, 80 (2020) ("[A] remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts.").  As such, all of the jury awards—including punitive damages based on disgorgement—were advisory.

This Court should now independently consider the requests for equitable relief and issue findings under Rule 52.  *See ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-CV-01968-JVS (ADSX), 2024 WL 3914667, at *2 (C.D. Cal. July 19, 2024) (Selna, J.) (concluding that "the Court must make its own findings of fact" where the only remedy sought on plaintiff's trademark infringement and false designation of origin claims was disgorgement).  In doing so, the jury's advisory rulings should not be given any deference as they are of "no binding legal significance." *See id*. (quoting *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 563 (4th Cir. 2018)).

### 1.    *The Lanham Act Disgorgement Award Was Equitable.*

Whether to award MGA's profits under the Lanham Act trade dress claim— and, if so, how much to award—is an equitable issue.  The Ninth Circuit has held that "[a] claim for disgorgement of profits under [15 U.S.C.] § 1117(a) is equitable, not legal." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110, 112 (9th Cir. 2020) (no right to a jury trial on claim for disgorgement of profits under the Lanham Act).  Counterclaimants agree that "the Ninth Circuit has held

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                    9                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

disgorgement in a Lanham Act claim is equitable and there is not a fundamental right to a jury trial to determine a profits award under § 1117 . . . ."  Dkt. 1023 at 7. Indeed, Counterclaimants' own portion of the Final Pretrial Conference Order describes the remedy they seek on this claim as "***equitable*** disgorgement."  Dkt. 924 at 15, 18 (emphasis added).

### 2. *The Common Law Misappropriation Disgorgement Award Was Equitable.*

Whether to award disgorgement for Counterclaimants' common law misappropriation of likeness claim—and, if so, how much—is likewise an equitable issue.[1]  California courts have long recognized that disgorgement is equitable in nature.  *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 293 (2020) ("At early common law, . . . 'equitable' causes of action . . . sought relief that was unavailable in actions at law, such as . . . an order requiring a defendant to provide specific performance or ***disgorge ill-gotten gains***.") (emphasis added).  California courts also distinguish disgorgement from the "legal remedy" of damages.  *See, e.g.*, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 396-98 (2014); *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 910 (2008).

Here, Counterclaimants seek only non-restitutionary disgorgement, which "focuses on [MGA's] unjust enrichment."  *Meister*, 230 Cal. App. 4th at 398. Restitutionary disgorgement, on the other hand, focuses on a plaintiff's loss and "is typified by the situation where disgorged money or property [came] from the prospective plaintiff in the first instance."  *Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1013 (2005) (internal quotation marks omitted); *see* Dkt. 502 at 7-8 (lost profits calculation excluded); *see also Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1318-26 (Fed. Cir. 2018) (holding that disgorgement of profits for trade secret misappropriation is

---

[1] MGA maintains its objection to the Court permitting Counterclaimants to seek equitable disgorgement for this claim.  *See* Dkt. 750 at 8–10.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                    10                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1   equitable and therefore there is no right to a jury trial under the Seventh

2   Amendment).  Again, Counterclaimants agree; in the Final Pretrial Conference

3   Order, they identified the only monetary remedy that they seek for misappropriation

4   of likeness as "*equitable* disgorgement."  Dkt. 924 at 20 (emphasis added).[2]

5       **3.      The Punitive Award, Based On The Disgorgement Award, Was**

6           **Equitable.**

7       Whether punitive damages based solely on a claim seeking equitable

8   disgorgement are available (and, if so, how much) is an equitable question.

9   Recently, the Ninth Circuit addressed this issue in *Proofpoint, Inc. v. Vade USA,*

10  *Inc.*, Nos. 23-16085 and 23-16175, 2024 WL 4003096, at *1 (9th Cir. Aug. 30,

11  2024).[3]  In *Proofpoint*, the Ninth Circuit affirmed the district court's denial of the

12  plaintiffs' request for a jury trial on exemplary damages in a trade secret

13  misappropriation case, concluding that the Seventh Amendment right to a jury trial

14  did not extend to exemplary damages where the sole relief awarded was

15  "disgorgement of the defendant's profits."  *Id.*  In support of this position, the Ninth

16  Circuit cited *Liu*, 591 U.S. at 80, where the Supreme Court "confirm[ed] that a

17  remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been

18  a mainstay of equity courts."

19      The Ninth Circuit's opinion in *Proofpoint* was correct.  Not all punitive

20  damages are legal remedies for the jury to decide just because they are monetary.

21  *See Curtis v. Loether*, 415 U.S. 189, 196 (1974) (refusing to hold "that any award of

22  monetary relief must necessarily be 'legal' relief").  The Seventh Amendment

23  preserves the right to jury trial if it "existed under the English common law when

---

[2] MGA is unaware of any published decision specifically addressing whether the disgorgement remedy under California Civil Code § 3344 is equitable.  But the Court disposed of Counterclaimants' section 3344 claim at summary judgment. Dkt. 326 at 26.

[3] Although unpublished, *Proofpoint* is instructive and most indicative of how the Ninth Circuit is likely to rule on this issue today.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                    11                    Case No. 2:20-cv-11548-JVS-AGR
                                                    COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                    BRIEF RE: EQUITABLE ISSUES

1    the [Seventh] Amendment was adopted." *Markman v. Westview Instruments, Inc.*,

2    517 U.S. 370, 376 (1996) (citation omitted).  And as the Ninth Circuit held, "actions

3    for disgorgement of improper profits are equitable in nature" and were not

4    "traditionally tried to a jury" in actions at law.  *Fifty-Six Hope*, 778 F.3d at 1075;

5    *see Tex. Advanced*, 895 F.3d at 1325-26.  Accordingly, any punitive award based on

6    an equitable disgorgement award is equitable.

