Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA  92614
Telephone: (949) 679-0052

Paul J. Loh (SBN 160541)
ploh@willenken.com
Jason H. Wilson (SBN 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(SBN 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (SBN 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive, <br><br> Defendants, <br><br> GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC, <br><br> Counter-Claimants, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive, <br><br> Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR <br> ASSIGNED TO: Hon. James V. Selna <br><br> **PLAINTIFF AND COUNTER-DEFENDANTS' OPPOSITION TO COUNTERCLAIMANTS' MOTION FOR AN ENHANCED AWARD UNDER THE LANHAM ACT** <br><br> Complaint Filed:  December 20, 2020 <br> Trial Date:   September 3, 2024 <br><br> Hearing Date:  January 6, 2025 <br> Hearing Time: 3:00 P.M. |

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277046.13}

Case No. 2:20-cv-11548-JVS-AGR

COUNTER-DEFENDANTS' OPPOSITION

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................. 5

II.  FACTUAL BACKGROUND .......................................................................... 6

III.  COUNTERCLAIMANTS' REQUEST FOR TREBLE "DAMAGES"
IS BOTH PREMATURE AND IMPROPER ................................................ 7

    A.  The Jury's Disgorgement Award Was Advisory, And Thus
There Is No Award To Enhance. ........................................................ 7

    B.  No Profits Were Attributable To The Infringement, And Thus
There Is No Award To Enhance. ........................................................ 7

    C.  At Most, 10-15% Of MGA's Profits May Be Attributable To
The Infringement Based On Dr. Mangum's Comparative
Analysis And Internal MGA Studies. ................................................ 9

    D.  The Lanham Act Does Not Permit Trebling Of MGA's Profits. ........ 9

IV.  TO THE EXTENT THIS COURT MODIFIES THE
DISGORGEMENT AWARD, IT SHOULD EXERCISE ITS
DISCRETION TO LOWER IT ................................................................... 13

    A.  MGA Did Not Willfully Infringe. ................................................... 13

    B.  Equitable Considerations Support A Reduction In Any Award. ...... 15

V.  IN NO EVENT SHOULD THE COURT *INCREASE* THE AWARD ........ 16

    A.  Enhancement Would Be Impermissibly Punitive. ........................... 16

    B.  Enhancement Is Unnecessary For Deterrence, Especially
Where MGA Did Not Act Willfully. ................................................ 19

    C.  Enhancement For Vague And Speculative "Uncompensated
Harm" Is Improper. .......................................................................... 21

        1.  *MGA Met Its Burden To Prove Deductible Costs.* ................ 22

        2.  *Counterclaimants Cannot Recover For Their Alleged
"Intangible Harm."* ............................................................... 23

    D.  Enhancement For "Intangible Benefits" To MGA Is Improper. ....... 25

VI.  CONCLUSION ........................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*ALPO Petfoods, Inc. v. Ralston Purina Co.*,
   913 F.2d 958 (D.C. Cir. 1990) ..................................................................... 19, 20

*Aoki v. Gilbert*,
   No. 2:11-cv-02797-TLN-CKD, 2020 WL 6741693
   (E.D. Cal. Nov. 17, 2020) ................................................................................. 11

*BASF Corp. v. Old World Trading Co.*,
   41 F.3d 1081 (7th Cir. 1994)............................................................................. 17

*Binder v. Disability Grp.*,
   772 F. Supp. 2d 1172 (2011)....................................................................... 20, 24

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
   No. 06-CV-01848-H (POR), 2009 WL 160235
   (S.D. Cal. Jan. 20, 2009) .................................................................................. 19

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
   728 F.3d 868 (9th Cir. 2013)............................................................................. 11

*Dorroh v. Deerbrook Ins. Co.*,
   612 F. App'x 424 (9th Cir. 2015) ..................................................................... 24

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
   778 F.3d 1059 (9th Cir. 2015) ......................................................... 6, 13, 14, 18

*Fuzzy Logic Prods., Inc. v. Trapflix, LLC*,
   No. CV 15-6203 PA (SSX), 2016 WL 3693738
   (C.D. Cal. July 11, 2016) .................................................................................. 12

*Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*,
   781 F.3d 710 (4th Cir. 2015)............................................................................. 10

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*,
   858 F.2d 103 (2d Cir. 1988)........................................................................ 20, 21

*Globefill Inc. v. Elements Spirits, Inc.*,
   756 F. App'x 764 (9th Cir. 2019) ....................................................................... 8

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  No. SACV 17-01613-CJC, 2023 WL 2652855
  (C.D. Cal. March 13, 2023) ................................................................ 15, 16, 21

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) ............................................................................ 24

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023) .......................................................................... 11

*JL Beverage Co., LLC v. Jim Bean Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ............................................................................ 9

*Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*,
  752 F.2d 1326 (9th Cir. 1984) .......................................................................... 23

*Kars 4 Kids Inc. v. Am. Can!*,
  8 F.4th 209 (3d Cir. 2021) .......................................................................... 15, 20

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
  390 F.2d 117 (9th Cir. 1968) ............................................................................ 15

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014) ................................................................ 20, 25, 26

*Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*,
  880 F. Supp. 1005 (S.D.N.Y. 1994) .................................................................. 21

*Murphy v. Allstate Ins. Co.*,
  17 Cal. 3d 937 (1976) ...................................................................................... 24

*New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*,
  920 F. Supp. 295 (N.D.N.Y. 1996) .............................................................. 25, 26

*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*,
  No. EDCV 10-01858 VAP(DTBx), 2012 WL 12893524
  (C.D. Cal. June 27, 2012) ................................................................................ 11

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
  488 B.R. 109 (C.D. Cal. 2012) ......................................................................... 12

*PepsiCo v. Triunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Cal. 1999) ..................................................................... 20

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
   No. SACV 19-1765 (JDEx), 2021 WL 6103527
   (C.D. Cal. Sept. 1, 2021) ...................................................................... 16

*Romag Fasteners, Inc v. Fossil, Inc.*,
   590 U.S. 212 (2020) ............................................................................. 13

*San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*,
   625 F. App'x 322 (9th Cir. 2015) ........................................................ 14

*SkyDive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ....................................................... *passim*

