John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MGA ENTERTAINMENT, INC.,
a California corporation,

Plaintiff,

vs.

CLIFFORD "T.I." HARRIS, an
individual; TAMEKA "TINY" HARRIS,
an individual; OMG GIRLZ LLC, a
Delaware limited liability company; and
DOES 1-10, inclusive,

Defendants.

GRAND HUSTLE, LLC, PRETTY
HUSTLE, LLC, and OMG GIRLZ LLC,

Counter-Claimants,

vs.

MGA ENTERTAINMENT, INC.,
ISAAC LARIAN, and DOES 1 – 10,
inclusive,

Counter-Defendants.

Case No. 2:20-cv-11548-JVS-AGR

**DEFENDANTS' AND COUNTER-CLAIMANTS' AMENDED RESPONSE TO PLAINTIFF AND COUNTER-DEFENDANTS' OPENING POST-TRIAL BRIEF REGARDING EQUITABLE ISSUES**

Judge: Hon. James V. Selna

Complaint Filed: December 20, 2020
Trial Date:        September 3, 2024

Hearing Date:   January 6, 2024
Hearing Time:   3:00 P.M.

SMRH:4886-1514-9815.8

Case No. 2:20-cv-11548-JVS-AGR
DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO OPENING POST-TRIAL BRIEF REGARDING EQUITABLE ISSUES

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................... 1

II.   WHICH ISSUES ARE EQUITABLE .............................................................. 2

    A.   Disgorgement Under the Lanham Act and for Common Law Misappropriation Are Equitable Issues .................................................. 2

    B.   Punitive Damages for Common Law Misappropriation are Legal and for the Jury .................................................................................................... 2

III.  THE COURT SHOULD AWARD LANHAM ACT DISGORGEMENT .............................................................................................. 4

    A.   Disgorgement Is A Standard Remedy Under The Lanham Act .................. 4

    B.   MGA Improperly Asks the Court to Ignore the Jury's Willfulness Verdict .............. 5

    C.   Disgorgement Is Proper, As Is the Amount ............................................ 6

    D.   MGA's 10% of Profits Argument Was Not Presented at Trial and Is Improper Now (and Lacks Any Evidentiary Support) .............................. 8

IV.   DISGORGEMENT FOR COMMON LAW MISAPPROPRIATION ............. 9

    A.   The Court Should Again Reject MGA's Common Law Disgorgement Positions .................................................................................................. 9

    B.   Multiple Authorities Allow Disgorgement as an Equitable Remedy for Common Law Misappropriation ............................................................. 10

    C.   The OMG Girlz Were Harmed by MGA's Misappropriation .................. 11

    D.   The OMG Girlz Do Not Need to Elect a Remedy ................................ 14

V.    PUNITIVE DAMAGES WERE PROPERLY AWARDED ......................... 14

    A.   Punitive Damages Are Available ........................................................... 14

    B.   Punitive Damages Were Appropriately Awarded .................................. 15

    C.   MGA's Strawman Arguments Are Contrary to the Record and the Jury's Finding of Oppression, Fraud, or Malice .............................................. 17

    D.   The Punitive Damages Award Comports With Due Process .................. 19

VI.   CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*4 Pillar Dynasty LLC v. N.Y. & Co.*
    933 F.3d 202 (2d Cir 2019) ...................................................................5

*Abdul-Jabbar v. Gen. Motors Corp.*
    85 F.3d 407 (9th Cir. 1996) ..................................................................9

*Adidas Am., Inc. v. Payless Shoesource, Inc.*
    546 F. Supp. 2d 1029 (D. Or. 2008) ......................................................5

*Alberts v. Liberty Life Assurance Co. of Bos.*
    65 F. Supp. 3d 790 (N.D. Cal. 2014) ...................................................18

*Batis v. Dun & Bradstreet Holdings, Inc.*
    No. 22-cv-01924-MMC, 2023 WL 1870057 (N.D. Cal. Feb. 9, 2023),
    *aff'd*, 106 F.4th 932 (9th Cir. 2024) ...........................................10, 11

*Black v. Gardner*
    320 N.W.2d 153 (S.D. 1982) .................................................................4

*BMW of N. Am., Inc. v. Gore*
    517 U.S. 559 (1996) .............................................................................20

*Brewer v. Second Baptist Church of Los Angeles*
    32 Cal. 2d 791 (1948) ..........................................................................17

*Cheung v. Daley*
    35 Cal.App.4th 1673 (1995) ................................................................16

*Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*
    106 F.3d 284 (9th Cir. 1997) .................................................................1

*Downing v. Abercrombie & Fitch*
    265 F.3d 994 (9th Cir. 2001) ...............................................................10

*Eastwood v. Sera Labs, Inc.*
    No. 2:20-cv-06503-RJK, 2021 WL 4439221 (C.D. Cal. June 23, 2021)...........15

*In re Facebook, Inc. Internet Tracking Lit.*
    956 F.3d 589 (9th Cir. 2020) ...............................................................12

-ii-

SMRH:4886-1514-9815.8

Case No. 2:20-cv-11548-JVS-AGR
DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO OPENING POST-
TRIAL BRIEF REGARDING EQUITABLE ISSUES

*Forrest v. Meta Platforms, Inc.*
    No. 22-cv-03699-PCP, 2024 WL 3024642 (N.D. Cal. June 17, 2024) ....... 10, 11

*Fraley v. Facebook, Inc.*
    830 F. Supp. 2d 785 (N.D. Cal. 2011)................................................ 13

*Hangarter v. Provident Life & Accident Ins. Co.*
    373 F.3d 998 (9th Cir. 2004) ............................................................ 14

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*
    2023 WL 2652855 (C.D. Cal. March 13, 2023).................................... 4

*In re Javahery*
    2017 WL 971780 (B.A.P. 9th Cir. Mar. 14, 2017), *aff'd*, 742 F. App'x 307
    (9th Cir. 2018) .............................................................................. 16

*Johnson v. Ford Motor Co.*
    35 Cal. 4th 1191 (2005).................................................................. 18

*JUUL Labs, Inc. v. Chou*
    676 F. Supp. 3d 827 (C.D. Cal. 2023).................................................. 5

*Leavy v. Cooney*
    214 Cal. App. 2d 496 (Ct. App. 1963) ............................................... 15

*Liu v. SEC*
    591 U.S. 71 (2020) .......................................................................... 3

*Lopez v. Watchtower Bible & Tract Soc'y of New York, Inc.*
    246 Cal. App. 4th 566 (2016)........................................................... 18

*Maier Brewing Co. v. Fleischmann Distilling Corp.*
    390 F.2d 117 (9th Cir. 1968) ............................................................. 7

*Miller v. Collectors Universe, Inc.*
    159 Cal. App. 4th 988 (2008)........................................................... 10

*MJT Sec., LLC v. Toronto-Dominion Bank*
    No. 04-16362, 2006 WL 1236661 (9th Cir. May 9, 2006) .................... 16

*Motschenbacher v. R. J. Reynolds Tobacco Co.*
    498 F.2d 821 (9th Cir. 1974) ............................................................ 13

*Munhwa Broad. Corp. v. Create New Tech. Co.*
    2015 U.S. Dist. LEXIS 174796 (C.D. Cal. Sep. 2, 2015) ....................... 1

-iii-

SMRH:4886-1514-9815.8

Case No. 2:20-cv-11548-JVS-AGR
DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO OPENING POST-
TRIAL BRIEF REGARDING EQUITABLE ISSUES

*Nestle USA, Inc.*, 2023 WL 7107126 (W.D. Tex. May 23, 2023) .......................... 12

*Newcombe v. Adolf Coors Co.*
    157 F.3d 686 (9th Cir. 1998) ................................................... 2, 10, 13

*Olive v. Gen. Nutrition Ctrs., Inc.*
    242 Cal. Rptr. 3d 15 (Ct. App. 2d Dist. 2018) ............................ 11, 15

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*
    422 F.3d 949 (9th Cir. 2005) .................................................... 19

*Playboy Enters. v. Netscape Comms. Corp.*
    354 F.3d 1020 (9th Cir. 2004) .................................................... 6

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*
    2016 U.S. Dist. LEXIS 82532 (S.D. Cal. June 17, 2016) ................... 1, 5

*Proofpoint, Inc. v. Vade USA, Inc.*
    No. 23-16085, 2024 WL 4003096 (9th Cir. Aug. 30, 2024) ................. 3

*Ramona Equip. Rental, Inc. v. Carolina Cas. Ins. Co.*
    755 F.3d 1063 (9th Cir. 2014) .................................................... 8

*Riley v. Volkswagen Grp. of Am., Inc.*
    51 F.4th 896 (9th Cir. 2022) ................................................... 19, 20

*Rivero v. Thomas*
    86 Cal. App. 2d 225 (1948) ...................................................... 3

*Romag Fasteners v. Fossil*
    140 S.Ct. 1492 (2020) ............................................................ 4

*Ross v. Pioneer Life Ins. Co.*
    545 F. Supp. 2d 1061 (C.D. Cal. 2008) ........................................ 2

*Taylor v. Wright*
    69 Cal. App. 2d 371 (1945) ...................................................... 3

*Topanga Corp. v. Gentile*
    249 Cal. App. 2d 681 (Ct. App. 1967) ........................................ 16

*Vanvakaris v. Fashion Forms, Inc.*
    No. CV 19-7765-DMG, 2019 WL 6245546 (C.D. Cal. Nov. 22, 2019) ..... 11, 15

*Waits v. Frito-Lay, Inc.*
   978 F.2d 1093 (9th Cir. 1992) ............................................................. 15

*Weiss v. Blumencranc*
   61 Cal. App. 3d 536 (Ct. App. 1976) ................................................... 16

*White v. Samsung Electronics Am., Inc.*
   971 F.2d 1395 (9th Cir. 1992) ...................................................... 13, 15

*Yates v. Nimeh*
   486 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................... 16

**<u>Statutes</u>**

18 U.S.C. § 1836(b)(3)(C) ............................................................................ 3

Cal. Civil Code § 3294 ...........................................2, 3, 14, 15, 16, 17

Cal. Civil Code § 3344 ...........................................9, 10, 13, 15

Is A Standard Remedy Under The Lanham Act................................................. 4

Lanham Act.........................................................................1, 2, 3, 20

**<u>Other Authorities</u>**

1 Rights of Publicity and Privacy § 6:50 (2d ed) .................................... 13

2 Rights of Publicity and Privacy § 11:35 (2d ed) (1995)...................... 11

Fed. R. Civ. P. 50................................................................................17, 20

Prosser, *Privacy*, 48 Cal.L.Rev. 383 (1960)........................................ 15

Restatement (Third) of Unfair Competition § 49 Comment d (1995) .................. 11

SMRH:4886-1514-9815.8

Case No. 2:20-cv-11548-JVS-AGR
DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO OPENING POST-
TRIAL BRIEF REGARDING EQUITABLE ISSUES

## I.     INTRODUCTION

In this case, the two disgorgement of profits awards are equitable, and the punitive damages award is legal. Both disgorgement and the punitive damages awards were properly decided, fit the evidence presented, and should be adopted by the Court.

As to the trade dress claim, MGA argues that the OMG Girlz should have no remedy for MGA's willful infringement, and spends much of its brief arguing to overturn the jury's willfulness verdict. While this briefing is not the forum to challenge the sufficiency of the evidence, MGA's argument fails for a simpler reason—willfulness is a question of fact for the jury. *See, Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir. 1997); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2016 U.S. Dist. LEXIS 82532, \*42 (S.D. Cal. June 17, 2016).

MGA then argues against disgorgement, again based on its contention that the jury erred in finding willfulness. But willfulness is not required for disgorgement, and disgorgement is particularly appropriate here because the Court has an obligation to make MGA's infringement unprofitable. *Munhwa Broad. Corp. v. Create New Tech. Co.*, 2015 U.S. Dist. LEXIS 174796, at \*18 (C.D. Cal. Sep. 2, 2015) ("The Ninth Circuit has stressed that 'the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party.'").

Finally, MGA claims the award is unsupported by the evidence and is "grossly excessive." Neither is true. The $17,872,253 disgorgement award was based on MGA's *own* representations about its profits for the infringing dolls, and MGA never proved its deductions. *See* Dkt. 1045. After listening to weeks of evidence, including both side's experts, the jury recommended an award of $17,872,253. Moreover, the jury found MGA created and profited from not one, not two, not even seven, but *fifteen* dolls, each of which infringed the OMG Girlz' trade dress—and disgorgement damages were assessed on only seven.

As to the common law misappropriation claim, multiple cases in the Ninth Circuit including *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 (9th Cir. 1998) make clear that equitable relief, including disgorgement, is available. There is no equitable basis to reduce the disgorgement award, and Ninth Circuit law allows both disgorgement and punitive damages for common law misappropriation. Moreover, California law is clear that punitive damages is for the same trier of fact that found liability, in this case the same jury that found MGA acted with oppression, fraud or malice. That award should stand as a legal jury award.

## II.    WHICH ISSUES ARE EQUITABLE

### A.    Disgorgement Under the Lanham Act and for Common Law Misappropriation Are Equitable Issues

The OMG Girlz do not dispute that disgorgement of profits under the Lanham Act and for Common Law Misappropriation are equitable issues. As explained below, the Court should adopt the jury's well-reasoned advisory verdicts.[1]

### B.    Punitive Damages for Common Law Misappropriation are Legal and for the Jury

In tort cases, punitive damages are not an equitable issue but a legal determination for the jury. "California's civil statutory scheme permits a trier of fact to impose a penalty for such conduct, by virtue of California Civil Code § 3294, which permits *a trier of fact* to impose punitive damages for the purpose of deterrence." *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) (emphasis added). Here the trier of fact on common law misappropriation was the jury.

California has long held a court ruling in equity should allow a jury to decide

---

[1] MGA misleadingly cites *JL Beverage* and *Fifty-Six Hope* as standing for the proposition that there is "no right to a jury trial" where the only remedy is disgorgement, but these decisions merely reiterate what the OMG Girlz do not dispute—that it is ultimately up to the Court to decide the amount in disgorgement. Here, both parties agreed to a trial by jury, and 9th Circuit law does not prevent this Court from adopting the jury's disgorgement awards.

punitive damages. For example, in *Rivero v. Thomas*, 86 Cal. App. 2d 225, 227 (1948) suit was brought for breach of fiduciary duty and to establish a trust. The court stated punitive damages are "entirely in the discretion of the jury, and they may be awarded only where there is some evidence of fraud, malice, express or implied, or oppression," (*id.* at 238-239) which corresponds to current Cal. Civ. Code §3294 and how the jury was instructed. In interpreting §3294, courts hold "[t]hose sections limit the right to recover exemplary damages [], ***in the discretion of the jury***, to cases based on tort and exclude contract actions." *Taylor v. Wright*, 69 Cal. App. 2d 371, 385, (1945). The exception is when statutory claim language expressly provides otherwise; not the case here.

That is why MGA's reliance on *Proofpoint, Inc. v. Vade USA, Inc*., No. 23-16085, 2024 WL 4003096, (9th Cir. Aug. 30, 2024) is off-point; *Proofpoint* was interpreting a specific statute, 18 U.S.C. §1836(b)(3)(C), which provides civil remedies for trade secret misappropriation and states "a court may . . . if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of damages awarded." That is no different from the Lanham Act claim here, where enhancement is for the Court if the jury finds willfulness. The *Proofpoint* court was not addressing §3294 which does not have the express limitations of the federal trade secret statute. MGA then cites *Liu v. SEC*, 591 U.S. 71 (2020) but that case had nothing to do with punitive damages, it addressed whether the statute for SEC investigations that allowed "equitable relief" also authorized disgorgement, ultimately holding it did.

Punitive damages exist to deter the misconduct from occurring again, and to show the jury's disdain of the wrongful act. Where, as here, the underlying claim lies in tort and there is no statute expressly providing remedies, punitive damages are left for the jury. Indeed, in analyzing a statute very similar to §3294,[2] the South Dakota

---

[2]  *See* SDCL 21–3–2

Supreme Court noted "[t]here is no limitation as to an equitable action in this statute" and held "the trial court properly submitted the issue of punitive damages to the jury." *Black v. Gardner*, 320 N.W.2d 153, 161 (S.D. 1982). Similarly, the Court here appropriately did so. There is no basis to disturb that.

MGA appears to agree that if the Court finds the punitive damages award was not equitable, its remaining punitive damages issues should not be addressed here. (Dkt. 1046 at 29, n.8.)

## III.   THE COURT SHOULD AWARD LANHAM ACT DISGORGEMENT

### A.   Disgorgement Is A Standard Remedy Under The Lanham Act

Disgorgement is a standard remedy in trademark and trade dress cases, as explained in the Ninth Circuit pattern jury charge 15.29, and the cases cited therein. Yet, rather than address why disgorgement award is allegedly inappropriate here, MGA attempts to contort the holdings from a factually and legally distinguishable case (based on case law out of the Third Circuit). *Harbor Breeze* is a *false advertising* case in which the jury found ***no*** willfulness and awarded ***$0***. *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2023 WL 2652855, at *5 (C.D. Cal. March 13, 2023). It is inapposite.

MGA also contorts language from this Court's summary judgment order. During the summary judgment stage, MGA argued that it was entitled to judgment on disgorgement because it was not a willful infringer, but (1) the Court did not grant summary judgment on willfulness because willfulness is a fact question for the jury (as discussed below) and (2) the Court properly noted that willfulness was ***not*** a precondition to recovery of profits. Dkt. 326 at 31. This comports with the pattern instruction and Supreme Court law.  *Cf. Romag Fasteners v. Fossil*, 140 S.Ct. 1492, 1497 (2020) (although willfulness is not required to show infringement, "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.").

### B.   MGA Improperly Asks the Court to Ignore the Jury's Willfulness Verdict

MGA devotes pages to arguing its infringement was not willful and citing cases where the infringement was found not willful. Dkt. 1046 at 12-16. There is no basis for the Court to overturn the jury's willfulness finding, certainly not in a brief "regarding equitable issues." Willfulness is a factual determination of the jury, not an equitable issue. *See, e.g.*, *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1046 (D. Or. 2008); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2016 U.S. Dist. LEXIS 82532, *42 (S.D. Cal. June 17, 2016)

Apparently recognizing this, MGA suggests it won summary judgment of no willfulness. Dkt. 1046 at 13. That is not what happened. MGA argued it was entitled to summary judgment *on disgorgement* and lost. Dkt 326 at 31. The jury was then presented with evidence for and against willfulness, and found MGA willfully infringed. The jury saw internal MGA emails and heard Ms. Consorti and Ms. Moshe/Brenner's testimony. TT Day 5PM at 85; TT Day 8AM at 80-81. MGA's CEO and designer witnesses testified that despite knowing of the OMG Girlz group in 2019, MGA took no steps to avoid brand confusion. TT Day 5PM at 49; TT Day 8AM at 79. A year later, after receiving a cease and desist letter, MGA deliberately did no investigation (and thus uncovered none of the facts above), and still made no changes. TT Day 2PM at 107. "Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights — in other words, that the defendant willfully blinded himself to facts that would put him on notice." *JUUL Labs, Inc. v. Chou*, 676 F. Supp. 3d 827, 844–45 (C.D. Cal. 2023). Despite being outside the ambit of this "equitable issues" briefing, this evidence and more supported the jury's willfulness verdict.

MGA argues that its failure to make changes after receiving the cease and desist letter is not evidence of willfulness, but courts analyzing this have found the exact opposite. For example, in *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202 (2d Cir

2019), the court observed that "a defendant might decline to halt sales of a challenged product [after] careful due diligence" and discussed, as an example of such diligence, a case where a party continued to sell an alleged infringing product "only after both in-house and outside counsel conducted due diligence and concluded that the use was non-infringing." Here, MGA's attorney signed a declaration admitting that he asked only a handful of employees whether anyone had visited with the Harrises in Atlanta 10 years ago, and no diligence was done to determine whether consumers were confused or what the design inspirations were. (Dkt. 272-1 at ¶¶ 4–7).

The jury also heard evidence that MGA's target market overlapped with the OMG Girlz' audience, and saw evidence and heard testimony that consumers purchased OMG dolls believing they were supporting the OMG Girlz, or that they were sponsored or in a business relationship. TT Day 8AM at 81; TT Day 5AM at 34-35. This is evidence from which it can be determined that MGA was intentionally passing off, *i.e.*, willfully infringing. *See Playboy Enters. v. Netscape Comms. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).

The jury was charged that to find willfulness "[y]ou must also consider whether MGA reasonably believed it was not infringing the Harris Parties' trade dress" and thus considered, but rejected, that defense. Dkt. 1013 at 28. Indeed, MGA's "reasonable belief" story lost all credibility when its designers and CEO claimed there was *no* similarity between the dolls and girls, then were impeached, and then claimed that obvious rip offs of Lady Gaga, Aubrey Hepburn, Elton John, and Michael Jackson were *completely unique* characters created by MGA. TT Day 10AM at 32:5-34:14; TT Day 11AM at 61:23-62:19. The jury rejected MGA's reasonable belief and other defenses, and had sufficient evidence to do so.

## C. Disgorgement Is Proper, As Is the Amount

Disgorgement of profits focuses on the prevention of unjust enrichment and the deterrence of willful infringement (not solely "diverted sales"). MGA primarily argues its mental state does not support willfulness or disgorgement, but as discussed

above, the jury as finder of fact rejected this. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968) (in cases with "infringement, but no direct competition" courts can make infringement unprofitable through disgorgement "on unjust enrichment rationale"). Just as MGA's own cited authority states, here it is necessary for the court to adopt the jury's verdict and award disgorgement to "protect the intangible value associated with [OMG Girlz' trade dress] and at the same time [protect] the buying public from some of the more unscrupulous members of our economic community." *Id.*

The expert testimony of Mr. Tregillis on MGA's gross revenues and net profits as to the seven dolls provides sufficient evidentiary support for the jury decision, and for this Court to adopt it. In addition, this advisory award does not represent MGA's total profits for infringing dolls, as argued here post-trial. The OMG Girlz made the decision to limit the dolls at issue in this trial to seven but MGA refused to dismiss the remaining 25 dolls absent an affirmative stipulation of non-infringement. As such, at MGA's insistence, 32 dolls remained in the case. *See, e.g.*, TT Day 12PM at 12. The jury found that seven additional dolls infringed the OMG Girlz trade dress—MGA is disgorging no profits for those dolls. The jury found six of those plus one additional doll misappropriated the OMG Girlz name and likeness—MGA is disgorging no profits for those dolls either. Thus the disgorgement verdict as rendered by the jury accounts for about half of the profits attributable to infringement, and about half of the profits attributable to common law misappropriation.

MGA then argues that factors other than infringement drove the sales of the dolls, citing the testimony of its experts Mangum and Isaacson. This is not supported by anything beyond MGA's experts' self-serving and conclusory testimony, which the jury rejected. In fact, the record evidence shows that consumers purchased these dolls because they believed they ***were*** representations of, or at least sponsored

by/affiliated with, the OMG Girlz.[3] And consumers testified that after buying what they believed to be the OMG Girlz' dolls "the way they are advertised [by MGA], I feel like you can't just buy one." TT(Campbell) at 17:22-18:07. Thus the evidence suggested that *more* of MGA's profits are attributable to the dolls' perceived-affiliation with the OMG Girlz (*i.e.*, the infringement).

### D.    MGA's 10% of Profits Argument Was Not Presented at Trial and Is Improper Now (and Lacks Any Evidentiary Support)

MGA proffers an argument that the OMG Girlz should only be awarded 10% of its profits, a new damages theory, unsupported by any trial evidence, and waived because this argument is being made for the first time in post-trial briefing. *Ramona Equip. Rental, Inc. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063 (9th Cir. 2014) (finding waiver where defendants attempted to raise an argument for the first time in post-trial briefing). Moreover, as discussed in the OMG Girlz' motion for enhanced damages (Dkt. 1045), MGA put forth no fact witnesses or reliable documents to support their costs, the document that allegedly disclosed revenue was created specifically for this litigation, and the only MGA witness whose testimony *could* have corroborated this information was Pedro Crisanti, MGA's 30(b)(6) designee on this topic who did not testify at trial. In addition, the witnesses who *did* testify at trial contradicted the MGA profitability position, such as Lora Stephens who testified the dolls she designed were financially successful while MGA's documents and expert claimed these same dolls lost money. (*Compare* TT Day 11AM at 83:15-84:1 *with* TT Day 12AM at 18:5-20:12). MGA's 10% argument should be disregarded.

---

[3] TT(Wagner) at 94:12-23; TT(Osborne) at 236:8-14; TT 24:18-25(Campbell); TT Day 5AM at 37:23-38:1.

## IV.    DISGORGEMENT FOR COMMON LAW MISAPPROPRIATION

### A.    The Court Should Again Reject MGA's Common Law Disgorgement Positions

MGA argues again that disgorgement is unavailable as a remedy for a common law misappropriation, now purporting to rely on legislative history relating to Cal. Civ. Code §3344. MGA contends that there is a distinction between the remedies available for statutory versus common law misappropriation claims. No such distinction or legislative history exists.

The Ninth Circuit has explained §3344 "is best understood as 'complementing,' rather than enacting, the common law cause of action, because the two are not identical." *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 414 (9th Cir. 1996); *Newcombe*, 157 F.3d at 692 ("Section 3344 neither replaces nor codifies the common law cause of action"). MGA contends that because "the California legislature … modified section 3344(a) to 'allow[] a plaintiff to recover punitive damages and the defendant's disgorged profits,' then punitive damages and disgorged profits necessarily were not remedies provided by the common law claim.  (ECF 1046 at 21.) But nothing in the original §3344 or the 1984 amendment states that (1) remedies expressly provided for in §3344 were previously unavailable  under common law; or (2) remedies for violations of the original §3344 were the exact same remedies for common law misappropriation.  *See* Cal. Civ. Code §3344(a), (g). Instead, the statute states that remedies are "***cumulative***" and "in addition to" other remedies provided for by law—be it common law or another statute. In other words, §3344(g) allows for a plaintiff to receive remedies for violations of §3344 <u>and</u> the common law. *Id.* Read in context, the 1984 amendment merely allowed a plaintiff to also recover "any profits from the unauthorized use that are attributable to the [unlawful] use" and "punitive damages" if they prove a violation, because prior to 1984 a plaintiff bringing only a §3344(a) claim was limited to recovering $750 or actual damages. Nothing states what remedies are or were available under the complementary common law

misappropriation claim. *See, Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). MGA points to nothing in the legislative history of §3344 that suggests amendment was added to provide forms of recovery that were not available under the common law.[4] The Court should reject MGA's statutory argument—again.

### B.    Multiple Authorities Allow Disgorgement as an Equitable Remedy for Common Law Misappropriation

Disgorgement is an available and proper equitable remedy to redress MGA's misappropriation. In *Newcombe*, the Ninth Circuit reversed the district court's summary judgment on plaintiff's common law misappropriation and §3344 claims, and then explained "[b]ecause we hold that Newcombe is entitled to proceed to trial on his common law claim against Coors and Belding, ***he is also entitled to proceed on his claim for equitable relief*** and constructive trust against these defendants." 157 F.3d at 694 (emphasis added). More recently in *Batis v. Dun & Bradstreet Holdings, Inc*., No. 22-cv-01924-MMC, 2023 WL 1870057 at *4 (N.D. Cal. Feb. 9, 2023), *aff'd*, 106 F.4th 932 (9th Cir. 2024) a court in the Northern District found disgorgement of "unjust profits from [defendant's] unauthorized use of [plaintiff's] persona" constituted sufficient injury in fact for a common law misappropriation claim. Likewise, in *Forrest v. Meta Platforms, Inc*., No. 22-cv-03699-PCP, 2024 WL 3024642, at *6 (N.D. Cal. June 17, 2024) the district court denied a motion to dismiss common law misappropriation based on the plaintiff's assertion that Meta made more profit from ads that included his likeness than it would have if the ads had not included his likeness. The profits disgorgement claim was enough to adequately plead common

---

[4] MGA cites to *Miller v. Collectors Universe, Inc*. for a discussion of the legislative history leading to the enactment of §3344.  (Dkt. 1046 at 21.)  Nothing in that opinion supports a finding that the 1984 amendment to §3344 was enacted because the legislature believed punitive damages and disgorged profits were not available as remedies under the common law.  *Miller v. Collectors Universe, Inc*., 159 Cal. App. 4th 988, 994 (2008).

law misappropriation.[5] *Id.* And in *Vanvakaris v. Fashion Forms, Inc.*, No. CV 19-7765-DMG (JEMx), 2019 WL 6245546, at *2-3 and fn. 6 (C.D. Cal. Nov. 22, 2019) plaintiff sought disgorgement of profits, emotional distress damages, compensatory damages, and punitive damages for common law misappropriation, and the court relied solely on the disgorgement of profits to support removal.

In addition to these cases, disgorgement is a widely used remedy in analogous situations and the prevailing view is that they are recoverable in right of publicity claims. Restatement (Third) of Unfair Competition § 49 comment d (1995) ("Although there is little case law, it is widely assumed that the defendant's profits are an appropriate measure of relief in right of publicity cases under rules analogous to the recovery of profits in trademark, trade secret, and copyright cases.") (citing cases). This is because "monetary relief may be awarded for the pecuniary loss to the plaintiff or the pecuniary gain to the defendant resulting from the unauthorized use of the plaintiff's identity." *Id. See also*, 2 Rights of Publicity and Privacy § 11:35 (2d ed) (1995) (noting "in right of publicity cases, a recovery of the infringer's profits attributable to the infringement is an 'ordinarily available' remedy").

### C.     The OMG Girlz Were Harmed by MGA's Misappropriation

MGA next argues that the OMG Girlz failed to show they were harmed. (Dkt. 1046 at 22.) But the jury was instructed that to find common law misappropriation it needed to find the OMG Girlz had proven "the OMG Girlz were harmed; and [t]hat MGA's conduct was a substantial factor in causing the OMG Girlz harm." Dkt. 1013 at 24. MGA's bare attorney argument cannot overturn the jury's verdict.

As the Northern District court found in *Batis*, unjust enrichment constitutes harm supporting a common law misappropriation claim. 2023 WL 1870057 at *9

---

[5]     *See also Olive v. Gen. Nutrition Ctrs., Inc.*, 242 Cal. Rptr. 3d 15, 29 (Ct. App. 2d Dist. 2018) where the jury was allowed to consider actual licensing damages, emotional distress damages, *disgorgement of profits*, and punitive damages. Although the jury did not award profits, the appellate court noted no error.

(citing *In re Facebook, Inc. Internet Tracking Lit.*, 956 F.3d 589, 599 (9th Cir. 2020) (noting "unjust enrichment" constitutes a harm recognized at common law)). Likewise, in *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. De C.V.*, Nestle sued in Texas for California common law misappropriation, and sought disgorgement of Ultra's gray-market profits and an injunction preventing continued gray-market activity. The district court found Nestle's expert report on disgorgement was sufficient evidence of economic damages to satisfy the commercial-damage element of the California misappropriation claim. *Nestle USA, Inc.*, 2023 WL 7107126, at *7 (W.D. Tex. May 23, 2023), *R&R adopted in part, rejected in part (on other grounds)*, 2023 WL 7107125 (W.D. Tex. July 10, 2023).

Here, the jury heard and accepted evidence of MGA profiting from the OMG Girlz' name and likeness. Mr. Larian testified that MGA pays Paris Hilton for making a doll that looks like her. TT Day 3PM at 42:2-6. He agreed purchasers would think Ms. Hilton sponsors, is associated with, or approves the doll. *Id.* at 43:1820. He testified MGA pays Kylie Jenner for a "Bratz Kylie Jenner" doll. *Id.* at 42:14-18. So the jury knew that MGA pays celebrities for dolls with their name and identity—but paid the OMG Girlz nothing. The jury knew that Mrs. Harris had requested MGA enter a license and account for profits. Exh. 19. The jury heard testimony and saw evidence that some consumers purchased OMG Dolls on the understanding they were supporting the OMG Girlz, and thus MGA diverted revenue from the OMG Girlz. *See, e.g.*, TT Day 2AM at 70; Exh. 323-B ("I thought it was their dolls. That was the only reason I bought them. I thought I was supporting them."); Exh. 332-B ("I always thought that the dolls were based on the girls. Only reason I started buying them for my daughter."); Exh. 320-C ("When it came out, I thought you were part owner"). The jury heard similar testimony from four consumers. This constitutes harm in the form of MGA unjustly profiting from its willful, oppressive, and wholly unauthorized use of the OMG Girlz' intellectual property. No more is needed, but the jury heard other evidence of harm. Mrs. Harris testified MGA recreated outfits designed

exclusively as part of the OMG Girlz brand. TT Day 2AM at 67-68. Mrs. Harris testified she was interested in making dolls based on the OMG Girlz, and applied to register OMG Girlz for use with dolls—an opportunity taken by MGA. *Id.* at 48-50, 124. Ms. Pullins testified she can't go in the aisles where OMG dolls are."[6] TT Day 7AM at 102. There were multiple ways the jury properly reached the conclusion that the OMG Girlz were harmed.

Lastly, MGA wrongly cites *Newcombe* as alleged support for the position that MGA's profits cannot be used a substitute for the OMG Girlz harm, but *Newcombe* stands for the exact opposite. In *Newcombe*, the plaintiff (a famous baseball pitcher) contended defendants violated his statutory rights under §3344 and common law rights by using his likeness in a beer advertisement. 157 F.3d at 689. The Ninth Circuit found that "to sustain his common law cause of action for commercial misappropriation," the plaintiff needed to show "resulting injury." *Id.* at 692. The Ninth Circuit then held Newcombe "was injured because he was not compensated for the use of his likeness." *Id.* at 693. Many cases in the Ninth Circuit have found the same. *Motschenbacher*, 498 F.2d at 824–25; *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992), *as amended* (Aug. 19, 1992) ("Considerable energy and ingenuity are expended by those who have achieved celebrity value to exploit it for profit. The law protects the celebrity's sole right to exploit this value."). Said another way, "if a person's identity (even that of a non-celebrity) is used in advertising or promotion, it will be presumed that the identity had some commercial value and its use caused some loss." 1 Rights of Publicity and Privacy § 6:50 (2d ed). The OMG

---

[6]     The Ninth Circuit recognizes, "the injury suffered from an appropriation of the attributes of one's identity may be 'mental and subjective'—in the nature of humiliation, embarrassment, and outrage." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974).

Girlz established a "resulting injury" from MGA's misappropriation and are entitled to disgorgement.

### D.    The OMG Girlz Do Not Need to Elect a Remedy

MGA contends the Court should require the OMG Girlz "to elect their remedies before a final judgment is entered." (Dkt. 1046 at 23.) MGA misstates the application of the election of remedies doctrine and the timing of its application. Trade dress and common law misappropriation claims are not "repugnant and inconsistent" as would require election, and the election doctrine would only apply *after* a final judgment, not now. But even at the proper time, the Court should not apply election of remedies to prevent double recovery, but instead merge the disgorgement awards if both stand after appeal. The OMG Girlz are entitled to pursue both claims through appeal to ensure they can collect full disgorgement damages. However, as this briefing was solely to address which issues were equitable, the OMG Girlz will not further brief the issue here but can do so at the appropriate time if needed.

## V.    PUNITIVE DAMAGES WERE PROPERLY AWARDED

Disgorgement is an equitable remedy, returning improperly obtained gains, while punitive damages are a legal remedy meant to punish the defendant for wrongdoing. They serve distinct purposes and both may be necessary, as the jury found here.

### A.    Punitive Damages Are Available

MGA argues that punitive damages are unavailable where liability is found for common law misappropriation, but cites no legal support. California statutes and caselaw provide the support *for* availability. Specifically, Cal. Civ. Code §3294 provides that in tort actions, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." The Ninth Circuit has likewise explained that a plaintiff is "entitled to punitive damages if she proved 'by clear and convincing evidence that

[Defendants] ha[ve] been guilty of oppression, fraud, or malice.'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004). Neither the statute nor the Ninth Circuit limit or exclude punitive damages for the common law tort of misappropriation of name or likeness;[7] this Court should not be the first to do so.

MGA argues that this Court should ignore *Eastwood v. Sera Labs, Inc.*, No. 2:20-cv-06503-RJK (JDEx), 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021) which expressly states "[b]oth California Civil Code § 3344 *and common law right of publicity* allow for an award of punitive damages" because, MGA says, it is "a single non-binding district court case." MGA is wrong; the Ninth Circuit holds the same. In *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1098 (9th Cir. 1992), the jury awarded Waits $375k in compensatory damages and punitive damages of $2M for common law misappropriation. The Ninth Circuit upheld the punitive damages award noting their availability "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Id.* at 1104. Likewise, in *Leavy v. Cooney*, 214 Cal. App. 2d 496 (Ct. App. 1963) the court found Levy's claim for unauthorized use of his name and image was not a contract claim but a claim for "a tortious invasion of Leavy's right of privacy" and thus entitled him to punitive damages. *Id.* at 501. *See also*, *Vanvakaris v. Fashion Forms, Inc.*, and *Olive v. Gen. Nutrition Ctrs., Inc.*, cited *infra* where plaintiffs sought disgorgement, actual damages, and punitive damages for common law misappropriation of name or likeness without court disapproval or dispute.

## B. Punitive Damages Were Appropriately Awarded

Just as §3294 does not exclude punitive damages for common law

---

[7] In *White*, 971 F.2d at 1397, the Ninth Circuit cited Prosser, *Privacy*, 48 Cal.L.Rev. 383 (1960) as "one of the earliest and most enduring articulations of the common law right of publicity cause of action" in California, and Prosser specifically noted "[p]unitive damages can be awarded upon the same basis as in other torts, where a wrongful motive or state of mind appears." *Privacy*, 48 Cal. L. Rev. at 409.

-15-

SMRH:4886-1514-9815.8

Case No. 2:20-cv-11548-JVS-AGR
DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO OPENING POST-
TRIAL BRIEF REGARDING EQUITABLE ISSUES

misappropriation, the statute neither limits nor exclude punitive damages to situations of either legal or equitable damages. In *Topanga Corp. v. Gentile*, 249 Cal. App. 2d 681, 691 (Ct. App. 1967), the trial court as trier of fact awarded no compensatory damages, and instead ordered defendants to surrender part of their shareholder interest (akin to surrendering profits here).  The California Court of Appeal explained:

> The requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed. 'The rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual damages is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed.' The requirement is met here.

*Id.* at 691-692.  *See also Weiss v. Blumencranc*, 61 Cal. App. 3d 536, 542 (Ct. App. 1976). Federal district and appellate courts have held the same. In *Yates v. Nimeh*, 486 F. Supp. 2d 1084, 1086 (N.D. Cal. 2007) the plaintiff could not obtain any compensatory damages, but sought a breach of fiduciary duty ruling and punitive damages. The district court allowed the punitive damages claim noting that "[t]he requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed."[8] *Id.* at 1088.  *See also In re Javahery*,  2017 WL 971780, at *8 (B.A.P. 9th Cir. Mar. 14, 2017), *aff'd*, 742 F. App'x 307 (9th Cir. 2018); *MJT Sec., LLC v. Toronto-Dominion Bank*, No. 04-16362, 2006 WL 1236661, at *3 (9th Cir. May 9, 2006) (holding plaintiff could seek punitive damages even though it did not seek actual damages).

Other California courts have said that an award of compensatory damages *or its equivalent* is a prerequisite to an award of punitive damages, noting restitution, an offset, damages presumed by law, or nominal damages, are sufficient. *Cheung v.*

---

[8]     Although some courts have at times been imprecise with the language, the only cases found where punitive damages were not allowed are cases where plaintiffs were found not to have suffered *any* compensable damages at all, or where the finding that the plaintiffs suffered actual damage was reversed.

*Daley*, 35 Cal.App.4th 1673, 1677 n.8 (1995). Earlier in this proceeding, in ruling on MGA's summary judgment motion and again in ruling on motions in limine, the Court noted that to the extent the OMG Girlz "seek profits *as a surrogate measure of their own damages*, they may present evidence of the profits at trial." Dkt. 323 at 32-33; Dkt. 502 at 8.  And on the misappropriation claim, the jury was instructed that "the OMG Girlz must prove the amount of their damages" and that MGA's profits were "damages claimed by the OMG Girlz." Dkt 1013 at 29.  Whether §3294 requires only a tortious act by the defendant, or an award of compensatory damages *or its equivalent*, under California law, the jury's finding meets the requirement for awarding punitive damages.  As the California Supreme Court said "[t]he rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual damages is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed. 'Such damages are mere incidents to the cause of action and can never constitute the basis thereof.'" *Brewer v. Second Baptist Church of Los Angeles*, 32 Cal. 2d 791, 801–02 (1948). Here the jury found the tortious act (common law misappropriation), awarded the equivalent of damages (disgorgement) and found MGA guilty of oppression, fraud, or malice. Thus under §3294 the punitive damages award was proper.

### C.    MGA's Strawman Arguments Are Contrary to the Record and the Jury's Finding of Oppression, Fraud, or Malice

MGA makes several strawman arguments against the jury's verdict. If the Court finds the punitive damages were not equitable, it need not reach these arguments (as they would need be addressed under Fed. R. Civ. P. 50). But for completeness, the OMG Girlz address the arguments as made.

MGA's first strawman is that "the Tots were never accused and are unrelated to the misappropriation of likeness claim." (Dkt 1046 at 26.) But from opening statement, throughout trial, and in closing argument, MGA made the Tots pivotal to their case.  TT Day 1PM at 63, 70; TT Day 6AM at 41; TT Day 8PM at 64; TT Day

12PM at 28.  Because MGA made the Tots front and center in their defense, MGA's argument that the jury could not consider credibility and misrepresentations regarding the Tots is contrary to its case theme.

MGA's second strawman is that *MGA* could not have thought the OMG Girlz were weak or that MGA could take advantage when adopting their name and likeness in 2019 and 2020, because at trial in 2024 the Girlz or their parents testified they were financially successful. (Dkt 1046 at 26.) The issue is not how successful the Girlz or the Harrises were—*the issue is MGA's state of mind*, its intent, and its reprehensible conduct as determined by the jury. MGA repeatedly argued and testified the OMG Girlz were unsuccessful (TT Day 1PM at 82) and labelled them "money grabbers," "extortionists," and "nowhere." Malice sufficient to support an award of punitive damages "may be established by a showing that the defendant's wrongful conduct was willful, intentional, and done in reckless disregard of its possible results." *Alberts v. Liberty Life Assurance Co. of Bos*., 65 F. Supp. 3d 790, 796 (N.D. Cal. 2014). The evidence supported the jury's finding that MGA intentionally and recklessly disregarded OMG Girlz' rights. MGA thought it could bully and harass the OMG Girlz when making and suing based on the dolls—it just turned out to be wrong.

MGA's third strawman is "to the extent Counterclaimants established that MGA copied from artists *other than* the OMG Girlz [that] is of no moment." (Dkt 1046 at 26.) Not so. MGA's pattern and likelihood of repetition is one factor justifying punitive damages *Lopez v. Watchtower Bible & Tract Soc'y of New York, Inc*., 246 Cal. App. 4th 566, 592 (2016) ("Although punitive damages may not be used to punish a defendant for injury inflicted on third parties, a jury may consider evidence of harm to others in determining the reprehensibility of a defendant's conduct toward the plaintiff."); *Johnson v. Ford Motor Co*., 35 Cal. 4th 1191, 1196 (2005) (noting conduct is more reprehensible when it is part of a repeated corporate practice). Here the jury heard and saw evidence that MGA not only used the OMG Girlz' likeness without compensation, but did so to Beyonce, Lady Gaga, Michael Jackson, and

1  others—and was untruthful about those as well, impacting MGA's credibility and its

2  defenses.

3        Lastly, MGA asks the Court to disregard the jury's credibility findings, and

4  misrepresents the impact of prior Court Orders. *See* Dkt. 1046 at 27 (MGA

5  representing "this Court previously discounted the relevance of this entire situation"

6  regarding the link to the OMG Girlz song in MGA's email). But that was on summary

7  judgment, without the benefit of trial testimony and cross examination on the email

8  and the included links. Since then, the credibility of Ms. Consorti and Ms. Moshe was

9  tested, and the jury rendered a verdict rejecting their stories, which cannot be

10  overcome by post-trial attorney argument contrary to the record evidence.

11        As discussed above and in the next section, the jury had many bases to find

12  MGA's conduct fit the definitions of fraud, malice or oppression.

13        **D.    The Punitive Damages Award Comports With Due Process**

14        MGA starts its last section by labelling the jury's punitive damages award

15  (which as discussed above should not be considered advisory) as "exceeding

16  constitutional limits" and as grossly excessive."  Notably, MGA cites no case law

17  holding an award that was three times awarded profits is excessive, because it is not.

18  "Single-digit multipliers are more likely to comport with due process, while still

19  achieving the State's goals of deterrence and retribution." *Riley v. Volkswagen Grp.*

20  *of Am., Inc.*, 51 F.4th 896, 902 (9th Cir. 2022). In *Planned Parenthood*, a case relied

21  on by the *Riley* court, the Ninth Circuit upheld a 12.5 to 1 ratio and stated "[i]n cases

22  where there are significant economic damages and punitive damages are warranted,

23  but behavior is not particularly egregious, a ratio of up to 4 to 1 serves as a good proxy

24  for the limits of constitutionality." *Planned Parenthood of Columbia/Willamette Inc.*

25  *v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005). Here the jury found

26  the conduct egregious, but the ratio is less than the 4 to 1 limit for conduct that is *not*

27  particularly egregious. There is no due process issue with the amount of punitive

28  damages awarded.

MGA then properly cites the standard of appellate review for assessing whether a punitive damages award comports with due process. If the Court finds that the jury award of punitive damages was properly awarded for common law misappropriation and is not advisory, this argument should be left for appeal, or for a Fed. R. Civ. P. 50 motion if applicable. Nevertheless, on the merits, MGA's argument fails based on the jury's verdict. On appeal, due process is evaluated based (1) the degree of reprehensibility of the conduct; (2) the disparity between the harm or potential harm suffered by plaintiff and the punitive damages award; and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-575 (1996). To assess reprehensibility, the Ninth Circuit considers whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Riley*, 51 F.4th at 900. These are the same factors that were given to the jury to determine how reprehensible MGA's conduct was. Dkt. 1014. As noted above the 3:1 ratio is fully acceptable, and the difference between the punitive damages and analogous statutes supports the punitive damages award. Should the Court request, or should MGA raise this in a proper format (not a brief on which issues are equitable), the OMG Girlz will fully brief the law and the supporting evidence.

## VI.    CONCLUSION

As to the Lanham Act disgorgement, the jury's willfulness verdict is not advisory, and the disgorgement of $17,872,253 in profits is proper and well supported. As to the common law misappropriation claim, disgorgement is a proper remedy for this claim, and the disgorgement of $17,872,253 in profits is likewise proper and well supported. Finally, the punitive damages award is not equitable, was properly determined by the jury, and should be included in a final judgment.

-20-

1

2  Dated:  December 6, 2024

3
                                    SHEPPARD, MULLIN, RICHTER &
4                                   HAMPTON LLP

5

6                               By  /s/ John R. Keville
7                                    JOHN R. KEVILLE

8                                   *Attorney for Defendants and Counterclaimants*
9                                   *CLIFFORD "T.I." HARRIS, TAMEKA "TINY"*
                                    *HARRIS, OMG GIRLZ LLC, and Counter-*
10                                  *Claimants GRAND HUSTLE, LLC, PRETTY*
11                                  *HUSTLE, LLC and OMG GIRLZ LLC*

12

13              **CERTIFICATE OF COMPLIANCE**

14       The undersigned, counsel of record for the Defendant / Counter-Claimants,

15  certifies that this brief contains 6,931 words, which complies with the word limit of

16  L.R. 11-6.1.

17

18                          By: /s/ *John R. Keville*
19                             John R. Keville
                               *Attorney for Defendants*
20
                               *CLIFFORD "T.I." HARRIS, TAMEKA*
21                             *"TINY" HARRIS, OMG GIRLZ LLC, and*
                               *Counter-Claimants GRAND HUSTLE,*
22                             *LLC, PRETTY HUSTLE, LLC and OMG*
                               *GIRLZ LLC*
23

24

25

26

27

28

SMRH:4886-1514-9815.8