John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

Valerie E. Alter (SBN: 239905)
valter@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | **Case No. 2:20-cv-11548-JVS-AGR**<br><br>**REPLY IN SUPPORT OF DEFENDANTS' / COUNTERCLAIMANTS' MOTION FOR ENHANCED DAMAGES UNDER THE LANHAM ACT**<br><br>Complaint Filed:  December 20, 2020<br>Trial Date:  September 9, 2024 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 5

    A.      MGA's Profits Were Attributable to MGA's Infringement and Misappropriation ...................................................................................... 6

    B.      The Evidence Supported the Jury's Willful Infringement Finding and Its Finding of Malicious and Oppressive Misappropriation ............... 8

    C.      MGA Wrongly Downplays and Disregards the Harm It Caused the OMG Girlz ............................................................................................ 10

    D.      MGA Failed to Prove Costs, And Now Offers an Unsupported and Too-Late Damages Theory ................................................................... 13

    E.      The Lanham Act Gives This Court Discretion To Award Enhanced Damages, Whether Capped at "Trebled" Or Not ................................... 15

    F.      The Requested Enhancement Is Not Punitive ......................................... 17

III.    CONCLUSION ............................................................................................. 19

1

## TABLE OF AUTHORITIES

2

Page(s)

3    <u>Cases</u>

4    *Aoki v. Gilbert*
5        2020 WL 6741693 (E.D. Cal. Nov. 17, 2020) ................................................... 16

6    *Binder v. Disability Grp., Inc.*
7        772 F. Supp. 2d 1172 (C.D. Cal. 2011) ............................................................ 12

8    *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*
        497 F. Supp. 947 (S.D.N.Y. 1980) .................................................................... 15
9

10   *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*
        2009 WL 10674076 (S.D. Cal. Aug. 12, 2009) ................................................. 18
11
     *Brighton Collectibles, LLC v. Believe Production, Inc.*
12       2018 WL 1381894 (C.D. Cal. Mar. 15, 2018) .................................................. 18

13   *Deering, Milliken & Co. v. Gilbert*
14       269 F.2d 191 (2d Cir. 1959) .............................................................................. 15

15   *Getty Petroleum Corp. v. Bartco Petroleum Corp.*
16       858 F.2d 103 (2d Cir. 1988) .............................................................................. 15

17   *Maier Brewing Co. v. Fleischmann Distilling Corp.*
18       390 F.2d 117 (9th Cir. 1968) ....................................................................... 11, 12

19   *Merck Eprova AG v. Gnosis S.p.A.*
20       760 F.3d 247 (2d Cir. 2014) .............................................................................. 10

21   *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software*
        880 F. Supp. 1005 (S.D.N.Y. 1994) .................................................................... 9
22

23   *Nutting v. RAM Sw., Inc.*
        69 F. App'x 454 (Fed. Cir. 2003) ...................................................................... 16
24

25   *OmniGen Research, LLC v. Yongqiang Wang*
        2017 U.S. Dist. LEXIS 189543 (D. OR. 2017) .................................................... 9

26   *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*
27       2012 WL 12893524 (C.D. Cal. June 27, 2012) ...................................... 10, 11, 16

28

*Paige LLC v. Shop Paige LLC*
   2024 WL 3594450 (C.D. Cal. July 10, 2024) .............................................. 17, 18

*Scott Collection, Inc. v. Trendily Furniture, Ltd. Liab. Co.*
   68 F.4th 1203 (9th Cir. 2023) .............................................................. 10

*Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*
   175 F.R.D. 658 (S.D. Cal. 1997) ......................................................... 17

*Yuga Labs, Inc. v. Ripps*
   2023 WL 7089922 (C.D. Cal. Oct. 25, 2023) ..................................................... 16

<u>Statutes</u>

35 U.S.C. § 1117(a) ............................................................. 6, 14, 15, 16, 17

<u>Other Authorities</u>

4 McCarthy on Trademarks and Unfair Competition § 30:64 (5th ed.).................. 12

# I.    INTRODUCTION

MGA's opposition completely discredits the jury's findings and ask this Court to do the same. Indeed, the majority of MGA's brief consists of MGA stating the evidence supports something that the jury rejected.

For example, MGA incorrectly argues that none of the profits from the OMG Dolls are attributable to its willful infringement of the OMG Girlz' trade dress or name, identity, and likeness. But the jury evaluated testimony from MGA's expert on the one hand, and four consumer witnesses on the other and decided that at least $17,872,253 in profits *were* attributable to the infringement. MGA also offers an alternative that maybe only 10-15% was attributable, but that was not a theory it chose to present at trial. It made the strategic choice to present Mangum's flawed "zero attributable profits" theory. It does not get a redo because the jury saw through that illogical argument.

MGA also incorrectly argues that there was no evidence to support a willfulness finding. Not so. The jury heard evidence of how MGA failed to perform any internal investigation or make any changes after receiving the cease and desist letter, despite being aware of the overlap in the target market.  The jury heard MGA sued the OMG Girlz almost immediately upon receiving the Harrises' letter, before any investigation and without any effort to retain documents, leading to obvious and proper inferences. And the jury heard MGA call the OMG Girlz and their families "extortionists" for asserting their rights, heard MGA's uncredible and inconsistent claims on what constituted "copying," and that during the litigation MGA made dolls even more similar to the OMG Girlz. This and more contributed to and supports the jury's willfulness finding.

MGA next incorrectly contends that there was no evidence of actual harm, and that any evidence of intangible harm was "excluded" by this Court (it wasn't). The OMG Girlz provided adequate evidence of harm. MGA's brief also makes clear it misunderstands remedies, because in addition to actual damages and diverted profits,

it is well-settled that disgorgement of profits may *also* be awarded under an unjust enrichment rationale. MGA largely rests its position on the distinction between damages and profits, but the jury was instructed that profits were the damages, and Ninth Circuit law eschews MGA's hyper-linguistic approach. MGA also ignores the jury's finding that the OMG Girlz were harmed by MGA's misappropriation, which is an element of that claim. (*See* Dkt. 1013, Jury Instruction No. 18).

MGA failed to prove deductions during trial and that cannot be remedied now. MGA's expert admitted that he did not provide the jury with any analysis regarding allocation of profits, and MGA provided no fact witnesses to prove any deductions. Thus, MGA's profit numbers were suspect and almost certainly underreport the company's profits on this successful line of OMG Dolls.

MGA argues that "trebling" disgorged profits is not allowed under the Lanham Act. But MGA acknowledges that there is no Ninth Circuit opinion prohibiting trebling of disgorged profits. Regardless, Section 1117(a) indisputably allows for disgorged profits to be increased, whether by a multiple or a set number and without a stated limit.  Finally, MGA argues that enhancement cannot be punitive. The enhancement requested here is not punitive, but is instead based on deterrence, increasing a conservative award, and compensating intangible harms. Such enhancement is just and consistent with Ninth Circuit law and is warranted here.

## II.    ARGUMENT

### A.    MGA's Profits Were Attributable to MGA's Infringement and Misappropriation

MGA's consumers testified at trial and explained how the company's use of the OMG Girlz' likeness and trade dress influenced their decision to purchase the OMG Dolls. Further, the consumers testified that they purchased additional OMG Dolls (outside those found to be infringing) because the consumers mistakenly believed that the OMG Girlz sponsored or were somehow affiliated with the line of OMG Dolls.[1]

---

[1] Maxine Wagner TT at 94:12-23 ("To be honest with you, I thought that the whole line was created based on the girls. I didn't know that there was, you know, other

The jury heard this testimony from four consumers and believed that (conservatively) $17,872,253 in profits were attributable to MGA's infringement. Importantly, the issue of apportionment was *MGA's burden*. The only apportionment theory MGA put forward was a "zero attributable profits" theory.  MGA's expert admitted this theory failed to account for the most popular dolls, and never explained why MGA would continue to use a trade dress worth *nothing*.  The jury rightly did not accept MGA's nonsensical, self-serving theory. It therefore awarded the entire conservative profit amounts and was right to award at least that. Indeed, MGA admits that these dolls are marketed as "collectible," and the consumers testified that after buying what they believed to be the OMG Girlz' dolls "the way they are advertised [by MGA], I feel like you can't just buy one." Moneice Campbell TT at 17:22-18:07. Thus, MGA profited *more* off of its use of the OMG Girlz brand and goodwill than was accounted for in the profits calculation based on MGA's unproven expenses.

MGA's failure to meet its burden ends the analysis. But there was additional evidence rebutting MGA's "zero attributable profits" theory. For example, MGA's former marketing director, Rachel Brenner's testimony further supports this. The smaller L.O.L. Surprise! dolls were sold as "collectible" in opaque containers—certain dolls were more rare than others so because of the lower price point, consumers would purchase several in hopes of getting the "more rare" dolls—even if it meant getting a few repeats. (Day 8 (AM) at 20:6-9). Although these dolls also used celebrities' likenesses (e.g., Michael Jackson, Audrey Hepburn, Elton John), a

---

babies and other dolls and so on and so forth. But just like with Barbie, there's the whole -- you know, she has different friends and so on and so forth. I'm sure there is. But, no, the connection that we made with the dolls was because of the connection on television."); Windi Osborne TT at 236:8-14 ("to be in the store and to see that the packaging had the OMG and I'm looking at the doll with the skin tone and the hair and the outfit and assumed that LO – I'm sorry -- that OMG Girlz had partnered with the LOL Surprise! company and they're like a partnership and came out with dolls."); Moneice Campbell TT 24:18-25 ("[O]kay, the[OMG Girlz] have these dolls now and I am going to buy them because I support them"); Dominique Alexander TT Day 5, (AM) at 37:23-38:1 ("[The OMG Dolls] had 'OMG' on there, and then, like I said, it was like girls, the girl group, and then the girly rock star look is pretty much the same as depicted there with the dolls. . .").

consumer would not know that until he or she opened the opaque container and revealed the miniature celebrity-copy inside. (Day 8 (AM) at 19:11-19). Compare this to the packaging for the larger, more expensive OMG Dolls and it is clear that the OMG Girlz' trade dress is what attracted consumers. The marketing and packaging showed the consumer which doll it was purchasing (minimizing the "surprise" element). (*See, e.g.*, Tr. Exh. 1723 (Runway Diva Doll and box)). Thus, the name OMG, and the overall look and feel of the doll was apparent to the consumer, and as the consumer witnesses testified, these elements corroborated their mistaken belief that these dolls were sponsored by or affiliated with the OMG Girlz. Numerous consumers purchased these dolls because of the association, which is why these profits should be considered ill-gotten gains, as the jury found.

**B.    The Evidence Supported the Jury's Willful Infringement Finding and Its Finding of Malicious and Oppressive Misappropriation**

The jury found that MGA's conduct was willful, and enhanced damages are necessary to compensate the OMG Girlz, to make MGA's infringement unprofitable, and to deter repetition of MGA's conduct. As the OMG Girlz explained in its opening brief, MGA is a sophisticated company whose unofficial intellectual property policy is the vague statement on a sign, "don't copy." (Day 2 (PM) at 107:18-25). But MGA's designers claimed "don't copy" meant don't make an exact-in-every-detail replica, and none remember being trained on the topic. *See* (Day 8 (AM) at 65:24-66:11; 79:19-24); *see also* (Day 2 (PM) at 93:19-21). It was apparent the sign was a litigation-inspired prop. MGA has admitted it never made an effort to investigate the OMG Girlz' trade dress or misappropriation of name, identity, and likeness allegations in the cease and desist letter before rushing to sue the OMG Girlz three days before Christmas. For example, Mr. Larian claims he was unaware that his designers were aware of the OMG Girlz,[2] had circulated links to popular OMG Girlz

___

[2] Despite being aware of the OMG Girlz, whether through personal applications or through the 2019 email between Ms. Consorti and Ms. Moshe/Brenner or after receiving the 2020 cease and desist letter, MGA also admitted it had never taken any

songs, or had images of the OMG Girlz on their Pinterest boards (Day 2 (PM) at 115:16-19; 111:15-17; 111:20-22). Similarly, the designers who testified for MGA said that no one spoke to them about this lawsuit until their depositions and their documents were not searched. (Day 5 (PM) at 15:5-16:14); (Day 11 (AM) at 48:6-49:9). At best MGA was willfully blind (which is sufficient for a willfulness verdict) but the more likely clear inference was MGA rushed to court to intimidate the OMG Girlz and to hide the facts.

Given the well-supported willfulness finding, enhancement is also appropriate to ensure MGA does not profit at all from its conduct and thus deter MGA from committing willful infringement in the future. MGA claims that it has ceased direct sales of the infringing dolls, therefore there is nothing to deter. (Dkt. 1062 at 21). But MGA's representation—which included no citation or support that sales actually ceased—was made only after it lost at trial. (*See* Dkt. 1046 at 14 n.5).  MGA thus wants credit for stopping sales only after making the OMG Girlz litigate this case for years and prove willful infringement. Furthermore, MGA says it has stopped "direct" sales but makes no representations about sales to retailers, nor does it represent to have stopped retailers like Amazon or Walmart from selling the infringing products. But most importantly, MGA's argument misses the mark because the deterrent effect is intended to prevent would-be bad actors from engaging in *future* unlawful conduct via future potential infringements by making it unprofitable, not just to "deter" the present bad actor from continuing sales of an infringing product in the present case after a finding of liability. *OmniGen Research, LLC v. Yongqiang Wang*, 2017 U.S. Dist. LEXIS 189543 (D. OR. 2017) (Courts may "consider that enhancing damages would advance the cause of deterring Defendants and others similarly situated from repeating the type of unfair and deceptive behavior." "); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software*, 880 F. Supp. 1005, 1025 (S.D.N.Y. 1994) (enhancing damages to compensate for harm "that is difficult to quantify" and "to provide some

steps to differentiate the OMG Dolls from the OMG Girlz. (Day 8 (AM) at 79:19-24).

deterrence for future violations by [defendant].”). MGA’s argument is disingenuous; ceasing sales *after* MGA has already made millions in ill-gotten gains and is finally held accountable does not qualify as a sufficient “deterrent” obviating enhancement of profits.[3] To the contrary, it demonstrates that neither a cease and desist letter, nor years of litigation, were enough to stop MGA from continued to unlawfully profit from its infringement, and more is needed to deter MGA from similar future conduct by showing it that  infringement does not pay (without being punitive). *See Scott Collection, Inc. v. Trendily Furniture, Ltd. Liab. Co.*, 68 F.4th 1203, 1222 (9th Cir. 2023) (The district court has “discretion to fashion relief, including monetary relief, based on the totality of the circumstances, because it is essential that trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.”); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263 (2d Cir. 2014).

### C.    Enhancement is Warranted Based on the Harm MGA Caused the OMG Girlz

Throughout its brief, MGA tries to downplay or disregard the harm it caused, even going so far as to claim that its malicious and oppressive behavior caused *no* harm. These arguments are wrong as a matter of fact and law. The harm caused, including the additional profits gained, warrants enhancement. This is not a punitive measure. It is necessary so MGA does not profit from the misconduct it still pretends never happened.

The jury has already made the correct factual determination that the “OMG Girlz were harmed” by MGA’s misappropriation and that “MGA’s conduct was a substantial factor in causing the OMG Girlz Harm” (*See* Dkt. 1013 at Jury Instruction No. 18; Dkt. 1009 at 6)). The jury indeed heard evidence that MGA diverted financial

---

[3] MGA also puts great stock into findings from a prior trial. But, these findings are irrelevant and were based on bad law. Unsurprisingly, MGA cites zero case law that stands for the proposition that an overturned verdict from a superseded jury trial in which the jury received legally erroneous instructions should factor into the calculation for equitable relief. (*See* Dkt. 860 at 7 (“[T]he *Rogers* instruction was . . .a hurdle that the Harris Parties were required to overcome in order to prevail”)).

opportunity from the OMG Girlz through use of their name, identity, and likeness, as well as their brand as a whole.

As a matter of law (and as stated in MGA's own cited authority): "A plaintiff may also (and simultaneously) seek a defendant's profits on the basis that the defendant should not be allowed to retain its ill-gotten gains, *regardless of the plaintiff's damages*." *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*, 2012 WL 12893524, at *5 (C.D. Cal. June 27, 2012) (emphasis added). "[T]he Ninth Circuit approved the award of a defendant's profits under an unjust enrichment theory, and would do so even without evidence of direct competition between the parties (for competition would counsel the use of the defendant's profits as a measure of the plaintiff's damages)." *Maier Brewing Co.*, 390 F.2d at 121–23. MGA's arguments that the OMG Girlz are not entitled to disgorgement because they do not have actual damages is contrary to the law.

The jury heard ample evidence demonstrating that MGA was unjustly enriched by deceiving consumers into believing MGA's dolls had an affiliation with the OMG Girlz and by exploiting the goodwill that the OMG Girlz worked so hard and sacrificed so much to build. The evidence demonstrated that consumers purchased OMG Dolls because they believed that they were supporting the OMG Girlz by doing so. *See n.1 supra.* The jury also heard evidence that Mrs. Harris and the OMG Girlz intended to make dolls (Day 2 (AM) at 48-50, 124), and at least at one point in time were approached by someone at a Bratz (MGA product) Giveaway event, and thus believed that MGA wanted to work with them to create dolls.  MGA could have properly entered a licensed with the OMG Girlz, like it did with Paris Hilton or Kylie Jenner to create dolls, but instead MGA decided it was worth the risk to proceed with using the OMG Girlz' trade dress and profit off of their goodwill without paying them a cent. The jury heard that MGA got away with this for many years and made millions of dollars, while calling the OMG Girlz "extortionists" and "money grabbers" for trying to enforce their rights. The OMG Girlz are not seeking and did not ask for

"emotional damages" at trial. Rather, they are asking that MGA not be unjustly enriched by unauthorized and willful infringement of the OMG Girlz' trade dress, their brand, and their identities, and by creating market confusion as to OMG Girlz affiliation with MGA. *See Out of the Box Enters.*, 2012 WL 12893524, at *5. Disgorgement of MGA's profits, and enhancing the same, is the only way to compensate the OMG Girlz for these harms and deter future infringement and misconduct.

MGA's salacious tots constitute another source of uncompensated and immeasurable "harm" to the OMG Girlz. Although MGA continues to demean the OMG Girlz by discrediting the childhood sacrifices they made as children to build the brand goodwill that MGA exploited, and belittling the extra care required for coloring and un-coloring Black hair, MGA fails to address the harm caused by consumers' misimpression that the OMG Girlz are somehow associated with MGA's scandalous line of child inappropriate dolls. "Potential harm from lingering misimpressions [may be] unlikely to be fully captured by the lost profits" *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011) (enhancing damages); *see also Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968). Courts recognize that trademark owners may be injured because "confused buyers may be so unhappy with the infringer's product that they will never again buy plaintiff's product." 4 McCarthy on Trademarks and Unfair Competition § 30:64 (5th ed.). Consumer witness Maxine Wagner testified that although she felt the dolls were a little "older" due to the short skirts and make-up, she was willing to buy them for her nieces because she thought she was supporting the OMG Girlz. (Maxine Wagner TT at 72:10-73:16). In other words, MGA profited from the goodwill and reputation of the OMG Girlz—and it is not a stretch to believe that for the consumers who were aware of MGA's tot scandal, this connection went the other way, causing reputational damage for the OMG Girlz' brand.  Indeed, MGA's documents show the negative

effect that what it internally deemed "lingerie-gate" had on parents. (Day 3 (AM) at 53:2-55:7 (discussing Tr. Exh. 500)).

As a last ditch effort, MGA claims that the OMG Girlz enhancement request is really based on "racial arguments" about "cultural appropriation" and "racism." (Dkt. 1062 at 18). The OMG Girlz brief says nothing of the sort and MGA notably does not identify the supposedly offending arguments. This unsupported argument, and MGA raising the mistrial, is wholly improper and an obvious strawman to distract from the issues raised. Its inclusion by MGA demonstrates the weakness of its position on the merits.

### D.    MGA Failed to Prove Costs, And Now Offers an Unsupported and Too-Late Damages Theory

While MGA's damages expert, Mangum, contended that "no portion" of MGA's profits are attributable to its infringement, four consumer witnesses testified that they purchased the dolls because of the mistaken belief that they were affiliated with the OMG Girlz.

Given the obvious flaws in Mangum's theory, the jury rightly found MGA failed to meet its burden on apportionment. Now, with its "zero attributable profits" strategy having failed, MGA asks the Court to adopt new theories that it never presented. As discussed in the OMG Girlz' briefing on the equitable issues, MGA waived its right to any such theory, this new theory is unsupported by the evidence, and is unpersuasive for several reasons.

At the outset, MGA cannot rely on a theory it never raised at trial. The "analysis" to arrive at the 10% allocation was never done by Mangum—it is being done by MGA's attorneys after the fact. Similarly, while the "15%" allocation was in earlier expert reports from Mangum, MGA chose not to present it at trial, instead swinging for the fences with a "zero attributable profits" argument:

Q You did several different analysis to try to allocate profits over the life of this case; correct?

A There was -- yes. Yes. It wasn't the life of the case.  I guess you mean when the reports were given.

**Q During the pendency of this case, you've done multiple reports where you've given different ways to attempt to allocate profits; correct?**

**A Yes, that's true**. I think there was one. There was one report that I think we're talking about.

**Q And you didn't testify about that analysis today; right?**

A Correct.

(Day 11 (PM) at 113:24-114:9).  Having made its strategic choice and lost, it cannot now argue for an allocation that it abandoned.

Furthermore, there was good reason MGA walked away from its flimsy "15% allocation" argument. First, the OMG Dolls use the entire OMG Girlz' brand—not just the "look." This means that the dolls improperly traded off of the goodwill associated with the OMG Girlz' reputation, as some consumers testified that they bought OMG Dolls because they wanted to support the OMG Girlz. Second, MGA's attorney argument in their post-trial brief directly contradicts the testimony of its own witnesses at trial.  MGA spent hours with designer-witnesses on the stand testifying about how important the looks of these fashion dolls were to consumers and the amount of resources MGA put into sourcing the details of the dolls' clothing. MGA knows that the "look" of the dolls is attributable to more than 15% of the profit, or else these designers' testimony is untrue.  This is just another example of MGA taking contradictory positions based on whatever suits its objective at the moment.

MGA contends that the OMG Girlz "conceded" that the upper most limit for compensatory damages is $25M, but the OMG Girlz made no such concession. The OMG Girlz discussed in opening and closing what it expected its expert to opine based on MGA's numbers. *See, e.g.*, (Day 12 (AM) at 142:10-14) ("For the damages, we're going to ask you to adopt the numbers of Mr. Tregillis. He explained carefully how he went through them all, and ask you to fill in for trade dress infringement and name, likeness, and identity $24,570,485."). Contrary to MGA's contention, OMG

Girlz did not "waive" any rights to additional compensation via disgorgement or enhancement by telling the jury what numbers they would hear from the experts, as both parties agree these are issues for the Court to decide.

### E.    The Lanham Act Gives This Court Discretion To Award Enhanced Damages, Whether Capped at "Trebled" Or Not

MGA does not argue that there is any statutory or legal cap or prohibition on disgorged profits under Section 1117(a) (there is none). Instead, it argues that the *trebling* language only applies to *damages*. While this argument appears on its face to be an issue of first impression, courts have trebled disgorged profits as shown in the OMG Girlz' opening brief. Regardless the Court need not veer down that path. The statute expressly allows the Court to enhance a disgorgement award to compensate a plaintiff and there is ample precedent for the enhancement amount that OMG Girlz are requesting. An additional award of $35 million is within the Court's discretion under the Lanham Act.

Regardless of whether the "trebling" language in the statute applies to "profits" (as opposed to "actual damages"), the profits provision in section 1117(a) expressly allows for enhancement and does not include a monetary cap on that enhancement. 35 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). Thus, whether the additional $35 million requested by OMG amounts to a doubling, trebling or quadrupling of damages, the requested enhancement amount is not foreclosed by the statute. *See, e.g., Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 109 (2d Cir. 1988) ("Unlimited enhancement or reduction of an award based on defendant's profits is permitted in order to correct inadequacy or excessiveness."); *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 194 (2d Cir. 1959) ("[I]t is apparent from the face of the statute that the court in formulating its award has as much discretion as to the defendant's profits as it has over the plaintiff's

damages. The only difference is that the statute places no precisely stated ceiling over the amount of the defendant's profits which may be included in the award.").

MGA's case law does not prevent the enhancement requested here. For example, in *Aoki*, the district court relied on a 1980 case from the Southern District of New York, *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F. Supp. 947, 961 (S.D.N.Y. 1980), for its statement that "[t]reble damages are not appropriate on Defendants' profits, as distinguished from Plaintiffs' damages." But the *Aoki* court did not engage in any discussion regarding whether any enhancement of profits was appropriate at all, since they plainly are under the statute.

Next, *Nutting*—a 2003, pre-*Romag* case from out of circuit—does not stand for the proposition that section 1117(a) prohibits enhancement; it is merely an example of when a court chose not to exercise its discretion to enhance damages. *Nutting v. RAM Sw., Inc.*, 69 F. App'x 454, 458 (Fed. Cir. 2003) (using pre-*Romag* case law, "the district court did not here find that recovery based on RAM's profits would be inadequate to compensate Nutting."). The *Out of the Box* decision that MGA relies on similarly does not preclude a trebling of profits in this case. The *Out of the Box* court acknowledged that the award of defendants profits is "subject to modification at the court's discretion." *Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*, 2012 WL 12893524, at *5 (C.D. Cal. June 27, 2012).

MGA is quick to discredit the cases cited by the OMG Girlz because "none (of those decisions) analyzed the statutory text." (Dkt. 1062 at 12).[4] MGA makes the conclusory assertion that these cases are distinguishable, but from the parentheticals MGA included in its brief, it is clear that where the infringer has acted willfully, as the jury found here, enhancement (by a multiple or some other amount) is permitted.

---

[4] MGA also makes the blanket assertion that "the facts of those cases are readily distinguishable from this one" but fails to explain how the facts are distinguishable in a way that would preclude this court from awarding an enhancement that trebles profits in this case. (Dkt. 1062 at 12).

In sum, there are at least two points of agreement between the parties: the Lanham Act makes enhancement "available to ensure that the plaintiff receives adequate compensation" and the Lanham Act does not include any monetary cap on the enhancement that the Court may award to achieve this goal. (*See* Dkt. 1062 at 12, n.6) (citing *Yuga Labs, Inc. v. Ripps*, 2023 WL 7089922, at *13 (C.D. Cal. Oct. 25, 2023)). The additional $35 million requested by the OMG Girlz is necessary and permissible here. (*See* Dkt. 1045 at 17-22).

### F.     The Requested Enhancement Is Not Punitive

While the Lanham Act specifies that an enhancement shall not be a penalty, the Ninth Circuit is clear that proper purposes of enhancement include (1) deterring further infringement (2) increasing a conservative award (as here, where profits on many infringing dolls were not included and MGA's deductions from revenue were unsupported) and (3) when intangible harms were uncompensated.  *See, e.g.*, *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997). All three bases were discussed and supported in the OMG Girlz opening brief.

As to deterrence, MGA's Response argues and cites cases for the proposition "deterrence alone is not sufficient reason for an enhancement" and then primarily argues that because the infringement was not willful, no deterrence is needed. (Dkt. 1062 at 19-22). As discussed above, MGA cannot sidestep the jury's willfulness verdict which rejected the same arguments MGA makes here in post-trial briefing. Further, MGA's argument that it stopped direct sales, while not mentioning its continued supply and sales through mass market sellers of the dolls MGA knows infringe, shows a strong need for deterrence.

As to enhancement on the basis of increasing a conservative award, here the profits figure was conservative, and MGA failed to prove deductible expenses. (*See* Dkt. 1045 at 18-20). In cases similar to this one in which the infringer produces only litigation-based summary documents without the underlying source documents, then

uses an expert to argue these as deductions, district courts have awarded total sales revenue as lost profits.

In the recent case *Paige LLC v. Shop Paige LLC*, 2024 WL 3594450, at *5 (C.D. Cal. July 10, 2024), Defendant claimed over $2 million in cost deductions but "produced essentially no concrete evidence to the Court to support the deductions alleged. Not a single invoice, receipt, or other original source document has been produced in support of Defendant's expenses." The court awarded as disgorgement of profits the entire $2,572,667 in total sales revenue. *Id.* The court noted other Ninth Circuit district courts had done similar, citing *Brighton Collectibles, LLC v. Believe Production, Inc.*, 2018 WL 1381894, at *7 (C.D. Cal. Mar. 15, 2018) (declining to deduct cost where only evidence in support of cost was witness testimony and spreadsheets produced by the witness) and *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, 2009 WL 10674076, at *10 (S.D. Cal. Aug. 12, 2009). The same was true here. Day 7 (AM) at 21:23-22:6 (Tregillis: MGA did not provide any underlying invoices or documents); Day 9(PM) at 121:13-122:7 (Mangum did not look at the general ledger listing "every cost that comes in for any purpose across the company"); Day 12 (AM) at 7:5-9:9 (Mangum cannot affirm the accuracy of any of the expense numbers, only Mr. Crisanti could, and he did not testify). MGA's revenue for the seven dolls the OMG Girlz sought damages for was more than $68.5M, according to MGA's summary document. (*See* Tr. Exh. 6057). Thus, the award could be enhanced higher than the trebled amount requested solely on this basis. And although the OMG Girlz did not seek damages on any of the other 25 dolls, and in fact sought to dismiss them from the case, they were kept in the case *solely at MGA's insistence*, resulting in a jury verdict that eight additional dolls infringed. Those eight dolls had total revenue over $76.7M. *Id.* The OMG Girlz did not and do not seek damages for these dolls, but note this only to counter MGA's refrain that the award is "all" of the profit for its infringement. The actual award was conservative, amounting

to 12% of the infringing revenue. Enhancement is supported on the basis to increasing a conservative award.

As to enhancement on the basis of compensating intangible harms, MGA misunderstands the argument. MGA argues it is not responsible for the sacrifices the OMG Girlz made to build the brand (true) while ignoring the point—the OMG Girlz put years of sweat equity into building a trade dress and brand, then MGA willfully (per the jury) and with fraud and malice (per the jury) caused confusion about that brand and a loss of goodwill. That is intangible harm caused by MGA's willful infringement, not the childhood sacrifices.

## III.    CONCLUSION

For at least the reasons set forth above and in its opening brief, the OMG Girlz respectfully request that the Court exercise its discretion and treble the $17,872,253 profits award to $53,616,759.

1

2    Dated:  December 13, 2024          SHEPPARD MULLIN RICHTER & HAMPTON LLP

3

4                                      By: /s/ John R. Keville

5                                          John R. Keville

6                                      *Attorney for Defendants CLIFFORD "T.I." HARRIS, TAMEKA*

7                                      *"TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC,*

8                                      *PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

2

3       The undersigned, counsel of record for the Defendant / Counter-Claimants,

4   certifies that this brief contains 5,864 words, which complies with the word limit of

5   L.R. 11-6.1.

6                                            By: /s/ *John R. Keville*
                                                 John R. Keville
7                                                *Attorney for Defendants*

8                                            *CLIFFORD "T.I." HARRIS, TAMEKA "TINY"*
                                             *HARRIS, OMG GIRLZ LLC, and Counter-Claimants*
9                                            *GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and*
                                             *OMG GIRLZ LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28