Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen J. Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA  92614
Telephone: (949) 679-0052

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No. 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' REPLY IN SUPPORT OF POST-TRIAL BRIEF REGARDING EQUITABLE ISSUES**<br><br>Complaint Filed:  December 20, 2020<br>Trial Date:   September 3, 2024<br><br>Hearing Date:  January 6, 2025<br>Hearing Time: 3:00 P.M. |

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 8

II.   PUNITIVE DAMAGES ARE IMPROPER .................................... 9

   A.    Punitive Damages For Equitable Disgorgement Is Equitable And Thus For The Court To Determine. ........................................ 9

   B.    Punitive Damages Are Unavailable Where There Are No Compensatory Damages. ................................................... 11

   C.    MGA Did Not Act With Any Oppression, Fraud, Or Malice That Could Support A Punitive Award. ....................................... 12

   D.    The Ratio Of Counterclaimants' Requested Punitive Award Violates Due Process. ..................................................... 14

III.  THE COURT SHOULD NOT AWARD ANY DISGORGEMENT ........... 16

   A.    Counterclaimants Are Not Entitled To Any Profits Unattributable To The Use Of Their Trade Dress Or Likeness. ..................... 16

      1.    *None Of MGA's Profits Are Attributable To Trade Dress Infringement.* .......................................................... 16

      2.    *None Of MGA's Profits Are Attributable To The Use Of The OMG Girlz's Name, Identity, or Likeness.* ....................... 18

      3.    *Alternatively, Only A Fraction Of Profits May Be Disgorged.* ...... 18

         a.    After Accounting For Deductible Fixed Overhead Costs, MGA's Profits On The Seven Accused Dolls Were $9.1 Million. ....................................................... 18

         b.    At Most, 10-15% Of MGA's Profits Should Be Disgorged. .... 19

   B.    The Equities Do Not Support Any Disgorgement Under The Lanham Act. ................................................................ 21

      1.    Willfulness Is A Question For The Court Where The Only Remedy Sought Is Equitable. ......................................... 21

      2.    Counterclaimants Failed To Even Raise A Question Of Fact As To Willfulness For The Purposes Of Disgorgement At Summary Judgment. ................................................... 22

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    1                          Case No. 2:20-cv-11548-JVS-AGR
                                                                        COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                                 BRIEF RE: EQUITABLE ISSUES

3.  The Trial Evidence Establishes That MGA's Conduct Was Not Willful.................................................................. 23

4.  Other Equitable Considerations Disfavor Disgorgement............. 25

C.  Counterclaimants Fail To Establish They Suffered Harm Justifying Their Requested Common Law Misappropriation Disgorgement Award. ............................................................................ 26

IV.   DISGORGEMENT AND PUNITIVE DAMAGES ARE NOT AVAILABLE FOR COMMON LAW MISAPPROPRIATION ................. 27

A.  Counterclaimants Cannot Establish That Disgorgement Is Available For Common Law Misappropriation. ................................... 27

B.  Counterclaimants Cannot Establish That Punitive Damages Are Available For Common Law Misappropriation. ......................... 28

V.   COUNTERCLAIMANTS CANNOT SEEK DUPLICATIVE AWARDS . 28

VI.   CONCLUSION.......................................................................... 29

Umberg Zipser LLP
Attorneys At Law
Irvine

{280194.13}

2

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*3M Co. v. Mohan*,
   482 F. App'x 574 (Fed. Cir. 2012) ..................................................... 21

*Abdul-Jabbar v. Gen. Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996)............................................................... 27

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) ................................................... 22

*B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC*,
   No. CV 20-03857 TJH (SPX), 2023 WL 11835516
   (C.D. Cal. July 20, 2023) ................................................................... 29

*Batis v. Dun & Bradstreet Holdings, Inc.*,
   No. 22-CV-01924-MMC, 2023 WL 1870057
   (N.D. Cal. Feb. 9, 2023) .................................................................... 28

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*,
   No. 98 C 0287, 2001 WL 1345964 (N.D. Ill. Nov. 1, 2001)............................ 29

*California v. Altus Fin. S.A.*,
   540 F.3d 992 (9th Cir. 2008)............................................................... 11

*Cheung v. Daley*,
   35 Cal. App. 4th 1673 (1995) ............................................................. 12

*In re Cnty. of Orange*,
   784 F.3d 520 (9th Cir. 2015)................................................................. 9

*ConsumerDirect, Inc. v. Pentius, LLC*,
   No. 8:21-CV-01968-JVS, 2024 WL 3914667
   (C.D. Cal. July 19, 2024) (Selna, J.) ........................................... 17, 22

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001)............................................................... 27

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    3                        Case No. 2:20-cv-11548-JVS-AGR
                                                              COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                        BRIEF RE: EQUITABLE ISSUES

*Eastwood v. Sera Labs, Inc.*,
  No. 2:20-CV-06503-RGK, 2021 WL 4439221
  (C.D. Cal. June 23, 2021)...................................................................... 28

*Epic Systems Corp. v. Tata Consultancy Services Ltd.*,
  980 F.3d 1117 (7th Cir. 2020) ............................................................ 14

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ................................................ 22, 23, 24

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
  198 F.3d 1143 (9th Cir. 1999) ............................................................ 17

*Forrest v. Meta Platforms, Inc.*,
  No. 22-CV-03699-PCP, 2024 WL 3024642
  (N.D. Cal. June 17, 2024) ................................................................... 28

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985)............................................................... 18

*Globefill Inc. v. Elements Spirits, Inc.*,
  756 F. App'x 764 (9th Cir. 2019) ....................................................... 16

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)............................................................... 28

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  Case No. SACV 17-01613-CJC, 2023 WL 2652855
  (C.D. Cal. March 13, 2023) ................................................... 16, 21, 25

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021)............................................................... 15

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
  176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................................ 29

*Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*,
  752 F.2d 1326 (9th Cir. 1984) ............................................................ 19

*Kars 4 Kids Inc. v. Am. Can!*,
  8 F.4th 209 (3d Cir. 2021)................................................................... 25

*Kizer v. County of San Mateo*,
  53 Cal. 3d 139 (1991) ........................................................... 11, 12, 14

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                              4                    Case No. 2:20-cv-11548-JVS-AGR
                                                           COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                 BRIEF RE: EQUITABLE ISSUES

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...................................................................... 12

*Lamothe v. Atl. Recording Corp.*,
847 F.2d 1403 (9th Cir. 1988) ...................................................... 25, 26

*Leavy v. Cooney*,
214 Cal. App. 2d 496 (1963) ............................................................... 28

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993) ............................................................. 23

*Liu v. SEC*,
591 U.S. 71 (2020) ................................................................................ 10

*Los Angeles Unified Sch. Dist. v. Superior Ct.*,
14 Cal. 5th 758 (2023) .......................................................................... 11

*Mackie v. Rieser*,
296 F.3d 909 (9th Cir. 2002) ............................................................... 16

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
390 F.2d 117 (9th Cir. 1968) ............................................................... 27

*Mattel, Inc. v. MGA Ent., Inc.*,
801 F. Supp. 2d 950 (C.D. Cal. 2011) ................................................. 15

*Monster Energy Co. v. Integrated Supply Network, LLC*,
821 F. App'x 730 (9th Cir. 2020) .................................................. 11, 12

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) .......................................................... 26, 27

*Olive v. Gen. Nutrition Centers, Inc.*,
30 Cal. App. 5th 804 (2018) ........................................................... 18, 28

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ......................................................................... 13, 14

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life
Activists*,
422 F.3d 949 (9th Cir. 2005) .......................................................... 14, 15

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}    5    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
    Case No. 14-cv-020601-H-BGS, 2016 U.S. Dist. Lexis 82532
    (S.D. Cal. June 17, 2016) .......................................................................... 22

*Proofpoint, Inc. v. Vade USA, Inc.*,
    Nos. 23-16085 and 23-16175, 2024 WL 4003096
    (9th Cir. Aug. 30, 2024) ......................................................... 8, 10, 11

*Quia Corp. v. Mattel, Inc.*,
    No. C 10–1902 JF (HRL), 2011 WL 2749576
    (N.D. Cal. July 14, 2011) .......................................................................... 27

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ....................................... 20, 25

*Riley v. Volkswagen Grp. of Am., Inc.*,
    51 F.4th 896 (9th Cir. 2022) .................................................................... 15

*Rivero v. Thomas*,
    86 Cal. App. 2d 225 (1948) ....................................................................... 9

*Romag Fasteners, Inc v. Fossil, Inc.*,
    590 U.S. 212 (2020) .................................................................................. 23

*San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*,
    625 F. App'x 322 (9th Cir. 2015) ............................................................ 24

*Scott v. Phoenix Sch., Inc.*,
    175 Cal. App. 4th 702 (2009) .................................................................. 12

*Simler v. Conner*,
    372 U.S. 221 (1963) ........................................................................ 8, 9, 10

*Sole Energy Co. v. Petrominerals Corp.*,
    128 Cal. App. 4th 212 (2005) .................................................................. 11

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ..................................................... 26

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ....................................................................... 13, 14, 15

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016)..................................................................... 29

Umberg Zipser llp
Attorneys At Law
Irvine

{280194.13}

6

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

*Ramona Equipment Rental, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*,
    755 F.3d 1063 (9th Cir. 2014) ........................................................................ 20

*Vanvakaris v. Fashion Forms, Inc.*,
    No. CV197765DMGJEMX, 2019 WL 6245546
    (C.D. Cal. Nov. 22, 2019) .............................................................................. 28

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) ....................................................................... 28

*Yuga Labs, Inc. v. Ripps*,
    No. 22-cv-4355, 2023 WL 7089922 (C.D. Cal. Oct. 25, 2023) ...................... 21

**Statutes**

15 U.S.C. § 1117(a)........................................................................... 16, 19, 21

Cal. Civ. Code § 3294(a)............................................................................ 12

Cal. Civ. Code § 3344 ................................................................................ 27

Fed. R. Civ. P. 39 ......................................................................................... 9

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}

7

Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

## I.     **INTRODUCTION**

The jury's disgorgement awards under both the Lanham Act and common law misappropriation were merely advisory, as Counterclaimants are forced to acknowledge.  The same is true as to the punitive damage award.  Indeed, the Ninth Circuit in *Proofpoint, Inc. v. Vade USA, Inc.*, Nos. 23-16085 and 23-16175, 2024 WL 4003096, at *1 (9th Cir. Aug. 30, 2024), held that there is no right to a jury trial under the Seventh Amendment for exemplary damages where, as here, the underlying award was disgorgement.  Counterclaimants exclusively rely on state court decisions in an attempt to persuade this Court otherwise.  But the Supreme Court has held that whether a party has a right to a jury trial in federal courts is a matter of federal law.  *Simler v. Conner*, 372 U.S. 221, 222 (1963).

Therefore, the Court is the trier of fact for each of the monetary awards here and must exercise its independent judgment, without deference to the jury's findings.  And the jury's advisory findings should be soundly rejected for at least the following reasons:

First, punitive damages are improper.  Without a compensatory damages award, punitive damages are not even available under California law.  Furthermore, Counterclaimants do not come close to meeting the very high bar of demonstrating, by clear and convincing evidence, that MGA acted with oppression, fraud, or malice in connection with the misappropriation claim.  Counterclaimants tacitly admit as much, as they try to distract this Court by focusing on issues of trial credibility and whether MGA's dolls (or Tots, which are not at issue) looked like other celebrities.  In all events, a punitive award is necessarily limited by the Due Process Clause.

Second, disgorgement is available only for profits that are attributable to the infringement or the misappropriation.  While MGA believes nothing should be awarded, ***at most***, only 10-15% of MGA's profits could possibly be attributable, as demonstrated by the evidence presented at trial—including unrebutted scientific

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                        8                          Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

surveys, expert analysis, and lay witness testimony.  Unable to dispute MGA's evidence, Counterclaimants barely address attribution (and do not address MGA's 15% figure at all), and instead argue the advisory jury "rejected" MGA's position. But Counterclaimants do not provide any basis for this Court to do the same. Instead, they suggest the advisory disgorgement awards were appropriate because some dolls, for which Counterclaimants sought no damages, were found to infringe. But, as this Court ruled, Counterclaimants abandoned any claim for damages for those other dolls.

## II.    **PUNITIVE DAMAGES ARE IMPROPER**

### A.    **Punitive Damages For Equitable Disgorgement Is Equitable And Thus For The Court To Determine.**

"Federal courts . . . hold that the right to a jury trial is a federal procedural issue controlled by federal law."  *In re Cnty. of Orange*, 784 F.3d 520, 528 (9th Cir. 2015).  Indeed, in considering whether state or federal law governs when a court must determine if an action is legal or equitable "for the purpose of deciding whether the claimant has a right to a jury trial," the Supreme Court held in *Simler* that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."  372 U.S. at 221-22.  Thus, the Court need only consider federal law on this point.  *See id.*; *see also* Fed. R. Civ. P. 39(a)(2) & (c)(1).  Counterclaimants' reliance on state law is therefore misguided,[1] and—tellingly—they fail to identify any federal caselaw supporting their position that punitive damages are legal under the circumstances here.

Under federal law, whether punitive damages based on an equitable disgorgement award are available (and, if so, how much) is an equitable question.

---

[1] Counterclaimants mischaracterize *Rivero v. Thomas*, 86 Cal. App. 2d 225, 239 (1948), as standing for the position that punitive damages are "entirely in the discretion of the jury."  Dkt. 1064 at 3.  A preceding sentence states: "As a general rule, courts of equity will not award exemplary damages, *although this rule is not without exception*."  *Rivero*, 86 Cal. App. 2d at 239 (emphasis added).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                              9                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1 | *See* Dkt. 1046 at 11-12.  The Ninth Circuit addressed this very issue in *Proofpoint*,
2 | 2024 WL 4003096, at *1.  Counterclaimants do not dispute that *Proofpoint* is
3 | instructive and most indicative of how the Ninth Circuit is likely to rule on this
4 | issue today, as urged by MGA.  Dkt. 1046 at 11 n.3.  Instead, Counterclaimants
5 | argue that the reasoning in *Proofpoint* does not apply here because the Ninth Circuit
6 | in that case was considering the federal Defend Trade Secrets Act ("DTSA"), rather
7 | than California law.  Dkt. 1064 at 3.  But, as explained above, federal law controls
8 | when determining whether a claim is legal or equitable here.  *Simler*, 372 U.S. at
9 | 222.  And under federal law, "a remedy **tethered to a wrongdoer's net unlawful**
10 | **profits, whatever the name**, has been a mainstay of **equity courts**."  *Liu v. SEC*, 591
11 | U.S. 71, 80 (2020) (emphasis added).
12 |     Next, Counterclaimants attempt to distinguish *Proofpoint* on the ground that
13 | the DTSA provides that "a court may" grant certain remedies, including exemplary
14 | damages, arguing that "court" means only the judge, "no different from the Lanham
15 | Act" for enhancement.  Dkt. 1064 at 3:12-18.  But those two statutes are not
16 | analogous in their use of the word "court."  Indeed, while Counterclaimants argue
17 | that "court" in the DTSA only means the judge, the *Proofpoint* plaintiff took the
18 | opposite view, arguing that "'court' means only the jury . . . ."  *Proofpoint*, 2024
19 | WL 4003096, at *1.  The Ninth Circuit reasoned that—contrary to the plaintiff's
20 | position in *Proofpoint* and Counterclaimants' position here—the use of "court" in
21 | the DTSA was ambiguous because "some of [the remedies] (such as an award of
22 | attorney's fees) are clearly for the court alone and some . . . (such as damages for
23 | actual loss) are for the jury."  *Id.*
24 |     The Ninth Circuit opted not to resolve "whether [exemplary] damages are
25 | always for the judge or the jury under the statute."  *Id*.  Instead, after assuming that
26 | the Seventh Amendment "always requires a jury trial for exemplary damages that
27 | enhance an award for actual loss," it held that "***[w]here, as here, an award for***
28 | ***unjust enrichment rests on disgorgement of the defendant's profits, [exemplary***

Umberg Zipser llp
Attorneys At Law
Irvine

{280194.13}                    10                    Case No. 2:20-cv-11548-JVS-AGR
                                                      COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                      BRIEF RE: EQUITABLE ISSUES

*damages] is an equitable remedy*." *Id.* (emphasis added).

At bottom, Counterclaimants advance the same argument that was raised by the plaintiffs in *Proofpoint* and soundly **rejected** by the Ninth Circuit—namely, that all punitive or exemplary damages are legal remedies that must be determined by a jury under the Seventh Amendment. *See id.* Indeed, the Ninth Circuit affirmed the district court's decision **denying** the right to a jury trial on exemplary damages when the underlying award was disgorgement. *Id.*

Accordingly, whether any punitive damages should be awarded here and, if so, how much should be awarded, are equitable issues exclusively for this Court.

## B.    Punitive Damages Are Unavailable Where There Are No Compensatory Damages.

Even assuming punitive damages are generally available for common law misappropriation (which MGA disputes), they are not available where no compensatory damages were awarded—as was the case here. *See* Dkt. 1064 at 16 n.8 (admitting that courts have prohibited punitive damages where plaintiffs suffered no compensable damages).

Indeed, "actual damages are **an absolute predicate** for an award of exemplary or punitive damages in California." *Monster Energy Co. v. Integrated Supply Network, LLC*, 821 F. App'x 730, 734 (9th Cir. 2020) (citing *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991), *overruled on other grounds by Los Angeles Unified Sch. Dist. v. Superior Ct.*, 14 Cal. 5th 758 (2023)) (emphasis added); *see California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (concluding that "California law is well-established and quite clear" that when no compensatory damages are awarded, the "general rule precludes punitive damages"); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (2005) ("An award of actual damages, even if nominal, is required to recover punitive damages.").

In response, Counterclaimants cite state court cases that, with a single exception, predate the California Supreme Court's 1991 *Kizer* decision. The sole

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    11                          Case No. 2:20-cv-11548-JVS-AGR
                                                                          COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                          BRIEF RE: EQUITABLE ISSUES

exception is Counterclaimants' citation to a footnote in *Cheung v. Daley*, 35 Cal. App. 4th 1673, 1677 n.8 (1995), which states that restitution, not disgorgement,[2] may be the "equivalent" of compensatory damages for the purposes of a punitive damages award and cites to another pre-*Kizer* decision without further analysis. Aside from such dicta, the *Cheung* court acknowledges that California's "highest court requires that any award of exemplary damages be accompanied by an express award of compensatory damages." *Id.* at 1677.

Further, all of the federal cases cited by Counterclaimants predate the Ninth Circuit's decision in *Monster Energy*, 821 F. App'x at 734, and none of them establish that punitive damages are available under the circumstances here.

### C.    MGA Did Not Act With Any Oppression, Fraud, Or Malice That Could Support A Punitive Award.

Even if the Court were to find that punitive damages are available for common law misappropriation (it should not), and even if the Court were to find that punitive damages are available when there is no compensatory damage award (it should not), there is no "clear and convincing evidence that [MGA] has been guilty of oppression, fraud, or malice." *See* Cal. Civ. Code § 3294(a); *Kizer*, 53 Cal.3d at 147. This is a high bar. *See Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 716 (2009) ("The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.").

In their opposition, Counterclaimants merely rehash arguments they made at trial, and which MGA refuted in its Opening Brief. *Compare* Dkt. 1064 at 17-19 *with* Dkt. 1046 at 25-27. Counterclaimants improperly assume that the Court must award punitive damages if some evidence supports the jury's finding of oppression,

---

[2] Restitution is distinguished from disgorgement, which is a "broader remedy." *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    12                    Case No. 2:20-cv-11548-JVS-AGR
                                                                     COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                     BRIEF RE: EQUITABLE ISSUES

1  fraud, or malice.  Dkt. 1064 at 17-19.  As explained above, punitive damages are

2  equitable, and the jury's verdict was advisory only.  This Court is not bound by the

3  sufficiency-of-the-evidence standard that governs review of **binding** jury verdicts.

4  Counterclaimants suggest that MGA's witnesses were being dishonest when

5  they testified that certain Tots (which were not at issue) were not meant to be

6  representations of other celebrities like Beyonce, Lady Gaga, or Michael Jackson.

7  Dkt. 1064 at 18; *see* TT 9/23/24 at 30:23-31:4.  While untrue, that is irrelevant.

8  MGA's "dissimilar acts, ***independent from the acts upon which liability was***

9  ***premised***, may not serve as the basis for punitive damages."  *State Farm Mut. Auto.*

10  *Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) (emphasis added).  For the same

11  reason, Counterclaimants cannot seek punitive damages for MGA's trial strategy or

12  conduct.  *See id.* at 423 (defendants should not be punished merely for being

13  "unsavory").

14  Nor are punitive damages justified because MGA allegedly copied artists

15  other than the OMG Girlz.  *See id.* at 422; *Philip Morris USA v. Williams*, 549 U.S.

16  346, 353 (2007) (punitive damages based in part upon a desire to punish defendant

17  for harming persons who are not before the court violate due process).  Further,

18  alleged copying of nonparties cannot establish a "pattern" of misconduct when there

19  was no evidence that MGA copied other celebrities to create its dolls.  The evidence

20  at trial from MGA's designers was that, while some celebrities may have served as

21  "inspiration," the dolls were distinct from any person.  *See, e.g.*, TT 9/10/24 PM at

22  34:21-35:4; TT 9/18/24 PM at 111:15-19; TT 9/19/24 AM at 62:11-14.

23  After years of litigation and three trials, the only purported "misconduct" that

24  Counterclaimants have been able to identify that is at least arguably related to the

25  liability on their misappropriation claim is the December 2019 email exchange and

26  Ms. Consorti's testimony that she never clicked on a link to an OMG Girlz song in

27  that email.  Dkt. 1064 at 19.  *See* TT 9/23/24 at 31:1-6.  But Ms. Consorti explained

28  that she remembered this detail because she received the email on New Year's Eve

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                13                    Case No. 2:20-cv-11548-JVS-AGR
                                                        COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                        BRIEF RE: EQUITABLE ISSUES

1   when she was getting ready for her sister's party.  *See* TT 9/10/24 PM at 44:16-

2   45:17.  Such conduct hardly amounts to "oppression, fraud, or malice," let alone by

3   clear and convincing evidence.  This Court previously, and correctly, concluded

4   that "[t]he email exchange only demonstrates that an employee, who was not the

5   designer on the email thread, knew who the OMG Girlz were; not that the OMG

6   Girlz had an influence on the design."  Dkt. 326 at 32.

7       **D.    The Ratio Of Counterclaimants' Requested Punitive Award**

8           **Violates Due Process.**

9       Even if disgorgement could support punitive damages (which it cannot),

10  under the Due Process Clause punitive damages must be "both reasonable and

11  proportionate to the amount of harm to the plaintiff and to the general damages

12  recovered."  *State Farm*, 538 U.S.at 426.  Therefore, where the only "harm" was

13  based on a benefit to the defendant, and not harm suffered by the plaintiff,

14  satisfying due process for a punitive award "pose[s] a challenging task."  *Epic*

15  *Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117, 1143 (7th Cir.

16  2020).

17      Counterclaimants were not awarded ***any*** damages based on their alleged

18  harm and, in fact, were barred from seeking such damages at trial due to their own

19  discovery conduct.  *See* Dkt. 502, 521.  Over \$53.6 million in punitive damages is

20  neither reasonable nor proportionate to ***zero*** actual damages.  *See State Farm*, 538

21  U.S. at 426; *Kizer*, 53 Cal. 3d at 147.  The jury's advisory punitive damage award

22  was therefore "grossly excessive" and fails to comport with due process.  *See Philip*

23  *Morris*, 549 U.S. at 353.

24      Counterclaimants argue that the amount is appropriate because it is less than

25  the 4:1 ratio of punitive to compensatory damages that the Ninth Circuit has held

26  was a "good proxy for the limits of constitutionality."  Dkt. 1064 at 19 (citing

27  *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422

28  F.3d 949, 962 (9th Cir. 2005)).  But that ratio applies "where there ***are significant***

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                          14                     Case No. 2:20-cv-11548-JVS-AGR
                                                           COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                           BRIEF RE: EQUITABLE ISSUES

1   ***economic damages*** . . . .”  *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 902

2   (9th Cir. 2022) (quoting *Planned Parenthood*, 422 F.3d at 962)*.*  Again,

3   Counterclaimants suffered ***zero*** economic damages, and were barred from

4   presenting such damages theories.  *See* Dkts. 502, 521.  Thus, applying a 4:1 ratio

5   to a disgorgement award would be entirely improper.[3]

6          Even where there are compensatory damages, which there were none here,

7   the Supreme Court has advised, “[w]hen compensatory damages are substantial,

8   then a lesser ratio, perhaps only equal to compensatory damages, can reach the

9   outermost limit of the due process guarantee.”  *State Farm*, 538 U.S. at 425; *see*

10  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 974, 975 (9th Cir. 2021) (observing that

11  a compensatory damages award even over $1 million may be considered

12  “substantial”); *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 954 (C.D. Cal.

13  2011) (finding that 1:1 ratio was sufficient where compensatory damages were

14  unusually high, even though “Mattel’s conduct fell far short of basic ethical

15  standards”).

16         Counterclaimants’ position that an immense punitive award is acceptable

17  here cannot be squared with the evidence.  MGA’s seemingly most “reprehensible”

18  conduct was one of its designers disregarding a link in an email.  *See* Dkt. 1064 at

19  19.  That hardly justifies an award of more than $50 million in punitive damages.

20  Indeed, the previous jury swiftly found in favor of MGA and even asked if it could

21  award legal fees to the winning party (MGA).  Dkts. 765, 771.

22         Accordingly, the Court should reject Counterclaimants’ request for what can

23  only be characterized as a grossly excessive punitive damage award in violation of

24  the Due Process Clause.

25

26

27  ---

[3] The ratio, if any, would have to be based on the Court’s finding regarding any

28  disgorgement award.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                      15                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS’ REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

## III.    THE COURT SHOULD NOT AWARD ANY DISGORGEMENT

Disgorgement is improper for at least the following reasons:  First, none of MGA's profits are attributable to the infringement; second, the equities do not support disgorgement under the Lanham Act; and third, Counterclaimants failed to establish they were harmed justifying disgorgement for common law misappropriation.

### A.    Counterclaimants Are Not Entitled To Any Profits Unattributable To The Use Of Their Trade Dress Or Likeness.

#### 1.    *None Of MGA's Profits Are Attributable To Trade Dress Infringement.*

Counterclaimants are only entitled to the portion of MGA's profits, if any, that are attributable to the infringement.  *See* Dkt. 1013 at 26 (Instruction No. 20); *Globefill Inc. v. Elements Spirits, Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) (citing 15 U.S.C. § 1117(a)).  "This principle—that misconduct must have 'had an effect on 'profits'' to justify disgorgement—is just plain 'common sense.'"  *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, Case No. SACV 17-01613-CJC (DFMx), 2023 WL 2652855, at *3 (C.D. Cal. March 13, 2023) (quoting *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002)).

In its Opening Brief, MGA explained why, based on lay and expert testimony, this Court should find that ***none*** of MGA's profits are attributable to the infringement found by the jury.  Specifically, the trial evidence showed that (1) there was no commercial benefit to MGA from selling dolls that supposedly included Counterclaimants' trade dress or likeness (TT 9/19/24 PM at 103:22-104:18, 110:6-12); (2) not a single participant in either the likelihood of confusion or likeness surveys—the only scientific surveys conducted in this case—associated MGA's dolls with the OMG Girlz (TT 9/18/24 AM at 131:1-7; TT 9/18/24 PM at 6:23-7:20, 13:3-14:2, 17:4-18:9); and (3) various factors unrelated to the OMG Girlz and unrelated to the visual appearance of the dolls drove sales (TT 9/13/14

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{280194.13}                                        16                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1    AM at 41:3-6, 47:17-25; TT 9/19/24 PM at 110:3-22).  *See* Dkt. 1046 at 15-18.

2        In response, Counterclaimants devote a ***single*** paragraph to this issue, stating

3    that the jury "rejected" MGA's experts' testimony.  Dkt. 1064 at 7-8.  But what the

4    jury decided is neither binding nor entitled to any deference.  *See ConsumerDirect,*

5    *Inc. v. Pentius, LLC*, No. 8:21-CV-01968-JVS (ADSX), 2024 WL 3914667, at *2

6    (C.D. Cal. July 19, 2024) (Selna, J.) (concluding that "the Court must make its own

7    findings of fact" where the only remedy sought on trademark infringement and false

8    designation of origin claims was disgorgement).

9        Having conducted no surveys of their own, Counterclaimants can only point

10    to the testimony of ***four*** biased witnesses who do not represent the consuming

11    public.  Dkt. 1064 at 7-8.  Indeed, each of those four witnesses testified that they

12    were active fans of Counterclaimants and/or the OMG Girlz.  *See, e.g.*, TT 9/10/24

13    AM at 48:13-14; Dkt. 935-1 (M. Wagner Dep. at 24:2-3; 24:19-24, 44:12-17,

14    46:14-15, 52:10-18, 53:1-2); *id.* (M. Campbell Dep. at 54:17-57:17, 59:25-60:21);

15    Dkt. 959-1, (W. Osborne Dep. Vol. 2 at 74:19-21, 80:17-25, 84:6-23).  Evidence

16    from such biased sources should be given little weight, if any.  *See Filipino Yellow*

17    *Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999)

18    (explaining that "[t]rademark law is skeptical of the ability of an associate of a

19    trademark holder to transcend personal biases to give an impartial account of the

20    value of the holder's mark").  Further, Ms. Campbell's testimony contradicts

21    Counterclaimants' argument—she admitted that she bought MGA's dolls for their

22    popularity even ***after*** she questioned whether the dolls were related to the OMG

23    Girlz.  *See* Dkt. 935-1 (M. Campbell Dep. at 138:6-18).

24        Counterclaimants' position also defies logic and common sense.

25    Disgorgement of every dollar of MGA's profits would mean that every single

26    person who bought MGA's dolls did so because they believed the dolls reflected the

27    OMG Girlz's "unique" trade dress and were confused as to the source of the dolls.

28    Such "remote[] or speculative[]" (and nonsensical) attribution should be rejected.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    17                    Case No. 2:20-cv-11548-JVS-AGR
                                                                     COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                     BRIEF RE: EQUITABLE ISSUES

1  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir.
2  1985).

3      The Court should further reject Counterclaimants' attempt to justify a
4  disgorgement award of every dollar of profit on the seven dolls because the jury
5  found that *other* dolls also were infringing.  Dkt. 1064 at 7.  The Court already ruled
6  that Counterclaimants "earlier abandoned any damage claim with respect to the 32
7  [dolls].  Whether it's—that the record.  They have done that.  ***It's binding***."  TT
8  9/18/24 AM at 8:22-24 (emphasis added).  Counterclaimants cannot reverse course
9  now.

10      Because ***none*** of MGA's profits were attributable to the infringement, there
11  is nothing to disgorge.

12      **2.    *None Of MGA's Profits Are Attributable To The Use Of The***
13          ***OMG Girlz's Name, Identity, or Likeness.***

14      As with disgorgement under the Lanham Act, MGA's profits must first be
15  attributable to the use of the OMG Girlz's likeness before they can be disgorged
16  under a common law misappropriation claim.  *See* Dkt. 1013 at 29 (Court's
17  Instruction No. 22); *Olive v. Gen. Nutrition Centers, Inc.*, 30 Cal. App. 5th 804,
18  813-16 (2018).  Counterclaimants do not, and cannot, argue otherwise.

19      The amount of MGA's profits attributable to the misappropriation of likeness
20  found by the jury is necessarily equal to any attribution found for the trade dress
21  infringement.  *See* Dkt. 1046 at 22-23.  Accordingly, for the reasons explained in
22  MGA's Opening Brief and above, the Court should award ***zero*** disgorgement for
23  Counterclaimants' common law misappropriation.

24      **3.    *Alternatively, Only A Fraction Of Profits May Be Disgorged.***

25          a.    After Accounting For Deductible Fixed Overhead Costs,
26              MGA's Profits On The Seven Accused Dolls Were $9.1
27              Million.

28      In its Opening Brief, MGA explained that—after appropriately accounting

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                    18                    Case No. 2:20-cv-11548-JVS-AGR
                                    COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                    BRIEF RE: EQUITABLE ISSUES

for fixed overhead costs—MGA's profits on the seven dolls was $9,180,227. Dkt. 1046 at 19. MGA's damages expert Dr. Mangum testified that fixed overhead costs represented expenses "incurred in connection with making, selling, designing, [and] marketing" the dolls that were not otherwise captured in other categories of costs. TT 9/19/24 PM at 86:15-88:23, 93:8-13. Such costs, which include salaries of designers and employees involved in marketing the dolls as well as facilities and equipment to make the dolls, should be deducted because they were necessary to produce, distribute, and sell the dolls. *See id.*; *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984).

Counterclaimants did not address this issue in opposition. Instead, they argue that MGA's document, disclosing the revenue and costs, was unreliable because it was purportedly created for this litigation. Dkt. 1064 at 8. Counterclaimants fail to cite to any part of the trial record supporting their position,[4] nor do they reconcile the fact that their own expert relied on the same document for his calculation of profits. TT 9/11/24 AM at 96:9-20; Tr. Ex. 6056. Counterclaimants cannot simultaneously argue the document was unreliable *and* use the same document to satisfy their own burden to establish MGA's sales figures. *See* 15 U.S.C. § 1117(a).

> ### b.  At Most, 10-15% Of MGA's Profits Should Be Disgorged.

To the extent the Court finds that disgorgement is available, and further determines that some portion of the profits from the dolls is attributable to the infringement or misappropriation found by the jury, no more than 10-15% of those profits should be disgorged after accounting for MGA's fixed overhead costs. *See* Dkt. 1046 at 19-21.

Based on several internal MGA studies, no more than 15% of profits could

---

[4] The only thing Counterclaimants cite, in a separate brief, is a single question and one-word answer from deposition testimony by MGA's vice president and controller, Pedro Crisanti, that was not presented at trial. Dkt. 1045 at 18.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                    19                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

possibly be attributable to the visual "style" of the dolls in the L.O.L. Surprise! O.M.G. line, which broadly included aspects such as accessories, clothes, and fashion. *Id.* at 20-21; *see* Trial Exs. 1090, 1091, 5018.  Counterclaimants fail to address, let alone dispute, that 15% is the absolute maximum disgorgement possible when considering attribution.  This should be treated as a tacit concession.  *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases).  Thus, the disgorgement award can be no more than $1,377,034 (15% of $9,180,227).

As explained more fully in MGA's Opening Brief, however, Dr. Mangum's comparative analysis demonstrates that no more than 10% of profits could be attributable to the seven accused dolls that the jury found to infringe.  Dkt. 1046 at 19-20.

Counterclaimants mischaracterize MGA's 10% argument as a "new damages theory" that was raised for the first time in a post-trial briefing.  Dkt. 1064 at 8:8-9. The single case Counterclaimants cite to support their position is inapposite.  In *Ramona Equipment Rental, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063, 1070 (9th Cir. 2014), plaintiff's "argument was raised for the first time in the district court in a post-trial motion ***to alter or amend the judgment***" so the "issue [was] waived" (emphasis added)).  This is not a ***post-judgment*** brief because no judgment has been entered, and no rulings have even been made in the first instance on any of the equitable issues.

In any event, MGA is not presenting a new damages theory.  Instead, MGA is responding to Counterclaimants' criticism at trial that Dr. Mangum's comparative analysis—which showed none of MGA's profits were attributable to the infringement—did not include dolls from the four-pack Remix Surprise.  TT 9/19/24 PM at 124:7-23.

Finally, Ms. Stephens' testimony had nothing to do with whether any of the dolls' profits were ***attributable*** to the infringement.  Instead, she was generally

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}

20

Case No. 2:20-cv-11548-JVS-AGR

COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

asked about the profitability of three dolls, and Ms. Stephens (who is a designer and not an accountant) was not sure, admitting that she did not "have the numbers."  TT 9/19/24 AM at 83:15-24.

### B.    The Equities Do Not Support Any Disgorgement Under The Lanham Act.

Even where there is infringement, disgorgement of profits is not automatic under the Lanham Act but, instead, is within the Court's discretion because it is subject to the principles of equity.  15 U.S.C. § 1117(a).  The equities here demonstrate that disgorgement should not be awarded.

### 1.    *Willfulness Is A Question For The Court Where The Only Remedy Sought Is Equitable.*

To the extent the Court *sua sponte* reconsiders its summary judgment ruling regarding willfulness—which it should not—the Court is not bound by the jury's advisory finding on this issue.

In considering the remedy of equitable disgorgement under the Lanham Act, the Court is the factfinder regarding MGA's state of mind, just as it is the factfinder as to other factual issues that bear on any disgorgement award.  *See, e.g.*, *Yuga Labs, Inc. v. Ripps*, No. 22-cv-4355, 2023 WL 7089922, at *11 n.9 (C.D. Cal. Oct. 25, 2023) ("[T]he Court concludes that the factors considered by the Court in determining whether to award a disgorgement of Defendants' profits, ***including Defendants' mental state***, are properly decided by the Court") (emphasis added); *Harbor Breeze*, 2023 WL 2652855, at *5 (district court concluding after a two-day bench trial that the defendants' trademark infringement was not willful and that their mental state did not favor disgorgement); *3M Co. v. Mohan*, 482 F. App'x 574, 578 (Fed. Cir. 2012) (holding that "[t]he district court's decision to hold a bench trial on the issue of trademark infringement did not violate . . . [the] Seventh Amendment right to a jury trial" where the only remedies sought were equitable).  Thus, the Court must independently decide whether there was willfulness to support

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    21                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

a disgorgement award.  *See ConsumerDirect*, 2024 WL 3914667, at *2.

None of Counterclaimants' three cited cases holds otherwise.  Dkt. 1064 at 1, 5.  The only Ninth Circuit case that Counterclaimants identify is *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, which they cite for a parenthetical from an out-of-Circuit case.  106 F.3d 284, 293-94 (9th Cir. 1997), *rev'd sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).  Notably, the district court in *Columbia* made findings of willfulness, without a Seventh Amendment challenge.  *See id.*

The other two cases cited by Counterclaimants similarly fail to address the situation at hand.  In *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1066 (D. Or. 2008), in denying summary judgment on plaintiffs' claim of willfulness, the court did not address whether willfulness was for the Court or the jury when claims are equitable.  That case held that a claim for accounting of profits must be decided by the jury (*id*. at 1087-88),[5] which is contrary to the Ninth Circuit's later ruling in *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,* 778 F.3d 1059, 1075 (9th Cir. 2015).  And *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, Case No. 14-cv-020601-H-BGS, 2016 U.S. Dist. Lexis 82532 (S.D. Cal. June 17, 2016), pertained to statutory damages under the Patent Act and is thus inapposite.

> ### 2.    *Counterclaimants Failed To Even Raise A Question Of Fact As To Willfulness For The Purposes Of Disgorgement At Summary Judgment.*

Contrary to Counterclaimants' position, the Court unambiguously concluded at summary judgment that Counterclaimants failed to raise a question of fact

---

[5] In an earlier part of the opinion, the *Payless* court acknowledges: "[I]t is clear that there is no right to a jury trial in a trademark infringement action where *only* equitable claims (*e.g.,* injunctive relief) remain."  546 F. Supp. 2d at 1086 (emphasis in original).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                22                    Case No. 2:20-cv-11548-JVS-AGR
                                                                 COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                 BRIEF RE: EQUITABLE ISSUES

regarding MGA's willfulness.  Dkt. 326 at 32 (finding that "neither of [the] pieces of evidence [presented by Counterclaimants] demonstrate[d] willfulness sufficient to create a dispute of fact" and that MGA had "present[ed] evidence refuting willfulness").  The Court did not reject the disgorgement remedy at the time only because "the question of willfulness [was] at issue in Counterclaimants' motion for sanctions for spoliation of evidence." *Id.*; *see* Dkt. 755 at 17-18.  That spoliation motion was subsequently denied (Dkt. 503); no legitimate spoliation issues were raised at trial; and there was no finding related to spoliation.  *See* Dkt. 1046 at 13. Accordingly, MGA's lack of willfulness has been determined and should not be revisited.

### 3.    *The Trial Evidence Establishes That MGA's Conduct Was Not Willful.*

As this Court recognized at summary judgment, willfulness "is a highly important consideration in determining whether an award of profits is appropriate." Dkt. 1046 at 12 (quoting *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020)); *see* Dkt. 326 at 31 ("Principles of equity and restitution recognize that disgorgement of profits is typically appropriate in cases involving 'conscious wrongdoers' . . . .").

None of Counterclaimants' identified grounds for a finding of willfulness indicates a "deliberate intent to deceive." *See Fifty-Six Hope*, 778 F.3d at 1074 ("Generally, deliberate, false, misleading, or fraudulent . . . conduct . . . meets this standard.") (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)).

First, Counterclaimants point to evidence that was ***not*** presented a trial—a declaration MGA filed in connection with Counterclaimants' failed motion for spoliation—to argue that MGA did not conduct sufficient due diligence as to Counterclaimants' allegations upon receiving the cease-and-desist letter.  Dkt. 1064 at 6:5-8 (citing Dkt. 272-1).  But that declaration establishes that MGA

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    23                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1  appropriately investigated the allegations described in that letter by, among other

2  things, searching for documents and interviewing employees.  Dkt. 272-1 at ¶¶ 4-5.

3      Further, MGA did not ignore Counterclaimants' cease-and-desist letter.  On

4  the contrary, MGA promptly filed a declaratory judgment lawsuit to initiate the

5  discovery process and clarify the parties' rights.  As part of the ensuing litigation,

6  only MGA conducted scientific surveys to help determine the merits of the parties'

7  claims.  And the fact that the jury from the second trial concluded that MGA was

8  *not* infringing Counterclaimants' trade dress confirms that MGA's steadfast belief

9  of innocence was reasonable.  *See* Dkt. 771; *San Miguel Pure Foods Co., Inc. v.*

10 *Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) ("Infringement is not

11 willful if the party reasonably believes its usage of a trademark is not barred by

12 law.").

13     Second, Counterclaimants argue that MGA's target market overlapped with

14 the OMG Girlz's audience and that consumers purportedly purchased the dolls

15 thinking they were associated with the OMG Girlz.  Dkt. 1064 at 6.  Neither

16 amounts to a culpable mental state on MGA's part, especially given that its dolls

17 were sold "to every girl, every nationality, every color" (TT 9/19/24 AM at 125:16-

18 25), and the only people who claimed to be confused were Counterclaimants'

19 friends, family, or fans.  And evidence of purported actual confusion is not evidence

20 of willfulness.

21     Finally, willfulness cannot be inferred simply because MGA's witnesses

22 testified that they did not believe the dolls resembled the OMG Girlz or

23 distinguished the dolls and Tots from various celebrities.  Such testimony does not

24 demonstrate a "deliberate intent to deceive."  *See Fifty-Six Hope*, 778 F.3d at 1074.

25     Counterclaimants argue that there was "sufficient evidence" presented at trial

26 for the jury to find willfulness.  Dkt. 1064 at 6:23-24.  While MGA disagrees the

27 evidence was sufficient, Counterclaimants invoke the wrong standard here.  This

28 Court must independently make its own factual determination because the jury's

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                    24                    Case No. 2:20-cv-11548-JVS-AGR

COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

1    finding was advisory.

2    **4.    *Other Equitable Considerations Disfavor Disgorgement.***

3    As MGA explained in its Opening Brief, various equitable factors weigh

4    heavily ***against*** disgorgement of profits under the Lanham Act: (1) a defendant's

5    mental state, such as whether the defendant had the intent to confuse or deceive;

6    (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any

7    unreasonable delay by the plaintiff in asserting the plaintiff's rights; (5) the public

8    interest in making the misconduct unprofitable; and (6) whether it is a case of

9    "palming off."  *See Harbor Breeze*, 2023 WL 2652855, at *4 (citing *Kars 4 Kids*

10   *Inc. v. Am. Can!*, 8 F.4th 209, 223 (3d Cir. 2021)); *see* Dkt. 1046 at 14-15.  Other

11   than the first factor, Counterclaimants fail to meaningfully address any of these

12   equitable considerations.  The Court should treat their failure as a tacit admission

13   that these factors do not weigh in their favor.  *See Ramirez*, 941 F. Supp. 2d 1197,

14   1210 n.7.

15   Counterclaimants generally assert that disgorgement is necessary to make

16   MGA's infringement "unprofitable" (Dkt. 1064 at 1), but no public interest is

17   served here.  "This case does not involve willful misconduct, when the need to deter

18   misconduct is at its apex." *Harbor Breeze*, 2023 WL 2652855, at *8; *see* Dkt. 1046

19   at 12-14.  Indeed, compelling disgorgement where MGA's conduct is merely

20   negligent, at worst, would have a chilling effect on creativity and innovation in the

21   fashion doll space and the toy industry at large.  *Harbor Breeze*, 2023 WL 2652855,

22   at *8 (public has a competing interest in robust competition in the marketplace).

23   Further, MGA's conduct does not constitute "palming off" or "passing off,"

24   which Counterclaimants incorrectly define as "willfully infringing."  Dkt. 1064 at 6.

25   "Passing off" involves "selling a good or service of one person's creation under the

26   name or mark of another." *Harbor Breeze*, 2023 WL 2652855, at *8 (quoting

27   *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988)).  At no point

28   was MGA labeling its dolls with a mark identical to Counterclaimants' or using

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                25                 Case No. 2:20-cv-11548-JVS-AGR
                                                    COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                          BRIEF RE: EQUITABLE ISSUES

Counterclaimants' advertising material, samples, or photographs to represent the dolls were being sold by them. *See Lamothe*, 847 F.2d at 1406.

Considering these factors, and Counterclaimants' failure to refute them (or even address them), the Court should find that the weight of the equities does ***not*** favor disgorgement.

**C.     Counterclaimants Fail To Establish They Suffered Harm Justifying Their Requested Common Law Misappropriation Disgorgement Award.**

Counterclaimants agree they had the burden to establish a "resulting injury" springing from any purported misappropriation. Dkt. 1064 at 13. *See* Dkt. 326 at 25 (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)); Dkt. 1013 at 24 (Instruction No. 18). However, the various theoretical ways Counterclaimants argue they ***could have*** established requisite "harm"—*e.g.*, through unrealized licensing deals, "diverted revenue," lost opportunity to create a doll line, and emotional harm—do not amount to harm that justifies disgorgement of all of MGA's profits. *See* Dkt. 1064 at 12-13. The Court excluded each of these theories, and Counterclaimants cannot rely on them in a last-ditch effort to satisfy their burden. *See* Dkts. 502, 521.[6]

And MGA's profits cannot be used as a "surrogate measure" of Counterclaimants' harm. *See* Dkt. 326 at 33. The proxy theory of profits "is based on the idea that the defendant diverted sales that would have gone to the plaintiff ***but for*** the infringement" and is designed to compensate the plaintiff "for sales which he has lost as a result of his customers being diverted to the infringer." *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) (emphasis added). "[D]irect competition is required between the plaintiff and the infringer; 'if there is no competition, there can be no diversion of customers.'" *Id.*

---

[6] To the extent the jury inferred actual harm to satisfy liability, including testimony regarding purported emotional distress, that is inconsistent with this Court's Orders.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                26                    Case No. 2:20-cv-11548-JVS-AGR
                                                                  COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                  BRIEF RE: EQUITABLE ISSUES

1  (quoting *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121

2  (9th Cir. 1968)).  *Cf. Quia Corp. v. Mattel, Inc.*, No. C 10–1902 JF (HRL), 2011

3  WL 2749576, at *7 (N.D. Cal. July 14, 2011) ("Where a plaintiff and defendant are

4  in direct competition and the plaintiff is unable to prove its own lost sales, an award

5  of the defendant's profits may serve as proxy for what the plaintiff would have

6  recovered had the defendant not infringed upon . . . plaintiff's mark.").

7       MGA did not divert sales from the OMG Girlz—who were not a competitor,

8  did not produce any toys, and were not even active as a group until recently.

9  Unsurprisingly, there was no evidence that anyone who claimed to have bought

10  MGA's dolls would have otherwise spent money on the OMG Girlz.

11  **IV.   DISGORGEMENT AND PUNITIVE DAMAGES ARE NOT**

12  **AVAILABLE FOR COMMON LAW MISAPPROPRIATION**

13       **A.   Counterclaimants Cannot Establish That Disgorgement Is**

14       **Available For Common Law Misappropriation.**

15       As explained in MGA's Opening Brief, disgorgement is not a proper remedy

16  for common law misappropriation.  The legislative history of California Civil Code

17  § 3344 indicates that different remedies are available for statutory and common law

18  misappropriation claims.  Dkt. 1046 at 21.  Counterclaimants admit the "common

19  law cause of action is complemented legislatively by [section 3344]," and "the two

20  are not identical."  *See Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 414 (9th

21  Cir. 1996).

22       None of the other cases cited by Counterclaimants establish that

23  disgorgement is available for common law misappropriation alone.  *See* Dkt. 1064

24  at 9-11.  Indeed, those cases included a statutory misappropriation claim (for which

25  disgorgement of profits is explicitly provided as a remedy), and/or did not address

26  the availability of remedies on the merits.  *See Newcombe*, 157 F.3d at 696

27  (reversing grant of summary judgment on both common law and statutory

28  misappropriation claims); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001-03

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                           27                    Case No. 2:20-cv-11548-JVS-AGR
                                                           COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                           BRIEF RE: EQUITABLE ISSUES

1  (9th Cir. 2001) (same); *Forrest v. Meta Platforms, Inc.*, No. 22-CV-03699-PCP,

2  2024 WL 3024642, at *6 (N.D. Cal. June 17, 2024) (finding that plaintiff's

3  common law misappropriation claim was sufficiently pleaded where defendant had

4  gained a commercial advantage in the form of greater profits); *Batis v. Dun &*

5  *Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, at *6

6  (N.D. Cal. Feb. 9, 2023) (denying motion to dismiss common law and statutory

7  misappropriation claims); *Vanvakaris v. Fashion Forms, Inc.*, No.

8  CV197765DMGJEMX, 2019 WL 6245546, at *2-3 (C.D. Cal. Nov. 22, 2019)

9  (granting removal of action involving common law and statutory misappropriation).

10  **B.    Counterclaimants Cannot Establish That Punitive Damages Are**

11  **Available For Common Law Misappropriation.**

12  For the same statutory reasons that disgorgement is unavailable, punitive

13  damages are unavailable for a common law misappropriation claim.  That punitive

14  damages were sought or awarded in cases involving both common law and statutory

15  misappropriation claims again fail to establish that punitive damages are available

16  for the common law claim alone.  *See Eastwood v. Sera Labs, Inc.*, No. 2:20-CV-

17  06503-RGK (JDEx), 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021);

18  *Vanvakaris*, 2019 WL 6245546, at *1-2 & n.6; *Olive*, 30 Cal. App. 5th at 811, 822.

19  The other cases Counterclaimants rely on did not specifically address, much less

20  resolve, the statutory issue; rather, the disputes turned on other issues.  *See*

21  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1013 (9th Cir. 2004)

22  (punitive award in non-misappropriation case);*Waits v. Frito-Lay, Inc.*, 978 F.2d

23  1093, 1104-06 (9th Cir. 1992) (punitive damages disputed on the grounds that the

24  right to one's distinctive voice was not clearly established); *Leavy v. Cooney*, 214

25  Cal. App. 2d 496, 503 (1963) (defendant contended that exemplary damages for a

26  tortious invasion of plaintiff's right to privacy was unsupported by the facts).

27  **V.    COUNTERCLAIMANTS CANNOT SEEK DUPLICATIVE AWARDS**

28  Counterclaimants agree that they cannot seek double recovery for

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                    28                          Case No. 2:20-cv-11548-JVS-AGR
                                                                              COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
                                                                              BRIEF RE: EQUITABLE ISSUES

disgorgement under their trade dress infringement and common law misappropriation claims.  Dkt. 1064 at 14:9-11.  This makes sense, as double-recovery for the same harm is prohibited.  *See B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC*, No. CV 20-03857 TJH (SPX), 2023 WL 11835516, at *2 (C.D. Cal. July 20, 2023)) (citing *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016)) ("[I]f a party prevails on two claims that each provide for recovery for the same harm, that party must, then, elect its remedy based on one of the prevailing claims.").

Similarly, Counterclaimants cannot obtain both punitive damages and an enhancement under the Lanham Act.  While neither should be granted, they also would be impermissibly cumulative.  *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 165–66 (E.D.N.Y. 2016) ("Awarding punitive damages for unfair competition in addition to enhanced statutory damages for trademark infringement – when the same acts form the basis of both claims – would be cumulative"); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, No. 98 C 0287, 2001 WL 1345964, at *2 (N.D. Ill. Nov. 1, 2001) (awarding an enhancement under the Lanham Act and punitive damages "would amount to a duplicative recovery").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should not award any disgorgement or punitive damages to Counterclaimants.  To the extent the Court disagrees then, at most, the Court should award ***no more than*** 10-15% of MGA's profits on the seven dolls as disgorgement ($918,023 – $1,377,034), and no punitive damages.

Dated: December 13, 2024             UMBERG ZIPSER LLP

_____

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                                            29                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES

## CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2

The undersigned, counsel of record for MGA, certifies that this brief contains 6,997  words, which complies with the word limit of L.R. 11-6.1.

Dated: December 13, 2024                    UMBERG ZIPSER LLP

_____
Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{280194.13}                    30                    Case No. 2:20-cv-11548-JVS-AGR
COUNTER-DEFENDANTS' REPLY ISO POST-TRIAL
BRIEF RE: EQUITABLE ISSUES