Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen S. Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No. 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>        Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>        Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>        Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF POST-TRIAL BRIEFS REGARDING EQUITABLE ISSUES**<br><br>Complaint Filed: December 20, 2020<br>Trial Date: September 3, 2024<br><br>Hearing Date: January 6, 2025<br>Hearing Time: 3:00 P.M. |

Pursuant to the Court's November 12, 2024 Order (Dkt. 1059), Plaintiff and Counter-Defendant MGA Entertainment, Inc. and Counter Defendant Isaac Larian (collectively, "MGA") hereby submit their Proposed Findings of Fact and Conclusions of Law regarding the remaining equitable issues.

## I.    FINDINGS OF FACT

### A.    Background.

1.    MGA Entertainment, Inc. is a family-owned toy company founded by its CEO, Isaac Larian.  Trial Transcript ("TT") 9/19/24 AM at 97:12-13.  Although it has grown and launched several successful brands over the decades, MGA and Mr. Larian had humble beginnings.

2.    Mr. Larian grew up in poverty and immigrated to the United States from Iran when he was 17 years old.  *Id.* at 91:13-92:1.  After working various jobs and attending college, Mr. Larian started his own company and eventually got into the toy business.  *Id.* at 92:11-95:7, 95:24-9.

3.    MGA and Mr. Larian recognized the need for multicultural diversity in dolls and created the popular Bratz line in 2001 to help represent children like Mr. Larian's own daughter, Jasmin, who wanted dolls to have her skin color.  TT 9/4/24 PM at 118:17-19; TT 9/19/24 AM at 99:4-10, 109:12-13, 128:6-8.

4.    Clifford "T.I." Harris, Tameka "Tiny" Harris, and their affiliated entities—Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC— (collectively, the "Harris Parties") are in the music and entertainment industry.  TT 9/4/24 AM at 32:14-17; TT 9/6/24 PM at 43:24-44:3; 60:8-13.

5.    Around 2009, Ms. Harris developed a musical group called the OMG Girlz.  TT 9/4/24 AM at 33:1-2, 40:4-10; TT 9/6/24 PM at 61:10-12.  The OMG Girlz were primarily made up of three members—Zonnique Pullins (Ms. Harris' daughter), Bahja Rodriguez, and Breaunna Womack.  *Id.*  None of the individual members of the OMG Girlz are parties to the instant action.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}

1

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

6.     The OMG Girlz publicly announced that they broke up in 2015.  TT 9/6/24 AM at 118:15-20.  At trial, the Harris Parties described the OMG Girlz's inactivity as a "pause."  TT 9/4/24 AM at 66:2-3.

7.     In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!, which comprised small three-inch "Tot" dolls and were sold in mystery capsules such that the purchaser did not know what specific Tot they were buying. TT 9/11/24 AM at 41:18-42:20; TT 9/13/24 AM at 18:21-19:15, 20:14-16.

8.     The L.O.L. Surprise! collection was a huge success, quickly becoming a top-selling toy in the U.S. and winning many awards.  TT 9/11/24 AM at 42:10-20; TT 9/13/24 AM at 20:17-25; TT 9/19/24 AM at 102:5-103:1.

9.     In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls, which continued to playfully use a texting acronym theme and employed a mystery, "unboxing" concept.  *See* TT 9/13/24 AM at 23:3-6, 25:2-26:1; TT 9/13/24 PM at 60:24-61:10.

10.     Each L.O.L. Surprise! O.M.G. doll is the "older sister" (or "older brother") of a Tot doll, which informs the doll's theme, colors, and designs.  TT 9/13/24 AM at 18:2-4, 43:6-8; TT 9/13/24 PM at 16:12-16, 39:16-19.  The concept was to create a "family" of toys that customers could collect.  TT 9/13/24 AM at 17:25-18:7.

**B.     Procedural History.**

11.     On December 8, 2020, the Harris Parties sent a cease-and-desist letter to MGA, demanding that MGA stop distributing its L.O.L. Surprise! O.M.G. dolls, which they claimed copied the OMG Girlz's image.  TT 9/4/24 AM at 93:21-94:8, 110:22-111:2.  Specifically, the Harris Parties accused MGA of approaching them at an event in 2010 about creating a line of dolls based on the OMG Girlz.  *Id.* at 48:8-49:24, 107:1-108:11.

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                                   2

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

12.     After receiving the Harris Parties' letter threatening litigation, MGA brought the underlying declaratory judgment action in an effort to combat the false accusations and clarify the rights of the parties.  TT 9/19/24 PM at 43:13-44:4.

13.     The Harris Parties (specifically, Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC) brought counterclaims against MGA for trademark and trade dress infringement under the Lanham Act; statutory misappropriation of name or likeness under California Civil Code § 3344; common law misappropriation of name or likeness; and unfair competition.  Dkt. 61 (Third Amended Counterclaims). The original counterclaims also included a fraud claim, based on MGA's alleged "public announcement" that it "intended to release a line of dolls based on the OMG Girlz in collaboration with the OMG Parties."  Dkt. 13 ¶ 60.

14.     At summary judgment, the Court dismissed more than half of the over 70 dolls at issue as well as the statutory misappropriation of likeness, unfair competition, and trademark infringement claims.  Dkt. 326 at 23, 30.  The case proceeded on the Harris Parties' claims for trade dress infringement and common law misappropriation as to the remaining 32 dolls and MGA's declaratory judgment claim that those 32 dolls did not infringe or misappropriate the Harris Parties' intellectual property.

15.     There have been three trials in this case, including one mistrial.  In the second trial, which occurred in May 2023, the jury found in favor of MGA, finding no liability on both of the Harris Parties' claims as to each of the 32 dolls that remained in the case following summary judgment.  Dkt. 771.

16.     Following the conclusion of the second trial, the Supreme Court issued its ruling in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023). Based on that ruling, the Court held that one of the jury instructions related to the Harris Parties' trade dress claim was erroneous and granted a new trial as to both of the Harris Parties' claims.  Dkt. 860.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}

3

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

17.     Prior to the new trial, the Court ruled that any "[v]erdicts on equitable issues will be regarded as advisory." Dkt. 924 at 2 (Final Pretrial Conference Order).

18.     The third trial took place in September 2024. *See* Dkts. 944, 1006.

19.     In the third trial, the Harris Parties sought liability and disgorgement only as to seven of the 32 dolls at issue. TT 9/18/24 AM at 7:21-23 ("We are only seeking liability on seven dolls."); TT 9/20/24 AM at 146:2 ("We're not asking for any money on those [25 dolls]"). The Court found that, based on the Harris Parties' statements and conduct, the Harris Parties abandoned any monetary claim with respect to any doll beyond those seven. TT 9/18/24 AM at 8:22-24.

20.     Despite disclaiming liability and monetary relief on 25 of the 32 dolls at issue, the Harris Parties still contended throughout trial that all of MGA's dolls included their trade dress and likeness. *See, e.g.*, TT 9/4/24 AM at 97:10-15; TT 9/20/24 AM at 145:22-146:2.

**C.    <u>There Was No Evidence Of Willfulness</u>.**

21.     At trial, the Harris Parties presented no evidence of any interaction between them and MGA at the 2010 event described in the December 8, 2020 cease-and-desist letter. Ms. Harris testified she could not confirm that anyone from MGA actually spoke with her about a possible doll line, or that anyone from MGA was even present at the event. TT 9/4/24 AM at 107:21-108:25.

22.     MGA did not label its dolls with a mark identical to the Harris Parties' or otherwise expressly misrepresent the origin of the dolls. *See* TT 9/4/24 AM at 52:21-53:1-11 (describing the Harris Parties' claimed trade dress as comprising three components, which "always" included the name "OMG Girlz"). Nor was there any evidence that MGA ever used the Harris Parties' advertising material, samples, and/or photographs to represent that the dolls were affiliated with the Harris Parties.

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                                    4

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

23.    MGA's designers, including the creator of the L.O.L. Surprise! line Ms. Blanche Consorti, credibly testified that they never copied or were inspired by the OMG Girlz.  TT 9/17/24 AM at 12:4-7, 22:22-24, 69:6-70-8; TT 9/19/24 AM at 22:17-23:4, 28:10-14, 40:10-41:10.

24.    While some celebrities may have served as "inspiration," MGA's designers testified that the dolls were distinct from any person.  *See, e.g.*, TT 9/10/24 PM at 34:21-35:4; TT 9/18/24 PM at 111:15-19; TT 9/19/24 AM at 62:11-14.

25.    Indeed, MGA's designers testified that the dolls, which had "cartoonish proportion[s]" and "stylized face[s]," among other features, were not meant to look like any human.  TT 9/17/24 AM 25:19-26:18, 37:13-15, 58:14-24; 9/19-24 AM at 41:7-10.

26.    MGA's designers further testified that the ultimate outfit, color tones, embellishments, and accessories for each doll are a group effort that require input from a large team of individuals, adding their own artistic vision through "hundreds" of creative decisions.  *See* TT 9/17/24 AM at 31:6-10, 38:9-14, 45:2-5, 77:24-78:3; TT 9/18/24 PM at 109:13-15, 118:2-4.

27.    There was no evidence that MGA ever used the Harris Parties' trade dress to increase its market share among non-white children.  On the contrary, MGA's witnesses credibly testified that MGA's dolls were designed for and marketed to all children, not just one demographic.  TT 9/13/24 AM at 80:20-23; TT 9/18/24 PM at 115:15-116:7; TT 9/19/24 AM at 125:16-25.

28.    Mr. Larian explained that it would not have made any "business sense" for MGA to create dolls based on the OMG Girlz because the OMG Girlz were not well known, especially to the children who were buying the dolls.  TT 9/19/24 AM at 110:21-112:3.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                            5

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**D.**     **The Harris Parties Sought Disgorgement For Their Claims, Rather Than Any Actual Or Compensatory Damages.**

29.     Based on the Harris Parties' discovery and expert disclosures, the Court excluded all claims for monetary relief other than disgorgement, including loss opportunities and direct lost profits calculation, or the Harris Parties' damages. Dkt. 502.

30.     The Court thereafter specifically excluded the Harris Parties from seeking, or presenting evidence relating to, emotional distress damages. Dkt. 521. Thus, the Harris Parties were precluded from pursuing, or presenting evidence related to, any claim for monetary relief other than disgorgement.

31.     At trial, and consistent with the Court's rulings, the Harris Parties were not permitted to rely on evidence of harm in the form of loss of future earnings, loss of licensing opportunities, or emotional distress, as a result of MGA selling its dolls.

32.     While Ms. Harris testified that the OMG Girlz entered into a licensing deal with a water company called WAT-AHH, there was no testimony as to the deal's value or whether that deal was indicative of the OMG Girlz's market value for dolls. TT 9/4/24 AM at 65:16-24.

33.     At one point in 2012, the Harris Parties briefly explored a doll line for the OMG Girlz (years before MGA's dolls were launched), but they quickly abandoned those efforts and provided no details regarding any harm in 2024. *Id.* at 50:1-23.

34.     The Harris Parties presented no evidence that MGA diverted any sales from the OMG Girlz. The Harris Parties and MGA are not competitors; the Harris Parties have never produced or sold any toys; and the OMG Girlz had few performances after their break-up in 2015 until recently. There was no evidence that anyone who claimed to have bought MGA's dolls would have otherwise spent money on the OMG Girlz.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                    6

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**E.**     **MGA's Expert Testimony And Scientific Survey Evidence Demonstrated That None Of MGA's Profits Were Attributable To The Infringement Found By The Jury.**

35.     MGA's damages expert, Dr. Russell Mangum, calculated MGA's profits on the seven accused dolls to be $9,180,227.  TT 9/19/24 PM at 96:10-12. This figure accounts for deductible fixed overhead costs, which included salaries of designers and employees involved in marketing the dolls as well as facilities and equipment to make the dolls.  *Id.* at 86:15-88:23.  Dr. Mangum credibly testified that such expenses "incurred in connection with making, selling, designing, [and] marketing" the dolls were not otherwise captured in other categories of costs.  *Id.* at 93:8-11.

36.     Dr. Mangum also testified that "no portion of [MGA's] profits can be attributable to the alleged likeness or trade dress related to the OMG Girlz."  *Id.* at 111:13-16.  To reach his conclusion, Dr. Mangum compared the revenue generated by the 32 dolls that remained accused at the outset of trial with the revenue generated by the dolls that the Court determined did not infringe at summary judgment.  *Id.* at 103:22-104:18.

37.     To account for variables such as when the dolls were released, he reviewed how dolls within the same "series"—and therefore dolls that were launched together—performed in the marketplace.  *Id.*  Dr. Magnum testified that a commercial benefit, if it existed, would be discernable for any doll that bore the Harris Parties alleged trade dress and likeness, regardless of whether the Harris Parties sought damages on them.  *Id.* at 105:3-11.

38.     Dr. Mangum observed no commercial benefit from selling dolls that bore the Harris Parties' alleged trade dress or likeness.  *Id.* at 110:3-22. Dr. Mangum thus concluded that factors other than the alleged infringement were driving the sales of the accused dolls, including the popularity of the preexisting

Umberg Zipser LLP
Attorneys At Law
Irvine

{278863.8}

7

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   L.O.L. Surprise! line, the concept of the "little sisters," or the unboxing experience.

2   *Id.*

3       39.    Dr. Mangum's conclusion is consistent with MGA's scientific survey

4   evidence.  MGA's survey expert, Dr. Bruce Isaacson, conducted two separate

5   scientifically sound surveys: A likelihood of confusion survey and a likeness

6   survey.  TT 9/18/24 AM at 95:19-96:8.  Dr. Isaacson's likelihood of confusion

7   survey, which had more than 1500 participants, resulted in zero percent confusion.

8   *Id.* at 131:1-7.  Dr. Isaacson's likeness survey, which had almost 1300 participants,

9   had similar results.  TT 9/18/24 PM at 17:20-18:9.  Zero people identified any of

10  the dolls in the survey as looking like any of the OMG Girlz.  *Id.* at 13:3-14:2.

11      40.    In other words, not a single participant in either of Dr. Isaacson's

12  scientific surveys associated the dolls with the OMG Girlz.  *Id.* at 6:23-7:20, 17:4-

13  18:9; 13:3-14:2; TT 9/18/24 AM at 131:1-7.

14      41.    Dr. Isaacson concluded that, based on the scientific surveys he

15  conducted, (i) consumers are not likely to believe that the dolls are affiliated with

16  the OMG Girlz and are not likely to believe the dolls look like the OMG Girlz;

17  (ii) the OMG Girlz are not well-known; or (iii) both are true.  TT 9/18/24 PM at

18  6:23-7:20, 17:4-18:9.

19      42.    Other trial testimony was consistent with the conclusions reached by

20  MGA's experts.  Ms. Rachel Brenner, who marketed the dolls, testified that based

21  on her experience and internal marketing reports, customers were interested in the

22  dolls for reasons unrelated to the OMG Girlz.  *See* Dkt. 1062-4 (Trial Ex. 1091) at

23  15, 37.  For example, children loved the Tots or the L.O.L. Surprise! brand; they

24  liked the long, brushable hair; and/or they believed the dolls resembled themselves.

25  TT 9/13/14 AM at 41:3-6, 46:4-25.  Customers also liked the unboxing experience,

26  dressing the dolls, and styling their hair—none of which relate to the dolls'

27  appearance.  *Id.* at 47:17-48:22.

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}

8

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

43.     The Harris Parties did not present any survey evidence.  Their only evidence of alleged confusion between MGA's dolls and the OMG Girlz comes from friends, family, and fans who responded to social media posts by Ms. Harris and Ms. Pullins.  *See, e.g.*, TT 9/4/24 AM at 78:21-85:6.

44.     Each of the four consumer witnesses who testified regarding confusion were active fans of the Harris Parties and/or the OMG Girlz.  *See, e.g.*, TT 9/10/24 AM at 48:13-14; Dkt. 935-1 (M. Wagner Dep. at 24:2-3; 24:19-24, 44:12-17, 46:14-15, 52:10-18, 53:1-2); *id.* (M. Campbell Dep. at 54:17-57:17, 59:25-60:21); Dkt. 959-1 (W. Osborne Dep. Vol. 2 at 74:19-21, 80:17-25, 84:6-23).

45.     One of those consumer witnesses testified that she bought MGA's dolls for their popularity even after she questioned whether the dolls were related to the OMG Girlz.  *See* Dkt. 935-1 (M. Campbell Dep. at 138:6-18).

**F.      The Jury Returned An Advisory Verdict On Disgorgement and Punitive Damages.**

46.     The jury found in favor of the Harris Parties on their claims for trade dress infringement and common law misappropriation on all seven dolls pursued by the Harris Parties.  Dkt. 1009.  The jury also found that, in response to MGA's declaratory judgment claim, several additional dolls infringed on the Harris Parties' trade dress and/or the name, likeness, or identity of the OMG Girlz.  *Id.*

47.     The jury returned an advisory disgorgement award of $17,872,253 for each of the two claims, as well as an advisory award of $53,616,759 in punitive damages on the common law misappropriation claim.  *Id.*; Dkt. 1011.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                              9

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## II.    CONCLUSIONS OF LAW

**A.    The Jury's Disgorgement And Punitive Damages Awards Were Advisory.**

    **i.    *A Lanham Act Disgorgement Award (15 U.S.C. § 1117(a)) Is Equitable.***

48.    The parties agree that, whether to award the purported infringer's profits under the Lanham Act and, if so, how much to award, is an equitable question left for the Court.  *See* Dkt. 1046 at 9-10; Dkt. 1064 at 2.

49.    For recovery under the Lanham Act for trade dress infringement, the statute provides, in relevant part:

> [T]he plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and ***subject to the principles of equity***, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  ***If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.***  Such sum in either of the above circumstances ***shall constitute compensation and not a penalty***.

15 U.S.C. § 1117(a) (emphases added).

50.    "An award of profits 'is not automatic' upon a finding of infringement.  Rather, profits 'must be granted in light of equitable considerations.'"  *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.* (*Fifty-Six Hope*), 778 F.3d 1059, 1073 (9th

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}    10

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Cir. 2015) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218)) (internal citations omitted).

51.    The Ninth Circuit has held that "[a] claim for disgorgement of profits under [15 U.S.C.] § 1117(a) is equitable, not legal." *Id.* at 1075; *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110, 112 (9th Cir. 2020) (no right to a jury trial on claim for disgorgement of profits under the Lanham Act).

52.    The only theory for monetary relief that the Harris Parties proffered at trial, and the only theory reflected in the jury instructions, is disgorgement of MGA's profits—an equitable remedy. *See Liu v. SEC*, 591 U.S. 71, 80 (2020) ("[A] remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts."). Indeed, as stated above, the Harris Parties were barred from presenting any other theory of recovery due to their discovery conduct. Dkt. 502, 521.

53.    The jury's advisory rulings are not given any deference as they are of "no binding legal significance." *See ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-CV-01968-JVS (ADSX), 2024 WL 3914667, at *2 (C.D. Cal. July 19, 2024) (Selna, J.) (quoting *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 563 (4th Cir. 2018)).

54.    The Lanham Act provides for disgorgement of profits as a remedy, but only to the extent the profits are attributable to the infringement and "subject to the principles of equity." 15 U.S.C. § 1117(a).

ii.    ***A Common Law Misappropriation Disgorgement Award Is Equitable.***

55.    As with the Lanham Act award, the parties agree that any disgorgement award for common law misappropriation is also equitable. *See* Dkt. 1046 at 10-11; Dkt. 1064 at 2.

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                                    11

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

56.    "Federal courts . . . hold that the right to a jury trial is a federal procedural issue controlled by federal law." *In re Cnty. of Orange*, 784 F.3d 520, 528 (9th Cir. 2015).  Indeed, in considering whether state or federal law governs when a court must determine if an action is legal or equitable "for the purpose of deciding whether the claimant has a right to a jury trial," the Supreme Court held in *Simler v. Conner* that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."  372 U.S. 221, 222 (1963).  Thus, the Court need only consider federal law on this point. *See id.*; *see also* Fed. R. Civ. P. 39(a)(2) & (c)(1).

57.    And under federal law, "a remedy **tethered to a wrongdoer's net unlawful profits, whatever the name**, has been a mainstay of **equity courts**."  *Liu*, 591 U.S. at 80 (emphasis added).

58.    In any event, California courts, like federal courts, have long recognized that disgorgement is equitable in nature.  *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 293 (2020) ("At early common law, . . . 'equitable' causes of action . . . sought relief that was unavailable in actions at law, such as . . . an order requiring a defendant to provide specific performance or **disgorge ill-gotten gains**." (emphasis added)).  California courts also distinguish disgorgement from the "legal remedy" of damages.  *See, e.g.*, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 396-98 (2014); *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 910 (2008).

**iii.    *A Punitive Damages Award, When Based On A Disgorgement Award, Is Equitable.***

59.    Whether punitive damages based solely on a claim seeking equitable disgorgement are available (and, if so, how much) is an equitable question.  Recently, the Ninth Circuit addressed this issue in *Proofpoint, Inc. v. Vade USA, Inc.*, Nos. 23-16085 and 23-16175, 2024 WL 4003096, at *1 (9th Cir. Aug. 30, 2024).  In *Proofpoint*, the Ninth Circuit affirmed the district court's denial of the

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                    12

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    plaintiffs' request for a jury trial on exemplary damages in a trade secret

2    misappropriation case, concluding that the Seventh Amendment right to a jury trial

3    did not extend to exemplary damages where the sole relief awarded was

4    "disgorgement of the defendant's profits." *Id.* In support of this position, the Ninth

5    Circuit cited *Liu*, 591 U.S. at 80, where the Supreme Court "confirm[ed] that a

6    remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been

7    a mainstay of equity courts."

8        60.    The Seventh Amendment preserves the right to jury trial if it "existed

9    under the English common law when the [Seventh] Amendment was adopted."

10   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996) (citation

11   omitted). And as the Ninth Circuit held, "actions for disgorgement of improper

12   profits are equitable in nature" and were not "traditionally tried to a jury" in actions

13   at law. *Fifty-Six Hope*, 778 F.3d at 1075; *see Tex. Advanced Optoelectronic Sols.,*

14   *Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1325-26 (Fed. Cir. 2018).

15       61.    The Harris Parties advance the same argument that was raised by the

16   plaintiffs in *Proofpoint* and soundly rejected by the Ninth Circuit—namely, that all

17   punitive or exemplary damages are legal remedies that must be determined by a

18   jury under the Seventh Amendment. *See Proofpoint*, 2024 WL 4003096, at *1.

19       62.    Further, the Harris Parties' reliance on state law is misguided because,

20   as explained above, federal law controls when determining whether a claim is legal

21   or equitable here. *See Simler*, 372 U.S. at 222. Significantly, the Harris Parties fail

22   to identify any federal caselaw supporting their position that punitive damages are

23   legal under the circumstances here. *See* Dkt. 1064 at 2-3.

24       63.    Accordingly, whether any punitive damages should be awarded here

25   and, if so, how much should be awarded, are equitable issues exclusively for this

26   Court.

27

28

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                                    13

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**B.**     <u>**The Harris Parties Are Not Entitled To Any Disgorgement Under The Lanham Act**</u>.

64.     The Court concludes that the Harris Parties are foreclosed from disgorging MGA's profits here because (1) MGA did not willfully infringe; (2) equitable considerations do not weigh in favor of disgorgement; and (3) none of MGA's profits were attributable to the infringement.

     **i.**     *MGA Did Not Willfully Infringe The Harris Parties' Trade Dress.*

65.     Although willfulness is no longer required for an award of disgorgement of the defendant's profits, "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate," consistent with the "principle long reflected in equity practice." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

66.     Thus, disgorgement generally remains an appropriate remedy only where the defendant engaged in intentional wrongdoing. *See Airhawk Int'l, LLC v. Ontel Prods. Corp.*, No. 18-cv-00073-MMA-AGS, 2020 WL 2306440, at *5 (S.D. Cal. May 8, 2020).

67.     The Ninth Circuit explained in *Fifty-Six Hope*:

> Willful infringement carries a connotation of deliberate intent to deceive.  Generally, deliberate, false, misleading, or fraudulent . . . conduct . . . meets this standard.  Willfulness . . . require[s] a connection between a defendant's awareness of its competitors and its actions at those competitors' expense.

778 F.3d at 1074 (internal quotation marks and citations omitted).

68.     At summary judgment, the Court found that the Harris Parties failed to even raise a question of fact regarding MGA's willfulness.  Dkt. 326 at 32.  The Court did not reject the disgorgement remedy at the time only because "the question of willfulness [was] at issue in the Counterclaimants' motion for sanctions for spoliation of evidence." *Id.*  Subsequently, that spoliation motion was denied (Dkt.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{278863.8}                14

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

503), and no legitimate spoliation issues were raised at trial.  *See* Dkt. 977 at 1-2 (MGA addressed the Harris Parties' failure to timely raise discovery issues and indicated that purportedly "missing" emails from Mr. Shir-Ami Thompson were, in fact, produced).  Further, there was no finding related to spoliation.

69.     While the jury found willfulness, that finding was necessarily advisory and is not entitled to any deference because the only remedy sought was equitable. *See ConsumerDirect, Inc.*, 2024 WL 3914667, at *2.

70.     In considering the remedy of equitable disgorgement under the Lanham Act, the Court is the factfinder regarding MGA's state of mind, just as it is the factfinder as to other factual issues that bear on any disgorgement award.  *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV 17-01613-CJC (DFMx), 2023 WL 2652855, at *5 (C.D. Cal. Mar. 13, 2023) (district court concluding after a two-day bench trial that the defendants' trademark infringement was not willful and that their mental state did not favor disgorgement); *3M Co. v. Mohan*, 482 F. App'x 574, 578 (Fed. Cir. 2012) (holding that "[t]he district court's decision to hold a bench trial on the issue of trademark infringement did not violate . . . [the] Seventh Amendment right to a jury trial" where the only remedies sought were equitable).

71.     The Harris Parties argued during their closing argument that MGA "knew about the OMG Girlz . . . [and] didn't take any steps to avoid brand confusion."  TT 9/20/24 AM at 142:23-25.  But "district courts in this Circuit have concluded that the failure to stop using a mark even after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith."  *Reserve Media, Inc. v. Efficient Frontiers, Inc.*, No. CV 15-05072 DDP (AGRx), 2017 WL 123420, at *10 (C.D. Cal. Jan. 11, 2017) (internal quotation marks omitted).

72.     In any event, MGA did not ignore the Harris Parties' cease-and-desist letter.  On the contrary, MGA promptly filed a declaratory judgment lawsuit to

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                                    15

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

initiate the discovery process and clarify the parties' rights. *See* TT 9/19/24 PM at 43:13-44:4.

73.     As part of the ensuing litigation, only MGA conducted scientific surveys to help determine the merits of the parties' claims. And that the jury from the second trial concluded MGA was not liable for either of the Harris Parties' claims confirms that MGA's belief of innocence was reasonable. *See* Dkt. 771; *San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) ("Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law.").

74.     Moreover, there was no evidence at trial that MGA was ever aware of the OMG Girlz's success, let alone that MGA used the OMG Girlz's trade dress to increase its market share among non-white children, as the Harris Parties contend. Dkt. 1045 at 14. On the contrary, the evidence at trial showed that there was zero commercial benefit for selling dolls that included the Harris Parties' claimed trade dress, *see* Section I.E, *supra*. And MGA's witnesses credibly testified that MGA's dolls were marketed to all children. *See* TT 9/13/24 AM at 80:20-23; TT 9/18/24 PM at 115:15-116:7; TT 9/19/24 AM at 125:16-25.

75.     The second jury's finding of noninfringement on all 32 dolls remaining after summary judgment further refutes the Harris Parties' argument that MGA "callously disregarded" the Harris Parties' rights, "taunted" them by making new dolls that infringed, or otherwise acted in bad faith. *See* Dkt. 1045 at 23.

76.     Further, willfulness cannot be inferred where MGA's witnesses merely testified that they did not believe the dolls looked like human beings; distinguished the dolls from the OMG Girlz's various looks; or believed that the OMG Girlz were unknown. Such testimony does not demonstrate a "deliberate intent to deceive." *See Fifty-Six Hope*, 778 F.3d at 1074.

77.     Nor can willfulness be inferred, as the Harris Parties suggest, because MGA referred to their case as a "money grab" and MGA's witnesses supposedly

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                16

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    "had an unnecessarily hostile and sarcastic demeanor toward the OMG Girlz." Dkt.

2    1045 at 27. None of this alleged trial conduct is relevant to whether MGA willfully

3    infringed the Harris Parties' trade dress. *Cf. DC Comics v. Towle*, 802 F.3d 1012,

4    1026 (9th Cir. 2015) ("Willful trademark infringement occurs when the defendant's

5    actions are 'willfully calculated to exploit the advantage of an established mark.'")

6    (quoting *Lindy Pen*, 982 F.2d at 1405).

7       78.    The Harris Parties have contended that MGA had knowledge of their

8    infringement based on a December 2019 email exchange in which MGA employees

9    discuss the lyrics of a song, which the employees believed included a line about the

10    "OMG Dolls." *See* Dkt. 1064 at 19. As this Court previously ruled, "[t]he email

11    exchange only demonstrates that an employee, who was not the designer on the

12    email thread, knew who the OMG Girlz were; not that the OMG Girlz had an

13    influence on the design." Dkt. 326 at 32. This email exchange also does not

14    support a finding of willfulness.

15       79.    Based on the evidence at trial, the Court concludes that MGA did not

16    willfully infringe the OMG Girlz's trade dress and disgorgement is unwarranted on

17    that basis. *See Harbor Breeze*, 2023 WL 2652855, at *5 (finding that defendants'

18    mental state did not favor disgorgement where "[defendants] were at worst

19    negligent, not willful").

20       **ii.**       ***Other Equitable Considerations Do Not Support Disgorgement.***

21       80.    "[D]isgorgement is 'subject to the principles of equity,'—

22    'fundamental rules that apply . . . systematically across claims and practice areas.'"

23    *Id.* at *4 (citing 15 U.S.C. § 1117(a) and *Romag*, 590 U.S. at 217). These principles

24    include (1) a defendant's mental state, such as whether the defendant had the intent

25    to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of

26    other remedies; (4) any unreasonable delay by the plaintiff in asserting the

27    plaintiff's rights; (5) the public interest in making the misconduct unprofitable; and

28

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}

17

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

(6) whether it is a case of "palming off." *Id.* (citing *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 223 (3d Cir. 2021)).

81.    First, as explained above, MGA's mental state does not support disgorgement. *See id.* ("Willfulness is more culpable than negligence; the former generally supports disgorging ill-gotten gains, while the latter generally does not.").

82.    Second, the Harris Parties did not have any sales diverted to MGA. *See Maier Brewing Co. v. Fleischman Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968).  Indeed, the parties are not competitors.

83.    Third, the "adequacy of other remedies" factor is neutral.  Injunctive relief is not appropriate here because the Harris Parties are not being harmed by MGA's actions and such relief would be infeasible given the nature of the Harris Parties' trade dress, which encompasses various and wide-ranging looks.

84.    Fourth, the "unreasonable delay" factor does not support disgorgement. It was MGA, not the Harris Parties, that first requested court involvement.

85.    Fifth, MGA is not "palming off," or "passing off," its dolls under the Harris Parties' name or mark. *See Harbor Breeze*, 2023 WL 2652855, at *8. "Passing off" involves "selling a good or service of one person's creation under the name or mark of another." *Id.* (quoting *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988)).  At no point was MGA labeling its dolls with a mark identical to the Harris Parties' (or otherwise expressly mispresenting that the origin of the dolls) or using the Harris Parties' advertising material, samples, and/or photographs to represent the dolls were being sold by the Harris Parties.  *See Lamothe*, 847 F.2d at 1406.

86.    Finally, the public interest in making infringement unprofitable would not be served here.  "This case does not involve willful misconduct, when the need to deter misconduct is at its apex." *Harbor Breeze*, 2023 WL 2652855 at *8. Indeed, compelling disgorgement under the instant circumstances—where MGA's conduct is merely negligent, at worst—would have a chilling effect on creativity

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                   18

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  and innovation in the fashion doll space and the toy industry at large.  Thus, this

2  factor "only marginally favors [the Harris Parties]—if at all."  *See id.*

3      87.    Considering these factors, the Court finds that the weight of the

4  equities does not favor disgorgement.

5      88.    Accordingly, the Court concludes that, as a matter of equity, the Harris

6  Parties are not entitled to any disgorgement remedy on their trade dress claim.

7  **iii.    *MGA's Profits On The Dolls Were Not Attributable To The***

8  ***Infringement Found By The Jury.***

9      89.    In addition to the fact that the Harris Parties are not entitled to

10  disgorgement as a matter of equity, there are no profits to disgorge.

11      90.    The Harris Parties are only entitled to those profits that are

12  "attributable to the infringement," if any.  *See Globefill Inc. v. Elements Spirits,*

13  *Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) (citing 15 U.S.C. § 1117(a)); *see also*

14  Dkt. 1013 at 26 (Court's Instruction No. 20); *Maier Brewing*, 390 F.2d at 124 ("The

15  plaintiff of course is not entitled to profits demonstrably not attributable to the

16  unlawful use of his mark."); *Orgain, Inc. v. Iovate Health Scis. Int'l, Inc.*, No. 8:18-

17  CV-01253-JLS-ADS, 2024 WL 2278194, at *1 (C.D. Cal. Apr. 17, 2024) ("[A]

18  court may disgorge only those profits with a nexus to the defendant's

19  infringement.").

20      91.    Here, MGA's experts credibly testified that, based on scientific survey

21  evidence and their analyses, consumers did not associate MGA's dolls with the

22  OMG Girlz, and there was no commercial benefit for selling dolls that bore the

23  alleged trade dress or likeness.  TT 9/18/24 PM at 6:23-7:20, 17:4-18:9; TT 9/19/24

24  PM at 110:3-22.

25      92.    Significantly, the Harris Parties failed to put on credible countervailing

26  evidence of attribution, as discussed in Section I.E, *supra*.  Any evidence of alleged

27  confusion between MGA's dolls and the OMG Girlz from the OMG Girlz's friends,

28  family, and fans who responded to social media posts by Ms. Harris and Ms. Pullins

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                    19

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

is entitled to very little weight.  *See JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1111 (9th Cir. 2016) ("Evidence from such 'partial source[s] possesses very limited probative value.'") (quoting *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999)).

93.    Based on the evidence presented at trial, as discussed in Section I.E, *supra*, MGA met its burden of proving deductible costs.  *See* 15 U.S.C. § 1117(a); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (allowing deduction for overhead that was "of actual assistance in the production, distribution or sale of the infringing product"); *see also Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (fixed costs may be deducted where they "actually contributed to the infringing product").  Thus, MGA's profits on the seven accused dolls were no more than $9,180,227.  TT 9/19/24 PM at 96:10-12.

94.    Even assuming, *arguendo*, that disgorgement is available and that the equities weighed in favor of some disgorgement, no more than 10-15% of MGA's profits from the seven accused dolls could possibly be disgorged after accounting for MGA's fixed overhead costs.

95.    At trial, the Harris Parties criticized Dr. Mangum's comparative analysis because that analysis did not include the dolls from the four-pack Remix Surprise, which was the "second highest selling L.O.L. Surprise! O.M.G. product." TT 9/19/24 PM at 124:7-23.  But it would not have been possible for Dr. Mangum to have included those dolls in his trial analysis because all four dolls in that series were accused and, thus, there were no non-infringing dolls in that series to make a comparison.  Given that the jury has found that two of the four dolls in the Remix Surprise are infringing (Metal Chick and Bhad Gurl), and the other two are non-infringing (Ferocious and Fame Queen), it is now possible to compare the relative sales of those four dolls when they were sold individually.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}

20

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

96.     As set forth in the schedule that the Harris Parties' expert Mr. Tregillis relied on, the total revenue of Metal Chick and Bhad Gurl, when sold outside of the four-pack, was $3,464,558, whereas the total revenue of Ferocious and Fame Queen, when sold outside of the four-pack, was $3,138,165.  *See* Dkt. 1046-2. Thus, Metal Chick and Bhad Gurl outperformed Ferocious and Fame Queen by about 10% when the dolls were sold separately.

97.     Applying this 10% difference to the entire L.O.L. Surprise! O.M.G. line (even though a broader application shows there was no revenue benefit with the infringing dolls), disgorgement could not exceed $918,023 (10% of $9,180,227),

98.     Alternatively, based on several internal studies that MGA performed prior to the instant action, no more than 15% of profits could possibly be attributable to the visual "style" of the dolls in the L.O.L. Surprise! O.M.G. line, which broadly included aspects such as accessories, clothes, and fashion.  *See* Dkt. 1062-3 (Trial Ex. 1090) at 74; Dkt. 1062-4 (Trial Ex. 1091) at 15; Dkt. 1062-5 (Trial Ex. 5018) at 19.  Thus, the maximum disgorgement for all MGA's profits attributable to the "style of the dolls" could be no more than $1,377,034 (15% of $9,180,227).

99.     If the Court were to award any disgorgement, it would be no greater than $918,023 to $1,377,034 (10-15 % of $9,180,227).  However, based on the evidence presented at trial, the Court concludes that MGA's profits are "demonstrably not attributable" to the alleged infringement.  *See Maier Brewing*, 390 F.2d at 124.  Accordingly, none of MGA's profits can be disgorged.

### iv.     *Any Disgorgement Award Will Not Be Increased.*

100.     Because the Court concludes that disgorgement of MGA's profits is unavailable, there is no amount to treble, as requested by the Harris Parties in their motion for an enhanced award under the Lanham Act.  Dkt. 1045.

101.     Additionally, 15 U.S.C. § 1117(a) only allows for trebling of *damages* sustained by the plaintiff, as opposed to "defendant's profits."  *Nutting v. RAM Sw.,*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                    21

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Inc.*, 69 F. App'x 454, 458 (Fed. Cir. 2003) (explaining section 1117(a) "does not explicitly provide for trebling an award of defendant's profits"); *Aoki v. Gilbert*, No.2:11-cv-02797-TLN-CKD, 2020 WL 6741693, at *31 (E.D. Cal. Nov. 17, 2020) ("Treble damages are not appropriate on Defendants' profits, as distinguished from Plaintiffs' damages."). *Accord Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) (finding that district court erred in awarding treble disgorgement award, "which are punitive and are not authorized by § 1117(a) for a recovery based on profits").

102.    The Ninth Circuit has distinguished between "defendant's profits" and "any damages sustained by the plaintiff," as the plain text of section 1117(a) compels. *Jason Scott Collection, Inc. v. Trendily Furniture*, LLC, 68 F.4th 1203, 1220 n.11 (9th Cir. 2023) ("'Defendant's profits' are a form of disgorgement and are typically calculated based on the infringer's overall gross revenue from the infringement less the infringer's expenses. By contrast, 'any damages sustained by the plaintiff' include compensatory damages arising from any 'reasonably foreseeable harms' caused by the wrong.") (internal citations omitted).

103.    Accordingly, the Harris Parties' request for treble MGA's profits (Dkt. 1045) must be denied.

104.    Courts may sometimes increase or decrease profit awards. Under section 1117(a), if the court believes "the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). However, such sum "shall constitute compensation and not a penalty." *Id*.

105.    The Court must "tread lightly when deciding whether to award increased profits, because granting an increase could easily transfigure an otherwise-acceptable compensatory award into an impermissible punitive measure." *Fifty-Six Hope*, 778 F.3d at 1077.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                    22

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

106.    Equitable considerations, including MGA's lack of willfulness, weigh against increasing any disgorgement award.  *See supra* Section II.B.i-ii.

107.    Thus, even if a disgorgement award were appropriate here, which it is not, the Court would not increase the award under its equitable powers.

**C.    <u>The Harris Parties Are Not Entitled To Any Disgorgement Or Punitive Damages For Common Law Misappropriation</u>.**

    **i.    *Disgorgement And Punitive Damages Are Unavailable For Common Law Misappropriation.***

108.    The legislative history of California Civil Code § 3344 (statutory misappropriation) confirms that there is a distinction between the remedies available for statutory versus common law misappropriation claims.  The original section 3344(g) provided that the "remedies provided for [under section 3344] are cumulative and shall be in addition to any others provided for by law."  Cal. Civ. Code § 3344(g) (1971 ed.).  In 1984, the California legislature amended section 3344 and modified section 3344(a) to "allow[] a plaintiff to recover punitive damages and the defendant's disgorged profits[.]"  *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (discussing legislative history).

109.    The Court agrees that the 1984 amendment indicates that disgorgement is not available for the common law claim.  The Harris Parties have not presented any binding authority on point stating otherwise.  As such, disgorgement is unavailable as a remedy for the Harris Parties' common law misappropriation claim.

110.    For the same reason, punitive damages are unavailable for a common law misappropriation claim.  While California Civil Code § 3344(a) explicitly provides that "[p]unitive damages may also be awarded to the injured party or parties," the Harris Parties cannot take advantage of that statutory language because MGA prevailed on the Harris Parties' section 3344 claim at summary judgment.  *See* Dkt. 326 at 26.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                    23

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

111.    The Harris Parties have cited *Eastwood v. Sera Labs, Inc.*, No. 2:20-cv-06503-RJK (JDEx), 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021), for their position that punitive damages are expressly available for a common law misappropriation claim.  *See* Dkt. 972 at 6.  The *Eastwood* court was considering a default judgment and mentions, without any analysis, that "[b]oth California Civil Code § 3344 and common law right of publicity allow for an award of punitive damages."  2021 WL 4439221, at *6.  Significantly, the court cited only to section 3344 (and no California case law) in support of that position.

112.    That punitive damages were sought or awarded in cases involving both common law and statutory misappropriation claims fail to establish that punitive damages are available for the common law claim alone.  *See* Dkt. 1064 at 15; *Vanvakaris v. Fashion Forms, Inc.*, No. CV197765DMGJEMX, 2019 WL 6245546, at *1-2 & n.6 (C.D. Cal. Nov. 22, 2019); *Olive v. Gen. Nutrition Centers, Inc.*, 30 Cal. App. 5th 804, 822 (2018).

113.    The other cases the Harris Parties rely on did not specifically address, much less resolve, the statutory issue; rather, the disputes turned on other issues. Dkt. 1064 at 14-15.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1013 (9th Cir. 2004) (punitive award in non-misappropriation case); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1104-06 (9th Cir. 1992) (punitive damages disputed on the grounds that the right to one's distinctive voice was not clearly established) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Leavy v. Cooney*, 214 Cal. App. 2d 496, 503 (1963) (defendant contended that exemplary damages for a tortious invasion of plaintiff's right to privacy was unsupported by the facts).

ii.    ***Punitive Damages Are Unavailable Where There Are No Compensatory Damages.***

114.    Even if punitive damages were available as a remedy for a common law misappropriation claim, the outcome would not differ.  As explained above, the

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                24

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Harris Parties sought only disgorgement of MGA's profits rather than any compensatory damages based on harm suffered. *See* Dkt. 502, 521; Dkt. 1013 at 29 (Court's Instruction No. 22). And the Harris Parties suffered no actual damages.

115. "[A]ctual damages are **an absolute predicate** for an award of exemplary or punitive damages in California." *Monster Energy Co. v. Integrated Supply Network, LLC*, 821 F. App'x 730, 734 (9th Cir. 2020) (citing *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991), *overruled on other grounds by Los Angeles Unified Sch. Dist. v. Superior Ct.*, 14 Cal. 5th 758 (2023)) (emphasis added); *see California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (concluding that "California law is well-established and quite clear" that when no compensatory damages are awarded, the "general rule precludes punitive damages"); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (2005) ("An award of actual damages, even if nominal, is required to recover punitive damages."). Accordingly, because the Harris Parties did not suffer actual damages, they cannot obtain punitive damages.

**iii.    *The Harris Parties Have Not Shown A Resulting Injury To Support Disgorgement.***

116. Even if disgorgement were available for common law misappropriation, the outcome would not differ. The Harris Parties had the burden to establish a "resulting injury" springing from any purported misappropriation. *See* Dkt. 326 at 25 (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)); Dkt. 1013 at 25 (Court's Instruction No. 18, stating that the Harris Parties must show they were "harmed").

117. The various theoretical ways the Harris Parties argue they could have established requisite "harm"—*e.g.*, through unrealized licensing deals, "diverted revenue," lost opportunity to create a doll line, and emotional distress—do not amount to harm that justifies disgorgement of all of MGA's profits. *See* Dkt. 1064 at 12-13. The Court previously excluded each of these theories due to the Harris

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                    25

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Parties' discovery conduct, and the Harris Parties cannot rely on them now to satisfy their burden.  *See* Dkts. 502, 521.

118.   Nor can MGA's profits be used as a "surrogate measure" of the Harris Parties' harm.  *See* Dkt. 326 at 33.  The proxy theory of profits "is based on the idea that the defendant diverted sales that would have gone to the plaintiff **but for** the infringement" and is designed to compensate the plaintiff "for sales which he has lost as a result of his customers being diverted to the infringer."  *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) (emphasis added).

119.   "[D]irect competition is required between the plaintiff and the infringer; 'if there is no competition, there can be no diversion of customers.'"  *Id.* (quoting *Maier Brewing*, 390 F.2d at 121).  *Cf. Quia Corp. v. Mattel, Inc.*, No. C 10–1902 JF (HRL), 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011) ("Where a plaintiff and defendant are in direct competition and the plaintiff is unable to prove its own lost sales, an award of the defendant's profits may serve as proxy for what the plaintiff would have recovered had the defendant not infringed upon . . . plaintiff's mark.").

120.   The Harris Parties previously acknowledged that "[d]amages for the infringement of the right of publicity are based upon the commercial injury to the claimant," and suggested such damages could be "the market value of the nonpermitted use" or "loss of future potential earnings in his or her career or other licensing opportunities based on lost reputation."  Dkt. 924 at 19; *see Waits*, 978 F.2d at 1103-04 .  As discussed in Section I.D, *supra*, the Harris Parties failed to establish such damages at trial.

### iv.   *MGA's Profits On The Dolls Were Not Attributable To The Misappropriation Found By The Jury.*

121.   Furthermore, any disgorgement award for a misappropriation claim must be limited to the amount that is attributable to the unauthorized use of the

Umberg Zipser llp
Attorneys At Law
Irvine

{278863.8}                                    26

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  OMG Girlz's likeness.  *See* Dkt. 1013 at 29 (Court's Instruction No. 22); *Olive*, 30

2  Cal. App. 5th at 813-16 (stating that the statutory misappropriation claim and

3  corresponding CACI No. 1821 entitle the injured party to collect profits that are

4  attributable to the unauthorized use of their likeness).

5       122.   Here, the amount of profits attributable to the misappropriation of

6  likeness is necessarily equal to any attribution found for the trade dress

7  infringement.  As demonstrated at trial, the same set of facts underlie both the

8  Harris Parties' trade dress and common law misappropriation claims, and they

9  made no attempt to separate the two claims for purposes of disgorgement or

10  otherwise.  Thus, for the same reasons discussed in Section II.B.iii, *supra*, no more

11  than 10-15% of MGA's profits could possibly be attributable to any use of the

12  Harris Parties claimed trade dress or likeness.

13       123.   If the Court were to award any disgorgement, it would be no greater

14  than $918,023 to $1,377,034 (10-15 % of $9,180,227).  However, based on MGA's

15  evidence showing that no profits are attributable to the use of the OMG Girlz's

16  likeness, as discussed in Section I.E, *supra*, there is no amount to disgorge.

17  **v.**   ***MGA Did Not Act With Any Oppression, Fraud, or Malice That***

18        ***Could Support A Punitive Award.***

19       124.   The Harris Parties have not made the required factual showings to

20  establish by "clear and convincing evidence that [MGA] has been guilty of

21  oppression, fraud, or malice."  *See* Cal. Civ. Code § 3294(a).

22       125.   The Harris Parties suggest that MGA's witnesses were being dishonest

23  when they testified that certain Tots (which were not at issue) were not meant to be

24  representations of other celebrities like Beyonce, Lady Gaga, or Michael Jackson.

25  Dkt. 1064 at 18; *see* TT 9/23/24 at 30:23-31:4.  While unsupported by the evidence

26  presented at trial, that is irrelevant.  MGA's "dissimilar acts, ***independent from the***

27  ***acts upon which liability was premised***, may not serve as the basis for punitive

28  damages."  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}

27

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

(emphasis added).  Nor can punitive damages be awarded based on whether certain Tots had color-changing features.  *See* TT 9/23/24 at 30:5-11.

126.    Also, for the same reasons, the Harris Parties cannot seek punitive damages for MGA's trial strategy or conduct.  *See State Farm*, 538 U.S. at 423 (defendants should not be punished merely for being "unsavory").

127.    Nor are punitive damages justified because MGA allegedly copied artists other than the OMG Girlz.  *See id.* at 422; *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (punitive damages based in part upon a desire to punish defendant for harming persons who are not before the court violate due process).

128.    Further, alleged copying of nonparties cannot establish a "pattern" of misconduct when there was no evidence that MGA copied other celebrities to create its dolls.  The evidence at trial from MGA's designers was that, while some celebrities may have served as "inspiration," the dolls were distinct from any person.  *See, e.g.*, TT 9/10/24 PM at 34:21-35:4; TT 9/18/24 PM at 111:15-19; TT 9/19/24 AM at 62:11-14.

129.    After years of litigation and three trials, the only purported "misconduct" that the Harris Parties have been able to identify that is at least arguably related to liability on their misappropriation claim is the December 2019 email exchange and Ms. Consorti's testimony that she never clicked on a link to an OMG Girlz song in that email.  Dkt. 1064 at 19.  *See* TT 9/23/24 at 31:1-6.

130.    However, Ms. Consorti explained at trial that she remembered this detail because she received the email on New Year's Eve when she was getting ready for her sister's party.  *See* TT 9/10/24 PM at 44:16-45:17.  Such conduct hardly amounts to "oppression, fraud, or malice," let alone by clear and convincing evidence.  Indeed, and as discussed above, the Court previously concluded that "[t]he email exchange only demonstrates that an employee, who was not the designer on the email thread, knew who the OMG Girlz were; not that the OMG Girlz had an influence on the design."  Dkt. 326 at 32.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{278863.8}
28
CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

131. "The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 716 (2009).  The Harris Parties fail to clear this very high bar and the Court declines to award any punitive damages.

### vi. *The Harris Parties' Requested Punitive Award Violates Due Process.*

132. There is a separate reason punitive damages will not be awarded.  Even assuming, *arguendo*, disgorgement could support punitive damages, under the Due Process Clause, punitive damages must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm*, 538 U.S. at 426.  Thus, where the only "harm" was based on a benefit to the defendant, and not harm suffered by the plaintiff, satisfying due process for a punitive award "pose[s] a challenging task." *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117, 1143 (7th Cir. 2020).

133. The Harris Parties were not awarded any damages based on their alleged harm and, in fact, were barred from seeking such damages at trial due to their own discovery conduct.  *See* Dkt. 502, 521.  The Harris Parties' request for over $53.6 million in punitive damages is neither reasonable nor proportionate to zero actual damages.  *See State Farm*, 538 U.S. at 426; *Kizer*, 53 Cal. 3d at 147.

134. Further, a substantial punitive award cannot be squared with the evidence.  MGA's seemingly most "reprehensible" conduct was one of its designers disregarding a link in an email.  *See* Dkt. 1064 at 19; *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972 (9th Cir. 2021) (stating that the "weightiest factor" in determining whether punitive damages are "grossly excessive" is "the degree of reprehensibility of the defendant's conduct") (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  Such lack of reprehensibility cannot support more than

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                                    29

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

a *de minimis* award, even if punitive damages were available and the Harris Parties had made the requisite showing of oppression, fraud, or malice.

135.    Therefore, the Harris Parties' requested punitive award is "grossly excessive" and fails to comport with due process. *See Philip Morris*, 549 U.S. at 353 (forbidding "grossly excessive" punitive awards); *see also In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014) ("[P]unitive damages are not designed to be a form of supercompensation for plaintiffs.").

136.    The Court declines to award any punitive damages on the Harris Parties' common law misappropriation claim.

### III.    CONCLUSION

137.    The Court finds that each of the jury's monetary awards were advisory. The Court further finds that Harris Parties are not entitled to any monetary award on either of their claims and are not entitled to any punitive damages.

Dated: December 20, 2024                UMBERG ZIPSER LLP


_____

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{278863.8}                30

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW