John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

Jiepu (Bobby) Li (SBN: 342224)
bli@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br><br>**DEFENDANTS' AND COUNTER-CLAIMANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | Judge: Hon. James V. Selna<br><br>Complaint Filed:  December 20, 2020<br><br>Trial Date:  September 3, 2024 |

Pursuant to Federal Rules of Civil Procedure 52(a)(1) and Central District of California Local Rule 52-1, Defendants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC and OMG Girlz LLC (collectively, "Defendants and Counterclaimants") respectfully submit their Proposed Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I.    JURY VERDICT AND ISSUES FOR THE COURT

1.    The Counterclaimants in this action are the OMG Girlz, Pretty Hustle LLC (owned by Tameka "Tiny" Harris, the founder of the OMG Girlz), and Grand Hustle LLC. The Counter-defendants are MGA Entertainment and Isaac Larian ("MGA").

2.    Following a trial on OMG Girlz counterclaims of trade dress infringement under the Lanham Act and misappropriation of the OMG Girlz name, likeness, and identity, the jury issued a verdict with the following factual findings:

(a)    that the OMG Girlz established by a preponderance of the evidence that MGA infringed the OMG Girlz' trade dress with respect to the following OMG Dolls:

(i)    Chillax

(ii)    Roller Chick

(iii)    Metal Chick

(iv)    Bhad Gurl

(v)    Prism

(vi)    Miss Divine

(vii)    Runway Diva

(b)    that the OMG Girlz established by the preponderance of the evidence that MGA's trade dress infringement was willful

(c)    that eight additional dolls included in MGA's declaratory judgment claims infringed the OMG Girlz' trade dress (Downtown BB, Punk

Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, and Shadow)

(d) that the OMG Girlz established by a preponderance of the evidence that MGA has misappropriated the OMG Girlz name, likeness, and identity with respect to the following OMG Dolls:

    (i)    Chillax

    (ii)   Roller Chick

    (iii)  Metal Chick

    (iv)  Bhad Gurl

    (v)   Prism

    (vi)  Miss Divine

    (vii) Runway Diva

(e) that eight additional dolls included in MGA's declaratory judgment claims misappropriated the OMG Girlz name, likeness, and identity (Downtown BB, Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, and Miss Glam)

(f) that OMG Girlz established by clear and convincing evidence that MGA acted with oppression, fraud, or malice with regard to its misappropriation of the OMG Girlz' name, likeness, and identity.

(g) that the OMG Girlz were entitled to disgorged profits of $17,872,253

(h) that the OMG Girlz should receive $53,616,759 in punitive damages

3.    As discussed in the conclusions of law below, although the jury heard and weighed all of the evidence and expert testimony before rendering an advisory verdict, issue (g) is an equitable issue and the final decision is for the Court.  The remaining findings are factual issues for the jury.  The Court must therefore find whether the OMG Girlz are entitled to the equitable remedy of disgorgement of profits under the Lanham Act, and if so, the amount of net profits to be awarded.  Similarly, the Court must also find whether the OMG Girlz are entitled to disgorgement of

profits for MGA's common law misappropriation of their name, likeness, or identity, and if so, the amount of net profits to be awarded.

## II.  MGA'S PROFITS FROM SEVEN OMG DOLLS FOUND TO INFRINGE AND MISAPPROPRIATE AMOUNT TO AT LEAST $17,872,253

### A.  MGA's Gross Revenue

4.    The OMG Girlz's expert Chris Tregillis testified that MGA's gross revenue for the 7 infringing dolls he included in his damages calculation (Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runway Diva) were $68,529,557. (Day 6 (AM) at 102:4-8); (Day 7, 28:20-29:12).  Mr. Tregillis relied on MGA's revenue numbers to arrive at this amount. (*See* Tr. Exhs. 950, 6056, 6057).

5.    MGA's expert did not dispute Mr. Tregillis' revenue calculations.  (Day 11 (PM) at 82:16-83:19).

6.    MGA's revenues for the other 8 infringing dolls (Downtown BB, Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe Shadow (trade dress infringement only), and Miss Glam (misappropriation of name identity and likeness only)) was $76.7M for these same time periods. (Dkt. 1013); (Tr. Exh. 6057).

### B.  MGA's Margins

7.    MGA's profit margins on the OMG Dolls were 35% in 2020; 21.5% in 2021; 9.4% in 2022; 10% in 2023; and 13.3% in the first quarter of 2024.  (*See* Tr. Exh. 950).

8.    Mr. Tregillis calculated these profit margins using the expenses provided by MGA.  (Day 7 (AM) at 21:23-28:23).

### C.  MGA's Profits

9.    Mr. Tregillis calculated the profits for the seven dolls as $17,872,253, using the expense numbers that MGA represented it would prove in its case-in-chief. (Day 7 (AM) at 28:20-29:12); (Tr. Exhs. 950, 6057).

10.   Specifically, Mr. Tregillis, applied all of MGA's stated expenses except overhead.  (Day 7 (AM) at 21:23-28:5). Mr. Tregillis calculated total profits of

$17,872,253 based on the assumption that MGA would prove those remaining expenses. *Id.* at 29:2-21.

11.     MGA did not present any evidence supporting the expenses numbers in its summary documentation.

12.     MGA's expert Russell Mangum testified to MGA's general categories of expenses based on a summary document created by MGA for this litigation.  (Tr. Exh. 6057), MGA did not provide any underlying source documents, such as invoices or receipts, he did not review MGA's "general ledger," and he could not confirm the accuracy of any of the expense numbers on which he relied. (Day 7 (AM) at 21:23-22:6); (Day 9 (PM) at 121:13-122:7); (Day 12 (AM) at 7:5-9:9).  Mangum testified that only Pedro Crisanti, MGA's VP Controller, could confirm the accuracy; however, Mr. Crisanti did not testify. (Day 12 (AM) at 7:5-9:9).

## III.  MGA'S PROFITS FROM OTHER OMG DOLLS

13.     Because the OMG Girlz represented at trial that they would seek verdicts on only seven dolls, and profits for those seven plus two when sold in a package with dolls included in the seven, Mr. Tregillis did not testify about the profits for the additional dolls found to infringe the OMG Girlz trade dress and/or misappropriate their name, likeness, and identity.  The jury therefore did not provide profit numbers for those dolls.  (Dkt. 1009)  However, Mangum calculated the profits for those dolls as $12,567,928, with total revenue of $75,589,982. (Tr. Exh. 6057).

14.     Consumer witnesses testified that they bought MGA OMG dolls beyond the seven subject to infringement and misappropriation damages based on the understanding that the entire doll line was connected to the OMG Girlz.  (Day 4 (PM) (TT M. Campbell) at 17:22-18:07).

15.     Online evidence showed that other doll consumers knowledgeable about the OMG Girlz bought OMG dolls beyond the seven subject to damages based on the understanding that the entire doll line was connected to the OMG Girlz.  *See, e.g.*, (Tr. Exs. 311-CF; 341-CF); (Day 7 (PM) at 100:7-10).

16.    Consumer witnesses and MGA witnesses testified the OMG dolls were collectible, meaning once someone buys a doll they are likely to build their collection by buying other dolls.  (Day 5 (AM) at 34:14-35:12); *see also* (Day 4 (PM) (TT M. Campbell at 19:1-19); (TT W. Osborne at 148:12-149:22); (TT M. Wagner at 24:2-9; 55:1-17)).

## CONCLUSIONS OF LAW

### I.  DISGORGEMENT IS APPROPRIATE

17.    The Lanham Act provides that once trademark infringement has been established, a plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117. This statute affords district courts "broad discretion" in fashioning a remedy for trademark infringement.  *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968).  Disgorgement under the Lanham Act is designed to compensate the brand owner, prevent unjust enrichment, and deter future infringements by ensuring that violators do not profit from their unlawful actions, thereby stripping away financial benefits derived from infringement.  *See Maier Brewing Co.*, 390 F.2d at 123; *see also Munhwa Broad. Corp. v. Create New Tech. Co.*, 2015 U.S. Dist. LEXIS 174796, at *18 (C.D. Cal. Sep. 2, 2015) ("The Ninth Circuit has stressed that 'the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party.'").

18.    A finding of willfulness is not a prerequisite to disgorgement of profits, however "a trademark defendant's mental state [remains] a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).  District courts should therefore consider a defendant's mental state in determining what award of profits is appropriate. *Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2021 WL 3702243, at *3 (9th Cir. Aug. 20, 2021).

19.    The Court finds disgorgement of profits for trade dress infringement is appropriate in this case as a proxy for the OMG Girlz' damages, to prevent unjust enrichment of MGA.

### A.    Willful Infringement Was a Factual Issue for the Jury But the Court Would Adopt the Jury's Findings Regardless

20.    The parties dispute whether the jury's finding of willful infringement was binding or whether it was an advisory finding on an equitable issue for the Court. (Dkts. 1046, 1064, 1067).

21.    Willfulness is a factual determination for a jury, not an equitable issue for the Court. *See, e.g.*, *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1046 (D. Or. 2008); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2016 U.S. Dist. LEXIS 82532, *42 (S.D. Cal. June 17, 2016).

22.    MGA suggests that the Court previously found no evidence of willfulness on summary judgment. (Dkt. 1062).  However, summary judgment was not granted on the willfulness claim.  Rather, MGA moved for summary judgment on disgorgement, which was denied. (Dkt. 326 at 31).

23.    Consistent with the above, willfulness was presented to the jury.  The jury heard evidence on willfulness and found MGA to be a willful infringer.  The jury's verdict on this issue was binding and will be reflected in the final judgment.

24.    Even if the jury's verdict was advisory on this point, the result would be the same.  The jury heard ample evidence to support a finding of willfulness and the Court would adopt the jury's verdict if this was an equitable issue.

25.    The evidence showed that:

- MGA is a sophisticated company who regularly copies from popular culture and does not appear to have an official intellectual property policy (Day 2 (PM) at 107:18-25); (Tr. Exh. 4936); (Day 10 (AM) at 32:5-34:14).  MGA does not train its designers on this topic. *See* (Day

8 (AM) at 65:24-66:11; 79:19-24); *see also* (Day 2 (PM) at 93:19-21).

- MGA did not obtain permission from OMG Girlz for using their brand, trade dress, and likeness.

- The OMG Dolls use the OMG Girlz trade dress and appear as animated or "toy" versions of the OMG Girlz. (Day 3 (PM) at 91:10-13).

- OMG Girlz put forth evidence of confused consumers, some of whom testified at trial (Day 5 (AM) at 34:14-35:12); *see also* (Day 4 (PM) (TT M. Campbell at 19:1-19); (TT W. Osborne at 148:12-149:22); (TT M. Wagner at 24:2-9; 55:1-17)) and some of whom demonstrated confusion via social media. *See* (Tr. Exs. 311-CF; 341-CF); (Day 7 (PM) at 100:7-10. This confusion is unsurprising given the striking similarities between the dolls and the OMG Girlz.

- MGA had knowledge of the OMG Girlz and the overlap in the brands' target markets and consumer-base before creating the OMG Doll line. *See, e.g.*, (Day 11 (AM) at 74:4-13); (Day 2 (PM) at 107:18-25); (Tr. Exh. 440).

- MGA designer Lora Stephens, one of the only MGA designers responsible for the OMG Dolls at issue, testified that she knew of the OMG Girlz, has watched the Harrises' reality shows—which she recalled featuring the OMG Girlz, recalled episodes about Zonnique's musical training, considered Tiny one of her Xscape-favorites, followed Tiny's 6-year-old daughter, Heiress, on Instagram, and knew the backstory behind Tiny's Instagram handle, "Major Girl." (Day 11 (AM) at 74:4-13).

- In December 2020, the OMG Girlz' representatives sent MGA a cease and desist letter providing notice of their concerns of trade dress

and misappropriation of name, likeness, and identity. (Day 2 (AM) at 73-74).  MGA did no investigation to determine whether its designers were aware of the OMG Girlz and had copied the OMG Girlz. (Day 2 (PM) at 107:18-25; 115:16-19; 111:15-17; 111:20-22).   Further, MGA's designers testified that no one spoke to them about this lawsuit until their depositions, and their documents were not searched. (Day 5 (PM) at 15:5-16:14); (Day 11 (AM) at 48:6-49:9).

- MGA also did not put a legal document hold in place to preserve evidence, or take any action to try to mitigate consumer confusion. *Id.*; *see also* (Day 8 (AM) at 79:19-24); (Dkt. 478).

- MGA and its witnesses testified they did not "copy" the OMG Girlz, but their testimony revealed that MGA's policy on copying meant making two things that look exactly alike with no changes.  Ms. Stephens conceded that there was no oversight or training to prevent intellectual property infringement. (Day 8 (AM) at 65:24-66:11); *see also* (Day 2 (PM) at 93:19-21).

- MGA's testimony on copying was also not credible given its witnesses testified that certain "tots" did not bear the likeness of celebrities.  (Day 10 (AM) at 32:5-34:14); (Day 11 (AM) at 61:23-62:19).  This testimony strained credulity and impacts the credibility of MGA's fact witnesses (both the designers and Mr. Larian), and thus undermines MGA's entire story of independent creation.

- MGA was also on notice of at least one instance of internal confusion as early as December 2019, but did nothing to differentiate itself form the OMG Girlz or to mitigate further consumer confusion.  (Day 5 (PM) at 43:1-11); (Day 8 (AM) at 79:19-24).

- Despite this awareness and notice, MGA has never taken any steps to avoid confusion between the OMG Dolls and the OMG Girlz.  (Day

SMRH:4869-0194-8150.7

8 (AM) at 79:19-24); (Day 5 (PM) at 49:9-24). To the contrary, MGA continued to release new OMG Dolls, each combining quintessential elements of the OMG Girlz' brand. These new, post-complaint, infringing dolls included—Miss Divine, Miss Prism, and Runway Diva—which match the OMG Girlz most publicized photo (a photo that appeared prominently in the OMG Girlz' cease and desist letter) and were released in the middle of discovery in this case. (Day 2 (AM) at 74:5-76:17).

26.    Based on this and other evidence, and MGA credibility issues, the Court would adopt the jury's verdict even if it was advisory. MGA's continued sales despite its knowledge of consumer confusion with the OMG Girlz' nearly identical marks is indicative of an improper motive. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (internal quotation marks and citation omitted) ("Willfulness and bad faith require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense."); *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021) (finding willfulness where "[d]efendant continued to sell the infringing product after it received [p]laintiff's cease and desist letters and after [p]laintiff filed the instant lawsuit"); *Color Me Mine Enters. Inc. v. S. States Mktg. Inc.*, No. CV 12-00860-RGK (JCx), 2013 WL 12119715, at *11 (C.D. Cal. Apr. 25, 2013) (finding a triable issue of fact as to willfulness where defendants continued to sell infringing products despite knowledge of plaintiff's mark and the likelihood of consumer confusion).

27.    The Court therefore concludes MGA's infringement was willful.

**B.    Disgorgement of $17,872,253 Profits for Trade Dress Infringement Is Proper**

28.    In determining the profits to be disgorged, the OMG Girlz bore the burden to prove the MGA' gross sales from the infringing activity with reasonable certainty. 15 U.S.C. § 1117(a). *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778

F.3d 1059, 1076 (9th Cir. 2015) (Once this is established "the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits." ). Once the OMG Girlz demonstrated gross sales, they are presumed to be the result of the infringing activity. *Id.* (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993)) ("The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement."). The burden then shifts to MGA, the infringer, to prove which, if any, of its total sales are not attributable to the infringing activity and any permissible cost deductions. 15 U.S.C. § 1117(a).

29.    Based on MGA's failure to prove deductions from gross revenue with supporting evidence, the Court could award MGA's total revenue. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (1985) (citing *Russell v. Price*, 612 F.2d 1123, 1130-31 (9th Cir. 1979) ("If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits."). The Court declines to do so here.  However, based on the testimony of the experts and the exhibits presented at trial, and taking into consideration as advisory the jury's verdict, the Court finds that an award of $17,872,253 in MGA profits is fair and well supported.

## II.    STATUTORY ENHANCEMENT UNDER THE LANHAM ACT IS APPROPRIATE

30.    If a court finds that recovery based on profits is either inadequate or excessive, the court in its discretion may enter judgment in an amount it finds to be just. 15 U.S.C. § 1117(a). If the court exercises its discretion to adjust the award, the sum "shall constitute compensation and not a penalty." *Id.* Courts have enhanced disgorgement awards and damages "for deterrence" where infringers "in both their underlying conduct and their litigation conduct—have shown repeated disregard for Plaintiffs' rights, the law, and this Court's orders." *OmniGen Research*, 2017 U.S. Dist. LEXIS 189543, at *49 (tripling damages for Lanham Act violations under 15

U.S.C. § 1117 because "fully compensat[ing] Plaintiffs will have an important deterrent effect"); *Merck Eprova AG*, 760 F.3d at 263 (the enhancement provisions were intended to fully compensate "plaintiffs whose actual damages were difficult to prove," but "may also be awarded where deterrence of willful infringement is needed."); *Getty Petroleum Corp.*, 858 F.2d at 113 (same); *Mobius Mgmt. Sys*, 880 F. Supp. at 1025 (same).

### A.    Deterrence Supports Enhancement

31.    MGA is well-known in the artistic community for "referencing" pop culture, and with no clear internal policy outlining the appropriate or legal limits, these "references" often rise to the level of ripping off creatives without attribution. (Day 10 (AM) at 32:5-34:14); (Day 11 (AM) at 61:23-62:19).

32.    MGA's employees waffled about how much MGA incorporates pop culture and celebrities into its doll designs (and their uncertainty about whether MGA has a policy on the same) but MGA's documents make clear that it routinely bases dolls on celebrities. *See id.* MGA's testimony to the contrary was not credible.

33.    In addition, faced with a cease and desist letter and pictures showing similarities between the OMG Girlz and certain of the seven infringing OMG dolls, MGA did no investigation, it simply filed a lawsuit. (Day 2 (AM) at 73-74); (Day 2 (PM) at 107:18-25; 111:15-22; 115:16-19).

34.    MGA did not put a legal document hold in place to preserve evidence, nor take any action to try to mitigate consumer confusion. *Id.*; *see also* (Day 8 (AM) at 79:19-24); (Dkt. 478).

35.    MGA then not only continued to make the dolls, without discussing the letter or disclosing the lawsuit to the designers, MGA went on to create and sell during this litigation OMG dolls that looked remarkably similar to one of the pictures in the letter of the OMG Girlz on a red carpet.  (Day 2 (AM) at 74:5-76:17).

36.    MGA has never taken any steps to avoid confusion between the OMG Dolls and the OMG Girlz. (Day 8 (AM) at 79:19-24); (Day 5 (PM) at 49:9-24).

37.    MGA alleges that after the lawsuit that it has ceased "direct" sales of the seven trade dress infringing dolls, but provides no evidence nor does it describe what that means.  (Dkt. 1062 at 21).  The OMG Girlz respond that the seven infringing dolls remain available through mass retail outlets such as Amazon and Walmart.  (Dkt. 1067 at 9).

38.    MGA's continued sales despite its knowledge of consumer confusion with the OMG Girlz' nearly identical marks is indicative of an improper motive. *See Lindy Pen Co.*, 982 F.2d at 1406; *Monster Energy*, 533 F. Supp. at 933 (finding willfulness where "[d]efendant continued to sell the infringing products after it received [p]laintiff's cease and desist letters and after [p]laintiff filed the instant lawsuit"); *Color Me Mine*, 2013 WL 12119715 at *11 (finding a triable issue of fact as to willfulness where Defendant continued to sell the infringing products despite knowledge of plaintiff's mark and the likelihood of consumer confusion).

39.    For all these reasons, and supported by the jury's willfulness finding,  the Court finds that enhancement is supported by the need for deterrence.

**B.    Uncompensated Harm Supports Enhancement**

40.    "Potential harm from lingering misimpressions [may be] unlikely to be fully captured by the lost profits" *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011) (enhancing damages); *see also Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968).  Courts recognize that trademark owners may be injured because "confused buyers may be so unhappy with the infringer's product that they will never again buy plaintiff's product." 4 McCarthy on Trademarks and Unfair Competition § 30:64 (5th ed.).

41.    MGA did not obtain permission from OMG Girlz for using their brand, trade dress, and likeness.  (Dkt. 1009).

42.    At trial, the evidence showed that the OMG Girlz suffered reputational harm by being associated with MGA's OMG Dolls.  This misimpression was caused by consumer belief that the OMG Girlz partnered with MGA, a company known for

its "tot scandal," in which its line of L.O.L. Surprise! Tot dolls (the "little sisters" of the bigger OMG Dolls) were found to have secret lingerie and bondage on the doll when it is dipped in cold water. (Day 3 (AM) at 49:11-55:12). MGA's documents show the negative effect that "lingerie-gate" had on parents. (Day 3 (AM) at 53:2-55:7 (discussing Tr. Exh. 500)). There was evidence that some consumers believed that the affiliation with the OMG Girlz made MGA's dolls more wholesome, for example Maxine Wagner testified that although she felt the dolls were a little "older" due to the short skirts and make-up, she was willing to buy them for her nieces because she thought she was supporting the OMG Girlz. (Maxine Wagner TT at 72:10-73:16). In other words, MGA profited from the goodwill and reputation of the OMG Girlz— and for consumers who were aware of MGA's tot scandal, this connection could go the other way, causing reputational damage for the OMG Girlz' brand.

43.     The OMG Girlz also described their childhood sacrifices that they made to create a memorable brand  (Day 7 (AM) at 117:24-118:4); (Day 3 (PM) at 51:7-52:8; 55:20-56:19), and their desire to create a line of dolls—a market which is displaced by MGA's OMG Dolls (Day 2 (AM) at 48-50, 124).

44.     At trial, MGA repeatedly called the OMG Girlz and their families "extortionists" and "money grabbers" for trying to protect their rights in this litigation *that MGA filed*, and also called them "liars."  (Day 2 (PM) at 105); (Day 11 (PM) at 51-52).

45.     MGA also made such statements to the public following the second trial, telling reporters in 2023 that the OMG Girlz' counterclaims were "an extortion"  and misrepresenting to the public that the OMG Girlz had filed suit saying "[t]hey knew from the beginning they don't have a case, and they brought it anyways."  *See* Daniel Kreps, Rolling Stone, May 27, 2023, T.I. and Tiny Lose Copyright Infringement Lawsuit Against Toy Maker; *https://www.legalaffairsandtrials.com/p/jury-finds-in-favor-of-toymaker-mga* (Meghann Cuniff, Legal Affairs and Trials)*.*    This reputational harm is uncompensated by the disgorgement award.

46.     Here, where there is ample evidence of uncompensated harm (and bad faith conduct) enhancement of MGA's profits is appropriate to compensate the OMG Girlz and to deter future violation by MGA. *See* (Day 2 (AM) at 73-74); *see also PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (electing to treble defendant's profits "[g]iven the nature of defendant['s] [] infringing conduct" where defendant "willfully and intentionally infringed" plaintiff's mark).

47.     Accordingly, as additional compensation and for deterrence, the Court trebles the award to $53,616,759.

## III.     DISGORGEMENT OF PROFITS IS APPROPRIATE FOR THE MISAPPROPRIATION CLAIM

### A.     Disgorgement of Profits Is an Available Remedy for Common Law Misappropriation of Name, Likeness, and Identity

48.     The parties dispute whether disgorgement of profits is an available remedy for a misappropriation of name, likeness, and identity claim.  (Dkts. 1046, 1064, 1067).

49.     The Court finds that disgorgement is a proper and appropriate remedy for a common law misappropriation of name, likeness, or identity claim.

50.     Section 3344 "is best understood as 'complementing,' rather than enacting, the common law cause of action, because the two are not identical." *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 414 (9th Cir. 1996); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 692 ("Section 3344 neither replaces nor codifies the common law cause of action").  The statute is clear that its remedies are "cumulative" and "in addition to" any common law remedies.  Thus, the inclusion or non-inclusion of a remedy has no bearing on whether it is available under common law, nor would the legislature decide such an issue.

51.     MGA asserts that disgorgement is not available based on the legislative history of California Civil Code § 3344.  (Dkt. 1046 at 21)  However, nowhere does the legislative history affirmatively state that a common law misappropriation claim

does not allow for disgorgement of profits.  MGA does not provide any legal authority that such a remedy is not available.

52.    The available case law is also contrary to MGA's position.    In *Newcombe*, the Ninth Circuit reversed the district court's summary judgment on plaintiff's common law misappropriation and §3344 claims, and then explained "[b]ecause we hold that Newcombe is entitled to proceed to trial on his common law claim against Coors and Belding, he is also entitled to proceed on his claim for equitable relief and constructive trust against these defendants." 157 F.3d at 694 (emphasis added).  Thus, the Ninth Circuit has endorsed equitable remedies, like disgorgement, for a misappropriation claim.

53.    Additionally, in *Batis v. Dun & Bradstreet Holdings, Inc*., No. 22-cv-01924-MMC, 2023 WL 1870057 at *4 (N.D. Cal. Feb. 9, 2023), *aff'd*, 106 F.4th 932 (9th Cir. 2024) a court in the Northern District found disgorgement of "unjust profits from [defendant's] unauthorized use of [plaintiff's] persona" constituted sufficient injury in fact for a common law misappropriation claim.  Similarly, in *Forrest v. Meta Platforms, Inc*., No. 22-cv-03699-PCP, 2024 WL 3024642, at *6 (N.D. Cal. June 17, 2024) the district court denied a motion to dismiss a common law misappropriation claim, finding that the profits disgorgement claim was enough to adequately plead common law misappropriation.  In *Vanvakaris v. Fashion Forms, Inc*., No. CV 19-7765-DMG (JEMx), 2019 WL 6245546, at *2-3 and fn. 6 (C.D. Cal. Nov. 22, 2019) plaintiff sought disgorgement of profits, emotional distress damages, compensatory damages, and punitive damages for common law misappropriation, and the court relied solely on the disgorgement of profits to support removal.  Each of these findings necessarily assumes the availability of disgorgement as a remedy for a misappropriation claim.

54.    Disgorgement is also a widely used remedy in analogous situations and the prevailing view is that they are recoverable in right of publicity claims. Restatement (Third) of Unfair Competition § 49 comment d (1995) ("Although there

-15-

is little case law, it is widely assumed that the defendant's profits are an appropriate measure of relief in right of publicity cases under rules analogous to the recovery of profits in trademark, trade secret, and copyright cases.") (citing cases). This is because "monetary relief may be awarded for the pecuniary loss to the plaintiff or the pecuniary gain to the defendant resulting from the unauthorized use of the plaintiff's identity." *Id*. *See also*, 2 Rights of Publicity and Privacy § 11:35 (2d ed) (1995) (noting "in right of publicity cases, a recovery of the infringer's profits attributable to the infringement is an 'ordinarily available' remedy").

55.    Given the law above, and the dearth of support for MGA's position, the Court finds that disgorgement of profits is an available remedy for misappropriation of name, likeness, or identity.

56.    Disgorgement of $17,872,253 profits is proper for the OMG Girlz' claim for Common Law Misappropriation of name, likeness, and identity.

**B.    Disgorgement of $17,872,253 Profits is Proper for the OMG Girlz' Common Law Misappropriation of Name, Likeness, and Identity**

57.    There were multiple ways the jury properly reached the conclusion that the OMG Girlz were harmed by MGA's misappropriation of their name and likeness, including those cited in the section above regarding Disgorgement of Lanham Act Profits above.

58.    In addition, MGA testified that it has entered into licensing deals with other celebrities to use their likeness for dolls. (Day 3 (PM) at 42:2-6; 43:18-20; 42:14-18). The evidence showed that while MGA pays some celebrities for dolls in exchange for use of their name and identity, it paid the OMG Girlz nothing.

59.    The evidence showed that Mrs. Harris requested MGA enter a license agreement and account for profits before MGA sued the Harrises. (Tr. Exh. 19).

60.    The evidence also showed that some consumers purchased OMG Dolls with the understanding they were supporting the OMG Girlz, and accordingly, MGA diverted revenue from the OMG Girlz through use of their name and likeness. *See,*

*e.g.*, (Day 2 (AM) at 70; Tr. Exh. 323-B; 332-B; 320-C); (Day 5 (AM) at 34:14-35:12); *see also* (Day 4 (PM) (TT M. Campbell at 19:1-19); (TT W. Osborne at 148:12-149:22); (TT M. Wagner at 24:2-9; 55:1-17)).

61.    As discussed in III.A. above, the OMG Girlz presented unrebutted evidence of the revenue at issue for the seven dolls that were found to have misappropriated the OMG Girlz' name, likeness, and identity and thus violated their common law rights, that MGA failed to properly support deductions from revenue, and that the OMG Girlz expert number for profits was accepted by the jury and is now accepted by this Court.

62.    Also as discussed above eight dolls that were in the case only because MGA sought declaratory judgment and injunctive relief as to them were found to have also have appropriated the OMG Girlz' name, likeness, and identity and thus violated their common law rights.  Although the OMG Girlz made the choice at trial to narrow the dolls at issue for damages, this supports the fact that the award of profits for only seven other dolls is not unjust.

63.    Finally, the jury in an advisory capacity heard and weighed all the evidence and found that a disgorgement of profits award of $17,872,253 was proper. (Dkt. 1009).

64.    The Court finds and concludes the OMG Girlz are entitled to $17,872,253 in disgorgement of profits as a remedy for common law misappropriation of name, likeness, and identity.

## IV.    PUNITIVE DAMAGES ARE AVAILABLE AND APPROPRIATE

65.    Punitive damages are a legal remedy meant to punish the defendant for their wrongdoing. Punitive damages and actual damages serve distinct purposes and both remedies may be necessary to serve both remedial and deterrence functions. Punitive damages serve as a critical legal mechanism to punish egregious conduct and deter future misconduct.

66.     The Court finds that punitive damages are available and that they are an issue for the jury.  As such, the jury's verdict will be incorporated in the final judgment.  However, even if punitive damages were an equitable issue for the Court, the Court fully adopts the jury's well-reasoned and supported findings.

### A.     Punitive Damages Are Available

67.     MGA argues that punitive damages are not available, relying on the same legislative history argument as it does for disgorgement of profits.  (Dkt. 1046 at 23-24).  As discussed for disgorgement, the statutory text and legislative history of § 3344 do not support MGA's position.

68.     California statutes provide for punitive damages on common law claims. Specifically, Cal. Civ. Code § 3294 provides that in tort actions, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  *See also Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) ("California's civil statutory scheme permits a trier of fact to impose a penalty for such conduct, by virtue of California Civil Code § 3294, which permits a trier of fact to impose punitive damages for the purpose of deterrence.").

69.     The Ninth Circuit has likewise explained that a plaintiff is "entitled to punitive damages if she proved 'by clear and convincing evidence that [Defendants] ha[ve] been guilty of oppression, fraud, or malice.'"  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004).  Neither the statute nor the Ninth Circuit limit or exclude punitive damages for the common law tort of misappropriation of name or likeness.

70.     Additionally, in *Eastwood v. Sera Labs, Inc.*, the district court held that "[b]oth California Civil Code § 3344 and common law right of publicity allow for an award of punitive damages." No. 2:20-cv-06503-RJK (JDEx), 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021).  MGA argues that this holding should be ignored as "a

single non-binding district court case." (Dkt. 1046 at 24). But this case is on point, from another court in this district, and MGA presents no contrary law in support of its position.

71.     Furthermore, additional cases support the same proposition. In *Waits v. Frito-Lay, Inc.*, the Ninth Circuit upheld the punitive damages award for a misappropriation claim, noting their availability "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice," which tracks the statutory language. 978 F.2d 1093, 1098-1104 (9th Cir. 1992). In *Leavy v. Cooney*, the court found Levy's claim for unauthorized use of his name and image was not a contract claim but a claim for "a tortious invasion of Leavy's right of privacy" and thus entitled him to punitive damages. 214 Cal. App. 2d 496, 501 (Ct. App. 1963). The plaintiffs in *Vanvakaris v. Fashion Forms, Inc.* and *Olive v. Gen. Nutrition Ctrs., Inc.*, also sought disgorgement, actual damages, and punitive damages for common law misappropriation of name or likeness without court disapproval or dispute. *See Vanvakaris v. Fashion Forms, Inc.*, 2019 WL 6245546, at *2-3, n. 6 (C.D. Cal. Nov. 22, 2019); *Olive v. Gen. Nutrition Ctrs., Inc.*, 242 Cal. Rptr. 3d 15, 29 (Ct. App. 2d Dist. 2018).

72.     MGA also argues that punitive damages are not available for a disgorgement remedy because there are no compensatory damages. However, the law relied on by MGA involved case where a jury returned a verdict of $0 compensatory damages. Here, the OMG Girlz were awarded damages in the form of disgorgement of profits. Furthermore, Ninth Circuit case law is contrary to MGA's position. *See In re Javahery*, No. 2:14-BK-33249-DS, 2017 WL 971780, at *8 (B.A.P. 9th Cir. Mar. 14, 2017), *aff'd*, 742 F. App'x 307 (9th Cir. 2018) ("Carefully parsed, California decisional law does not require that there be an express award of actual damages to support an award of punitive damages, but rather that the plaintiff has suffered injuries from a tortious act, even if compensatory damages were not awarded."); *MJT Sec., LLC v. Toronto-Dominion Bank*, No. 04-16362, 2006 WL 1236661, at *3 (9th Cir.

May 9, 2006) (holding plaintiff could seek punitive damages even though it did not seek actual damages).

73.    Given the cases above, and the lack of any case law to support MGA's position, the Court finds that punitive damages are available for the OMG Girlz' common law misappropriation of name, likeness, or identity claim.

**B.    Punitive Damages Were in the Discretion of the Jury, But the Court Would Adopt Their Finding**

74.    The parties dispute whether punitive damages are an equitable issue such that the jury's verdict was advisory.  (Dkts. 1046, 1064, 1067).  The Court finds they are not, but the result would be the same as the Court would adopt the jury's verdict.

75.    Punitive damages are an issue for the jury.  Per § 3294 discussed above, punitive damages are for the trier of fact.  *See also Stevens v. Owens-Corning Fiberglas Corp.*, 49 Cal. App. 4th 1645, 1660 (1996) ("Awarding punitive damages is first a function of the trier of fact.").

76.    Even when a district court sits in equity, punitive damages should be left to the jury.  For example, in *Rivero v. Thomas*, 86 Cal. App. 2d 225, 227 (1948) suit was brought for breach of fiduciary duty and to establish a trust. The court stated punitive damages are "entirely in the discretion of the jury, and they may be awarded only where there is some evidence of fraud, malice, express or implied, or oppression," (*id.* at 238-239) which corresponds to current Cal. Civ. Code §3294 and how the jury was instructed was in this case.  *See also Taylor v. Wright*, 69 Cal. App. 2d 371, 385 (1945) (referring to §3294 and stating that "[t]hose sections limit the right to recover exemplary damages [], in the discretion of the jury, to cases based on tort and exclude contract actions").

77.    The Court therefore finds that punitive damages were in the discretion of the jury.  The jury's verdict on punitive damages will be incorporated in the final judgment.

SMRH:4869-0194-8150.7

78.    Even if MGA were correct, however, the result would be the same as the Court would adopt the jury's punitive damages number.  The jury found that MGA's actions were malicious and oppressive, and the evidence supports this finding. *See* (Dkts. 1009, 1011); *see also* (Day 13 (AM) at 5:1-29:18).  The Court heard the evidence at trial and believes a finding of oppression, fraud, or malice is appropriate.  The Court further finds the jury's punitive damages amount of $53,616,759 is appropriate as punitive damages.

79.    At trial, the evidence showed that:

- MGA's conduct was malicious and oppressive.  MGA ignored the cease and desist letter from the OMG Girlz, labeling their efforts to protect their rights as "extortion," failing to investigate these claims, and continuing to release new dolls that closely mirrored the OMG Girlz' brand. (Day 2 (PM) at 107:18-25 and 119:4-6); (Day 5 (PM) at 43:1-11); (Day 8 (AM) at 79:19-24).

- MGA repeatedly testified that the OMG Girlz were unsuccessful and therefore "unworthy" of being copied, claiming that this lawsuit was merely for "extortion" purposes. (Day 1 (PM) at 82); (Day 2 (PM) 119:4-6).

- MGA's disregard for its actions is shown in consumer testimony discussing MGA's marketing strategies designed to exploit the likeness and branding of the OMG Girlz. (Day 4 (PM) TT M. Campbell at 92:20-93:5); (Day 7 (AM) at 32:16-33:25).

80.    In addition, as previously discussed for trade dress infringement, there was ample evidence that MGA's conduct was willful.  The same evidence supports the jury's finding that MGA's conduct was oppressive, fraudulent, and/or malicious. *See Alberts v. Liberty Life Assurance Co. of Bos.*, 65 F. Supp. 3d 790, 796 (N.D. Cal. 2014) (stating that a level of malice adequate to justify an award of punitive damages

"may be established by a showing that the defendant's wrongful conduct was willful, intentional, and done in reckless disregard of its possible results").

### C. The Jury's Punitive Damages Award Is Appropriate and Comports with Due Process

81.    As discussed above, punitive damages are in the discretion of the jury, but this Court would adopt the same number if the issue was equitable.  The amount of punitive damages is reasonable and supported based on the evidence presented.

82.    The amount of punitive damages also comports with due process. "Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 902 (9th Cir. 2022); *see also Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005) ("In cases where there are significant economic damages and punitive damages are warranted but behavior is not particularly egregious, a ratio of up to 4 to 1 serves as a good proxy for the limits of constitutionality.").

83.    The jury trebled the disgorgement award, a ratio that is less than the 4 to 1 limit for conduct that is not particularly egregious.  There is no due process issue with the amount of punitive damages awarded.

## CONCLUSION

84.    The OMG Girlz have protectible trade dress.

85.    MGA's OMG dolls Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runway Diva infringe the OMG Girlz' trade dress, and misappropriate the OMG Girlz' name, likeness, and identity.

86.    MGA's trade dress infringement was willful.

87.    The Court awards the OMG Girlz $17,872,253 in disgorged profits for MGA's trade dress infringement, and awards the OMG Girlz $17,872,253 in disgorged profits for MGA's common law misappropriation of name, likeness, and identity.

88.    The Court enhances the trade dress infringement award pursuant to the Lanham Act, increasing the award for trade dress infringement to the total of $53,616,759.

89.    MGA's OMG dolls Downtown BB, Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, and  Shadow also infringe the OMG Girlz' trade dress, but are not subject to disgorgement of profits.

90.    MGA's OMG dolls Downtown BB, Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, and Miss Glam also misappropriated the OMG Girlz name, likeness, and identity but are not subject to disgorgement of profits.

91.    MGA acted with oppression, fraud, or malice with regard to its misappropriation of the OMG Girlz' name, likeness, or identity.

92.    The OMG Girlz are awarded $53,616,759 in punitive damages.

Dated:  December 20, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ John R. Keville*
       JOHN R. KEVILLE

*Attorney for Defendants and Counterclaimants CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*