# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   February 3, 2025

Title   MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Post-Trial Equitable Issues**

Before the Court are Plaintiff and Counterdefendants' MGA Entertainment, Inc. and Isaac Larian (collectively, "MGA") motion on disgorgement of profits, (MGA's Mot., Dkt. No. 1046), and Defendants' and Counterclaimants' Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises," or "Harris Parties" or "OMG Girlz") motion to enhance damages under the Lanham Act, (Harrises Mot., Dkt. No. 1045.)

The Harrises filed an opposition to MGA's motion. (Harrises Opp'n, Dkt. No. 1064.) MGA filed an opposition to the Harrises motion. (MGA's Opp'n, Dkt. No. 1062.) Both parties filed a reply. (MGA's Reply, Dkt. No. 1068; Harrises Reply, Dkt. No. 1067.)

MGA filed a proposed findings of fact and conclusions of law. (MGA's Proposed Findings of Fact and Conclusions of Law ("MGA's Proposed Findings"), Dkt. No. 1071.) The Harrises filed the same. (Harrises Proposed Findings of Fact and Conclusions of Law ("Harrises Proposed Findings"), Dkt. No. 1072.)

Upon consideration of the evidence, the Court grants disgorgement of profits of $17,872,252 under common law misappropriation, and affirms the jury's award of punitive damages of $53,616,759. With regard to the Lanham Act, the Court declines to disgorge profits or enhance the award.

## BACKGROUND

I.    *The OMG Girlz and MGA Entertainment, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

This case arises from an alleged trade dress infringement and misappropriation of name, likeness, or identity of the OMG Girlz brand by the entertainment and toy company, MGA, over the L.O.L Surprise! O.M.G. dolls line. On December 22, 2020, MGA filed a complaint against the OMG Girlz seeking declaratory judgment whether the L.O.L. Surprise! O.M.G. dolls and associated lines of toy products infringed the intellectual property rights of the OMG Girlz' mark. (See Compl., Dkt. No. 1.)

MGA is a large toy company that designs, develops, and distributes children's toys. (See Dkt. No. 326 at 2.) In 2001, MGA released the enormously successful "Bratz" doll. (Id.) MGA CEO Isaac Larian ("Larian") credits MGA with having "invented diversity in dolls," starting with the Bratz doll. (Trial Tr. 9/19/24 AM 97:12–13.)

Tameka "Tiny" Harris is a famous singer-songwriter who formed a teenage female vocal group called the OMG Girlz. (Trial Tr. 9/4/24 AM 33:1–2.) The core members of the group are Zonnique Pullins, Breaunna Womack, and Bahja Rodriguez. (Id.) The individual members of the OMG Girlz are not parties to the instant action.

In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!. (Trial Tr. 9/11/24 AM 41:18–42:20.) The collection was a big success for MGA, quickly becoming a top selling toy in the United States. (Id.) In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls. (Trial Tr. 9/13/24 AM 23:3–6, 25:2–26:1.)

II.    *The Lawsuit Commences*

On December 8, 2020, the Harris Parties sent a cease-and-desist letter to MGA claiming that MGA had copied the OMG Girlz' signature look and demanding that MGA stop distributing the L.O.L. Surprise! O.M.G. dolls. (Dkt. No. 13; Trial Tr. 9/4/24 AM 93:21–94:8.) Immediately thereafter, MGA filed suit against the OMG Girlz in an effort to clarify the rights of the parties. (Trial Tr. 9/19/24 PM 43:13–44:4.) On February 22, 2021, the OMG Girlz answered and filed a counterclaim alleging violations of the Lanham Act, statutory and common law misappropriation of name or likeness, and statutory and common law unfair competition claims. (Dkt. No. 13.)

In July 2022, the Court granted summary judgment in favor of MGA on more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

half of the dolls alleged to be infringing. (Dkt. No. 326 at 23, 33.) Additionally, the Court granted summary judgment in favor of MGA on the statutory misappropriation claim, finding that the OMG Girlz did not have a claim under Cal. Civ. Code § 3344. (Id.) Finally, the Court granted summary judgment in favor of MGA on the unfair competition law claims. (Id.)

On May 9, 2023, the remaining claims were tried before a jury.[1] (Dkt. No. 777.) On May 26, 2023, the jury returned a verdict in favor of MGA on both remaining causes of action. (Id.) The jury found that the OMG Girlz had not proven that the L.O.L. Surprise! O.M.G. doll line infringed the OMG Girlz' asserted trade dress or misappropriated the OMG Girlz' name, likeness, or identity. (Id.) The Court additionally found that MGA was entitled to declaratory relief. (Id.) On June 13, 2023, the Court issued its judgment. (Id. at 2.)

However, following the conclusion of that trial, the Supreme Court issued its ruling in Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140 (2023). Following the Jack Daniel's case, this Court held that one of the jury instructions related to the Harrises trade dress claim was erroneous and granted a new trial on both of the Harrises claims. (Dkt. No. 860.)

III.    *The September 2024 Trial and Jury Verdicts*

In September 2024, the third trial in this lawsuit began. (Dkt. No. 944; Trial. Tr. 9/3/24 AM.) Prior to trial, the Court ruled that any verdicts on equitable issues were to be regarded as advisory verdicts. (Dkt. No. 924 at 2.) At trial, the Harrises narrowed the scope of their claim and sought disgorgement for seven of the 32 remaining dolls. (See Trial Tr. 9/18/24 AM 7:21–23.)

On September 23, 2024, the jury reached its verdict. (Verdict, Dkt. No. 1010.) With regard to the Lanham Act, the jury found that the Harrises had established by a preponderance of the evidence that MGA infringed on the OMG Girlz' trade dress with respect to all seven dolls: Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runaway Diva. (See id. at 2–4.) The jury found that there was no First

---

[1] The first trial ended in a mistrial. The second trial began in May 2023.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

Amendment defense and that MGA's trade dress infringement was willful. (Id. at 5.) The jury awarded $17,872,253 as an advisory figure for damages. (Id.)

With respect to common law misappropriation, the jury found that the OMG Girlz had proven by a preponderance of the evidence that the dolls misappropriated the OMG Girlz' name, likeness, or identity. (Id. at 2.) The jury found by clear and convincing evidence that MGA acted with oppression, fraud, or malice in this misappropriation. (Id. at 6.) The jury awarded $17,872,253 as an advisory figure. (Id.) The jury also awarded punitive damages of $53,616,758. (Punitive Damages Verdict, Dkt. No. 1012, at 1.)

**DISCUSSION**

I.    *Lanham Act Remedies: Disgorgement of Profits & Enhancement*

In this section, the Court discusses disgorgement and enhanced damages.

A.    Disgorgement Under the Lanham Act is an Equitable Issue

"A claim for disgorgement of profits under § 1117(a) is equitable, not legal." Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1075 (9th Cir. 2015). Because disgorgement of profits under the Lanham Act is an equitable issue, a jury's verdict is merely advisory. Ashland v. Ling-Temco-Vought, Inc., 711 F.2d 1431, 1438 (9th Cir. 1983). Courts are "free to accept or reject the advisory jury's verdict, in whole or in part, and is obligated to make its own independent assessment of the issues submitted to the advisory jury." Hannibal Pictures, Inc. v. Sonja Prods. LLC, 2009 WL 10673572, at *1 (C.D. Cal. Aug. 31, 2009), aff'd, 432 F. App'x 700 (9th Cir. 2011); see 9 Charles A. Wright et al., Federal 26 Practice & Procedures § 2335 (3d ed.) (a court's deference to an advisory verdict "misconceive[s] the function of an advisory jury and seem[s] to overlook the complete freedom the trial judge has in using or disregarding its findings").

Both parties agree that disgorgement under the Lanham Act is equitable. (MGA's Mot.; Harrises Opp'n at 2.) Thus, disgorgement of profits is an equitable issue for the Court to determine free of the jury's verdict.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR          Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

B.    Disgorgement is Not Warranted Under These Circumstances

The Lanham Act provides that:

When a violation of any right of the registrant of the mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a).

"An award of profits 'is not automatic' upon a finding of infringement.'" Fifty-Six Hope, 778 F.3d at 1073. Courts will consider a variety of factors when considering whether disgorgement of profits is appropriate, including: (1) a defendant's mental state, such as intent to deceive or confuse, (2) whether sales have been diverted, (3) the adequacy of alternative remedies, (4) unreasonable delay by the plaintiff in asserting its rights, (5) the public interest, and (6) whether it is a case of palming off. Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 120 (9th Cir. 1968); Kars 4 Kids Inc. v. America Can!, 8 F.4th 209, 223 (3d Cir. 2021); Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc., 951 F.2d 684, 695 (5th Cir. 1992); Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc., 2023 WL 2652855, at *4 (C.D. Cal. Mar. 13, 2023). If disgorgement is appropriate, the Court will then consider the proper attributable profits to the infringement. Globefill Inc. v. Elements Spirits, Inc., 756 F. App'x 764, 765 (9th Cir. 2019); see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge, 316 U.S. 203 (1942).

**1.    Willfulness of Infringement**

"[A] trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." Romag Fasteners, Inc. v. Fossil, Inc., 590 U.S. 212, 219 (2020). However, despite its importance, willfulness is not a precondition to recovery. Id. The key inquiry is whether disgorgement of the defendant's profits are consistent with the "principle long reflected in equity practice." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                    Date  February 3, 2025

Title  MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

Because disgorgement of profits is an equitable remedy, the district court, and not the jury, considers the issue of willfulness in determining whether an award of profits is appropriate.  Fifty-Six Hope, 778 F.3d at 1075–76; Grasshopper House, LLC v. A.V.E.L.A., Inc., 394 F. Supp. 3d 1073, 1108 (C.D. Cal. 2019); Yuga Labs, Inc. v. Ripps, 2023 WL 7089922, at *11 n.9 (C.D. Cal. Oct. 25, 2023) ("Accordingly, the Court concludes that the factors considered by the Court in determining whether to award a disgorgement of Defendants' profits, including Defendants' mental state, are properly decided by the Court.")  Thus, the Court will consider the jury's verdict on willfulness only as "an aid to the court in discharging its functions."  See 9 Charles Alan Wright et al., Federal Practice and Procedures § 2335 (3d ed. 2019).

In the Ninth Circuit, "[w]illful infringement carries a connotation of deliberate intent to deceive."  Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993), superseded by statute on other grounds.  Indeed, [w]illfulness and bad faith 'require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense.'"  Id.  Mere negligence, however, will not suffice to show willfulness.  Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011); Harbor Breeze, 2023 WL 2652855, at *5.  Moreover, where the infringer acted in good faith upon sound reason to believe that it had the right to act, then such action was not willful.  SRI Int'l, Inc. v. Advanced Tech. Labs., 127 F.3d 1462, 1464–65 (Fed. Cir. 1997).  Ultimately, willfulness is a question of state of mind that "is often accompanied by questions of intent, belief, and credibility."  Id. at 1465.

Here, the jury found that the MGA acted with willfulness with regard to trade dress infringement.[2]  (Verdict, Dkt. No. 1010 at 5.)  The Harrises offered evidence at trial that a lead designer, Blanche Consorti, knew of the OMG Girlz in December 2019, prior to the creation of all of the seven infringing dolls.  (Trial Tr. 9/10/24 PM 47:5–11.)  Additionally, the Harrises presented evidence through Consorti of an email exchange where MGA employees discuss the lyrics of a song, which they believed included a

---

[2]  MGA argues that the issue of willfulness was already decided on summary judgment by this Court in favor of MGA.  (MGA's Reply at 22–23.)  Not so.  While this Court considered willfulness in the disgorgement context at the summary judgment stage, it concluded that the issue would be taken up at the end of trial along with the other equitable issues.  (See Dkt. No. 326 at 33.)  The Court merely noted that based on the evidence presented at the time, willfulness had not been demonstrated.  (See id. at 22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                     Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

reference to the "OMG dolls." (Id. 47:9–49:25.) To the employees' dismay, however, a fellow coworker notes that the song was likely a reference to the "OMG Girlz" and not their OMG dolls. (Id.) Consorti appears to neither confirm nor deny any prior knowledge of the OMG Girlz. (Id.) The email exchange and testimony tend to support a finding that some employees and at least one designer, Consorti, were aware of the OMG Girlz existence in December 2019. However, this evidence largely fails to show that there was a deliberate intent to copy their trade dress upon learning of their identity.

The Harrises further presented evidence that MGA's target audience overlapped with the OMG Girlz' audience. (Trial Tr. 9/13/24 AM 83:6–24.) While overlapping markets can be indicative of intentional efforts to deceive, see Playboy Enters. v. Netscape Comms. Corp., 354 F.3d 1020, 1028 (9th Cir. 2004), it can equally be unexceptional. In this case, the overlapping market was that of Black/African-American moms and Hispanic moms. (Trial Tr. 9/13/24 AM 83:12–16.) This overlapping market, however, was partially explained by the Larian, who testified that he was proud that Bratz was founded with a diverse line of dolls and has continued to sell its diverse brand of dolls well before the 2019 line of L.O.L. Surprise! dolls. (Trial Tr. 9/19/24 AM 125:16–20.) Further, Larian explained that MGA sells to "every girl, every nationality, [and] every color," and that it was Bratz' business practice to study the reactions and preferences of different demographics for dolls. (Id. 126:19–25.) Thus, the mere fact that the infringing dolls appeal to the same consumer base does not support a finding of intent to deceive.

Next, the Harrises argue that MGA's failure to investigate allows for a finding of willfulness. In 4 Pillar Dynasty LLC v. N.Y. & Co., 933 F.3d 202 (2d Cir. 2019), the Second Circuit upheld a district court's finding of willfulness despite sparse evidence in the record where defendants could not explain or justify their failure to cease selling the infringing product after receiving notice. Id. at 210. Similar to 4 Pillar Dynasty, MGA generally failed to exercise due care in response to the infringement claim. For instance, Consorti explained that after seeing a video in which MGA designers were themselves confused the OMG Girlz reference with OMG dolls, she took no steps to investigate. (Trial Tr. 9/10/24 PM 49:4–8.) Rachel Brenner, another designer, confirmed that nobody she knew took investigative steps following this confusion. (Trial Tr. 9/13/24 AM 79:19–24.) Furthermore, Larian testified that he did not investigate the claim himself as CEO, but rather passed it off to his lawyers who initiated this lawsuit. (Trial Tr. 9/4/24 PM 107:18–22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |

| | |
|---|---|
| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |

However, negligence is insufficient to show an intent to deceive. Global-Tech, 563 U.S. at 769. Here, the evidence shows that, at most, MGA and Larian were negligent about investigating an alleged claim of infringement, but not that they acted with reckless indifference or willfulness. Generally, "the failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith." Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) (citing SecuraComm Consulting Inc v. Securacom Inc., 166 F.3d 182, 189 (10th Cir. 1999)).

Finally, the Harrises argue that the various witnesses' credibility tilts in favor of finding willfulness. On numerous occasions, witnesses, particularly designers, were confronted with dolls that appeared to copy famous celebrities. Rather than concede copying, the designers attempted to explain away blatantly obvious design features copied from real individuals.[3] (See Trial Tr. 9/18/24 AM 32:5–34:14; Trial Tr. 9/19/24 AM 61:23–62:19.) While this evidence is perhaps the strongest signal of a pattern of blatant infringement and a willingness to deny even the most clear copying; without more, it does not show willful infringement of the OMG Girlz or their trade dress. This is particularly true where MGA conceded using *other* celebrities as inspiration and even forming partnerships with other celebrities. (See Trial Tr. 9/10/24 PM 34:21–35:4; Trial Tr. 9/18/24 PM 111:15–19; Trial Tr. 9/19/24 AM 62:11–14.) Therefore, on balance, the evidence tends to weigh against a finding of willfulness.

Accordingly, willfulness, the most important factor, leans against a finding of disgorgement.

**2. Diversion of Sales**

---

[3] For instance, during the cross of Consorti, she was asked whether a doll called "Piano King" (who clearly looks like Elton John), copied the famous singer Elton John. (Trial Tr. 9/18/24 AM 32:16–23.) Consorti maintained that it was not a copy of Elton John. (Id.) Consorti was shown an MGA doll called "Shimone Queen," with one white sparkly glove, glittery black costume, large glasses, and curly black hair (strongly resembling Michael Jackson). Yet, Consorti stated "[t]hat's a coincidence." (Id. 34:1–35:4.) The same pattern was repeated with other famous celebrities such as Lady Gaga and Audrey Hepburn. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                      Date   February 3, 2025

Title   MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

The Harrises briefly argue that "[t]he jury indeed heard evidence that MGA diverted financial opportunity from the OMG Girlz through use of their name, identity, and likeness, as well as their brand as a whole." (Harrises Reply at 11.)  To support this claim, the Harrises argue that the jury heard testimony and saw evidence of consumer confusion.  (See, e.g., Trial Tr. 9/4/24 AM at 70.)

Ordinarily, consumer confusion supports a finding of actual diversion of sales because a plaintiff's customers move from the plaintiff to the infringer.  However, the OMG Girlz do not make dolls.  The closest argument that the Harrises present is that Tameka Harris "was interested" in making dolls and initially pursued the potential of making dolls before abandoning the project when prototypes didn't turn out the way she liked.  (Trial Tr. 9/4/24 AM 48–50.)  Neither of these pieces of evidence support that the OMG Girlz ever lost revenue from the sale of the L.O.L. Surprise! O.M.G. dolls.  Thus, there is no evidence of lost sales.

Nor do the Harrises prove diversion of sales through the "intangible harms" argument.  The Harrises argue that the OMG Girlz suffered "intangible harms" by sacrificing life opportunities, bleaching their hair, and suffering the emotional distress of MGA's criticisms of their legal claims.  (See Harrises Mot. at 20.)  But these intangible harms reflect the efforts of the OMG Girlz to curate their image and not a loss of profits or sales that stemmed from L.O.L. Surprise! O.M.G. dolls.  Thus, unlike the cases relied upon by the Harrises where the lingering harm was financial diversion of sale, see Binder v. Disability Grp., Inc., 772 F. Supp. 2d 1172, such financial harm is not present here.  This factor leans against disgorgement.

### 3.    Adequacy of Other Remedies

The third factor considers whether a party has an adequate remedy at law, absent disgorgement under the Lanham Act.  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992).  Equity does not necessarily require disgorgement, and sometimes injunctive relief is enough to provide a complete remedy.  See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 35 (1st Cir. 2002).  Indeed, an injunction may be sufficient without a finding of willfulness because the need "to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy" is low.  Playboy Enters., 692 F.3d at 1274; Harbor Breeze, 2023 WL 2652855, at *7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

On the other hand, disgorgement is most often needed where there is no other award of damages or significantly reduced damages.  See, e.g., Playboy Enters., 692 F.3d at 1274 (finding that disgorgement was necessary where the district court awarded only one-tenth of the profits earned by defendants from their infringement); Monster Energy Co. v. Integrated Supply Network, LLC, 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021) (finding that disgorgement would assist deterrence because "the jury awarded $0 in compensatory damages and the punitive damages award was vacated by the Ninth Circuit on appeal)."

In this case, Court finds that the Harrises have an adequate monetary award $17,872,252 in disgorgement and $53,616,759 in punitive damages under common law misappropriation.  Even without a finding of willfulness, this remedy will adequately deter MGA and provide equitable relief to the Harrises.  Additionally, the Harrises have signaled their desire for an injunction, which has not been presented to the Court for a ruling.  Thus, this factor leans against disgorgement.

**4.      Unreasonable Delay**

Neither party argues for an unreasonable delay in bringing the instant lawsuit.  Indeed, the Harrises sent a cease and desist letter not long after the 2019 line of infringing dolls and MGA filed suit almost immediately after receiving the letter.  Thus, this factor leans in favor of the Harrises.

**5.      Public Interest**

Disgorgement of profits is often justified by the public's interest in deterring bad actors from continuing to infringe on marks.  See Monster Energy, 533 F. Supp 3d at 933.  "[T]he need to deter misconduct is at its apex" when the case involves willful misconduct.  Harbor Breeze, 2023 WL 2652855, at *8.  Additionally, fairness supports disgorgement of profits such as to avoid unjust enrichment from unlawful infringing.  id.

In this case, the Harrises argue that MGA is a "brazen willful infringer" that needs to be deterred from future infringement.  (Harrises Mot. at 23.)  As the Court discussed above, there is insufficient evidence to support a finding that MGA willfully infringed.  However, the Court agrees that this decision was a narrow one and that the trial testimony tends to support a narrative that MGA, in fact, copies the likeness of famous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

celebrities when designing their dolls.  Indeed, the jury did ultimately find in favor of
willfulness.  While a damages award must be consistent with the public's interest in
deterring this future harmful behavior, the Court finds that the misappropriation award,
along with the potential other remedies available to the Harrises, are a sufficient
deterrent to an actor that was not willful.

Additionally, while the public interest supports an award of disgorgement where
failure to do so would result in unjust enrichment, the Court has awarded $17,872,252
for common law misappropriation.  Thus, unjust enrichment is not a public interest
concern.  Therefore, this factor leans against disgorgement.

### 6.    Palming Off

Palming off involves conduct where a seller sells a good or service under the name
or mark of another.  Lamothe v. Atl. Recording Corp., 847 F.2d 1403, 1406 (9th Cir.
1988).  The Harrises do not address whether they are alleging palming off, but this case
does not amount to palming off the OMG Girlz mark by labeling their dolls as such.
Thus, this factor does not lean in favor of disgorgement.

### 7.    Conclusion

Considering the totality of the circumstances, the Court finds that the equities do
not favor disgorgement.

### C.    Attributable to the Infringement

Because the Court has concluded that the equities do not favor an award of
disgorgement of profits, the Court will not analyze whether MGA's profits are
attributable to the infringement.[4]

### D.    Conclusion on Disgorgement of Profits

---

[4] However, the Court notes that its analysis in Section II.B.2, *supra*, would apply to this section
were the Court to award disgorgement under the Lanham Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

"A finding of infringement does not, as a matter of right, entitle the owner to recover the infringer's profits." <u>Borg-Warner Corp. v. York-Shipley, Inc.</u>, 293 F.2d 88, 95 (7th Cir. 1961), <u>cert. denied</u>, 368 U.S. 939. Courts have the ability and "discretion to fashion relief, including monetary relief, based on the totality of the circumstances." <u>Harbor Breeze</u>, 2023 WL 265855, at *4 (citing <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1146 (9th Cir. 1997)).

The Court finds that the evidence cannot support an award of disgorgement of profits. Accordingly, the Court awards no disgorgement of profits under the Lanham Act.

      E.    <u>Enhancement Under Lanham Act</u>

MGA asks this Court to "enhance" damages under the Lanham Act's treble damages clause contained in § 1117(a). The Court has already determined that disgorgement of profits is not appropriate. Because the Court has determined that disgorgement is not warranted, the Court need not consider enhancement. Therefore, the Court will not exercise its discretion to enhance profits or damages.

II.    *Common Law Misappropriation Remedies: Disgorgement of Profits & Punitive Damages*

      A.    <u>Common Law Misappropriation, Alone, May Provide a Remedy of Disgorgement of Profits</u>

California law has long recognized the common law right of publicity to protect a person's name and likeness against misappropriation. <u>See Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686, 692 (9th Cir. 1998). A claim for common law misappropriation requires a plaintiff to prove: (1) the defendant's use of the plaintiff's identity; (2) the misappropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. <u>Id.</u>; Cal. Civ. Code § 3344. "Injury to a plaintiff's right of publicity [under the common law] is not limited to present or future economic loss, but 'may induce humiliation, embarrassment, and mental distress.'" <u>See Abdul-Jabbar v. General Motors Corp.</u>, 85 F.3d 407, 414 (9th Cir. 1996) (citing <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1103 (9th Cir. 1992),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |

| | |
|---|---|
| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |

overruled in part on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)).

In addition to the common law cause of action, California has enacted a statutory remedy for commercial misappropriation under Cal. Civ. Code § 3344. This statutory cause of action "is best understood as 'complementing,' rather than enacting, the common law cause of action, because the two are not identical." Abdul-Jabbar, 85 F.3d at 414; see also Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001) ("The remedies provided for under [§ 3344] complement the common law cause of action; they do not replace or codify the common law."). In 1984, section 3344 was amended to allow a plaintiff to recover punitive damages and disgorgement of profits. See Miller v. Collectors Universe, Inc., 159 Cal. App. 4th 988, 1002 (2008).

MGA contends that common law misappropriation, alone, does not provide a remedy of disgorgement of profits. In response, MGA argues that the statutory provision allowing disgorgement of profits is separate from the common law. Thus, because this Court previously granted summary judgment in favor of MGA with regard to the Harrises statutory § 3344 claim, (see Dkt. No. 326 at 26), disgorgement is not permitted. (MGA's Mot. at 21 ("None of the other cases cited by [the Harrises] establish that disgorgement is available for common law misappropriation alone.").)

The Court disagrees. In Miller, the California Court of Appeal interpreted the legislative history of section 3344(a) and determined that the 1984 amendments were intended to "fill 'a gap which exist[ed] in the common law tort of invasion of privacy.'" 159 Cal. App. 4th at 1002. The legislature, intending to expand the possible remedies for non-celebrity plaintiffs, largely expanded the available remedies for misappropriation to include property, business, pecuniary interests, privacy, reputation, peace of mind, punitive damages, and disgorgement of profits. Id. at 1002–04 (explaining the legislative history). Given that the purpose of section 3344 is to complement the common law, and not merely provide an alternative route to damages, these additional resulting damages are permissible.[5]

---

[5] MGA, however, is correct in its statement that the Harrises authority does not support the position they argue. Vanvakaris v. Fashion Forms, Inc., 2019 WL 6245546, at *2–3 (C.D. Cal. Nov. 22, 2019), is a removal case that does not adequately address the issue or spend time thoughtfully reflecting the question. Forrest v. Meta Platforms, Inc., 2024 WL 3024642, at *6 (N.D. Cal. June 17, 2024),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                Date   February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

Additionally, in <u>Waits</u>, the Ninth Circuit examined the types of damages appropriate for a common law misappropriation claim. The Ninth Circuit held that a plaintiff can recover more than mere economic injury in a right of publicity action, including damages for humiliation, embarrassment, and mental distress. 978 F.2d at 1103. While disgorgement of profits was not at issue in <u>Waits</u>, the case may still broadly stand for the preposition that damages for common law misappropriation expand beyond mere economic compensatory losses.

B.    <u>The Jury's Disgorgement of Profits Award Should Stand</u>

**1.    Profits Calculation**

Having concluded that disgorgement is a proper remedy under common law misappropriation, the Court now turns to the award of damages. The jury ultimately awarded $17,872,253 for common law misappropriation of name, identity, or likeness. (<u>See</u> Dkt. No. 1010.) The Court will independently review the profits and deductions to determine the proper award.

The Harrises economics and damages expert, Christian Tregillis ("Tregillis") testified that MGA had generated profits of $17,872,253 for the seven infringing dolls. (Trial Tr. 9/12/24 AM 29:20–23.) This satisfied the Harrises burden and thus, the presumed amount of damages attributable to the infringement became $17,872,253. <u>See</u> <u>Lindy Pen</u>, 982 F.2d at 1408.

MGA first argues that the profits calculation should be lowered to properly account for the fixed overhead costs. (MGA's Mot. at 19.) MGA is correct that the Ninth Circuit allows "a deduction for overhead only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product." <u>See</u> <u>Kamar Intern., Inc. v. Russ Berrie and Co., Inc.</u>, 752 F.2d 1326, 1332 (9th Cir. 1984). Overhead should not be deducted where it did not assist in the production of the infringement. <u>Id.</u> As best stated by the Harrises damage

_____

specifically states that damages were not a contested issue and thus, not addressed. <u>Batis v. Dun & Bradstreet Holdings, Inc.</u>, 2023 WL 1870057, at *6 (N.D. Cal. Feb. 9, 2023), denied dismissal on the basis of the First Amendment and did not address the issue in contention. Accordingly, the Court's finding is supported by <u>Miller</u>, <u>Waits</u>, and its own interpretation of the 1984 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

expert, "we both seem to agree that the costs that are deductible are not all of the costs but, rather, just the costs that are related to production, sale, and distribution." (Trial Tr. 9/20/24 AM 29:23–30:1.)

Defendants in this district often encounter a fatal blow in their efforts to prove deductions when they fail to provide an invoice, receipt, or other original document to support costs and expenses for deductions. See Vital Pharma. v. PhD Marketing, Inc., 2022 WL 2952495, at *4 (C.D. Cal. July 26, 2022) (finding that defendants had produced "troublingly little" evidence to support its deductions figure); Paige LLC v. Ship Paige LLC, 2024 WL 3594450, at *5 (C.D. Cal. July 10, 2024) (same); Yuga Labs, 2023 WL 7089922, at *13 ("Defendants offered no expert testimony regarding their profits, their costs, or what portion, if any, of their profits might be attributable to something other than their infringement of [plaintiff's] marks.")

Such is the case here. MGA's damages expert, Dr. Mangum, testified that the Harrises $17,872,252 figure did not account for fixed overhead costs that related to the L.O.L. Suprise! O.M.G. line of dolls. (Trial Tr. 9/19/24 PM 92:8–13.) When considering the "fixed overhead" costs for the infringing dolls, MGA argues that the true figure should be $9,180,277. (Id. 96:10–14.)

In response, the Harrises argue that their expert, Tregillis, properly deducted the costs for producing, selling, marketing, and distributing the dolls, based on deposition testimony from Vice President of Finance for MGA, Pedro Crisanti. (Trial Tr. 9/12/24 AM 24:1–25.) However, Tregillis objected to the "fixed overhead" costs. (Id. 25:19–20.) Tregillis argued that there was no source material to determine whether "fixed overhead" related to the actual making, selling, and producing of the infringing dolls. (Id. 26:17–24.) Specifically, neither Tregillis nor Dr. Mangum found source evidence of MGA's facilities rent or other expenses that fell into "fixed overhead." (Id. 27:7–25.) Rather, the parties were generally relying on deposition testimony of Pedro Crisanti, who was not a witness at trial and did not provide sources for his claims. (Id.)

The Court will not accept Dr. Mangum's fixed overhead deduction without question and critique. Dr. Mangum may have "asked [] questions" about the financial statements prepared by MGA, but by his own words he had not "checked [Crisanti's] math" nor could he confirm the calculations, test if the overhead costs were actually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

related to production, sales, or distribution of the infringing dolls, or investigate himself about any fixed overhead.  It is apparent that the jury concluded that Tregillis' professional opinion to exclude fixed overhead was the correct decision without more reliable access to source material.  The Court agrees.

Accordingly, the Court finds that the proper profits calculation should be $17,872,252.

### 2.    The Profits Are Attributable to MGA

MGA also argues that none of its profits from the sales of the seven infringing dolls are attributable to any wrongful conduct.  Just as under the Lanham Act, any disgorgement for common law misappropriation is limited to the amount attributable to the infringing conduct.  Olive v. Gen. Nutrition Centers, Inc., 30 Cal. App. 5th 804, 813–16. (2018).

Dr. Mangum testified that "no portion of [MGA's] profits can be attributable to the alleged likeness or trade dress related to the OMG Girlz." (Trial Tr. 9/19/24 PM 111:13–16.)  Dr. Mangum based his finding on a comparative analysis that looked at the revenue generated by the 32 dolls at issue in the case, with the dolls that this Court had already determined did *not* infringe.  (Id. 110:3–22.)  The comparative analysis thoroughly controlled for various external influences. (Id. 104:1–18 (explaining how Dr. Mangum used the dolls' series to control for potential fluctuations in the economy).)  Dr. Mangum found that other factors were likely the cause of sales, including the popularity of the L.O.L. Surprise! line and the business practices of MGA—but not infringement.  (Id.)  Additionally, Dr. Mangum's conclusions were consistent with Dr. Isaacson, who surveyed likelihood of confusion.  (See Trial Tr. 9/18/24 AM 95:19–96:8.)  Together, MGA argues that these findings show that none of MGA's profit were attributable to the OMG Girlz.

Despite MGA's claims, it cannot be said that MGA's profits were not, at least partially, attributable to the infringing dolls.  The Harrises provided several consumer depositions that were representative of a larger population of individuals who purchased the OMG Dolls under the assumption that they were supporting the OMG Girlz.  (See Trial Tr. 9/10/24 PM 8; Trial Tr. 9/6/24 PM 80.)  This demonstrates that there were at least *some* profits attributable to infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

Further, the comparative analysis relied on by MGA does not disprove attributability. It is quite possible that many OMG Girlz fans purchased the infringing OMG Dolls, but that such dolls still performed at par with the non-infringing dolls—a commercial benefit nonetheless. Alternatively, it is possible that some non-infringing dolls would naturally sell more than infringing dolls, giving the impression that sales were even across both categories. See Olive, 30 Cal. App. 5th at 819 (rejecting a comparison analysis where the matters were not reasonably comparable). Finally, as the Harrises expert concluded, the comparative analysis is not entirely accurate where it compared all 32 allegedly infringing dolls, rather than just the seven dolls actually found to be infringing by the jury. (See Trial Tr. 9/20/24 AM 32:1–10.) Indeed, as Tregillis pointed out, the seven dolls seemed to have outperformed the other dolls allegedly infringing dolls. (Id.) Thus, the comparative analysis does not reliably refute attributability.

Next, MGA argues that if this Court rejects the comparative analysis, it should find that, at most, 10%–15% of MGA's profits are attributable to the OMG Girlz. (See MGA's Mot. at 19.) The 10% figure is based on the percentile difference in revenue between the infringing Metal Chick and Bhad Gurl when sold outside of the four-pack (i.e., without Ferocious and Fame Queen). (Id. at 20.) The 15% figure is based on an internal MGA study that found that only about 15% of people were interested in the dolls based on style. (Id.) Given that the trade dress dispute is about style, then, at most, 15% of sales could be attributed to the OMG Girlz. (Id.)

The Court finds that neither of these arguments merit an equitable reduction in disgorgement. With regard to the 10% figure, there is no reasonable certainty that 10% would reflect the margin of attributability for all of the infringing dolls. It is possible that Metal Chick and Bhad Gurl would have vastly *underperformed* in the market, save for the infringing conduct, and thus, cannot be compared in isolation to their non-infringing counterparts. Nor does the 15% calculation serve as a reliable basis to reduce disgorgement. There are several non-stylistic reasons that could explain why MGA may still have commercially benefitted from using the OMG Girlz name, likeness, and identity in selling the infringing dolls, not the least of which includes the name and desire of fans to support the OMG Girlz regardless of doll style. Ultimately, the jury found for infringement, Tregillis calculated net profits relying on the profit margins of the OMG Dolls, and the $17,872,252 sum is equitable in light of such infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   February 3, 2025

Title      MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

While it is true that the Harrises have only produced consumer testimony to demonstrate attributability, it is MGA's burden to rebut the presumption of profits. See Winterland Concessions Co. v. Fenton, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (discussing attributability as a permissible method for defendants to deduct costs from gross revenue). "The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." Lindy Pen, 982 F.2d at 1408. MGA has not met its burden to reduce the attributability of the profits on the basis of the comparative analysis. Therefore, the Court awards disgorgement of profits in the amount of $17,872,252.

C.     There is No Double Recovery Issue

"[I]f a party prevails on two claims that each provide recovery for the same harm, that party must, then, elect its remedy based on one of the prevailing claims." See B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC, 2023 WL 11835516, at *2 (C.D. Cal. July 20, 2023) (citing Teutscher v. Woodson, 835 F.3d 936, 954 (9th Cir. 2016)). In this case, the Harrises do not have multiple prevailing claims. The Court has found that under the Lanham Act, the disgorgement of profit awards is $0. Thus, the Harrises will not be double recovering.[6]

D.     Punitive Damages Are Affirmed

**1.     The Jury's Award is Binding**

Punitive damages are available for a common law right of publicity claim. See Waits, 978 F.2d at 1104; Eastwood v. Sera Labs, Inc., 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021) ("Both California Civil Code § 3344 and common law right of publicity allow for an award of punitive damages."). The remaining question is whether or not punitive damages were an equitable issue for the Court to determine or a legal issue for the jury. The Court finds that it need not address this issue because,

---

[6] To the extent that disgorgement and punitive damages under common law misappropriation are reversed on appeal, the Court acknowledges that it would be required to re-weigh the factors for disgorgement under the Lanham Act, and thus, double recovery may need to be re-analyzed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                    Date   February 3, 2025

Title   MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

in any event, the parties consented to a jury trial and there was no indication that the verdict on punitive damages was to be treated as an advisory verdict.

Rule 39(c) provides that:

In all actions not triable of right by a jury the court upon motion or of its own initiative may try an issue with an advisory jury; or . . . the court, with consent of both parties, may order a trial with a jury whose verdict as the same effect as if trial by jury had been a matter of right.

Fed. R. Civ. P. 39(c).  Once litigants have consented, either expressly or implicitly, to a nonadvisory jury, "the court must provide them advance notice if it intends to regard the verdict as advisory."  Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 795–96 (5th Cir. 1999); see also Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 52 (3d Cir. 1989) ("[W]hen the litigants have consented to a nonadvisory jury under Rule 39(c), a district court must notify both sides of a jury's advisory status no later than the time at which the jury selection has begun.").

Thus, where a jury demand has been made and the issue submitted to the jury without objection, a verdict is binding under Rule 39(c)(2) where "the possibility that the jury's findings might be advisory was never mentioned until after the verdict was returned."  Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc., 28 F.4th 35, 40–41 (9th Cir. 2022) (distinguishing Bereda on other grounds); see also Pradier v. Elespuru, 641 F.2d 808, 811 (9th Cir. 1981) ("The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury.").

In this case, the parties expressly consented to a jury trial.  (Final Pretrial Conference Order, Dkt. No. 924.)  MGA requested a jury trial on all legal issues, and specified that "award of profits" and "injunctive relief" were equitable issues for the Court.  (Dkt. No. 909.)  Punitive damages were not expressly determined to be an equitable issue, nor did the Court notify the parties that punitive damages would be equitable.  Thus, implicitly, both parties agreed that punitive damages would be a matter for the jury.

It cannot be said that MGA objected to this determination.  From the second trial up until these post-trial motions, MGA objected to the Court's finding that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                   Date   February 3, 2025

Title   MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

punitive damages (and disgorgement) were appropriate under common law misappropriation, alone.  (See Dkt. Nos. 698, 750, 989.)  However, these objections were solely based on the position that only statutory misappropriation under Cal. Civ. Code § 3344 supported punitive damages.  At no time did MGA object that punitive damages were an issue for the Court and not the jury.[7]  Indeed, when the time came for argument on punitive damages, the Court said the following:

> With respect to violation of name, likeness, et cetera, the jury has determined that the conduct was initiated with oppression, fraud, or malice with regard to the misappropriation of the OMG Girlz' name, likeness, or identity.  That's an issue for the jury.  Are you prepared to proceed?"

(Trial Tr. 9/23/24 AM 25–26.)  MGA's counsel responded, "[w]e're prepared to deal with that" and after coming back from break, requested additional time to "find record citations" for the jury because punitive damages was "an important issue."  (Id. 25:19–26:5.)  The Court denied this request, stating "[f]rom the entry of the Pretrial Conference Order forward, the parties were aware that the quantity of punitive damages, if any, would be bifurcated, and in the normal course, that occurs right after the liability verdict."  (Id. 26:6–10.)

Therefore, because punitive damages were submitted to the jury without objection from MGA, and because the Court did not resolve the issue prior to trial, the verdict is binding under Rule 39(c)(2).  Accordingly, the Court affirms the jury's award of $53,616,759 in punitive damages.

## CONCLUSION

For the foregoing reasons, the Court grants disgorgement of profits of $17,872,252 under common law misappropriation, and affirms the jury's award of

---

[7] The closest argument would be MGA's objections to the proposed verdict form, where MGA argued that even if punitive damages were an available remedy, the Court should strike the question relating to the amount of punitive damages because "amount, if any, of punitive damages will be an issue decided later."  (Dkt. No. 928-2, 979.)  However, this objection was most likely a request for bifurcation given that they later make the same objection, but add that "punitive damages should be handled in a second phase" (see id.)—a request that the Court ultimately granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | February 3, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. v. Clifford "T.I." Harris et al. |
|---|---|

punitive damages of $53,616,759. With regard to the Lanham Act, the Court declines to disgorge profits or enhance the award.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Having considered the evidence, the parties' objections to the evidence, the credibility of the trial witnesses, and both parties' arguments at trial and in briefs, the Court issues the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

I.   *Findings of Fact*

1. MGA is a large toy company that designs, develops, and distributes children's toys. (Dkt. No. 326 at 2.) In 2001, MGA released the successful "Bratz" doll. (Id.) MGA's CEO is Isaac Larian, a party to this case. (Id.)

2. Tameka "Tiny" Harris is a famous singer-songwriter who formed a teenage female vocal group called the OMG Girlz. (Trial Tr. 9/4/24 AM 33:1–2.)

3. In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!. (Trial Tr. 9/11/24 AM 41:18–42:20.) The collection was a big success for MGA, quickly becoming a top selling toy in the United States. (Id.) In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls. (Trial Tr. 9/13/24 AM 23:3–6; 25:2–26:1.)

4. On December 22, 2020, MGA filed a complaint against the OMG Girlz seeking declaratory judgment whether the L.O.L. Surprise! O.M.G. dolls infringed the intellectual property rights of the OMG Girlz' mark. (See Compl., Dkt. No. 1.)

5. On September 23, 2024, the jury provided a verdict on liability. (Verdict, Dkt. No. 1010.) The jury determined by a preponderance of the evidence that MGA infringed on the OMG Girlz trade dress with respect to seven

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                      Date    February 3, 2025

Title    MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

dolls: Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runaway Diva. (Id. at 2.) Independent of trade dress infringement, the jury found that MGA misappropriated the OMG Girlz' name, likeness, or identity. (Id.)

6.    The jury also provided an advisory verdict on damages, (see id.; Punitive Damages Verdict, Dkt. No. 1012), which the Court had previously determined were an equitable issue, (see Dkt. No. 924 at 2.) The jury awarded the OMG Girlz $17,872,253 to recover for trade dress infringement, which the jury also found was willful. (Verdict, Dkt. No. 1010 at 5.) Likewise, the jury awarded the OMG Girlz $17,872,253 for misappropriation and the jury found by clear and convincing evidence that MGA acted with oppression, fraud, or malice. (Id. at 6.) The jury then awarded the OMG Girlz $53,616,759 in punitive damages. (Punitive Damages Verdict, Dkt. No. 1012, at 1.) While the Court notes that these damages verdicts are strictly advisory, the Court affords considerable weight to the independent perspective of the jury.

II.    *Conclusions of Law*

  A.    Lanham Act Remedies (15 U.S.C. § 1117(a)): Disgorgement and Enhancement

7.    "A claim for disgorgement of profits under § 1117(a) is equitable, not legal." Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1075 (9th Cir. 2015). Courts will consider a variety of factors when considering whether disgorgement of profits is appropriate under the Lanham Act, including: (1) mental state, (2) diversion of sales, (3) adequacy of alternative remedies, (4) unreasonable delay by the plaintiff, (5) the public interest, and (6) whether it is a case of palming off. Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 120 (9th Cir. 1968); Kars 4 Kids Inc. v. American Can!, 8 F.4th 209, 223 (3d Cir. 2021); Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc., 951 F.2d 684, 695 (5th Cir. 1992). To the extent an award of disgorgement is appropriate, any profits must be attributable to the defendant. Globefill Inc. v. Elements Spirits, Inc., 756 F. App'x 764, 765 (9th Cir. 2019); see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   February 3, 2025

Title   MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

---

also <u>Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge</u>, 316 U.S. 203 (1942).

8.   Here, the Court concludes that the factors weigh against disgorgement of profits.  MGA did not act willfully, the Harrises did not show a diversion of sales, and this is not a case of palming off.  Additionally, the adequacy of alternative remedies, public interest, and delay factors remained neutral.  Thus, on balance, disgorgement is not appropriate.

9.   Courts may use discretion to increase or decrease a profits award that finds is either inadequate or excessive.  15 U.S.C. § 1117(a).  "The district court ought to tread lightly when deciding whether to award increased profits, because granting an increase could easily transfigure an otherwise-acceptable compensatory award into an impermissible punitive measure."  <u>Fifty-Six Hope</u>, 778 F.3d at 1077.  Here, the Court declines to award enhanced profits.  The Court has already determined that disgorgement was not appropriate under these circumstances.  Thus, neither is enhancement.[8]

   B.   <u>Common Law Misappropriation Remedy and Punitive Damages</u>

10.   California law has long recognized the common law right of publicity to protect a person's name and likeness against misappropriation.  <u>See Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686, 692 (9th Cir. 1998).  A claim for common law misappropriation requires a plaintiff to prove: (1) the defendant's use of the plaintiff's identity; (2) the misappropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.  <u>Id.</u>

---

[8] Even if the Court awarded disgorgement of profits under the Lanham Act, there is sparse evidence to conclude that MGA acted willfully, and thus, little reason to enhance from a deterrence perspective.  <u>See</u> <u>Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.</u>, 692 F.2d 1272, 1274 (9th Cir. 1982).  Furthermore, the Harrises arguments for intangible harms and benefits are either unrelated to profit enhancement or fail to offer evidence of actual damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                Date   February 3, 2025

Title      MGA Entertainment Inc. v. Clifford "T.I." Harris et al.

---

11.    Common law misappropriation, even without a companion statutory
       claim, can support a remedy of disgorgement of profits.  In 1984, the
       statutory common law claim under Cal. Civ. Code § 3344 was expanded
       to include disgorgement of profits as a way to fill a gap in the common
       law.  See Miller v. Collectors Universe, Inc., 159 Cal. App. 4th 988, 1002
       (2008) (interpreting California legislative history).  "The remedies
       provided for under [§ 3344] complement the common law cause of
       action; they do not replace or codify the common law."  Downing v.
       Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001).  Thus, the
       common law, itself, can support a remedy of disgorgement of profits.

12.    Here, the Court finds that the proper profits calculation is $17,872,252
       and that the profits are attributable to MGA.

13.    Punitive damages are available for a common law right of publicity claim.
       See Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1104 (9th Cir. 1992).  Once
       litigants have consented, either expressly or implicitly, to a nonadvisory
       jury, "the court must provide them advance notice if it intends to regard
       the verdict as advisory."  Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d
       772, 795–96 (5th Cir. 1999).  Where a jury demand has been made and
       the issue submitted to the jury without objection, a verdict is binding
       under Rule 39(c)(2).  Harbor Breeze Corp. v. Newport Landing
       Sportfishing, Inc., 28 F.4th 35, 40–41 (9th Cir. 2022).  "In California,
       exemplary or punitive damages are available 'where it is proven by clear
       and convincing evidence that the defendant has been guilty of oppression,
       fraud, or malice."  Id. (citing Cal. Civ. Code § 3294(a)).

14.    In this case, the jury found that the Harrises acted with oppression, fraud,
       or malice, and awarded $53,616,759.  The jury's verdict was binding
       where the jury demand was made, the issue of punitive damages was
       submitted to the jury without objection by MGA, and the Court did not
       otherwise provide that punitive damages would be an equitable issue.
       Thus, the punitive damages award is affirmed.

       **IT IS SO ORDERED.**