1  Mark A. Finkelstein (SBN 173851)
   mfinkelstein@umbergzipser.com
2  Ellen S. Kim (SBN 329348)
   ekim@umbergzipser.com
3  UMBERG ZIPSER LLP
   1920 Main Street, Suite 750
4  Irvine, CA  92614
   Telephone: (949) 679-0052
5

6

7

8  Attorneys for Plaintiff and Counter-
   Defendant MGA Entertainment, Inc., and
9  Counter-Defendant Isaac Larian

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No. 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  MGA ENTERTAINMENT, INC., a
    California corporation,

14              Plaintiff,

15  vs.

16  CLIFFORD "T.I." HARRIS, an
    individual; TAMEKA "TINY" HARRIS,
17  an individual; OMG GIRLZ LLC, a
    Delaware limited liability company; and
18  DOES 1 - 10 inclusive,

19              Defendants,

20

21  GRAND HUSTLE, LLC, PRETTY
    HUSTLE, LLC and OMG GIRLZ LLC,

22              Counter-Claimants,

23  vs.

24  MGA ENTERTAINMENT, INC.,
    ISAAC LARIAN and DOES 1 - 10,
25  inclusive,

26              Counter-Defendants.

27

28

Case No. 2:20-cv-11548-JVS-AGR
Assigned to: Hon James V. Selna

**PLAINTIFF AND COUNTER-
DEFENDANTS' OPPOSITION TO
COUNTERCLAIMANTS'
MOTION FOR ENTRY OF
JUDGMENT & REQUEST FOR
PERMANENT INJUNCTION**

Date:      April 14, 2025
Time:      1:30 P.M.
Place:     Courtroom 10C
Judge:     Hon. James V. Selna

Complaint Filed:  Dec. 20, 2020
Trial Date:   Sept. 3, 2024

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 7

II.   BACKGROUND ....................................................................................... 8

    A.   MGA Strived To Create Diverse Dolls.............................................. 8

    B.   Counterclaimants Sought Liability And Disgorgement Only As To Seven Dolls.................................................................................... 8

    C.   The Jury's Verdict And The Court's Equitable Issues Order............ 9

III.  THE COURT SHOULD DENY COUNTERCLAIMANTS' REQUEST FOR A PERMANENT INJUNCTION ......................................................... 9

    A.   Counterclaimants Have Not, And Would Not, Suffer Any Irreparable Harm............................................................................. 11

        1.   MGA Satisfied Its Burden Of Production To Rebut The Presumption Of Irreparable Harm............................................. 11

        2.   Counterclaimants Cannot Meet Their Burden Of Demonstrating Irreparable Harm. ............................................. 13

    B.   The Current Monetary Award Is More Than Sufficient Compensation................................................................................ 15

    C.   The Balance Of Hardships Strongly Favors MGA........................ 17

    D.   A Permanent Injunction Would Disserve The Public Interest. ....... 19

    E.   The Proposed Injunction Is Not Narrowly Tailored. ...................... 20

        1.   The Proposed Injunction Is Overbroad. ................................. 20

        2.   The Proposed Injunction Would Reach Conduct That Was Not Before The Jury As Well As Dolls/Boxes On Which MGA Prevailed.................................................................... 23

IV.   COUNTERCLAIMANTS ARE NOT ENTITLED TO PREJUDGMENT INTEREST ................................................................ 26

    A.   Counterclaimants Waived Prejudgment Interest. ........................... 26

    B.   Prejudgment Interest Is Not Available For A Disgorgement Award............................................................................................ 27

    C.   Even If Available, Prejudgment Interest Should Not be Awarded As A Matter Of Equity.................................................... 28

    D.   Counterclaimants' Proposed Prejudgment Interest Rate Is Excessive..................................................................................... 29

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                              1

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

V.    COUNTERCLAIMANTS' PROPOSED JUDGMENT DOES NOT ACCURATELY REFLECT THE COURT AND JURY'S FINDINGS AND INCLUDES EXTRANEOUS VERBIAGE ................................... 30

VI.    CONCLUSION ......................................................................... 30

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}

2

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
    600 U.S. 412 (2023) ........................................................ 10

*adidas Am., Inc. v. Skechers USA, Inc.*,
    890 F.3d 747 (9th Cir. 2018) ............................................. 13

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
    No. CV13-05167-BRO, 2016 WL 6661178 (C.D. Cal. Jan. 25, 2016) ............ 28

*Aronowitz v. Health-Chem Corp.*,
    513 F.3d 1229 (11th Cir. 2008) .......................................... 21

*Barry v. Raskov*,
    232 Cal. App. 3d 447 (1991) ............................................. 26

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*
    20 F.4th 1231 (9th Cir. 2021) (1991) ................................... 27

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008) ........................................... 18

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ................................ 20

*Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512 (1983) ............ 27, 29

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011) ........................................... 24, 25

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ........................................... 20

*E.I. Du Pont de Nemours and Co. v. Drabek*,
    No. CV 12-10574 DDP, 2013 WL 4033630
    (C.D. Cal. May 3, 2013) ................................................. 16

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) .................................................. 9, 10

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    3

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

*In re Exxon Valdez*, 484 F.3d 1098 (9th Cir. 2007) ................................................. 26

*F.D.I.C. v. UMIC, Inc.*, 136 F.3d 1375 (10th Cir. 1998) ....................................... 28

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*,
  No. CV 18-462 (MN), 2020 WL 1443215 (D. Del. Mar. 24, 2020) ................. 21

*Golden State Transit Corp. v. City of Los Angeles*,
  773 F. Supp. 204 (C.D. Cal. 1991) ........................................................ 29

*Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*,
  295 F.3d 1065 (10th Cir. 2002) .......................................................... 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  No. 2:07-CV-00331-PMP, 2013 WL 3777083
  (D. Nev. July 16, 2013) .................................................................. 18

*Hawaii Stevedores, Inc. v. Ogawa*,
  608 F.3d 642 (9th Cir. 2010).............................................................. 11

*Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ................................................. 9, 12, 15

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  No. CV-00-20905 RMW, 2006 WL 2522506
  (N.D. Cal. Aug. 30, 2006).................................................................. 29

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009).............................................................. 19

*Kahala Franchising, LLC v. Real Faith*,
  LLC, No. 2:21-CV-08115, 2022 WL 1605377
  (C.D. Cal. May 20, 2022).............................................................. 12, 13

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014)............................................................. 10

*Lakin v. Watkins Associated Indus.*,
  6 Cal. 4th 644 (1993) ..................................................................... 29

*Nichino Am., Inc. v. Valent U.S.A. LLC*,
  44 F.4th 180 (3d Cir. 2022)............................................................... 11

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    4

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

*Nunley v. City of Los Angeles,*
   52 F.3d 792 (9th Cir. 1995)....................................................................... 13

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,*
   469 U.S. 189 (1985) ................................................................................. 15

*Pom Wonderful LLC v. Pur Beverages LLC,*
   No. CV 13-06917 MMM, 2015 WL 10433693
   (C.D. Cal. Aug. 6, 2015) ...................................................................... 14, 15

*Price v. City of Stockton,*
   390 F.3d 1105 (9th Cir. 2004) .................................................................. 20

*Robbins Rsch. Int'l Inc. v. Doe 1,*
   No. 2:21-cv-06065-CBM-AGRx, 2022 WL 2032314 (C.D. Cal.
   May 23, 2022) ......................................................................................... 29

*S.E.C. v. Olins,*
   762 F. Supp. 2d 1193 (N.D. Cal. 2011) ................................................... 28

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.,*
   625 F. App'x 322 (9th Cir. 2015) ....................................................... 13, 15

*S.E.C. v. Lee,*
   No. CV 14-06865-RGK (EX), 2015 WL 12751703
   (C.D. Cal. Oct. 28, 2015) ........................................................................ 28

*S.E.C. v. Yin Nan Wang,*
   No. LA CV13-07553 JAK (SSx), 2016 WL 11533562
   (C.D. Cal. Oct. 31, 2016) ........................................................................ 30

*Signeo, USA, LLC v. SOL Republic, Inc.,*
   No. 5:11-CV-06370-PSG, 2012 WL 2050412
   (N.D. Cal. June 6, 2012) .......................................................................... 18

*In re Slatkin,*
   525 F.3d 805 (9th Cir. 2008)................................................................... 26

*Softketeers, Inc. v. Regal W. Corp.,*
   No. 8:19-CV-00519-JWH, 2023 WL 2024701
   (C.D. Cal. Feb. 7, 2023) ..................................................................... 26, 28

*Sumner v. San Diego Urb. League, Inc.,*
   681 F.2d 1140 (9th Cir. 1982) ................................................................ 11

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                               5

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011)................................................................. 20

*Traffic School.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011)......................................................... 17, 24

*W. Air Charter, Inc. v. Schembari*,
  No. EDCV 17-420, 2019 WL 6998789 (C.D. Cal. Mar. 7, 2019).................... 27

*Wagner Aeronautical, Inc. v. Dotzenroth*,
  No. 21CV0994 L AGS, 2022 WL 6837701 (S.D. Cal. Oct. 7, 2022).............. 19

*Waldman Pub. Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994)................................................................. 23

*Williams & Cochrane, LLP v. Rosette*,
  631 F. Supp. 3d 884 (S.D. Cal. 2022), *aff'd*, No. 23-55166, 2024
  WL 1651666 (9th Cir. Apr. 17, 2024) ...................................... 11, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................ 19

*Y.Y.G.M. SA v. Redbubble, Inc.*,
  75 F.4th 995 (9th Cir. 2023) ............................................................. 12

## Statutes

15 U.S.C. § 1116 ......................................................................................... 11

28 U.S.C. § 1961 ......................................................................................... 26

California Civil Code § 3288 ................................................................. *passim*

Fed. R. Civ. P. 65 ....................................................................................... 20

Fed. R. Evid. § 301 ..................................................................................... 11

Fed. R. Civ. P. 39 ................................................................................... 9, 27

Umberg Zipser llp
Attorneys At Law
Irvine

{284167.17}                                          6

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

## I.   **INTRODUCTION**

Because Counterclaimants cannot show that they will suffer any irreparable harm in the absence of an injunction, injunctive relief should be denied. Counterclaimants primarily sought monetary relief in this case and—not having suffered *any* actual harm—were awarded equitable disgorgement and punitive damages totaling over $71.4 million.  That compensation is already exorbitantly high.  In any event, MGA has stopped manufacturing or selling the 15 L.O.L. Surprise! O.M.G. dolls nationwide that the jury found to infringe on either Counterclaimants' trade dress or the OMG Girlz's likeness, despite the fact that the parties *are not* competitors and Counterclaimants *do not* sell any dolls.

To the extent the Court is nevertheless inclined to grant some injunctive relief—which it should not—Counterclaimants' proposed permanent injunction (the "Proposed Injunction") is wildly overbroad and, if imposed, would prohibit MGA from engaging in protected First Amendment activity that Counterclaimants did not challenge in the litigation, as well as activity that the Court and the jury specifically found was *not* infringing.

Counterclaimants' separate request for prejudgment interest should be rejected out of hand because it has been waived.  Moreover, prejudgment interest is not even available for a disgorgement award under California law.  But even if prejudgment interest were available here—which it is not—the Court should exercise its discretion to deny Counterclaimants' request.

MGA respectfully requests that the Court deny Counterclaimants' motion and instead enter judgment consistent with the Court's summary judgment ruling, the jury's findings on liability, and the Court's Order Regarding Post-Trial Equitable Issues (the "Equitable Issues Order"), as reflected in the Proposed Final Judgment submitted herewith by MGA (without waiving its rights to challenge those rulings and findings in post-judgment motions and/or on appeal).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    7

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

## II.    BACKGROUND

### A.    MGA Strived To Create Diverse Dolls.

MGA is a family-owned toy company founded by its CEO, Isaac Larian. Trial Transcript ("TT") 9/19/24 AM at 97:12-13.  In 2019, MGA released a line of fashion dolls called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls, which used a texting acronym theme and employed a mystery, "unboxing" concept.  *See* TT 9/13/24 AM at 23:3-6, 25:2-26:1; TT 9/13/24 PM at 60:24-61:10.

MGA produces a diverse line of dolls and "sell[s] to every girl, every nationality, every color."  TT 9/19/24 AM at 125:16-25.  Thus, MGA's designers ensure that the dolls reflected a wide range of diversity.  *See, e.g.*, TT 9/11/24 AM at 51:7-11 (Ms. Consorti testified: "[W]e make sure to represent different hair colors, hair textures, skin tones, different styles, different color stories.").

### B.    Counterclaimants Sought Liability And Disgorgement Only As To Seven Dolls.

Counterclaimants initially argued that over 70 dolls in the L.O.L. Surprise! O.M.G. line infringed on their asserted trade dress and/or misappropriated the likeness of the OMG Girlz.  The Court disagreed and granted summary judgment in favor of MGA on 42 of the dolls, leaving 32 dolls at issue for trial.  *See* Dkt. 326.

Despite having sought disgorgement in the previous trials as to each of the remaining 32 dolls, in the third trial, Counterclaimants adopted a new strategy.  For the first time during their opening statement, Counterclaimants informed the jury, the Court, and MGA that Counterclaimants would be "focus[ing] on about seven to nine dolls" that are "most closely associated with very specific public events and with certain outfits."  *See* TT 9/3/24 PM at 51:7–12.

Eventually, Counterclaimants expressly disclaimed liability and disgorgement on all but seven dolls: Chillax, Roller Chick, Bhad Gurl, Metal Chick, Miss Divine, Runway Diva, and Prism.  *See* TT 9/18/24 AM at 7:21-22 ("We are only seeking liability on seven dolls."); *id.* at 10:19-22 (Counterclaimants

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    8

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

confirming that they have "abandoned the claims as to 32.").

**C.** **The Jury's Verdict And The Court's Equitable Issues Order.**

At the conclusion of the third jury trial, the jury found that the seven dolls infringed on Counterclaimants' trade dress and misappropriated the OMG Girlz's likeness. *See* Dkt. 1009 (Verdict Form). With respect to MGA's claim for declaratory relief, the jury found that six additional dolls infringed on the same: Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, and City Babe. *Id.* Separately, the jury found that one doll (Shadow) infringed on Counterclaimants' trade dress only, and another doll (Miss Glam) misappropriated the OMG Girlz's likeness only. *Id.* The jury found in favor of MGA on the remaining 17 dolls. Thus, between summary judgment and the trial, MGA prevailed on 59 of the 74 dolls at issue.

The jury returned an advisory disgorgement award on the seven dolls of $17,872,253 on each of Counterclaimants' claims, as well as a punitive damages award of $53,616,759 on the misappropriation claim. *Id.*; Dkt. 1011.

On February 3, 2025, the Court issued its Equitable Issues Order. The Court declined to award any monetary relief on Counterclaimants' trade dress claim; awarded $17,872,252 in disgorgement for the common law misappropriation claim; and affirmed the jury's punitive damages award of $53,616,759, finding that it was binding under Rule 39(c)(2). Dkt. 1090 at 1. In its findings, and relevant to the pending motion, the Court ruled that "MGA did not act willfully." *Id*. at 23.

**III.    THE COURT SHOULD DENY COUNTERCLAIMANTS' REQUEST FOR A PERMANENT INJUNCTION**

An injunction is not automatic upon a finding of infringement. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-93 (2006)). Instead, a plaintiff seeking a permanent injunction must first satisfy four factors: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                9

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1  monetary damages, are inadequate to compensate for that injury; (3) that,

2  considering the balance of hardships between the plaintiff and defendant, a remedy

3  in equity is warranted; and (4) that the public interest would not be disserved by a

4  permanent injunction.  *eBay*, 547 U.S. at 391.

5         The Ninth Circuit has emphasized that, while "the decision to grant or deny

6  permanent injunctive relief is an act of equitable discretion by the district court,"

7  the "'traditional principles of equity' demand a fair weighing of the factors listed

8  above, taking into account the unique circumstances of each case." *La Quinta*

9  *Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014)

10  (quoting *eBay*, 547 U.S. at 391).  Thus, "[i]t is important to consider the totality of

11  circumstances bearing on whether a permanent injunction is appropriate equitable

12  relief."  *Id.*

13         Counterclaimants' Proposed Injunction seeks to (1) permanently enjoin MGA

14  "from manufacturing, distributing, and selling the 15 infringing L.O.L. Surprise!

15  O.M.G. fashion dolls as well as any other doll that is no more than colorably

16  different from any of the 15 infringing L.O.L. Surprise! O.M.G. dolls," and (2)

17  order MGA "to remove or have removed from the market (including social media

18  and entertainment platforms) any packaging, advertisements, and/or products

19  featuring any of the 15 infringing L.O.L. Surprise! O.M.G. fashion dolls."  Dkt.

20  1104-3 at 2.[1]  As explained below, Counterclaimants fail to satisfy any of the four

21  *eBay* factors.

22

23

24

---

25  [1] Counterclaimants are silent as to the geographic scope of the Proposed Injunction,
but it would necessarily be limited to the U.S.  *See Abitron Austria GmbH v.*

26  *Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023) ("In sum, we hold that § 1114(1)(a)

27  and § 1125(a)(1) are not extraterritorial . . . .").  Further, there was no claim against
MGA, or evidence regarding, sales or other activities abroad.

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                    10

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

**A.** **Counterclaimants Have Not, And Would Not, Suffer Any Irreparable Harm.**

In 2020, the Lanham Act was amended to create "a rebuttable presumption of irreparable harm" when a permanent injunction is sought to remedy an established trademark violation. 15 U.S.C. § 1116(a). This presumption, however, merely requires a defendant to meet an initial burden of ***production***, and does not disturb the burden of ***persuasion***, which remains at all times with plaintiff, as confirmed by decisions that post-date the 2020 amendment. *See Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185 (3d Cir. 2022); *Williams & Cochrane, LLP v. Rosette*, 631 F. Supp. 3d 884, 914 (S.D. Cal. 2022), *aff'd*, No. 23-55166, 2024 WL 1651666 (9th Cir. Apr. 17, 2024).

While the Ninth Circuit has yet to address the Lanham Act's amended language as it relates to the parties' respective burdens, it has ruled that, even where there is a statutory presumption, the burden of persuasion remains on the plaintiff. *See, e.g., Hawaii Stevedores, Inc. v. Ogawa*, 608 F.3d 642, 650 (9th Cir. 2010) (despite statutory presumption in workers' compensation context, "burden of persuasion remains on the disability claimant throughout the administrative process"); *Sumner v. San Diego Urb. League, Inc.*, 681 F.2d 1140, 1142 (9th Cir. 1982) (despite statutory presumption in employment discrimination context, "defendant does not take on a burden of persuasion"). *See also* Fed. R. Evid. § 301.

Once a defendant makes a "slight evidentiary showing" that any consumer confusion is unlikely to cause irreparable harm, "the presumption has no further effect"; "[i]t has done its work and simply disappears like a bursting bubble." *Nichino Am.*, 44 F.4th at 186. "So the burden of production returns to the plaintiff to point to evidence that irreparable harm is likely absent an injunction." *Id.*

    1.   MGA Satisfied Its Burden Of Production To Rebut The Presumption Of Irreparable Harm.

A showing that rebuts the presumption of irreparable harm "might consist of

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}    11

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

a demonstration that the plaintiff delayed in seeking the preliminary injunction, that the alleged injuries are purely pecuniary, *or* that the non-movant has ceased or will soon cease the infringing activities." *Kahala Franchising, LLC v. Real Faith*, LLC, No. 2:21-CV-08115, 2022 WL 1605377, at *4 (C.D. Cal. May 20, 2022) (emphasis added).  MGA easily satisfies its burden of production to rebut the presumption of irreparable harm here.

First, this lawsuit has been pending for over four years.  Counterclaimants never sought an injunction until now, even though they claim their trade dress "has been in continuous use for the last 13 years." Dkt. 1104 at 3:11-13.  This lengthy delay undercuts any claim of irreparable harm.  *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1006 (9th Cir. 2023) ("[D]elay in seeking a preliminary injunction may also undermine a permanent injunction.").

Second, MGA has already ceased all manufacturing and sales nationwide of the 15 dolls that the jury found infringe.  Meirovitch Decl. ¶¶ 2-3; Lee Decl. ¶¶ 3-4.  And MGA is no longer creating new advertisements or online content with any of the 15 dolls.  Meirovitch Decl. ¶ 3; Parducci Decl. ¶ 4.  Further, while Counterclaimants never sought to litigate the animated characters based on MGA's L.O.L. Surprise! O.M.G. dolls, which animated characters are separate original works, MGA has stopped producing new content that features the animated characters associated with the 15 dolls.  Parducci Decl. ¶ 3.

Third, there is no evidence that MGA's dolls have adversely affected Counterclaimants' reputation or goodwill.  *See Herb Reed*, 736 F.3d at 1249 ("[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action.").  Counterclaimants relied on anonymous online comments to their social media posts as evidence of confusion, but none of these posts indicated that the dolls somehow reflected negatively on the OMG

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    12

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

Girlz.[2]  *See, e.g.*, TT 9/4/24 AM at 78:23-84:6.  Nor did any of the four consumer witnesses testify to that effect.  To the contrary, Ms. Campbell admitted that she continued to buy MGA's dolls even after she began questioning whether they were related to the OMG Girlz.  *See* Dkt. 935-1, M. Campbell Dep. at 138:6-18.

Because MGA has made significantly more than a "slight evidentiary showing," the presumption disappears, and the burden of production and persuasion falls on Counterclaimants.  *See Williams & Cochrane*, 631 F. Supp. 3d at 914 ("Under the so-called 'bursting bubble' approach to presumptions, a presumption disappears where rebuttal evidence is presented.") (quoting *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995)).

   2. <u>Counterclaimants Cannot Meet Their Burden Of Demonstrating Irreparable Harm</u>.

Without the rebuttable presumption, Counterclaimants fail to "put forth specific evidence from which the court can infer irreparable harm."  *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760 (9th Cir. 2018).  Counterclaimants argue that they were irreparably harmed because some consumers were confused.  But likelihood of confusion, in and of itself, does not constitute irreparable harm warranting an injunction.  *See San Miguel Pure Foods Co. v. Ramar Int'l Corp.,* 625 F. App'x 322, 327 (9th Cir. 2015) ("[T]o establish irreparable injury, a trademark owner must do more than merely demonstrate that a trademark has been infringed or that consumers have been confused."); *Kahala Franchising*, 2022 WL 1605377, at *4 ("[W]hile there may be confusion in the minds of the public . . . , [plaintiff] nevertheless fails to show how this confusion is causing it ***any actual or potential harm***.") (emphasis added).  In fact, the cited

---

[2] MGA disagrees that such online comments were admissible.  To the extent there were any negative comments regarding Counterclaimants, those were in response to Counterclaimants' claim that MGA's dolls were based on the OMG Girlz.  *See, e.g.*, TT 9/4/24 PM at 15:11-16:5.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17} 13

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

consumer witness testimony does not indicate that Counterclaimants suffered harm. *See* TT 9/10/24 AM at 34:14-35:12 (Ms. Alexander's daughter asked for the dolls); Dkt. 935-1, M. Wagner at 24:2-9, 55:1-17 (Ms. Wagner and her relatives were fans of the OMG Girlz); Dkt. 935-2, M. Campbell Dep. at 19:1-19 (Ms. Campbell purchased dolls for her nieces); Tr. Ex. 351-CF (Ms. Alexander commented on Counterclaimants' social media post that she "thought these dolls were them").

MGA's dolls certainly had no adverse impact on Counterclaimants' careers. Counterclaimants continued to work in the entertainment space, without disruption. For example, Ms. Harris testified that her fan base has grown over the years, and that "people were still streaming and listening to [the OMG Girlz's] music and [the OMG Girlz] go viral on TikTok all the time." TT 9/4/24 AM at 39:8-9. Ms. Pullins testified that the OMG Girlz recently released new music with plans for additional projects, to the excitement of their fans. TT 9/12/24 AM at 95:2-20. And Mr. Harris continues to make music and movies. TT 9/6/24 PM at 60:16-17, 68:12-18.

Similarly, Counterclaimants cannot establish irreparable harm by arguing, without evidence, that the infringement "undermines the OMG Girlz'[s] efforts to control their reputation, brand narrative, and market positioning." Dkt. 1104 at 9:14-16. "The plaintiff lacks control over the quality of a third party's product in every trademark infringement case. As a result, the mere possibility that plaintiff's product will be associated with defendant's product and that product may be of lesser quality, standing alone, is insufficient to show a *likelihood* that plaintiff's reputation and goodwill will be irreparably harmed." *Pom Wonderful LLC v. Pur Beverages LLC*, No. CV 13-06917 MMM (CWx), 2015 WL 10433693, at *18 (C.D. Cal. Aug. 6, 2015) (emphasis in original).

Counterclaimants list various "irreparable harms" that are purely speculative. They claim, without citing evidence, that the infringement may divert potential revenue; affect their ability to enter into future merchandising agreements or brand

Umberg Zipser llp
Attorneys At Law
Irvine

{284167.17}    14

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

partnerships; or damage the OMG Girlz's reputation and brand perception "as consumers may associate any negative experiences with MGA's products with the OMG Girlz themselves." Dkt. 1104 at 9-10.  The Ninth Circuit has expressly cautioned against granting injunctive relief "grounded in [such] platitudes rather than evidence." *Herb Reed*, 736 F.3d at 1250 (reversing district court where analysis of irreparable harm was "cursory and conclusory"); *see Pom Wonderful*, 2015 WL 10433693, at *5 ("Speculative injury does not constitute irreparable injury . . . .").

Significantly, MGA and Counterclaimants are not competitors.  *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act . . . protect[s] the ability of consumers to distinguish ***among competing producers***.") (emphasis added).  Counterclaimants do not produce toys, let alone fashion dolls.  Rather, trial evidence showed that Counterclaimants abandoned efforts to create dolls based on the OMG Girlz back in 2012.  TT 9/4/24 AM at 50:1-23.  And there was no evidence that anyone who bought MGA's dolls would have otherwise spent money on the OMG Girlz.

Because Counterclaimants have failed to carry their burden of demonstrating that they would suffer any irreparable harm, and "that showing is necessary to obtain a permanent injunction," their Proposed Injunction should be denied.  *See San Miguel Pure Foods*, 625 F. App'x at 327 (vacating permanent injunction where, among other things, evidence of actual confusion did not indicate that infringer's use of the mark had damaged goodwill or caused the trademark holder to lose control over its business reputation).

## B.    The Current Monetary Award Is More Than Sufficient Compensation.

To the extent the Court considers the remaining *eBay* factors, the Court should find that Counterclaimants have an adequate remedy at law for any purported harm.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                    15

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

Counterclaimants argue that the combined disgorgement and punitive award, totaling over $71.4 million, is inadequate where "the defendant's conduct is willful and egregious, shows no interest or willingness to cease its illegal activities, and where the Court has awarded no monetary compensation for the defendant's willful infringement." Dkt. 1104 at 10:5-8.  But the main case Counterclaimants cite to support this proposition was a default judgment case that merely found an injunction appropriate where "there is no indication that Defendant has or will terminate its infringing activities." *E.I. Du Pont de Nemours and Co. v. Drabek*, No. CV 12-10574 DDP (AJWx), 2013 WL 4033630, at *6 (C.D. Cal. May 3, 2013).

Moreover, the Court expressly found in its Equitable Issues Order that ***MGA did <u>not</u> act willfully***.  Dkt. 1090 at 8, 23.  And the fact that a prior jury in this case concluded that MGA was ***not*** infringing either Counterclaimants' trade dress or likeness, Dkt. 771, refutes the accusation that MGA "doubled down" by "continuing to use the OMG Girlz'[s] brand and likeness to sell additional products." Dkt. 1104 at 10.

Far from displaying "no willingness to cease its illegal activities," MGA voluntarily worked to cease any potentially infringing activity, long before Counterclaimants filed this motion.  Shortly after the verdict was returned in September 2024, MGA stopped its direct sales of the 15 dolls that the jury found to infringe.  *See* Meirovitch Decl. ¶ 2.  And MGA has now stopped manufacturing or selling ***any*** of the 15 dolls nationwide.  *Id.* ¶ 3; Lee Decl. ¶¶ 3-4.  Additionally, there have not been any new advertisements or content including those dolls or the animated characters associated with them, and MGA has no intention to sell, advertise, or create content with those dolls in the U.S. in the future, pending appeal.  *See* Meirovitch Decl. ¶ 3; Parducci Decl. ¶¶ 2-4.

Counterclaimants suggest they are entitled to an injunction because the

Umberg Zipser llp
Attorneys At Law
Irvine

{284167.17}

16

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

monetary award was insufficient.[3]  But their argument that they are "receiving no other relief for . . . Lanham Act violations" is disingenuous.  Dkt. 1104 at 11:4.  As Counterclaimants acknowledge, the Court found against disgorgement under the Lanham Act "[p]artly to avoid double recovery."  Dkt. 1104 at 2:3.  *See also* Dkt. 1061 at 21 ("The OMG Girlz recognize that they ultimately cannot recover disgorgement damages twice for the same wrong.").

Counterclaimants have an adequate remedy at law, which provides a second, independent, basis to deny their requested injunction.

## C.    **The Balance Of Hardships Strongly Favors MGA**.

Contrary to Counterclaimants' unfounded claim that "MGA cannot demonstrate any hardship," MGA will suffer tremendous hardship if the Court grants the requested Proposed Injunction.

The Proposed Injunction would severely curtail MGA's ability to exploit non-infringing L.O.L. Surprise! O.M.G. dolls and other toys and intellectual property not subject to this lawsuit, as well as interfere with MGA's relationships with third parties.  Indeed, while the language of the Proposed Injunction is unclear, Counterclaimants' brief suggests that it seeks to force MGA and its partners to remove from the Internet any expressive media content that includes any animated character associated with an infringing doll—even though the videos are ensembles and primarily focus on characters based on ***non-infringing*** dolls.[4]  This is improper.  Indeed, those videos—which were never found to be infringing—are entitled to First Amendment protection.  *See Traffic School.com, Inc. v. Edriver Inc.*, 653 F.3d

---

[3] This is despite the fact that the disgorgement award includes over $8 million of fixed overhead and assumes that every penny of MGA's profits was attributable to the infringement found by the jury.  *See* Dkt. 1090 at 16-18.  Moreover, Counterclaimants abandoned claims for disgorgement for all but seven dolls.  TT 9/18/24 AM at 8:22-24.

[4] The scope of the Proposed Injunction is further vague as these videos are not "packaging, advertisements, and/or products," and do not feature physical dolls.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    17

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1  820, 830-31 (9th Cir. 2011) (finding that a permanent injunction that prohibited

2  content that is "commingled with truthful commercial speech" raised First

3  Amendment concerns, and instructing the district court to explain "the continuing

4  justification for burdening the website's protected content . . . .").

5      Further, as explained *infra* Section III.E, forcing MGA to comply with an

6  overbroad injunction by revising current doll designs or removing dolls in

7  production because Counterclaimants could argue they are "no more than colorably

8  different" to the 15 dolls would disrupt MGA's business and lawful activity.  In

9  fact, and as explained below, the Proposed Injunction seeks to prohibit MGA from

10  selling dolls on which it prevailed at summary judgment and at trial.

11      Finally, Counterclaimants' request that the injunction go into effect

12  immediately would make compliance impossible and would extremely disrupt

13  MGA's business, including obligations and relationships that MGA has with third

14  parties.  *See* Parducci Decl. ¶ 5.  Courts have held that such disruptions weigh

15  against immediate enforcement.  *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543

16  F.3d 683, 687, 701–02, 704 (Fed. Cir. 2008) (affirming a 20-month sunset provision

17  in a permanent injunction to "balance[] the policy of protecting the patentee's rights

18  against the desirability of avoiding immediate market disruptions"); *Halo Elecs.,*

19  *Inc. v. Pulse Elecs., Inc.*, No. 2:07-CV-00331-PMP, 2013 WL 3777083, at *2 (D.

20  Nev. July 16, 2013) (granting 90-day stay of injunction).

21      By contrast, Counterclaimants cannot demonstrate any hardship at all if the

22  injunction were denied, especially given that MGA is no longer manufacturing the

23  15 dolls, selling them nationwide, or producing new content and advertising

24  featuring them.  Once again, Counterclaimants make vague, generic references to

25  "loss of control over their brand and image, and confusion among their fan base,"

26  but cannot identify any ***irreparable*** harm.  *See Signeo, USA, LLC v. SOL Republic,*

27  *Inc.*, No. 5:11-CV-06370-PSG, 2012 WL 2050412, at *10-11 (N.D. Cal. June 6,

28  2012) (balance of hardships favored defendant where hardship to plaintiff was

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                    18

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1   "based purely on speculation," and proposed injunction was "particularly harsh,"

2   affecting not only defendant "but also the retail consumer market[] and its

3   distributors").

4         Accordingly, the balance of hardships tips sharply in MGA's favor.

5        **D.**    <u>**A Permanent Injunction Would Disserve The Public Interest**</u>.

6         "In exercising their sound discretion, courts of equity should pay particular

7   regard for the public consequences in employing the extraordinary remedy of

8   injunction." *Wagner Aeronautical, Inc. v. Dotzenroth*, No. 21CV0994 L AGS,

9   2022 WL 6837701, at *10 (S.D. Cal. Oct. 7, 2022) (quoting *Winter v. Nat. Res. Def.*

10  *Council, Inc.*, 555 U.S. 7, 24 (2008)).  While, generally, the public interest concern

11  in trademark cases is avoiding confusion to consumers, *Internet Specialties W., Inc.*

12  *v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009), the public

13  also has an interest in robust marketplace of goods, including toys that represent the

14  diversity of the public.  At trial, MGA's witnesses credibly testified that the popular

15  L.O.L. Surprise! O.M.G. line appealed to a wide range of children with diverse

16  backgrounds who purchased the dolls for reasons completely unrelated to the OMG

17  Girlz or Counterclaimants. *See, e.g.*, TT 9/11/24 AM at 51:7-11; TT 9/13/14 AM at

18  41:3-6, 46:4-25, 47:17-48:22.

19        Given the very minimal extent of consumer confusion in this case—which

20  was based exclusively on cherry-picked claims from OMG Girlz's friends, family,

21  and fans—a sweeping injunction would disserve the public.  Indeed, each of

22  Counterclaimants' four consumer witnesses who testified were active fans of

23  Counterclaimants and/or the OMG Girlz.

24        On the other hand, MGA's scientific likelihood of confusion survey, which

25  had more than 1500 participants, resulted in ***zero percent*** confusion—*i.e.*, not a

26  single participant associated the dolls with the OMG Girlz.  TT 9/18/24 AM at

27  131:1-7.  And MGA's scientific likeness survey, which had almost 1300

28  participants, had similar results.  TT 9/18/24 PM at 17:20-18:9.  ***Zero*** people

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}           19

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1  identified any of the dolls in the survey as looking like any of the OMG Girlz. *Id.*

2  at 13:3-14:2.

3      Accordingly, the Court should find that the public interest would be disserved

4  by an injunction.

5      **E.    <u>The Proposed Injunction Is Not Narrowly Tailored.</u>**

6      Even assuming, *arguendo*, that Counterclaimants could satisfy the four *eBay*

7  requirements (they cannot), the Proposed Injunction is improper.  It is well-

8  established that injunctive relief should be "tailored to eliminate only the specific

9  harm alleged," *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th

10 Cir. 1992), and be "no more burdensome to the defendant than necessary to provide

11 complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

12 In other words, an injunction "must be narrowly tailored . . . to remedy only the

13 specific harms shown by the plaintiff[ ], rather than to enjoin all possible breaches

14 of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal

15 quotation marks omitted).

16          1.    <u>The Proposed Injunction Is Overbroad.</u>

17      To enter an injunction, the Court must "state its terms specifically," and

18 "describe in reasonable detail . . . the act or acts restrained or required." Fed. R.

19 Civ. P. 65(d)(1)(B)-(C).  Here, the Proposed Injunction not only seeks to

20 permanently enjoin MGA from manufacturing, distributing, and selling the 15 dolls

21 that the jury found to infringe, but also "any other doll that is ***no more than***

22 ***colorably different***" from those dolls.  Dkt. 1104-3 at 2 (emphasis added).

23      The term "no more than colorably different" provides scant guidance

24 regarding what would be lawful or unlawful here.[5]  Counterclaimants, for their part,

25 ─────────────────

26 [5] Counterclaimants' proposed "colorably different" language appears to be modeled
   after injunctions in the patent infringement context and should not apply here.  *See*

27 *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) ("We have
   previously interpreted that inquiry in patent cases as one of colorable differences

28 between the newly accused product and the adjudged infringing product.").

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                    20

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

interpret their requested injunction as seeking to enjoin the future manufacture or sale of dolls that are "similar" to the dolls that the jury found infringing.  Dkt. 1104 at 16:6-9.  But whether one doll is "similar" to another doll is entirely subjective.

In fact, as the creator of the L.O.L. Surprise! dolls, Ms. Consorti, explained, every L.O.L. Surprise! O.M.G. doll shares the exact same sculpt.  TT 9/17/24 AM at 29:13; TT 9/17/24 PM at 38:2-5.  Any distinction between the dolls is thus based predominantly on their colors (of their hair, skin, eyes, etc.) and fashion.  Adopting Counterclaimants' proposed language would create confusion and uncertainty.

The Proposed Injunction might even be interpreted as enjoining MGA from selling dolls that the Court dismissed at summary judgment, or dolls that the jury specifically found ***not to*** infringe.  *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008) (finding that boilerplate language in requested permanent injunction, barring trademark infringer from using "any other marks similar to Defendant's trademark," was overly broad); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. CV 18-462 (MN), 2020 WL 1443215, at *9 (D. Del. Mar. 24, 2020) (finding that permanent injunction was "overly broad" where plaintiff's trade dress "requires a blue outsole" but plaintiff requested that the court enjoin trade dress infringement "based on certain activities relating to the accused shoes regardless of outsole color").

For example, Miss Glam and Sweets share many similar characteristics, including curly updos, blue eyes, dark skin tones, and a combination of a jacket and frilly skirt.  But only Miss Glam was found to infringe on the OMG Girlz's likeness.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}

21

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1
2
3
4
5
6
7
8
9

 

10  **"Miss Glam"**                          **"Sweets"**
11  **(Jury found infringing on likeness)**   **(Jury found non-infringing)**

12  Dkt. 1009 at 10, 13.

13      Similarly, both City Babe and Alt Grrrl have long, straight hair streaked with

14  color and feature medium skin tones.  Both also wear layered outfits, featuring a

15  dress/skirt, jacket, large earrings, and boots with socks.  But only City Babe was

16  found to infringe.

17
18
19                       
20
21
22

23      **"City Babe"**                       **"Alt Grrrl"**
24  **(Jury found infringing on trade dress**  **(Dismissed at summary judgment)**
    **and likeness)**

25  Dkt. 1009 at 14; Dkt. 326 at 23, 30.

26      As these examples demonstrate, determining which current and future dolls

27  Counterclaimants' Proposed Injunction applies to would be an impossible and

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                          22

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1   unreasonable task.

2           2.      The Proposed Injunction Would Reach Conduct That Was Not

3                   Before The Jury As Well As Dolls/Boxes On Which MGA

4                   Prevailed.

5           Because "[i]njunctive relief should be narrowly tailored to fit specific legal

6   violations," an injunction "should not impose unnecessary burdens on lawful

7   activity." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)

8   (internal citations omitted).  In addition to the inexorably vague "colorably

9   different" language, the Proposed Injunction would force MGA to "remove or have

10  removed from the market (including social media and entertainment platforms) any

11  packaging, advertisements, and/or products featuring any of the 15 infringing

12  L.O.L. Surprise! O.M.G. fashion dolls."  Dkt. 1104-3 at 2.

13          This language could broadly be read to force MGA to remove from social

14  media and entertainment channels illustrations of the 15 dolls, as well as animated

15  characters associated with the 15 dolls.  But there was ***absolutely no evidence*** that

16  consumers were confused by such illustrations and animated characters, or that

17  those animated characters (which have unique voices, personalities, manner of

18  dialogue, and set of physical mannerisms, and are all part of an original narrative,

19  *see* Parducci Decl. ¶ 5) share the OMG Girlz's likeness.  Indeed, those questions

20  were never asked of the jury, as the jury found only that the 15 ***physical dolls***

21  ***themselves***, when viewed in connection with the "O.M.G." packaging, infringed

22  Counterclaimants' rights.  Dkt. 1009 at 2 ("In the chart on the following pages,

23  there is a list of the seven L.O.L. Surprise! O.M.G. ***dolls*** that the OMG Girlz allege

24  infringe their trade dress and/or misappropriate their name, identity, or likeness.

25  Each row includes the name of the doll, a picture of the box(es) it is sold in, and the

26  accompanying exhibit numbers") (emphasis added).

27          The Proposed Injunction is thus overbroad because it attempts to reach

28  conduct that was never before the Court and—as explained above—conduct that is

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    23

                                        CASE NO. 2:20-CV-11548-JVS-AGR
                                        MGA'S OPP. TO MOTION FOR JUDGMENT

1  protected by the First Amendment. *See City of New York v. Mickalis Pawn Shop,*

2  *LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks

3  to restrain the defendants from engaging in legal conduct, or from engaging in

4  illegal conduct that was not fairly the subject of litigation."); *Traffic School.com,*

5  653 F.3d at 830.

6      Further, the Proposed Injunction seeks to enjoin MGA from continuing to sell

7  certain dolls in their packaging, even where this Court or the jury found the

8  doll/packaging ***does not infringe*** on Counterclaimants' claimed trade dress or

9  likeness. For instance, the jury ruled that MGA's Ferocious doll, including its

10  packaging, was ***non-infringing***. Dkt. 1009 at 7. But because the packaging

11  "features" two of the infringing dolls on the back, the Proposed Injunction would

12  prevent MGA from continuing to sell Ferocious:

 

**(Front)**                                    **(Back)**

Finkelstein Decl. ¶ 2.

    Similarly, at summary judgment, this Court ruled that MGA's Lonestar doll,

including its packaging, was ***non-infringing***. Dkt. 326 at 23, 30. But, again, that

packaging "features" one of the infringing dolls (Honeylicious) on the back:

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                24

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

     

**(Front)**                                    **(Back)**

Finkelstein Decl. ¶ 2.

It is entirely improper for Counterclaimants to seek to enjoin the selling of dolls in their boxes when ***MGA prevailed*** as to those dolls/boxes in its declaratory judgment claim.[6] *See Mickalis Pawn Shop*, 645 F.3d at 145.

Given that MGA is no longer manufacturing or selling nationwide the 15 specific dolls that the jury found to be infringing, and given that no new content, advertisement, or products featuring those dolls are being or will be made, the Proposed Injunction goes far beyond what is necessary to address Counterclaimants' purported concern regarding consumer confusion. It should be rejected.[7]

---

[6] Counterclaimants cannot argue that the boxes themselves were not at issue, after insisting that the boxes—which were trial exhibits—be included in the verdict form (over MGA's objections). *See, e.g.*, TT 5/26/23 AM at 7:5-14; Dkt. 989.

[7] While MGA opposes ***any*** injunction, if the Court believes one is warranted, it only should enjoin MGA from "selling in the United States the 15 dolls found by the jury to infringe Counterclaimants' rights (Chillax, Roller Chick, Bhad Gurl, Metal Chick, Miss Divine, Runway Diva, Prism, Downtown B.B., Shadow, Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, Miss Glam, and City Babe)."

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{284167.17}                                    25

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

## IV.    **COUNTERCLAIMANTS ARE NOT ENTITLED TO PREJUDGMENT INTEREST**

MGA does not dispute that an award of post-judgment interest is mandatory, 28 U.S.C. § 1961, but Counterclaimants' request for prejudgment interest is unfounded and should be denied.

### A.    **Counterclaimants Waived Prejudgment Interest.**

Counterclaimants acknowledge that state law applies to the applicability of prejudgment interest on state law claims.  Dkt. 1104 at 14 (citing *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007)).  California Civil Code Section 3288 provides that "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, ***in the discretion of the jury***."  (Emphasis added).  Although the "jury" as used in this section may also be the court in a bench trial, see *In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008) (applying California law), the parties here agreed to ***a jury trial on liability***.  Dkt. 924 at 2.  Accordingly, "[t]he award of pre-judgment interest was a matter committed by statute to the discretion of the jury . . . [and] [t]he trial court had no authority to usurp the discretion conferred on the jury."  *Barry v. Raskov*, 232 Cal. App. 3d 447, 457 (1991).  *See Softketeers, Inc. v. Regal W. Corp.*, No. 8:19-CV-00519-JWH (JDEx), 2023 WL 2024701, at *4 (C.D. Cal. Feb. 7, 2023) ("Indeed, the Court is aware of no authority that permits the Court and the jury to split the workload, so to speak, where the jury serves as the trier of fact on questions of liability and damages, and then the Court picks up the baton with respect to prejudgment interest.").

Prejudgment interest is wholly absent from the Final Pretrial Conference Order (Dkt. 924), and Counterclaimants did not raise this issue at trial.  Thus, the jury was never instructed on prejudgment interest, and the verdict form is silent as to prejudgment interest.  *See* Dkts. 1009, 1013.  Further, the parties never stipulated that the Court, rather than the jury, would determine whether Counterclaimants are

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                                    26

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

entitled to prejudgment interest.[8]

Counterclaimants cite *Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512, 525 (1983) for the proposition that the Court has discretion to apply a discretionary prejudgment interest at this post-trial stage. Dkt. 1104 at 14-15. But *Canavin* held that "the trial court should **instruct the jury** to answer a special interrogatory as to the amount awarded for past economic loss and then, ***in their discretion***, award prejudgment interest on that amount." 148 Cal. App. 3d at 528 (emphases added). Because the jury was not asked to render a finding as to whether prejudgment interest is appropriate here, the Court has no power to award prejudgment interest now. *See W. Air Charter, Inc. v. Schembari*, No. EDCV 17-420 JGB (KSx), 2019 WL 6998789, at *4 (C.D. Cal. Mar. 7, 2019) ("This Court can find no authority for the proposition that a court may award prejudgment interest under § 3288 after a jury verdict was returned without such an award.").

By failing to ask the jury to consider the entitlement to prejudgment interest, Counterclaimants have waived any claim to prejudgment interest.

## B.    Prejudgment Interest Is Not Available For A Disgorgement Award.

Not only have Counterclaimants waived prejudgment interest, it is simply not available here. Counterclaimants' recovery was based solely on disgorgement of MGA's profits, an amount that Counterclaimants never lost. Indeed, MGA is aware of no authority (and Counterclaimants identify none) that Section 3288 applies to a disgorgement award.[9]

---

[8] Having successfully argued Federal Rule of Civil Procedure 39(c)(2) applies to punitive damages, Counterclaimants cannot seek a contrary ruling as to prejudgment interest. Indeed, at Counterclaimants' urging and over MGA's repeated objections, this Court ruled that MGA only "specified that 'award of profits' and 'injunctive relief' were equitable issues for the Court." Dkt. 1090 at 19.

[9] The Ninth Circuit in *BladeRoom Grp. Ltd. v. Emerson Elec. Co.* indicated that this question was unsettled. 20 F.4th 1231, 1249 (9th Cir. 2021) (remanding to the

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{284167.17}                    27

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

At least one court in this District concluded that prejudgment interest under Section 3288 could ***not*** be "tacked onto awards of unjust enrichment." *Softketeers*, 2023 WL 2024701, at *5-6 (noting that plaintiff "offer[ed] no authority for the proposition that a claimant is entitled prejudgment interest on an award of unjust enrichment"). The *Softketeers* court explained:

> A claim for unjust enrichment . . . emphasizes the wrongdoer's enrichment, not the victim's loss. It can include remedies such as disgorgement of profits, which would not involve the restoration of anything the claimant previously possessed[.] It would be odd, then, for Softketeers to lay claim to interest as a way to make it "whole," if it never owned the principal—in this instance, Regal's profits.

*Id.* at *6 (internal citations and quotation marks omitted).

Counterclaimants argue that prejudgment interest is routinely applied to disgorgement awards, but none of the cases they cite applied California law. *See F.D.I.C. v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998) (discussing an award of prejudgment interest under federal law); *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV13-05167-BRO (MANx), 2016 WL 6661178, at *3 (C.D. Cal. Jan. 25, 2016) (same); *S.E.C. v. Lee*, No. CV 14-06865-RGK (EX), 2015 WL 12751703, at *7 (C.D. Cal. Oct. 28, 2015) (discussing disgorgement in the context of SEC action); *S.E.C. v. Olins*, 762 F. Supp. 2d 1193, 1198 (N.D. Cal. 2011) (same).

Because prejudgment interest under Section 3288 is only available for actual harm, as opposed to disgorgement, prejudgment interest is unavailable here.

## C.    Even If Available, Prejudgment Interest Should Not be Awarded As A Matter Of Equity.

Even if the Court finds that it has discretion to determine prejudgment interest, none should be awarded. "[T]he policy underlying an award of

---

district to determine in the first instance "whether § 3288 allows prejudgment interest for unjust enrichment damages"). The action thereafter settled without a resolution of this issue.

1    prejudgment interest under § 3288 is to fully compensate the injured party."

2    *Golden State Transit Corp. v. City of Los Angeles*, 773 F. Supp. 204, 213 (C.D. Cal.

3    1991) (citing *Canavin*, 148 Cal. App. 3d at 526).

4    　　　　As explained above, Counterclaimants have been more than fully

5    compensated by the immense monetary award—especially given that the seven

6    dolls had absolutely no impact on Counterclaimants' ability to generate revenue and

7    Counterclaimants suffered no actual harm from MGA's actions.  *See Lakin v.*

8    *Watkins Associated Indus.*, 6 Cal. 4th 644, 663 (1993) (stating that the well-settled

9    purpose of "prejudgment interest in general, is to provide just compensation to the

10    injured party for loss of use of the award during the prejudgment period. . . .").

11    　　　　Accordingly, even if available, prejudgment interest should not be awarded.

12    　　**D.　　Counterclaimants' Proposed Prejudgment Interest Rate Is**

13    　　　　　　**Excessive.**

14    　　　　"The Ninth Circuit has stated that the appropriate rate for prejudgment

15    interest is the Treasury bill ('T-bill') rate 'unless the trial judge finds, on substantial

16    evidence, that the equities of the particular case require a different rate.'"  *Golden*

17    *State Transit*, 773 F. Supp. at 216 (collecting Ninth Circuit cases).  District courts in

18    this Circuit have regularly adopted the T-bill rate for prejudgment interest in

19    infringement cases.  *See Robbins Rsch. Int'l Inc. v. Doe 1*, No. 2:21-cv-06065-

20    CBM-AGRx, 2022 WL 2032314, at *3 (C.D. Cal. May 23, 2022) (awarding

21    prejudgment interest "at a rate equal to the weekly average 1-year constant maturity

22    Treasury yield" in copyright case); *Hynix Semiconductor Inc. v. Rambus Inc.*, No.

23    CV-00-20905 RMW, 2006 WL 2522506, at *2 (N.D. Cal. Aug. 30, 2006)

24    (collecting cases where the "Federal Circuit has upheld district court awards of

25    prejudgment interest in patent infringement cases at T-bill rates").[10]

26    _____

27    [10] Counterclaimants' sole support for using the Prime rate is a nonbinding Tenth Circuit case involving a federal civil rights claim.  *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1077 (10th Cir. 2002).

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                    29

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

Without waiving its argument that prejudgment interest should not be awarded at all, MGA has provided a calculation for prejudgment interest based on a 52-week T-bill rate, accruing January 1, 2021, when profits for any sales MGA made in 2020 would have begun.  *See* Finkelstein Decl., Ex. A; *S.E.C. v. Yin Nan Wang*, No. LA CV13-07553 JAK (SSx), 2016 WL 11533562, at *8 (C.D. Cal. Oct. 31, 2016) (prejudgment interest on disgorgement amount accrues based on when those funds were acquired).

## V.    COUNTERCLAIMANTS' PROPOSED JUDGMENT DOES NOT ACCURATELY REFLECT THE COURT AND JURY'S FINDINGS AND INCLUDES EXTRANEOUS VERBIAGE

In addition to the issues above, the Proposed Judgment submitted by Counterclaimants is simply inaccurate.  It suggests that Counterclaimants prevailed as to all of the dolls at issue, entirely ignoring the fact that MGA prevailed on its declaratory relief claim as to 59 of the 74 dolls.  Dkt. 1104-3 at 2.  The Proposed Judgment also ignores the fact that MGA prevailed on other claims brought by Counterclaimants.  *Id*.; *see* Dkts. 326, 1009.

Further, to the extent Counterclaimants seek post-judgment interest and/or costs, that can be addressed in due course as a matter of law and should not be included in the final judgment.  Similarly, the post-judgment briefing schedule on attorneys' fees should be in a separate document.

## VI.    CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court deny Counterclaimants' Motion and enter MGA's Proposed Final Judgment filed concurrently with this opposition.[11]

---

[11] MGA disagrees with the jury's verdict and the Court's Findings of Fact and Conclusions of law and reserves its right to address these issues in post-judgment motions and/or on appeal.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}    30

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1    Dated: March 24, 2025        UMBERG ZIPSER LLP

2

3

4

                                  Mark A. Finkelstein

5                                   Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and

6                                   Counter-Defendant Isaac Larian

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}                  31

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT

1

## CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2

2     The undersigned, counsel of record for Plaintiff and Counter-Defendant

3 MGA Entertainment, Inc. and Counter-Defendant Isaac Larian, certifies that this

4 brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

5

6

7 Dated: March 24, 2025            UMBERG ZIPSER LLP

8

9

10 _____

11 Mark A. Finkelstein
Attorneys for Plaintiff and Counter-

12 Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{284167.17}          32

CASE NO. 2:20-CV-11548-JVS-AGR
MGA'S OPP. TO MOTION FOR JUDGMENT