UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Motion for Entry of Judgment and Request for Permanent Injunction [1104]

Before the Court are Defendants' and Counterclaimants' Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises" or "OMG Girlz") motion for Entry of Judgment and Request for Permanent Injunction. (Mot., Dkt. No. 1104.) Plaintiffs and Counterdefendants MGA Entertainment, Inc. and Isaac Larian (collectively, "MGA") oppose the motion. (Opp'n, Dkt. No. 1109.) The Harrises replied. (Reply, Dkt. No. 1110.) The Parties appeared for oral argument on April 15, 2025.

For the following reasons, the Court **GRANTS** the Harrises' motion for entry of judgment. The Court **GRANTS** the Harrises' request for post-judgment interest and awards post-judgment interest on the $71,489,012 judgment at a rate of 3.972% from the date of this order until the date of payment, compounded annually. The Court **DENIES** the motion for prejudgment interest. The Court **DENIES** the motion for permanent injunction.

## I. BACKGROUND

### A. The OMG Girlz and MGA Entertainment, Inc.

This case arises from an alleged trade dress infringement and misappropriation of name, likeness, or identity of the OMG Girlz brand by the entertainment and toy company, MGA, over the L.O.L Surprise! O.M.G. dolls line. On December 22, 2020, MGA filed a complaint against the OMG Girlz seeking declaratory judgment whether the L.O.L. Surprise! O.M.G. dolls and associated lines of toy products infringed the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

intellectual property rights of the OMG Girlz' mark.  (See Compl., Dkt. No. 1.)

MGA is a large toy company that designs, develops, and distributes children's toys.  (See Dkt. No. 326 at 2.)  In 2001, MGA released the enormously successful "Bratz" doll.  (Id.)  MGA CEO Isaac Larian ("Larian") credits MGA with having "invented diversity in dolls," starting with the Bratz doll.  (Trial Tr. 9/19/24 AM 97:12–13.)

Tameka "Tiny" Harris is a famous singer-songwriter who formed a teenage female vocal group called the OMG Girlz.  (Trial Tr. 9/4/24 AM 33:1–2.)  The core members of the group are Zonnique Pullins, Breaunna Womack, and Bahja Rodriguez.  (Id.)  The individual members of the OMG Girlz are not parties to the instant action.

In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!.  (Trial Tr. 9/11/24 AM 41:18–42:20.)  The collection was a big success for MGA, quickly becoming a top selling toy in the United States.  (Id.)  In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls.  (Trial Tr. 9/13/24 AM 23:3–6, 25:2–26:1.)

B.   The Lawsuit Commences

On December 8, 2020, the Harris Parties sent a cease-and-desist letter to MGA claiming that MGA had copied the OMG Girlz' signature look and demanding that MGA stop distributing the L.O.L. Surprise! O.M.G. dolls.  (Dkt. No. 13; Trial Tr. 9/4/24 AM 93:21–94:8.)  Immediately thereafter, MGA filed suit against the OMG Girlz in an effort to clarify the rights of the parties.  (Trial Tr. 9/19/24 PM 43:13–44:4.)  On February 22, 2021, the OMG Girlz answered and filed a counterclaim alleging violations of the Lanham Act, statutory and common law misappropriation of name or likeness, and statutory and common law unfair competition claims.  (Dkt. No. 13.)

In July 2022, the Court granted summary judgment in favor of MGA on more than half of the dolls alleged to be infringing—40 dolls in total.  (Order on Motion for Summary Judgment, Dkt. No. 326 at 23, 33.)  Additionally, the Court granted summary judgment in favor of MGA on the statutory misappropriation claim, finding that the OMG Girlz did not have a claim under Cal. Civ. Code § 3344.  (Id.)  Finally, the Court granted summary judgment in favor of MGA on the unfair competition law claims.  (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR          Date   April 15, 2025

Title    MGA Entertainment Inc v. Clifford "T.I." Harris et al.

On May 9, 2023, the remaining claims were tried before a jury.[1] (Dkt. No. 777.) On May 26, 2023, the jury returned a verdict in favor of MGA on both remaining causes of action. (Id.) The jury found that the OMG Girlz had not proven that the L.O.L. Surprise! O.M.G. doll line infringed the OMG Girlz' asserted trade dress or misappropriated the OMG Girlz' name, likeness, or identity. (Id.) The Court additionally found that MGA was entitled to declaratory relief. (Id.) On June 13, 2023, the Court issued its judgment. (Id. at 2.)

However, following the conclusion of that trial, the Supreme Court issued its ruling in Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140 (2023). Following the Jack Daniel's case, this Court held that one of the jury instructions related to the Harrises' trade dress claim was erroneous and granted a new trial on both of the Harrises' claims. (Dkt. No. 860.)

C.    *The September 2024 Trial and Jury Verdicts*

In September 2024, the third trial in this lawsuit began. (Dkt. No. 944; Trial. Tr. 9/3/24 AM.) Prior to trial, the Court ruled that any verdicts on equitable issues were to be regarded as advisory verdicts. (Dkt. No. 924 at 2.) At trial, the Harrises narrowed the scope of their claim and sought disgorgement for seven of the 32 remaining dolls. (See Trial Tr. 9/18/24 AM 7:21–23.)

On September 23, 2024, the jury reached its verdict. (Verdict, Dkt. No. 1010.) With regard to the Lanham Act, the jury found that the Harrises had established by a preponderance of the evidence that MGA infringed on the OMG Girlz' trade dress with respect to all seven dolls: Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runaway Diva. (See id. at 2–4.) The jury found that there was no First Amendment defense and that MGA's trade dress infringement was willful. (Id. at 5.) The jury awarded $17,872,253 as an advisory figure for damages. (Id.)

With respect to common law misappropriation, the jury found that the OMG Girlz had proven by a preponderance of the evidence that the dolls misappropriated the OMG Girlz' name, likeness, or identity. (Id. at 2.) The jury found by clear and convincing

---

[1] The first trial ended in a mistrial. The second trial began in May 2023.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                         Date  April 15, 2025

Title    MGA Entertainment Inc v. Clifford "T.I." Harris et al.

evidence that MGA acted with oppression, fraud, or malice in this misappropriation. (Id. at 6.) The jury awarded $17,872,253 as an advisory figure. (Id.) The jury also awarded punitive damages of $53,616,758. (Punitive Damages Verdict, Dkt. No. 1012, at 1.)

In deciding on MGA's claim for declaratory relief, the jury also concluded that six additional dolls infringed on the OMG Girlz' trade dress and misappropriated their name, likeness, or identity: Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, and City Babe. (Id. at 7–14.) The jury found that one doll, Shadow, infringed on the OMG Girlz' trade dress only, and another doll, Miss Glam, misappropriated the OMG Girlz' name, likeness, or identity. (Id.) The jury determined that the following 13 dolls did not infringe on the OMG Girlz' trade dress or misappropriate their name, image, or likeness: Ferocious, Fame Queen, Uptown Girl, Class Prez, Rocker Boi, Lady Diva, Sweets, Spicy Babe, Miss Royale, B-Gurl, Major Lady, Cosmic Nova, 24K D.J., Snowlicious, Candylicious, Moonlight B.B., and Gamma Babe. (Id.)

    *D.*    *Present Motion for Entry of Judgment and Injunction*

The Harrises now request entry of judgment and seek a permanent injunction to enjoin the manufacturing, sale, or distribution of the 15 dolls found to be infringing and to remove them from the market. The Harrises also request prejudgment and post-judgment interest.

**II.  LEGAL STANDARD**

    *A.*    *Permanent Injunction*

To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). The Court's "decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

In the case of trademark infringement, courts may grant injunctions "to prevent the violation of any right of the registrant of a mark registered in the Patent or Trademark office." 15 U.S.C. § 1116(a). A party seeking injunctive relief "shall be entitled to a rebuttable presumption of irreparable harm upon a finding" of infringement. Id.

    *B.    Entry of Judgment*

Pursuant to Federal Rule of Civil Procedure 58(d), a party may request that judgment be set out in a separate document. Fed. R. Civ. P. 58(d).

### III. DISCUSSION

    *A.    Permanent Injunction*

On September 23, 2024, the jury found that 15 dolls either infringed on the OMG Girlz' trade dress or misappropriated the name, likeness, or identity of the girls. (See generally Verdict, Dkt. No. 1010.) In ruling on the equitable issues, the Court awarded the Harrises $71,489,012.[2] (Order on Equitable Issues, Dkt. No. 1090 at 20.) However, an injunction is not automatically granted following a determination of infringement. See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013).

The Harrises now request a permanent injunction that:

1.    Permanently enjoin[s MGA] from manufacturing, distributing, and selling the 15 infringing L.O.L. Surprise! O.M.G. fashion dolls as well as any other doll that is no more than colorably different from any of the 15 infringing L.O.L. Surprise! O.M.G. dolls; and

---

[2] This number reflects $17,872,253 awarded for disgorgement of profits under common law misappropriation and $53,616,759 in punitive damages. (Id. at 20.) Both the Court and the Parties have inconsistently reported these numbers, frequently varying by $1. For the purposes of the clarity, the Court notes that the correct figures moving forward are $17,872,253 in disgorgement and $53,616,759 in punitive damages, for a total award of $71,489,012.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                         Date  April 15, 2025

Title      MGA Entertainment Inc v. Clifford "T.I." Harris et al.

    2.    Order[s MGA] to remove or have removed from the market (including social media and entertainment platforms) any packaging, advertisements, and/or products featuring any of the 15 infringing L.O.L. Surprise! O.M.G. fashion dolls.

(Harrises' Proposed Final Judgment, Dkt. No. 1104-3 at 2.) For the following reasons, the Court **DENIES** the request for injunction.

    1.    <u>Irreparable Injury</u>

The Lanham Act was amended in 2020 to provide a rebuttable presumption of irreparable harm for the purposes of a permanent or preliminary injunction:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subjection in the case of a motion for a permanent injunction[.]

15 U.S.C. § 1116(a); <u>accord</u> <u>Y.Y.G.M. SA v. Redbubble, Inc.</u>, 75 F.4th 995, 1005 (9th Cir. 2023) ("The Act benefits trademark holders by creating a 'rebuttable presumption of irreparable harm' when a permanent injunction is sought to remedy an established trademark violation.").

This presumption is rebuttable.[3] Indeed, the Trademark Modernization Act of 2020 "did not eliminate the irreparable harm requirement; it simply shifted which party bears the ultimate burden of production on the issue." <u>Kahala Franchising, LLC v. Real Faith, LLC</u>, 2022 WL 1605377, at *5 (C.D. Cal. May 20, 2022); <u>accord</u> <u>Polymer Techs., Inc. v. Bridwell</u>, 103 F.3d 970, 974 (Fed. Cir. 1996). Courts have generally found the following rebuttal evidence persuasive: (1) undue delay in seeking the preliminary injunction, (2) injuries that are purely pecuniary, and (3) that the non-movant has ceased

---

[3] The Court will not apply the "slight" evidentiary showing standard used in the Third Circuit. (<u>See</u> Opp'n at 11 (citing <u>Nichino Am., Inc. v. Valent U.S.A. LLC</u>, 44 F.4th 180, 186 (3d Cir. 2022)).) While there does not appear to be as concise a standard in the Ninth Circuit, courts in this circuit appear to rely on different evidentiary showings to rebut the presumption.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

or will soon cease the infringing activities.  See Vital Pharm. v. PhD Marketing, Inc., 2021 WL 6881866, at *5 (C.D. Cal. Mar. 21 2021) (collecting cases).[4]

Because the Harrises prevailed at trial, they are entitled to a rebuttable presumption of irreparable harm.  MGA provides three arguments to rebut the presumption: undue delay, ceasing manufacturing of infringing goods, and no evidence of reputational harm.  (Opp'n at 11.)

### a.     Undue Delay

First, MGA argues that the Harrises have delayed seeking an injunction.  (Id. at 12.)  Specifically, this lawsuit has spanned over four years and three separate trials, but the Harrises are only now seeking an injunction.  Additionally, while the Harrises' claim their trade dress has been "in continuous use for the last 13 years," they never sought a preliminary injunction.  (See id. (citing Mot. at 3).)  Thus, MGA argues, such delay implies a lack of urgency that undercuts irreparable harm.  See Cuviello v. City of Vallejo, 944 F.3d 816, 833 (9th Cir. 2019).

The Court finds that there is no undue delay.  As the Harrises note, the earliest dolls at issue were introduced in July 2019.  (Reply at 1.)  The Harrises sent a cease-and-desist letter in December 2020 and within two weeks, the lawsuit commenced.  While the lawsuit took nearly four years to resolve and the Harrises waited until the conclusion of the lawsuit to seek injunction, such a decision may simply reflect a desire to work through the merits of litigation.  See Genband US LLC v. Metaswitch Networks Corp., 861 F.3d 1378, 1385 (Fed. Cir. 2017) ("[W]hen a [party] postpones suit and forgoes a preliminary injunction, there may well be reasons for the [party's] actions independent of any implied concession that the infringement-caused injury is not actually irreparable. . . .").  Therefore, the record does not support undue delay.

---

[4] See also Y.Y.G.M., 75 F.4th at 1005 (holding that undue delay in seeking a preliminary injunction may undermine a permanent injunction); Reebok Intern. Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994) (finding that confusion is unlikely to occur when an infringer stops making and advertising its product); Oakland Tr., Inc. v. Chron. Publ'g Co., 762 F.3d 1374, 1377 (9th Cir. 1985) (discussing undue delay and proof of business loss as factors to consider for irreparable harm; L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202–03 (9th Cir. 1980) (requiring evidence of a threat of actual harm to potential future agreements).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

### b.  Cessation of Manufacturing and Sales

Second, MGA argues that it has already ceased manufacturing and sales of all 15 dolls found to be infringing, and MGA is no longer creating new advertisements or online content with the 15 dolls.  (Opp'n at 12.)  The Harrises respond that the "continued presence" of the infringing dolls in the market will perpetuate consumer confusion.  (Reply at 7.)

The Court agrees with MGA that this fact tends to rebut irreparable injury.  In the trademark context, consumer confusion is not fully compensable (and thus irreparable) because the damages are speculative and can be difficult to measure.  See Reebok Intern. Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994).  However, as in this case, where the infringer has ceased manufacturing, advertising, selling, and creating new content regarding the infringing product, the possibility for future consumer confusion is substantially diminished.  See id. (explaining that consumer confusion "is unlikely to occur or may be de minimis once the [infringer] stops making and advertising its product . . .").  Thus, there is little irreparable harm in the way of consumer confusion where MGA is no longer making the infringing products.

The Harrises respond that the cessation of sales, manufacturing, and advertising is not enough because, absent an injunction, there will be a "continued presence of MGA's infringing dolls [that] perpetuates consumer confusion."  (Reply at 7.)  However, the Harrises fail to explain how an injunction of the 15 infringing dolls would remove this vague "continued presence" of infringement.  Moreover, the "continued presence" argument rings hollow where the Harrises have no competing doll line and provided no evidence at trial of material plans to compete in this market.[5]  Simply put, MGA has demonstrated that the possibility for consumer confusion in this case—after the cessation of sales, manufacturing, and advertising—is negated.

---

[5] (See Order on Equitable Issues at 8–9 (finding that the Harrises do not make dolls and, at most, were "interested" in making dolls before abandoning the project).)  Indeed, it is the speculative and difficult to calculate *loss of sales* that makes consumer confusion an irreparable harm.  Because the Harrises have no competing doll business, it is difficult to conceive how a lingering presence would create an irreparable harm.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

Nor is the Court dubious of MGA's claims that it has ceased sales and manufacturing. See AK Futures LLC v. Boyd Street Distro, LLC, 35 F.4th 682, 694 (9th Cir. 2022) (finding that the cessation of sales was not enough to rebut the presumption of irreparable harm where the infringer was not in control of the flow of its products through its stores and had few safeguards against the sale of counterfeit products). Here, unlike in AK Futures, MGA removed products listings for all 15 infringing dolls on or around October 14, 2024. (Decl. of Tal Meirovitch ("Meirovitch Decl."), Dkt. No. 1109-3.) As of that date, MGA stopped selling the 15 dolls in the United States or creating advertisements of the dolls. (Id.) MGA also no longer produces online content featuring the dolls, has ceased creating advertisements nationwide, and has no intent to continue advertising these dolls in the future. (Decl. of Anne Parducci ("Parducci Decl."), Dkt. No. 1109-1.) Finally, MGA has ceased manufacturing all 15 infringing dolls for the United States market. (Decl. of Winston Lee ("Lee Decl."), Dkt. No. 1109-4.) The Harrises do not contend that MGA cannot control the flow of its products like the infringers in AK Futures, other than through third-party retailers like Amazon or Walmart.[6] Accordingly, this factor tends to rebut the presumption of irreparable harm.

### c. Reputational Harm and Damage to Good Will

Finally, MGA argues that there is no evidence that the infringing dolls have caused damage to the Harrises' reputation or good will. (Opp'n at 12.) The Harrises respond that their business reputation has been damaged and, regardless, the mere fact that MGA used their symbol is enough to cause irreparable injury. (Reply at 4.) For the following reasons, the Court agrees with MGA.

"[T]o establish irreparable injury, a trademark owner must do more than merely demonstrate that a trademark has been infringed or that consumers have been confused." San Miguel Pure Foods Co., Inc. v. Ramar Intern. Corp., 625 F. App'x 322, 327 (9th Cir. 2015); accord Herb Reed Enters., 736 F.3d at 1250. Moreover, "[s]peculative injury cannot be the basis for a finding of irreparable harm." In re Excel Innovations, Inc., 502 F.3d 1086, 1098 (9th Cir. 2007). However, courts must consider the possibility of future

---

[6] Yet, the Harrises do not explain how their proposed injunction would resolve the third party retailer issue. The proposed injunction binds MGA and any persons in active concert or participation. But MGA has affirmed that it is "no longer selling the 15 Dolls in the United States [and] . . . has no plans to do [so] in the future." (Meirovitch Decl. at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
|---|---|---|---|
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

harm. Y.Y.G.M., 75 F.4th at 1007 (reversing the district court for discounting the declarations of employees who claimed that a counterfeit product would harm reputation and make sales strategies less predictable).

The Harrises argue that their reputation and good will has been damaged because, absent an injunction, "consumers may associate any negative experiences with MGA's products (such as the salacious tots) with the OMG Girlz themselves." (Reply at 7.) The Harrises further argue that they have "concrete rather than speculative harm to their business prospects" because of the potential harm to future merchandising agreements. The Court finds that both of these arguments are unpersuasive.

First, the claim that consumers may have a negative experience with the infringing dolls is unsupported by the evidence presented at trial. (See, e.g., Trial Tr. 9/10/24 AM 34:14–35:12.) At trial, the Harrises demonstrated that consumers were confused by the L.O.L. Surprise! O.M.G. dolls, mistakenly believing that the dolls were associated with the OMG Girlz. (See Trial Tr. 9/10/24 AM 34:14–35:12; M. Campbell at 155:4–13 (same); M. Wagner at 180:9–181:14 (same); W. Osborne at 201:19–203:9 (same).) However, none of the consumer witnesses testified that they were dissatisfied with the dolls they purchased—they merely alleged confusion. (See id.) Such evidence is insufficient to show irreparable harm. See Kahala Franchising, 2022 WL 1605377, at *4 ("[W]hile there may be confusion in the minds of the public . . ., [the plaintiff] nevertheless fails to show how this confusion is causing it any actual or potential harm."); see also Herb Reed Enters., 736 F.3d at 1250 (finding that evidence of customer confusion was not, itself, enough to show irreparable harm).

The Harrises are correct that court's often consider it persuasive when employees testify that the brand will suffer reputational harm from knock-off goods. See Y.Y.G.M., 75 F.4th at 1007; accord Adidas Am., Inc. v. Skechers USA, Inc., 890 F.3d 747, 756–57 (9th Cir. 2018). In those cases, however, the companies seeking an injunction provided evidence that the counterfeit brands would harm the business reputation of the company or diminish sales. In this case, the Harrises have not provided evidence of the loss of *business control* or reputation because they do not operate a competing doll business. The self-serving allegations of "total loss of control over business reputation," without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

any specificity, is unpersuasive.[7] The parties spent four years collecting evidence and put that evidence on full display for the jury. The lack of evidence suggesting actual harm to business reputation or goodwill is indicative of the non-existence of such irreparable injury. Thus, there is a lack of present irreparable harm to reputation or good will.

    Second, the Harrises provided little to no evidence at trial that they operate in a competing industry, such that the Court can presume a potential for *future* harm to reputation or merchandising agreements. At trial, Tameka Harris stated that she was "interested" in making dolls before eventually abandoning the project. (Trial Tr. 9/4/24 AM at 48–50.) The Harrises provided no other evidence to support any interest in entering the doll market or any plan to enter a merchandising agreement. Thus, the Harrises' current claims of reputational harm and future injury to merchandising agreements are merely speculative. See San Miguel Pure Foods, 625 F. App'x at 327 (reversing district court's granting of permanent injunction because evidence of irreparable harm was merely "a prediction about the future, not a finding based on proof of actual harm").

    Third, even assuming that the Harrises had concrete evidence of a future plan to enter into merchandising agreements and that the OMG Dolls were an inferior product in some consumers' eyes, MGA is no longer selling, advertising, or manufacturing the 15 infringing dolls for use in the United States. (See supra III.A.1.b.) This finding heavily minimizes any likelihood of future negative experiences that would damage reputation or impinge merchandising agreements. See Reebok, 32 F.3d at 1558 (finding no irreparable harm from inferior infringing products where the infringer stopped making and advertising its products). In response, the Harrises argue that ongoing harm will manifest through secondary markets and through online content and social media presence. (Reply at 4.) This explanation is no more persuasive, however, where the Harrises cannot cogently explain why a permanent injunction would resolve such ambiguous ongoing harms.

---

    [7] Throughout the briefings, the Harrises rely on platitudes of "ongoing harm" and "loss of control of business reputation," without providing specific harms. (See Reply at 4.) The Harrises do not explain what the "total loss of control" means, such as: what opportunities were forgone, what sales were diverted to MGA, and what doll-specific reputation was impinged.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

Thus, because of the lack of evidence of present and future injury to business reputation or goodwill of the OMG Girlz, the Court finds that this factor rebuts the presumption of irreparable harm.

### d.   Totality of Factors

While the Harrises did not delay seeking an injunction in this case, MGA has met its burden of rebutting the presumption of irreparable harm given its cessation of sales, manufacturing, and advertising, and the lack of present and future harm to good will and reputation. In this case, the potential for irreparable harm is too weak to justify a permanent injunction. To the extent that an injunction might confirm to the market that MGA's past conduct was unlawful, an injunction would add nothing to the jury's and the Court's well-publicized determinations of unlawful conduct.

Because a showing of irreparable harm is required to obtain a permanent injunction, see eBay Inc., 547 U.S. at 391, the Court need not analyze the remaining factors for permanent injunction. See eBay Inc., 547 U.S. at 391; see also Polymer Techs., 103 F.3d at 974 ("Accordingly, the district court did not err by focusing its analysis solely on irreparable harm in denying [plaintiff's] motion.").[8]

### B.   Pre- and Post Judgment Interest

#### 1.   Prejudgment Interest

The Harrises seek an award of prejudgment interest in an amount specified by 28 U.S.C. § 1961. MGA opposes prejudgment interest and, in the alternative, argues that the interest rate should be set at the Treasury bill rate.

---

[8] The Court acknowledges that its denial of injunction may impact the "adequacy of other remedies" factor that the Court analyzed when finding against disgorgement under the Lanham Act. (See Dkt. No. 1090 at 9.) As the Court stated in that order, to the extent that disgorgement under the common law is reversed on appeal, the Court may be required to re-weigh the factors for disgorgement under the Lanham Act. (Id. at 18 n.6.) The Court notes, however, that adequacy of alternative remedies was but one factor leaning against disgorgement, along with: willfulness, diversion of sales, public interest, and palming off.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                                    Date    April 15, 2025

Title    MGA Entertainment Inc v. Clifford "T.I." Harris et al.

"Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." Y.Y.G.M., 75 F.4th at 1008 (citing West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987)). Prejudgment interest is discretionary under California law. See Canavin v. Pac. Southwest Airlines, 148 Cal. App. 3d 512, 525 (Cal. Ct. App. 1983); accord Western Pac. Fisheries v. § President Grant, 730 F.2d 1280, 1288 (9th Cir. 1984).

The parties do not dispute that state law governs the availability of prejudgment interest on state law claims.[9] California law provides that:

> In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given in the discretion of the jury.

Cal. Civ. Code § 3288. While § 3288 conveys this power to the discretion of the "jury," a court may exercise this discretion when it sits as the trier of fact. Nordahl v. Dep't of Real Est., 48 Cal. App. 3d 657, 665 (1975).

As a threshold matter, MGA contests the Court's authority to determine prejudgment interest. (See Opp'n at 26.) MGA cites Softketeers, Inc. v. Regal W. Corp., 2023 WL 2024701, at *4 (C.D. Cal. Feb. 7, 2023), where the court held that there is "no authority that permits the Court and the jury to split the workload, so to speak, where the jury serves as the trier of fact on questions of liability and damages, and then the Court picks up the baton with respect to prejudgment interest." See id. (holding as such even where parties agreed that court would resolve prejudgment interest).

The Court agrees with the logic of Softketeers, but finds its application to this case inapplicable. As a general rule, courts should not merely "pick up the baton with respect to prejudgment interest." See id. But such is not the case here. In this case, the jury was

---

[9] The Court notes that prejudgment interest is not permitted for statutory damages under the Lanham Act. See Y.Y.G.M., 75 F.4th at 1008. However, common law disgorgement under California law is the basis for the Harrises' claim to prejudgment interest. Even applying the federal standard, the award of prejudgement interest is discretionary in cases under federal law. See U.S. v. Cal. State Bd. of Equalization, 650 F.2d 1127, 1132 (9th Cir. 1981).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR           Date  April 15, 2025

Title     MGA Entertainment Inc v. Clifford "T.I." Harris et al.

tasked with determining liability and the Court, on its own, determined damages for common law misappropriation.  (See Order on Equitable Issues at 14.)  Thus, the Court finds that it may properly determine prejudgment interest.

Nevertheless, the Court finds that prejudgment interest is not appropriate in this case.  The Harrises prevailed on their claims at trial with respect to seven individual dolls.  While they were able to show unjust enrichment, the Harrises could make no showing of actual harm to brand or reputation.  Indeed, the $17,872,253 awarded for disgorgement under common law misappropriation was largely a result of the presumption of attributability and the lack of a more reliable method for determining the true amount of disgorgement.  (See Order on Equitable Issues at 16–18 (discussing and rejecting MGA's proposed methods of reducing attributability to 10% or 15%).)  While the law supports this figure, it likely still provides a windfall for the Harrises.[10]  Additionally, despite the jury's findings to the contrary, the Court noted in its Order on Equitable Issues that the evidence did not support a finding of willfulness.  (See Order on Equitable Issues at 6–7.)  Finally, on top of the $17,872,253 disgorgement award, the Harrises were awarded $53,616,759 in punitive damages and will receieve an award of post-judgment interest.  The Court finds that prejudgment interest is not required to fully compensate the Harrises.

  2. Post Judgment Interest

Under 28 U.S.C. § 1961, an award of post-judgment interest in mandatory.  28 U.S.C. § 1961(a); Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995) (citing Perkins v. Standard Oil Co. of Cal., 487 F.2d 672, 674 (9th Cir. 1973)).  With certain exceptions that do not apply here, courts must calculate post-judgment interest using "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  See 28 U.S.C. § 1961(a).[11]  Post-

---

[10] A disgorgement award of $17,872,253 presumes that the entirety of the sales of the seven infringing dolls were the result of the influence of the OMG Girlz and their trade dress.  Such is unlikely the case; but, absent more reliable means of determining a true amount, the presumption remains.

[11] The statutory post-judgment interest rates apply unless the parties have contracted otherwise.  See Inv. Serv. Co. v. Allied Equities Corp., 519 F.2d 508, 511 (9th Cir. 1975).  There is no indication in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

judgment interest applies to the entire amount of the judgment, including principal, prejudgment interest, attorney's fees, punitive damages, and costs. See Air Separation, 45 F.3d at 290.

For the calendar week preceding April 11, 2025, the weekly average 1-year constant maturity Treasury yield rate was 3.972%. See Board of Governors of the Federal Reserve System, *Select Interest Rates (Daily) H.15 Historical Data*, Federal Reserve, https://www.federalreserve.gov/releases/h15/ (selected interest rates for the calendar week beginning March 31, 2025). Accordingly, the Court awards the Harrises' post-judgment interest on the $71,489,012 judgment against MGA at a rate of 3.972%. The Harrises' entitlement to post judgment interest will continue to accrue from the date of this Order entering judgment until the date of payment, compounded annually. See 28 U.S.C. § 1961(b).

C. *Final Judgment*

On July 29, 2022, this Court granted summary judgment in favor of MGA on 40 dolls that were alleged to be infringing. (Order on Motion for Summary Judgment, Dkt. No. 326.) This action was tried before a jury and this Court with respect to the remaining dolls between September 3, 2024, and September 23, 2024. On September 23, 2024, the jury returned a verdict. (Verdict, Dkt. No. 1010.)

1. With respect to the Harrises' claims for misappropriation and trade dress infringement, the jury found in favor of the Harrises on seven dolls.

2. With respect to MGA's declaratory relief claim, the jury found in favor of the Harrises on an additional eight dolls. The jury found in favor of MGA on 13 dolls.

3. The Court adopted the jury's disgorgement award of $17,872,253 for common law misappropriation. The Court further found that the jury's punitive damages award of $53,616,759 was binding under Rule 39(c). The

---

this case that the parties have agreed to a fixed percentage for post-judgment interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | April 15, 2025 |
| Title | MGA Entertainment Inc v. Clifford "T.I." Harris et al. | | |

Court did not adopt the jury's award of disgorgement under the Lanham Act.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Harrises' motion for entry of judgment. The Court **GRANTS** the Harrises' request for post-judgment interest and awards post-judgment interest on the $71,489,012 judgment at a rate of 3.972% from the date of this order until the date of payment, compounded annually. The Court **DENIES** the motion for prejudgment interest. The Court **DENIES** the motion for permanent injunction.

The Harrises shall submit a proposed Judgment reflecting this Order within seven days. If not endorsed as to form, the Court will wait seven days for any objections.

**IT IS SO ORDERED.**