1  Mark A. Finkelstein (SBN 173851)
   mfinkelstein@umbergzipser.com
2  Ellen S. Kim (SBN 329348)
   ekim@umbergzipser.com
3  UMBERG ZIPSER LLP
   1920 Main Street, Suite 750
4  Irvine, CA 92614
   Telephone: (949) 679-0052
5

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No. 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

9  Attorneys for Plaintiff and Counter-
10 Defendant MGA Entertainment, Inc.,
   and Counter-Defendant Isaac Larian

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13 MGA ENTERTAINMENT, INC.,
   a California corporation,
14

                Plaintiff,
15 vs.

16 CLIFFORD "T.I." HARRIS, an
   individual; TAMEKA "TINY"
17 HARRIS, an individual; OMG
   GIRLZ LLC, a Delaware limited
18 liability company; and DOES 1 -
   10 inclusive,
19
                Defendants,
20

21 GRAND HUSTLE, LLC,
   PRETTY HUSTLE, LLC and
22 OMG GIRLZ LLC,

23              Counter-Claimants,
24 vs.

25 MGA ENTERTAINMENT, INC.,
   ISAAC LARIAN and DOES 1 -
26 10, inclusive,
                Counter-Defendants.
27

Case No. 2:20-cv-11548-JVS-AGR
ASSIGNED TO: Hon James V. Selna

**PLAINTIFF AND COUNTER-
DEFENDANTS' MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION
FOR JUDGMENT AS A MATTER
OF LAW (RULE 50(b)) OR, IN
THE ALTERNATIVE, MOTION
FOR NEW TRIAL OR
REMITTITUR**

Date: June 30, 2025
Time: 1:30 p.m.

Complaint Filed: December 20, 2020
Trial Date: September 3, 2024

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}

Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 8

II.   LEGAL STANDARDS ........................................................................... 9

A. Rule 50(b) Standard. ........................................................................ 9

B. Rule 59(a) Standard. ........................................................................ 9

C. Remittitur And Due Process Standards. ........................................... 9

III.  ARGUMENT ...................................................................................... 10

A. The Court Should Vacate The Punitive Award Or, In The Alternative,
   Order A Remittitur Or New Trial. ..................................................... 10

   1. Because MGA Did Not Act Willfully, The Punitive
      Award Cannot Stand. ................................................................. 10

   2. The Staggering Punitive Award Is Excessive And
      Violates Due Process. ............................................................... 11

      a) No Compensatory Damages Were Sought Or Awarded.......... 11

      b) The Punitive Amount Far Exceeds Constitutional Limits. ...... 12

   3. Alternatively, The Court Should Issue A Remittitur. ................... 14

B. The Court Should Grant Judgment Or, In The Alternative, A New
   Trial On The Misappropriation Claim. ............................................. 14

   1. Counterclaimants Lack Standing. .............................................. 14

   2. Even If Standing Were Satisfied (Which It Is Not), Judgment
      Should Be Granted In Favor Of MGA On The Misappropriation
      Claim Based On The First Amendment. ..................................... 15

   3. Counterclaimants Failed To Offer Any Evidence Of Actual
      Harm To Support The Injury Element Of Misappropriation. ....... 17

   4. Evidence Was Insufficient To Show Misappropriation. ............. 18

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    1                    Case No. 2:20-cv-11548-JVS-AGR

                                                   MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                   JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

C. The OMG Girlz Did Not Establish That All Of MGA's Profits Were Attributable To The Misappropriation. .................................................... 21

D. The Court Should Grant Judgment Or, In The Alternative, A New Trial On The Trade Dress Claim. ........................................................... 23

    1. The OMG Girlz Do Not Have Protectable Trade Dress. .............. 23

        a) Failure To Define Alleged Trade Dress With Specificity. ...... 23

        b) Failure To Show Alleged Trade Dress Is Nonfunctional......... 24

        c) Failure To Use "OMG Girlz" As A Visual Element. ............. 25

        d) Failure To Consistently Use The Alleged Trade Dress. .......... 26

    2. Counterclaimants Did Not Establish Secondary Meaning............ 27

    3. Counterclaimants Abandoned Their Claimed Trade Dress. ......... 28

    4. Counterclaimants Have Not Shown Likelihood Of Confusion. ... 28

        a) Dissimilar "Marks" And Weak Trade Dress........................... 29

        b) Insufficient Evidence Of Consumer Confusion. ...................... 29

        c) Remaining Factors Favored MGA Or Were Neutral. ............. 30

E. The Court Should Grant Judgment Or, In The Alternative, A New Trial On All Claims Against Mr. Larian. ................................................. 31

F. The Court Should Grant Judgment Or, In the Alternative, A New Trial On MGA's Claims For Declaratory Judgment.............................. 31

IV. CONCLUSION ..................................................................................32

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}

2

Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Cases

4

5

*Abdul-Jabbar v. Gen. Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996)............................................................... 18

6

*Al-Site Corp. v. VSI Intern., Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999)......................................................... 27

7

8

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010)............................................................. 29

9

10

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979)............................................................. 28

11

12

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006)........................................................................... 14

13

14

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
   457 F.3d 1062 (9th Cir. 2006) .......................................................... 24

15

16

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ............................................ 25

17

18

*Bardis v. Oates*,
   119 Cal. App. 4th 1 (2004) ............................................................... 12

19

20

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)........................................................................... 12

21

22

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
   973 F.2d 1033 (2d. Cir. 1992)........................................................... 25

23

24

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) .......................................................... 30

25

26

*Cairns v. Franklin Mint Co.*,
   24 F. Supp. 2d 1013 (C.D. Cal. 1998) .............................................. 29

27

28

*California v. Altus Fin. S.A.*,
   540 F.3d 992 (9th Cir. 2008).............................................................. 12

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                          3                    Case No. 2:20-cv-11548-JVS-AGR
                                                                         MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                                JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*,
    No. 95 Civ. 4008, 1997 WL 749388 (S.D.N.Y. Dec. 3, 1997) ........................ 26

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ........................................................ 25

*Coll. Hosp. Inc. v. Superior Ct.*,
    8 Cal. 4th 704 (1994) ................................................................ 11

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) ...................................................... 15, 16, 17

*Crafty Productions, Inc. v. Michaels Companies, Inc.*,
    389 F. Supp. 3d 876 (S.D. Cal. 2019) ................................................ 26

*D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*,
    692 F.2d 1245 (9th Cir. 1982) ........................................................ 10

*Electro Source, LLC v. Brandess–Kalt–Aetna Group, Inc.*,
    458 F.3d 931 (9th Cir. 2006) ......................................................... 28

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ........................................................ 28

*Epic Systems Corp. v. Tata Consultancy Services, Ltd.*,
    980 F.3d 1117 (7th Cir. 2020) ........................................................ 11

*In re Exxon Valdez*,
    472 F.3d 600 (9th Cir. 2006) ......................................................... 10

*Goodyear Tire and Rubber Co. v. Interco Tire Corp.*,
    49 U.S.P.Q.2d 1705 (TTAB 1998) ...................................................... 28

*GoTo.Com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ........................................................ 29

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
    28 F.4th 35 (9th Cir. 2022) .......................................................... 13

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ......................................................... 13

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ......................................................... 16

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}                    4                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
   4 F.3d 819 (9th Cir. 1993)...................................................................... 29

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2008)................................................................... 28

*Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*,
   667 F. Supp. 1221 (N.D. Ill. 1987) ......................................................... 27

*Kirby v. Sega of Am., Inc.*,
   144 Cal. App. 4th 47 (2006) ........................................................... 17, 20

*Landes Constr. Co., Inc. v. Royal Bank of Canada*,
   833 F.2d 1365 (9th Cir. 1987) .................................................................. 9

*In re Late Fee & Over-Limit Fee Litig.*,
   741 F.3d 1022 (9th Cir. 2014) ................................................................ 12

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985) ........................................................... 27, 28

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................ 15

*M2 Software, Inc. v. Madacy Ent.*,
   421 F.3d 1073 (9th Cir. 2005) ................................................................ 30

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
   292 F. Supp. 2d 535 (S.D.N.Y. 2003)..................................................... 23

*Mattel, Inc. v. MGA Ent., Inc.*,
   801 F. Supp. 2d 950 (C.D. Cal. 2011) .................................................... 12

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
   40 F.4th 454 (6th Cir. 2022) ..................................................................... 9

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007)..................................................................... 9

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990) .................................................................... 9

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998)................................................................... 18

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                              5                        Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
  809 F.2d 601 (9th Cir. 1987) ............................................................................... 30

*Olive v. Gen. Nutrition Centers, Inc.*,
  30 Cal. App. 5th 804 (2018) ................................................................................ 21

*Payan v. Los Angeles Cmty. Coll. Dist.*,
  No. 2:17-CV-01697-SVW, 2024 WL 1676846
  (C.D. Cal. Feb. 29, 2024) ........................................................................... 9, 10, 23

*Philip Morris USA v. Williams*,
  549 U.S. 346 (2007) ............................................................................................ 12

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life
  Activists*, 422 F.3d 949 (9th Cir. 2005) ............................................................. 13

*Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*,
  999 F. Supp. 477 (S.D.N.Y. 1998) ...................................................................... 26

*Riley v. Volkswagen Grp. of Am., Inc.*,
  51 F.4th 896 (9th Cir. 2022) ................................................................................ 13

*S. Union Co. v. Irvin*,
  563 F.3d 788 (9th Cir. 2009) ............................................................................... 10

*Sherman-Bey v. Marshall*,
  No. CV 09-06494 JGB (RZ), 2014 WL 3557202
  (C.D. Cal. Mar. 14, 2014) .................................................................................... 11

*Skaff v. Meridien N. Am. Beverly Hills*, LLC,
  506 F.3d 832 (9th Cir. 2007) ............................................................................... 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ....................................................................................... 12, 13

*United States v. $1,106,775.00 in United States Currency*,
  131 F.4th 710 (9th Cir. 2025) .............................................................................. 14

*United States v. First Nat'l Bank of Circle*,
  652 F.2d 882 (9th Cir. 1981) ............................................................................... 31

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ................................................................................. 9

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    6                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                          JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) ........................................... 27

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ................................. 16, 17

*Woolstrum v. Mailloux*,
   141 Cal. App. 3d Supp. 1 (1983) ............................ 11

## Statutes and Rules

15 U.S.C. § 1125 ................................................... 24

15 U.S.C. § 1127 ................................................... 28

28 U.S.C. § 2201 .................................................. 31

Cal. Civ. Code § 3294 .......................................... 11

Cal. Civ. Code § 3344 ..................................... 13, 21

Fed. R. Civ. P. 16 ................................................ 31

Fed. R. Civ. P. 39 ............................................. 8, 13

Fed. R. Civ. P. 50 .............................................. 8, 9

Fed. R. Civ. P. 52 ................................................. 8

Fed. R. Civ. P. 59 .............................................. 8, 9

## Other Authorities

CACI No. 1805 ..................................................... 17

CACI No. 1821 ............................................... 21, 22

1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed.) .................. 23

5 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed.) .............. 28

O'Connor's Federal Rules Civil Trials, Ch. 10-C § 6 (2025 ed.) .................... 9

Umberg Zipser LLP
Attorneys At Law
Irvine

{288584.14}                                                     7

Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

# I.  **INTRODUCTION**

While the jury in the second trial swiftly awarded a verdict in favor of MGA Entertainment Inc. and Mr. Larian (together, "MGA"), the jury in the third trial found that MGA willfully infringed Counterclaimants' trade dress and/or misappropriated the OMG Girlz' likeness as to 15 of MGA's L.O.L. Surprise! O.M.G. dolls (the "Dolls"), and that MGA acted with oppression, fraud, or malice. The jury returned an advisory verdict on damages, awarding $17,872,253 in disgorged profits for both the trade dress and common law misappropriation claims, and $53,616,759 in punitive damages on the misappropriation claim.

Thereafter—based on its own assessment of the witnesses and the trial evidence—the Court disagreed with the jury's advisory verdict and found that MGA did ***not*** act willfully, and awarded no disgorgement of profits under the Lanham Act as a matter of equity.  Dkt. 1090 ("Equitable Issues Order").  Because MGA did not act willfully, the Court tentatively also found that "the punitive damages award cannot stand."  Dkt. 1096-4 at 22.  But the Court subsequently ruled that the jury's punitive damages award was binding at that stage of the proceedings under Rule 39(c), and adopted the jury's advisory disgorgement award on the misappropriation claim.

Even if Rule 39(c) prevented the Court from issuing its own ruling on punitive damages under Rule 52 (as the Court held but which MGA disputes), the Court should now eliminate the jury's punitive damages award because it is unavailable as a matter of law or, at a minimum, the Court should order a new trial or remittitur under Rule 59(a).  California law is clear that punitive damages cannot be awarded without willful conduct.  Furthermore, the staggering amount of the punitive award violates the Due Process Clause.

MGA also renews its motion for judgment as a matter of law under Rule 50(b) on the issues previously raised in its Rule 50(a) Motion (Dkt. 988), which the Court took under submission as contemplated by Rule 50(b).  Trial Transcript

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                         8                        Case No. 2:20-cv-11548-JVS-AGR
                                                                            MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                                            JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  f("TT") 9/20/24 AM at 62:21-23.  Accordingly, the Court should find that MGA is

2  entitled to Judgment as a matter of law on Counterclaimants' two remaining claims,

3  including as to Mr. Larian individually, as well as on MGA's claim for declaratory

4  judgment.  At minimum, a new trial should be granted.

5  **II.    LEGAL STANDARDS**

6        **A.    Rule 50(b) Standard.**

7        Where, as here, a court does not enter judgment under Rule 50(a) during trial,

8  a party may renew the motion after trial or, in the alternative, move for a new trial

9  under Rule 59.  *See* Fed. R. Civ. P. 50(b).  The jury's verdict must be "supported by

10  substantial evidence," "which is evidence adequate to support the jury's conclusion,

11  even if it is also possible to draw a contrary conclusion."  *VHT, Inc. v. Zillow Grp.,*

12  *Inc.*, 918 F.3d 723, 735 (9th Cir. 2019).

13        **B.    Rule 59(a) Standard.**

14        The grant of a new trial under Rule 59(a) is "confided almost entirely to the

15  exercise of discretion on the part of the trial court."  *Murphy v. City of Long Beach*,

16  914 F.2d 183, 186 (9th Cir. 1990).  In deciding a motion for new trial, the Court

17  "can weigh the evidence and assess the credibility of witnesses, and need not view

18  the evidence from the perspective most favorable to the prevailing party."  *Landes*

19  *Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  A

20  new trial is appropriate where "the verdict is contrary to the clear weight of the

21  evidence," "the damages are excessive," or "to prevent a miscarriage of justice."

22  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

23        **C.    Remittitur And Due Process Standards.**

24        A court "may reduce or eliminate a monetary award without permitting a new

25  trial when the award rests on a legal error . . . ."  *Payan v. Los Angeles Cmty. Coll.*

26  *Dist.*, No. 2:17-CV-01697-SVW, 2024 WL 1676846, at *1 (C.D. Cal. Feb. 29,

27  2024) (quoting *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 477

28  (6th Cir. 2022)).  *See* O'Connor's Federal Rules Civil Trials, Ch. 10-C § 6 (2025

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    9                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  ed.).  "Where a portion of a verdict is for an identifiable amount that is not

2  permitted by law, the court may simply modify the jury's verdict to that extent and

3  enter judgment for the correct amount."  *Payan*, 2024 WL 1676846, at *3 (internal

4  quotation marks omitted).

5      When a court determines that damages are excessive, the court may enter a

6  remittitur reflecting the "maximum amount sustainable by the proof."  *Id.* at *1

7  (quoting *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245,

8  1249 (9th Cir. 1982)).  A remittitur gives the opposing party the option of

9  consenting to a reduced award of damages or facing a new trial.  *Id.*

10     Where the punitive damages award is constitutionally excessive, courts have

11  several options for reducing the award.  In cases involving "protracted litigation,"

12  as here, a court may simply reduce the award without offering an option of a new

13  trial.  *S. Union Co. v. Irvin*, 563 F.3d 788, 792-93 n.4 (9th Cir. 2009) (quoting *In re

14  Exxon Valdez*, 472 F.3d 600, 625 (9th Cir. 2006), *rev'd on other grounds*, 554 U.S.

15  471 (2008)).  By contrast, where a new trial might produce additional evidence

16  relevant to punitive damages, a court may issue a remittitur, offering the opposing

17  party the option of a new trial or a reduced award, or may order a new trial.  *Id.*

18  **III.**   **ARGUMENT**

19      **A.**    **The Court Should Vacate The Punitive Award Or, In The**

20           **Alternative, Order A Remittitur Or New Trial.**

21           1.    Because MGA Did Not Act Willfully, The Punitive Award

22                Cannot Stand.

23      MGA reiterates its prior position that punitive damages are not available for a

24  common law misappropriation claim.  *See* Dkt. 977 at 2-3, Dkt. 989 at 3.[1]  But even

25  if punitive damages are available for such a claim, they cannot be awarded unless it

26  is proven by "clear and convincing evidence that the defendant has been guilty of

27  _____

28  [1] MGA incorporates by reference the arguments made in all prior briefing cited.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                    10                    Case No. 2:20-cv-11548-JVS-AGR
                                                     MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                     JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  "[T]he punishable acts

2  which fall into these categories are strictly defined.  Each involves 'intentional,'

3  'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injur[ious]' nature."  *Coll.*

4  *Hosp. Inc. v. Superior Ct.*, 8 Cal. 4th 704, 721 (1994).

5        The Court expressly found that "***MGA did not act willfully***."  Dkt. 1090 at 23

6  (emphasis added); *see* Dkt. 1113 at 14 ("[D]espite the jury's findings to the

7  contrary, the Court noted . . . that the evidence did not support a finding of

8  willfulness.").  The Court should thus vacate the punitive award or, at a minimum,

9  order a new trial.  *See Woolstrum v. Mailloux*, 141 Cal. App. 3d Supp. 1, 10 (1983)

10  ("Conduct which warrants punitive damage ***must be*** of 'such severity or shocking

11  character [as] warrants the same treatment as accorded to willful misconduct—

12  conduct in which defendant ***intends to cause harm*.'") (emphases added).

13            2.   The Staggering Punitive Award Is Excessive And Violates Due

14               Process.

15        Even if the Court finds that punitive damages are available here without

16  willful conduct (which it should not), the amount awarded is excessive and violates

17  the Due Process Clause.

18            *a)*    *No Compensatory Damages Were Sought Or Awarded*.

19        Counterclaimants were barred from presenting any theory of recovery

20  beyond disgorgement of MGA's profits.  *See* Dkt. 502, 521.  Under these

21  circumstances, there can be no punitive award.  *See Sherman-Bey v. Marshall*, No.

22  CV 09-06494 JGB (RZ), 2014 WL 3557202, at *3 (C.D. Cal. Mar. 14, 2014)

23  ("[P]unitive damages are unavailable unless (1) the plaintiff also wins

24  compensatory or nominal damages or (2) a statute authorizes a standalone award

25  punitive damages."); *see also Epic Systems Corp. v. Tata Consultancy Services,*

26  *Ltd.*, 980 F.3d 1117, 1143 (7th Cir. 2020) (where the only amount of "harm" was

27  based on a benefit to the defendant, satisfying due process for a punitive award

28  "pose[s] a challenging task").

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}           11          Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

This makes sense.  Punitive damages "must bear a reasonable relationship and be proportionate to the ***actual harm*** suffered by the plaintiff (i.e., compensatory damages)."  *Bardis v. Oates*, 119 Cal. App. 4th 1, 17 (2004) (emphasis added). Thus, California law is "well-established and quite clear" that where the jury finds zero compensatory damages, the general rule precludes punitive damages. *California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (reversing portion of verdict awarding $700 million in punitive damages because jury found "$0" in compensatory or nominal damages); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) (award must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"); *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 955 (C.D. Cal. 2011) ("[T]the California Supreme Court has made clear that compensatory damages and exemplary damages should share a direct relationship, such that a low compensatory award in a trade secret misappropriation case cannot trigger the 'maximum possible amount in exemplary damages.'") (internal citations omitted).

Here, there were ***zero*** compensatory damages for actual harm.  The Court should thus find that punitive damages are unavailable as a matter of law and modify the verdict to eliminate the legally erroneous punitive damages award.

> *b)*     *The Punitive Amount Far Exceeds Constitutional Limits.*

"[P]unitive damages are not designed to be a form of supercompensation for plaintiffs." *In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014); *see Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (forbidding "grossly excessive" punitive awards).  Courts consider three guideposts set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996), for assessing whether an award comports with due process:

(1)     the degree of reprehensibility of the defendant's misconduct;

(2)     the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}                                    12                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

(3)    the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005).

Reprehensibility is the "weightiest factor." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972 (9th Cir. 2021); *see Gore*, 517 U.S. at 580 (conduct was not "egregiously improper" and therefore not sufficiently reprehensible to warrant exemplary damages). To assess reprehensibility, courts consider whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 900 (9th Cir. 2022) (citing *State Farm*, 538 U.S. at 419).

All three *Gore* factors favor MGA. The Court found MGA did not act willfully, and the other "reprehensibility" considerations are unsupported by the evidence. As to the second *Gore* factor, the disparity between the harm suffered by Counterclaimants (which was zero) and the punitive award was extreme. *See Altus Fin.*, 540 F.3d at 1001. As to the third *Gore* factor, California Civil Code § 3344, which in many respects is analogous to the common law misappropriation claim, provides a statutory penalty of $750 (or actual damages) where there is a violation. *See* Cal. Civ. Code § 3344(a). Thus, the punitive award—which was over $53 million—is excessive and violates due process.

The Court should reduce the punitive damages award to $0 (or at most, $750). Further, given the protracted nature of this litigation and in the interest of judicial economy, the Court should reduce the award rather than conducting yet another trial. Any new trial on punitive damages would be for the Court, since "Rule 39(c) does not require that the retrial on remand be a jury trial." *Harbor*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    13                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                        JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  *Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 41 (9th Cir. 2022).

2  And there is no reason to think Counterclaimants could introduce different evidence

3  on punitive damages at a fourth trial.

> 3.    Alternatively, The Court Should Issue A Remittitur.

5  Even if punitive damages were available and the over $53 million amount

6  were not constitutionally excessive, the punitive award still dwarfs the maximum

7  amount supportable by the proof.  Accordingly, at a minimum, the Court should

8  issue a remittitur reducing the award to a *de minimis* amount, which would allow

9  Counterclaimants to choose between the reduced award and a new trial.

**B.    The Court Should Grant Judgment Or, In The Alternative, A New Trial On The Misappropriation Claim.**[2]

12  The Court should grant judgment as a matter of law on the misappropriation

13  claim on the following grounds or, alternatively, grant a new trial.

> 1.    Counterclaimants Lack Standing.

15  Counterclaimants never met their burden to establish standing to bring a

16  misappropriation claim.  Specifically, they presented no evidence that they

17  possessed the individual OMG Girlz bandmembers' likeness rights at the time

18  this case was filed.  *See Skaff v. Meridien N. Am. Beverly Hills*, LLC, 506 F.3d

19  832, 839 n.5 (9th Cir. 2007) ("Standing . . . cannot be established by showing

20  later actions of post-filing intent.").

21  "[S]tanding can be challenged 'at any stage' of the case, . . . 'even after

22  trial and the entry of judgment.'"  *United States v. $1,106,775.00 in United*

23  *States Currency*, 131 F.4th 710, 719 (9th Cir. 2025) (quoting *Arbaugh v. Y&H*

24  *Corp.*, 546 U.S. 500, 506 (2006)).  "[A]t the final stage, those facts (if

25  controverted) must be supported adequately by the evidence adduced at trial."

---

[2] A reversal of this claim does not require the Court to revisit its decision that disgorgement under the Lanham Act should not be awarded based on all of the equitable factors. *See* Dkt. 1113 at 12 n.8.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                    14                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

2         When MGA previously challenged standing (Dkts. 33, 157), the Court

3    found that the band members assigned their right of publicity to Grand Hustle,

4    LLC and Pretty Hustle, LLC (but not to OMG Girlz LLC) in a 2011 written

5    contract.  Dkt. 326 at 24; *see* Dkt. 148-7.  MGA disagrees with the Court's

6    reading of the 2011 contract, but—more importantly—that is ***not*** the operative

7    document.  As MGA argued, that contract was superseded "in all respects and

8    for all purposes" by a 2012 contract between the Harrises and Interscope

9    Records.  *See* Dkt. 157 at 25; Dkt. 148-8 at 3.  Under that latter contract,

10   Interscope Records was granted the "perpetual and exclusive rights" to use "the

11   names, portraits, pictures and likenesses" of the OMG Girlz in connection with

12   the Master Recordings, among other things.  *See* Dkt. 148-8 at 33.  At trial,

13   Ms. Harris acknowledged that the OMG Girlz signed that "record deal" with

14   Interscope Records in 2012 (TT 9/4/24 AM at 60:12-14), but Counterclaimants

15   offered no evidence that the rights assigned to Interscope Records were

16   thereafter assigned back to them.[3]

17                    2.    Even If Standing Were Satisfied (Which It Is Not), Judgment

18                          Should Be Granted In Favor Of MGA On The Misappropriation

19                          Claim Based On The First Amendment.[4]

20        The First Amendment bars Counterclaimants' misappropriation claim if,

21   *inter alia*, the Dolls "add something new to the OMG Girlz' likeness, giving it a

22   new expression, meaning, or message."  Dkt. 1013 at 25 (Instruction No. 19);

23   *see Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407

---

24   [3] Interscope Records still owns the 2012 song "Gucci This (Gucci That)," the music

25   video which Counterclaimants presented as an example of their claimed trade dress

26   and likeness.  *See* Dkt. 988-2.

27   [4] While MGA maintains that the First Amendment defense also applies to

28   Counterclaimants' Lanham Act claim (*see* Dkt. 854), the Court rejected MGA's

     argument in granting Counterclaimants' motion for a new trial (Dkt. 860).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                              15                    Case No. 2:20-cv-11548-JVS-AGR
                                                      MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                      JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  (2001).  Thus, if the Dolls are "transformative," the First Amendment defense

2  applies.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 909-10 (9th Cir. 2010).

3      As the Court explained, "a work is transformative if the 'product

4  containing a celebrity's likeness is so transformed that it has become primarily

5  the defendant's own expression rather than the celebrity's likeness.'"  Dkt. 326

6  at 27 (quoting *Comedy III*, 25 Cal. 4th at 407).  This analysis can be conducted

7  "simply by viewing the work in question and, if necessary, comparing it to an

8  actual likeness of the person or persons portrayed."  *Winter v. DC Comics*, 30

9  Cal. 4th 881, 891-92 (2003).

10      To the extent the Dolls bear any likeness to the OMG Girlz, that likeness

11  was transformed in the Dolls, which have "cartoonish proportion[s]" with a

12  "giant head that's almost bigger than her shoulders," a distinct "cat eye,"

13  "stylized face that doesn't look human," and completely customized fashion,

14  among other features.  *See* TT 9/17/24 AM at 25:19-26:18, 37:13–15, 58:14–24.

15      Ms. Consorti, the creator of L.O.L. Surprise!, testified that each Doll

16  begins with a Tot that informs the theme, colors, and designs.  TT 9/13/24 PM

17  at 39:16-19.  Like the Tots, the Dolls have their own themes, personalities, and

18  interests.  TT 9/11/24 AM at 49:18-50:14, 71:15-72:18.  The Dolls' packaging

19  can even function as reusable playsets, reflecting the Dolls' distinct

20  personalities.  *Id.* at 61:14-17.

21      Ms. Consorti further explained that creating the Dolls required numerous

22  creative choices—ranging from hair color, storytelling, clothing design and

23  materials, to the sculpt of the Doll.  TT 9/13/24 PM at 15:24-25, 23:20-23,

24  28:9-30:18.  As part of the creative process, the designers created a mood board

25  and concept sketches, taking inspiration from various things like food or

26  history.  *Id.* at 33:22-34:3, 35:23-36:3, 41:10-17.

27      The ultimate outfit, colors, embellishments, and accessories for each Doll

28  are a group effort requiring input from numerous individuals, who add their

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                16                Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  own artistic vision through "hundreds" of creative decisions. *See* TT 9/17/24

2  AM at 31:6-10, 38:9-14, 45:2-5, 77:24-78:3; TT 9/18/24 PM at 109:13-15,

3  118:2-4. Beyond the designers, there are teams dedicated to all aspects of

4  creating the final product—from the graphics, packaging, and production—in

5  Los Angeles and abroad. TT 9/17/24 AM at 43:22-44:21. It takes around nine

6  months from concept to production. TT 9/13/24 PM at 65:9-13.

7      The Court should thus find that the only reasonable conclusion based on

8  the evidence is that the Dolls are the designers' expressions, and not mere

9  reproductions of the OMG Girlz' likeness. *See Winter*, 30 Cal. 4th at 890

10  (comic book characters "contain[ed] significant expressive content other than

11  plaintiffs' mere likeness"); *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 59

12  (2006) (despite similarities, video game character was "more than a mere

13  likeness or literal depiction" of plaintiff).

14      Moreover, as explained by MGA's former marketing director

15  Ms. Brenner, and damages expert Dr. Mangum, the Dolls' value is primarily

16  due to the popularity of the prior L.O.L. Surprise! line as well as the unboxing

17  elements—characteristics completely unrelated to the OMG Girlz. *See* TT

18  9/13/24 AM at 25:17-22, 41:3-13, 47:14-25; TT 9/19/24 PM at 110:6-22.

19      At bottom, the evidence establishes that (1) MGA has added "something

20  new" to any alleged likeness of the OMG Girlz, and (2) the value of the Dolls

21  does not primarily result from the OMG Girlz's fame. *See* CACI No. 1805;

22  *Comedy III*, 25 Cal. 4th at 404. Accordingly, the jury's verdict is unsupported

23  by the evidence and Judgment should be awarded to MGA as a matter of law

24  based on the First Amendment or, alternatively, a new trial should be ordered.

25      3.   Counterclaimants Failed To Offer Any Evidence Of Actual

26          Harm To Support The Injury Element Of Misappropriation.

27      Counterclaimants had the burden of establishing a "resulting injury"

28  springing from any purported misappropriation. Dkt. 326 at 25 (quoting

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                17                Case No. 2:20-cv-11548-JVS-AGR
                                                    MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                        JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)); *see* Dkt. 764

2  at 26 (Instruction No. 19, stating that Counterclaimants must show they were

3  "harmed").  Counterclaimants failed to do so.  The only remotely relevant

4  evidence in the record is Ms. Harris' testimony that the OMG Girlz did a

5  licensing deal for WAT-AHH, but there was no testimony as to the deal's value

6  or whether that deal was indicative of the OMG Girlz' market value for dolls.

7  TT 9/4/24 AM at 65:16-24.  Counterclaimants presented no evidence regarding

8  the loss of future earnings or future licensing opportunities as a result of MGA

9  selling its Dolls.  While Counterclaimants briefly explored a doll line for the

10  OMG Girlz in 2012 (years before MGA's Dolls launched), those sample dolls

11  shared features from MGA's Bratz dolls, and Counterclaimants quickly

12  abandoned their efforts and provided no details that would allow a reasonable

13  jury to assess harm in 2024.  *Id.* at 50:1-23; TT 9/4/24 PM at 34:24-35:2.

14      Further, the Court concluded in its Equitable Issues Order that there was

15  **no evidence** that the OMG Girlz ever lost revenue from the sale of MGA's

16  Dolls, and rejected Counterclaimants' argument of "intangible harms" as

17  evidence of actual damages.  Dkt. 1090 at 9, 23 n.8.  Thus, the "resulting

18  injury" element of misappropriation was never met.  Indeed, the only theory of

19  monetary recovery that Counterclaimants proffered (and the only theory

20  reflected in the jury instructions) was disgorgement of profits.  But MGA's

21  profits cannot, as a matter of law, be used to show Counterclaimants' "harm."

22             4.   <u>Evidence Was Insufficient To Show Misappropriation</u>.

23      Based on the trial evidence, the only reasonable conclusion is that none

24  of the Dolls use the OMG Girlz' identity because the Dolls are not "readily

25  identifiable" as the OMG Girlz.  *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d

26  407, 413-14 (9th Cir. 1996); *see Newcombe*, 157 F.3d at 692.

27      The OMG Girlz themselves could not agree on which Dolls looked like

28  them, even after narrowing their claim to just seven dolls.  For example,

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}          18          Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1   Ms. Pullins claimed that Ferocious and Fame Queen shared her likeness (TT

2   9/12/24 PM at 86:21-87:17), despite initially asserting that they "are definitely

3   Beyonce and Lady Gaga" (TT 9/12/24 AM at 100:7-12). And while

4   Ms. Womack believed that Roller Chick looked like bandmate Bahja Rodriguez

5   (TT 9/5/24 PM at 103:1-25), Ms. Pullins did not (TT 9/12/24 PM at 94:20-24).

6         Further, the Dolls display a wide range of looks and do not even resemble

7   each other. For example, Ms. Womack testified that the six Dolls below all

8   look like Ms. Rodriguez—including Uptown Girl, Virtuelle, and City Babe,

9   which are no longer accused by Counterclaimants. *See* TT 9/5/24 PM at 91:19-

10   25, 103:1-10, 110:14-111:3; TT 9/6/24 AM at 65:6-10, 64:12-20, 78:8-17.

**Miss Divine**               **Metal Chick**



**Roller Chick**     **Uptown Girl**     **Virtuelle**     **City Babe**

  

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}         19         Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    These six Dolls (five of which the jury found to infringe) have different

2    hair lengths, textures, and styles; skin tones; eye colors; outfits; and

3    accessories.[5]

4    As another example, Ms. Pullins testified that all four Dolls below

5    infringe on her likeness (TT 9/12/24 PM at 86:16-87:8):

**Fame Queen        Ferocious        Bhad Gurl        Prism**



15    Again, except for their shared body mold and cartoonishly large eyes, they are

16    entirely dissimilar.

17    Dr. Isaacson's scientific likeness survey further confirmed the Dolls are

18    not "readily identifiable" as the OMG Girlz. Not a single person surveyed

19    believed that the Dolls bore the likeness of any of the OMG Girlz. TT 9/18/24

20    PM at 13:25-14:2. To the extent respondents perceived a likeness of any

21    person, it was a smattering of third-party celebrities—indicating a lack of any

22    association between the OMG Girlz and their "looks." *See, e.g.*, *id.* at 14:6-12,

23    14:20-24, 15:5-9.

24    Counterclaimants introduced no contrary survey evidence, and cherry-

25    picked fan hearsay responses to their social media posts cannot establish the

---

[5] The OMG Girlz's identity cannot encompass every look they donned. *See Kirby*, 144 Cal. App. 4th at 56 ("[A] lack of stasis is inconsistent with a claim of appropriation.").

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}                                20

Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1   Dolls are "readily identifiable" as the OMG Girlz.  Those posts featured side-

2   by-side comparisons between the Dolls and the OMG Girlz (including Dolls

3   that are not at issue) and prompted viewers to find similarities.

4        Thus, the only reasonable conclusion is that MGA did not infringe on the

5   OMG Girlz' likeness, and MGA is entitled to Judgment on the misappropriation

6   claim.  At minimum, the Court should grant a new trial.

7   **C.    The OMG Girlz Did Not Establish That All Of MGA's Profits**

8   **Were Attributable To The Misappropriation.**

9        To the extent the Court is not inclined to grant MGA Judgment or a new trial

10  on the misappropriation claim for liability, the Court should order a new trial as to

11  the disgorgement award or, alternatively, reduce the award.

12       In the Equitable Issues Order, the Court adopted the jury's award of over $17

13  million in disgorgement of MGA's profits for the misappropriation claim—an

14  amount representing MGA's *entire* gross revenue on the seven accused Dolls.  Dkt.

15  1090 at 16.  While MGA continues to disagree that disgorgement is available at all

16  for a common law misappropriation claim (*see* Dkt. 1046 at 21), the award cannot

17  stand for the additional reason that Counterclaimants failed to meet *their burden* of

18  establishing that MGA's profits were attributable to the misappropriation of the

19  OMG Girlz' likeness.

20       California law is clear that "the plaintiff bears the burden of presenting proof

21  of the gross revenue attributable to the defendant's unauthorized use of the

22  plaintiff's likeness . . . ."  *Olive v. Gen. Nutrition Centers, Inc.*, 30 Cal. App. 5th

23  804, 814 (2018).[6]  The jury instruction regarding the damages for

24  Counterclaimants' misappropriation claim reflected this standard, as contained in

25

26  [6] Although *Olive* specifically discusses the language of California Civil Code
    § 3344 and CACI No. 1821, there is no reason that the burden of proof should differ
27  between the statutory and common law claims where the Court has accepted that
28  disgorgement is an available remedy for both.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                              21                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1   CACI No. 1821: Counterclaimants "may recover any profits that MGA received

2   *from the use of* the OMG Girlz' name or identity or likeness" that were not

3   otherwise taken into account in calculating actual damages.  Dkt. 1013 at 29

4   (Instruction No. 22) (emphasis added).

5          Here, Counterclaimants failed to present sufficient facts to meet their

6   burden.  The Court already observed as much: "A disgorgement award of

7   $17,872,253 presumes that the entirety of the sales of the seven infringing Dolls

8   were the result of the influence of the OMG Girlz and their trade dress.  *Such is*

9   *unlikely the case* . . . ."  Dkt. 1113 at 14 n.10 (emphasis added).  Indeed, as the

10  Court found in its Equitable Issues Order, Counterclaimants' only evidence of

11  attributability was consumer testimony.  Dkt. 1090 at 18.

12         At trial, four consumer witnesses testified that they purchased some

13  Dolls, vaguely in the range of four to 100 dolls, because they thought the Dolls

14  were based on the OMG Girlz.  *See* TT 9/10/24 AM at 38:11-18; Dkt. 935-2

15  (Campbell at 17:22-18:13); Dkt. 959-1 (Osborne at 156:10-13, 166:17-23,

16  174:8-13; Dkt. 935-1 (Wagner at 92:18-23, 95:20-96:20).  But in connection

17  with these various purchases, Counterclaimants presented a single receipt from

18  Ms. Alexander, totaling $138.54.  Tr. Ex. 659; TT 9/10/24 AM at 36:12-19.

19  The other three witnesses could not produce any receipts.  Dkt. 935-1 (Wagner

20  at 96:1-7); Dkt. 935-2 (Campbell at 54:13-16); Dkt. 959-1 (Osborne at 219:12-

21  17).

22         Three of these four consumer witnesses also admitted that the alleged

23  likeness to the OMG Girlz was *not* the sole reason they purchased MGA's

24  Dolls.  Ms. Alexander believed the Dolls were "a little pricey" but "worth it"

25  because there were "a lot of pieces" and "it was for her [daughter's] birthday."

26  TT 9/10/24 AM at 34:14-24, 37:7-12.  Ms. Osborne bought the Dolls for her

27  nieces, who were "really crazy about LOL Surprise! dolls and all the stuff that

28  goes with it."  Dkt. 959-1 (Osborne at 156:16-19).  Ms. Campbell continued to

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                    22                    Case No. 2:20-cv-11548-JVS-AGR
                                                     MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                     JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    purchase the Dolls, even after questioning whether the Dolls were connected to

2    the OMG Girlz, because the Dolls were "popular."  Dkt. 935-1 (Campbell at

3    138:6-18).

4        To the extent Counterclaimants rely on anecdotes from friends and

5    family, or online comments from fans that Counterclaimants solicited, such

6    evidence cannot demonstrate attributability.  There is no way to determine (and

7    Counterclaimants failed to show) that any of those individuals purchased the

8    Dolls at issue, let alone how many of those purchases were attributable to the

9    use of the OMG Girlz' likeness.

10       Therefore, the Court should reduce the amount of the Judgment to zero,

11   or at most, a nominal amount.  *See Payan*, 2024 WL 1676846, at *1.

12       **D.    <u>The Court Should Grant Judgment Or, In The Alternative, A</u>**

13          **<u>New Trial On The Trade Dress Claim.</u>**

14       The Court should grant judgment as a matter of law on the trade dress claim

15   on the following grounds or, alternatively, grant a new trial.

16          1.    <u>The OMG Girlz Do Not Have Protectable Trade Dress.</u>

17          *a)    Failure To Define Alleged Trade Dress With Specificity.*

18       As the Court explained, "[a] plaintiff must 'clearly articulate its claimed

19   trade dress to give a defendant sufficient notice.'"  Dkt. 326 at 12.  Thus, "a

20   vague, broad and non-specific definition of trade dress not only makes it

21   impossible for a court to apply the test of distinctiveness, but also raises the

22   danger of overprotection, with resulting anti-competitive injury to competitors."

23   1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed.).  *See*

24   *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d

25   535, 544-46 (S.D.N.Y. 2003).

26       At trial, the OMG Girlz defined their trade dress as comprising three

27   components (TT 9/4/24 AM at 52:17-25):

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                          23                  Case No. 2:20-cv-11548-JVS-AGR
                                                         MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                         JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR



The name "OMG GIRLZ"



Combinations of vibrant hair color,
primarily in bright pink, vivid
purple, and shades of blue

Experimental, fun, urban, and edgy
wardrobes and makeup, layered
clothing, voluminous skirts (i.e.,
tutus and other poofy skirts),
and bold, over the top
clothing and accessories





© 2023 Winston & Strawn LLP
MGAE0301005
Trial Exhibit 5521

But Counterclaimants' witnesses testified that the OMG Girlz were in their trade dress *even without* meeting all three conditions. *See, e.g.*, *id.* at 100:17-20 (infringe without "colored hair"); *id.* at 100:21-25 (infringe without "voluminous skirts"). Counterclaimants also indicated there was a fourth, unclaimed element of their trade dress (the "lifestyle of [the OMG Girlz] being singers and artists"), that may or may not be required. *Id.* at 54:20-21, 101:1-7; TT 9/6/24 PM at 12:11-13.

In particular, the third element of the alleged trade dress emphasizes the vagueness of Counterclaimants' claim. According to Counterclaimants, whether a look satisfies this third element is wholly in the eye of the beholder. *See, e.g.*, TT 9/6/24 AM at 127:9-11, 128:24-25 (depending on whatever the OMG Girlz wore or tried); TT 9/6/24 PM at 84:3-85:7 ("experimental" and "fun" are "subjective" and based "whatever a person's opinion might be").

          b)    *Failure To Show Alleged Trade Dress Is Nonfunctional.*

Functional elements are not protectable. 15 U.S.C. § 1125(a)(3). Aesthetic elements of a trade dress are "functional" if they "serve an aesthetic purpose wholly independent of any source-identifying function." *Au-Tomotive*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}    24    Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  *Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1073 (9th Cir.

2  2006)).

3      Here, the OMG Girlz' ever-changing image is simply fashion and

4  decoration. *See, e.g.*, TT 9/4/24 AM at 53:16-18 (the OMG Girlz "changed

5  [their] looks according to . . . timing, growing, just experimenting with being an

6  artist"). Their various "looks" otherwise played no source-identifying role. *See*

7  *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1148-50 (C.D. Cal. 2009)

8  (toys' fanciful coloring and facial features served an "aesthetic function").

9              c)      *Failure To Use "OMG Girlz" As A Visual Element.*

10      A trade dress claim requires examination of "the overall visual

11  impression that the combination and arrangement of those elements create."

12  Dkt. 326 at 9 (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252,

13  1259 (9th Cir. 2001)). Thus, the brand name, trademark, or logo is part of the

14  trade dress only if it is part of the "visual image" of the product or packaging.

15  *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d. Cir.

16  1992).

17      Counterclaimants confirmed that the phrase "OMG Girlz" was a required

18  trade dress element and provided examples of their trade dress through photos

19  and videos, including the following:




UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    25                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    MGA'S MEMO OF POINTS AND AUTHORITIES FOR
                                                                    JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR



But as these exhibits show, the name "OMG Girlz" was ***not*** part of the "visual impression" of the claimed trade dress.[7] *See, e.g.*, TT 9/4/24 AM at 91:9-14.

     d) *Failure To Consistently Use The Alleged Trade Dress*.

Counterclaimants must "articulate a specific trade dress, and then [] demonstrate that [they have], in fact, consistently used that trade dress." *Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F. Supp. 477, 486 (S.D.N.Y. 1998). If they cannot show that their appearance "ha[s] a 'consistent overall look,' the trade dress that is allegedly infringed 'does not exist.'" *Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*, No. 95 Civ. 4008, 1997 WL 749388, at \*4 (S.D.N.Y. Dec. 3, 1997); *see Crafty Productions, Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 882 n.5 (S.D. Cal. 2019).

This "consistent overall look" test makes sense because a trade dress that is comprised of an "incalculable variety of appearances" and an "ever-evolving

---

[7] To the extent Counterclaimants point to other examples, where the name "OMG Girlz" appears somewhere on their outfit or background, that is of no moment. Their testimony establishes they also claim their trade dress includes looks that do ***not*** visually include "OMG Girlz."

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}

26

Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

'look'" precludes any "source-identifying significance in the minds of the consuming public." *Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, 667 F. Supp. 1221, 1226, 1231 (N.D. Ill. 1987). *See Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1328 (Fed. Cir. 1999) (absent "stable visual appearance," trade dress cannot acquire secondary meaning.).

Here, the OMG Girlz' look and style were constantly changing, resulting in "thousands of looks." TT 9/4/24 AM at 53:18-21; TT 9/6/24 PM at 81:21-82:2. Ms. Womack confirmed that any outfit the OMG Girlz wore "publicly at a performance, ***even if it's once***, it's part of their ***signature look***." TT 9/6/24 PM at 33:14-21 (emphases added).

The OMG Girlz' looks include everything from colorful skirts to jeans, from leather jackets to fitted dresses, and from wedge boots to high heels. *See, e.g.*, TT 9/4/24 PM at 24:13-25:17; TT 9/6/24 AM at 78:22-79:7, 121:14; 9/6/24 PM at 81:4-5. Their hair colors also fluctuated from green, blond, black, red, auburn/coral, and brown. *See* TT 9/6/24 PM at 80:14-16; TT 9/6/24 AM at 65:19-20, 127:24-25. The OMG Girlz were not even consistent on their name, which changed in 2013 to just "OMG." TT 9/4/24 AM at 127:24-128:11.

### 2. Counterclaimants Did Not Establish Secondary Meaning.

Counterclaimants failed to provide evidence that their claimed trade dress has secondary meaning, *i.e.*, that "a substantial segment of consumers and potential consumers" associates their trade dress with a single source. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985).[8] While Counterclaimants introduced evidence of some popularity, this was not tied to their alleged trade dress, and popularity is not synonymous with secondary

---

[8] As the Court ruled (Dkt. 326 at 9), the claimed trade dress, which is more akin to product "design" than "packaging," can only qualify as distinctive with a showing of secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214 (2000).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                27                Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  meaning. *See* 5 McCarthy § 32:190; *Goodyear Tire and Rubber Co. v. Interco*

2  *Tire Corp.*, 49 U.S.P.Q.2d 1705, at \*16 (TTAB 1998).

3      Significantly, Counterclaimants failed to introduce a survey, which is

4  "the most persuasive evidence of secondary meaning." *Levi Strauss*, 778 F.2d

5  at 1358.  Although they relied on online comments and responses to an

6  Instagram "poll," those are not a survey, as the Court made clear.  *See* TT

7  9/4/24 AM at 13:4-5, 78:21-85:6; TT 9/10/24 AM at 10:14-22, 14:18-19; TT

8  9/12/24 AM at 113:6-115:2; *see also* TT 9/18/24 at 111:6-112:16 (social media

9  posts not correct survey methodology).  Nor is Counterclaimants' social media

10  fanbase the representative "consuming public" of MGA's Dolls.  *See Jada*

11  *Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).

12          3.    <u>Counterclaimants Abandoned Their Claimed Trade Dress</u>.

13      Nonuse from the time the OMG Girlz disbanded in 2015 to their reunion in

14  2023 is *prima facie* evidence under 15 U.S.C. § 1127 of abandonment, which

15  Counterclaimants failed to rebut.  TT 9/6/24 AM at 109:17-110:4, 117:4-15; TT

16  9/12/24 AM at 95:3-12.  They merely mischaracterized the disbandment as a

17  "pause" (TT 9/6/24 AM at 117:22-118:20), but a "subjective affirmative intent not

18  to abandon" is insufficient.  *See Electro Source, LLC v. Brandess–Kalt–Aetna*

19  *Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006).

20          4.    <u>Counterclaimants Have Not Shown Likelihood Of Confusion</u>.

21      Even if there ***were*** protectable trade dress (which there is not), the

22  evidence cannot support a finding that a "'reasonably prudent' consumer in the

23  marketplace is likely to be confused as to the origin of the good or service

24  bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135,

25  1140 (9th Cir. 2002).  To evaluate likelihood of confusion, the Ninth Circuit

26  considers the eight "*Sleekcraft* factors." *See AMF Inc. v. Sleekcraft Boats*, 599

27  F.2d 341, 346 (9th Cir. 1979).

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}               28             Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1              *a)      Dissimilar "Marks" And Weak Trade Dress.*

2       The first two *Sleekcraft* factors (similarity and strength of the trade dress)

3  favor MGA.  Neither the OMG Girlz nor the Dolls have a singular, distinctive

4  look such that one can look like the other.  *See GoTo.Com, Inc. v. Walt Disney*

5  *Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (similarity has "always been

6  considered a critical question").  No Doll bears the name "OMG Girlz," and a

7  collective comparison yields only patchy "similarities" found in many other

8  toys and entertainers.  *See, e.g.*, TT 9/13/24 AM at 10:10-15; Dkt. 959-1

9  (Osborne at 103:18-24, 208:16-20).

10      Thus, the "total effect" projected by the OMG Girlz, on the one hand, and

11  the Dolls on the other "is distinctly different, obviating any likelihood of

12  confusion[.]"  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th

13  Cir. 1993).

14             *b)      Insufficient Evidence Of Consumer Confusion.*

15      In assessing likelihood of confusion, courts have "consistently expressed

16  a preference for 'an objective survey of the public's perception.'"  *Amazing*

17  *Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010); *see*

18  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998) (some

19  evidence of actual confusion outweighed by defendants' survey evidence and

20  the presumption that plaintiffs' failure to conduct a survey indicates the results

21  of such a survey would be unfavorable for plaintiffs).

22      Dr. Isaacson conducted a scientific survey of more than 1,500 potential

23  purchasers of fashion dolls to measure likelihood of confusion.  TT 9/18/24 AM

24  at 109:2-21, 124:16-17.  He tested multiple Dolls in various ways, with and

25  without the packaging (*id.* at 105:19-106:24), and the results were unequivocal:

26  No one associated the Dolls with the OMG Girlz.  *Id.* at 131:1-7.

27      Again, Counterclaimants presented no contrary survey evidence, and

28  their only evidence of supposed confusion came from friends, family, and fans

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                29                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  who responded to a set of leading social media posts.  *See, e.g.*, TT 9/4/24 AM

2  at 78:21-85:6.  These individuals do not represent the "consuming public," and

3  the small amount of alleged confusion is *de minimis* given the "volume of

4  business."[9]  *See Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606-

5  07 (9th Cir. 1987).

6              c)      *Remaining Factors Favored MGA Or Were Neutral.*

7       As the Court recognized, this case involves unrelated goods—musical

8  recordings and entertainment service on the one hand, and toys and dolls on the

9  other.  *See* Dkt. 1113 at 11 (finding "little to no evidence at trial that [the

10  parties] operate in a competing industry").  Counterclaimants thus presented no

11  evidence of a "strong possibility of expansion into competing markets."  *See*

12  *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005).

13       The parties also used different marketing channels.  MGA sold the Dolls

14  online and through "big box" retailers like Wal-Mart and Target, while the

15  OMG Girlz primarily sold their music through tours and platforms like

16  YouTube and Spotify.  *See* TT 9/11/24 AM at 42:19-20; TT 9/12/24 AM at

17  94:21-95:1, 105:19-22.

18       Further, Counterclaimants did not present evidence as to whether

19  "reasonably prudent consumer[s]" of MGA's Dolls would be less discerning

20  and thus more easily confused.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent.*

21  *Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).  And MGA did not purposely copy

22  their alleged trade dress.  Dkt. 1090 at 8, 10, 23.

23       Accordingly, the only reasonable conclusion on this record is that there

24  was no infringement, and MGA is entitled to Judgment on the trade dress claim

25

26  [9] MGA maintains its position that this evidence was inadmissible.  *See* Dkts. 682,

27  939, 968.  In any event, there was no evidence that these individuals (if they were
    indeed people and not bots) ever purchased any Dolls or were reacting to the Dolls

28  at issue here.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                                    30                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  or, alternatively, a new trial.

2      **E.**     **The Court Should Grant Judgment Or, In The Alternative, A**

3               **New Trial On All Claims Against Mr. Larian.**

4      Counterclaimants asserted claims against Mr. Larian based on the theory

5  that he "is principally responsible as the driving force for making the decisions

6  to distribute OMG Dolls that infringe on the OMG Girlz brand." Dkt. 63 at

7  ¶ 22. But Counterclaimants waived that theory, along with any potential

8  evidence regarding Mr. Larian, by failing to include them in the Final Pretrial

9  Conference Order (Dkt. 924). *See United States v. First Nat'l Bank of Circle*,

10  652 F.2d 882, 886-87 (9th Cir. 1981) (citing Rule 16). Counterclaimants'

11  proposed jury instructions and verdict form did not even address Mr. Larian.

12  *See* Dkts. 698, 928, 929, 972, 981. And the final jury instructions and verdict

13  forms are silent as to his individual liability. *See* Dkts. 1009, 1011, 1013.

14      In any event, no facts were developed at trial to support a claim against

15  Mr. Larian individually. On the contrary, Mr. Harris posited that Mr. Larian

16  was ***not*** responsible for the alleged infringement. TT 9/6/24 PM at 65:7-18.

17      **F.**     **The Court Should Grant Judgment Or, In the Alternative, A**

18               **New Trial On MGA's Claims For Declaratory Judgment.**

19      As explained above, MGA did not infringe Defendants' intellectual property.

20  The Court should therefore grant Judgment on MGA's claim for declaratory

21  judgment, 28 U.S.C. § 2201(a) (Dkt. 16), as to the 15 Dolls for which the jury

22  found infringement and/or misappropriation. Dkt. 1009. At minimum, the Court

23  should enter judgment for MGA on the eight Dolls that the jury found to infringe

24  Counterclaimants' trade dress and/or misappropriate the OMG Girlz' likeness, but

25  for which Counterclaimants ***did not*** seek liability and "abandoned."[10] *See* TT

26  9/18/24 AM 7:21-22, 9:17-23; 12:2-4.

---

[10] These eight Dolls are Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss
Independent, City Babe, Shadow, and Miss Glam.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}                    31                  Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, MGA respectfully requests that the Court vacate the punitive award and award MGA Judgment or, at minimum, grant a new trial or issue a remittitur.

Dated: May 27, 2025

UMBERG ZIPSER LLP

_____

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

Umberg Zipser llp
Attorneys At Law
Irvine

{288584.14}                                     32                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1

**CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2**

2   The undersigned, counsel of record for MGA, certifies that this brief contains

3 6,999 words, which complies with the word limit of L.R. 11-6.1.

4

5 Dated: May 27, 2025     UMBERG ZIPSER LLP

6

7

8                                   _____

9                          Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and

10                          Counter-Defendant Isaac Larian

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{288584.14}          33          Case No. 2:20-cv-11548-JVS-AGR
MGA'S MEMO OF POINTS AND AUTHORITIES FOR
JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR