John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br><br>**DEFENDANTS' AND COUNTER-CLAIMANTS' RESPONSE TO PLAINTIFF AND COUNTER-DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50(b)) OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR REMITTITUR (DKT. NO. 1121)** |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | Judge: Hon. James V. Selna<br><br>Complaint Filed: December 20, 2020<br>Trial Date:          September 3, 2024<br><br>Hearing Date:     June 30, 2025<br>Hearing Time:    1:30 P.M. |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ......................................................................................... 1

   A. Punitive Damages Should Not Be Disturbed........................................ 1

      1. Punitive Damages Are Available ............................................... 1

      2. MGA Waived Any Rule 50 Arguments on Punitive Damages.................................................................................. 1

          a. The Court's Equitable Finding Does Not Allow for JMOL of a Jury Verdict ................................................ 2

          b. The Jury's Punitive Damages Award Is Supported .......... 3

      3. The Punitive Damages Award Comports With Due Process ................................................................................... 5

          a. Punitive Damages Are Available Even Without Compensatory Damages........................................................ 5

          b. The Punitive Damages Are Below Constitutional Limits................................................................................. 7

              (1) Reprehensible Conduct ............................................ 8

              (2) Disparity Between the Harm and the Punitive Damages ................................................................ 12

              (3) Difference Between the Punitive Damages and the Civil Penalties Authorized in Comparable Cases ........................................................................ 12

      4. The Court Should Not Issue a Remittitur ................................. 12

   B. MGA's Motion for JMOL or a New Trial on the Misappropriation Claim Should Be Denied............................................................. 13

      1. The Harris Parties Have Standing ............................................ 13

      2. MGA's Misappropriation Is Not Protected by the First Amendment............................................................................ 13

      3. MGA's Misappropriation Harmed the OMG Girlz................... 14

      4. There Was Sufficient Evidence of Misappropriation................. 15

   C. There Is No Basis for a New Trial on Disgorgement ............................ 15

D.    MGA's Motion for JMOL or a New Trial on the Trade Dress Claim Should Be Denied.................................................16

    1.    The Trade Dress Is Protectible .................................16

    2.    Secondary Meaning Was Proven..............................19

    3.    There Was No Abandonment ....................................20

    4.    Likelihood of Confusion Was Proven .......................20

E.    MGA's Motion for JMOL or a New Trial for Mr. Larian Should Be Denied................................................................22

F.    MGA's Motion for JMOL or a New Trial for Its Declaratory Judgment Claim Should Be Denied.....................................23

III.    CONCLUSION ...............................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*A.D. v. Calif. Highway Patrol*
   712 F.3d 446 (9th Cir. 2013) ................................................................... 3

*Alberts v. Liberty Life Assurance Co. of Bos.*
   65 F. Supp. 3d 790 (N.D. Cal. 2014) ...................................................... 9

*Bardis v. Oates*
   119 Cal. App. 4th 1 (2004) .................................................................... 13

*BMW of N. Am., Inc. v. Gore*
   517 U.S. 559 (1996) ................................................................................ 8

*Brewer v. Second Baptist Church*
   32 Cal.2d 791 (1948) ............................................................................... 5

*Cartier, Inc. v. Sardell Jewelry, Inc.*
   294 F. App'x 615 (2d Cir. 2008) .......................................................... 20

*Cheung v. Daley*
   35 Cal.App.4th 1673 (1995) .................................................................... 6

*Committee for Idaho's High Desert v. Yost*
   92 F.3d 814 (9th Cir. 1996) .................................................................. 20

*Eastwood v. Sera Labs, Inc.*
   2021 WL 4439221 (C.D. Cal. June 23, 2021) ........................................ 1

*Escriba v. Foster Poultry Farms, Inc.*
   743 F.3d 1236 (9th Cir. 2014) ................................................................ 3

*Everett H. v. Dry Creek Joint Elem. Sch. Dist.*
   No. 2:13-cv-00889-MCE-DB, 2018 U.S. Dist. LEXIS 128366 (E.D. Cal.
   July 30, 2018) ...................................................................................... 2, 3

*Filipino Yellow Pages, Inc. v. Asian Journal Pubs., Inc.*
   198 F.3d 1143 (9th Cir. 1999) .............................................................. 20

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
   618 F.3d 1025 (9th Cir. 2010) .............................................................. 22

*Freund v. Nycomed Amersham*
  347 F.3d 752 (9th Cir. 2003) ............................................................2, 17

*Harte–Hanks Comm., Inc. v. Connaughton*
  491 U.S. 657 (1989) ....................................................................................3

*Haun v. Hyman*
  223 Cal. App. 2d 615 (Ct. App. 1963) ....................................................11

*Hoffman v. Cap. Cities/ABC, Inc.*
  255 F.3d 1180 (9th Cir. 2001) ....................................................................3

*Horn v. Guar. Chevrolet Motors*
  270 Cal. App. 2d 477 (Ct. App. 1969) ......................................................6

*In re Javahery*
  No. 2:14-BK-33249-DS, 2017 WL 971780 (B.A.P. 9th Cir. Mar. 14,
  2017), *aff'd*, 742 F. App'x 307 (9th Cir. 2018)........................................6

*Kane v. PaCap Aviation Fin., LLC*
  No. CV 19-00574 ........................................................................................2

*Lopez v. Watchtower Bible & Tract Soc'y of New York, Inc.*
  246 Cal. App. 4th 566 (2016) ..................................................................10

*Lytle v. Household Mfg., Inc.*
  494 U.S. 545 (1990) ....................................................................................1

*MJT Sec., LLC v. Toronto-Dominion Bank*
  No. 04-16362, 2006 WL 1236661 (9th Cir. May 9, 2006) ......................6

*Ortiz v. Georgia Pac.*
  973 F. Supp. 2d 1162 (E.D. Cal. 2013) ..................................................11

*Planned Parenthood Inc. v. Am. Coal. of Life Activists*
  422 F.3d 949 (9th Cir. 2005)......................................................................8

*Playboy Enters. v. Netscape Comms. Corp.*
  354 F.3d 1020 (9th Cir. 2004) ....................................................................5

*Reeves v. Sanderson Plumbing Products, Inc.*
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ....................22

*Riley v. Volkswagen Grp. of Am., Inc.*
  51 F.4th 896 (9th Cir. 2022)....................................................................8, 9

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*
  251 F. Supp. 3d 1288 (N.D. Cal. 2017), *aff'd*, 786 Fed. Appx. 662 (9th Cir. 2019) .................................................................................... 22

*Thane Intern., Inc. v. Trek Bicycle Corp.*
  305 F.3d 894 (9th Cir. 2002) ...................................................... 22

*Tilkey v. Allstate Ins. Co.*
  56 Cal. App. 5th 521 (2020) ........................................................ 9

*Tools USA and Equip. Co. v. Champ Frame Straightening Equip. Inc.*
  87 F.3d 654 (4th Cir. 1996) ........................................................ 21

*Topanga Corp. v. Gentile*
  249 Cal. App. 2d 681 (Ct. App. 1967) .................................... 5, 6

*Waits v. Frito-Lay, Inc.*
  978 F.2d 1093 (9th Cir. 1992) ................................................ 1, 3

*Weiss v. Blumencranc*
  61 Cal. App. 3d 536 (Ct. App. 1976) ......................................... 6

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*
  758 F.3d 1069 (9th Cir. 2014), *as amended* (Mar. 11, 2014) ............ 21

*Yates v. Nimeh*
  486 F. Supp. 2d 1084 (N.D. Cal. 2007) ...................................... 6

*Zhang v. Am. Gem Seafoods, Inc.*
  339 F.3d 1020 (9th Cir. 2003) .................................................. 13

*Zirpel v. Alki David Prods., Inc.*
  93 Cal. App. 5th 563 (2023) ....................................................... 9

**Statutes**

15 U.S.C. § 1127 ............................................................................ 21

California Civil Code § 3344 .................................................... 1, 13

**Other Authorities**

Local Rule 7-18 ....................................................................... 5, 17

Fed. R. Civ. P. 50 ............................................................................ 2

Fed. R. Civ. P. 59(e) ................................................................................................17

## I.     INTRODUCTION

MGA's JMOL and New Trial Motion asserts many issues, most of which the Court has previously considered and rejected. It should do so again.

MGA did not move for JMOL on punitive damages pre-verdict, so cannot do so now. Yet MGA asks the Court to ignore the binding jury verdict because the Court found willfulness, a separate issue, a close call. Putting aside the "no JMOL" problem, punitive damages were not against the great weight of the evidence such that a new trial would be warranted. MGA's remaining arguments are a rehash of its jury instruction objections, which were overruled.

MGA's arguments on the OMG Girlz' substantive claims should also be rejected because there was sufficient evidence and no basis to retry them. MGA recites its limited evidence, ignoring the contrary evidence and the fact that all inferences are to be drawn in the OMG Girlz' favor. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 (1990). Thus, there is no basis for JMOL, nor was the result a miscarriage of justice. MGA's Motion should be denied.

## II.     ARGUMENT

### A.     Punitive Damages Should Not Be Disturbed

#### 1.     Punitive Damages Are Available

For the reasons stated in previous briefs and this Court's orders, punitive damages are available. Dkt. 1090 at 18 (citing *Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1104 (9th Cir. 1992); *Eastwood v. Sera Labs, Inc*., 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021); *see also* Dkt. 1064 at 14-16.

#### 2.     MGA Waived Rule 50 Arguments on Punitive Damages

MGA argues the Court should vacate the punitive damages award because the Court found MGA did not act willfully as to trade dress infringement. Dkt. 1121 at 10-11. This conflates the Court's and jury's findings on different claims and remedies (disgorgement vs. punitive damages). Punitive damages were tried to the jury and awarded by them. Dkt. 1090 at 18-20. Critically, MGA did not move for JMOL on

this pre-verdict, and therefore cannot raise it post-verdict. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). If it had, its motion would still fail because overturning the jury's verdict "is proper only when 'the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Everett H. v. Dry Creek Joint Elem. Sch. Dist.*, 2018 U.S. Dist. LEXIS 128366, at *4 (E.D. Cal. July 30, 2018).

### a.    Findings on Equitable Issues Cannot Override a Jury Verdict

MGA does not attempt to show that no reasonable juror could have found for OMG Girlz. Dkt. 1121-1 at 11. Instead, MGA asserts that the jury's verdict must be vacated because this Court separately weighed the willfulness evidence presented at trial as part of its disgorgement analysis. *Id.* The OMG Girlz believe the jury's verdict was binding on that issue,[1] but regardless, the Court's weighing of the willfulness evidence on a separate equitable issue cannot be used to overturn a jury finding.

In assessing JMOL, the jury's verdict is entitled to "significant deference." *A.D. v. Calif. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). The verdict must be upheld if there is sufficient evidence to support it, even if contrary findings are possible. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014). The Court "should not make credibility determinations or weigh the evidence, and further should construe all evidence in the light most favoring the nonmoving party." *Everett.*, 2018 U.S. Dist. LEXIS 128366, at *4. The Court's equitable finding did *not* construe all evidence in the light most favoring OMG Girlz. Dkt. 1090 at 5-8 ("Therefore, **on balance**, the evidence **tends to weigh against** a finding of willfulness."). The Court later noted that its "[willfulness] decision was a narrow one"

---

[1] The willfulness finding was part of the infringement determination, since it is a *Sleekcraft* factor, and thus must be "respected by the court when it decides the equitable issues." *Kane v. PaCap Aviation Fin., LLC*, 2023 WL 5499994, at *8 (D. Haw. Aug. 25, 2023)

and that the evidence presented at trial "tends to support a narrative that MGA, in fact, copies the likeness of famous celebrities when designing their dolls." *Id.* at 10-11. Thus, MGA cannot repurpose the Court's analysis for JMOL. MGA does not articulate any other arguments to overturn the jury verdict on a JMOL (or provide any analysis whatsoever as to why a reasonable jury could not have found MGA acted with malice, oppression, or fraud), so the Court cannot vacate the punitive award or order a new trial.

### b.     The Punitive Damages Award Is Supported

MGA also loses on the evidence. Conduct that supports punitive damages in misappropriation of name, image, likeness cases includes reckless or wanton disregard of legal rights, intentional misconduct, or actions done with malice. *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (reviewing malice finding on the basis of "whether the district court was correct in concluding that LAM acted with 'reckless disregard for the truth' or a 'high degree of awareness of probable falsity.'") *citing Harte–Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). In *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1105 (9th Cir. 1992), the Ninth Circuit explained that punitive damages for a misappropriation of identity claim will be upheld if a "rational jury could have found a high probability that the defendants acted with malice, i.e., despicably and with willful and conscious disregard of Waits' rights. . . Despicability reflects a moral judgment, 'conscious disregard' a state of mind."

At trial, the jury saw MGA's email exchange and heard the testimony of Ms. Consorti, the lead designer, implausibly having specific memories of ***not*** clicking a link five years ago, and of Ms. Moshe/Brenner's uncredible excuse for not reaching out to the OMG Girlz because she believed the music video (teens at an amusement park) was age inappropriate. TT 9/10/2024(PM) at 85; *see also* TT 9/13/2024(AM) at 80-81. MGA's CEO and designers testified that despite knowing of the OMG Girlz group in 2019 *and having confusing a reference to the dolls*, MGA took no steps to

avoid brand confusion. TT 9/10/2024(PM) at 49; TT 9/13/2024(AM) at 79. A year later, after receiving a cease and desist letter, MGA deliberately did no investigation, and made no changes. TT 9/4/2024(PM) at 107. MGA then went on to release three new dolls—the "Queens"—which bore 1:1 likeness with the OMG Girlz. The jury was also able to observe the witnesses, including Mr. Larian's hostile and malicious behavior—and infer bad intent from his and MGA's actions. TT 9/19/2024(AM) at 111:13-22; TT 9/19/2024(PM) at 51:24-52:4.

The jury also heard evidence that MGA's target market overlapped with the OMG Girlz' audience, and that consumers purchased the dolls believing they were supporting the OMG Girlz, or that they were sponsored or in a business relationship. *See, e.g.*, TT 9/13/2024(AM) at 81; TT 9/10/2024(AM) at 34-35. This is evidence the jury could rely on to determine that MGA was intentionally passing off. *See Playboy Enters. v. Netscape Comms. Corp.*, 354 F.3d at 1028 ("A defendant's intent to confuse constitutes probative evidence of likely confusion: Courts assume that the defendant's intentions were carried out successfully.").

The jury also rejected MGA's purported belief that it did not infringe. Here, MGA's attorney signed a declaration admitting that he spent less than 10 days asking a handful of employees whether anyone had visited with the Harrises in Atlanta more than 10 years ago but did no diligence as to whether the consumers were confused or into the inspirations for the dolls. (Dkt. 272-1 at ¶¶ 4–7). MGA's "reasonable belief" story also lost all credibility when its designers and CEO claimed there was *no* similarity between the dolls and girls, followed by doing the same with obvious rip-offs of Lady Gaga, Aubrey Hepburn, Elton John, and Michael Jackson claiming they were *completely unique* characters created by MGA. This was further evidence of MGA's willful state of mind. TT 9/18/2024(AM) at 32:5-34:14; TT 9/18/2024(AM) at 61:23-62:19.

MGA did not and cannot show a complete absence of probative facts as would be necessary to overturn the jury's finding of malice, fraud, or oppression.

### 3.    The Punitive Damages Award Comports With Due Process

#### a.    Punitive Damages Are Available Without Compensatory Damages

"The requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed." *Topanga Corp. v. Gentile*, 249 Cal. App. 2d 681, 691 (Ct. App. 1967). "The rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual damages is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed." *Id*. In *Topanga*, the appellate court affirmed plaintiff's entitlement to punitive damages even though the trial court (as trier of fact) awarded no compensatory damages. *Topanga*, 249 Cal. App. 2d at 691. There, the trial court had ordered defendants to surrender part of their shareholder interest to plaintiff (akin to surrendering profits here). Since *Topanga*, numerous state, federal district, and federal appellate courts have awarded (or affirmed) punitive damages without compensatory damages. *Weiss v. Blumencranc*, 61 Cal. App. 3d 536, 542 (Ct. App. 1976) (finding punitive damages award proper based on equitable order of dissolution and accounting, but no compensatory damages); *Horn v. Guar. Chevrolet Motors*, 270 Cal. App. 2d 477, 484 (Ct. App. 1969) (affirming award of punitive damages where plaintiff sought equitable recission, and had to return money to defendant, but where the jury found defendant acted with oppression, fraud, or malice); *Yates v. Nimeh*, 486 F. Supp. 2d 1084, 1086 (N.D. Cal. 2007) (allowing the punitive damages claim noting that "[t]he requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed."); *In re Javahery*, 2017 WL 971780, at *8 (B.A.P. 9th Cir. Mar. 14, 2017), *aff'd*, 742 F. App'x 307 (9th Cir. 2018) ("Carefully parsed, California decisional law does not require that there be an express award of actual damages to support an award of punitive damages, but rather that the plaintiff has suffered injuries from a tortious act, even if compensatory damages were not

awarded."); *MJT Sec., LLC v. Toronto-Dominion Bank*, 2006 WL 1236661, at *3 (9th Cir. May 9, 2006) (holding plaintiff could seek punitive damages even though it did not seek actual damages).

Other California courts have said that an award of compensatory damages *or its equivalent* is a prerequisite to an award of punitive damages, noting restitution, an offset, damages presumed by law, or nominal damages, are sufficient. *Cheung v. Daley*, 35 Cal.App.4th 1673, 1677 n.8 (1995). In ruling on MGA's summary judgment motion and again on motions in limine, the Court noted that, to the extent the OMG Girlz "seek profits ***as a surrogate measure of their own damages***, they may present evidence of the profits at trial." Dkt. 323 at 32-33 (emphasis added); Dkt. 502 at 8. The jury was instructed that "the OMG Girlz must prove the amount of their damages" and that MGA's profits were "damages claimed by the OMG Girlz" for misappropriation. Dkt. 1013 at 29. Thus the jury understood the award of MGA's profits were meant to compensate the OMG Girlz for MGA's conduct. Whether § 3294 requires only a tortious act by the defendant, or it requires an award of compensatory damages *or its equivalent*, under California law, the jury's finding meets the requirement for awarding punitive damages.

MGA's cited cases are inapposite. *See* Dkt. 1121-1 at 11-12. In *Sherman-Bey v. Marshall*, an inmate sought religious accommodations and punitive damages as his *only* requested monetary relief. 2014 WL 3557202, at *3 (C.D. Cal. Mar. 14, 2014). The court analyzed this under section 1983, and did not apply or interpret California law on punitive damages. *Id*. In *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, the Seventh Circuit (applying Wisconsin law) found the plaintiff was "***not*** barred from recovering punitive damages simply because compensatory damages were awarded [based on defendant's] benefit rather than any injury [plaintiff] sustained." 980 F.3d 1117, 1143 (7th Cir. 2020). MGA's remaining cited cases stand for the unremarkable proposition that punitive damages must bear a reasonable relationship and be proportional with the damages awarded. Dkt. 1121-1 at 12. As discussed below, the

1    punitive damages award is three times the disgorgement award—well within the

2    proportional limits for punitive damages.

3            **b.**    **The Punitive Damages Are Below Constitutional Limits**

4            MGA does not cite a single case suggesting punitive damages of three times

5    the awarded profits is unconstitutional. As the Ninth Circuit has explained, "[s]ingle-

6    digit multipliers are more likely to comport with due process, while still achieving the

7    State's goals of deterrence and retribution." *Riley v. Volkswagen Grp. of Am., Inc.*, 51

8    F.4th 896, 902 (9th Cir. 2022). In *Planned Parenthood of Columbia/Willamette Inc.*

9    *v. Am. Coal. of Life Activists*, the Ninth Circuit held that a 12.5 to 1 ratio of punitive

10   to awarded damages "bears a somewhat reasonable relationship to the actual harm

11   caused" and then stated "[i]n cases where there are significant economic damages and

12   punitive damages are warranted but behavior is not particularly egregious, a ratio of

13   up to 4 to 1 serves as a good proxy for the limits of constitutionality." 422 F.3d 949,

14   962 (9th Cir. 2005). Here the jury found the conduct egregious, but the ratio calculated

15   was less than the 4 to 1 limit for conduct that is *not* particularly egregious. *See id.*

16   There is no due process issue.

17           The Supreme Court has indicated three indicia should be considered to review

18   whether a punitive damages award comports with due process: (1) the degree of

19   reprehensibility of the conduct; (2) the disparity between the harm or potential harm

20   suffered by plaintiff and the punitive damages award; and (3) the difference between

21   the punitive damages and the civil penalties authorized or imposed in comparable

22   cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-575 (1996). The "most

23   important indicium . . . is the degree of reprehensibility of the defendant's conduct."

24   *Id.* at 575. MGA's analysis of all three factors is only in a single paragraph consisting

25   of nine lines. Dkt. 1121-1 at 13:15-23. Nothing in this cursory attorney argument

26   justifies vacating the verdict.

27

28

1

### (1)    Reprehensible Conduct

2          MGA argues that the first *Gore* factor favors MGA because the Court found

3    that MGA did not act willfully. But *the jury* found that MGA acted willfully and with

4    malice, oppression, or fraud, based on substantial evidence. Dkt. 1009 at 5-6; *supra*,

5    Section IIA.2.b. The Ninth Circuit considers whether: "the harm caused was physical

6    as opposed to economic; the tortious conduct evinced an indifference to or a reckless

7    disregard of the health or safety of others; the target of the conduct had financial

8    vulnerability; the conduct involved repeated actions or was an isolated incident; and

9    the harm was the result of intentional malice, trickery, or deceit, or mere accident."

10   *Riley v. Volkswagen Grp. of Am., Inc*., 51 F.4th 896, 900 (9th Cir. 2022). These are

11   the same factors that were given to the jury to determine how reprehensible MGA's

12   conduct was. Dkt. 1014.

13         On the first factor, for purposes of analyzing punitive damages and

14   reprehensible conduct "[h]arm is physical when it affects emotional and mental

15   health." *Tilkey v. Allstate Ins. Co*., 56 Cal. App. 5th 521, 559 (2020). The jury heard

16   Ms. Pullins' emotional hurt from seeing dolls using the OMG Girlz brand and

17   avoiding the locations where they are sold. TT 9/12/2024(AM) at 102. "Plaintiff need

18   not ultimately prove a subjective intent to harm, as malice in fact, sufficient to support

19   an award of punitive damages ... may be established by a showing that the defendant's

20   wrongful conduct was willful, intentional, and done in reckless disregard of its

21   possible results." *Alberts v. Liberty Life Assurance Co. of Bos*., 65 F. Supp. 3d 790,

22   796 (N.D. Cal. 2014). MGA and Mr. Larian repeatedly called the OMG Girlz

23   "nowhere" and "extortionists." *See, e.g.*, TT 9/4/2024(PM) at 105; TT 9/19/2024(PM)

24   at 51-52. In *Zirpel v. Alki David Prods., Inc*., 93 Cal. App. 5th 563, 580 (2023), the

25   court found that yelling obscenities is reprehensible conduct. MGA's and Mr. Larian's

26   conduct was similarly insulting. TT 9/12/2024(AM) at 118. And in *Leavy v. Cooney*,

27   the court found that the use of name and image on television, without consent, was

28   "deliberate[] and scornful of Leavy's rights in the premises." 214 Cal. App. 2d 496,

503 (1963). The court rejected that punitive damages required physical injuries or suffering. *Id.* at 502.

On the third factor, MGA believed the OMG Girlz were financially vulnerable, starting from opening where they claimed the OMG Girlz made no money and the case was a "big money grab." TT 9/3/2024(PM) at 56. The jury heard this repeatedly, and heard from MGA that MGA had billions in revenue, and had previously sought to hurt a mom-and-pop defendant with a per-share capital of only one British pound. *Id.* at 66; TT 9/4/2024(PM) at 102-103. MGA testified that without even reviewing Mrs. Harris' attorney's letter or conducting an investigation, MGA filed suit against her and the OMG Girlz. TT *Id.* at 104-107.

On the fourth factor, the conduct involved was repeated, and got worse after the lawsuit. *See Lopez v. Watchtower Bible & Tract Soc'y of New York, Inc*., 246 Cal. App. 4th 566, 592 (2016) ("[O]ne relevant factor in this [reprehensibility] analysis is the extent to which the defendant's alleged wrongful conduct involved repeated actions, including conduct occurring after the incident in question."). Mrs. Harris explained that after the lawsuit, OMG dolls "were starting to be more and more like the OMG Girlz" in the use of the trade dress and in misappropriating their name and likeness. TT 9/4/2024(AM) at 74-75. The jury found liability on those "Queens" dolls. And as noted above, the jury could consider MGA's copying of other celebrities as part of the repeated conduct. *Johnson*, 35 Cal. 4th at 1196 (noting conduct is more reprehensible when it is part of a repeated corporate practice rather than an isolated incident). Months after the jury verdict, the infringing and misappropriating dolls remain available for purchase.[2]

_____

[2] **Amazon links**: https://www.amazon.com/L-L-Surprise-Chillax-Surprises/dp/B085B1PFY7/ref=sr_1_2?crid=TCJ83XHAF7VZ&dib=eyJ2IjoiMSJ9. upXNpX2a02ArKMNShQxU3V0QiYhECQJjNUBFBHx2fMq4XHF_fhbyGGCczf Gb4iMNqXVDprqgkfCrRygrSEABBuRvOK6j2djWLPHW3POIn8SvLOFf-GtGUlRZ_5R0kqqkqiXT85j61IKcxf10E-

In *Haun v. Hyman*, 223 Cal. App. 2d 615, 619-620 (Ct. App. 1963) the defendant removed gravel from the land and built a road before property rights were resolved. The trial court noted "Hyman did not act on the advice of counsel in trespassing as he did, I believe he must be found to have acted maliciously and deliberately in committing the trespass." *Id*. at 620. The court upheld an award of punitive damages of five times actual damages. *Id.* "Where a trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship or oppression, it is clear that punitive damages may be awarded." *Id.* Here, before any rights were resolved, MGA made new dolls that more closely resembled OMG Girlz' trade dress and likeness, trespassing on their rights despite the lawsuit and without any investigation.

---

DSdCmrC6OPcNqYf38LM3uWpmYlH4bpA4vMPG1uPItt2DoXuShoCVM66bJwl
kcZ_uWbOZh8RoASJRKY32ahHAhL5wY.UKWYKEwhVkVviXWjBf2mpGWLc
VrctvARHyluwaxFkMA&dib_tag=se&keywords=Chillax+doll&qid=1731544901&
sprefix=chillax+doll%2Caps%2C133&sr=8-2

https://www.amazon.com/Surprise-Surprises-Including-Electric-
Magazine/dp/B08WZ9N9QQ/ref=sr_1_1?dib=eyJ2IjoiMSJ9.uejf1cLt0qMF9F93ivi
mM8Lhnjj815B6l2V3UdxC84c56-
AkdmSBfh5KvshTMTM5Dv68S1JHbTH3Fs4RbkQwpXUCHXEcDodqg2pyHSzF
M1Wgcf9TtAFK6SUBIuSiea23p-xXyLwDDg6a4sq23Q_HdSOopTo84ye6M-
Rmyv4Xpl3LUrfB5YcOctgs3YuTi4jXQg7rVfzAU5cOXV32PH0-
TuwSsELnDNqTVoQX0MGjThU.Vt3Aohef-
quwEYN0CKnPdBxEedOYny4nZXP3As0BnRI&dib_tag=se&keywords=metal+ba
be+doll&qid=1731544959&sr=8-1

**Walmart links**: https://www.walmart.com/ip/LOL-Surprise-OMG-Series-3-
Chillax-Fashion-Doll-With-20-Surprises-Great-Gift-for-Kids-Ages-4-5-
6/227562970?classType=REGULAR&from=/search;
https://www.walmart.com/ip/seort/127146394?offerID=6A26E5E1DE6939C3824F
709AAF613107&walmartID=127146394&redirectURL=https%3A%2F%2Fwww.
walmart.com%2Fupdatecart&productURL=https%3A%2F%2Fwww.walmart.com
%2Fip%2Fseort%2F127146394

As to the last factor, whether the harm was the result of intentional malice, trickery, or deceit, the jury heard ample evidence. A plaintiff may establish malice "by indirect evidence from which the jury may draw inferences" that the defendant exhibits "the motive and willingness to vex, harass, annoy, or injure" or a "conscious disregard of the rights and safety of others." *Ortiz v. Georgia Pac.*, 973 F. Supp. 2d 1162, 1187 (E.D. Cal. 2013). Notably, the jury also found that the OMG Girlz proved that MGA's trade dress infringement was willful, which supports reprehensible conduct.

Before suing the OMG Girlz, MGA did no investigation. TT 9/4/2024(PM) at 107. Mr. Larian admitted there could have been designers googling the OMG Girlz, and he wouldn't even know about it. TT 9/5/2024(AM) at 85. MGA also served sworn interrogatory responses *misstating* when MGA first learned of the OMG Girlz, did not disclose emails, did not disclose personal knowledge and pictures on Pinterest (Lora Stephens), and did not having any retention policy in place after filing suit or even informing key witnesses there was a suit (Consorti, Stephens). TT 9/19/2024(AM) at 80-84; TT 9/10/2024(PM) at 15-16. Even after Blanche Consorti put child-inappropriate designs on the Tots (MGA's argued basis for the infringing dolls) Mr. Larian was not aware of any investigation. TT 9/5/2024(AM) at 49-50, 85.

Further as to trickery and deceit, the jury heard dozens of times when MGA witnesses gave inconsistent testimony. *See, e.g.*, *Id.* at 31-32; TT 9/19/2024(AM) at 65-66; TT 9/13/2024(AM) at 76-77. The jury also heard how MGA applied one standard when suing others for trade dress infringement (and calling them extortionists), and the opposite standard when defending its actions here. *See, e.g.*, TT 9/5/2024(AM) at 33-35. Mr. Larian testified he was offended by the mere suggestion there was any similarity between the OMG Girlz' trade dress and the OMG dolls— then was impeached with prior testimony recognizing the similarities. *Id.* at 35-39. Reprehensibility, the most heavily weighted factor, strongly supports the jury's punitive damages verdict.

### (2)    Disparity Between the Harm and the Punitive Damages

The punitive damages award is three times the profits award, well within the range of constitutionally permissible awards. The profits award is less than half of the profits attributable to MGA's common law misappropriation in 15 total dolls, which makes the ratio about 1.5 to 1. Accordingly, this factor strongly supports the punitive damages verdict.

### (3)    Difference Between the Punitive Damages and the Civil Penalties Authorized in Comparable Cases

The Ninth Circuit has held that in cases like this one where "[t]here are no 'civil penalties' for the type of conduct for which [the appellants were] held liable," this factor does not apply. *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1045 (9th Cir. 2003). MGA analogizes to the statutory provisions of Cal. Civ. Code §3344 and wrongly argues there is a civil penalty of $750. *See* Dkt. 1046 at 29. The statute entitles a successful plaintiff to "an amount equal to ***the greater of*** seven hundred fifty dollars ($750) ***or*** the actual damages suffered by him or her as a result of the unauthorized use, ***and any profits from the unauthorized use*** that are attributable to the use and are not taken into account in computing the actual damages." So if this statute is analogous, the civil penalty includes all of the profits, and the punitive damages award is 3 to 1. Thus this factor weighs in favor of upholding the punitive damages verdict.

### 4.    The Court Should Not Issue a Remittitur

Lastly, MGA asks for a remittitur. Dkt. 1121-1 at 14. Courts in this circuit use remittitur only when punitive damages ***are*** constitutionally excessive, so there is no need for a remittitur here where punitive damages are just three times the damages award. *See Bardis v. Oates*, 119 Cal. App. 4th 1, 22, (2004) (reducing punitive damages ratio of more than 42:1 to 9:1). MGA also sets forth no analysis suggesting

what it alleges the "maximum [punitive] amount supportable by the proof" is in this case. Dkt. 1121-1 at 14. There is no basis for remittitur.

### B.   MGA's Motion for JMOL or a New Trial on the Misappropriation Claim Should Be Denied

#### 1.   The Harris Parties Have Standing

The Court previously found the Harris Parties have standing (Dkt. 324 at 24) and MGA never challenged ownership of the rights at trial. MGA's current motion relies on a 2012 Interscope Agreement that MGA did not offer at trial, and faults the OMG Girlz for not proving that their publicity rights were assigned back. The plain terms of the agreement state that the rights reverted when the agreement ended. Dkt. 148-8 at pdf-pages 18 and 33 (stating the exclusive rights are during the term of the agreement). MGA never argued the Interscope Agreement is still in effect, and by its terms it expired six months after the last master recording was delivered under the contract, which was many years ago. The OMG Girlz three most recent songs were released by Pretty Hustle LLC, not Interscope, further evidence the 2012 contract expired and the Harris Parties have standing.[3]

#### 2.   MGA's Misappropriation Is Not Protected by the First Amendment

MGA's First Amendment argument fails because MGA failed to meet its burden. The Court submitted the First Amendment defense to the jury because it found a fact issue as to the level of transformation. Dkt. 326 at 29. At trial, Mr. Larian testified that MGA did **not** add something new to the OMG Girlz likeness. TT 9/19/2024(PM) at 54:7-12. That admission rings true when comparing the seven dolls

---

[3] *See* https://www.youtube.com/watch?v=zz0eri12Fro;
https://www.youtube.com/watch?v=aSoDT4EgmDM;
https://www.youtube.com/watch?v=XysEVcxZjpQ

with the OMG Girlz, further evidence the jury considered.[4] MGA ignores this and instead focuses on testimony from its lead designer Ms. Consorti (Br. at 16-17), but the jury was free to reject that, especially after Ms. Consorti staked her credibility on the claim that no Tot was based on a real person. TT 9/18/2024(AM) at 31:14-32:4. She was then shown multiple obvious copies, yet continued to deny it, eviscerating any shred of credibility. *Id.* at 32:5-35:8. MGA

This defense also fails because it is no longer good law. *See* Dkt. 929 at 12. The "transformative use" test from *Comedy III Productions, Inc. v. Gary Saderup, Inc.* is taken from that factor of the fair use defense in copyright law. 25 Cal. 4th 387, 407. In *Andy Warhol Foundation for the Visual Arts, Inc v. Goldsmith* the Supreme Court significantly changed the focus of this factor from the nature of the work to the nature of the *use*. 598 U.S. 508, 512 (2023). When factoring in the significant commercial use with the evidence above that the jury found persuasive, the defense fails as an issue of law. For both reasons, this ground should be denied.

### 3.    MGA's Misappropriation Harmed the OMG Girlz

The OMG Girlz presented evidence showing how the group, its brand, and its reputation have been and continue to be harmed by MGA's infringing activities, including testimony from actual consumers regarding their confusion. (TX407); TT 9/10/2024(AM) at 34:14-35:12. The OMG Girlz invested significant time, effort, and resources in cultivating a strong and recognizable brand identity, MGA exploited that for its own commercial gain, and that undermined the OMG Girlz' efforts to control their reputation, brand narrative, and market positioning. This exploitation could also affect their ability to enter into future merchandising agreements or brand partnerships. *See* TT 9/4/2024(AM) at 73-74. MGA falsely claims to have no knowledge of future plans by the OMG Girlz to enter into licensing deals or create

---

[4] TXs 452, 587, 588, 605, 610, 666, 5521 (photographs) TXs 1611, 1615, 1637, 1643, 1717, 1721, 1723 (dolls).

1  dolls, as revealed by its recent opposition to the OMG Girlz' trademark application

2  regarding the same.[5]

3  **4.    There Was Sufficient Evidence of Misappropriation**

4  The jury determined that 15 dolls were "readily identifiable" as the OMG Girlz.

5  It spent weeks listening to the OMG Girlz' testimony about the dolls they believed

6  infringed (though not seeking damages for them all) then spent hours working through

7  that list of dolls to determine which infringed the OMG Girlz' trade dress and likeness.

8  As explained in Section D.1 below, consumers are not spending weeks and hours nit-

9  picking skin tones and other details when purchasing dolls. Rather, consumers saw

10  the dolls depicted (Br. at 19) as racially ambiguous women in fun and edgy clothing,

11  with long pink/purple/blue hair, sold under the name OMG. *See* TT 9/6/2024(PM)

12  Dep. Tr. at 92:20-93:5. Where consumers noticed variances in skin tones, it was easily

13  explained as a byproduct of turning humans into a line of dolls. *See, e.g.*, TT

14  9/6/2024(PM) Dep. Tr. at 141:11-23. MGA's own likeness expert agreed that dolls

15  that are cartoon versions of real people may still be recognizable as real people, just

16  as MGA's consumers recognized these dolls as the OMG Girlz. TT 9/18/2024(PM)

17  at 32:7-17; *see also* TT 9/11/2024(AM) at 37:16-18.

18  **C.    There Is No Basis for a New Trial on Disgorgement**

19  MGA next argues that a new trial is necessary because the OMG Girlz failed

20  to meet their burden of showing the profits were "attributable" to the use of the OMG

21  Girlz likeness. Br. at 21. It is unclear what argument MGA is making that was not

22  waived, or previously considered and rejected. MGA presents a sufficiency of the

23  evidence argument, but MGA did not move for JMOL on that issue pre-verdict so

24  cannot do so now. Br. at 21 (arguing the OMG Girlz failed to meet a burden); *Freund*,

25

26  _____

[5]

27  https://tsdr.uspto.gov/#caseNumber=90898799&caseSearchType=US_APPLICATI

28  ON&caseType=DEFAULT&searchType=statusSearch

347 F.3d at 761. Nor does MGA explain how its grounds apply to a new trial, when there is no argument of error by the Court. MGA's request to reduce the award (Br. at 21) appears to be a Rule 59(e) motion to amend the judgment. But its only argument for that is the same "apportionment" argument that the Court considered and rejected in the equitable issues briefing. Dkt. 1090 at 16-18. None of the grounds for reconsideration are present (L.R.7-18), so MGA's Motion should be denied.

To the extent the Court wishes to address the issue, however, MGA's position fails on the merits. As MGA acknowledges, the OMG Girlz' burden was to establish the gross revenue that MGA received from unauthorized use. Dkt. 1013 at 29. The OMG Girlz proved that the OMG Dolls used their likeness,[6] that the dolls were purchased because of that use, and the gross revenue from those dolls. Dkt. 1010. No more was required. MGA's only counter argument *at trial* was that 0% of profits were attributable to the OMG Girlz. *After* trial, MGA argued for the first time that 10-15% of profits may be attributable. The jury was right to reject the first argument, it never heard the second, and the Court was right to reject both arguments for the reasons previously stated. Dkt. 161 at 12; Dkt. 1090 at 16-18. It should again.

### D.    MGA's Motion for JMOL or a New Trial on the Trade Dress Claim Should Be Denied

#### 1.    The Trade Dress Is Protectible

The OMG Girlz have maintained a consistent trade dress definition. At trial, witnesses described how Ms. Harris developed the OMG Girlz' distinctive look. TT 9/5/2024(PM) at 53:12-17. The brand was carefully curated, has been in continuous use for the last 13 years, including on their 2024 tour, and is instantly recognizable to fans. TT 9/12/2024(AM) at 93:2-8; TT 9/4/2024(AM) at 39:3-10; 65:25-66:1. The OMG Girlz testified that the elements in TX5521 represented their trade dress, and

---

[6] The word "likeness" is used for brevity, but intended to capture all the rights in the OMG Girlz misappropriation claim.

they used photographs and videos as representative examples. They explained how fans associated the dolls' looks and entertainment and musical lifestyles[7] with their own, and MGA's consumers testified that contributed to their confusion. *See, e.g.*, TT 9/6/2024(PM) at 11:17-12:10.

Ignoring this, MGA attempts to segregate individual elements of the trade dress to argue that the definition is too broad. But "[a] defendant cannot avoid liability for infringing a trade dress by segregating out individual elements of the trade dress as defined by plaintiff and arguing that no one of these is valid and protectable," rather, courts (and consumers) look to the "total combination." 1 McCarthy on Trademarks and Unfair Competition § 8:2 (5th ed.). MGA's arguments on the supposedly "subjective nature" of the clothing component are contradicted by the evidence. MGA's own witnesses were able to agree on a definition of fun, urban, and edgy clothing, indicating that there is a boundary to this definition (one which MGA crossed). TT 9/13/2024(AM) at 93:9-24; TT 9/18/2024(AM) at 76:14-25; TT 9/19/2024(AM) at 69:8-18. Likewise, both the Court and the jury determined which dolls met the full combination of elements for the trade dress versus others. Dkt. 326 at 20-23; Dkt. 1009.

MGA wants to nit-pick the shade of blue of certain doll's hairs and the skin tone and eye color, but the jury heard evidence that consumers were focused on the overall effect of a doll dressed like a musician with OMG appearing prominently on the box. *See, e.g.*, TT 9/6/2024(AM) 16:22-17:4; TT 9/6/2024(PM) Dep. Tr. at 92:20-93:5; TT 9/10/2024(AM) Dep. Tr. at 37:3-20. For a child's toy, consumers were not investigating whether a specific doll was the exact skin tone of their favorite OMG Girl, rather, they were considering the overall effect of the doll when making their decision to purchase. 1 McCarthy § 8:3 (the proper inquiry concerns "the total effect

---

[7] There is no "fourth element." TT 9/18/2024(AM) at 91:2-5 ("musician" related to the services offered).

of the defendant's product and package on the eye and mind of an ordinary purchaser.").

MGA contends that because some of the photographs of the OMG Girlz do not visibly include "OMG Girlz," the jury verdict should be overturned. The jury saw

    

photographs and heard testimony that the OMG Girlz consistently used all elements of the trade dress—including the words OMG Girlz—in connection with their goods and services. For example, MGA cites TX610, which was a promotional photograph taken to be used in magazine photoshoots and tour posters, like the ones shown above (TXs 666, 665), which prominently display OMG Girlz.

Similarly, in TX580, Ms. Womack is wearing a jacket that includes the OMG element.

        

Although not visible from the angle shown in TX580 (*see* TX579[8]), this was a look worn by the OMG Girlz on BET's hit show 106 & Park, and would have been viewed by thousands of consumers in real time. TT 9/19/2024(AM) at 74:22-75:2; TT

---

[8] TX579 was not offered during this trial.

9/12/2024(AM) at 72:15-21. The OMG Girlz also presented evidence that there were banners and screens displaying the OMG element as a backdrop to their performances, showing the OMG Girlz used this element of the trade dress. TT 9/12/2024(AM) at 93:2-8.

Lastly, MGA's contention that the OMG Girlz' trade dress is functional is unfounded.   Trade dress is functional only if it is "'essential to the use or purpose of the article.'" *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008). The OMG Girlz' brand is non-functional; several MGA witnesses agreed that there were other names besides "OMG" that were still available for the dolls, and other combinations of hair color and clothing that would have avoided evoking the OMG Girlz' brand. For example, Mr. Larian admitted that he had never "seen anything besides the OMG Girlz and the O.M.G. dolls that had colored hair, fun, urban, edgy clothing, and the name OMG" 9/5/2024(AM) at 47:14-18. Ms. Consorti also admitted that there were other choices that they could have made, including other names that could have been used, in creating their dolls besides the three elements that comprise the OMG Girlz' trade dress. TT 9/18/2024(AM) at 74:16-21.

## 2.    Secondary Meaning Was Proven

MGA's contention that surveys are the "preferred" method of showing secondary meaning is false and irrelevant. Courts consider a multitude of factors, including consumer testimony, exclusivity, manner, and length of use of a mark, amount and manner of advertising and sales, intentionality by the defendant. *See Filipino Yellow Pages, Inc. v. Asian Journal Pubs., Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999); *see also Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (surveys are "only one" way of proving secondary meaning, and are "not a requirement").

There was ample evidence that the trade dress acquired secondary meaning. The OMG Girlz provided consumer-made videos (TX141), unsolicited media and press coverage (TXs 1114, 668, 103, 272-CF, 113), consumer interviews (TX661), as

well as consumer online comments about the brand (TXs 311-CF, 245, 7005), all of which demonstrated fans' recognition of the OMG Girlz' brand. *See Tools USA and Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654 (4th Cir. 1996) (finding that a jury's finding of likelihood of confusion was "amply supported" by the testimony of individual customers and employees about numerous incidents of "actual customer confusion"). MGA introduced additional consumer comments to rebut the OMG Girlz' consumer confusion evidence, but those showed even people who didn't like the OMG Girlz recognized their brand. TT 9/12/2024(PM) at 97:18-23; TX7102.

### 3.    There Was No Abandonment

Trade dress is "abandoned" only when (1) its use has been discontinued *with intent not to resume such use*, or (2) when any course of conduct of the owner causes the mark to become generic. 15 U.S.C. § 1127; *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (courts look to an ongoing effort to capitalize on the goodwill associated with the mark). The OMG Girlz testified there was no intent to abandon, and they never ceased use of the trade dress. For example, music remained available for sale and to stream (TT 9/12/2024(AM) at 94:21-95:1), they continuously marketed their music by engaging fans on social media (TT 9/6/2024(AM) at 100:1-8), and they continued to perform as the OMG Girlz (TT 9/5/2024(PM) at 81:14-16).

### 4.    Likelihood of Confusion Was Proven

The OMG Girlz presented ample evidence of likelihood of confusion in the form of similarity of the marks and actual confusion. As the Ninth Circuit has cautioned, "[l]ikelihood of confusion is a factual determination," and "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000) ("[T]he standard for

granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same.")

Contrary to MGA's attorney argument, there was evidence that the dolls use similar fashion, have similar colored hair, and, maybe most critically, prominently display "O.M.G."—with a later added Outrageous Millennial *Girls*—on the box. TT 9/13/2024(AM) at 93:9-24; TT 9/18/2024(AM) at 76:14-25; TT 9/19/2024(AM) at 69:8-1. Indeed, MGA's employees were confused. TX407; TT 9/10/2024(PM) at 43:8-11; TT 9/13/2024(AM) at 69:6-15, 70:17-71:21. The striking similarity between the seven dolls MGA was found liable for and the OMG Girlz' trade dress was itself evidence of confusion the jury could rely on.

MGA also testified that it promotes the OMG Dolls in the same channels (such as YouTube and social media) as the OMG Girlz and for similar goods and services. TT 9/18/2024(AM) at 44:15-45:5; TT 9/5/2024(PM) at 88:4-8; TT 9/10/2024(PM) at 41:8-18. The jury saw evidence of the OMG Dolls appearing before the OMG Girlz' single in a search on Walmart.com for "OMG Girlz," as shown below (TX421), which supports the confusion finding:



There was also substantial evidence of actual consumer confusion, which MGA's expert agreed "is the best evidence of the likelihood of confusion." TT 9/18/2024(AM) at 87:18-25; *see also Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely … If enough people have been actually

confused, then a likelihood that people are confused is established."). "[T]he core element of trademark infringement [likelihood of confusion] exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources marks or marketing techniques." *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.,* 251 F. Supp. 3d 1288, 1304 (N.D. Cal. 2017), *aff'd*, 786 Fed. Appx. 662 (9th Cir. 2019).

Consumers were confused about an affiliation between the OMG Girlz and OMG Dolls. TT 9/6/2024(PM) at 92:20-93:5. In response to social media posts, MGA's customers demonstrated their confusion that the OMG Dolls were not affiliated with or in partnership with the OMG Girlz. *See* TXs 22; 262.B; 320.B; 263.C; 322.B; 323.B; 327.B; 332.B; 334.B; 354.B; 272-CF; 245-CF; 274-CF; 311-CF; 254-CF; 268.A. Several of these consumers testified live or by deposition. TT 9/10/2024(AM) at 34:14-35:12; TT 9/6/2024(PM) Dep. Tr. at 19:1-19 (Campbell); *id.* Dep. Tr. at 148:12-149:22 (Osborne); *id.* Dep. Tr. at 24:2-9, 55:1-17 (Wagner). They testified that they purchased additional OMG Dolls because they believed that they were also representations OMG Girlz, were friends or "diverse" band members of the OMG Girlz, or were otherwise sponsored by or affiliated with the OMG Girlz' brand. *Id.* MGA countered with Dr. Isaacson's "survey" evidence, but the jury rejected that given its many flaws, including a survey population that was largely grown men. TT 9/18/2024(PM) at 56:23-25, 73:3-6. There was more than sufficient evidence for the jury to find likelihood of confusion.

**E.    MGA's Motion for JMOL or a New Trial for Mr. Larian Should Be Denied**

Contrary to MGA's argument, Mr. Larian was included for all claims because he and MGA Entertainment, Inc. were jointly defined as "MGA" in both the Pretrial Conference Order and the Jury Instructions. Dkt. 924 at 1; Dkt. 1013 at 2. Nor did Mr. Harris testify that Mr. Larian had no responsibility. He stated that if Mr. Larian's position was that he was not aware the designs had come from the OMG Girlz, that

-22-

could be in a "tough spot." TT 9/6/2024(PM) at 65:12-20. Mr. Larian didn't claim that, though. He claimed the OMG Girlz were "nowhere" and MGA had not used their intellectual property, even after he saw the evidence for himself. There was substantial evidence supporting the verdict against Mr. Larian.

**F.    MGA's Motion for JMOL or a New Trial for Its Declaratory Judgment Claim Should Be Denied**

The only new point added in MGA's final argument is a request for judgment on 8 dolls. Br. at 31. But MGA *lost* its declaratory judgment claim on those dolls, so that request should be denied.

## III.    CONCLUSION

For the above reasons, MGA's Motion should be denied.

Dated: June 5, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   */s/ John R. Keville*
    JOHN R. KEVILLE

*Attorney for Defendants and Counterclaimants CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

1

## CERTIFICATE OF COMPLIANCE

Counsel of record for the Defendant / Counter-Claimants, certifies that this brief contains <u>6985</u> words, which complies with the word limit of L.R. 11-6.1.