Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen S. Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
Breeanna N. Brewer (Bar No. 312269)
bbrewer@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50(b)) OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR REMITTITUR**<br><br>Date: June 30, 2025<br>Time: 1:30 p.m.<br><br>Complaint Filed: December 20, 2020<br>Trial Date: September 3, 2024 |

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION .......................................................................................... 8

II.  ARGUMENT ................................................................................................ 8

A.  The Court Should Vacate The Punitive Award Or, Alternatively, Order A Remittitur Or New Trial. ........................................................ 8

    1.  The Jury's Punitive Award Is Not Entitled To Deference. .......... 8

    2.  Punitive Damages Are Unavailable As A Matter of Law Because MGA Did Not Act Willfully. ....................................... 10

    3.  Punitive Damages Are Unavailable As A Matter of Law Because Counterclaimants Suffered No Actual Damages. ........ 12

    4.  The Staggering Punitive Award Violates Due Process. ............. 14

    5.  Alternatively, The Court Should Issue A Remittitur. ................. 17

B.  The Court Should Grant Judgment Or, Alternatively, A New Trial On The Misappropriation Claim. ................................................... 18

    1.  Counterclaimants Did Not Meet Their Burden Of Establishing Standing. .............................................................. 18

    2.  Judgment Should Be Granted In Favor Of MGA On The Misappropriation Claim Based On The First Amendment. ........ 18

    3.  Counterclaimants Failed To Offer Any Evidence Of Actual Harm To Support The Injury Element Of Misappropriation. ..... 20

    4.  The Evidence Was Insufficient To Show Misappropriation. ..... 21

C.  The OMG Girlz Did Not Establish That All Of MGA's Profits Were Attributable To The Misappropriation. ......................................... 22

D.  The Court Should Grant Judgment Or, Alternatively, A New Trial On The Trade Dress Claim. .................................................................. 23

    1.  Counterclaimants Do Not Have Protectable Trade Dress. ......... 23

        a)  Failure To Define Trade Dress With Requisite Specificity....23

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

1

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

b) Failure To Use "OMG Girlz" As A Visual Element. ..............23

c) Failure To Establish A Consistent Overall Look. ....................24

d) Failure to Show That The Alleged Trade Dress Is Nonfunctional. ........................................................................25

2. Counterclaimants Did Not Establish Secondary Meaning. ........ 26

3. Counterclaimants Abandoned Their Claimed Trade Dress. ....... 26

4. Counterclaimants Have Not Shown Likelihood Of Confusion. . 27

E.  The Court Should Grant Judgment Or, Alternatively, A New Trial On All Claims Against Mr. Larian. ........................................................29

F.  The Court Should Grant Judgment Or, Alternatively, A New Trial On MGA's Claims For Declaratory Judgment. ............................29

III.  CONCLUSION ........................................................................ 29

Umberg Zipser llp
Attorneys At Law
Irvine

{289998.11}                                  2                    Case No. 2:20-cv-11548-JVS-AGR
                                                                  MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                  ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Andersen v. Stability AI Ltd.*,
  700 F. Supp. 3d 853 (N.D. Cal. 2023) ........................................ 20

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023) .................................................................... 19

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
  457 F.3d 1062 (9th Cir. 2006) .................................................... 25

*Bardis v. Oates*,
  119 Cal. App. 4th 1 (2004) ......................................................... 17

*Cairns v. Franklin Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) ........................................ 29

*California v. Altus Fin. S.A.*,
  540 F.3d 992 (9th Cir. 2008) ...................................................... 13

*Cartier, Inc. v. Sardell Jewelry, Inc.*,
  294 F. App'x 615 (2d Cir. 2008) ................................................ 25

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*,
  No. 95 Civ. 4008, 1997 WL 749388 (S.D.N.Y. Dec. 3, 1997) .......... 24

*Cheung v. Daley*,
  35 Cal. App. 4th 1673 (1995) ..................................................... 13

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) .................................................... 24

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) ............................................................... 19

*Comm. for Idaho's High Desert, Inc. v. Yost*,
  92 F.3d 814 (9th Cir. 1996) ........................................................ 26

*Epic Systems Corp. v. Tata Consultancy Services, Ltd.*,
  980 F.3d 1117 (7th Cir. 2020) .................................................... 16

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                     3                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Escriba v. Foster Poultry Farms, Inc.*,
  743 F.3d 1236 (9th Cir. 2014) .................................................................. 9

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
  762 F.3d 829 (9th Cir. 2014)................................................................... 9

*Goodyear Tire and Rubber Co. v. Interco Tire Corp.*,
  49 U.S.P.Q.2d 1705 (TTAB 1998) ...................................................... 26

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996)................................................................... 9

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  28 F. 4th 35 (9th Cir. 2022) ............................................................ 9, 12

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  No. SACV1701613CJCDFMX, 2023 WL 2652855 (C.D. Cal. Mar.
  13, 2023).   ........................................................................................... 12

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021).................................................................. 17

*Hartman v. Summers*,
  120 F.3d 157 (9th Cir. 1997).................................................................. 18

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010).................................................................. 19

*Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*,
  667 F. Supp. 1221 (N.D. Ill. 1987) ...................................................... 25

*Kizer v. County of San Mateo*,
  53 Cal. 3d 139 (1991) ............................................................................ 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ......................................................................... 13

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) ............................................................... 26

*Lindy Pen Co. v. Bic Pen Corp.*,
  725 F.2d 1240 (9th Cir. 1984) ............................................................... 28

Umberg Zipser LLP
Attorneys At Law
Irvine

{289998.11}                4                Case No. 2:20-cv-11548-JVS-AGR
                                           MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                           ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Locomotor USA, Inc. v. Korus Co.*,
  46 F.3d 1142 (9th Cir. 1995) .................................................................. 28

*Los Angeles Unified Sch. Dist. v. Superior Ct.*,
  14 Cal. 5th 758 (2023) .......................................................................... 13

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
  292 F. Supp. 2d 535 (S.D.N.Y. 2003) ................................................... 23

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
  390 F.2d 117 (9th Cir. 1968) ................................................................. 14

*Masimo Corp. v. Apple Inc.*,
  No. SACV2000048JVSJDEX, 2023 WL 6539755
  (C.D. Cal. Aug. 4, 2023) .......................................................................... 9

*Mattel, Inc. v. MGA Ent., Inc.*,
  801 F. Supp. 2d 950 (C.D. Cal. 2011) ................................................... 17

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  40 F.4th 454 (6th Cir. 2022) .................................................................. 10

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ............................................................. 8, 10

*Monster Energy Co. v. Integrated Supply Network, LLC*,
  821 F. App'x 730 (9th Cir. 2020) ..................................................... 12, 13

*Morgan v. Southern Pac. Transp. Co.*,
  37 Cal. App. 3d 1006 (1974) ................................................................. 11

*Multiple Energy Techs., LLC v. Casden*,
  No. 2:21-CV-01149-ODW, 2025 WL 579641
  (C.D. Cal. Feb. 21, 2025) ...................................................................... 22

*Munoz v. PHH Mortg. Corp.*,
  No. 108CV00759DADBAM, 2021 WL 1928616
  (E.D. Cal. May 13, 2021) ...................................................................... 18

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998) ................................................................. 21

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
  809 F.2d 601 (9th Cir. 1987) ................................................................. 28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                    5                        Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Olive v. Gen. Nutrition Centers, Inc.*,
    30 Cal. App. 5th 804 (2018) ............................................................. 23

*Payan v. Los Angeles Cmty. Coll. Dist.*,
    No. 2:17-CV-01697-SVW, 2024 WL 1676846 (C.D. Cal. Feb. 29,
    2024) ...................................................................................................... 10

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) .................................................................... 16, 17

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life
Activists*, 422 F.3d 949 (9th Cir. 2005) ............................................. 16

*Riley v. Volkswagen Grp. of Am., Inc.*,
    51 F.4th 896 (9th Cir. 2022) ....................................................... 14, 16

*Shakey's Inc. v. Covalt*,
    704 F.2d 426 (9th Cir. 1983) ............................................................ 27

*Sole Energy Co. v. Petrominerals Corp.*,
    128 Cal. App. 4th 212 (2005) ........................................................... 13

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ............................................. 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .................................................................... 12, 17

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) .......................................................... 10

*Woloszynska v. Netflix, Inc.*,
    2023 WL 7166828 (N.D. Cal. Oct. 30, 2023) ................................. 19

*Young v. NeoCortext, Inc.*,
    No. 23-55772, 2024 WL 4987254 (9th Cir. Dec. 5, 2024) .............. 19

## Statutes

15 U.S.C. § 1127 ........................................................................................ 26

28 U.S.C. § 2201(a) ................................................................................... 29

Cal. Civil Code § 3344 .............................................................................. 17

Umberg Zipser LLP
Attorneys At Law
Irvine

{289998.11}                                     6                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

Fed. R. Civ. P. 39 ................................................................................ 9, 11

Fed. R. Civ. P. 50 ........................................................................ 8-9, 11, 18

Fed. R. Civ. P. Rule 59 ................................................................... 8-11, 22

## Other Authorities

CACI No. 1805 ............................................................................... 19, 20

CACI No. 1821 ....................................................................................... 23

L.R. 7-18 ........................................................................................... 10, 22

5 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed.) .............. 27

O'Connor's Federal Rules Civil Trials, Ch. 10-C § 6 (2025) ................................ 10

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

7

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1   I.   **INTRODUCTION**

2          As explained in MGA's opening brief (Dkt. 1121-1, the "Motion"), the jury's

3   staggering $53-million punitive award cannot stand.  This Court has already found

4   that MGA's conduct was not willful, and under California law, punitive damages

5   cannot be awarded without willful conduct.  Further, Counterclaimants suffered no

6   actual damages, and the sheer amount of the punitive award violates the Due

7   Process Clause.  Thus, the Court has the authority to—and should—reduce or

8   eliminate the punitive award.  Alternatively, the Court should issue a remittitur or

9   grant a new trial on punitive damages.

10          In opposition, although MGA has never moved for judgment as a matter of

11  law ("JMOL") on punitive damages, Counterclaimants urge deference to the jury

12  under the Rule 50 standard.  Under the proper Rule 59 standard, the Court has broad

13  discretion to order a new trial where "the verdict is contrary to the clear weight of

14  the evidence," "the damages are excessive," or "to prevent a miscarriage of justice."

15  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  Counterclaimants

16  largely repeat arguments the Court has already considered and rejected.

17          The Court also should grant JMOL as to the trade dress infringement and

18  common law misappropriation claims.  There was insufficient evidence for the jury

19  to conclude that Counterclaimants met their burden on either claim.  At minimum,

20  the Court should grant a new trial on these claims and a remittitur on the

21  disgorgement award.

22  II.  **ARGUMENT**

23        A.   **The Court Should Vacate The Punitive Award Or,**

24             **Alternatively, Order A Remittitur Or New Trial.**

25             1.    The Jury's Punitive Award Is Not Entitled To Deference.

26          In trying to salvage the jury's punitive award, Counterclaimants assert that

27  MGA "waived" its Rule 50 argument as to punitive damages and, thus, cannot now

28  seek JMOL on this issue.  Then, citing cases decided under Rule 50,

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                        8                          Case No. 2:20-cv-11548-JVS-AGR
                                                                             MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                             ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    Counterclaimants argue that the punitive award should nevertheless be upheld

2    because it is supported by "sufficient evidence."  Dkt. 1124 (Opp.) at 1-2 (*citing*

3    *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014)).  This

4    is a strawman argument, as MGA is not moving for JMOL on punitive damages and

5    did not do so during trial under Rule 50(a).  In fact, because MGA maintains that

6    punitive damages are equitable here and it never consented to a jury trial on that

7    issue, such a motion would have been procedurally improper.  *See Granite State*

8    *Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030 (9th Cir. 1996) ("Rule

9    50(a) applies only to issues tried by a jury."); *Masimo Corp. v. Apple Inc.*, No.

10    SACV2000048JVSJDEX, 2023 WL 6539755, at *2 (C.D. Cal. Aug. 4, 2023)

11    (Selna, J.) ("Rule 50 Order was not the appropriate place to consider equitable

12    issues that would be decided by the Court.").

13        As the Motion makes clear, MGA instead challenges the punitive award

14    under Rule 59 and the Due Process Clause.  The Rule 50 standard therefore does

15    not apply and—under Rule 59—the Court "[is] not required to draw all inferences

16    in favor of the verdict and [can] reweigh the evidence and make credibility

17    determinations."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d

18    829, 845 (9th Cir. 2014) (upholding grant of a new trial on damages where evidence

19    supporting the measure of damages "was minimal, and in the eyes of the district

20    court, not very credible").  The Court is not even limited to the grounds MGA has

21    raised and may "sua sponte raise its own concerns about the damages award."  *Id.*

22    (citing Fed. R. 59(d)).  That is, the Court is free to grant a new trial under Rule 59

23    "on ***any ground necessary*** to prevent a miscarriage of justice."  *Id.* at 845-46

24    (emphasis added).  And any new trial on punitive damages would be for the Court

25    because "Rule 39(c) does not require that the retrial on remand be a jury trial."

26    *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F. 4th 35, 41 (9th

27    Cir. 2022).

28        In addition, the Court "may reduce or eliminate a monetary award without

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                            9                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                    ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

permitting a new trial when the award rests on a legal error[.]" *Payan v. Los Angeles Cmty. Coll. Dist.*, No. 2:17-CV-01697-SVW, 2024 WL 1676846, at *1 (C.D. Cal. Feb. 29, 2024) (quoting *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 477 (6th Cir. 2022)). *See* O'Connor's Federal Rules Civil Trials, Ch. 10-C § 6 (2025). Here, the jury's punitive award—as explained in the Motion and below—is legally erroneous.

> ### 2.    Punitive Damages Are Unavailable As A Matter of Law Because MGA Did Not Act Willfully.

The Court, when independently considering the evidence, found that "MGA did not act willfully." *See* Dkt. 1090 (Equitable Issues Order) at 23. The Court went on to state multiple times that there was insufficient evidence at trial to support a finding of willfulness. *See id.* at 8, 10, 23 n.8; Dkt. 1113 at 14.

Without willful conduct, punitive damages cannot be awarded in California. Counterclaimants do not dispute this. *See* Opp. at 3 (conceding that punitive damages for a misappropriation claim should be upheld if "defendants acted with malice, i.e., despicably and ***with willful*** and conscious disregard of [plaintiff's] rights") (emphasis added) (quoting *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1105 (9th Cir. 1992)). Thus, by definition, this Court already found the jury's punitive award finding is "contrary to the clear weight of the evidence." *See Molski*, 481 F.3d at 729.

Counterclaimants mostly ignore the Court's "no willfulness" finding, and repeatedly cite the jury's finding of willfulness. Opp. at 1-4. But the Court's ruling controls. Counterclaimants never sought reconsideration of that ruling and have not moved for a new trial on willfulness. Thus, Counterclaimants have waived any ability to challenge the Court's finding. *See* Fed. R. Civ. P. 59(b); L.R. 7-18.

Counterclaimants suggest that MGA could be liable for punitive damages because the Court's "no willfulness" finding was made in connection with the Lanham Act, and not in connection with "a separate equitable issue." Opp. at 2.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}    10    Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

But the Court's ruling was not so limited, as it found that the trial evidence "did not support a finding of willfulness." Dkt. 1113 at 14. Thus, as the Court tentatively indicated, if the jury's finding was not binding under Rule 39(c), then no punitive damages would be awarded because the Court "cannot reasonably conclude that MGA's conduct was done with willfulness." Dkt. 1096-4 at 22; *see Morgan v. Southern Pac. Transp. Co.*, 37 Cal. App. 3d 1006, 1011 (1974) (explaining that "wilful or wanton misconduct," "reckless disregard," "recklessness," and combinations thereof are "interchangeable" and all identify "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care"). As MGA explained in its Motion and as Counterclaimants do not dispute, the Court is not constrained by Rule 39 at this stage.

Unable to prevail under the applicable Rule 59 standard, Counterclaimants cite to the inapplicable Rule 50 standard, asking the Court to defer to the jury's finding based on the same scant facts the Court has already rejected, and should reject again. *See* Opp. at 3-4.

First, Counterclaimants cite the email exchange where MGA employees discussed the lyrics of a song and witness testimony regarding the same. The Court addressed this argument in the Equitable Issues Order and ruled that it "largely fails to show that there was a deliberate intent to copy [Counterclaimants'] trade dress." Dkt. 1090 at 7.

Second, Counterclaimants argue that MGA failed to investigate the claims and then released three Dolls (part of the "Queens" series) that allegedly "bore 1:1 likeness with the OMG Girlz" after receiving Counterclaimants' cease-and-desist letter. Opp. at 4. The Court also addressed this argument and found that, "at most," MGA was merely "negligent about investigating an alleged claim of infringement, but not that they acted with reckless indifference or willfulness." Dkt. 1090 at 8. Notably, the Court dismissed another Doll (Sways) in the same Queens series at summary judgment (Dkt. 326 at 23, 30), and the prior jury concluded that ***none*** of

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                    11                    Case No. 2:20-cv-11548-JVS-AGR
                                                                     MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                     ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

MGA's Dolls infringed on Counterclaimants' trade dress or likeness (Dkt. 771). *See* Dkt. 1090 at 8 (generally, failure to stop use after a cease-and-desist letter "does not show willful infringement and is not necessarily indicative of bad faith").

Third, Counterclaimants argue that the parties' target market overlapped but, once again, the Court already rejected that argument. *Id.* at 7 ("[T]he mere fact that the infringing dolls appeal to the same consumer base does not support a finding of intent to deceive.").[1]

Finally, Counterclaimants cite to the testimony of MGA's witnesses about perceived similarities between the L.O.L. Surprise! Tots and other celebrities. As to that issue, the Court concluded that "without more, it does not show willful infringement[.]" *Id.* at 8. Moreover, MGA's "dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). For the same reason, Counterclaimants are not entitled to any punitive damages, let alone over $53 million, based on MGA's trial strategy or conduct, or Mr. Larian's trial demeanor. *See id.* at 423 (defendants should not be punished merely for being "unsavory").

Because MGA did not act willfully—as this Court already found—the punitive award cannot stand.

3.   Punitive Damages Are Unavailable As A Matter of Law Because Counterclaimants Suffered No Actual Damages.

"[A]ctual damages are *an absolute predicate* for an award of exemplary or punitive damages in California." *Monster Energy Co. v. Integrated Supply*

---

[1] Further, any overlap in the consumer bases does not support Counterclaimants' argument that MGA was "passing off," or "palming off." Dkt. 1124 at 4. *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.,* No. SACV1701613CJCDFMX, 2023 WL 2652855, at *8 (C.D. Cal. Mar. 13, 2023). The Court previously found that "this case does not amount to palming off the OMG Girlz mark by labeling [MGA's] dolls as such." Dkt. 1090 at 11.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                     12                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Network, LLC*, 821 F. App'x 730, 734 (9th Cir. 2020) (citing *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991), *overruled on other grounds by Los Angeles Unified Sch. Dist. v. Superior Ct.*, 14 Cal. 5th 758 (2023)) (emphasis added); *see California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (concluding that "California law is well-established and quite clear" that when no compensatory damages are awarded, the "general rule precludes punitive damages"); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (2005) ("An award of actual damages, even if nominal, is required to recover punitive damages.").

In their Opposition, Counterclaimants cite state court cases that, with a single exception, predate the California Supreme Court's 1991 *Kizer* decision. The sole exception is Counterclaimants' citation to a footnote in *Cheung v. Daley*, 35 Cal. App. 4th 1673, 1677 n.8 (1995), which states that restitution, not disgorgement,[2] may be the "equivalent" of compensatory damages for the purposes of a punitive award and cites to another pre-*Kizer* decision without further analysis. Aside from such dicta, the *Cheung* court acknowledges that California's "highest court **requires** that any award of exemplary damages be accompanied **by an express award of compensatory damages**." *Id.* at 1677 (emphases added). And every federal case cited by Counterclaimants predate the Ninth Circuit's decision in *Monster Energy*, 821 F. App'x at 734, and none establishes that punitive damages are available when disgorgement is the only remedy awarded.

Further, MGA's profits cannot be used as a "surrogate measure" of Counterclaimants' harm, as Counterclaimants contend.[3] *See* Opp. at 6. The proxy

---

[2] Disgorgement is a "broader remedy" than restitution. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003).

[3] Counterclaimants admitted as much in the Final Pretrial Conference Order, where they acknowledged that damages are based on "commercial injury **to the claimant**," and suggested such damages could be "the market value of the nonpermitted use" or "loss of future potential earnings in his or her career or other licensing opportunities based on lost reputation." Dkt. 924 at 20 (emphasis added).

Umberg Zipser llp
Attorneys At Law
Irvine

{289998.11}                                    13                    Case No. 2:20-cv-11548-JVS-AGR
                                                                    MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                    ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

theory of profits "is based on the idea that the defendant diverted sales that would have gone to the plaintiff *but for* the infringement" and is designed to compensate the plaintiff "for sales which he has lost as a result of his customers being diverted to the infringer." *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) (emphasis added). "[D]irect competition is required between the plaintiff and the infringer; 'if there is no competition, there can be no diversion of customers.'" *Id.* (quoting *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968)).

As the Court previously found, there was no evidence that MGA diverted sales from the OMG Girlz, who are not a competitor and do not make dolls.  Dkt. 1090 at 9; Dkt. 1113 at 8.

### 4.  The Staggering Punitive Award Violates Due Process.

#### a.  *MGA Did Not Act Reprehensibly.*

Counterclaimants agree that the degree of reprehensibility is the most important factor in determining whether punitive damages comport with due process.  Opp. at 7.  But their position that an immense punitive award is acceptable here cannot be squared with the evidence—including that MGA did not act willfully.

To assess reprehensibility, courts consider whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.  *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 900 (9th Cir. 2022).

On the first factor, Counterclaimants argue that Ms. Pullins experienced some "emotional hurt" from seeing the Dolls, but there was no evidence supporting this claim outside her own testimony, and no way to determine the degree or magnitude

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                14                    Case No. 2:20-cv-11548-JVS-AGR
                                                    MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                    ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

of that alleged harm.  In any event, the Court previously rejected Counterclaimants' claim of emotional or other "intangible harms" (*e.g.*, "sacrificing life opportunities, bleaching their hair, and suffering the emotional distress of MGA's criticisms of their legal claims"): "[T]hese intangible harms reflect the efforts of the OMG Girlz to curate their image and not a loss of profits or sales that stemmed from L.O.L. Surprise! O.M.G. dolls."  Dkt. 1090 at 9; *see* Dkt. 521 (precluding Counterclaimants "from seeking, or presenting evidence relating to, emotional distress damages").[4]  Counterclaimants do not argue the second factor supports a punitive award.[5]

On the third factor, Counterclaimants argue that MGA believed that the OMG Girlz were financially vulnerable, based on statements made by MGA's counsel during his opening.  Opp. at 9:3-5.  This is a misreading of Counsel's argument but, in any event, Counsel's argument is not evidence.  Dkt. 1013 at 6 (Instruction No. 5).  Further, Counterclaimants cannot now contend they were financially vulnerable when they testified at trial about their immense financial success and stardom.  *See* Trial Tr. ("TT") 9/4/24 AM at 33:14-19; 35:7-37:13; TT 9/6/24 PM at 67:6-9 (Mr. Harris testifying, "Well, I already got money. . . I don't need, you know, to be here.").

On the fourth factor, Counterclaimants failed to establish that MGA's alleged infringement was repeated or worsened after the lawsuit.  The only testimony supporting this theory was Ms. Harris' opinion.  TT 9/4/24 AM at 74:25-75:7.  Such speculation cannot support a finding of reprehensibility, much less by clear and convincing evidence.  As explained above, MGA had reason to believe its Dolls

---

[4] To the extent the jury inferred actual harm to satisfy liability, including testimony regarding purported emotional distress, that is inconsistent with this Court's Orders.

[5] Nor could they, given there were no facts showing that MGA's conduct "evinced an indifference to or a reckless disregard of the health or safety of others."

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

15

Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

were not infringing.[6]  Further, that MGA allegedly copied from artists **other than** the OMG Girlz (which MGA did not) or were involved in a lawsuit against **an unrelated third party** is of no moment.  An award to punish MGA for alleged injury inflicted upon nonparties violates the Due Process Clause.  *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).

On the final factor, Counterclaimants again argue that MGA's pre-lawsuit investigation was insufficient.  Opp. at 11.  The Court has already considered and rejected that argument.  Dkt. 1090 at 8.  And supposedly "inconsistent testimony" from MGA's witnesses at trial cannot possibly support a finding that the alleged harm (years earlier) was done with "trickery and deceit."

> b.    *Given Zero Actual Damages, The Punitive Award Far Exceeds Constitutional Limits*.

Counterclaimants argue that the massive $53-million punitive award falls below constitutional limits because it is less than the 4:1 ratio of punitive to compensatory damages that the Ninth Circuit has held was a "good proxy for the limits of constitutionality."  Opp. at 7 (citing *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005)).  But that ratio applies "where there **are significant economic damages**[.]" *Riley*, 51 F.4th at 902 (quoting *Planned Parenthood*, 422 F.3d at 962) (emphasis added).  Again, Counterclaimants suffered **zero** economic damages, and were barred from presenting other damages theories.  *See* Dkts. 502, 521.  Thus, applying a 4:1 ratio to a disgorgement award would be entirely improper.  *See Epic Systems Corp. v. Tata Consultancy Services, Ltd.*, 980 F.3d 1117, 1143 (7th Cir. 2020).

Even where there are compensatory damages, unlike here, the Supreme Court has advised, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps **only equal** to compensatory damages, can reach the **outermost limit** of the

---

[6] Nevertheless, MGA voluntarily ceased sales of the 15 Dolls that the jury found to infringe after the jury verdict.  *See* Dkt. 1113 at 8-9.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                              16                    Case No. 2:20-cv-11548-JVS-AGR
                                                               MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                               ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  due process guarantee." *State Farm*, 538 U.S. at 425 (emphasis added); *see*

2  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 974, 975 (9th Cir. 2021) (observing that

3  a compensatory damages award even over $1 million may be considered

4  "substantial"); *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 954 (C.D. Cal.

5  2011) (finding that 1:1 ratio was sufficient where compensatory damages were

6  unusually high).

7          The over $53-million punitive award is neither reasonable nor proportionate

8  to *zero* actual damages. *See State Farm*, 538 U.S. at 426; *Kizer*, 53 Cal. 3d at 147.

9  *See also Mattel*, 801 F. Supp. 2d at 955 ("[A] low compensatory award in a trade

10  secret misappropriation case cannot trigger the 'maximum possible amount in

11  exemplary damages [.]'"). Thus, punitive damages here are "grossly excessive"

12  and fail to comport with due process. *See Philip Morris*, 549 U.S. at 353.

13                      *c.      The Comparable Civil Penalties Are Small*.

14          Under Civil Code Section 3344, Counterclaimants would only be entitled to

15  up to $750. Indeed, they had no actual damages and, as explained herein, did not

16  prove that **any** of MGA's profits were "attributable to the use" of the OMG Girlz'

17  likeness. Cal. Civ. Code § 3344.

18              5.    Alternatively, The Court Should Issue A Remittitur.

19          Counterclaimants incorrectly argue that courts in this circuit use remittitur

20  only when punitive damages are constitutionally excessive, citing a single case,

21  *Bardis v. Oates*, 119 Cal. App. 4th 1, 22 (2004). Opp. at 12. The *Bardis* court

22  reduced the punitive award from $7 million to $1.5 million (the "outermost limit" in

23  that case) without a remittitur, finding the "punitive damages award must be

24  reduced based on the due process clause of the federal Constitution . . . ." *Bardis*,

25  119 Cal. App. 4th at 22-24. Thus, the Court should, at minimum, issue a remittitur

26  giving Counterclaimants the option of a new trial on punitive damages or a *de*

27  *minimis* amount of punitive damages.

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                    17                         Case No. 2:20-cv-11548-JVS-AGR
                                                                         MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                         ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

**B.**    **The Court Should Grant Judgment Or, Alternatively, A New Trial On The Misappropriation Claim.**

1.    Counterclaimants Did Not Meet Their Burden Of Establishing Standing.

Counterclaimants, not MGA, "bear the burden of establishing their standing through all stages of litigation, and they . . . [bore] that burden of proof at trial." *Munoz v. PHH Mortg. Corp.*, No. 108CV00759DADBAM, 2021 WL 1928616, at *7 (E.D. Cal. May 13, 2021) (citing cases). Counterclaimants seek to avoid the consequences of failing to meet their burden by asserting that MGA "never challenged ownership of the rights at trial" and "never argued the Interscope Agreement is still in effect." Opp. at 13:7-12. But "[s]tanding cannot be waived." *Hartman v. Summers*, 120 F.3d 157, 159 (9th Cir. 1997). In any event, MGA challenged standing throughout this case, including at trial in its Rule 50(a) motion. Dkt. 988 at 11-12 (arguing, *inter alia*, that the 2012 Interscope Agreement controls).

On the merits, Counterclaimants argue—without citing any trial testimony or exhibits—that the 2012 Interscope Agreement expired and the rights to the OMG Girlz' likeness reverted back to them. Opp. at 13 & n.3 (citing links to YouTube videos that were never in evidence). Because Counterclaimants did not elicit any trial testimony, or introduce any trial evidence, to support their current argument that the 2012 Interscope Agreement expired, Counterclaimants failed to satisfy their burden that they had standing to bring the misappropriation claim on behalf of the individual band members. This is fatal to that claim.

2.    Judgment Should Be Granted In Favor Of MGA On The Misappropriation Claim Based On The First Amendment.

Even if Counterclaimants had standing, their misappropriation claim is barred by the First Amendment because the Dolls are transformative. *See*

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

18

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

*Hilton v. Hallmark Cards*, 599 F.3d 894, 909-10 (9th Cir. 2010) (citing *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001)).

In Opposition, Counterclaimants misrepresent that "[a]t trial, Mr. Larian testified that MGA did ***not*** add something new to the OMG Girlz['] likeness." Opp. at 13 (emphasis in original). Mr. Larian was asked if "MGA started with the OMG Girlz' likeness" to make the Dolls, to which he responded that MGA did ***not*** ("Absolutely 1,000 percent no."). TT 9/19/24 PM at 54:7-12. Therefore, far from admitting that MGA started with the OMG Girlz' likeness but failed to then "add something new," Mr. Larian testified that MGA never used the OMG Girlz' likeness at all—which is entirely consistent with MGA's current position.

Counterclaimants next argue that the "transformative use" test from *Comedy III* is no longer good law in light of *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023). This argument was previously raised and rejected. Dkt. 929 at 12; Dkt. 1013 at 25 (Instruction No. 19). As MGA explained then, *Andy Warhol* is inapposite because it addresses freedom-of-speech concerns that arise in copyright law rather than in right of publicity cases. Dkt. 929 at 15-16.

Indeed, MGA is unaware of (and Counterclaimants do not cite) any caselaw stating that *Andy Warhol* overruled *Comedy III* or even has any bearing on a right of publicity claim.[7] To the contrary, the Ninth Circuit recently acknowledged in an unpublished case, *Young v. NeoCortext, Inc.*, No. 23-55772, 2024 WL 4987254, at *2 (9th Cir. Dec. 5, 2024), that *Comedy III*'s "transformative use" test remains good law. And federal courts continue to rely on *Comedy III*'s holding regarding the scope of California law on the First Amendment defense to right of publicity claims. *See, e.g.*, *Woloszynska v.*

---

[7] Notably, the Judicial Council of California's Civil Jury Instructions continue to include CACI No. 1805 and cite *Comedy III* as supporting law.

Umberg Zipser llp
Attorneys At Law
Irvine

{289998.11}                                           19                                    Case No. 2:20-cv-11548-JVS-AGR
                                                                                           MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                                           ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  *Netflix, Inc.*, 2023 WL 7166828, at *6 (N.D. Cal. Oct. 30, 2023); *Andersen v.*

2  *Stability AI Ltd.*, 700 F. Supp. 3d 853, 874-75 (N.D. Cal. 2023).

3      In addition, Counterclaimants failed even to address MGA's argument

4  that the Dolls are transformative because their value does not "result primarily"

5  from the OMG Girlz' fame.  *See* Mot. at 18:14-24; CACI No. 1805.

6          3.   <u>Counterclaimants Failed To Offer Any Evidence Of Actual</u>

7              <u>Harm To Support The Injury Element Of Misappropriation</u>.

8      To support their claim that MGA harmed (and continues to harm) the

9  OMG Girlz, Counterclaimants cite to just a single exhibit and one portion of

10  Ms. Alexander's testimony.  Opp. at 14:16-19.  Trial Exhibit 407 is the internal

11  2019 email exchange where MGA employees discussed the lyrics of a song.

12  And Ms. Alexander testified that she bought the Dolls that her daughter

13  requested, telling her that they were the OMG Girlz.  TT 9/10/24 AM at 34:14-

14  35:12.  Neither shows how Counterclaimants were harmed.[8]

15      Nor can Counterclaimants argue harm based on the alleged loss of

16  control of "their reputation, brand narrative, and market position."  Indeed, the

17  Court previously found that "none of the consumer witnesses testified that they

18  were dissatisfied with the dolls they purchased" and Counterclaimants have

19  "not provided evidence of the loss of *business control* or reputation because

20  they do not operate a competing doll business."  Dkt. 1113 at 10 (emphasis in

21  original).  The Court further concluded that "[t]he self-serving allegations of

22  'total loss of control over business reputation,' without any specificity is

23  unpersuasive."  *Id.* at 10-11.

24      Although Counterclaimants speculate that MGA's activities could "affect

25

26    [8] The later citation to Ms. Harris' testimony is also inapposite, as she merely

27  relayed what she contends occurred at the "Save Our Daughters" charity event and what she hoped her lawyer's cease-and-desist letter would accomplish.  Opp. at

28  14:24 (citing TT 9/4/24 AM at 73-74).

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}        20        Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  their ability to enter into future merchandising agreements or brand

2  partnerships," Opp. at 14, nothing in the record supports this claim, as the Court

3  found. *See* Dkt. 1090 at 9; Dkt. 1113 at 8 & n.5. Indeed, Counterclaimants

4  tacitly admit they have nothing in the trial record to support their position, as

5  they instead cite MGA's opposition to their trademark application from the

6  USPTO website. Opp. at 15 & n.5. A pending trademark application, even if

7  that had been part of the trial record, does not establish that Counterclaimants

8  are, or would be, harmed.

9          4.    <u>The Evidence Was Insufficient To Show Misappropriation</u>.

10       The only reasonable conclusion based on the trial evidence is that no

11  Dolls are "readily identifiable" as the OMG Girlz and therefore none infringes

12  on the OMG Girlz' name, identity, or likeness. *See Newcombe v. Adolf Coors*

13  *Co.*, 157 F.3d 686, 692 (9th Cir. 1998).

14       In Opposition, Counterclaimants argue that the evidence must have been

15  sufficient to establish that 15 Dolls were "readily identifiable" as the OMG

16  Girlz because the jury found those Dolls infringe. Opp. at 15. But motions for

17  JMOL are brought after a jury's contrary ruling and, thus, the jury's ruling

18  alone cannot be sufficient to defeat this Motion. The point of post-judgment

19  JMOL motions is to correct the jury's mistakes when the evidence does not

20  support the jury's findings.

21       Misappropriation occurs if the Dolls could "either consciously or

22  subconsciously conjure up images" of the OMG Girlz, without prompting or

23  side-by-side comparisons. *See Newcombe*, 157 F.3d at 693. There is absolutely

24  no evidence that occurred here. In fact, ***not a single participant*** in

25  Dr. Isaacson's scientific likeness survey believed that the Dolls bore the

26  likeness of any of the OMG Girlz. TT 9/18/24 PM at 13:6-14:2. The OMG

27  Girlz themselves could not even agree which Doll looked like which band

28  member. *See* Mot. at 18-19.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}

21

Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    Counterclaimants try to preserve this claim by referring to broad,

2   unsupported theories about consumer habits.  Opp. at 15, 17 ("For a child's toy,

3   consumers were not investigating whether a specific doll was the exact skin

4   tone of their favorite OMG Girl[.]").  Unsurprisingly, Counterclaimants do not

5   cite anything in the trial record suggesting that consumers of MGA's Dolls

6   would ignore the Dolls' appearances.  To the contrary, Ms. Brenner's

7   testimony, based on MGA's internal study of its consumers, indicates that

8   consumers were acutely aware of the Dolls' visual appearance, such as their

9   hair color, hairstyle, and skin tone.  *See, e.g.*, TT 9/13/24 AM at 46:1-25.

10   **C.    The OMG Girlz Did Not Establish That All Of MGA's Profits**

11   **Were Attributable To The Misappropriation.**

12    To the extent the Court is not inclined to grant MGA Judgment or a new

13   trial on the misappropriation claim for liability, the Court should order a new

14   trial as to the disgorgement award or, alternatively, reduce the award.  In

15   making this Motion, MGA is not bound by the standards for reconsideration

16   under Local Rule 7-18.  *See Multiple Energy Techs., LLC v. Casden*, No. 2:21-

17   CV-01149-ODW (RAOX), 2025 WL 579641, at *9 (C.D. Cal. Feb. 21, 2025)

18   (considering Court's disgorgement of profits under Rule 59(a)).

19    Contrary to Counterclaimants' assertion that MGA has not made any

20   argument of error (Opp. at 16:1-2), the Motion states that "the award cannot

21   stand for the additional reason that Counterclaimants failed to meet ***their***

22   ***burden*** of establishing that MGA's profits were attributable to the

23   misappropriation of the OMG Girlz' likeness."  Mot. at 21 (emphasis in

24   original).

25    In Opposition, Counterclaimants contend that their burden was merely to

26   establish gross revenue, and "[n]o more was required."  Opp. at 16:11-12.  That

27   is not the standard under California law for misappropriation, where "the

28   plaintiff bears the burden of presenting proof of the gross revenue attributable

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                        22                        Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  to the defendant's unauthorized use of the plaintiff's likeness[.]" *Olive v. Gen.*

2  *Nutrition Centers, Inc.*, 30 Cal. App. 5th 804, 814 (2018); *see* CACI No. 1821;

3  Dkt. 1013 at 29 (Instruction No. 22).

4    Counterclaimants failed to present any facts at trial regarding the amount

5  of MGA's gross revenue on the Dolls ***that were attributable to use of the OMG***

6  ***Girlz' likeness***—let alone evidence to support the attribution of MGA's ***entire***

7  profits on seven Dolls of over $17 million.  At most, there was a single receipt

8  from Ms. Alexander, totaling $138.54, for her purchase of the Remix Super

9  Surprise four-pack.  *See* Tr. Ex. 659; TT 9/10/24 AM at 36:12-19.

10   **D.    The Court Should Grant Judgment Or, Alternatively, A New**

11   **Trial On The Trade Dress Claim.**

12       1.    Counterclaimants Do Not Have Protectable Trade Dress.

13         *a)    Failure To Define Trade Dress With Requisite Specificity.*

14   While trade dress may protect the "overall look" of a product, a plaintiff still

15  must specifically identify the elements of the claimed trade dress to enable a jury or

16  court to "know exactly which particular combination of numerous elements claimed

17  would trigger trade dress protection."  *Maharishi Hardy Blechman Ltd. v.*

18  *Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544-46 (S.D.N.Y. 2003).

19       Counterclaimants acknowledge that the three "elements" set forth in Trial

20  Exhibit 5521 represent their claimed trade dress and that these must be considered

21  in "total combination."  Opp. at 16-17.  Yet Counterclaimants' witnesses repeatedly

22  testified that the OMG Girlz were in their trade dress even without all three required

23  components.  *See, e.g.*, TT 9/4/24 AM at 100:17-25 (infringe without "colored hair"

24  or "voluminous skirts"); TT 9/6/24 PM at 16:3-11 (infringe without "OMG Girlz").

25  Thus, it remains unclear what, precisely, constitutes the alleged trade dress.

26         *b)    Failure To Use "OMG Girlz" As A Visual Element.*

27       Counterclaimants do not dispute that they were required to use the words

28  "OMG Girlz" as a visual element for their trade dress to be valid.  Opp. at 18.

Umberg Zipser LLP
Attorneys At Law
Irvine

{289998.11}                                    23                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1    But their argument that "the OMG Girlz consistently used all elements of the

2    trade dress—*including the words OMG Girlz*"—is unsupported by the trial

3    evidence. *See id.* (emphasis added). Counterclaimants point to a couple of

4    examples where "OMG GIRLZ" appeared on promotional material, like posters

5    and magazines, and in the backdrop of their performances. *Id.* at 18-19. But

6    such few sporadic instances fail to establish that the word "OMG Girlz" formed

7    a *visual* element of the claimed trade dress, let alone consistently. *See Clicks*

8    *Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (trade

9    dress comprises "visual effects"). Nor is this requirement satisfied because

10   Ms. Womack once wore a jacket with the common and popular acronym

11   "OMG," as Counterclaimants claim rights to "OMG Girlz" (not "OMG" alone)

12   as part of their trade dress. *See* Opp. at 18.

13        Further, Counterclaimants do not dispute that their witnesses testified that

14   the claimed trade dress includes looks that do *not* visually include "OMG

15   Girlz." *See, e.g.*, TT 9/4/24 AM at 71:2-11, 135:6-136:2; TT 9/6/24 PM at

16   14:22-15:11, 16:9-11; TT Day 9/12/24 PM at 106:14-107:11. Thus, the visual

17   "OMG Girlz" element is not a part of their claimed trade dress, and without it,

18   the OMG Girlz are improperly attempting to claim exclusive rights over

19   colorful hair and "experimental, fun, urban, and edgy" clothing.

20               *c)*    *Failure To Establish A Consistent Overall Look.*

21        Counterclaimants fail to even address MGA's argument that the OMG Girlz

22   lacked a consistent overall look. As explained in MGA's Motion, if

23   Counterclaimants cannot show that the OMG Girlz "ha[s] a 'consistent overall

24   look,' the trade dress that is allegedly infringed 'does not exist.'" Mot. at 26

25   (quoting *Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*, No. 95 Civ.

26   4008, 1997 WL 749388, at *4 (S.D.N.Y. Dec. 3, 1997)). Here, the OMG Girlz'

27   broad, subjective trade dress descriptions encompass a virtually limitless array of

28   looks. *See, e.g.*, TT 9/6/24 PM at 81:21-82:2 (the OMG Girlz had "literally

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                                    24                    Case No. 2:20-cv-11548-JVS-AGR
                                                                     MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                                     ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

thousands of different looks" and "they definitely switched their styles"); *id.* at 33:14-21 (any outfit the OMG Girlz wore "publicly at a performance, even if it's once, it's part of their signature look").  Such an "ever-evolving 'look'" precludes any "source-identifying significance in the minds of the consuming public." *Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, 667 F. Supp. 1221, 1226, 1231 (N.D. Ill. 1987).

> d)     *Failure to Show That The Alleged Trade Dress Is Nonfunctional.*

Counterclaimants fail to address that the "aesthetic" elements of their claimed trade dress are functional because they "serve an aesthetic purpose wholly independent of any source-identifying function."  *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1073 (9th Cir. 2006).  As Counterclaimants themselves testified, their ever-changing look was simply fashion and decoration.  *See, e.g.*, TT 9/4/24 AM at 53:16-18 (the OMG Girlz "changed [their] looks according to . . . timing, growing, just experimenting with being an artist").

Instead, Counterclaimants argue that their trade dress is nonfunctional because the Dolls could have been named something other than "OMG" (which is a common phrase that Counterclaimants do not own, Dkt. 326 at 21-22), or could have used combinations of hair color and clothing "that would have avoided evoking the OMG Girlz' brand."[9]  Opp. at 19.  However, that is not the test. According to the case Counterclaimants cite, a trade dress is functional "if it is essential to the use or purpose of the article."  *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 617 (2d Cir. 2008).

Counterclaimants testified that their various looks were necessary to being an

---

[9] As explained above, the claimed trade dress offers no meaningful guidance on what combinations would or would not infringe.  And it is hard to imagine a fashion doll without colorful hair or "fun" clothing.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                    25                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

entertainer, not to identify the OMG Girlz.  *See, e.g.*, TT 9/4/24 AM at 53:18-19 ("[A]s an artist, you have to change your look."); TT 9/6/24 AM at 63:15-17 (OMG Girlz' "urban and edgy" outfits were needed to "surprise your fans and make them feel like they're having an element of newness to it"); TT 9/12/24 AM at 96:23-97:3 (Ms. Pullins' "neon yellowish-green color with black roots" was designed to "surprise the audience" and "stand out as a solo artist").  Therefore, the purported trade dress is functional.

          2.     <u>Counterclaimants Did Not Establish Secondary Meaning</u>.

Counterclaimants ignore Ninth Circuit caselaw confirming that an expert survey is "the ***most persuasive*** evidence of secondary meaning." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (emphasis added).  Instead, they argue the trade dress acquired secondary meaning through fan-made videos, media and press coverage, interviews, and fan comments on the Harrises' Instagram posts.  Opp. at 19-20.  At most, these merely demonstrate some popularity of the OMG Girlz themselves, not secondary meaning for their claimed trade dress.  *See* 5 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed.); *Goodyear Tire and Rubber Co. v. Interco Tire Corp.*, 49 U.S.P.Q.2d 1705, at *16 (TTAB 1998).

Counterclaimants thus failed to establish that a "substantial segment" of the consuming public associated the claimed trade dress with "a single source," *i.e.*, the OMG Girlz.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).  Indeed, Counterclaimants cannot establish that even a substantial segment of their own fans associated their claimed trade dress with the OMG Girlz, as comments to their self-serving Instagram posts indicated. *See, e.g.*, TT 9/4/24 PM at 15:11-16:5.

          3.     <u>Counterclaimants Abandoned Their Claimed Trade Dress</u>.

Counterclaimants failed to rebut the *prima facie* evidence of abandonment. *See* 15 U.S.C. § 1127.  Ms. Womack confirmed that the OMG Girlz publicly stated

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}        26        Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  that they broke up in 2015.  TT 9/6/24 AM at 118:15-20.  She also testified that

2  there were no photos on the OMG Girlz' Instagram for the five-year period between

3  2018 and 2023, nor any videos uploaded to their official YouTube channel for the

4  11-year period between 2012 and 2023.  *Id.* at 107:5-10, 109:17-110:4.

5       That the OMG Girlz' music was available to purchase and stream or that the

6  OMG Girlz performed two isolated times in 2016 and 2017, TT 9/5/24 PM at

7  80:22-81:16, does not rebut the inference of abandonment from nonuse of the

8  claimed **trade dress**.  Significantly, after the OMG Girlz reunited as a band, they

9  were not even using their claimed trade dress.  *See, e.g.*, TT 9/6/25 AM at 121:8-16

10  (tight dresses without layers), 122:16-123:7 (all black bodysuits with no skirts or

11  tutus); TT 9/12/24 AM at 92:22-24 (tutus were "in the past").

12       4.    Counterclaimants Have Not Shown Likelihood Of Confusion.

13       Counterclaimants rely on scant evidence, taken out of context, to try to

14  support a finding of likelihood of confusion.

15       First, Counterclaimants argue that the Dolls are visually similar to the

16  OMG Girlz.  But as reflected in the verdict, the jury found that most of the

17  Dolls at issue (18 of 32)—all of which have similar fashion, colored hair, and

18  the "O.M.G." on the box—did **not** infringe on Counterclaimants' claimed trade

19  dress.  Dkt. 1009.  And to the extent Counterclaimants insist that MGA's

20  employees were somehow confused between the OMG Girlz and the Dolls

21  based on song lyrics (Opp. at 21), that is not the test.  *See Shakey's Inc. v.*

22  *Covalt*, 704 F.2d 426, 431 (9th Cir. 1983) (courts "must approach the likelihood

23  of confusion inquiry from the perspective of the marketplace").

24       Second, the Court has already rejected Counterclaimants' argument that

25  the parties offer similar goods and services.  *See* Dkt. 1090 at 8-9; Dkt. 1113 at

26  8.  Counterclaimants and MGA do not compete, and the fact that the OMG

27  Girlz' music and the Dolls may have been promoted and available online (as is

28  the case with most goods and services) is insufficient to establish likelihood of

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                    27                    Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  confusion.  *Cf. Locomotor USA, Inc. v. Korus Co.*, 46 F.3d 1142, *3 (9th Cir.

2  1995) ("[S]ubstantially similar products geared towards the same type of

3  consumer and marketed through the same channels . . . alone do not create a

4  triable issue of fact as to likelihood of confusion.") (unpublished).

5       Third, Counterclaimants' argument that were was "substantial evidence

6  of actual consumer confusion" is not supported by the facts.  The seven Dolls

7  for which Counterclaimants sought liability and damages had sales of over $68

8  million (TT 9/11/24 AM at 102:4-8), but there was testimony of "confusion"

9  from only four people, along with anonymous comments from the Harrises'

10  fans in response to self-serving Instagram posts.[10]  *See* Opp. at 21-22.

11  Counterclaimants presented no facts establishing that the commenters, other

12  than those four consumer witnesses, were consumers of fashion dolls, had

13  encountered the Dolls independently in the marketplace, or had even bought the

14  Dolls at issue.  *See Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th

15  Cir. 1984) (likelihood of confusion analysis must consider "the way the marks

16  are encountered in the marketplace and the circumstances surrounding the

17  purchase").

18       The testimony of four people is insufficient to show confusion.  *See*

19  *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606-07 (9th Cir.

20  1987) (affirming that actual confusion of "several letters and checks" was *de*

21  *minimis* in light of "both parties' high volume of business").

22       Indeed, Dr. Isaacson's scientific likelihood of confusion survey found

23  that **zero** participants (out of 1,500) associated the Dolls with the OMG Girlz.

24  TT 9/18/24 AM at 131:1-7.  Counterclaimants' assertion that the survey was

25  "largely grown men" is inaccurate.  Opp. at 22:18-20.  Dr. Isaacson testified

26  that just 37-38% of the participants were men, and regardless, men may buy a

27

28  [10] MGA maintains that these comments were inadmissible.  Dkts. 939, 968.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                28                Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1  doll for a child, just as women might.  TT 9/18/24 PM at 56:23-57:5.  Thus,

2  likelihood of confusion was not proven.  *See Cairns v. Franklin Mint Co.*, 24 F.

3  Supp. 2d 1013, 1040 (C.D. Cal. 1998) ("While plaintiffs present some evidence

4  of actual confusion, that evidence is outweighed by defendants' survey

5  evidence and the presumption that plaintiffs' failure to conduct a survey

6  indicates the results of such a survey would be unfavorable for plaintiffs.").

7     **E.    The Court Should Grant Judgment Or, Alternatively, A New**

8         **Trial On All Claims Against Mr. Larian.**

9         Counterclaimants contend that there was "substantial evidence

10  supporting the verdict against Mr. Larian," but fail to cite to anything in the trial

11  record.  Opp. at 22-23.  It is not enough that MGA and Mr. Larian were defined

12  collectively in the Final Pretrial Conference Order and Jury Instructions.

13  Evidence must be sufficient to support the verdict as to ***each*** defendant.

14     **F.    The Court Should Grant Judgment Or, Alternatively, A New**

15         **Trial On MGA's Claims For Declaratory Judgment.**

16         For the reasons above, the Court should also grant Judgment on MGA's

17  claim for declaratory judgment, 28 U.S.C. § 2201(a) (Dkt. 16), as to the 15 Dolls

18  for which the jury found infringement and/or misappropriation.  Dkt. 1009.  At

19  minimum, the Court should enter Judgment for MGA on the eight Dolls that the

20  jury found to infringe but for which Counterclaimants ***did not*** seek liability and

21  "abandoned."  *See* TT 9/18/24 AM 7:21-22, 9:17-23; 12:2-4.

22  **III.    CONCLUSION**

23         For the foregoing reasons, MGA respectfully requests that the Court

24  vacate the punitive award and award MGA Judgment on all claims or, at

25  minimum, grant a new trial or issue a remittitur.

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                    29                    Case No. 2:20-cv-11548-JVS-AGR
                                                     MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                     ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1   Dated: June 16, 2025                    UMBERG ZIPSER LLP

2

3

4   _____

5   Mark A. Finkelstein
    Attorneys for Plaintiff and Counter-
6   Defendant MGA Entertainment, Inc., and
    Counter-Defendant Isaac Larian

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                              30                  Case No. 2:20-cv-11548-JVS-AGR

                                                            MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
                                                            ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

**CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2**

The undersigned, counsel of record for MGA, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 16, 2025                    UMBERG ZIPSER LLP

_____

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-
Defendant MGA Entertainment, Inc., and
Counter-Defendant Isaac Larian

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{289998.11}                    31                    Case No. 2:20-cv-11548-JVS-AGR

MGA'S REPLY ISO MOT. FOR JMOL OR, IN THE
ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR