UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] Order Regarding Motion and Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur [1121]**

Plaintiffs and Counterdefendants MGA Entertainment, Inc. and Isaac Larian (collectively, "MGA") file a motion for judgment as a matter of law or, in the alternative, new trial or remittitur. (Mot., Dkt. No. 1121.) Defendants and Counterclaimaints Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises" or "OMG Girlz") filed an opposition. (Opp'n, Dkt. No. 1124.) MGA filed a reply. (Reply, Dkt. No. 1125.)

For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion. With respect to punitive damages, the Court **GRANTS** the motion, on the condition that the Harrises do not accept a remittitur of $1. The Harrises shall lodge a filing of their decision with the Court within 14 days upon the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

Regarding the Lanham Act counterclaim and common law misappropriation counterclaim, the Court **DENIES** the motion. The Court **DENIES** the motion with respect to both the request for declaratory judgment and for judgment as a matter of law for all claims against Mr. Larian individually.

## I. BACKGROUND

### A.     The OMG Girlz and MGA Entertainment, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

This case arises from an alleged trade dress infringement and misappropriation of name, likeness, or identity of the OMG Girlz brand by the entertainment and toy company, MGA, over the L.O.L Surprise! O.M.G. dolls line.  On December 22, 2020, MGA filed a complaint against the OMG Girlz seeking declaratory judgment whether the L.O.L. Surprise! O.M.G. dolls and associated lines of toy products infringed the intellectual property rights of the OMG Girlz' mark.  (See Compl., Dkt. No. 1.)

MGA is a large toy company that designs, develops, and distributes children's toys.  (See Summary Judgment Order, Dkt. No. 326 at 2.)  In 2001, MGA released the enormously successful "Bratz" doll.  (Id.)  MGA CEO Isaac Larian ("Larian") credits MGA with having "invented diversity in dolls," starting with the Bratz doll.  (Trial Tr. 9/19/24 AM 97:12–13.)

Tameka "Tiny" Harris is a famous singer-songwriter who formed a teenage female vocal group called the OMG Girlz.  (Trial Tr. 9/4/24 AM 33:1–2.)  The core members of the group are Zonnique Pullins, Breaunna Womack, and Bahja Rodriguez.  (Id.)  The individual members of the OMG Girlz are not parties to the instant action.

In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!.  (Trial Tr. 9/11/24 AM 41:18–42:20.)  The collection was a big success for MGA, quickly becoming a top selling toy in the United States.  (Id.)  In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls.  (Trial Tr. 9/13/24 AM 23:3–6, 25:2–26:1.)

*B.    The Lawsuit Commences*

On December 8, 2020, the Harris Parties sent a cease-and-desist letter to MGA claiming that MGA had copied the OMG Girlz' signature look and demanding that MGA stop distributing the L.O.L. Surprise! O.M.G. dolls.  (Dkt. No. 13; Trial Tr. 9/4/24 AM 93:21–94:8.)  Immediately thereafter, MGA filed suit against the OMG Girlz in an effort to clarify the rights of the parties.  (Trial Tr. 9/19/24 PM 43:13–44:4.)  On February 22, 2021, the OMG Girlz answered and filed a counterclaim alleging violations of the Lanham Act, statutory and common law misappropriation of name or likeness, and statutory and common law unfair competition claims.  (Dkt. No. 13.)

In July 2022, the Court granted summary judgment in favor of MGA on more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

half of the dolls alleged to be infringing—40 dolls in total.  (Summary Judgment Order at 23, 33.)  Additionally, the Court granted summary judgment in favor of MGA on the statutory misappropriation claim, finding that the OMG Girlz did not have a claim under Cal. Civ. Code § 3344.  (Id.)  Finally, the Court granted summary judgment in favor of MGA on the unfair competition law claims.  (Id.)

On May 9, 2023, the remaining claims were tried before a jury.[1]  (Dkt. No. 777.) On May 26, 2023, the jury returned a verdict in favor of MGA on both remaining causes of action.  (Id.)  The jury found that the OMG Girlz had not proven that the L.O.L. Surprise! O.M.G. doll line infringed the OMG Girlz' asserted trade dress or misappropriated the OMG Girlz' name, likeness, or identity.  (Id.)  The Court additionally found that MGA was entitled to declaratory relief.  (Id.)  On June 13, 2023, the Court issued its judgment.  (Id. at 2.)

However, following the conclusion of that trial, the Supreme Court issued its ruling in Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140 (2023).  Following the Jack Daniel's case, this Court held that one of the jury instructions related to the Harrises' trade dress claim was erroneous and granted a new trial on both of the Harrises' claims.  (Dkt. No. 860.)

*C.    The September 2024 Trial and Jury Verdicts*

In September 2024, the third trial in this lawsuit began.  (Dkt. No. 944; Trial. Tr. 9/3/24 AM.)  Prior to trial, the Court ruled that any verdicts on equitable issues were to be regarded as advisory verdicts.  (Final Pretrial Conference Order, Dkt. No. 924 at 2.) At trial, the Harrises narrowed the scope of their claim and sought disgorgement for seven of the 32 remaining dolls.  (See Trial Tr. 9/18/24 AM 7:21–23.)

On September 23, 2024, the jury reached its verdict.  (Verdict, Dkt. No. 1010.) With regard to the Lanham Act, the jury found that the Harrises had established by a preponderance of the evidence that MGA infringed on the OMG Girlz' trade dress with respect to all seven dolls: Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runaway Diva.  (See id. at 2–4.)  The jury found that there was no First

---

[1] The first trial ended in a mistrial.  The second trial began in May 2023.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Amendment defense and that MGA's trade dress infringement was willful.  (Id. at 5.)  The jury awarded $17,872,253 as an advisory figure for damages.  (Id.)

With respect to common law misappropriation, the jury found that the OMG Girlz had proven by a preponderance of the evidence that the dolls misappropriated the OMG Girlz' name, likeness, or identity.  (Id. at 2.)  The jury found by clear and convincing evidence that MGA acted with oppression, fraud, or malice in this misappropriation.  (Id. at 6.)  The jury awarded $17,872,253 as an advisory figure.  (Id.)  The jury also awarded punitive damages of $53,616,759.  (Punitive Damages Verdict, Dkt. No. 1012 at 1.)

In deciding on MGA's claim for declaratory relief, the jury also concluded that six additional dolls infringed on the OMG Girlz' trade dress and misappropriated their name, likeness, or identity: Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, and City Babe.  (Id. at 7–14.)  The jury found that one doll, Shadow, infringed on the OMG Girlz' trade dress only, and another doll, Miss Glam, misappropriated the OMG Girlz' name, likeness, or identity.  (Id.)  The jury determined that the following 13 dolls did not infringe on the OMG Girlz' trade dress or misappropriate their name, image, or likeness: Ferocious, Fame Queen, Uptown Girl, Class Prez, Rocker Boi, Lady Diva, Sweets, Spicy Babe, Miss Royale, B-Gurl, Major Lady, Cosmic Nova, 24K D.J., Snowlicious, Candylicious, Moonlight B.B., and Gamma Babe.  (Id.)

On April 15, 2025, the Court denied the Harrises motion for permanent injunction and prejudgment interest, but awarded post-judgment interest.  (Permanent Injunction Order, Dkt. No. 1113.)

D.    *The Present Motion*

The Court entered its Final Judgment on April 29, 2025.  (Final Judgment, Dkt. No. 1118.)  On May 27, 2025, MGA filed the present motion requesting judgment as a matter of law or, in the alternative, new trial or remittitur.

## II.  LEGAL STANDARD

A.    *Renewed Judgment as a Matter of Law*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Pursuant to Fed. R. Civ. P. 50(a), a motion for judgment as a matter of law must be made before the case is submitted to the jury and must specify the judgment sought and the law and facts that entitle the movant to the judgment. Fed. R. Civ. P. 50(a). If the Court does not grant the motion, then "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009); Zion v. Cty. of Orange, No. 8:14-cv-01134, 2019 U.S. Dist. LEXIS 228259, at *15 (C.D. Cal. Apr. 17, 2019).

A party may move to renew its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) within twenty-eight days after the entry of judgment, or if the motion addresses a jury issue not decided by a verdict, no later than twenty-eight days after the jury was discharged. Fed. R. Civ. P. 50(b). It may also move in the alternative a request for a new trial under Fed. R. Civ. P. 59. Id.

A moving party is entitled to judgment as a matter of law if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion that is contrary to the jury's verdict. Go Daddy Software, 581 F.3d at 961. A jury's verdict "must be upheld" if it is supported by substantial evidence, even where it "is possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). In ruling on a motion for judgment as a matter of law, the court may: "(a) allow the judgment to stand, (b) order a new trial, or (c) direct entry of judgment as a matter of law." White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002). Judgment is appropriate "if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002). Additionally, when making its determination, the Court cannot "make credibility determinations" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." Tan Lam v. City of Los Banos, 976 F.3d 986, 995 (9th Cir. 2020) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 159-51 (2000)).

B.    *New Trial*

Pursuant to Rule 59(a), in an action in which there has been a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Courts may grant new trials, "even though the verdict is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

supported by substantial evidence, if the verdict is contrary to the clear weight of the
evidence, or is based upon evidence which is false, or to prevent, in the sound discretion
of the trial court, a miscarriage of justice." United States v. 4.0 Acres of Land, 175 F.3d
1133, 1139 (9th Cir. 1999) (internal quotations omitted). Authority to grant a new trial
"is confided almost entirely to the exercise of discretion on the part of the trial court."
Allied Chem. Corp. v. Daiflon, 449 U.S. 33, 36 (1980) (per curiam). However, a trial
court may "not grant [a new trial] simply because the court would have arrived at a
different verdict." Pavao, 307 F.3d at 918.

## III. DISCUSSION

### A.    Punitive Damages Award

MGA argues that the Court should vacate the punitive damages award or, in the
alternative, order a remittitur or new trial. (Mot. at 10.) Specifically, MGA contends
that: (1) it did not act willfully, and (2) the award is excessive and violates the Due
Process Clause. (Id. at 10–14.) MGA also reiterates prior arguments that punitive
damages are not available for a claim of common law misappropriation.[2]

### 1.    Waiver of Punitive Damages Argument

As an initial matter, the Harrises argue that MGA has waived its punitive damages
argument because it did not move for judgment as a matter of law on this issue before the
jury's verdict. (Opp'n at 2.) MGA correctly notes that it is not moving for judgment as a
matter of law on punitive damages and that it did not do so at trial under Federal Rule
Civil Procedure 50(a). (Reply at 9.) Rather, MGA is requesting punitive damages relief
under Rule 59 and the Due Process Clause. Accordingly, MGA's argument is not
waived.

### 2.    Willfulness of MGA's Conduct

---

[2] The Court will not address this argument. As MGA has respectfully noted, the Court has
already ruled on this issue and found that punitive damages are available for a claim of common
law misappropriation. (See Equitable Issues Order, Dkt. No. 1090 at 12–14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In California, punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1104 (9th Cir. 1992) (citing Cal. Civ. Code § 3294(a)). Malice is defined as despicable conduct carried out with a "willful and conscious disregard of the rights or safety of others." Id. Likewise, fraud requires a finding of "intentional misrepresentation, deceit, or concealment . . . with the intention on the part of the defendant of thereby depriving a person of property or legal rights[.]" Cal. Civ. Code § 3294(c)(3). Finally, oppression is defined as "despicable conduct" done with a "conscious disregard of that person's rights." Id. § 3294(c)(2). Thus, there must be a finding of intent, conscious disregard, or willfulness to support punitive damages in California.

The Harrises argue that the evidence at trial supports a finding of willfulness. (Opp'n at 3.) The Harrises advance three reasons why the evidence supports a finding of willfulness: (1) lead designers' knowledge about the OMG Girlz, (2) overlapping markets, and (3) MGA's lack of credibility following brazen misappropriation of other celebrity identities. (Opp'n at 4–5.) At oral argument, the Harrises presented more argument for why the evidence supports a finding of willfulness.

### a.    Designers' Knowledge

The Harrises presented evidence at trial that lead designers, including Blanche Consorti, knew of the OMG Girlz in December 2019, prior to the creation of all of the infringing dolls. (Trial Tr. 9/10/24 PM 47:5–11.) Through Consorti, the Harrises presented evidence of an email exchange where MGA employees discuss the lyrics of a song, which they believed included a reference to the "OMG dolls." (Id. 47:9–49:25.) To the employees' dismay, however, a fellow coworker notes that the song was likely a reference to the "OMG Girlz" and not their OMG dolls. (Id.) Consorti appears to neither confirm nor deny any prior knowledge of the OMG Girlz. (Id.) Despite this confusion, the designers never reached out to the OMG Girlz to investigate. (Id. at 85.)

As the Court previously found in its Equitable Issues Order:

The email exchange and testimony tend to support a finding that some employees and at least one designer, Consorti, were aware of the OMG Girlz existence in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

December 2019.  However, this evidence largely fails to show that there was a deliberate intent to copy their trade dress upon learning of their identity.

(Equitable Issues Order, Dkt. No. 1090 at 7.)

The Court once again agrees that this evidence is insufficient to show willfulness or intent.  At best, this evidence shows that the designers saw a passing reference to the OMG Girlz and were negligent in not following up with the OMG Girlz having, themselves, been momentarily confused.  Yet, nothing in the email thread provides clear and convincing evidence that Consorti or other designers knew of the OMG Girlz trade dress or willfully made use of that knowledge to create the infringing dolls.

### b.    Overlapping Markets

The Harrises also presented evidence at trial that MGA's target audience overlapped with the OMG Girlz' audience.  (Trial Tr. 9/13/24 AM 83:6–24.)  While overlapping markets can be indicative of intentional efforts to deceive, see Playboy Enters. v. Netscape Comms. Corp., 354 F.3d 1020, 1028 (9th Cir. 2004), it can equally be unexceptional.  In this case, the overlapping market was that of Black/African-American mothers and Hispanic mothers.  (Trial Tr. 9/13/24 AM 83:12–16.)

This overlapping market, however, was partially explained by Mr. Larian, who testified that he was proud that Bratz was founded with a diverse line of dolls and has continued to sell its diverse brand of dolls well before the 2019 line of L.O.L. Surprise! dolls.  (Trial Tr. 9/19/24 AM 125:16–20.)  Further, Mr. Larian explained that MGA sells to "every girl, every nationality, [and] every color," and that it was Bratz' business practice to study the reactions and preferences of different demographics for dolls.  (Id. 126:19–25.)  Thus, the mere coincidence that the infringing dolls appealed to some of the same consumers that followed the OMG Girlz does not support a finding of intent to deceive, nor a finding based on clear and convincing evidence.

### c.    MGA's Lack of Credibility

The Harrises argue that MGA's story of innocence is called into question by the lack of credibility of its doll designers.  (Opp'n at 4.)  The Court has previously described the credibility issue as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

On numerous occasions, witnesses, particularly designers, were confronted with dolls that appeared to copy famous celebrities. Rather than concede copying, the designers attempted to explain away blatantly obvious design features copied from real individuals.[3]  (See Trial Tr. 9/18/24 AM 32:5–34:14; Trial Tr. 9/19/24 AM 61:23–62:19.)

(Equitable Issues Order at 8.)

The Court agrees, as it now can on a motion for new trial,[4] that these witnesses lost credibility as a result of the testimony about copying other celebrities. However, the Court still finds that while this evidence is the strongest evidence of willfulness or intent advanced by the Harrises, it falls short of clear and convincing. Indeed, MGA conceded to using other celebrities as inspiration for their dolls and even discussed forming partnerships with celebrities. (See Trial Tr. 9/10/24 PM 34:21–35:4; Trial Tr. 9/18/24 PM 111:15–19; Trial Tr. 9/19/24 AM 62:11–14.)  However, when it came to the OMG Girlz, there was no reliable evidence that MGA had any knowledge of the group's trade dress or desire to use their likeness to create the infringing dolls. The strong appearance that MGA copied other celebrities does not provide clear and convincing evidence that such was the case for the OMG Girlz.

Put together, the evidence falls short of showing willfulness, intent, or conscious disregard with respect to MGA's conduct. Where, as here, "the verdict is contrary to the clear weight of the evidence" or "would result in a miscarriage of justice," the Court has "the right, and indeed the duty, to weigh the evidence . . . and to set aside the verdict of

---

[3] For instance, during the cross of Consorti, she was asked whether a doll called "Piano King" (who clearly looks like Elton John), copied the famous singer Elton John. (Trial Tr. 9/18/24 AM 32:16–23.) Consorti maintained that it was not a copy of Elton John. (Id.) Consorti was shown an MGA doll called "Shimone Queen," with one white sparkly glove, glittery black costume, large glasses, and curly black hair (strongly resembling Michael Jackson). Yet, Consorti stated "[t]hat's a coincidence." (Id. 34:1–35:4.) The same pattern was repeated with other famous celebrities such as Lady Gaga and Audrey Hepburn. (Id.)

[4] Unlike a Rule 50 motion, under Rule 59, the Court "can weigh the evidence and assess the credibility of the witnesses." See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 845 (9th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

the jury[.]" See Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598, 602 (9th Cir. 1983). Therefore, the jury's verdict on punitive damages cannot be sustained.

### d.    Logo Change and Infringement During Trial

The Harrises argue that MGA's conduct after learning about the OMG Girlz further proves willfulness of conduct. Specifically, after the 2019 email thread where Consorti and other designers discuss the OMG Girlz, MGA changes its logo from "L.O.L. Surprise! O.M.G." to include "Outrageous Millennial Girls" underneath the O.M.G. The Harrises argue that "outrageous millennial girls" brought the infringing dolls closer to the OMG Girlz trade dress. Further, the Harrises argue that MGA's continued release of infringing dolls demonstrates its intent to capitalize on the OMG Girlz likeness and identity.

The Court disagrees. First, as noted, there is scarce evidence that MGA was aware of the OMG Girlz in 2019 such that they would act in a way to intentionally copy the trade dress. Thus, it follows that the logo change in 2019 was not indicative of any intent to copy. Second, even if there was sufficient knowledge in 2019 to show an intent to copy, the logo change to include "outrageous millennial girls" falls far short from demonstrating willfulness. The change in logo can equally (if not more reasonably) be viewed as MGA distancing itself from the OMG Girlz. MGA notably did not use "girlz"[5] in its logo rework nor do the OMG Girlz claim that the OMG in their name stands for "outrageous millennial girls." Thus, this evidence does not support a clear and convincing finding of willfulness or intent.

Nor does the release of more infringing dolls support a finding of willfulness. The Harrises argue that MGA's continued infringement after the beginning of trial should support a finding of willfulness. However, the release of these dolls is equally explained by Larian and MGA's conviction that it was not infringing on the trade dress because of the reasonable dissimilarities in the dolls (such as skin color, clothing, style, and names). See San Miguel Pure Foods Co., inc. v. Ramar Int'l Corp., 625 F. App'x 322, 325 (9th

---

[5] And even assuming MGA did use "Girlz," Larian testified that MGA has used the "z" in Girlz for products dating back as far as ten years before the OMG Girlz formed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Cir. 2015) ("Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law.")

### e.    Lora Stephens

The Harrises next argue that Lora Stephens' testimony demonstrates a willfulness or intent on the part of MGA and its designers. Stephens began working with MGA in 2017 and began working as a product designer around 2019. (Trial Tr. 9/18/24 PM 116:9–21.) Stephens was aware of the OMG Girlz before she joined MGA. (Trial Tr. 9/19/24 AM 74:1–3.) Stephens also followed Tiny Harris on Instagram. (Id. at 76:23–25.) Stephens also had an image of Breaunna Womack on her Pinterest board that she used for inspiration to design dolls. (Id. at 86:16–18.) Finally, during her cross examination, the Harrises were able to demonstrate that MGA had incorrectly responded to an interrogatory when asked whether any employees knew of the OMG Girlz before the lawsuit commenced. (Id. at 79:25–80:5.) Stephens conceded that MGA had not asked her whether she knew of the OMG Girlz. (Id. at 83:2–3.)

The Court finds that this evidence, too, fails to establish clear and convincing evidence of willfulness. Just as with the 2019 email thread, Stephens' knowledge of the OMG Girlz does not demonstrate an intent to copy. Rather, it shows that one designer had knowledge of the OMG Girlz while designing the infringing dolls. Further, the evidence that MGA falsely represented an interrogatory response may create an inference that MGA was hiding those with knowledge (as opposed to mere mistake), but it likewise fails to show an intent to copy the trade dress. The most persuasive evidence of an intent to copy coming from Stephens' testimony was the evidence regarding her Pinterest board, which had an image of Breaunna Womack on it. While the jury could certainly have placed strong weight on this fact, the board also contained approximately 1,200 images, most of whom were Black women with various hair colors including purple, (see id. 86:10–25.)

### f.    CEO Isaac Larian's Testimony and Demeanor

Finally, the Harrises argue that MGA's CEO Isaac Larian's malicious demeanor at trial demonstrated a lack of respect for the OMG Girlz trade dress. The Harrises are correct that, at times, Larian was blunt and dismissive towards the OMG Girlz. For instance, Larian accused them of being extortionists and hustlers (see Trial Tr. 9/19/24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |
|---|---|

PM 51:24–52:4) and when describing the group said that their brand "ha[d] no value and that "[t]hey are nowhere," (id. at 111:13–22). Larian also likely lost a modicum credibility with the jury in his steadfast conviction that MGA's dolls didn't share any similarities with the OMG Girlz—particularly when juxtaposed with the similarities he noted were obvious when it came to his company's lawsuits against competitors.

However, while Larian's vituperous attitude was, at times, belittling, this does not demonstrate that he or the designers at MGA willfully copied the trade dress or even acted with conscious disregard. The Harrises argue that his testimony creates an inference that his actions follow his attitude, but his testimony equally creates an inference that he reasonably believes his dolls did not infringe and sought to protect the reputation of his designers and company. Thus, at best, Larian's demeanor contributes only tepidly to the side of willfulness.

### g.    Summary of Willfulness Evidence

On balance, the jury's finding of willfulness remains unsupported by the clear weight of evidence. The 2019 email thread among the designers only tenuously demonstrates knowledge of the OMG Girlz and entirely fails to link any such knowledge with an intent. Further, while the Harrises established that designer Lora Stephens had knowledge of the OMG Girlz, they failed to show a meaningful connection between that knowledge and willful infringement. These pieces, when put together, establish just one passing reference to the OMG Girlz in MGA internal emails and one image of a single band member on one product designer's Pinterest board that also contained over 1,200 similar fashion-related images. This is not clear and convincing evidence of willful infringement or conscious disregard for the rights of others.

With respect credibility, the Harrises were successfully able to discredit product designer Blanche Consorti when it came to the similarities between certain dolls not at issue and real life celebrities. The Court has noted that this evidence was perhaps the most significant evidence of willfulness because it created an inference that if MGA was willing to so blatantly ignore obvious similarities to other celebrities, that it might be so inclined to do so with the OMG Girlz. However, the blatant copying of other celebrities does not demonstrate that such was the case at hand. In order for this inference to hold weight, it must be coupled with independently strong evidence of intent or willfulness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Finally, the remaining evidence supporting willfulness can be equally explained if not better explained by non-willful alternatives. For instance, Larian's notably belittling attitude towards the OMG Girlz does not provide clear and convincing evidence of willful intent where it can equally be explained by his reasonable belief of non-infringement and desire to product his designers reputations. (See Trial Tr. 9/19/24 AM 111:2–15.) Likewise, the overlapping markets between the OMG Girlz and the L.O.L. Surprise! O.M.G. Dolls is unexceptional and credibly explained by the ethos of MGA as a company founded by an Iranian immigrant seeking to develop a market for diverse dolls sold to "every girl, every nationality, [and] every color." (See Trial Tr. 9/19/24 AM 125:16–126:25.)

In sum, the clear weight of evidence does not support a clear and convincing finding of willfulness, intent, or conscious disregard of the OMG Girlz' trade dress.

## H.    Remedy

Having found that the jury's verdict on punitive damages cannot stand, an entry of judgment on the original award of $53,616,759 would constitute a reversible error. Id. at 603. Instead, "[w]hen the court . . . determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for new trial or deny the motion conditional upon the prevailing party accepting a remittitur. Id.

"A remittitur must reflect 'the maximum amount sustainable by the proof.'" Oracle Corp. v. SAP AG, 765 F.3d 1081, 1094 (9th Cir. 2014). In this case, the Court finds that the maximum punitive damages award sustainable by the proof is $1. In assessing the evidence of MGA's willfulness or intent, the Court finds that this amount reflects the fair value of a punitive award for MGA's conduct.

At oral argument, the Harrises noted that they plan to reject remittitur and request a new trial. The Harrises shall lodge a filing of their decision with the Court 14 days of the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

### 3.    California Law and Due Process

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In the alternative, MGA argues that even if punitive damages are available, the amount awarded was improper under Cal. Civ. Code § 3294 and violates the Due Process Clause.

### a.    California Requirement for Actual Damages

First, MGA argues that punitive damages are improper where there are no actual damages. "California courts have long interpreted Section 3294 to require an award of compensatory damages, even if nominal, to recover punitive damages." California v. Atlus Finance S.A., 540 F.3d 992, 1000 (9th Cir. 2008); accord Mother Cobb's Chicken Turnovers, Inc. v. Fox, 10 Cal. 2d 203, 205 (1937) ("Actual damages must be found as a predicate for exemplary damages.") However, "it is immaterial that plaintiff's recovery is in the form of specific restitution, rather than monetary damages." Horn v. Guaranty Chevrolet Motors, 270 Cal. App. 2d 477, 484 (1969); Millar v. James, 254 Cal. App. 2d 530, 533 ("[T]he fact that the plaintiff's recovery was in the form of specific restitution, rather than monetary damages, does not necessarily preclude an award of exemplary damages.")

In this case, the Court instructed the jury that "the specific items of damages claimed by the OMG Girlz" were "any profits that MGA received from the use of the OMG Girlz' name or identity or likeness. . . ." (Jury Instructions, Dkt. No. 1013 at 29.) The jury was then instructed that if "MGA's conduct caused the Harris Parties harm . . ., you must decide whether that conduct justifies an award of punitive damages." (Id. at 30.) The jury ultimately awarded $17,872,253 in damages with the understanding that these damages reflected the profits that MGA received from the use of the OMG Girlz' name, identity, or likeness. Therefore, punitive damages are not precluded under Cal. Civ. Code § 3294 simply on the basis that damages were provided by restitution.

### b.    Constitutional Limits

In BMW of N. Am., Inc. v. Gore, the Supreme Court provided three guideposts for determining whether a punitive damages award complies with due process: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties. 517 U.S. 559, 575 (1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                     Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

i.   *Degree of Reprehensibility*

"Reprehensibility of the alleged conduct is 'the most important indicium of the reasonableness' of punitive damages." Riley v. Volkswagen Grp. of Am., Inc., 51 F.4th 896, 902 (9th Cir. 2022) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)). In the Ninth Circuit, courts consider whether (1) the harm caused was physical as opposed to economic, (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others, (3) the target of the conduct had financial vulnerability, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. State Farm, 538 U.S. at 419.

The jury found that MGA's trade dress infringement was willful and found by clear and convincing evidence that MGA acted with fraud, oppression, or malice. (Jury Verdict at 5–6.) However, this Court has an independent obligation to consider the facts and apply the Gore factors. See Mattel, Inc. v. MGA Enters., Inc., 801 F. Supp. 2d 950, 953 (C.D. Cal. 2011). The Court will thus independently evaluate the degree of reprehensibility of MGA's conduct.

On the first factor, the Court finds that the harm was predominantly economic in nature, leaning against reprehensibility. Indeed, there was little evidence of emotional harm because the Court specifically precluded evidence of emotional distress damages. (Dkt. No. 521.) Moreover, many of the "intangible harms" claimed by the Harrises—such as sacrificing life opportunities and bleaching their hair—demonstrate only the OMG Girlz' desire to cultivate their trade dress and *not* any reprehensible misconduct on the part of MGA.

The second and third factors likewise weigh against a finding of reprehensibility. There is no evidence in the record to suggest that MGA acted with indifference or reckless disregard to the health or safety of others. Further, despite the Harrises contention that MGA's "money grab" theory proves economic vulnerability, the trial record shows that the Harrises were not financially vulnerable. (See e.g., Trial Tr. 9/4/24 AM 33:14–19 ("The OMG Girlz – they made quite a bit of money."); Trial Tr. 9/6/24 PM 67:6–16 (Mr. Harris stating "I already have money" and that he's not here for a "big money grab").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

The fourth factor—repeated misconduct—favors reprehensibility. The jury found that MGA infringed the OMG Girlz' trade dress on several dolls over a period of years. This shows repeated misconduct. In coming to this conclusion, the Court does not find that the copying of other celebrities increases the reprehensibility of MGA's conduct nor does the Court find that MGA's "money grab" trial theory demonstrate repeated reprehensible conduct.

The final factor weighs against reprehensibility. As the Court discussed, the evidence does not support a finding of willfulness, intent, or conscious regard. Likewise, the evidence does not show that MGA acted with trickery, deceit, or malice when it infringed on the OMG Girlz' trade dress. The only evidence suggesting that MGA had knowledge of the OMG Girlz, as opposed to merely accidental infringement, is a single email thread where the doll designers confused OMG Dolls with OMG Girlz. At best, this conduct shows negligence.

On balance, the factors tend to show that MGA's conduct was not reprehensible.

> ii.    *Disparity Between Actual Harm and Punitive Damages Awarded*

MGA argues that there are no actual damages and thus *any* punitive damages award is both disproportionate and unreasonable. (Reply at 17.) As discussed, the Court rejects this contention and finds that the $17,872,253 serves as a form of damages sufficient to support exemplary damages. (See Supra, Section A.3.a.)

The Harrises note that the punitive damages award of $53,616,759 is precisely a 3:1 ratio of the award for disgorgement of profits. (Opp'n at 12.) This ratio passes constitutional scrutiny, even for cases where "there are significant economic damages and punitive damages are warranted but behavior is not particularly egregious. . . ." See Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists, 422 F.3d 949, 962 (9th Cir. 2005) (affirming that a 4:1 ratio was a good proxy for the limits of constitutionality where the behavior was not particularly egregious); State Farm, 538 U.S. at 419 (holding that an award within a single-digit ratio is more likely to comport with due process).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

> iii.    *Differences Between Punitive Damages and Civil Penalties in Comparable Cases*

MGA argues that the most direct analogous statute is Cal. Civ. Code § 3344. (Reply at 17.)  Section 3344 is the statutory partner of California's common law misappropriation and provides a statutory minimum award of $750 to a meritorious litigant.  See Miller v. Collectors Universe, Inc., 159 Cal. App. 4th 988, 1002 (2008).

The Court finds that § 3344 is a comparable civil penalty and favors upholding the $53,616,759 verdict.  The $750 statutory minimum was meant to provide "a simple, civil remedy" to non-celebrities who prevailed at trial but often could not prove damages under the common law.  Id.  However, it was not meant to limit litigants to $750 nor was it meant to represent the average award for such claims.  Indeed, the statute itself provides for "the greater of [$750] . . . or the actual damages suffered by [the claimant] . . . *and any profits from the unauthorized use*. . . . Punitive damages may also be awarded to the injured party[.]"  Id. at 1000 (quoting Cal Civ. Code § 3344) (emphasis added).

Thus, under the analogous statutory regime, an award of disgorgement of profits and a punitive damages additive would be appropriate.  This Gore factor supports upholding the $53,616,759 verdict.

> iv.    *Remittitur*

On balance, the Court finds that while MGA's conduct was not reprehensible, the $53,616,759 verdict is within the reasonable and proportionate constitutional ratio for punitive damages and level with comparable civil penalties.  Thus, remittitur is not warranted under the Due Process Clause.

> B.    *Common Law Misappropriation*

MGA argues that the Court should grant judgment as a matter of law on the misappropriation counterclaim or, alternatively, grant a new trial.  (Mot. at 14.) Specifically, MGA contends that: (1) the Harrises do not have standing, (2) the First Amendment protects its dolls, (3) there is not substantial evidence of misappropriation, (4) there is no actual harm, and (5) any harm is not attributable to MGA's conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                     Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

     1.    Standing

    "[S]tanding can be challenged 'at any stage' of the case, . . . 'even after trial and the entry of judgment.'"  United States v. $1,106,775.00 in United States Currency, 131 F.4th 710, 719 (9th Cir. 2025).  "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint."  Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 838 (9th Cir. 2007).  However, as the litigation proceeds, the "manner and degree of evidence required" to challenge standing will increase accordingly.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  "In response to a summary judgment motion . . . [a plaintiff] must 'set forth' by affidavit or other evidence 'specific facts' . . . which for purposes of the summary judgment motion will be taken to be true."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal quotations and citation omitted).  "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'"  Id. (citation omitted).

    This Court addressed standing in 2022 when it ruled on the first motion for summary judgment.  (Summary Judgment Order at 23–24.)  At the time, the Court found that the OMG Girlz had assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which were parties to the action.  (Id. at 24.)  MGA now argues that that a 2012 contract between the Harrises and Interscope Records superseded the assignment to Grand Hustle and Pretty Hustle.  (Mot. at 15.)

    The Court finds that the Harrises still have standing.  In its Summary Judgment Order, the Court unequivocally asserted that "[t]he Court agrees and finds that OMG Girlz assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which are party to this action."  (Summary Judgment Order at 24.)  This conclusion was not merely a denial of MGA's motion for summary judgment on this issue, but instead a conclusive finding that the underlying contracts were uncontroverted and standing was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

proven as a matter of law.[6]  Had the Court merely found that the OMG Girlz had come forward with controverted evidence, it would have said so.

In reviewing the plain terms of the agreements, the 2012 contract terminated at the expiration of the exclusive artist agreement.  (Dkt. No. 148-8 at 3.)  At such time, the status of the OMG Girlz' publicity rights reverted back to the 2011 contract between the OMG Girlz, Grand Hustle, LLC, and Pretty Hustle LLC.  (Id.; see also Dkt. No. 148-7.)  Counter-Claimants are not aware of any other written agreements assigning intellectual property rights.  (Decl. of Mark Finkelstein ("Finkelstein Decl."), Dkt. No. 148-3, Ex. I (Tameka Harris Dep.), at 98–99, 123:1–18.)  Accordingly, the Court finds that the Harrises still have standing.

> 2.   First Amendment Defense

The California Supreme Court has recognized the "tension between the right of publicity and the First Amendment."  Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 396 (2001).  California courts apply a test to determine "whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new, with a further purpose or different character."  Ross v. Roberts, 222 Cal. App. 4th 677, 685 (2013).  The central inquiry is whether the work is "transformative."  Id. (citing Comedy III, 25 Cal. 4th at 396).  A work is transformative if the "product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness."  Comedy III, 25 Cal. 4th at 407.

At summary judgment, the Court concluded that it could not say "as a matter of law" that the Dolls were sufficiently transformed.  (Summary Judgment Order at 29.)

---

[6] The Court agrees, however, with MGA's position that had the Court relied on the summary judgment standard and merely denied MGA's motion on standing, that the Harrises would likely have needed to prove standing with evidence at trial.  See Bennett v. Spear, 520 U.S. 154, 168 (1997) (holding that a plaintiff "must ultimately support any contested facts with evidence adduced at trial"); Kumar v. Koester, 131 F.4th 746, 755 (9th Cir. 2025) ("In a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial."); Diamond Resorts U.S. Collection Dev., LLC v. Pandora Marketing, LLC, 656 F. Supp. 3d 1073, 1083 (C.D. Cal. 2023) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Instead, the Court found that the question would be better presented to the trier of fact. (Id.)  At trial, the jury found that MGA had not proven by a preponderance of the evidence that its dolls were protected by the First Amendment.  (Jury Verdict, Dkt. No. 1010 at 5.)  The jury's finding was supported by ample trial evidence, including the exhibits of the dolls and testimony of Harrises regarding their trade dress.[7]  Further, while MGA provided witnesses to deny any similarity between the infringing dolls and the OMG Girlz, the jury was free to disregard these witnesses as not credible and thus reject the First Amendment defense.  Indeed, as the Court noted in its Equitable Issues Order, on numerous occasions, MGA's witnesses, "particularly designers," failed to concede to blatant copying of real life celebrities nor did these designers even attempt to argue for a transformative use of such dolls.  (See Equitable Issues Order, Dkt. No. 1090 at 8 (citing Trial Tr. 9/18/24 AM 32:5–34:14).)

On the basis of the trial record, the jury had substantial evidence to reject the First Amendment defense and the Court declines to exercise its discretion to grant a new trial on this issue.

3.    Evidence of Misappropriation

In California, a claim for common law misappropriation requires a plaintiff to prove: (1) the defendant's use of the plaintiff's name, likeness, or identity; (2) the misappropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.  See Newcombe v. Adolf Coors Co., 157 F.3d 686, 692 (9th Cir. 1998).  This is also known as the right of publicity.  Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 413 (9th Cir. 1996).

MGA argues that there is not sufficient evidence to support the jury's finding that the second element is satisfied: misappropriation of plaintiff's identity.  First, MGA notes that the OMG Girlz inconsistently identified which dolls misappropriated their identity.  (Mot. at 19.)  MGA is correct that individual band members occasionally

---

[7] The Court does not agree with the Harrises that Mr. Larian "testified that MGA did **not** add something new to the OMG Girlz likeness."  (See Opp'n at 13.)  When asked whether MGA "started with the OMG Girlz likeness to make the O.M.G. dolls," Mr. Larian plainly testified "absolutely 1,000 percent no."  (Trial Tr. 9/19/24 PM 54:7–12.)  This was clearly not an admission to non-transformative use; but rather, a denial of copying at all.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

contradicted themselves. (<u>Compare</u> Trial Tr. 9/12/24 PM 86:21–87:17 (Ms. Pullins stating that Ferocious and Fame Queen share her likeness) <u>with</u> Trial Tr. 9/12/24 AM 100:7–12 (Ms. Pullins stating that these dolls "are definitely Beyonce and Lady Gaga").) At times, the group contradicted one another. (<u>Compare</u> Trial Tr. 9/5/24 PM 103:1–104:2 (Ms. Womack stating that Roller Chick looked like Bahja Rodriguez) <u>with</u> Trial Tr. 9/12/24 PM 94:20–24 (Ms. Pullins stating that Roller Chick does not look like Ms. Rodriguez).)

Second, MGA claims that the differences in the dolls themselves contradicts a finding of misappropriation. Specifically, when comparing the dolls to one another, they each have different hair lengths and textures, styles, skin tones, eye colors, outfits, and accessories. (Mot. at 20.) As a matter of law, a plaintiff cannot continually move the target of their identity because a "lack of stasis is inconsistent with a claim of appropriation." <u>Kirby v. Sega of America, Inc.</u>, 144 Cal. App. 4th 47, 56 (2006).

Neither of these rationales are persuasive. The jury was presented with trial exhibits of the relevant dolls and the relevant photographs of the OMG Girlz. While some of the infringing dolls may have had different styles and different looks, the jury was shown exhibits of the OMG Girlz in similar styles and looks. The jury also heard testimony from the OMG Girlz, T.I. Harris, Tiny Harris, and others, about the OMG Girlz' identity and likeness, including their race, the clothes they wore, the names of their group, and the colors of their clothing and brand. To be sure, the band members were not always consistent with their answers; but such inconsistency was a credibility determination properly placed with the jury. Ultimately, the jury had substantial evidence with which to find that MGA misappropriated the OMG Girlz' identity and thus satisfied the second element.

### 4.    <u>Actual Harm and Resulting Injury</u>

A claim for common law misappropriation requires "resulting injury." <u>See</u> <u>Newcombe</u>, 157 F.3d at 692. "Resulting injury is the *sine qua non* of a cause of action for misappropriation of name." <u>Silvinsky v. Watkins-Johnson Co.</u>, 221 Cal. App. 3d 799, 807 (1990). The Court finds that, as a matter of law, this element has been satisfied and the jury's verdict is supported by the substantial weight of evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In California, disgorgement of unjustly earned profits is permitted "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 600 (9th Cir. 2020). Indeed, "[t]he principle of unjust enrichment . . . is broader than mere 'restoration' of what the plaintiff lost." Cty. of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 542 (2007). "Many instances of 'liability based on unjust enrichment . . . do not involve the restoration of anything the claimant previously possessed . . . includ[ing] cases involving the disgorgement of profits . . . wrongfully obtained. . . .'" Id. (alterations in original). Thus, unjust enrichment may form the basis of a resulting injury for California right of publicity claim.[8]

In this case, the jury heard evidence that MGA profited from the OMG Girlz' name and likeness. The jury could have reasonably come to this conclusion on the basis of several witnesses, including the OMG Girlz themselves, the designers at MGA, and the Harrises damages expert, Christian Tregillis, who testified to profits of $17,872,253, (see Trial Tr. 9/12/24 AM 29:20–23). Moreover, the jury heard evidence from Mr. Larian that MGA will enter into sponsorships with famous celebrities like Paris Hilton and Kylie Jenner. (Trial Tr. 9/5/24 PM 42:2–43:20.) Together, the jury could have properly concluded on the basis of the evidence that MGA used the OMG Girlz name and likeness to create infringing dolls without paying the OMG Girlz for this use. Therefore, the Court will not award a new trial or judgment as a matter of law for failure to show resulting damages.

    5.    Attributable to MGA's Conduct

"[T]he plaintiff bears the burden of presenting proof of gross revenue attributable to the defendant's unauthorized use of the plaintiff's likeness, and the defendant must then prove its deductible expenses." Olive v. General Nutrition Centers, Inc., 30 Cal. App. 5th 804, 814 (2018); Lindy Pen Co. Inc. v. Bic Pen Corp, 725 F.2d 1240, 1243 (9th

---

[8] See also Camacho v. Control Grp. Media Co., LLC, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) (noting that derivation of economic value from Plaintiff was sufficient to prove resulting injury); Kellman v. Spokeo, Inc., 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     2:20-cv-11548-JVS-AGR                    Date     July 8, 2025

Title     MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Cir. 1984) (discussing the shifting burden standard for trademark infringement claims made under 15 U.S.C. § 1117(a)).[9]

   In the Equitable Issues Order, the Court found that the Harrises had satisfied their burden of presenting proof of gross revenue. (Equitable Issues Order at 14–16.) Thus, the burden appropriately shifted to MGA to explain the lack of attributability. (Id. at 16.) The Court reviewed MGA's arguments for 10% and 15% attributability and ultimately found that "neither [percentage] merit[ed] an equitable reduction in disgorgement" because neither figure could reliably discount attributability. (Id. at 17.) While the Court noted its skepticism that MGA's profits were 100% attributable to its infringement, (see Equitable Issues order at 16; Permanent Injunction Order, Dkt. No. 1113 at 14 n.10), the Harrises have nevertheless satisfied their burden to show gross revenue. Ultimately, the Harrises established common law misappropriation, showed that many dolls were purchased because of the unauthorized use, and then satisfied their burden with respect to gross revenue from the dolls.

   *C.     Lanham Act*

   MGA argues that the Court should grant judgment as a matter of law or, in the alternative, new trial with respect to the trade dress claim. (Mot. at 23.) Specifically, MGA argues that: (1) The OMG Girlz do not have a protectable trade dress, (2) the Harrises did not establish secondary meaning, (3) the Harrises abandoned their trade dress, and (4) there is no likelihood of confusion. The Court takes each argument in turn.

   1.     Protectable Trade Dress

   Trade dress protects "a combination of any elements in which a product is presented to a buyer, including the shape and design of a product." Art Attacks Ink, LLC v. MGA Enter. Inc., 581 F.3d 1138, 1145 (9th Cir. 2009) (internal quotations and citation omitted). Courts are instructed to consider this combination of visual elements

---

   [9] The Court notes that the decision in Olive is specific to claims under Cal. Civ. Code § 3344. However, as this Court previously determined, § 3344 "complement[s]" common law misappropriation in California. Thus, the Court finds it appropriate to adopt and implement the statutory burden shifting approach for the common law claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

when "taken together," even if some elements are separately unprotectable.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258–59 (9th Cir. 2001).

### a.    Defining Trade Dress with Specificity

"[A] vague, broad and non-specific definition of trade dress not only makes it impossible for a court to apply the test of distinctiveness, but also raises the danger of overprotection, with resulting anti-competitive injury to competitors[.]"  1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed.).  MGA argues that the OMG Girlz defined trade dress is vague and not specific to what they claimed at trial.  For the following reasons, the Court disagrees.

The jury heard evidence that the OMG Girlz trade dress consists of three parts: the name (1) "OMG GIRLZ," (2) "combinations of vibrant hair color, primarily in bright pink, vivid purple, and shades of blue," and (3) "experimental, fun, urban, and edge wardrobes and makeup, layered clothing, voluminous skirts . . . and bold, over the top clothing and accessories."  (See Mot. at 24 (citing TX 5521).)  The jury also heard testimony that this trade dress was curated over a period of 13 years and recognizable to fans.  (Trial Tr. 9/12/24 AM 93:2–95:11.)

At trial, MGA focused on specific components of the trade dress and the band's evolving style to attempt to discredit it.  Despite these efforts, the jury ultimately concluded that the OMG Girlz had a protectable trade dress.  (Jury Verdict at 2.)  This finding is supported by the clear weight of evidence.

### b.    Functionality

MGA next argues that the OMG Girlz could not have a protectable trade dress as a matter of law where the aesthetic elements were functional.  (Mot. at 24.)  "Trade dress protection extends only to design features that are nonfunctional."  Clicks Billiards, 251 F.3d at 1258.  "[A]esthetic functionality has been limited to product features that serve an aesthetic purpose *wholly independent* of any source-identifying function."  Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1073 (9th Cir. 2006) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

MGA argues that the OMG Girlz' "ever-changing image" demonstrates that its aesthetics were wholly independent of its source-identifying purpose. (Mot. at 25.) Yet, the trial record contains several examples of the OMG Girlz testifying that their specific colors and outfits were, in fact, source-identifying. (See e.g., Trial Tr. 9/4/24 AM 39:19–23; 65:16–20; 90:3–10; Trial Tr. 9/12/24 AM 93:2–10; 95:22–96:10.). The mere fact that the OMG Girlz continued to develop their look over time does not mean that these looks became wholly aesthetic or lost their source-identifying purpose. Accordingly, the evidence supports a finding of non-functionality.

### c.    Visual Use

As noted, trade dress protects "a combination of any elements in which a product is presented to a buyer, including the shape and design of a product." Art Attacks Ink, 581 F.3d at 1145 (internal quotations and citation omitted). This mandate requires examining the overall visual image of the trade dress. Id.; see also Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1044 (2d Cir. 1992).

MGA argues that the words "OMG Girlz" are not part of the overall visual impression of the group. (Mot. at 25.) Thus, because "OMG Girlz" was a requisite to the trade dress, the claim cannot stand. (Id.) Once again, the Court disagrees. The jury was presented with an abundance of evidence linking the words "OMG Girlz" to the color combinations and style of clothing. (See e.g., Trial Tr. 9/6/24 100:13–16; Trial Tr. 9/13/24 AM 93:9–24; Trial Tr. 9/18/24 AM 76:14–25.)

MGA further argues that the OMG Girlz changing appearances defeats their trade dress. (Mot. at 26.) At trial, the jury heard evidence that the OMG Girlz have used the same signature colors, name, and experimental clothing for the last 13 years, including their 2024 tour. (Trial Tr. 9/12/24 AM 93:2–12.) Thus, this argument is likewise unavailing.

Accordingly, the jury's finding of trade dress is supported by the clear weight of the evidence.

### 2.    Secondary Meaning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

To prove trade dress infringement, the plaintiff "must show that her design has attained secondary meaning."  Art Attacks Ink, 581 F.3d at 1145 (citing Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 214 (2000)).  "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant."  Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).  To establish secondary meaning, "a plaintiff must demonstrate 'a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source.'"  Art Attacks Ink, 581 F.3d at 1145 (citing Japan Telecom v. Japan Telecom Am., 287 F.3d 866, 873 (9th Cir. 2002)).

MGA argues that the Harrises failed to provide survey evidence at trial, which is "the most persuasive evidence of secondary meaning."  (See Mot. at 28 (citing Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985)).)  The Harrises respond that there was ample evidence of secondary meaning without an expert survey. (Opp'n at 19–20.)

The Court agrees with the Harrises that the trial record contains sufficient evidence to show secondary meaning.  The Harrises provided consumer witnesses to testify about their recognition of the OMG Girlz' brand.  (See generally Trial Tr. 9/10/24 AM 16–19 (video depositions of M. Campbell and W. Wagner).)  The Harrises also provided evidence of consumer-made videos, press and media reports, and consumer interviews to show secondary meaning, along with a social media survey.  (See Trial Tr. 9/12/24 PM 96:16–99:23.)  While this social media survey is not an expert survey, it nonetheless received 17,000 responses out of 48,000 views.  (Id. 100:24–101:3.)

Thus, the evidence at trial is sufficient to concluded that the OMG Girlz' trade dress acquired secondary meaning.

　　　　3.    Abandonment

"Abandonment . . . requires an intent not to resume trademark use[.]"  Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc., 458 F.3d 931, 937 (9th Cir. 2006). MGA briefly argues that the OMG Girlz abandoned their trade dress in 2015 when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |

| | |
|---|---|
| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |

group disbanded. (Mot. at 28.) The Harrises admit that the OMG Girlz band "took a pause" in 2015 after the band broke up. (Trial Tr. 9/6/24 117:23–118:20.) Nevertheless, the plain evidence provided at trial demonstrates that there was no intent to abandon the trade dress. (See Trial Tr. 9/6/24 AM 100:1–8; Trial Tr. 9/5/24 PM 81:1–82:12 (Ms. Womack testifying that the OMG Girlz maintained their social media presence, engaged with fans, and continued singing even after their break up in 2015).) Accordingly, the evidence does not support a finding that the OMG Girlz abandoned their trade dress in 2015.

       4.    <u>Likelihood of Confusion</u>

The likelihood of confusion is governed by the <u>Sleekcraft</u>[10] factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark, (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." <u>Pom Wonderful LLC v. Hubbard</u>, 775 F.3d 1118, 1125 (9th Cir. 2014) (citation omitted).

       **a.**    **Strength of the Mark**

A stronger mark receives more protection under the Lanham Act. <u>Sleekcraft</u>, 599 F.2d at 348. A mark has both conceptual and commercial strength. <u>JL Beverage Co., LLC v. Jim Bean Brands Co.</u>, 828 F.3d 1098, 1106 (9th Cir. 2016). A mark's conceptual strength "depends largely on the obviousness of its connection to the good or service to which it refers." <u>Id.</u> By contrast, a mark's commercial strength is determined by its recognition in marketplace. <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1144 (9th Cir. 2002). Courts classify "a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." <u>JL Beverage</u>, 828 F.3d at 1107 (citing <u>Network Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1149 (9th Cir. 2011)).

---

[10] <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |
|---|---|

MGA argues that the OMG Girlz have a weak trade dress because there is no singular, distinctive look. As the Court explained, the OMG Girlz have a protectable trade dress based on a signature look. (See Supra, Section C.1.) The OMG Girlz trade dress is comprised of their name, combination of vibrant hair colors, and experimental, fun, urban, and edgy outfits. Thus, this factor leans in favor of the Harrises.

### b.    Proximity or Relatedness of Goods

Where the goods bearing the two marks are related, there is a concern that the customers may be confused as to the producer of the goods. Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993). Thus, where the goods are similar in use and function, less similarity between the marks may be required. Sleekcraft, 599 F.2d at 350. The proximity of the goods is measure by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function. Id. A plaintiff "need not establish that the parties are direct competitors" in order to succeed on this factor. Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1212 (9th Cir. 2012). The primary question is whether the goods or services would be "reasonably thought by the buying public to come from the same source if sold under the same mark." Sleekcraft, 599 F.2d at 348 n. 10.

In this case, the Court already determined that the Harrises and MGA are not direct competitors. (See Preliminary Injunction Order at 11.) However, this finding was specific to damages. The Court was noting that because there was no direct competition, the Harrises had not missed any financial opportunities. With respect to a finding of likelihood of confusion, a consumer could reasonably believe that the infringing L.O.L. Surprise! O.M.G. dolls came from the OMG Girlz or, at least a sponsored partnership. Thus, this factor leans in favor of the Harrises.

### c.    Similarity of the Marks

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). The following axioms must guide the comparison: "first, the marks must be considered in their entirety as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighted more heavily than differences." Id. at 1206 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                    Date  July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion."  Id.

MGA argues that the Dolls and the OMG Girlz are dissimilar such that this factor leans strongly against likelihood of confusion.  The Court finds that the record strongly supports a similarity between the trade dress and the infringing dolls.  The jury heard and saw evidence of the dolls with similar designs, hair color, and the "O.M.G." logo underneath.  (Trial Tr. 9/13/24 AM 93:9–24; Trial Tr. 9/18/24 AM 76:14–25; Trial Tr. 9/19/24 AM 69:8–70:1.)  Thus, the evidence shows that this factor leans in favor of finding likelihood of confusion.

### d.    Actual Confusion

Evidence of actual confusion is strong evidence that future confusion is likely. Thane Int'l Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002).  However, a lack of such evidence is not dispositive.  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988).

At trial, the Harrises put forth substantial evidence of consumer confusion.  This evidence included witness testimony from four consumers, (See e.g., Trial Tr. 9/10/24 AM 34:13–35:12; Trial Tr. 9/6/24 PM), testimony from the OMG Girlz about fan feedback, and a social media poll responded to by 17,000 people, (Trial Tr. 9/12/24 PM 100:24–101:3).  Thus, the record supports a finding of actual confusion.

### e.    Marketing Channels and Types of Goods

"Where products bearing the marks are marketed through similar channels, there is a greater likelihood of confusion.  Official Airline Guides, 6 F.3d at 1393.  To assess coverage of marketing channels, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products."  Pom Wonderful, 775 F.3d at 1130.  Courts also examine whether the types of goods overlap from the perspective of a typical buyer exercising ordinary caution."  Sleekcraft, 599 F.2d at 353.

Here, MGA and the OMG Girlz used the same marketing channels, such as YouTube and social media, to promote their products and services.  (Compare Trial Tr. 9/18/24 AM 44:25–45:2 (MGA promoting on YouTube) with Trial Tr. 9/5/24 PM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR              Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

81:19–86:25 (Ms. Womack discussing social media and YouTube outreach).)  Thus, this factor leans in favor of a finding of likelihood of confusion.

### f.    Types of Goods and the Degree of Care Used

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353 (citation omitted).  "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." Id. (citations omitted).  "Consumer care for inexpensive products is expected to be quite low." Playboy Enters., 354 F.3d at 1028.  Thus, "[l]ow consumer care . . . increases the likelihood of confusion." Network Automation, 638 F.3d at 1152 (citing Playboy Enters., 354 F.3d at 1028).

Neither party sufficiently describes the level of sophistication of the relevant purchasing population or the degree of care that would be exercised by such consumer.  Thus, this factor remains neutral or weighs slightly against a finding of confusion.

### g.    Intent

The intent factor generally carries minimal weight because "an intent to confuse customers is not required for a finding of trademark infringement." Brookfield Commc'ns, 174 F.3d 1036, 1059 (9th Cir. 1999).  However, if the defendant knowingly adopts an infringing mark to deceive the public, courts presume that such confusion will occur.  Sleekcraft, 559 F.2d at 354.  Thus, this factor favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." JL Beverage, 828 F.3d at 1111 (quoting Brookfield, 174 F.3d at 1059).

As the Court has discussed at length, the evidence of intent is minimal and tenuous in this case.  (See Supra, Section A.2.)  Thus, this factor weighs against finding a likelihood of confusion.

### h.    Likelihood of Expansion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 559 F.2d at 354. "When goods are closely related, any expansion is likely to result in direct competition." Id. (citation omitted). "Where two companies are direct competitors, this factor is unimportant." Network Automation, 638 F.3d at 1153 (citing Brookfield, 174 F.3d at 1060).

The Harrises provided little if any evidence that they were intending to expand into the doll making business. (See Trial Tr. 9/4/24 AM 48–50.) Accordingly, this factor weighs against a finding of likelihood of confusion.

### i.    Weighing the Factors

On balance, the Court finds that the Sleekcraft factors weigh strongly in favor of a finding of likelihood of confusion. The most critical factors, strength of mark, actual confusion, and similarity, all weigh in favor of the Harrises. Accordingly, the evidence presented at trial supports a finding that a reasonably prudent consumer is likely to be confused as to the origin of the infringing dolls.

### D.    Claims Against Mr. Larian

MGA argues that judgment should be entered in favor of Mr. Larian on all claims brought against him individually because the Harrises failed to include him in the Final Pretrial Conference Order. (Mot. at 31.) As a rule, MGA is correct that parties may not offer evidence or advance theories at the trial which are not included in the [pretrial order]." U.S. v. First Nat. Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981).

However, the Pretrial Order plainly states that the "issues the Parties **agree** are to be tried are . . . Counter-Claimants' Third Amended Counterclaims[.]" (Final Pretrial Conference Order at 1 (alterations in original).) In the Third Amended Counterclaim ("TACC"), the Harrises asserted claims against Mr. Larian on the basis that he was "principally responsible as the driving force for making the decisions to distribute OMG Dolls that infringe on the OMG Girlz brand." (TACC, Dkt. No. 63 ¶ 22.) Moreover, the Court defined "MGA" in the Final Pretrial Conference Order to include MGA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |

| | |
|---|---|
| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |

Entertainment, Inc. and Counter-Defendant Isaac Larian. (Id.) Thus, the Harrises claim was within the parameters of the Final Pretrial Conference Order.

MGA next argues that even if the claims were permissible, there was no evidence to support a claim against Mr. Larian individually. (Mot. at 31.) Once again, the Court disagrees. In the jury instructions, the Court was careful to explain to the jury that MGA Entertainment and Isaac Larian are collectively referred to as "MGA." (Jury Instructions, Dkt. No. 1013 at 2.) At all times when explaining trade dress infringement and misappropriation, the Court uses references to "MGA" or "MGA Parties." (Id. at 15–24.) Finally, the jury's verdict expressly finds that "MGA" infringed on the OMG Girlz' trade dress, (Jury Verdict at 5), and that "MGA" misappropriated the OMG Girlz' name, likeness, or identity, (id. at 6).

Accordingly, the Court denies judgment as a matter of law with respect to all claims against Mr. Larian individually.

E.    *Declaratory Judgment*

MGA requests that the Court grant declaratory judgment in MGA's favor as to "the 15 Dolls for which the jury found infringement and/or misappropriation." (Mot. at 31.) In the alternative, MGA requests that, "at minimum, the Court should enter judgment for MGA on the eight Dolls that the jury found to infringe . . . and/or misappropriate . . ., but for which [the Harrises] ***did not*** seek liability and 'abandoned.'" (Id. (alterations in original).)

The Court declines to grant judgment as a matter of law on any of the above mentioned dolls. First, the Harrises counterclaims were supported by substantial evidence at trial. As discussed in this Order, there is no reason to overturn the jury's well-supported finding of infringement or misappropriation by granting declaratory judgment for MGA. Thus, with respect to MGA's argument for declaratory judgment on the 15 infringing dolls, the Court denies the request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title        MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Second, with respect to MGA's request for declaratory judgment on the eight dolls[11] found to be infringing or misappropriating, but which the Harrises did not seek liability, the Court declines to grant declaratory relief for MGA. The jury's verdict regarding these dolls was supported by the clear weight of evidence at trial and the mere fact that the Harrises did not seek liability does not provide sufficient reason to disturb this verdict.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion. With respect to punitive damages, the Court **GRANTS** the motion, on the condition that the Harrises do not accept a remittitur of $1. The Harrises shall lodge a filing of their decision with the Court within 14 days upon the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

Regarding the Lanham Act counterclaim and common law misappropriation counterclaim, the Court **DENIES** the motion. The Court **DENIES** both the request for declaratory judgment and for judgment as a matter of law for all claims against Mr. Larian individually.

**IT IS SO ORDERED.**

---

[11] Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, Shadow, and Miss Glam.