John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

Attorneys for Defendants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC, and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC and OMG Girlz LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants.<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: Hon James V. Selna<br><br>**OMG GIRLZ RESPONSE TO DEFENDANTS' BRIEF REGARDING STRUCTURE OF NEW TRIAL ON PUNITIVE DAMAGES**<br><br>Hearing Date:   September 22, 2025<br>Time:                  1:30 p.m.<br><br>Complaint Filed: December 20, 2020<br>Trial Date: September 3, 2024 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1
II. ARGUMENT ..........................................................................................................1
    A. Punitive Damages Are A Legal Issue Requiring A Jury ..........................1
    B. MGA Misreads and Misapplies *Proofpoint* ............................................3
    C. To The Extent That Punitive Damages Were Tried To A Jury "Solely" By Consent, Consent Cannot Now Be Withdrawn ..................6
III. Jury Trial Road Map ...............................................................................................7
    A. Liability Should Not Be Retried and the New Jury Can Be Informed of the Prior Verdict ...................................................................7
    B. There Is Additional Evidence That Should Be Admitted During A Punitive Damages Phase of Trial ............................................................8
IV. CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bain LLC v. Arco Products Co.*
   405 F.3d 764 (9th Cir. 2005) .................................................................................. 9

*Behr v. Redmond*
   193 Cal. App. 4th 517 (2011) ................................................................................ 12

*Bereda v. Pickering Creek Indus. Park, Inc.*
   865 F.2d 49 (3d Cir. 1989) ...................................................................................... 7

*Brewer v. Second Baptist Church of Los Angeles*
   32 Cal.2d 791 (1948) .............................................................................................. 3

*Fuller v. City of Oakland, Cal.*
   47 F.3d 1522 (9th Cir. 1995), *as amended* (Apr. 24, 1995) ................................. 6

*Hangarter v. Provident Life & Accident*
   373 F.3d 998 (9th Cir. 2004) .................................................................................. 9

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*
   28 F.4th 35 (9th Cir. 2022) ................................................................................. 6, 7

*Kearney v. Standard Ins. Co.*
   175 F.3d 1084 (9th Cir. 1999) ................................................................................ 8

*Kumar v. Koester*
   131 F.4th 746 (9th Cir. 2025) ................................................................................. 8

*Liu v. SEC*
   591 U.S. 71, 80 (2020) ............................................................................................ 5

*Mattel, Inc., et al v. MGA Entertainment, Inc..*
   et al, Case No. 11-56357 (9th Cir. 2013) ............................................................. 11

*Montana v. San Jose Mercury News, Inc.*
   34 Cal. App. 4th 790 (1995) ................................................................................... 2

*Motschenbacher v. R.J. Reynolds Tobacco Co.*
   498 F.2d 821 (9th Cir. 1974) .................................................................................. 2

*Newcombe v. Adolf Coors Co.*
  157 F.3d 686 (9th Cir. 1998) .................................................................................. 2

*Palantir Techs. Inc. v. Abramowitz*
  639 F. Supp. 3d 981 (N.D. Cal. 2022) ............................................................ 6, 12

*Proofpoint, Inc. v. Vade USA, Inc.*
  No. 23-16085, 2024 WL 4003096 (9th Cir. Aug. 30, 2024) ...................... 3, 4, 5

*Quiksilver, Inc. v. Kymsta Corp.*
  No. CV 02-5497-VBF(MCX), 2007 WL 9712164 (C.D. Cal. Dec. 5, 2007)
  .......................................................................................................................... 2, 3, 5

*Ross v. Pioneer Life Ins. Co.*
  545 F. Supp. 2d 1061 (C.D. Cal. 2008) ............................................................ 2, 3

*SEC v. Jarkesy*
  144 S. Ct. 2117 (2024) ........................................................................................... 3

*SEC v. Jarkesy*
  603 U.S. 109 (2024) ........................................................................................... 1, 4

*Siqueiros v. Gen. Motors LLC*
  No. 16-CV-07244-EMC, 2023 WL 3933344 (N.D. Cal. June 8, 2023) .............. 5

*Stevens v. Owens-Corning Fiberglass Corp.*
  49 Cal.App.4th 1645 (1996) ................................................................................. 3

*Teutscher v. Woodson*
  835 F.3d 936 (9th Cir. 2016) ................................................................................ 7

*In re Tsay JBR LLC*
  136 F.4th 1176 (9th Cir. 2025) ..................................................................... 2, 4, 5

*Tull v. United States*
  481 U.S. 412 (1987) ........................................................................................... 1, 2

Statutes

California Civil Code
  § 3294 ....................................................................................... 2, 3, 5, 6, 8

## I. INTRODUCTION

Having asked for and been granted a new trial on punitive damages, MGA now argues that the Court should conduct a bench trial allowing MGA a "do over" on its prior consent to a jury trial. Worse yet, MGA proposes ignoring the "new trial" part and asks the Court to simply enter judgment for MGA. Such a proposal does not comport with the Seventh Amendment, Supreme Court caselaw, or binding Ninth Circuit law. Utilizing the proper two-step framework, which MGA ignores, there can be no dispute a jury trial is required. That is why the only federal case analyzing the specific statute at issue determined that punitive damages were a legal issue for a jury, and why the Ninth Circuit has recently confirmed that "punitive" damages must go to a jury. The required jury trial should be focused on the necessary findings for punitive damages; it is not a retrial of liability. The jury can be instructed on the prior jury's findings and presented with evidence that is relevant only to malice, oppression, and punitive damages. That would include evidence the Court previously found too prejudicial when the liability issues were live, such as evidence of MGA and Mr. Larian's pattern of conduct and financial resources.

## II. ARGUMENT

### A. Punitive Damages Are A Legal Issue Requiring A Jury

Punitive damages are a legal issue that must be tried to a jury. Although the Court previously chose not to reach this question because of the parties' consent, it must now answer this threshold question and confirm the OMG Girlz' constitutional right to have a jury determine punitive damages. Where, as here, the underlying claim lies in tort, punitive damages are for the jury.

In determining whether a claim is legal or equitable, federal district courts conduct a two-step inquiry. First, courts consider the cause of action, comparing it to "18th-century actions brought in the courts of England." *Tull v. United States*, 481 U.S. 412, 417 (1987); *see also SEC v. Jarkesy*, 603 U.S. 109, 122–23 (2024).

Next, courts "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18. Where the relief sought "is a penalty that advances punitive and deterrent purposes," it is legal and thus entitles the plaintiff to a jury. *See In re Tsay JBR LLC*, 136 F.4th 1176, 1179-80 (9th Cir. 2025). MGA's brief does not follow this required framework, likely because it leads to the inescapable conclusion that the OMG Girlz are entitled to a jury trial on punitive damages.

There is no credible dispute that the *cause of action*—misappropriation of name, likeness, and identity—is legal in nature. *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793-94 (1995) (common law misappropriation of likeness claim tried to a jury, reversed only on First Amendment grounds); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 827 (9th Cir. 1974) (reversing directed verdict and holding that whether defendant's misappropriation of plaintiff's likeness caused injury was a jury question); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (confirming misappropriation claim was properly submitted to the jury on damages).

Advancing to the next step, the remedy at issue is punitive damages, specifically as provided for under California Civil Code § 3294. These statutory punitive damages are "designed to punish and deter the wrongdoer" as opposed to try to "restore the status quo." *Tull*, 481 U.S. at 422; *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) ("California's civil statutory scheme permits a trier of fact to impose a penalty for such conduct, by virtue of California Civil Code § 3294, which permits a trier of fact to impose punitive damages for the purpose of deterrence."). Such damages under § 3294 "advance[] punitive and deterrent purposes," so it is legal in nature and entitles the OMG Girlz to a trial by jury. *In re Tsay*, 136 F.4th at 1179-80. Indeed, the Ninth Circuit confirmed as much just 3 months ago, finding that statutory damages designed to "punish intentional and morally offensive conduct" mandated a jury trial. *Id.* at 1180-81.

Given the above, it should be unsurprising that the court in *Quiksilver, Inc. v. Kymsta Corp.*, No. CV 02-5497-VBF(MCX), 2007 WL 9712164, at *2 (C.D. Cal. Dec. 5, 2007) found there is a right to a jury trial for punitive damages under § 3294.[1] The court denied Quicksilver's motion to strike the parties' jury demand finding that although the parties "seek only equitable relief" (an injunction), "Quicksilver does not establish that there is no remaining right to a jury [as to Kymsta's] claims for exemplary damages pursuant to California Civil Code Section 3294(a)." Applying the proper test, the court determined that a right to a jury trial exists for "remedies intended to punish culpable individuals" and "[f]urther, doubts should be resolved in favor of maintenance of a jury." *Id.* at *1-2 (quoting *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 352-353 (1998)). So too here.

### B. MGA Misreads and Misapplies *Proofpoint*

Rather than apply the proper two-part test used recently in *Tsay* and the prior decision from this District analyzing §3294, MGA relies entirely on the unpublished decision in *Proofpoint, Inc. v. Vade USA, Inc.*, No. 23-16085, 2024 WL 4003096, (9th Cir. Aug. 30, 2024) which dealt with specific remedies under the Defend Trade Secrets Act. MGA's reliance is wrong for multiple reasons. The fact that this decision was not published is reason enough to be cautious in overreading it, but a review of the analysis and the support relied upon, shows why punitive damages should go to a jury.

*Proofpoint* has very little analysis, and does not apply the Supreme Court's required two-part test. In the two-page opinion, the Ninth Circuit rejected a jury

---

[1] *See also Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) ("California's civil statutory scheme permits a trier of fact to impose a penalty for such conduct, by virtue of California Civil Code § 3294, which permits **a trier of fact** to impose punitive damages for the purpose of deterrence."); *Stevens v. Owens-Corning Fiberglass Corp.*, 49 Cal.App.4th 1645, 1658 (1996) (holding punitive damages are for the jury to decide); *Brewer v. Second Baptist Church of Los Angeles*, 32 Cal.2d 791, 801 (1948) (holding "punitive damages are wholly within the control of the jury").

1 trial because "[a]s the Supreme Court recently noted, the Seventh Amendment
2 embraces all suits that are <u>not</u> in equity or admiralty jurisdiction. *SEC v. Jarkesy*,
3 144 S. Ct. 2117, 2128 (2024). Thus the Seventh Amendment extends to a statutory
4 claim only if that particular claim is legal in nature, *id*., which disgorgement is not."
5 *Proofpoint*, 2024 WL 4003096 at *1. So we must look to the Supreme Court, and
6 *SEC v. Jarkey*, 603 U.S. 109 (2024). At issue in *Jarkey* was whether an SEC action
7 for civil penalties entitled Jarkey to a jury trial. *Id.* at 120. The Supreme Court noted
8 the appropriateness of the two-part test (discussed above), and then stated "[i]n this
9 case, the remedy is all but dispositive. . . . What determines whether a monetary
10 remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other
11 hand, solely to 'restore the status quo.'" *Id.* at 123. Accordingly, the Court held that
12 because the "civil penalties" remedy was intended to punish and deter wrongdoing,
13 the Seventh Amendment right to a jury trial applied. That rationale applies here,
14 where the sole issue for a new trial is punitive damages, the purpose of which is
15 solely to punish and deter wrongful conduct.

16       Like the truncated, non-precedential *Proofpoint* opinion, MGA also quotes
17 *Liu v. SEC* for the proposition that "a remedy tethered to a wrongdoer's net
18 unlawful profits, whatever the name, has been a mainstay of equity courts." 591
19 U.S. 71, 80 (2020). But *Liu* was not addressing punitive damages. It was making a
20 point that an award of profits, by any name—whether it be "unjust enrichment,"
21 "disgorgement," or "accounting"—is an equitable remedy designed to "strip
22 wrongdoers of their ill-gotten gains." *Id.* Punitive damages do not fit that reasoning.
23 Indeed, the point in *Liu* is that equitable remedies were limited to the profits "to
24 avoid transforming an equitable remedy into a punitive sanction." *Id.* at 79. But of
25 course that is the very nature of punitive damages, and why they are for the jury.

26       Furthermore, since *Proofpoint*—and since this Court last considered this
27 issue in its Order on Equitable Issues (Dkt. 1090)—the Ninth Circuit issued the
28 **precedential** decision in *In re Tsay*, which reconfirmed the proper two-step test for

determining whether a claim is legal or equitable. 136 F.4th at 1179. There, the district court initially denied a jury trial, and Tsay filed a writ of mandamus on this denial of his right to a jury. *See id.* The Ninth Circuit granted mandamus. For step 1, it concluded that an anti-discrimination claim was analogous to an English common law claim. *Id.* at 1179-80. And at step two, the Court determined that since the statutory damages were "designed to punish or deter the wrongdoer" rather than "restore the status quo," they were a "penalty" and "thus a legal remedy" that must go to a jury. *Id.* at 1180-81. Critically, the statutory damages were the only relief sought in *Tsay* and the Ninth Circuit **characterized them as punitive damages**. *Id.* at 1180-81 (explaining that the statutory damages at issue were "described as penalties, as punitive damages, and as an exemplary award") (internal quotations and citations omitted). This is a precedential decision that punitive damages *standing alone* give right to a trial by jury, contrary to MGA's arguments otherwise. This is the same reasoning used by the *Quiksilver* court—when the proper analysis applied, there can be no doubt that punitive damages go to the jury. The Court should follow it and reach the same conclusion—punitive damages under § 3294(a) are a legal remedy to be determined by a jury.

While *Tsay* and *Quiksilver* alone are dispositive of this issue, other district courts in this Circuit agree that the Seventh Amendment applies to punitive damages determinations generally. *See Siqueiros v. Gen. Motors LLC,* No. 16-CV-07244-EMC, 2023 WL 3933344, at *7 (N.D. Cal. June 8, 2023) (explaining "[t]he Seventh Amendment requires the jury to decide both the entitlement of punitive damages as well as the amount of the punitive damages award" and collecting cases), *reconsidered on other grounds,* No. 16-CV-07244-EMC, 2023 WL 7272508 (N.D. Cal. Nov. 2, 2023); *Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 993 (N.D. Cal. 2022) (citing cases and noting "courts have repeatedly held that the Seventh Amendment guarantees litigants in federal court the right to a jury

determination of exemplary damages"). Thus, the logic argued by MGA is faulty—punitive damages should be decided by a jury.

### C. To The Extent That Punitive Damages Were Tried To A Jury "Solely" By Consent, Consent Cannot Now Be Withdrawn

Even assuming that punitive damages here are equitable (they are not) and should be decided by the Court, MGA cannot be allowed to withdraw consent *after* seeing the consequences of trying liability and punitive damages to a jury. The practical effect of allowing a party to test the water with a jury—only to get an unfavorable result—then withdraw consent for a jury and demand a bench trial is akin to "allowing a gambler to switch his bet as the horses reach the home stretch." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1532 (9th Cir. 1995), *as amended* (Apr. 24, 1995) (analyzing Fed. R. Civ. P. 39 in the context of jury waiver, reasoning that "[a] party cannot fairly be permitted to gain two chances at victory by waiting until after it is advised of the judge's decision to decide whether to waive its right to a jury.").

This issue was squarely addressed in *Bereda v. Pickering Creek Indus. Park, Inc.*, where the Third Circuit held that "when a trial is held with a nonadvisory jury pursuant to Rule 39(c) and a second trial becomes necessary due to problems with the first trial (that are unrelated to the validity of trying the case before a nonadvisory jury), Rule 39(c) does not permit the district court to withdraw its prior consent to the litigants' request for a nonadvisory jury." 865 F.2d 49, 55 (3d Cir. 1989). Should the Court reach this issue, it should follow that reasoning here.

MGA's argument otherwise is premised on the decision in *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 41 (9th Cir. 2022), but that case had unique facts not present here. First, *Harbor Breeze* addressed disgorgement, not an award of punitive damages. Here, because of MGA's post-trial filings, the OMG Girlz will not be seeking disgorgement nor to enhance disgorgement in the new trial, which is only on punitive damages under

Cal. Civil Code § 3294. Second, the Ninth Circuit emphasized that the plaintiffs seeking a jury trial had flipped positions, having previously "argued against giving binding effect to the jury's verdict below and affirmatively request[ing] a de novo determination of the issue by the district court." *Id.* This flip-flop was one reason the plaintiffs were not "placed in a worse position on remand." *Id.* Nothing like that happened here. The OMG Girlz have always requested a jury (and MGA did not disagree until *after* it received an adverse verdict). Third, the verdict in *Harbor Breeze* was entirely set aside as "fundamentally flawed" due to an incorrect jury instruction, hence why the Ninth Circuit found "no valid portion of that prior jury verdict would be disrespected, implicitly or explicitly." *Id.* at 39. But here, the jury's verdict on liability (which according to MGA was tried by consent), stands. A bench trial on punitive damages—wherein MGA admits some of the evidence overlaps with the prior liability findings (Dkt. 1139 at 11-12)—necessarily "disrespect[s]" the prior jury's verdict.

This situation is much more akin to *Bereda*, so the Court should follow that general rule, rather than the unique circumstances of *Harbor Breeze*. Accordingly, the retrial should be a jury trial, regardless of whether the Court finds it to be constitutionally required.

### III.   Jury Trial Road Map

#### A.   Liability Should Not Be Retried and the New Jury Can Be Informed of the Prior Verdict

The Seventh Amendment explicitly states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amendment VII. The Ninth Circuit has explained that when trying legal and equitable claims in the same action, the jury's determination of the legal claims must occur "prior to any final court determination of [the] equitable claims," and the court then must abide by the jury's findings of fact in making any subsequent rulings. *Teutscher v. Woodson*, 835 F.3d 936, 944

1  (9th Cir. 2016). Applying that rationale here, the jury found liability on the legal
2  claim for common law misappropriation, the Court has found disgorgement
3  damages appropriate (and adopted the jury's finding) awarding $17,872,253, and
4  those finding must be abided by and disclosed to the new-trial jury.

5  That jury must then consider that punitive damages require a showing of
6  fraudulent, malicious, or oppressive conduct by clear and convincing evidence. *See*
7  CACI No. 3940; Cal. Civil Code § 3294(a). Assuming that MGA is simply using
8  "willfulness" as a shorthand for this separate standard, its argument regarding the
9  need to retry liability is misguided. The Court's determination that the OMG Girlz
10 did not prove willfulness by a preponderance of the evidence in support of its
11 request for equitable enhanced damages under the Lanham Act is distinct from the
12 standard required for punitive damages under state law. Thus, while there may be
13 some overlap in the evidence provided during the liability phase of trial, neither
14 side can, nor should, retry the entire case.

### B.    There Is Additional Evidence That Should Be Admitted During A Punitive Damages Phase of Trial

17 MGA proposes that the Court simply enter judgment on the record from the
18 previous trial, suggesting that the Ninth Circuit has blessed this practice. None of
19 MGA's cases support this—those cases involved bench trial where the courts
20 entered judgment following briefing specific to that trial.[2] The OMG Girlz have not
21 been able to locate a single case where a court granted a new trial, switched the
22 fact-finder from a jury to the bench (as MGA proposes), and then simply made

---

[2] MGA cites: *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (discussing allowing the court to consider the existing record as submitted to the administrator in an ERISA case, and even after limiting to this specific type of case, noting that "[t]he author of this opinion **writes with some trepidation about this novel form of trial**") (emphasis added); *Kumar v. Koester*, 131 F.4th 746, 748 (9th Cir. 2025) (discussing the district court's factual findings in a case following an ordinary bench trial).

1  findings and entered judgment on the prior trial record. Even if such a case or
2  procedure existed, the Court must provide the OMG Girlz the opportunity to
3  supplement the record with additional evidence[3] that MGA's misappropriation was
4  done with a fraudulent, malicious, and/or oppressive state of mind. For example, the
5  OMG Girlz have additional evidence relevant to punitive damages (some of which
6  they offered, and were prohibited from presenting, during the September 2024 trial)
7  that should be admissible during any new trial on punitive damages.

8        Under CACI No. 3940, there are several factors that the jury may consider in
9  determining the amount of punitive damages, some of which include: whether the
10 defendant's conduct involved a pattern or practice, whether the defendant acted
11 with trickery or deceit, and whether the plaintiff was financially weak or vulnerable
12 and the defendant knew [or believed] plaintiff was financially weak or vulnerable,
13 and the financial condition of the defendant.

14       The Ninth Circuit recognizes that punitive damages rest on broader proof
15 than liability, and that fact finders may consider evidence of pattern and practice
16 evidence beyond the narrow facts establishing liability. For example, in *Bain LLC v.*
17 *Arco Products Co*., 405 F.3d 764 (9th Cir. 2005), the Ninth Circuit emphasized that
18 punitive damages turn on the defendant's state of mind and may be proven by
19 examining broader corporate practices and conduct, not just the isolated facts that
20 created liability. *Id*. at 775. Similarly, in *Hangarter v. Provident Life & Accident*,
21 373 F.3d 998 (9th Cir. 2004), plaintiff introduced evidence of the company's
22 broader claims handling practices, including testimony from former employees
23 about internal policies designed to deny valid claims. *Id*. at 1004-05. The Ninth
24 Circuit found this evidence was admissible because while plaintiff's own
25 experience might have sufficed to establish liability, the broader evidence properly

---

[3] The OMG Girlz disagree with the finding that the jury was not presented ample evidence of MGA's malicious conduct during the September 2024 trial.

illuminated the insurer's intent and state of mind for punitive damages. *Id*. at 1014–15.

The OMG Girlz proffered at least one such example of MGA's pattern and practice of intellectual property infringement, and use of trickery and deceit, but were prevented from presenting it to the jury during the September 2024 trial. After MGA's counsel opened the door, the OMG Girlz moved to admit evidence of MGA's dispute with Amina Mucciolo over its Rainbow Raver doll. *See* Dkt. 974 (OMG Girlz' brief re admissibility).



This remains highly relevant to punitive damages as it shows MGA's pattern or practice of copying creatives, and of showing malice and oppression when confronted by responding with vitriol and belittling the accuser. Like the OMG Girlz, Ms. Mucciolo reached out to MGA because she felt that MGA misappropriated her likeness. And just as with the OMG Girlz, MGA and Mr. Larian called Ms. Mucciolo unreasonable, delusional, and "a disgrace" for attempting to defend her intellectual property. Although Ms. Mucciolo never filed a lawsuit, she maintains that the doll was a copy made without her permission. During any new trial on punitive damages, the OMG Girlz should be allowed to present this example.

In addition, MGA's counsel elicited testimony that although Lady Gaga, Melanie Martinez, and other celebrities appeared on MGA's mood boards, MGA had never been sued by these individuals for IP infringement, and that MGA does "extensive" checks to ensure that its dolls do not infringe other's intellectual property. The OMG Girlz sought to introduce rebuttal evidence, given that MGA is a frequent litigator, often defending itself in litigation related to IP infringement.

1  The Court agreed that the OMG Girlz' proffer was relevant and should come in
2  since MGA opened the door, but ultimately did not allow it due to time. Dkt. 1034
3  (TT 9/18/24 at 4:17-19) ("I think the door has been clearly opened, but I also think
4  it would be an undue expenditure of time to go into other instances where MGA has
5  been sued.").
6        Evidence of the other lawsuits and allegations of IP infringement include a
7  copyright infringement lawsuit that was initiated by the Black-Eyed Peas against
8  MGA (during the pendency of this one), a dispute that arose between Victoria
9  Monet and MGA over a Bratz music video that was a shot by shot copy of one of
10 Monet's, and MGA's prior history of evidence spoliation in its years long dispute
11 with Mattel. Dkt. 192-1; *see also Mattel, Inc., et al v. MGA Entertainment, Inc.*, et
12 al, Case No. 11-56357 (9th Cir. 2013) (discussing that Brian Wing, then-executive
13 vice president at MGA, testified that Mr. Larian instructed him to have Mr.
14 Tiongco, MGA's head of IT, remove a specific Mattel-related email from MGA's
15 servers). Couple this with the undisputed fact that MGA failed to institute a legal
16 hold or conduct proper discovery for more than two years in *this* case, and a
17 reasonable fact-finder could find that MGA has engaged in a pattern or practice of
18 making calculated decisions to infringe and disrespect others' IP rights, and in
19 related trickery and deceit.
20       Further, the OMG Girlz were also denied the opportunity to testify to the
21 emotional harm MGA's misappropriation caused. Additionally, the Court
22 prohibited the third-party "confused-consumer" witnesses from testifying regarding
23 the full motivation behind their decisions to testify, namely, how their confusion
24 influenced their decision to purchase more OMG Dolls and the effect that learning
25 that MGA created the OMG Dolls without the OMG Girlz' permission had on
26 individuals who frequently encounter big companies taking ideas from smaller
27 creatives. Relatedly, there is also ample evidence that MGA believed that the OMG
28 Girlz were financially weak and were vulnerable—the CEO testified as much. *See,*

*e.g.*, Dkt. 1056 (TT 9/19/24 at 51:14-52:4). It is reasonable for a fact-finder to deduce that MGA's CEO believed the OMG Girlz did not have the resources or ability to stand against his use of their intellectual property, or would be unwilling to do so given his response to others who dared call out MGA's behavior. The fact-finder must have the full context to understand the calculated-nature of MGA's misappropriation.

Finally, the jury is permitted to consider evidence of MGA and Issac Larian's net worth and "financial condition" in determining "what amount is necessary to punish them and discourage future wrongful conduct" CACI 3940; *see also Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 993 (N.D. Cal. 2022) (finding that evidence of Defendant's wealth admissible and should be presented to the jury in deciding punitive damages); *Behr v. Redmond*, 193 Cal. App. 4th 517, 535 (2011), as modified (Mar. 25, 2011). Thus, MGA's financials, and Mr. Larian's, will be put before the jury.

These are of course not a dispositive list of what the OMG Girlz should be allowed to present as additional evidence in a new trial, but demonstrate why any new trial must be an actual *trial* on punitive damages.

## IV. CONCLUSION

The punitive damages trial should be tried to a jury, and the OMG Girlz should be permitted to present additional evidence that it was originally prohibited from discussing during the liability phase.

Dated: August 25, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

/s/John R. Keville

John R. Keville
Attorneys for Defendants and Counterclaimants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC, and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Defendant/Counter-Claimants, certifies that this brief complies with the page limit set by the Court Order dated July 29, 2025 (Dkt. 1138).

By: /s/John R. Keville
John R. Keville
Attorneys for Defendants and Counterclaimants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC, and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC