| | |
|---|---|
| Mark A. Finkelstein (SBN 173851)<br>mfinkelstein@uzllp.com<br>Ellen S. Kim (SBN 329348)<br>ekim@uzllp.com<br>UMBERG ZIPSER LLP<br>1920 Main Street, Suite 750<br>Irvine, CA 92614<br>Telephone: (949) 679-0052 | Paul J. Loh (Bar No. 160541)<br>ploh@willenken.com<br>Jason H. Wilson (Bar No. 140269)<br>jwilson@willenken.com<br>Kenneth M. Trujillo-Jamison (Bar No. 280212)<br>ktrujillo-jamison@willenken.com<br>Breeanna N. Brewer (Bar No. 312269)<br>bbrewer@willenken.com<br>WILLENKEN LLP<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, California 90017<br>Telephone: (213) 955-9240 |

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>　　　　　Plaintiff,<br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>　　　　　Defendants,<br><br>GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>　　　　　Counter-Claimants,<br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br>　　　　　Counter-Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' REPLY BRIEF REGARDING STRUCTURE OF NEW TRIAL ON PUNITIVE DAMAGES**<br><br>Hearing Date:　September 22, 2025<br>Time:　　　　　1:30 p.m.<br><br>Complaint Filed: December 20, 2020<br>Trial Date:　September 3, 2024 |

{292253.7}　　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:20-cv-11548-JVS-AGR
　　　　　　　　　　　　　　　　　　　　　　　　　　　　MGA'S OPENING BRIEF REGARDING
　　　　　　　　　　　　　　　　　　　　　　　　　　　　STRUCTURE OF NEW TRIAL

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

# **TABLE OF CONTENTS**

I. INTRODUCTION ......................................................................................... 4

II. ARGUMENT ................................................................................................ 5

    A. The New Trial On Punitive Damages Should Be A Bench Trial. ........ 5

        1. Proofpoint *Confirms That Punitive Damages Based Solely On Equitable Disgorgement Are Equitable.* ................... 5

        2. *Counterclaimants Fail To Cite Any Authority That Disapproves The Ninth Circuit's Reasoning In* Proofpoint. ...... 7

        3. *Under* Harbor Breeze*, The Parties' Prior Consent To A Jury Under Rule 39(c) Does Not Apply To A New Trial.* .......... 9

    B. The Court Should Conduct A Bench Trial On The Extensive, Existing Record. ................................................................................. 11

    C. Any New Jury Trial On The Issue Of Punitive Damages Would Require Retrial Of Willfulness. .............................................. 14

III. CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bereda v. Pickering Creek Indus. Park, Inc.*,
865 F.2d 49 (3d Cir. 1989) .................................................................. 4, 10, 11

*In re Cnty. Of Orange*,
784 F.3d 520 (9th Cir. 2015) ........................................................................ 9

*ConsumerDirect Inc. v. Pentius, LLC*,
No. 8:21-cv-01968-JVS, 2025 WL 817138 (C.D. Cal. Mar. 3, 2025) .............. 14

*ConsumerDirect, Inc. v. Pentius, LLC*,
No. 8:21-cv-01968-JVS, 2024 WL 3914667
(C.D. Cal. July 19, 2024) ............................................................................ 8

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008) ................................................................................... 5

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) ..................................................................... 6

*Kearney v. Standard Ins. Co.*,
175 F.3d 1084 (9th Cir. 1999) ................................................................... 12

*Kumar v. Koester*,
131 F.4th 746 (9th Cir. 2025) .................................................................... 12

*Liu v. SEC*,
591 U.S. 71 (2020) ................................................................................. 6, 7

*Palantir Techs. Inc. v. Abramowitz*,
639 F. Supp. 3d 981 (N.D. Cal. 2022) ......................................................... 9

*Proofpoint, Inc. v. Vade USA, Inc.*,
2024 WL 4003096 (9th Cir. Aug. 30, 2024) ......................................... *passim*

*Quiksilver, Inc. v. Kymsta Corp.*,
2007 WL 9712164 (C.D. Cal. Dec. 5, 2007) ................................................ 9

*Ross v. Pioneer Life Ins. Co.*,
   545 F. Supp. 2d 1061 (C.D. Cal. 2008) ............................................................... 9

*SEC v. Jarkesy*,
   603 U.S. 109 (2024). ....................................................................................... 6, 8

*Siqueiros v. GM LLC*,
   No. 16-cv-07244-EMC, 2023 WL 3933344
   (N.D. Cal. June 8, 2023) ..................................................................................... 9

*In re Tsay JBR LLC*,
   136 F.4th 1176 (9th Cir. 2025) ....................................................................... 7, 8

*Tull v. United States*,
   481 U.S. 412 (1987) ........................................................................................ 6, 7

**Statutes**

Cal. Civ. Code § 3294 ................................................................................................ 9

Fed. R. of Civ. P. 39(c) ....................................................................... 4, 5, 9, 10, 11

Fed. R. Civ. P. 52 ............................................................................................ 5, 13, 15

## I. INTRODUCTION

As explained in MGA's Opening Brief, *Proofpoint, Inc. v. Vade USA, Inc.*, 2024 WL 4003096 (9th Cir. Aug. 30, 2024) and *Harbor Breeze*, 28 F.4th 35 (9th Cir. 2022), stand for the propositions that (1) there is no right to a jury trial on punitive damages where, as here, the underlying award is equitable disgorgement, and (2) prior consent to a jury trial under Federal Rule of Civil Procedure 39(c) does not carry over to a new trial. Thus, the new trial on the equitable issue of punitive damages should be a bench trial.

In response, Counterclaimants ask the Court to depart from these Ninth Circuit decisions and, instead, conduct a lengthy, ***fourth*** jury trial.

First, Counterclaimants urge the Court to disregard *Proofpoint*, criticizing the Ninth Circuit's opinion for supposedly providing "little analysis" to support its conclusion and for misunderstanding and misapplying Supreme Court precedent. Yet Counterclaimants fail to cite a single case—in any jurisdiction—where a court ruled a jury trial was required for punitive damages where the sole underlying award was equitable disgorgement. Accordingly, the Court should find, as it tentatively did before, that punitive damages based solely on disgorgement of MGA's profits are equitable.

Second, as to the applicability of Rule 39(c) to the new trial, Counterclaimants contend that the Court should follow the Third Circuit's non-binding ruling in *Bereda v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49 (3d Cir. 1989), rather than the Ninth Circuit's binding ruling in *Harbor Breeze*. The *Bereda* court held that in a retrial, "a litigant should not be placed in a worse position than she would have been in **but for the trial court's error**." *Id.* at 55 (emphasis added). No such error occurred here with respect to the jury's punitive damages award.[1] Instead, as in *Harbor Breeze*, the jury's decision was set aside "as fundamentally

---

[1] MGA maintains that punitive damages are not an available remedy for common law misappropriation.

flawed." *Harbor Breeze*, 28 F.4th 35 at 41. The Ninth Circuit made clear, "Rule 39(c) does not require that [a] retrial . . . be a jury trial." *Id*. at 41. Thus, the equitable issue of punitive damages should be retried to the Court.

And there is no need for any additional testimony. To be sure, the only "supplemental" evidence Counterclaimants offer to present was either excluded or already considered. The Court can, and should, issue findings and conclusions under Rule 52 based on the extensive, existing trial record.

II.  **ARGUMENT**

    A.  **The New Trial On Punitive Damages Should Be A Bench Trial.**

        1.  **Proofpoint *Confirms That Punitive Damages Based Solely On Equitable Disgorgement Are Equitable.***

MGA does not dispute that punitive (or exemplary) damages are ***sometimes*** a legal issue for the jury. However, Counterclaimants' sweeping claim that such damages are ***always*** a legal issue is unfounded. Dkt. 1140 at 1, 5. Punitive damages, which are designed to "advance the interests of punishment and deterrence," can be imposed by ***either*** a judge or a jury. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499-500, 504 (2008) (discussing survey data of, *inter alia*, punitive damages decided by judges). And in the instant case, Counterclaimants conceded that whether to award enhanced damages under the Lanham Act to "deter" MGA from future infringement was an issue for the Court, not the jury. *See* Dkt. 1045. Thus, whether punitive (or exemplary) damages is a jury or bench issue must be examined in each case.

In *Proofpoint*, the Ninth Circuit confirmed that exemplary damages for misappropriation of trade secrets, when based solely on "disgorgement of the defendant's profits," are "an ***equitable*** remedy." 2024 WL 4003096, at *1 (emphasis added). And in tentatively finding against punitive damages at the post-trial equitable issues stage here, this Court agreed. Dkt. 1096-4 at 21-22 ("Punitive

damages are a mainstay of equity when 'a remedy is tethered to a wrongdoer's net unlawful profits, whatever the name[.]'") (citing, among other cases, *Proofpoint*).

Here, as in *Proofpoint*, any punitive damages award is necessarily "tethered" to the underlying remedy of disgorgement.  Indeed, Counterclaimants—and the Court—used the disgorgement award in calculating the ratio of the jury's punitive damages award to determine whether the punitive award complied with the Due Process Clause.  *See* Dkt. 1133 at 16 ("The Harrises note that the punitive damages award of $53,616759 is precisely a 3:1 ratio of the award for disgorgement of profits. (Opp'n at 12).  This ratio passes constitutional scrutiny[.]").

Unable to factually distinguish *Proofpoint*, Counterclaimants attempt to brush off the opinion by calling it "non-precedential" and "truncated."  Dkt. 1140 at 4.  While unpublished, *Proofpoint* is instructive and remains the most indicative of how the Ninth Circuit is likely to rule on this specific issue.  Indeed, the case was decided by Ninth Circuit Judges Graber, Callahan, and Koh, all of whom continue to serve on that Court.  And the analysis was "truncated" only because the panel believed the issue easily resolved by binding Supreme Court precedent in *Liu v. SEC*, 591 U.S. 71, 80 (2020).

Counterclaimants also criticize *Proofpoint* for supposedly deviating from Supreme Court precedent in *SEC v. Jarkesy*, 603 U.S. 109, 120, 123 (2024).  Dkt. 1140 at 3-4.  Counterclaimants contend that *Jarkesy* requires a jury trial on punitive damages because, in that case, the Supreme Court found that "civil penalties" for securities fraud were legal remedies.  Dkt. 1140 at 4.  But civil penalties are traditionally distinct from disgorgement of profits, on which punitive damages are based here.  *Compare Tull v. United States*, 481 U.S. 412, 422 (1987) ("A civil penalty was a type of remedy at common law that could only be enforced in courts of law."), *with Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) (explaining that "actions for disgorgement of improper profits

Umberg Zipser LLP
Attorneys At Law
Irvine

{292253.7}                                   6                        Case No. 2:20-cv-11548-JVS-AGR
                                                                      MGA'S REPLY BRIEF REGARDING
                                                                      STRUCTURE OF NEW TRIAL

are equitable in nature" and "cannot be said to be traditionally tried to a jury").

Further, Counterclaimants assert that the *Proofpoint* court misunderstood the Supreme Court's holding in *Liu v. SEC*, 591 U.S. at 79-80, because *Liu* did not specifically address punitive damages. Dkt. 1140 at 4. But, as explained in *Proofpoint*, *Liu* confirms that an award that "rests on the disgorgement of the defendant's profits . . . is an equitable remedy." *Proofpoint*, 2024 WL 4003096 at *1 (citing *Liu*, 591 U.S. at 80). *Proofpoint* therefore held that exemplary damages based solely on disgorgement are also equitable. *Id*. This makes sense. When a court determines an underlying disgorgement award, it should also be the one to decide (without convening a jury trial) whether punitive damages, based solely on that equitable award, are available (and, if so, how much should be awarded).

### 2. *Counterclaimants Fail To Cite Any Authority That Disapproves The Ninth Circuit's Reasoning In* Proofpoint.

None of the cases cited by Counterclaimants calls into question *Proofpoint*'s analysis or conclusion. Counterclaimants rely heavily on *In re Tsay JBR LLC*, 136 F.4th 1176 (9th Cir. 2025), but that case did not address punitive damages in the context of a disgorgement award. Instead, *In re Tsay* held that parties have a right to a jury trial when seeking statutory damages under the California Unruh Act because "a civil penalty was a type of remedy at common law that could be enforced in courts of law." *Id*. at 1180 (quoting *Tull*, 481 U.S. at 422). That is, *In re Tsay* merely confirmed a position that the Supreme Court articulated more than 35 years ago. Here, statutory damages were not sought or awarded.

*In re Tsay* sets forth the familiar two-step inquiry for assessing whether a remedy is legal or equitable: (1) a historical analysis of the cause of action, comparing it to "18th-century actions brought in the courts of England"; and (2) an examination of the remedy sought ("whether it is legal or equitable in nature"). 136 F.4th at 1179. "Of these two steps, the ***remedy is the more important***

*consideration.*" *Id.* (citing *Jarkesy*, 603 U.S. at 123) (internal quotation marks omitted and emphasis added).

Counterclaimants argue that the *Proofpoint* court failed to apply this two-step test. Dkt. 1140 at 4-5. But *Proofpoint* cites to, and relies on, *Jarkesy*, which discussed and explained that test. *Proofpoint*, 2024 WL 4003096 at *1; *see Jarkesy*, 603 U.S. at 111. Further, the parties in *Proofpoint* extensively briefed the history and nature of exemplary damages and disgorgement. *See* Defendants-Appellees App. Br., 2024 WL 1073224, at *35-40 (Feb. 12, 2024). Thus, and contrary to Counterclaimants' argument (Dkt. 1140 at 4-5), the Ninth Circuit in *Proofpoint* properly considered the applicable test. Thus, *In re Tsay* did not override *Proofpoint*, nor do the two decisions conflict.

Here, as in *Proofpoint*, the sole remedy of disgorgement is undisputedly equitable. Even liability would have been tried to the Court had the parties not expressly consented to a jury trial on liability.[2] *See ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-cv-01968-JVS (ADSx), 2024 WL 3914667, at *2 (C.D. Cal. July 19, 2024) (Selna, J.) (finding no right to a jury trial on trademark infringement and false designation of origin claims where plaintiff sought only a disgorgement remedy). Accordingly, by examining the remedy sought (as required by Supreme Court precedent), it is clear there is no right to a jury trial for punitive damages in this case.

Counterclaimants cite a handful of district cases for the proposition that the Seventh Amendment applies "generally" to punitive damages, but those cases are inapposite.[3] *See* Dkt. 1140 at 5. None of them discuss punitive damages where the

---

[2] Counterclaimants incorrectly assume that the Seventh Amendment right to a jury trial always attaches to a misappropriation claim, regardless of the remedy being sought. *See* Dkt. 1140 at 2.

[3] Further, Counterclaimants' reliance on California cases on this point is misplaced. The right to a jury trial in federal court is a procedural issue controlled by federal

only relief sought and awarded is equitable disgorgement, and all of them predate *Proofpoint*. At best, these cases stand for the unremarkable proposition that a jury can decide punitive damages when some underlying award is legal. *See Siqueiros v. GM LLC*, No. 16-cv-07244-EMC, 2023 WL 3933344, at *1 (N.D. Cal. June 8, 2023) (discussing punitive damages for violation of the Idaho Consumer Protection Act where jury awarded $2,700 in damages per vehicle for the class); *Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 990, 993 (N.D. Cal. 2022) (discussing exemplary damages under the California Uniform Trade Secrets Act where plaintiff sought reasonable royalties, among other damages); *Quiksilver, Inc. v. Kymsta Corp.*, 2007 WL 9712164 (C.D. Cal. Dec. 5, 2007) (discussing exemplary damages in the context of the Lanham Act and common law unfair competition and concluding that right to jury trial attached because the accounting claim was legal).[4]

Accordingly, the Court should find that punitive damages based on equitable disgorgement is an equitable issue.

### 3. Under *Harbor Breeze*, The Parties' Prior Consent To A Jury Under Rule 39(c) Does Not Apply To A New Trial.

On retrial, MGA does not consent to a binding jury verdict on the equitable issue of punitive damages. Counterclaimants characterize MGA's position as seeking a "do over" on the parties' prior consent to a jury trial on punitive damages under Rule 39(c). Dkt. 1140 at 1, 6. But this is not a situation where MGA is "withdraw[ing] consent" after the jury returned an unfavorable verdict, as Counterclaimants assert. Dkt. 1140 at 6. Instead, MGA properly challenged the

---

law. *In re Cnty. Of Orange*, 784 F.3d 520, 528 (9th Cir. 2015).

[4] Counterclaimants also cite *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) for the proposition that there is right to a jury trial under California Civil Code section 3294. But *Ross* merely provides that section 3294 "**permits** a trier of fact to impose punitive damages for the purpose of deterrence," and a "trier of fact" may be judge or jury. *Id.* (emphasis added).

1  jury's verdict in a post-***judgment*** motion (Dkt. 1121), and the Court agreed with
2  MGA that "the jury's verdict on punitive damages ***cannot be sustained***." Dkt. 1133
3  at 9-10 (emphasis added).

4  By Counterclaimants' logic, once a party consents to a jury trial under Rule
5  39(c), that consent is fixed for all retrials. But that position contradicts the Ninth
6  Circuit's decision in *Harbor Breeze*, which held there is no "free-floating right to a
7  jury trial, as to a concededly equitable issue, that is untethered to [a] now-vacated
8  verdict." 28 F.4th at 41. "Rule 39(c)(2) ***does not grant*** that broader right." *Id.*
9  (emphasis added).

10 Counterclaimants argue that *Harbor Breeze* is inapplicable because that case
11 addressed disgorgement and not punitive damages. Dkt. 1140 at 6. This distinction
12 is immaterial. In *Harbor Breeze*, as here, the verdict on liability remained in place,
13 and the only question was who would retry the remedy, which was "an equitable
14 issue ordinarily left to the court." 28 F.4th at 38-39.

15 Further, Counterclaimants contend that, in *Harbor Breeze*, "the Ninth Circuit
16 emphasized that the plaintiffs seeking a jury trial had flipped positions," whereas
17 Counterclaimants have always requested a jury. Dkt. 1140 at 7. The Ninth Circuit
18 there was referring to the fact that the parties "effectively swapped positions on
19 appeal," as compared to their arguments to the district court. *Harbor Breeze*, 28
20 F.4th at 39. Here, MGA never argued that the punitive damages issue should go to
21 the jury and, thus, is not switching its position. In any event, the Ninth Circuit in
22 *Harbor Breeze* rejected each side's claim of estoppel. 28 F.4th at 40.

23 At bottom, Counterclaimants urge the Court to follow the Third Circuit's
24 opinion in *Bereda* rather than the Ninth Circuit's binding decision in *Harbor*
25 *Breeze*. Dkt. 1140 at 6-7. Setting aside that *Bereda* is not precedential in this
26 Court, the facts in that case are readily distinguishable. As the Ninth Circuit
27 explained in *Harbor Breeze*:
28

Umberg Zipser LLP
Attorneys At Law
Irvine

{292253.7}   10   Case No. 2:20-cv-11548-JVS-AGR
MGA'S REPLY BRIEF REGARDING
STRUCTURE OF NEW TRIAL

> In *Bereda*, the jury issued a binding verdict under Rule 39(c)(2), finding that Bereda was entitled to a substantial award of backpay for unlawful sex discrimination, but the district court plainly erred in failing to inform the jury that, under the applicable laws, backpay was only available for a specified number of years. The defect in the jury's verdict was thus partial and limited, and it involved a specific issue as to which there was no right to a jury trial. However, because the court of appeals could not determine from the record what portion of the monetary award was valid and what portion was invalid, a new trial on the issue of backpay was required. Under these circumstances, the court concluded that allowing a de novo bench trial on remand would fail to give the same effect to the prior verdict as if a jury trial had been a matter of right, and would put the plaintiff in a worse position than she would have been in but for the trial court's error.

*Harbor Breeze*, 28 F.4th at 41 (citing *Bereda*, 865 F.2d at 51-55).

Here, the defect in the jury's verdict on punitive damages was not "partial and limited," as in *Bereda*. Instead, the Court set aside punitive damages entirely. Dkt. 1133 at 13 (finding that the "jury's verdict on punitive damages cannot stand" and "the maximum punitive damages award sustainable by the proof is $1"). Further, there was no error by the Court that has put Counterclaimants in a "worse position," and a new bench trial would not affect the prior jury verdict on liability (which remains undisturbed). The underlying "error" is Counterclaimants' own failure to prove their entitlement to punitive damages—not any error by the Court.

Accordingly, the new trial on punitive damages should be a bench trial.

### B. The Court Should Conduct A Bench Trial On The Extensive, Existing Record.

It is entirely proper for the Court to rule on an equitable issue based on the existing record and papers.[5] District courts regularly conduct such bench trials. *See*

---

[5] Counterclaimants argue that MGA proposes to "switch[] the fact-finder from a

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999);[6] *Kumar v. Koester*, 131 F.4th 746, 748 (9th Cir. 2025). Indeed, that is precisely what happened here following the September 2024 trial, without any objection from Counterclaimants. *See* Dkt. 1023 at 6-7; Dkt. 1090 (Equitable Issues Order).

Moreover, there is no reason to believe Counterclaimants can present evidence in a new trial that the Court has not either previously excluded or already considered.

First, Counterclaimants want to present evidence of MGA's dispute with Amina Mucciolo over a doll that is unrelated to the L.O.L. Surprise! O.M.G. dolls. Dkt. 1140 at 10. This issue was extensively briefed in MGA's third motion *in limine* (Dkts. 209, 210, 261), which the Court granted, excluding impermissible allegations related to cultural appropriation, racism, and third-party misappropriation. Dkt. 502 at 5-6. Among the specific allegations excluded were those related to Mucciolo. *Id.* (citing Dkt. 261 at 3-4). The Court's *in limine* rulings should continue to govern any retrial.

Second, Counterclaimants seek to introduce evidence of other lawsuits, and other allegations, involving MGA. This was already a common theme at the September 2024 trial. *See* Trial Transcript ("TT") 9/19/24 AM at 9-10; Dkt. 974. And the Court properly excluded certain similar evidence under Federal Rules of Evidence 404 and 406. Dkt. 502 at 4-5. *See* Dkt. 974. Thus, Counterclaimants cannot claim that the Court did not hear testimony on this issue. As the Court explained at trial, additional evidence along these lines would be "an undue

---

jury to the bench," but that is not true. *See* Dkt. 1140 at 8. The Court was and has always been the fact-finder for equitable issues. *See* Dkt. 924 at 2:5-6.

[6] Counterclaimants suggest that the *Kearney* court broadly disapproved of bench trials on the record because it stated in a footnote, "[t]he author of this opinion writes with some trepidation about this novel form of trial." *Kearney*, 175 F.3d at 1095 n.4. But that concern related to the situation where a court would need to rely on a preexisting administrative record, not a trial that the court had itself overseen.

expenditure of time . . . ." TT 9/18/24 AM at 4:5-24.[7]

Third, Counterclaimants insist they should be permitted to present testimony from the OMG Girlz regarding their emotional harm; testimony from third-party consumers regarding the "full motivation behind their decisions to testify"; and evidence of MGA's financial condition and its perception of the OMG Girlz' financial condition. *See* Dkt. 1140 at 11-12. The Court already precluded Counterclaimants "from seeking, or presenting evidence relating to, emotional distress damages," Dkt. 521 at 2, due to their own discovery conduct. Dkt. 501 at 7-8. Further, Counterclaimants fail to indicate how any additional testimony from the consumer witnesses would bear on MGA's alleged willfulness, and MGA's and the OMG Girlz' respective financial conditions were already discussed at trial. *See* Dkt. 1013 at 30; Dkt. 1014 at 1.

Finally, Counterclaimants argue that evidence of "pattern and practice" of infringement needs to be presented but, as explained above, "pattern and practice" was already explored in the last trial. In any event, that was not one of the elements to consider in whether to award punitive damages in the first instance. *See* Dkt. 1013 at 29-30 (Jury Instruction No. 22). Thus, such evidence cannot possibly support any alleged entitlement to punitive damages.

Accordingly, the Court should enter findings of fact and conclusions of law under Rule 52(a), based on the existing record and consistent with its finding that punitive damages cannot stand because there was insufficient evidence of MGA's willfulness. The parties can then submit an Amended Judgment for the Court's consideration.

---

[7] Counterclaimants also ask the Court to consider MGA's failure to institute a legal hold and alleged failure to conduct discovery in this case. Dkt. 1140 at 11. But Counterclaimants raised those issues in a prior motion, which was denied (Dkt. 503), and previously suggested in the third trial that MGA somehow failed to produce or preserve documents. *E.g.*, TT 9/10/24 PM at 91:2-92:17.

## C. Any New Jury Trial On The Issue Of Punitive Damages Would Require Retrial Of Willfulness.

MGA does not seek a retrial of liability, as Counterclaimants claim.[8] Thus, the parties seem to agree that, if the Court determines that punitive damages should be retried to a jury for a binding verdict (which it should not), the jury must decide the factual question of willfulness.  *See* Dkt. 1140 at 8:5-14.

Retrying the issue of willfulness to a new jury would, in turn, require presenting to the new jury all of the liability evidence that was presented at the last trial—and potentially adding additional evidence, given what Counterclaimants propose.  Counterclaimants admit that there will be "some overlap in the evidence provided," but do not address how any such overlap could be limited.  *See id*. at 8:12-14.  Nor do Counterclaimants deny that a new jury would need to hear the testimony from all of MGA's witnesses to gauge their knowledge, credibility, and demeanor, as well as hear all of the evidence regarding the alleged misappropriation, so the jury can determine if that was done willfully.

Counterclaimants further do not dispute that a new jury trial could very well result in the parties being in this exact situation many months from now.  Indeed, if a new jury were to award punitive damages, and if this Court does not grant a Rule 50 motion in that instance, the Court would likely grant another new trial.

## III. CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court grant a new bench trial for punitive damages and issue findings of fact and conclusions of law under Rule 52 based on the existing record.

---

[8] Though "if a new trial on damages alone would lead to injustice," the Court has "the discretion to re-open liability."  *See ConsumerDirect Inc. v. Pentius, LLC*, No. 8:21-cv-01968-JVS (ADSx), 2025 WL 817138, at *2 (C.D. Cal. Mar. 3, 2025) (Selna, J.).

1  Dated: September 8, 2025     UMBERG ZIPSER LLP

*[signature]*

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

**CERTIFICATE OF COMPLIANCE—LOCAL RULE 11-6.2**

The undersigned, counsel of record for MGA, certifies that this brief complies with the page limit set by the Court Order dated July 29, 2025 (Dkt. 1138).

Dated: September 8, 2025                    UMBERG ZIPSER LLP

_____
Mark A. Finkelstein
Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian