John R. Keville
jkeville@sheppardmullin.com
Robert L. Green
rgreen@sheppardmullin.com
Chante B. Westmoreland
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
845 Texas Ave, 25th Floor
Houston, TX 77002
Telephone: (713) 431-7100

Valerie E. Alter (SBN: 239905)
*valter@sheppardmullin.com*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive, <br><br> Defendants. | Case No. 2:20-cv-11548-JVS-AGR <br> ASSIGNED TO: Hon James V. Selna <br><br> **Response In Opposition To MGA's 2026 Motion In Limine 2** |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC, <br><br> Counter-Claimants, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive, <br> Counter-Defendants. | Complaint Filed:  December 20, 2020 <br> Trial Date:   June 23, 2026 |

## I.   INTRODUCTION

MGA's MIL No. 2 seeks to convert this Court's Order denying spoliation sanctions into a broad exclusionary order. While the Court did not sanction MGA because there was no evidence of a specific document being destroyed, it explicitly stated that the OMG Girlz were "free to present evidence to the jury concerning MGA's failure to institute a litigation hold" and even "argue to the jury that such conduct likely led to the loss of relevant information."  Dkt. 503 at 15. MGA now seeks to use that same Order to argue for the opposite outcome. That does not make any sense. Regardless, the evidence is relevant to multiple issues in the upcoming trial and MGA has identified no unfair prejudice, much less prejudice that would substantially outweigh the relevance. MGA's MIL No. 2 should be denied.

The evidence at the September 2024 trial revealed many discrepancies in MGA's purported design process for the L.O.L. Surprise! O.M.G. dolls and the documents MGA produced. For certain dolls, MGA produced ample sketches, a mood board, hair and skin design drawings, boot design drawings, fabric patterns, and prototypes.  But for others, particularly with the infringing dolls, various such documents were not produced.  This discrepancy is relevant to MGA's intent.  For example, the evidence at trial showed that MGA's designs and the look of certain dolls inexplicably changed to be strikingly similar to the OMG Girlz at the same time that MGA's documents showed the designer's awareness of the OMG Girlz.  That lack of prior design documents (non-production) showing otherwise is circumstantial evidence that MGA's choice was intentional, not coincidental.

One of the punitive damages factors that the Ninth Circuit has instructed district courts can consider is "the degree of reprehensibility of the defendant's conduct, duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct." *Morgan v. Woessner*, 997 F.2d 1244, 1257 n.14 (9th Cir. 1993).  The discrepancies between the design process that MGA took with other dolls versus the design process MGA took with the infringing

dolls, including the omission of documents, bears directly on MGA's intent and therefore the degree of reprehensibility of MGA's conduct, and whether or not MGA concealed its actions.

Even aside from the direct issues, evidence of MGA's "negligen[t]" discovery practices is relevant to the weight MGA's evidence should be given. Dkt. 503 at 15. MGA's exhibit list includes many mood boards and other purported design documents for the infringing dolls. But as MGA witnesses admitted, these documents were changed over time and those earlier versions were either not retained or not produced. This bears on what weight, if any, the jury should give to MGA's design documents and any testimony about those documents that MGA offers to rebut a finding of malice or oppression. MGA's MIL No. 2 seeks to exclude relevant evidence thus should be denied.

## II.     Legal Standard

The Ninth Circuit has instructed that a "trial court can look to the *Hammond* factors or other general elements of reasonableness to determine whether a punitive damage award should be upheld." *Morgan*, 997 F.2d at 1257.  One of the *Hammond* factors, include: "the degree of reprehensibility of the defendant's conduct, duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct." *Morgan*, 997 F.2d at 1257, n.14, citing *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 17 (1991) (concluding that the *Hammond* factors "provide for a rational relationship in determining whether a particular award is greater than reasonably necessary to punish and deter."). Of those factors, the Supreme Court recognized that: "[p]erhaps the most important indicium the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

## III.    ARGUMENT

### A.      This Court's Pretrial Order that MGA Relies on *Allowed* the Use of this Evidence At Trial

MGA starts with an incorrect contention that a pre-trial ruling denying the OMG Girlz's motion for sanctions due to spoilation, now requires the exclusion of any "evidence or argument regarding MGA's alleged destruction, nonproduction, or late production of evidence" at the upcoming punitive damages trial.[1]  Motion at 4-5.  It does not, and MGA cites no legal authority for such a position.  Indeed, in that same order, the Court noted that while "preclusion sanctions [were] unnecessary at this time … the Court may revisit this issue at trial, when the Court is afforded a fuller factual context to determine the significance of MGA's conduct" and instructed that the OMG Girlz were "free to present evidence to the jury concerning MGA's failure to institute a litigation hold and lack of systematic practices of collecting records" and "free to argue to the jury that such conduct likely led to the loss of relevant information."  Dkt. 503 at 15.

MGA next proceeds to argue what it believes the September 2024 trial record showed.   Motion at 4-5.   While MGA presents an incomplete (and therefore inaccurate) picture of the record, the more salient point is that this type of evidence, whether in favor of MGA or in favor of OMG Girlz, is directly relevant to the determination and review of a punitive damages award.  Specifically, the evidence and arguments that MGA broadly seeks to exclude in its Motion are relevant to: (1) whether MGA's choice of design for each doll was intentional or coincidental, (2) the degree of MGA's reprehensibility, (3) whether MGA tried to conceal any of its actions, (4) the weight the jury should give MGA's design documents, and (5) the credibility of MGA witness testimony.  Even the portions of Ms. Consorti's testimony that MGA relies upon (Motion at 4) go to the above factors.  For example, whether "all design documents were preserved" and Ms. Consorti "did not delete anything" go to (at minimum) whether or not MGA concealed its actions, and Ms. Consorti's

---

[1] MGA also moves to preclude reference to "any Court rulings regarding the same topics." Motion at 7.  As in any trial, the OMG Girlz have no intention of referencing either this Court's rulings or the Court's statements in such rulings.

testimony "that not every doll had its own mood board and some mood boards combined multiple dolls" has relevance as rebuttal evidence that MGA intentionally infringed on the OMG Girlz's trade dress.

As to the trial record, other evidence at the September 2024 trial did show unexplained and missing documents for the infringing dolls. MGA described its design process as a "pretty detailed" one that spanned a "six-to-nine-month process, soup to nuts," and showed its design process to the jury with the slide at right.  Dkt. 1051



(Trial Transcript ["TT"] 9/3/2024 PM) at 67:24-68:9.  MGA witnesses confirmed that this design process was accurate.  *See, e.g.*, Dkt. 1051 (TT 9/10/2024 PM) at 50:20-51:8 (Ms. Consorti).  Yet, the OMG Girlz were able to point to several dolls whose designs seemed to significantly deviate from this process.  For example, the Queens dolls, released Spring of 2022 (during the course of this litigation), did not follow this process.  Instead, "original" mood boards contained images of complete dolls with no version of an initial concept of a doll.  *See* Trial Exhibit 1292 (Mood Board: Prism) with Dkt. 1030 (TT 9/11/2024 AM at 25:15-27:1).  Other mood boards appeared "live" and changed with the design process with even MGA's lead designers not able to identify an "original" or a "final".  *See* Trial Exhibit 1292 with Dkt. 1030 (TT 9/11/2024 AM at 26:3-27:1).  Other evidence showed similar departures from MGA's purported design process with the infringing dolls, including a missing individual mood board and a missing color theme drawings for Roller Chick Dkt. 1051 (TT 9/10/2024 PM at 89:5-90:11) or inexplicable change to a combined mood board as opposed to single mood boards Dkt. 1051 (TT 9/10/2024 PM at 61:7-21).

MGA witnesses offered reasons for these discrepancies, but the lack of a litigation hold and MGA's failure to collect certain documents goes to the weight

these excuses should be given. As the Court noted, the OMG Girlz should be free to argue to the jury that such conduct likely led to the loss of relevant information rather than simply have to accept MGA's self-serving stories. The disparity between MGA's purported design process for each doll and the design documents produced for the infringing dolls is directly relevant to punitive damages, specifically, relevant to MGA's intentions, the degree of MGA's reprehensibility, and whether MGA tried to conceal any of its actions.

### B. MGA's Lack Of A Litigation Hold Is Relevant

MGA next seeks to preclude any questions eliciting the fact that MGA did not issue a litigation hold, because, MGA claims, such a statement "insinuates that documents were withheld, misplaced, or lost." At the outset, the evidence did show documents are missing, so it is perfectly fair to "insinuate" that fact. *Supra* II.A. Second, contrary to MGA's belief, this Court's *pretrial* findings that "no spoliation of evidence occurred," were not *posttrial* findings.

But in any event, MGA does not seek to preclude "spoliation of evidence," MGA seeks to preclude any mention of MGA's lack of implementing a litigation hold, and there is simply no undue prejudice with eliciting that fact. MGA does not even attempt to articulate one. Even in the Court's prior sanctions ruling, the Court instructed that the OMG Girlz "are free to present evidence to the jury concerning MGA's failure to institute a litigation hold and lack of systematic practice of collecting records." Dkt. 503 at 14. Further noting, "[the OMG Girlz] are free to argue to the jury that such conduct likely led to the loss of relevant information." Dkt. 503 at 14. While the court concluded such evidence was relevant and admissible then, it is even more relevant and admissible now, where factors such as "concealment" are in issue. MGA's Motion should be denied.

### C. This Evidence Is Relevant and Not Unfairly Prejudicial

MGA's final argument seeks to exclude relevant evidence based upon a false impression. The OMG Girlz have no intention of accusing MGA of "discovery

misconduct" or that MGA intentionally "destroyed documents." Motion at 6-7. That does not mean, however, that the Court should exclude "all evidence or argument regarding MGA's alleged … non-production … of evidence" as MGA requests. Dkt. 1182-1. As explained, *supra* II.A, the disparity between the document heavy three to six month design process MGA described and what MGA produced for the infringing dolls is relevant, admissible evidence. MGA's Motion should be denied.

There has been no contention that MGA deliberately destroyed a specific piece of evidence, as this Court previously noted, and OMG Girlz have no intention of alleging discovery violations at trial. Dkt. 503 at 7 (the OMG Girlz "do not contend that MGA destroyed or altered any evidence. . . . Rather, they argue that evidence was lost."). Hence, MGA's cases are inapplicable. In *Mformation Techs., Inc. v. Research in Motion, Ltd.*, the party moved to exclude "prior decisions in this case and discovery disputes between the parties." 2012 WL 2339762, at *2, No. 5:08-cv-04990 (N.D. Cal. Jun. 7, 2012). But there is no intention to introduce prior decisions or disputes here. In *Wyatt Technology Corp. v. Malvern Investments, Inc.*, the party moved to exclude evidence that a party affirmatively "destroyed evidence." 2010 WL 11505684, at *14-16, No. CV 07-8298 ABC (MANx) (C.D. Cal. Jan. 25, 2010). Again, affirmatively destroying evidence is not applicable here.[2]

In MGA's final case, *United States v. Pac. Gas & Elec. Co.*, the court precluded evidence that the witness "was told to destroy" documents. 178 F. Supp. 3d 927, 968-69 (N.D. Cal. 2016). Again, not applicable here.[3] But more on point, the court admitted testimony that the witness received pushback when she "tried to remedy

---

[2] The court had also excluded the evidence because such evidence had either (1) been found by the Court to be "preserved" or attested to be "not deleted or otherwise destroyed," or (2) destroyed prior to the anticipation of any lawsuit. *Id.* at *14-16.

[3] The court also found these documents were "merely copies" and that the opposing side conceded that "the probative value of their destruction is both low and outweighed by this risk of unfair prejudice." *Id.*

PG&E's recordkeeping deficiencies" and "attempted to organize PG&E records" over PG&E's objection because PG&E ultimately did adopt those proposals. *Id.* at 969. The court aptly noted that PG&E's ultimate adoption of those record keeping proposals would be "proper fodder for cross-examination, at which point PG&E can minimize any risk of unfair prejudice through correcting this mischaracterization." *Id.* at 969. That is exactly what should happen here.

MGA seeks to preclude any mention or reference to its "non-production" of documents. But there are plainly differences between the documents produced for certain of MGA's dolls and those produced for the infringing dolls. *Supra* II.A. That discrepancy goes directly to specific factors relevant to determining punitive damages and later reviewing such an award, including whether MGA's intentions with its doll designs were purposeful or merely coincidental, whether MGA concealed its action, and the ultimate degree of reprehensibility in MGA's actions. MGA's Motion should be denied.

## IV.   CONCLUSION

The majority of MGA's Motion is based upon precluding arguments that the OMG Girlz have no intention of pursuing. But MGA's ask to have this Court preclude all evidence and argument related to MGA's non-production of documents and failure to implement a litigation hold should be denied. Such evidence falls squarely within the punitive damages factors the Ninth Circuit has instructed courts can consider. MGA has provided no basis to exclude such relevant evidence, nor is it unduly prejudicial. MIL No. 2 should be denied.

Dated: May 14, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/John R. Keville
    John R. Keville
    Attorneys for Defendants and
    Counterclaimants Clifford "T.I." Harris,
    Tameka "Tiny" Harris, OMG Girlz

LLC, and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC

8

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Defendant/Counter-Claimants, certifies that this brief contains <u>2274</u> words, which complies with the word limit of L.R. 11-6.1.

By: <u>/s/John R. Keville</u>
John R. Keville
Attorneys for Defendants and
Counterclaimants Clifford "T.I."
Harris, Tameka "Tiny" Harris, OMG
Girlz LLC, and Counterclaimants
Grand Hustle, LLC, Pretty Hustle,
LLC, and OMG Girlz LLC