7    **III.    THE COURT SHOULD NOT AWARD DISGORGEMENT UNDER**

8    **THE LANHAM ACT**

9        The Lanham Act provides for disgorgement of profits as a remedy, but only

10    to the extent the profits are attributable to the infringement and "***subject to*** the

11    principles of equity."  15 U.S.C. § 1117(a) (emphasis added).  Counterclaimants are

12    foreclosed from disgorging MGA's profits here because (1) MGA did not willfully

13    infringe; (2) equitable considerations do not weigh in favor of disgorgement; and

14    (3) none of MGA's profits were attributable to the infringement.[4]

15        **A.    MGA Did Not Willfully Infringe Counterclaimants' Trade Dress.**

16        Although willfulness is no longer required for an award of disgorgement

17    of the defendant's profits, "a trademark defendant's mental state is a highly

18    important consideration in determining whether an award of profits is

19    appropriate," consistent with the "principle long reflected in equity practice."

20    *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

21        Thus, disgorgement generally remains an appropriate remedy only where

22    the defendant engaged in intentional wrongdoing.  *See Airhawk Int'l v. Ontel*

23    *Prods. Corp.*, No. 18-cv-00073-MMA-AGS, 2020 WL 2306440, at *5 (S.D.

24    Cal. May 8, 2020).  Accordingly, a court in this District has ruled that, because

25    ───────────────

26    [4] Nor can Counterclaimants seek to treble MGA's profits, as § 1117(a) only allows
    for trebling of "damages sustained by the plaintiff," as opposed to disgorgement of

27    "defendant's profits."  *See Aoki v. Gilbert*, No.2:11-cv-02797-TLN-CKD, 2020 WL
    6741693, at *31 (E.D. Cal. Nov. 17, 2020) ("Treble damages are not appropriate on

28    Defendants' profits, as distinguished from Plaintiffs' damages.").

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                    12                    Case No. 2:20-cv-11548-JVS-AGR
                                        COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                        BRIEF RE: EQUITABLE ISSUES

1   defendants were "at worst negligent, not willful," their "mental state here does

2   not favor disgorgement." *Harbor Breeze Corp. v. Newport Landing*

3   *Sportfishing, Inc.*, No. SACV 17-01613-CJC (DFMx), 2023 WL 2652855, at *5

4   (C.D. Cal. March 13, 2023).  Given that "an award of profits under the Lanham

5   Act is truly an extraordinary remedy and should be tightly cabined by principles

6   of equity," the court concluded that "[a]ll this cautions towards declining to

7   disgorge profits absent a more culpable state," and the court noted that "several

8   other courts have suggested" the same. *Id*. at *6 (quoting *W. Diversified Servs.,*

9   *Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005)).

10      At summary judgment, the Court found that Counterclaimants failed to even

11   raise a question of fact regarding MGA's willfulness.  Dkt. 326 at 32.  The Court

12   did not reject the disgorgement remedy at the time only because "the question of

13   willfulness [was] at issue in Counterclaimants' motion for sanctions for spoliation

14   of evidence." *Id.*; *see* Dkt. 755 at 17-18.  Subsequently, that spoliation motion was

15   denied (Dkt. 503), and no legitimate spoliation issues were raised at trial.  *See* Dkt.

16   977 at 1-2 (addressing Counterclaimants' failure to timely raise discovery issues

17   and indicating that purportedly "missing" emails from Mr. Shir-Ami Thompson

18   were, in fact, produced).  While the jury found willfulness, that finding was

19   necessarily advisory and is not entitled to any deference, and there was no finding

20   related to spoliation.

21      Nor should the Court conclude, based on the evidence at trial, that MGA

22   willfully infringed.  *See Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW (JEMx),

23   2023 WL 7089922, at *11 n.9 (C.D. Cal. Oct. 25, 2023) (noting that the district

24   court may consider the issue of willfulness in determining whether disgorgement

25   was appropriate).  Counterclaimants presented no evidence that MGA knowingly

26   and intentionally infringed their trade dress, or acted with indifference, reckless

27   disregard, or willful blindness.

28      Counterclaimants argued during their closing argument that MGA "knew

Umberg Zipser llp
Attorneys At Law
Irvine

{277920.8}                              13                    Case No. 2:20-cv-11548-JVS-AGR
                                                            COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                            BRIEF RE: EQUITABLE ISSUES

about the OMG Girlz . . . [and] didn't take any steps to avoid brand confusion." Trial Tr. ("TT") 9/20/24 AM at 142:23-25.  But "district courts in this Circuit have concluded that the failure to stop using a mark even after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith." *Reserve Media, Inc. v. Efficient Frontiers, Inc.*, No. CV 15-05072 DDP (AGRx), 2017 WL 123420, *10 (C.D. Cal. Jan. 11, 2017) (internal quotation marks omitted).

Moreover, "[i]nfringement is not willful if the party reasonably believes its usage of a trademark is not barred by law." *San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015).  Here, MGA had such a belief—it even went so far as to initiate a declaratory judgment lawsuit to proactively and transparently establish the respective parties' rights.[5]  And the fact that the prior jury concluded that MGA was ***not*** infringing Counterclaimants' trade dress confirms that MGA's belief was, at the very least, reasonable.

Accordingly, the Court should find that Counterclaimants are not entitled to any disgorgement remedy under the Lanham Act.

**B.    Equitable Considerations Do Not Support Disgorgement.**

"An award of profits 'is not automatic' upon a finding of infringement." *Fifty-Six Hope*, 778 F.3d at 1073 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993)).  Instead, disgorgement of profits is "subject to the principles of equity," 15 U.S.C. § 1117(a), including (1) a defendant's mental state, such as whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting the plaintiff's rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of "palming off." *Harbor Breeze*, 2023 WL 2652855, at *4 (citing *Kars 4*

---

[5] Pending appeal, MGA has ceased all direct sales of the dolls found by the jury to infringe the OMG Girlz's trade dress or misappropriate their likeness.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                    14                    Case No. 2:20-cv-11548-JVS-AGR
                                                                        COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                        BRIEF RE: EQUITABLE ISSUES

1   *Kids Inc. v. America Can!*, 8 F.4th 209, 223 (3d Cir. 2021)).  Based on these

2   factors, disgorgement should not be awarded.

3       First, as explained above, MGA's mental state does not support

4   disgorgement.  *See id.* ("Willfulness is more culpable than negligence; the former

5   generally supports disgorging ill-gotten gains, while the latter generally does not.").

6       Second, Counterclaimants did not have any sales diverted to MGA.  *See*

7   *Maier Brewing Co. v. Fleischman Distilling Corp.*, 390 F.2d 117, 121 (9th Cir.

8   1968).  Indeed, the parties are not competitors.

9       Third, the "adequacy of other remedies" factor is neutral.  Injunctive relief is

10   not appropriate here because Counterclaimants are not being harmed by MGA's

11   actions and, further, such relief would be infeasible due to the amorphous and

12   shifting nature of Counterclaimants' trade dress.  *See* Dkt. 988 at 27.

13       Fourth, the "unreasonable delay" and "palming off" factors do not support

14   disgorgement.  It was MGA, not Counterclaimants, that first requested court

15   involvement.  And MGA is not "palming off," or "passing off," its dolls under

16   Counterclaimants' name or mark.  *See Harbor Breeze*, 2023 WL 2652855, at *8.

17       Finally, the public interest in making infringement unprofitable would not be

18   strengthened here.  "This case does not involve willful misconduct, when the need

19   to deter misconduct is at its apex."  *Id.*  Indeed, compelling disgorgement under the

20   instant circumstances—where MGA's conduct is merely negligent, at worst—

21   would have a chilling effect on creativity and innovation in the fashion doll space

22   and the toy industry at large.  Thus, this factor "only marginally favors

23   [Counterclaimants]—if at all."  *See id.*

24       Considering these factors, the Court should find that the weight of the

25   equities does not favor disgorgement.

26   **C.**    **None Of MGA's Profits Are Attributable To The Infringement.**

27       To the extent this Court considers a disgorgement award, despite the weight

28   of the equities, Counterclaimants are only entitled to those profits that are

Umberg Zipser llp
Attorneys At Law
Irvine

{277920.8}      15      Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1  "attributable to the infringement," if any.  *See Globefill Inc. v. Elements Spirits,*

2  *Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) (citing 15 U.S.C. § 1117(a)).  *See also*

3  Dkt. 1013 at 26 (Court's Instruction No. 20); *Maier Brewing*, 390 F.2d at 124 ("The

4  plaintiff of course is not entitled to profits demonstrably not attributable to the

5  unlawful use of his mark."); *Orgain, Inc. v. Iovate Health Scis. Int'l, Inc.*, No. 8:18-

6  CV-01253-JLS-ADS, 2024 WL 2278194, at *1 (C.D. Cal. Apr. 17, 2024) ("[A]

7  court may disgorge only those profits with a nexus to the defendant's

8  infringement.").

9       In response to Counterclaimants' request, the jury made an advisory finding

10  of a disgorgement award of $17,872,253.  This is the exact ***total*** profits on the seven

11  dolls that Counterclaimants "focused on."  *See* TT 9/12/24 AM at 29:21-24; TT

12  9/20/24 AM at 139:18-20.  Disgorgement of every dollar of MGA's profits would

13  mean that every single person who bought MGA's dolls did so because they

14  believed the dolls reflected the OMG Girlz's "unique" trade dress and were

15  confused as to the source of the dolls.  This defies logic, common sense, and the

16  evidence presented at trial.  Indeed, the advisory profit award was clearly excessive

17  and, under 15 U.S.C. § 1117(a), should be reduced when this Court reviews the

18  record anew.

19       MGA's damages expert, Dr. Mangum, testified that "no portion of [MGA's]

20  profits can be attributable to the alleged likeness or trade dress related to the OMG

21  Girlz."  TT 9/19/24 PM at 111:13-16.  To reach his conclusion, Dr. Mangum

22  compared the revenue generated by the 32 dolls that remained accused at the outset

23  of trial with the revenue generated by the dolls that the Court determined did not

24  infringe at summary judgment.  *Id.* at 103:22-104:18.

25       To account for variables such as when the dolls were released, he reviewed

26  how dolls within the same "series"—and therefore dolls that were launched

27  together—performed in the marketplace.  *Id.*  Dr. Magnum testified that a

28  commercial benefit, if it existed, would be discernable for any doll that bore

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                           16                    Case No. 2:20-cv-11548-JVS-AGR
                                                           COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                           BRIEF RE: EQUITABLE ISSUES

1    Counterclaimants' alleged trade dress and likeness, regardless of whether

2    Counterclaimants sought damages on them.  *Id.* at 105:3-11.  Indeed, the fact that

3    Counterclaimants opted not to seek damages on 25 of the 32 dolls is of no

4    moment—Counterclaimants still contended throughout the trial that all 32 dolls

5    included their trade dress and likeness, *see, e.g.*, TT 9/20/24 AM at 145:22-146:2,

6    and thus those dolls would have enjoyed the commercial benefit of the

7    infringement, if any such benefit existed.

8         Dr. Mangum saw ***no*** increase in revenue for the dolls that supposedly

9    included the OMG Girlz's trade dress or likeness.  In other words, there was no

10   commercial benefit for selling dolls that bore the alleged trade dress or likeness.  TT

11   9/19/24 PM at 110:3-22.  Dr. Mangum thus concluded that factors ***other than*** the

12   alleged infringement were driving the sales of the accused dolls, including the

13   popularity of the preexisting L.O.L. Surprise! line, the concept of the little sisters,

14   or the unboxing experience.  *Id.*

15        Dr. Mangum's conclusion is consistent with MGA's survey evidence.

16   MGA's expert, Dr. Isaacson, conducted two separate surveys: A likelihood of

17   confusion survey and a likeness survey.  TT 9/18/24 AM at 95:19-96:8.

18   Dr. Isaacson's likelihood of confusion survey, which had more than 1500

19   participants, resulted in ***zero percent*** confusion—*i.e.*, not a single participant

20   associated the dolls with the OMG Girlz.  *Id.* at 131:1-7.  Dr. Isaacson's likeness

21   survey, which had almost 1300 participants, had similar results.  TT 9/18/24 PM at

22   17:20-18:9.  ***Zero*** people identified any of the dolls in the survey as looking like

23   any of the OMG Girlz.  *Id.* at 13:3-14:2.

24        Dr. Isaacson concluded that, based on the surveys he conducted, (i)

25   consumers are not likely to believe that the dolls are affiliated with the OMG Girlz

26   and are not likely to believe the dolls look like the OMG Girlz; (ii) the OMG Girlz

27   are not well-known; or (iii) both are true.  *Id*. at 6:23-7:20, 17:4-18:9.  Either way—

28   if people are not confused or are not aware of the OMG Girlz—people did not

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                17                    Case No. 2:20-cv-11548-JVS-AGR
                                                          COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                          BRIEF RE: EQUITABLE ISSUES

1  purchase MGA's dolls based on the infringement found by the jury.

2      Trial testimony was consistent with the conclusions reached by MGA's

3  experts.  Ms. Brenner, who marketed the dolls, testified that based on her

4  experience and internal marketing reports, customers were interested in the dolls for

5  a myriad of reasons completely unrelated to the OMG Girlz.  For example, children

6  loved the Tots or the L.O.L. Surprise! brand; they liked the long, brushable hair;

7  and/or they believed the dolls resembled themselves.  TT 9/13/14 AM at 41:3-6,

8  46:4-25.  Customers also liked the unboxing experience, dressing the dolls, and

9  styling their hair—none of which relate to the dolls' appearance.  *Id.* at 47:17-

10  48:22.

11      To the extent Counterclaimants rely on anecdotes from friends and family, or

12  online comments from fans that were directly solicited by Counterclaimants, such

13  evidence should be given very little weight.  All come from biased sources and do

14  not represent the consuming public.  While MGA maintains that all social media

15  comments are inadmissible and should have been excluded (*see* Dkts. 939, 968),

16  those comments cannot establish that MGA's profits were attributable to the OMG

17  Girlz's trade dress.  *See JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d

18  1098, 1111 (9th Cir. 2016) ("Evidence from such 'partial source[s] possesses very

19  limited probative value.'") (quoting *Filipino Yellow Pages, Inc. v. Asian Journal*

20  *Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999)).

21      Given that MGA's profits are "demonstrably not attributable" to the

22  infringement, the Court should not award any disgorgement.  *See Maier Brewing*,

23  390 F.2d at 124.

24  **IV.    ALTERNATIVELY, THE COURT SHOULD DISGORGE NO MORE**

25      **THAN 10-15% OF MGA'S PROFITS**

26      To the extent the Court determines that disgorgement is available under the

27  Lanham Act, and further determines that at least some portion of the profits from

28  the dolls is attributable to the infringement found by the jury, the amount of MGA's

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}

18

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

profits should first account for deductible fixed overhead costs, and the disgorgement award should be no greater than 10-15% of those profits.

### A.    MGA's Profits Should Account For Fixed Overhead Costs.

The parties' experts disagreed on the amount of MGA's profits because they disagreed on whether fixed overhead costs should be deducted from gross revenue. TT 9/19/24 PM at 99:7-10.  The fixed overhead costs capture things like the salaries of the designers and the facilities and equipment to make the dolls.  *Id*. at 86:15-88:23.  These costs were "of actual assistance" (and, in fact, were absolutely necessary) to produce, distribute, and sell the dolls.  *See Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984).  As such, the fixed overhead costs should be deducted from gross revenue.  *See id.*; *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (fixed costs may be deducted where they "actually contributed to the infringing product").  After deducting such overhead, Dr. Mangum calculated MGA's profits on the seven dolls to be $9,180,227.  TT 9/19/24 PM at 96:10-12.

### B.    At Most, 10% Of MGA's Profits May Be Attributable To The Infringement Based On Dr. Mangum's Comparative Analysis.

To determine how much of MGA's profits from the dolls were attributable to the infringement that was found by the jury, the Court should consider Dr. Mangum's analysis—explained above—comparing revenue for the dolls that remained in this case after summary judgment, versus revenue for the dolls that were found not to infringe.  That comparative analysis demonstrates that ***none*** of MGA's profits on the dolls were attributable to the infringement.

At trial, Counterclaimants criticized Dr. Mangum's comparative analysis because that analysis did not include the dolls from the four-pack Remix Surprise, which was the "second highest selling L.O.L. Surprise! O.M.G. product."  *Id.* at 124:7-23.  But it would not have been possible for Dr. Mangum to have included those dolls in his analysis because all four dolls in that series were accused and,

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                    19                    Case No. 2:20-cv-11548-JVS-AGR
                                                         COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                         BRIEF RE: EQUITABLE ISSUES

thus, there were no non-infringing dolls in that series to make a comparison. Now that the jury has found that two of the four dolls in the Remix Surprise are infringing (Metal Chick and Bhad Gurl), and the other two are non-infringing (Ferocious and Fame Queen), it is possible to compare the relative sales of those four dolls when they were sold individually.

As set forth in the schedule that Counterclaimants' expert Mr. Tregillis relied on, the total revenue of Metal Chick and Bhad Gurl, when sold outside of the four-pack, was $3,464,558, whereas the total revenue of Ferocious and Fame Queen, when sold outside of the four-pack, was $3,138,165. Finkelstein Decl., Ex. A (highlighting added). Thus, Metal Chick and Bhad Gurl outperformed Ferocious and Fame Queen by about 10% when the dolls were sold separately. To the extent the Court believes that it would be equitable to apply this 10% difference to the entire L.O.L. Surprise! O.M.G. line (even though a broader application shows there was no revenue benefit with the infringing dolls), then the Court should award Counterclaimants no more than $918,023 (10% of $9,180,227), based on the jury's finding of trade dress infringement.

### C.     At Most, 15% Of MGA's Profits Are Attributable To The "Style" Of The Dolls.

Prior to this lawsuit, MGA performed several internal studies. *See* Tr. Exs. 1090, 1091, 5018. Those studies demonstrated that the vast majority of people surveyed were interested in purchasing the dolls for things completely unrelated to the visual "style" of the dolls, including the unboxing and element of surprise, doll size, and the value of overall L.O.L. Surprise! brand. Only about 15% of people were interested in the dolls based on the "style," which broadly included aspects such as accessories, clothes, and fashion. *See* Tr. Ex. 1090 at 74; Tr. Ex. 1091 at 15; Tr. Ex. 5018 at 19. Given that these "style" attributes are over-inclusive—in other words, not necessarily tied to the components of the OMG Girlz's claimed trade dress—the 15% allocation represents a maximum amount that could possibly

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                           20                    Case No. 2:20-cv-11548-JVS-AGR
                                                                          COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                          BRIEF RE: EQUITABLE ISSUES

1  be attributable to the OMG Girlz's trade dress.

2       If the Court believes it appropriate to disgorge all of MGA's profits

3  attributable to the "style" of the dolls, then the Court should award

4  Counterclaimants no more than $1,377,034 (15% of $9,180,227) based on the jury's

5  finding of trade dress infringement.

6  **V.**    **THE COURT SHOULD NOT AWARD DISGORGEMENT FOR**

7      **COMMON LAW MISAPPROPRIATION**

8      **A.**    **Disgorgement Is Not A Proper Remedy For Common Law**

9          **Misappropriation.**

10       While acknowledging the Court has previously rejected MGA's position,

11  MGA maintains that disgorgement is unavailable for a common law

12  misappropriation claim. *See, e.g.*, Dkt. 698 at 121-22; Dkt. 750 at 8-10; Dkt. 755 at

13  19-20; Dkt. 988 at 13.

14       The legislative history of California Civil Code § 3344 (statutory

15  misappropriation) reveals that there is a distinction between the remedies available

16  for statutory versus common law misappropriation claims. The original section

17  3344(g) provided that the "remedies provided for [under section 3344] are

18  cumulative and shall be in addition to any others provided for by law." Cal. Civ.

19  Code § 3344(g) (1971 ed.). In 1984, the California legislature amended section

20  3344 and modified section 3344(a) to "allow[] a plaintiff to recover punitive

21  damages and the defendant's disgorged profits[.]" *Miller v. Collectors Universe,*

22  *Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (discussing legislative history). This

23  amendment would not have been necessary if disgorgement damages (or punitive

24  damages, as addressed below) were already available for the common law claim.

25       MGA is unaware of any case that has allowed for disgorgement of profits

26  based on the common law claim alone and Counterclaimants have not cited one.

27  The Court should decline to permit such an award here.

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}       21       Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

**B.**    **Even If Disgorgement Were Available For Common Law Misappropriation, It Cannot Be Awarded Without Proof Of Harm.**

Counterclaimants had the burden to establish a "resulting injury" springing from any purported misappropriation.  Dkt. 326 at 25 (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)); *see also* Dkt. 764 at 25 (Jury Instruction No. 19 stating Counterclaimants must show they were "harmed").  Counterclaimants failed to show they were harmed at trial, and were barred from trying to make such a showing due to their discovery conduct.  *See* Dkts. 502, 521.

Moreover, MGA's profits cannot, as a matter of law, be used as a substitute for Counterclaimants' "harm."  Counterclaimants admitted as much in the Final Pretrial Conference Order where they rightly acknowledged that "[d]amages for the infringement of the right of publicity are based upon the commercial injury to the claimant," and suggested such damages could be "the market value of the nonpermitted use" or "loss of future potential earnings in his or her career or other licensing opportunities based on lost reputation."  Dkt. 924 at 19; *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1103-04 (9th Cir. 1992) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Without any showing of harm from the misappropriation, Counterclaimants are not entitled to any disgorgement on that claim.

**C.**    **To the Extent The Court Finds Some Disgorgement Is Warranted, The Amount Must Be Attributable To The Misappropriation.**

Similar to the Lanham Act, any disgorgement award for a misappropriation claim must be limited to the amount that is attributable to the unauthorized use of the OMG Girlz's likeness.  *See* Dkt. 1013 at 29 (Court's Instruction No. 22); *Olive v. Gen. Nutrition Centers, Inc.*, 30 Cal. App. 5th 804, 813-16 (2018) (stating that

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                22                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

the statutory misappropriation claim and corresponding CACI No. 1821 entitle the injured party to collect profits that are attributable to the unauthorized use of their likeness).

Here, the amount of profits attributable to the misappropriation of likeness is necessarily equal to any attribution found for the trade dress infringement. As demonstrated at trial, the same set of facts underlie both Counterclaimants' trade dress and common law misappropriation claims, and Counterclaimants made no attempt to separate the two claims for purposes of disgorgement or otherwise. Thus, for the same reasons discussed in Section III, *supra*, the Court should award ***zero*** for this claim but, in any event, no more than 10-15% of MGA's profits.

Because Counterclaimants seek the same equitable disgorgement relief for both of their claims, if the Court decides to award any disgorgement remedies, then the Court should also require Counterclaimants to elect their remedies before a final judgment is entered. *See B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC*, No. CV 20-03857 TJH (SPX), 2023 WL 11835516, at *2 (C.D. Cal. July 20, 2023)) (citing *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016)) ("[I]f a party prevails on two claims that each provide for recovery for the same harm, that party must, then, elect its remedy based on one of the prevailing claims.").

## VI.    PUNITIVE DAMAGES ARE HIGHLY IMPROPER

### A.    Punitive Damages Are Unavailable For A Common Law Misappropriation Claim.[6]

MGA maintains that punitive damages are not available for a common law misappropriation claim as a matter of law for the same reasons that disgorgement damages are unavailable for a common law misappropriation claim, *supra* Section

---

[6] There is no basis for a punitive damage award for a trade dress claim under 15 U.S.C. § 1117(a). *See La Quinta Corp. v. Heartland Properties LLC,* 603 F.3d 327, 342 (6th Cir. 2010) ("[T]he Lanham Act expressly prohibits levying damages that may be classified as a 'penalty.'") (collecting cases).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                        23                    Case No. 2:20-cv-11548-JVS-AGR
                                                                        COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                        BRIEF RE: EQUITABLE ISSUES

1    V.A.  *See, e.g.*, Dkt. 977 at 2-3.  While California Civil Code § 3344 explicitly
2    provides that "[p]unitive damages may also be awarded to the injured party or
3    parties," Counterclaimants cannot take advantage of that statutory language because
4    MGA prevailed on Counterclaimants' section 3344 claim at summary judgment.
5    Dkt. 326 at 26.

6         The only case Counterclaimants have ever cited to support their position that
7    punitive damages are available for a common law misappropriation claim is
8    *Eastwood v. Sera Labs, Inc.*, No. 2:20-cv-06503-RJK (JDEx), 2021 WL 4439221,
9    at *6 (C.D. Cal. June 23, 2021).  *See* Dkt. 972 at 6.  The *Eastwood* court was
10   considering a default judgment and mentions, without any analysis, that "[b]oth
11   California Civil Code § 3344 and common law right of publicity allow for an award
12   of punitive damages."  2021 WL 4439221, at *6.  Significantly, the court cites only
13   to section 3344 (and no California case law) in support of that position.  MGA is
14   not aware of another case that stands for this proposition, and one sentence from a
15   single nonbinding district court case reviewing a motion for default judgment is
16   insufficient to establish that punitive damages is a proper remedy for common law
17   misappropriation in light of the legislative history of section 3344 explained above,
18   *supra* Section V.A.

19        **B.    Punitive Damages Are Unavailable Where There Are No**
20             **Compensatory Damages.**

21        Even if the Court finds that punitive damages are a *potential* remedy for a
22   common law misappropriation claim, punitive damages should be barred here under
23   the Due Process Clause.  Counterclaimants sought only disgorgement rather than
24   any compensatory damages based on harm suffered.  In fact, as explained above,
25   Counterclaimants failed to disclose any other damage theories during this case and
26   were barred from presenting any theory of recovery beyond disgorgement of
27   MGA's profits at trial.  Dkt. 502, 521.  Under these circumstances, there can be no
28   punitive damage award.  *See Sherman-Bey v. Marshall*, No. CV 09-06494 JGB

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                               24                        Case No. 2:20-cv-11548-JVS-AGR
                                                            COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                   BRIEF RE: EQUITABLE ISSUES

1   (RZ), 2014 WL 3557202, at *3 (C.D. Cal. Mar. 14, 2014) ("[P]unitive damages are

2   unavailable unless (1) the plaintiff also wins compensatory or nominal damages or

3   (2) a statute authorizes a standalone award punitive damages."), *report and*

4   *recommendation adopted*, No. CV 09-06494 JGB (RZ), 2014 WL 3557237 (C.D.

5   Cal. July 16, 2014); *Epic Systems Corp. v. Tata Consultancy Services, Ltd.*, 980

6   F.3d 1117, 1143 (7th Cir. 2020) (where the only amount of "harm" was based on a

7   benefit to the defendant, and not because of any harm suffered by the plaintiff,

8   satisfying due process for a punitive award would "pose a challenging task").

9        This makes sense. Punitive damages "must bear a reasonable relationship

10  and be proportionate to the ***actual harm*** suffered by the plaintiff (i.e., compensatory

11  damages)." *Bardis v. Oates*, 119 Cal. App. 4th 1, 17 (2004) (emphasis added).

12  Thus, California law is "well-established and quite clear" that where the jury finds

13  zero compensatory damages, the general rule precludes punitive damages.

14  *California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (reversing portion

15  of verdict awarding $700 million in punitive damages because jury found "$0" in

16  compensatory or nominal damages); *see also State Farm Mut. Auto. Ins. Co. v.*

17  *Campbell*, 538 U.S. 408, 426 (2003) (award must be "both reasonable and

18  proportionate to the amount of harm to the plaintiff and to the general damages

19  recovered"); *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 955 (C.D. Cal.

20  2011) ("[T]the California Supreme Court has made clear that compensatory

21  damages and exemplary damages should share a direct relationship, such that a low

22  compensatory award in a trade secret misappropriation case cannot trigger the

23  'maximum possible amount in exemplary damages.'") (internal citations omitted).

24       Here, there were ***no*** compensatory damages for actual harm sought or

25  awarded. The Court should therefore find that punitive damages are unavailable.

26       **C.    Regardless, MGA Did Not Act With Any Oppression, Fraud, Or**

27            **Malice That Could Support A Punitive Award.**

28       Even if the Court were to find that punitive damages are available for

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                          25                    Case No. 2:20-cv-11548-JVS-AGR
                                                              COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                    BRIEF RE: EQUITABLE ISSUES

1    common law misappropriation (which it should not), and even if the Court were to

2    find that punitive damages are available when there is no compensatory damage

3    award (which it should not), California law restricts a punitive recovery to cases

4    where it is proven by "clear and convincing evidence that the defendant has been

5    guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).

6        Counterclaimants advanced several theories at trial, none of which show

7    anything rising to the level of oppression, fraud, or malice.  First, Counterclaimants

8    argued that punitive damages were warranted because the color-changing Tots

9    (which featured "caution tape" among other things) demonstrated disregard for the

10   health or safety of others.  TT 9/23/24 at 30:5-11.  Counterclaimants also insinuated

11   that MGA's witnesses were being dishonest when they testified that certain Tots

12   were not meant to be representations of celebrities like Audrey Hepburn or Michael

13   Jackson.  *Id*. at 31:1-4.  But the Tots were never accused and are unrelated to the

14   misappropriation of likeness claim.  Thus, conduct related to the Tots may not

15   justify punitive damages.  *See State Farm*, 538 U.S. at 422 ("A defendant's

16   dissimilar acts, independent from the acts upon which liability was premised, may

17   not serve as the basis for punitive damages.").

18       Second, Counterclaimants argued that MGA "thought [the OMG Girlz] were

19   weak and could take advantage of them," (TT 9/23/24 at 30:19-20) but

20   Counterclaimants do not claim to be financially vulnerable.  In fact,

21   Counterclaimants testified that they enjoyed financial success and benefited from

22   the various opportunities provided by their celebrity status.  *See* TT 9/4/24 AM at

23   33:14-19 (OMG Girlz "made quite a bit of money" and were "able to take care of

24   themselves"); *id.* 34:19-37:13 (Ms. Harris describing her success as a songwriter

25   and member of Xscape); TT 9/6/24 PM at 67:6-9 (Mr. Harris stating, "Well, I

26   already got money. . . I don't need, you know, to be here.").

27       Third, to the extent Counterclaimants established that MGA copied from

28   artists ***other than*** the OMG Girlz (which MGA did not), that is of no moment.  TT

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                      26                    Case No. 2:20-cv-11548-JVS-AGR
                                                                      COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                                      BRIEF RE: EQUITABLE ISSUES

1   9/23/24 at 30:21-25.  An award to punish MGA for alleged injury inflicted upon

2   nonparties violates the Constitution's Due Process Clause.  *See Philip Morris USA*

3   *v. Williams*, 549 U.S. 346, 353 (2007).

4         Finally, Counterclaimants' unfounded suspicions of nefarious motives and

5   nonexistent evidence hardly rise to the level of fraud, let alone by clear and

6   convincing evidence.  *See Adams v. Murakami*, 54 Cal. 3d 105, 114 (1991) ("Sound

7   public policy should preclude awards based on mere speculation. . . . There is no

8   reason for a different standard for punitive damages.").  Counterclaimants argue

9   that MGA "acted with trickery or deceit" because Ms. Consorti testified that she

10  "remember[ed] specifically five years ago [she] never clicked on" a link to an OMG

11  Girlz song in an email she received.  TT 9/23/24 at 31:1-6.  But Ms. Consorti

12  explained that she remembered this detail because she received the email on New

13  Year's Eve when she was getting ready for a party her sister was hosting.  *See* TT

14  9/10/24 PM at 44:16-45:17.  In fact, this Court previously discounted the relevance

15  of this entire situation, ruling that MGA's email exchange discussing the song lyric

16  did not even "create a dispute of fact" as to willfulness.[7]  Dkt. 326 at 32.  Similarly,

17  vague and speculative claims of MGA's "missing documents" like the 'Shir-Ami

18  Thompson e-mail" (TT 9/20/24 AM at 143:22-144:3), including those that MGA

19  specifically identified in production (*see* Dkt. 977), cannot support punitive

20  damages.

21        None of these arguments can be the proper basis for a finding of oppression,

22  fraud, or malice.

23        **D.   Any Punitive Damage Award Must Comply With Due Process**

24              **Requirements.**

25        If the Court finds it appropriate to award punitive damages, the staggering

26  advisory amount returned by the jury exceeds constitutional limits; any award must

27  _____

28  [7] The Court also found that the song did not show "that the OMG Girlz had an influence on the design."  Dkt. 326 at 32.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                                27                Case No. 2:20-cv-11548-JVS-AGR
                                                            COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                            BRIEF RE: EQUITABLE ISSUES

be *de minimis*.  "[P]unitive damages are not designed to be a form of supercompensation for plaintiffs."  *In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014); *see Philip Morris*, 549 U.S. at 353 (forbidding "grossly excessive" punitive awards).

Courts consider three guideposts set forth by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996), for assessing whether an award comports with due process:

(1)    the degree of reprehensibility of the defendant's misconduct;

(2)    the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and

(3)    the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005).

Reprehensibility is the "weightiest factor."  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972 (9th Cir. 2021).  To assess reprehensibility, courts consider whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.  *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 900 (9th Cir. 2022) (citing *State Farm*, 538 U.S. at 419).

As explained above, Counterclaimants presented no evidence of reprehensibility on MGA's part, and the disparity between the harm suffered by Counterclaimants (which was zero) and the punitive award was extreme.  *See Altus Fin.*, 540 F.3d at 1001.  The first two *Gore* factors thus heavily weigh against the high punitive award.

As to the third *Gore* factor, California Civil Code § 3344, which is analogous

Umberg Zipser LLP
Attorneys At Law
Irvine

{277920.8}                           28                    Case No. 2:20-cv-11548-JVS-AGR
                                                            COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                            BRIEF RE: EQUITABLE ISSUES

1  to the common law misappropriation claim, provides a statutory penalty of $750 (or

2  actual damages) where there is a violation.  *See* Cal. Civ. Code § 3344(a).  There

3  are no civil penalties for trademark or trade dress infringement.  Accordingly, this

4  factor also requires that the jury's advisory punitive award be reduced substantially.

5        If there is any punitive award (which there should not be), the facts here

6  warrant rejecting the advisory punitive damages and instead awarding a *de minimis*

7  amount.  *See State Farm*, 538 U.S. at 426-29; *see also adidas Am., Inc. v. Payless*

8  *Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *16 (D. Or. Sept. 12,

9  2008) (reducing punitive damages below a 1:1 ratio where "there was no physical

10  harm or disregard for a person's health or safety, there were no lost sales, adidas

11  suffered no economic harm that jeopardized its business in any way, and, even

12  though Payless acted willfully, it did not do so for the entire period addressed

13  here").[8]

14  **VII.   CONCLUSION**

15        For the foregoing reasons, the Court should not award any disgorgement or

16  punitive damages to Counterclaimants.  To the extent the Court disagrees then, at

17  most, the Court should award ***no more than*** 10-15% of MGA's profits on the seven

18  dolls as disgorgement ($918,023 – $1,377,034), and no punitive damages.

19

20  Dated: October 29, 2024              UMBERG ZIPSER LLP

21

22

23                                      _____
                                        Mark A. Finkelstein
24                                      Attorneys for Plaintiff and Counter-
                                        Defendant MGA Entertainment, Inc., and
25                                      Counter-Defendant Isaac Larian

26  _____
    [8] If the Court believes the jury's punitive award was legal, and not equitable, the
27  jury's award was not supported by the evidence, was improper, and violated the
    Due Process Clause.  If necessary, MGA will raise that issue in a motion under
28  Rules 50 and 59 at the appropriate time.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}                              29                    Case No. 2:20-cv-11548-JVS-AGR
                                                             COUNTER-DEFENDANTS' OPENING POST-TRIAL
                                                             BRIEF RE: EQUITABLE ISSUES

1           **CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2**

2           The undersigned, counsel of record for MGA, certifies that this brief contains

3  6,998 words, which complies with the word limit of L.R. 11-6.1.

4

5  Dated: October 29, 2024           UMBERG ZIPSER LLP

6

7

8                                   Mark A. Finkelstein

9                                   Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and

10                                   Counter-Defendant Isaac Larian

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277920.8}

30

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' OPENING POST-TRIAL
BRIEF RE: EQUITABLE ISSUES