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   808 F. App'x 459 (9th Cir. 2020) ........................................................ 17

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v.*
   *Taco Cabana, Inc.*, 505 U.S. 763 (1992) ........................................... 20

*Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*,
   175 F.R.D. 658 (S.D. Cal. 1997) ........................................................ 12

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ......................................................... 16, 21

*Winterland Concessions Co. v. Fenton*,
   835 F. Supp. 529 (N.D. Cal. 1993) ..................................................... 23

*Yuga Labs, Inc. v. Ripps*,
   No. CV 22-4355-JFW(JEMX), 2023 WL 7089922
   (C.D. Cal. Oct. 25, 2023) .................................................................... 12

**Statute**

15 U.S.C. § 1117 ............................................................................. *passim*

## I.    **INTRODUCTION**

Counterclaimants ask this Court to treble the jury's advisory Lanham Act disgorgement award to more than $53 million (the "Motion"), even though Counterclaimants suffered ***no actual harm*** related to the alleged trade dress infringement.  Dkt. 1045.  This request is contrary to the statutory language of the Lanham Act and Ninth Circuit authority.  The Motion should be denied for at least the following reasons:

**First**, Counterclaimants' request for trebling is premature and improper—no award has been decided and none of MGA's profits are attributable to the infringement found by the jury.  Further, the request cannot be squared with the language of the Lanham Act.  Specifically, the Lanham Act's provision regarding trebling is limited to an award of "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a).  Here, Counterclaimants never sought, nor were awarded, any damages for their alleged harm.  Instead, they solely pursued a claim for equitable disgorgement.  *See* MGA's Opening Post-Trial Brief Regarding Equitable Issues ("Opening Brief"), Dkt. 1046 at 9-10.

**Second**, Counterclaimants' request for additional monetary relief (1) relies on theories that the Court has already excluded (including unfounded accusations of cultural appropriation and racism as well as damages for emotional distress), and (2) is contrary to numerous concessions that Counterclaimants have made regarding the number of dolls and amount of profits at issue.

**Third,** while the Court has discretion to adjust a disgorgement award upward or downward under section 1117(a), any final award should not be raised.  Counterclaimants' request for an enhancement of more than $35 million (on top of the $17.8 million advisory verdict) pursuant to the Court's equitable power to adjust any disgorgement award that the Court finds to be "either inadequate or excessive" violates the Lanham Act's requirement that any award "shall constitute compensation and ***not a penalty***."  15 U.S.C. § 1117(a) (emphasis added).  Indeed,

the Ninth Circuit has instructed courts to "tread lightly when deciding whether to award increased profits, because granting an increase could easily transfigure an otherwise-acceptable compensatory award into an impermissible punitive measure." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Based on all the equities, including the lack of willfulness on MGA's part, the Court should find against any enhancement.

## II.    **FACTUAL BACKGROUND**

MGA, a family-owned toy company founded by Mr. Larian, recognized the need for diversity in dolls and created the popular Bratz line over two decades ago to help represent children like Mr. Larian's own daughter.  Trial Tr. ("TT") 9/19/24 AM at 97:12-13, 99:4-10.  In 2016, MGA then launched a collectible series of toys called L.O.L. Surprise!, which comprised small three-inch "Tot" dolls and were sold in mystery capsules such that the purchaser did not know what specific Tot they were buying.  TT 9/11/24 AM at 41:18-42:20; TT 9/13/24 AM at 18:21-19:15, 20:14-25.  The collection was a huge success, quickly becoming a top-selling toy in the U.S. and winning many awards.  *Id.*; TT 9/19/24 AM at 102:5-103:1.  In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls, which continued to playfully use a texting acronym theme and also employed a mystery, "unboxing" concept.  TT 9/13/24 AM at 23:3-6, 25:2-26:1; TT 9/13/24 PM at 60:24-61:10.

On December 8, 2020, Counterclaimants sent a cease-and-desist letter to MGA, falsely accusing MGA of approaching them at an event back in 2010 about creating a line of dolls based on the OMG Girlz.  *See* TT 9/4/24 AM at 46:9-13, 94:2-17, 107:1-108:11.  The original counterclaims included a fraud claim, based on MGA's alleged "public announcement" that it "intended to release a line of dolls based on the OMG Girlz in collaboration with the OMG Parties."  Dkt. 13 ¶ 60.  At trial, however, Ms. Harris could not confirm that anyone from MGA actually spoke

with her about a possible doll line, or that anyone from MGA was even at the 2010 event.  TT 9/4/24 AM at 107:21-108:25.

Upon receiving Counterclaimants' letter threatening litigation, MGA brought the underlying declaratory judgment action in an effort to combat the false accusations and clarify the rights of the parties.  TT 9/19/24 PM at 43:13-44:4.  A prior jury swiftly found in favor of MGA, finding no liability on either of Counterclaimants' claims.  Dkt. 771.  That jury was so convinced that MGA was in the right that it asked if it had the ability to award attorneys' fees to the winning party (MGA).[1]  Dkt. 765.

## III.   COUNTERCLAIMANTS' REQUEST FOR TREBLE "DAMAGES" IS BOTH PREMATURE AND IMPROPER

### A.   The Jury's Disgorgement Award Was Advisory, And Thus There Is No Award To Enhance.

As MGA explained in its Opening Brief, all of the jury awards, including the Lanham Act award, were equitable and remain for the Court to independently decide.  Dkt. 1046 at 9-10.  Indeed, this Court said there was "no question" that the disgorgement award was equitable and, thus, merely advisory.  Dkt. 1042 (10/24/24 Hrg. Tr.) at 3:15-22.  And Counterclaimants agree.  Dkt. 1023 at 7; *see* Dkt. 924 at 15, 18 (describing the remedy they seek on their trade dress claim as "equitable disgorgement").  Accordingly, this Court must first determine whether disgorgement under the Lanham Act is available at all before it can consider whether to enhance—or reduce—any award under 15 U.S.C. § 1117(a).

### B.   No Profits Were Attributable To The Infringement, And Thus There Is No Award To Enhance.

Counterclaimants cannot seek disgorgement of profits unless such profits are

---

[1] MGA continues to dispute any findings of liability by this most recent jury and will address those issues in subsequent post-trial briefing.

attributable to the infringement.[2]  *See* Dkt. 1013 at 26 (Court's Instruction No. 20); *Globefill Inc. v. Elements Spirits, Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) ("The Lanham Act allows a prevailing plaintiff to disgorge profits that are earned by the defendant and ***attributable to the infringement***.") (emphasis added).  As MGA explained in its Opening Brief and shown at trial, ***none*** of MGA's profits are attributable to the infringement.  Dkt. 1046 at 15-18.

MGA's damages expert, Dr. Mangum, testified that "no portion of [MGA's] profits can be attributable to the alleged likeness or trade dress related to the OMG Girlz." TT 9/19/24 PM at 111:13-16.  When comparing the revenue generated by the 32 dolls that remained accused at the outset of trial with the revenue generated by the dolls that the Court determined did not infringe at summary judgment, Dr. Mangum observed no commercial benefit from selling dolls that supposedly included the OMG Girlz's trade dress.[3]  *Id.* at 103:22-104:18, 110:6-12.  Instead, factors ***other than*** the alleged infringement were driving the sales of the accused dolls, including the popularity of the preexisting L.O.L. Surprise! line, the concept of the little sisters, and the unboxing experience.  *Id.* at 110:3-22.

Dr. Mangum's conclusion is consistent with MGA's survey evidence and other witness testimony.  Indeed, ***not a single*** participant in either of Dr. Isaacson's scientific surveys associated the dolls with the OMG Girlz.  TT 9/18/24 AM at 131:1-7; TT 9/18/24 PM at 6:23-7:20, 13:3-14:2, 17:4-18:9.[4]  Additionally, Ms.

---

[2] At trial, Counterclaimants only sought disgorgement of MGA's profits.  *See* Dkt. 924 at 15, 18; Dkt. 1013 at 26.  Indeed, the Court excluded all other theories of recovery.  Dkts. 502, 521.

[3] The fact that Counterclaimants opted not to seek damages on 25 of the 32 dolls is of no moment—Counterclaimants still contended throughout the trial that all 32 dolls included their trade dress and likeness, *see, e.g.*, TT 9/20/24 AM at 145:22-146:2, and thus those dolls would have enjoyed the commercial benefit of the infringement, if any such benefit existed.

[4] To the extent Counterclaimants rely on anecdotes from friends/family, or online comments from fans that were solicited, in contrast to MGA's expert and scientific

Brenner, who marketed the dolls, testified that consumers were interested in the dolls for reasons such as love of the brand or the unboxing experience—none of which relate to the OMG Girlz or the doll's appearance. TT 9/13/14 AM at 41:3-6, 47:17-25; *see also* Decl. of Mark A. Finkelstein ("Finkelstein Decl."), Trial Ex. 1091 at 15, 37.

Accordingly, the Court should find that, because no profits were attributable to the infringement, there is no award to enhance.

### C.   At Most, 10-15% Of MGA's Profits May Be Attributable To The Infringement Based On Dr. Mangum's Comparative Analysis And Internal MGA Studies.

If the Court disagrees then, at most, the Court should award no more than 10-15% of MGA's profits on the seven accused dolls (for a total of $918,023 – $1,377,034). Counterclaimant cannot argue with a straight face that *every dollar* of MGA's profits (which they seek as disgorgement) is attributable to the infringement given the evidence above. As more fully discussed in MGA's Opening Brief, no more than 10% of profits could be attributable to the seven accused dolls that the jury found to infringe, based on Dr. Mangum's comparative analysis. Dkt. 1046 at 19-20. And based on several internal MGA studies, no more than 15% of profits could possibly be attributable to the visual "style" of the dolls in the L.O.L. Surprise! O.M.G. line, which broadly included aspects such as accessories, clothes, and fashion. *Id.* at 20-21; Finkelstein Decl., Trial Exs. 1090, 1091, 5018.

### D.   The Lanham Act Does Not Permit Trebling Of MGA's Profits.

Separately, Counterclaimants' request is improper because the plain text of section 1117(a) only authorizes trebling *damages*, which Counterclaimants did *not* seek. Under section 1117(a) of the Lanham Act, a plaintiff may pursue a recovery

---

survey evidence, that "partial" evidence has "very limited probative value." *See JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1111 (9th Cir. 2016). MGA maintains that all online comments are inadmissible. *See* Dkts. 939, 968.

based on (1) defendant's profits, and/or (2) any damages it sustains.  15 U.S.C. § 1117(a).  That section provides that, depending on the circumstances of the case, a court may treble any sum found as ***actual damages***:

> The court shall assess such profits and damages or cause the same to be assessed under its direction.  ***In assessing profits*** the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  ***In assessing damages*** the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as ***actual damages, not exceeding three times such amount***.  If the court shall find that the amount of the recovery ***based on profits*** is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.

*Id.* (emphases added).

Here, there was no sum sought—or found—as "actual damages."  Thus, Counterclaimants' repeated requests for trebling under section 1117(a) should be rejected.  As the Federal Circuit explained in *Nutting v. RAM Sw., Inc.*, section 1117(a) "does not explicitly provide for trebling an award of defendant's profits." 69 F. App'x 454, 458 (Fed. Cir. 2003).  "The statute permits a court to award up to three times the plaintiff's 'actual damages' only; this language does not apply to an award of defendant's profits."  *Id.*; *accord Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) (finding that district court erred in awarding treble disgorgement award, "which are punitive and are not authorized by § 1117(a) for a recovery based on profits").

The Ninth Circuit has not squarely addressed this issue.  *See SkyDive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012) (addressing

whether the district court abused its discretion in awarding an enhancement and stating in dicta that "lost profits" (*i.e.*, damages), as opposed to defendant's profits, may be trebled).[5]  But the Ninth Circuit has distinguished between "defendant's profits" and "any damages sustained by the plaintiff," as the plain text of section 1117(a) compels.  *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1220 n.11 (9th Cir. 2023) ("'Defendant's profits' are a form of disgorgement and are typically calculated based on the infringer's overall gross revenue from the infringement less the infringer's expenses.  By contrast, 'any damages sustained by the plaintiff' include compensatory damages arising from any 'reasonably foreseeable harms' caused by the wrong.") (internal citations omitted).  Eliding defendants' profits and plaintiffs' damages would render the Lanham Act's textual distinction between "profits" and "damages" meaningless.  *See California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 874 (9th Cir. 2013) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

For that reason, district courts in this Circuit have recognized that the trebling language in section 1117(a) is specific to plaintiff's damages, not defendant's profits.  *See, e.g.*, *Aoki v. Gilbert*, No. 2:11-cv-02797-TLN-CKD, 2020 WL 6741693, at *31 (E.D. Cal. Nov. 17, 2020) ("Treble damages are not appropriate on Defendants' profits, *as distinguished from Plaintiffs' damages*.") (emphasis added); *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*, No. EDCV 10-01858 VAP(DTBx), 2012 WL 12893524, at *5 (C.D. Cal. June 27, 2012) ("[A]fter assessing the plaintiff's damages (*as opposed to the defendant's profits*), the court may enter a judgment of up to three times the amount of the

---

[5] The monetary relief enhanced by the district court (and reversed by the Ninth Circuit) was not disgorgement, but "actual damages."  *Skydive*, 673 F.3d at 1114.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{277046.13}

11

Case No. 2:20-cv-11548-JVS-AGR

COUNTER-DEFENDANTS' OPPOSITION

damages found.") (emphasis added).

Counterclaimants cite to several cases from this District for the proposition that treble profits may be awarded under section 1117(a), Dkt. 1045 at 13-14, but none analyzed the statutory text.[6]  And in any event, the facts of those cases are readily distinguishable from this one.  *See Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, No. CV 15-6203 PA (SSX), 2016 WL 3693738, at *4 (C.D. Cal. July 11, 2016) (in a default judgment case, trebling award of plaintiff's lost profits and defendants' profits from their willful release of the infringing film, but declining to treble unjust enrichment of increased subscription fees associated with the release); *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) (in a default judgment case, trebling defendant's estimated profits where "[i]t [did] not seem unreasonable to ask whether relaxed standards of proof should be available to trademark holders trying to establish the profits of defendants who refuse to respect the summons of a United States court or who are entirely uncooperative"); *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 109, 116 (C.D. Cal. 2012) (after determining that plaintiff was entitled to judgment as a matter of law on the issue of liability, trebling defendant's profits based "on the undisputed facts," including defendant's failure to produce any evidence of costs or deductions and finding of willfulness).

Therefore, under section 1117(a), Counterclaimants are not entitled to an award of treble MGA's profits.

---

[6] Nor can Counterclaimants argue that the Court should treble MGA's profits in its discretion to award "such sum as . . . [it] find[s] to be just." 15 U.S.C. § 1117(a). "[E]nhancement is only available to ensure that the plaintiff receives adequate compensation." *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *13 (C.D. Cal. Oct. 25, 2023) (citing *Skydive*, 673 F.3d at 1115).

## IV.    **TO THE EXTENT THIS COURT MODIFIES THE DISGORGEMENT AWARD, IT SHOULD EXERCISE ITS DISCRETION TO LOWER IT**

The Lanham Act provides for disgorgement of profits as a remedy, but only to the extent the profits are attributable to the infringement and "***subject to*** the principles of equity." 15 U.S.C. § 1117(a) (emphasis added).  As explained in MGA's Opening Brief, Counterclaimants are foreclosed from disgorging MGA's profits here because (1) MGA did not willfully infringe; (2) equitable considerations do not weigh in favor of disgorgement; and (3) none of MGA's profits were attributable to the infringement.  *See* Dkt. 1046.  If the Court finds that some disgorgement is appropriate (which it should not), it should use its discretion to adjust the award downwards based on those same reasons.

### A.    **MGA Did Not Willfully Infringe.**

The Court found at summary judgment that Counterclaimants failed to raise a genuine issue of fact regarding MGA's willfulness.  Dkt. 326 at 32.  And despite the jury's advisory finding of willfulness, there was no evidence at trial that MGA knowingly and intentionally infringed Counterclaimants' trade dress, or acted with indifference, reckless disregard, or willful blindness.  Dkt. 1046 at 12-14.

Indeed, Counterclaimants identify no alleged conduct that demonstrates willfulness on MGA's part.  *See* Dkt. 1045 at 23.  As the Ninth Circuit explained in *Fifty-Six Hope*:

> Willful infringement carries a connotation of deliberate intent to deceive.  Generally, deliberate, false, misleading, or fraudulent . . . conduct . . . meets this standard.  Willfulness . . . require[s] a connection between a defendant's awareness of its competitors and its actions at those competitors' expense.

778 F.3d at 1074 (internal quotation marks and citations omitted).  *See Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020) (holding that while willfulness is no longer required for disgorgement, "a trademark defendant's mental

state is a highly important consideration in determining whether an award of profits is appropriate").

First, there was no evidence at trial that MGA was ever aware of the OMG Girlz's success, let alone that MGA used the OMG Girlz's trade dress to increase its market share among non-white children.

Second, that MGA promptly filed a declaratory judgment lawsuit upon receiving Counterclaimants' cease and desist letter is evidence against a finding of willfulness. *See San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) ("Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law."). Here, MGA had a reasonable belief it was not infringing, demonstrated by MGA's initiating a legal proceeding to proactively and transparently establish the respective parties' rights. That the jury from the second trial in this case concluded that MGA was ***not*** infringing Counterclaimants' trade dress confirms that MGA's belief was, in fact, reasonable. *See* Dkt. 771. That jury's finding of noninfringement on all 32 dolls remaining after summary judgment also undermines any argument that MGA "callously disregard[]" Counterclaimants' rights, "taunted" them by making new dolls that infringed, or otherwise acted in bad faith. *See id.*; Dkt. 1045 at 23.

Third, willfulness cannot be inferred where MGA's witnesses merely testified that they did not believe the dolls looked like human beings or distinguished the dolls from the OMG Girlz's various, inconsistent looks. Such testimony does not demonstrate a "deliberate intent to deceive." *See Fifty-Six Hope*, 778 F.3d at 1074.

Finally, Counterclaimants suggest that enhancement is appropriate because MGA referred to Counterclaimants' case as a "money grab" and MGA's witnesses made statements that the OMG Girlz were unknown or supposedly "had an unnecessarily hostile and sarcastic demeanor toward the OMG Girlz." *See* Dkt. 1045 at 27. Counterclaimants go as far to allege that Ms. Stephens "glowered" at

1   the OMG Girlz and Ms. Harris at one point of her testimony.  *Id.*

2       None of this is relevant to whether MGA willfully infringed

3   Counterclaimants' trade dress.  Instead, these arguments merely underscore that

4   Counterclaimants improperly seek an enhancement to punish MGA for alleged trial

5   conduct.  *See Skydive*, 673 F.3d at 1115 (reversing enhancement based on "punitive

6   motivation").

### B.    Equitable Considerations Support A Reduction In Any Award.

8       As MGA explained in its Opening Brief, various equitable factors weigh

9   heavily ***against*** disgorgement of profits under the Lanham Act:  (1) a defendant's

10   mental state, such as whether the defendant had the intent to confuse or deceive; (2)

11   whether sales have been diverted; (3) the adequacy of other remedies; (4) any

12   unreasonable delay by the plaintiff in asserting the plaintiff's rights; (5) the public

13   interest in making the misconduct unprofitable; and (6) whether it is a case of

14   "palming off."  *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,

15   No. SACV 17-01613-CJC (DFMx), 2023 WL 2652855, at *4 (C.D. Cal. March 13,

16   2023) (citing *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 223 (3d Cir. 2021)); *see*

17   Dkt. 1046 at 14-15.  These same factors also weigh in favor of reducing any award.

18       First, as addressed in MGA's Opening Brief and above, MGA did not intend

19   to confuse or deceive anyone.  *See Harbor Breeze,* 2023 WL 2652855, at *4

20   ("Willfulness is more culpable than negligence; the former generally supports

21   disgorging ill-gotten gains, while the latter generally does not.").

22       Second, Counterclaimants did not have any sales diverted to MGA because

23   the parties do not compete.  *See Maier Brewing Co. v. Fleischmann Distilling

24   Corp.*, 390 F.2d 117, 121 (9th Cir. 1968) ("Clearly, if there is no competition, there

25   can be no diversion of customers.").

26       Third, the "adequacy of other remedies" factor is neutral.  Injunctive relief is

27   not appropriate where Counterclaimants are not being harmed by MGA's actions,

28   and such relief would be infeasible due to the ever-shifting nature of

Counterclaimants' trade dress.  *See* Dkt. 988 at 27.

Fourth, the "unreasonable delay" and "palming off" factors do not support increasing the award.  It was MGA, not Counterclaimants, that first requested court involvement.  And MGA is not "palming off," or "passing off," its dolls under Counterclaimants' name or mark.

Finally, the public interest in making infringement unprofitable would not be strengthened here.  "This case does not involve willful misconduct, when the need to deter misconduct is at its apex."  *Harbor Breeze*, 2023 WL 2652855, at *8.

To the extent the Court believes any disgorgement award is appropriate, an evaluation of these factors favors a ***reduction*** in the award.

## V.    <u>IN NO EVENT SHOULD THE COURT *INCREASE* THE AWARD</u>

### A.    Enhancement Would Be Impermissibly Punitive.

Any sum awarded under section 1117(a) "shall constitute compensation and ***not a penalty*.**"  15 U.S.C. § 1117(a) (emphasis added); *see TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (same).  Enhancement based on an intent to punish an infringer for its misconduct—even where the court "may have considered a secondary deterrent rationale"—is improper and grounds for reversal. *See SkyDive*, 673 F.3d at 1115 (reversing enhancement award where district court's decision "hinged upon punishing the willful conduct of [defendants]"); *see also Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV 19-1765 JVS (JDEx), 2021 WL 6103527, at *6 (C.D. Cal. Sept. 1, 2021) (Selna, J.) (recognizing that "the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer") (quoting *Skydive*, 673 F.3d at 1114).

Here, Counterclaimants have already conceded that $17.8 million would be fully compensatory, and that $24.57 million represented the uppermost limit.  *See* TT 9/3/24 PM at 51:17-19 (in opening arguments, requesting that the jury "award somewhere in the range of 17- to $25 million for the use of the trade dress"); TT 9/20/24 AM at 139:19-22 (in closing arguments, stating that profits were "$17.8

million for the seven dolls" and $24.57 million "if you add the two that come in the box for the one year"). *See Skydive*, 673 F.3d at 1114 ("[E]nhancement is only available to ensure that the plaintiff receives compensation.") (quoting *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994)). In fact, during the punitive damages phase of trial, counsel for Counterclaimants requested the jury "award two times the $17.8 million, which is $35.6 million, or four times which would be about $71.2 million, to send [MGA] a message." TT 9/23/24 at 31:16-18. Thus, any multiplier of the $17.8 million, by Counterclaimants' own admission, would be for punitive reasons and therefore improper.

Counterclaimants further ask this Court to enhance the award because their expert's calculation "did not include MGA's profits for the additional 8 dolls that the jury found to infringe." Dkt. 1045 at 16:10-11. But this Court found that Counterclaimants "earlier abandoned any damage claim with respect to the 32. Whether it's—that the record. They have done that. ***It's binding***." TT 9/18/24 AM at 8:22-24 (emphasis added). Indeed, as part of their trial strategy, Counterclaimants expressly abandoned any money for dolls outside of the seven they "focused on." Counterclaimants cannot now reverse course for no other reason than to inflate their disgorgement award. *See*, *e.g.*, *id.* at 7:21-22 ("We are only seeking liability on seven dolls."); TT 9/20/24 AM at 145:22-23 ("I didn't go through their 25 dolls. We're not asking for any money on that.").

Nor can Counterclaimants seek enhancement based on profits for two dolls that the jury found were ***non-infringing*** (Ferocious and Fame Queen). *See* Dkt. 1045 at 19. Awarding disgorgement for dolls that the jury found did ***not*** infringe would not "constitute compensation," as required by the Lanham Act. 15 U.S.C. § 1117(a). Instead, an award for non-infringing dolls would impermissibly give Counterclaimants a "windfall[]."[7] *See Stone Creek, Inc. v. Omnia Italian Design,*

---

[7] Counterclaimants' uppermost limit of disgorgement of $24.57 million was premised on the jury's finding liability as to these two dolls. *See* TT 9/12/24 AM at

1   *Inc.*, 808 F. App'x 459, 460 (9th Cir. 2020).

2         Moreover, Counterclaimants' requested enhancement to more than $53

3   million is not "tread[ing] lightly," as required by the Ninth Circuit in *Fifty-Six*

4   *Hope*, 778 F.3d at 1077.  Indeed, their request is explicitly premised on a purported

5   need to punish MGA—including for alleged litigation and trial strategy that is

6   completely unrelated to the alleged infringement.  *See, e.g.*, Dkt. 1045 at 27

7   (claiming that MGA in ***other*** lawsuits "wields its 'army of lawyers' to complicate

8   and increase[] the contentiousness of the litigation"); *id.* (claiming that MGA

9   "callously belittled the OMG Girlz'[s] achievements and its entire litigation strategy

10  appeared to be based on accusing them of being 'hustlers'"); *id.* (claiming that

11  MGA's witnesses "had an unnecessarily hostile and sarcastic demeanor toward the

12  OMG Girlz").

13        Further, Counterclaimants' efforts to advance racial arguments as a basis to

14  enhance the disgorgement award should not be countenanced.  *See, e.g.*, *id.* at 5.

15  The Court has made clear that race is the "most inflammatory issue in the case"—so

16  much so that the Court granted MGA's motion *in limine* to exclude evidence of

17  alleged cultural appropriation and racism, and later declared a mistrial for violation

18  of that same motion.  Mistrial Tr. 1/25/23 at 26:8-28:8; *see also* Dkt. 502 at 6

19  (specifying that "[v]eiled, calculating remarks are no less objectionable than the

20  attribution of outright racist statements").

21        Counterclaimants' half-hearted attempts to justify their racial arguments as

22  relevant to MGA's supposed marketing strategy is unsupported by the evidence at

23  trial.  Counterclaimants cite testimony from Ms. Brenner that MGA "did work to

24  market the dolls to black and brown girls" (Dkt. 1045 at 9:18-20), while ignoring

25  her testimony that MGA's dolls targeted "everybody."  TT 9/13/24 AM at 80:20-

26  23.

27

28  32:4-21.

Counterclaimants also cite testimony from Mr. Larian regarding an internal MGA report that MGA "increased [its] market share among non-Caucasians by 11 percent between the start of 2020 and the start of 2021." TT 9/4/24 PM at 50:25-51:3. During his redirect examination, however, Mr. Larian clarified that the report was "research to find out the [consumer] ***preference***" and "ha[d] nothing to do with market share." TT 9/5/24 PM at 26:9-10 (emphasis added); *see* Finkelstein Decl., Trial Ex. 1090. Mr. Larian further explained that the "non-white" consumers of that study included various demographic groups, such as "Chinese, Filipinos, Thai . . . . and also Black." TT 9/5/24 PM at 26:2-4. Mr. Larian testified that MGA did not have a motivation to copy the OMG Girlz as way to target the African-American population because it would make "no business sense."[8] TT 9/19/24 AM at 125:3-9. Mr. Larian further testified that MGA produces a diverse line of dolls and "sell[s] to every girl, every nationality, every color"—not just to one minority group. *Id.* at 125:16-25.

Accordingly, the Court should reject Counterclaimants' request for enhancement intended to punish MGA.

### B. Enhancement Is Unnecessary For Deterrence, Especially Where MGA Did Not Act Willfully.

While Counterclaimants argue that enhancement is needed to deter MGA from infringing (Dkt. 1046 at 22), deterrence alone is not sufficient reason for an enhancement. *See Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-CV-01848-H (POR), 2009 WL 160235, at *6 (S.D. Cal. Jan. 20, 2009) ("[A]rguments that [defendant] needs to be deterred from future infringement through an enhanced damage award sounds in punishment"). *Accord ALPO Petfoods, Inc. v. Ralston*

---

[8] Counterclaimants inaccurately state that the OMG Girlz's fans were "primarily non-white millennial women." Dkt. 1045 at 15 (citing to Ms. Pullins' testimony). Ms. Pullins specifically described that they were "primarily . . . black female millennials." TT 9/12/24 AM at 86:20-21.

1   *Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) ("[D]eterrence alone cannot justify

2   such a[] [profits] award."); *Kars 4 Kids*, 8 F.4th at 225 (noting that deterrence "is

3   not a compensatory reason" and could not serve as a basis for an enhanced award).

4   *See also Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d

5   Cir. 1988) ("So long as its purpose is to compensate a plaintiff for its actual

6   injuries—even though the award is designed to deter wrongful conduct—the

7   Lanham Act remains remedial.").

8        Counterclaimants have identified no court that has enhanced profits without

9   willfulness.  While the Ninth Circuit stated in *Playboy Enterprises, Inc. v. Baccarat

10  Clothing Co., Inc.* that trial courts should make "any violations of the Lanham Act

11  unprofitable to the infringing party," the prior sentence of that opinion makes clear

12  the court was referring to situations "where trademark infringement is deliberate

13  and willful" and specifically was concerned about a court in such situations

14  providing "no greater remedy than an injunction."  692 F.2d 1272, 1274 (9th Cir.

15  1982).  Even though the *Playboy Enterprises* case involved willful and deliberate

16  counterfeiting, the Ninth Circuit in that case still **denied** defendant's request "that

17  the profits award be increased pursuant to 15 U.S.C. § 1117."  *Id.* at 1277.

18       Similarly, all the cases that Counterclaimants cite for the proposition that

19  enhancement is appropriate for deterrence involve a finding of willfulness.  *See

20  Getty Petroleum*, 858 F.2d at 105 (defendants infringed "willfully, intentionally,

21  and with a callous and reckless disregard" for plaintiff's rights); *Merck Eprova AG

22  v. Gnosis S.p.A.*, 760 F.3d 247, 263 (2d Cir. 2014) (defendant demonstrated

23  "deceptive and willful conduct"); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932

24  F.2d 1113, 1127 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana,

25  Inc.*, 505 U.S. 763 (1992) ("substantial evidence of willful infringement"); *Binder v.

26  Disability Grp.*, 772 F. Supp. 2d 1172, 1181 (2011) (defendants' conduct was

27  "willful" where registered trademarks were knowingly being used); *PepsiCo v.

28  Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (defendant "willfully and

intentionally infringed" registered trademarks); *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1025 (S.D.N.Y. 1994) ("[I]n cases of wilful [*sic*] violation of the Act, this enhancement may be used to deter further wilful [*sic*] violations.").

And as explained above and in MGA's Opening Brief, "[t]his case does not involve willful misconduct, when the need to deter misconduct is at its apex." *See Harbor Breeze*, 2023 WL 2652855, at *8. Furthermore, MGA has already stopped direct sales of the dolls that the jury found to infringe, including those dolls for which Counterclaimants sought no money. Dkt. 1046 at 14 n.5. Thus, given the circumstances here, enhancement based on the need to deter does not apply and would run afoul of the Lanham Act's requirement that any award constitute compensation and not a penalty.

### C.    Enhancement For Vague And Speculative "Uncompensated Harm" Is Improper.

At trial, Counterclaimants sought only equitable disgorgement, rather than any compensatory damages based on harm they suffered. Without any proof of actual harm, any enhancement would not "constitute compensation," as required. 15 U.S.C. § 1117(a); *see Getty Petroleum*, 858 F.2d at113 (Lanham Act's purpose "is to compensate a plaintiff for its actual injuries"); *TrafficSchool.com*, 653 F.3d at 831 ("Plaintiffs didn't produce *any* proof of past injury or causation, so the district court had no way to determine with any degree of certainty what award would be compensatory.") (emphasis in original). In fact, Counterclaimants have waived any argument that an enhancement is necessary given their admission that $17.8 million (and no more than $24.57 million) would be compensatory.

In the Motion, Counterclaimants allude to two categories of vague and speculative "uncompensated harm"—neither of which warrant enhancement. *See* Dkt. 1045 at 17. First, Counterclaimants dispute the amount of MGA's profits. Second, Counterclaimants argue they suffered "intangible harm," based on an

inadmissible theory of emotional distress as well as supposed "continued confusion and lingering misimpressions" about the OMG Girlz's brand for which no evidence was presented at trial.  *See id.* at 18-22.

### 1.  *MGA Met Its Burden To Prove Deductible Costs.*

While MGA's profit calculation for the dolls is relevant to the amount of any disgorgement award (in the event any profits were attributable to the infringement), this calculation is not relevant to the Court's consideration of **whether to enhance** any disgorgement award.  *See* 15 U.S.C. § 1117(a).  Thus, Counterclaimants' argument that MGA failed to prove its deductible expenses is misplaced.

In any event, MGA presented more than sufficient evidence of deductible costs in a detailed and credible manner.  Dr. Mangum, who testified regarding MGA's profits, is a qualified expert with a doctorate and master's degree in economics from the University of Southern California and has extensive work experience, including at several consulting firms and universities.  *See* TT 9/19/24 PM at 72:6-20.  He provided his analysis of costs, based on financial information from MGA, such as a profit and loss statement and deposition testimony of MGA's vice president and controller, Pedro Crisanti.[9]  *Id.* at 84:4-13, 89:2-25; *see* Finkelstein Decl., Trial Ex. 6056.

Counterclaimants now take issue with several aspects of Dr. Mangum's calculations.  But at trial, Counterclaimants' own damages expert challenged only whether Dr. Mangum rightly deducted fixed overhead costs.  Indeed, Counterclaimants' expert, Mr. Tregillis, "accepted" all of Dr. Mangum's deductions other than fixed overhead.  TT 9/12/24 AM at 24:16-25:20.  On rebuttal (after Dr. Mangum testified), Mr. Tregillis still only identified two areas of disagreement with

---

[9] Counterclaimants cannot simultaneously argue that "revenue numbers" discussed at Mr. Crisanti's deposition were unreliable **and** justify their requested award based on the same.  Dkt. 1045 at 18; *see* 15 U.S.C. § 1117(a) (plaintiff bears burden of proving sales).  Regardless, reliability is not at issue; Mr. Crisanti testified that the information came from MGA's general ledger.  *See* Finkelstein Decl., Ex. A.

1  Dr. Mangum: fixed overhead and Dr. Mangum's "series analysis" (which is related

2  to whether MGA profited from the alleged infringement, and not the amount of

3  profits on the seven dolls).  TT 9/20/24 AM at 28:19-23.

4  　　　Mr. Tregillis's profit calculation on the 7 dolls was $17,872,253 (TT 9/12/24

5  AM at 29:20-21), whereas Dr. Mangum—who included fixed overhead—calculated

6  MGA's profits on those 7 dolls to be $9,180,227.  TT 9/19/24 PM at 96:10-12.

7  　　　As explained in MGA's Opening Brief (Dkt. 1046 at 19), when this Court

8  independently considers the request for equitable relief, it should account for fixed

9  overhead expenses, such as the salaries of the designers, the facilities and

10  equipment to make the dolls, and materials for marketing to sell the dolls.  *See* TT

11  9/19/24 PM at 86:15-88:23.  That is because those costs were not just "of actual

12  assistance," but necessary, for MGA to produce, distribute, and sell the dolls.  *See*

13  *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984);

14  *see also Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal.

15  1993) (fixed costs may be deducted where they "actually contributed to the

16  infringing product").  Failure to deduct fixed overhead costs would inaccurately

17  inflate the amount of profits.  TT 9/19/24 PM at 93:8-22; *see* TT 9/12/24 AM at

18  48:24-25 (Counterclaimants' expert "deducted zero dollars for fixed overhead").

19  　　　　　　**2.**　　　***Counterclaimants Cannot Recover For Their Alleged***

20  　　　　　　　　***"Intangible Harm."***

21  　　　Counterclaimants also improperly seek an enhancement for what is

22  essentially alleged emotional distress.  The Court already precluded

23  Counterclaimants "from seeking, or presenting evidence relating to, emotional

24  distress damages," Dkt. 521 at 2, and no such evidence was presented at trial.

25  Counterclaimants may not circumvent the Court's order retroactively.

26  　　　In any event, none of Counterclaimants' alleged "harm"—including distress

27  completely unrelated to the infringement found by the jury—can be the basis for

28  enhancement.  The OMG Girlz claim they "sacrificed" their childhood summers,

1    school life, privacy regarding "first crushes," and the "health of their hair" when

2    they decided to become entertainers. Dkt. 1045 at 20-21. But MGA had nothing to

3    do with those "sacrifices" that occurred years before MGA launched the dolls.

4    Counterclaimants cannot recover for harm that MGA did not cause. *See Harper*

5    *House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) ("[P]laintiff

6    may not recover [under the Lanham Act] if he fails to prove that the defendant's

7    actions caused the claimed harm."). And to the extent Counterclaimants argue that

8    MGA's infringement as found by the jury triggered emotional harm because of

9    these prior "sacrifices," the Court's ruling precluded emotional distress damages.

10        Nor could Counterclaimants recover for emotional distress damages as a

11    matter of law. Emotional harm cannot be assigned to an entity, and the individual

12    OMG Girlz are not parties to this litigation. *See Dorroh v. Deerbrook Ins. Co.*, 612

13    F. App'x 424, 426 (9th Cir. 2015) ("As a matter of law in California, purely

14    personal claims are not assignable.") (citing *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d

15    937, 942 (1976)); *see also* Mistrial Tr. 1/17/23 AM at 32:22-24 ("There is Ninth

16    Circuit authority for the proposition that you can't assign an emotional distress

17    claim to a business entity."); Dkt. 500 at 9-10.

18        Counterclaimants' assertion that an enhancement is necessary to compensate

19    them for "continued confusion and lingering misimpressions" about the OMG

20    Girlz's brand, Dkt. 1045 at 21, fares no better. Counterclaimants cite *Binder*, 772

21    F. Supp. 2d at 1183, to support their argument. But in that case, the parties were

22    competitors and the plaintiffs lost business due to defendants' actions. *Id*. at 1176,

23    1181. Here, the parties do not compete, nor was there any evidence of harm at all,

24    let alone related to "lingering misimpressions."[10] Indeed, Ms. Harris testified that

25    the OMG Girlz long abandoned efforts to create a doll line. TT 9/4/24 AM at 50:1-

26    23.

27    ──────────

28    [10] This Court ruled that Counterclaimants could not put on evidence of any harm
     due to their discovery conduct. Dkts. 502, 521.

### D. Enhancement For "Intangible Benefits" To MGA Is Improper.

The Court should also refuse any enhancement based on supposed "intangible benefits" to MGA that are neither compensatory nor quantifiable. Again, such theory of damages was excluded, along with "loss opportunities and direct profits calculations," due to Counterclaimants' discovery conduct. Dkt. 502 at 8.

Further, there was no evidence at trial that MGA "gained significant popularity and market share with non-white children with respect to the [dolls]" or sold "additional dolls in the collectable 'family' of L.O.L. Surprise! dolls," as a result of the alleged infringement. *See* Dkt. 1045 at 14. On the contrary, the evidence showed that there was ***zero*** commercial benefit for selling dolls that supposedly included the OMG Girlz's trade dress. *See* Dkt. 1046 at 15-18. While Counterclaimants assert—without any evidence—that the seven accused dolls increased MGA's profits for other dolls and products, Counterclaimants failed to present any evidence of sales of such toys. Thus, they cannot now seek disgorgement on such other products. *See* 15 U.S.C. § 1117(a) (plaintiff bears burden of proving defendants' sales).

Counterclaimants cite cases from outside this Circuit for the proposition that they can recover "intangible benefits" MGA accrued for the infringement.[11] However, their reliance on *Merck*, 760 F.3d at 263, and *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996), is misplaced. *Merck* involved a false advertising claim under the Lanham Act where the parties were "direct competitors in a two-player market [of a certain chemical compound], and where literal falsity and willful, deliberate deception [had] been proved." 760 F.3d at 262. The Second Circuit affirmed the district court's award of treble Gnosis's profits where such profits "did not sufficiently reflect the total

---

[11] MGA is unaware of any binding authority that stands for this same premise.

1  harm caused to Merck," including "Gnosis's usurpation of Merck's market share."
2  *Id.* at 262-63.  The Second Circuit emphasized the "particulars of [the] case"
3  warranted enhanced damages: Merck was the only manufacturer of the compound
4  before Gnosis's entry in the market, and Gnosis continued to market its products
5  under a misleading name (that it knew was inaccurate) two years after Merck filed
6  suit and two years after Gnosis settled a separate false advertising suit against its
7  sales agent, which ceased to sell Gnosis's product.  *Id.* at 263.  None of these
8  "particulars" is present here.

9      The district court in *New York Racing* trebled the plaintiff's lost profits
10  damages where (1) sale of infringing T-shirts reduced plaintiff's revenues on its T-
11  shirts, and (2) defendant forged labels, misrepresenting to customers that plaintiff
12  had vouched for the quality of the T-shirts or the way defendant sold them.  920 F.
13  Supp. at 302 (trebling award for actual injuries to $2,244.66).

14      Unlike in *Merck* or *New York Racing*, where the courts found that plaintiffs
15  were entitled to compensation for profits lost on sales diverted to a competitor,
16  MGA and Counterclaimants are not competitors, and there was no evidence of lost
17  profits.  *See* Dkt. 502 at 7-8 (excluding lost opportunities and direct lost profits
18  calculation or other damages theories).  Further, the courts in *Merck* and *New York*
19  *Racing* found that defendants were willful and engaged in deceptive conduct—
20  neither of which is present here, as discussed above and in MGA's Opening Brief.
21  *See* Dkt. 1046 at 12-14, 25-27.

22      Accordingly, Counterclaimants' argument to enhance any award based on
23  alleged "intangible benefits" also fails.

24  ///
25  ///
26  ///
27  ///
28  ///

## VI.    **CONCLUSION**

For the foregoing reasons, Counterclaimants' Motion should be denied.  To the extent the Court awards any disgorgement damages (which it should not), any adjustment to that award under 15 U.S.C. § 1117(a) should be downward.

Dated: December 4, 2024                    UMBERG ZIPSER LLP

 

 

_____
Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

**CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2**

The undersigned, counsel of record for MGA, certifies that this brief contains 6995 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 4, 2024                UMBERG ZIPSER LLP


_____
Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian