John R. Keville
jkeville@sheppardmullin.com
Robert L. Green
rgreen@sheppardmullin.com
Chante B. Westmoreland
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
845 Texas Ave, 25th Floor
Houston, TX 77002
Telephone: (713) 431-7100

Valerie E. Alter (SBN: 239905)
*valter@sheppardmullin.com*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>Defendants. | Case No. 2:20-cv-11548-JVS-AGR<br>ASSIGNED TO: Hon James V. Selna<br><br>**OMG Girlz' Opposition to MGA's 2026 MIL 3** |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br>Counter-Defendants. | Complaint Filed: December 20, 2020<br>Trial Date:  June 23, 2026 |

## I.     INTRODUCTION

MGA frames its MIL No. 3 around the flawed premise that third-party perceptions are irrelevant to punitive damages because the only remaining issue is MGA's intent. That premise is incorrect because punitive damages in California are not a one-factor inquiry into a defendant's subjective mental state. Under CACI 3947, the jury must evaluate MGA's conduct across multiple dimensions, including the degree of reprehensibility of MGA's conduct; MGA's use of trickery and deceit; the actual and foreseeable harm caused to the OMG Girlz; and MGA's financial condition. Consumer testimony and social media evidence speak directly to each of those factors. MGA's attempt to reduce the punitive damages inquiry to intent alone, and then use that reduction to sweep all consumer-facing evidence from the courtroom, misreads the governing law and should be rejected.

The four consumer witnesses are ordinary doll purchasers from across the country who had no connection to the Harris family, beyond commenting on a social media page, and no expectation of ever appearing in a courtroom. Each testified that they purchased multiple OMG Dolls because they genuinely believed the dolls were sponsored by or affiliated with the OMG Girlz. The jury awarded damages tied to seven specific dolls. These consumers purchased far more than those seven, believing that dolls from the entire line were sponsored by or connected to the OMG Girlz. Their testimony is direct evidence of reprehensibility: these consumers knew the OMG Girlz and were nonetheless deceived into believing an affiliation existed because MGA appropriated the group's name, image, and likeness with sufficient fidelity to mislead real-world buyers. The effect MGA's actions had on others is relevant to the reprehensibility of its actions.

This is also true for the eight infringing/misappropriated dolls that led to no damages, as they show the full extent of MGA's "pattern or practice." CACI 3947. As discussed in the OMG Girlz opposition to MGA's 2026 MIL No. 4, similar conduct against others is relevant to punitive damages. That is even more true for

*the same* conduct against the OMG Girlz, regardless of whether there was disgorgement damages on those dolls. Indeed, the lack of disgorgement means the other dolls represent uncompensated harm that the jury is entitled to weigh in setting the amount of a punitive damages award that will deter future conduct.

The online comments and Instagram poll confirm MGA's knowledge and conscious disregard for the breadth of the harm. When Zonnique Pullins posted a side-by-side comparison of the OMG Girlz and MGA's dolls, 48,800 people viewed it and approximately 17,000 responded. Dkt. 1026 TT Day 2 AM at 113:6–115:17 and Dkt. 1052 TT Day 7 PM at 100:24–101:13. Still, Isaac Larian testified in his deposition and doubled down at trial that the OMG Girlz were "nowhere." Dkt. 1026 TT Day 2 AM at 105. The scale and spontaneity of that public response from individuals with no stake in this litigation directly contradicts that claim and is probative of both the reprehensibility of MGA's conduct and the scope of the harm it caused. This Court admitted the consumer testimony and online comments at the September 2024 trial as evidence of state of mind for confusion. That ruling was correct. At the punitive damages phase, this evidence remains directly relevant to MGA's awareness and disregard for the harm its actions continued to cause.

MGA's remaining objections go to the weight of this evidence, not its admissibility. The consumer witnesses were examined and cross-examined at the 2024 trial; MGA will have the same opportunity here. Credibility disputes belong to the jury, and this evidence is probative in that determination. Because the consumer testimony and online comments are probative of multiple factors the jury must weigh under CACI 3947, and because no legitimate Rule 403 concern overrides that probative value, MGA's Motion in Limine No. 3 should be denied.

## II.    Background

MGA filed this lawsuit only two weeks after receiving a cease and desist letter. During the discovery period, Zonnique Pullins and Tameka Harris used their respective Instagram accounts to side by side images of the OMG Dolls and images

of the OMG Girlz along with a poll. From these posts, four consumer witnesses were identified, deposed, and (most) were examined and cross examined live during some phase of this case, including during the trial that occurred in September 2024.

During that trial, the Court had time to reconsider its prior rulings on the admissibility of the social media comments. After additional briefing on the issue, the Court ruled that certain comments would be admissible as evidence of consumer confusion. And just as it had done in previous trials, the Court allowed the Instagram poll into evidence as evidence of notice and the effect on the parties. *See* Dkt. 1052 TT Day 7 PM at 9-13. While the Instagram poll has never been wholesale excluded, the admissibility of the online consumer comments was not decided without careful deliberation. Indeed, the Court heard extensive argument from both sides and issued a detailed oral ruling permitting the consumer statements into evidence. Specifically, the Court stated it was "prepared to admit those various consumer statements if offered as the state of mind for confusion." Dkt. 1025 TT Day 1 AM at 5-8. The Court grounded its ruling in *Lahoti v. VeriCheck, Inc.*, 636 F.3d 501 (9th Cir. 2011), which holds that consumer confusion statements are admissible under the state-of-mind exception to the hearsay rule, Fed. R. Evid. 803. *Id.* The Court further relied on *Ironhawk Technologies, Inc. v. Dropbox, Inc.*, 2 F.4th 1150 (9th Cir. 2021), explaining that objections about missing details in the comments go to "weight" rather than "admissibility," and that what weight to give the comments is "for the jury." *Id.* The Court also cited *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 436 (9th Cir. 2017) in support of crediting "examples of customers" who were actually confused as to source. *Id.*

## III.   ARGUMENT

### A.   Third-Party Witness Testimony Is Relevant To Punitive Damages

The consumer witness testimony is relevant to the OMG Girlz' affirmative case for punitive damages, and for rebutting MGA's anticipated arguments. The consumer testimony is relevant to several of the factors jurors weigh when

determining liability for punitive damages, including MGA's pattern and practice, the actual and foreseeable harm to the OMG Girlz, the harm to third-party consumers, and MGA's use of trickery and deceit. *See* CACI 3947.[1]

First, as discussed in the OMG Girlz' opposition to MGA's MIL No. 1, MGA's pattern or practice is relevant to punitive damages. The consumer testimony show that MGA's misappropriation was a repeated behavior across the line of dolls.

Second, MGA's misappropriation caused actual and foreseeable harm. The consumer testimony shows the harm to consumers who were deceived by MGA's actions. This is relevant to show that MGA's conduct was reprehensible. *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Courts have also recognized that "uncompensated or potential harm may in some circumstances be properly considered in assessing the constitutionality of a punitive damages award." *Simon v. San Paolo U.S. Holding Co., Inc.*, 35 Cal. 4th 1159, 1176-79 (2005). As discussed in the comments of CACI 3947, the jury can consider whether there is any foreseeable harm for which the claimant went uncompensated, even if such harm was "unintended but reasonably likely risk" or "was a goal of the tortfeasor's conduct." *Simon*, 35 Cal. 4th at 1177.

Here, four of MGA's customers testified that they purchased more than just the seven dolls for which the OMG Girlz received damages. Specifically, each testified that they purchased multiple OMG Dolls because they believed that the dolls were sponsored by or connected to the OMG Girlz:

- Moniece Campbell testified that she purchased multiple dolls for her nieces and neighbors: "Q: Do you know how many [OMG Dolls] you have purchased? A: Well, I would say more than twenty." Dkt. 935,

---

[1] CACI 3947 states in relevant part: "(a). . .In deciding how reprehensible a defendant's conduct was, you may consider, among other factors. . . 5. Whether the defendant acted with trickery or deceit. . .(b) Is there a reasonable relationship between the amount of punitive damages and [plaintiff's] harm or between the amount of punitive damages and potential harm to [plaintiff] that the defendant knew was likely to occur because of [its] conduct."

Dep. at 16:22-24

- Maxine Wagner testified that she purchased multiple dolls for her children because they were OMG Girlz: "If I would have known that they had nothing to do with the OMG Girlz . . .I would have not purchased the dolls"; "Q: Have you ever seen an [OMG Doll] that you did not think was an OMG girl? A: No." Dkt. 935, Dep. at 83:19-21; 141:4-6
- Dominique Alexander testified that she purchased a four pack of OMG Dolls because "It had 'OMG' on there, and then, like I said, it was like girls, the girl group, and then the girly rock star look." Dkt. 1029 TT Day 5 AM at 35-38.
- Windi Osborne testified that she purchased multiple dolls for her four nieces. Dkt. 959, Dep. at 155-178.

Besides purchasing the seven dolls for which the OMG Girlz were awarded MGA's profits, these consumers also purchased those dolls that the jury found to infringe based on MGA's declaratory judgment verdict questions. *See* Dkt. 935, Campbell Dep. at 168-169 (testifying that she purchased declaratory judgment doll, Virtuelle). CACI 3947's "potential harm" language is triggered precisely in circumstances like these, where "the harm caused by defendant's acts could have been great, but by chance only slight harm was inflicted." *See id.* (discussing *Simon* court's discussion of the hypothetical of a person firing a gun into a crowd who by chance damages only a ten-dollar pair of glasses). Unlike the plaintiff in *Simon*, who could not show that the defendant's promissory fraud foreseeably threatened to cause the $400,000 loss he claimed, the OMG Girlz can make exactly that showing: MGA's deliberate misappropriation of the group's identity across multiple doll lines actually harmed consumers as it caused consumers to purchase products in the mistaken belief that the OMG Girlz had endorsed or licensed them, generating uncompensated profit value that the jury's seven-doll damages award did not capture. The consumer testimony is therefore not collateral background evidence, it is the direct evidentiary record of the foreseeable uncompensated harm that *Simon* and CACI 3947 factor (b) expressly authorize the jury to weigh in setting the punitive damages amount,

and excluding it would deprive the jury of the information the governing instruction requires it to consider. These additional purchases are also circumstantial evidence of MGA's motivation for the misappropriation—it was financially lucrative to steal the OMG Girlz most iconic looks to create an entire line of dolls.

Third, the consumer witnesses testified about how MGA's unauthorized use of the elements that consumers associate with the OMG Girlz, e.g., "OMG" and "Girl" coupled with the brightly colored pink, purple, and blue hair and bold fashions, tricked the consumers into believing that they were supporting the OMG Girlz. *See, e.g.*, Dkt. 935 Campbell Dep. 26:5-13 ("Some of them had blue hair. . . some of them had a guitar. . . the OMG is really what sealed the deal"); Dkt. 959 Osborne Dep. at 167:11-19 ("the packaging, it had "OMG" on there and just looking at it, I'm like, Oh, they partnered with . . . the OMG Girlz to do a doll. . .and the hair and the outfit and I was like, oh, you know, I thought it was their doll."). A jury should be able to consider this as evidence of MGA's use of trickery and deceit.

Finally, the consumer testimony may also be used to address MGA's punitive damages arguments. As they have for the last several trials, MGA will likely continue to argue that the perceived differences between the OMG Dolls and the OMG Girlz demonstrate a lack of intent to copy. The consumer testimony rebuts this argument, by showing how the copying was blatant enough for normal consumers (who are not nit picking apart tiny differences in fabric and shades of pink) to believe the dolls were affiliated with a girl group by the same name. The consumer testimony also rebuts any argument by MGA that the public was unaware of the OMG Girlz. Each of these consumers tells a story of how the OMG Girlz impacted their lives and how/why they were so invested in providing the dolls to the young ones in their lives. Dkt. 935, Wagner Dep. at 95 (discussing how her youngest child would gather her OMG Dolls to watch "the T.I. show" with the family); Dkt. 1029 TT Day 5, AM at 35 (Alexander discussing teaching her

youngest daughter about the OMG Girlz alongside her oldest daughter "We actually went like on YouTube and pulled up some things with the OMG Girlz to show her like these are the OMG Girlz").

MGA attempts to cast doubt on the veracity of the consumer testimony, but each of MGA's complaints go to weight, not admissibility. Although MGA repeatedly tries to paint these individuals as star struck fans of the Harrises and the OMG Girlz, this is a topic for cross examination, not a justification to exclude the testimony altogether. Indeed, when probed on this during the 2024 trial, the consumers testified that they had no expectation that they would end up in a courtroom when they simply left a comment on a stranger's Instagram. Dkt. 1029 TT Day 5 AM at 28:18-20 ("Q When you commented and participated on Instagram, did you think that you would be sitting here today? A No, I did not.).

**B.    The Online Comments and Poll Remain Relevant and Admissible**

During its portion of the punitive damages closing, MGA stated "[y]ou further heard evidence that despite all that volume of sales, the company had never heard any complaints from customers or our retailers who had given us feedback of any kind of confusion or similarity confusion or anything of that sort." Dkt. 1037 TT Day 13 PM at 33:11-16. The online comments and poll are relevant to rebut that, because during the discovery phase of the case MGA saw tens-of-thousands of consumer comments produced during discovery, and is thus relevant to MGA's notice of consumer complaints and confusion. Two facts are relevant to that. First, MGA made no changes, and no attempt to avoid further confusion. *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 334 (2019) ("A defendant's entire course of conduct may be considered for purposes of assessing punitive damage awards, including postinjury conduct.") (citing *Hilliard v. A.H. Robins Co.*, 148 Cal.App.3d 374, 399–401 (1983)). Second, When Zonnique Pullins posted a side-by-side comparison of the OMG Girlz and MGA's dolls, 48,800 people viewed it and approximately 17,000 responded. Dkt. 1026, TT Day 2 AM at 113:6–115:17;

Dkt. 1052 TT Day 7 PM at 100:24–101:13. Despite this, Isaac Larian testified in his deposition and doubled down at trial that the OMG Girlz were "nowhere," and made many disparaging remarks about their so-called lack of success and fame. *See, e.g.*, Dkt. 1026 TT Day 2 AM at 105. The scale and spontaneity of that public response from individuals with no stake in this litigation directly contradicts that claim and is probative of both the reprehensibility of MGA's conduct and the scope of the harm it caused.

In addition, despite claiming it heard no complaints or feedback of confusion, there was evidence in the prior trial that MGA deleted consumer complaints prior to trial. *See* Trial Ex. 902 (below). Despite Mr. Larian claiming no knowledge of this,



the post was from the MGA Facebook account, and can be considered by the punitive damages jury not for the truth of the matter asserted, that this one woman's reviews kept getting taken down or that she invested thousands in the dolls, but for (1) notice that MGA does not retain all complaints and (2) impeachment of MGA's arguments it has never received complaints.

MGA spends a substantial portion of its brief explaining why the Court erred in admitting the comments and poll during the liability phase.[2] But the Court did not err in admitting this evidence. MGA has two principal objections to the online consumer comments: that they are unreliable because they come from "partial sources" and were "not made contemporaneously with purchase." Motion at 6-7.

---

[2] The cases MGA cites are no help here. *Kitsch* and *Idaho Golf Partners* both arose in the context of trademark claims where the proffered evidence was offered to prove actual consumer confusion. The Court in *Idaho Golf Partners* handled the confused consumer testimony the same way that they were handled by this court in 2024: by "determin[ing] the admissibility of any statements asserting confusion on a case-by-case basis during trial."

Neither of these arguments are new. MGA raised both objections at the liability phase, and this Court considered and rejected them. The same result is warranted here.

**1.    The Court Has Already Held That the "Partial Sources" Objection Goes to Weight, Not Admissibility.**

At the September 4, 2024 hearing, this Court ruled that consumer statements are admissible if "offered as the state of mind for confusion," relying principally on *Lahoti v. VeriCheck, Inc.* and consistent Ninth Circuit authority in *Ironhawk* and *Stone Creek*.[3] MGA argued at that hearing that the comments were unreliable because they came from "biased sources," because "it is unclear if some of those people even bought those dolls," and because the comments were solicited from Ms. Pullins' followers rather than gathered through independent means. Dkt. 1030 TT Day 6 AM at 5–21. The Court rejected those objections as grounds for exclusion, adopting the *Ironhawk* framework that shortcomings in the sources of confusion evidence including whether a commenter purchased the product, whether the comment was invited, and whether the commenter's identity can be verified are cross examination material, going to the weight of evidence, not admissibility. *Id.*

As the OMG Girlz established in prior briefing, the Ninth Circuit in *JL Beverage* "did not ultimately rule on the admissibility" of the consumer statements at issue. Dkt. 934. In fact, the district court never made an admissibility ruling, and the Ninth Circuit was evaluating the court's statements in the context of weighing the *Sleekcraft* likelihood-of-confusion factors on summary judgment, a distinct inquiry from trial admissibility. Dkt. 934. In other words, *JL Beverage* addressed the strength and persuasive weight of the confusion evidence, not whether consumer state-of-mind comments may be admitted at trial. This Court recognized that after further consideration at the liability phase of trial in September 2024, and

---

[3]*Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1165-66 (9th Cir. 2021); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 433 (9th Cir. 2017)

nothing about the posture of the punitive damages retrial changes that analysis.

Nor is there merit to any argument that admissibility should be limited to commenters who affirmatively state they purchased one of the seven dolls. When MGA raised precisely that gatekeeping argument during the September 4, 2024 hearing, this Court rejected it, stating: "Confusion is confusion," and declined to exclude comments on the ground that purchase by the commenter was not expressly established. Dkt. 1026 TT Day 2 AM at 29:3.

### 2. The Court Has Already Held That Non-Contemporaneous State-of-Mind Evidence Is Not Categorically Excluded.

MGA similarly argued at the liability-phase hearing that the Instagram comments were inadmissible because they were made long after any putative purchase, calling them "years later" reactions to Ms. Pullins' social media post rather than at the point of sale. Dkt. 1030 TT Day 6 AM at 18. This Court correctly declined to read *JL Beverage* as establishing a categorical rule that non-contemporaneous confusion evidence is inadmissible, stating that it did not read that decision "to exclude other examples of state of mind indications of confusion that are not contemporaneous," and acknowledging that while the timing differential was a distinction in the case, it did not bar admission. *Id.*

The Ninth Circuit's approach is consistent. *Stone Creek* reversed the exclusion of consumer confusion evidence that arose after customers had already purchased the products at issue, treating timing as a matter of weight rather than a categorical admissibility barrier. 875 F.3d at 433. The logic is straightforward: a consumer who purchased MGA's dolls believing them to be affiliated with the OMG Girlz, and who later articulates that belief on social media, has not lost her state of mind simply because time has passed. The comment evidences a persisting and genuine belief in affiliation, precisely the confusion that this case is about.

Contemporaneous confusion is not required for a misappropriation claim, and no authority limits the admissibility of consumer state-of-mind evidence to

comments made at the moment of purchase. MGA's contemporaneousness argument, which this Court has already evaluated and declined to adopt, fares no better at the punitive damages phase.

### 3. MGA's Repackaged "Survey Objection" Does Not Help It.

MGA seemingly seeks to rehash the issue of whether an "Instagram poll" constitutes a survey—but all parties agree that it is not a survey. Dkt. 1029 TT Day 5 AM at 8:16-17 ("Your Honor, we are not offering this as a survey."). MGA argued at the liability phase that Ms. Pullins' Instagram post amounted to an "informal survey" that did not meet the requirements for survey evidence and therefore should be excluded. This Court, applying the correct standard, admitted the poll (and the comments) under the state of mind exception and as evidence of notice. The same approach may be taken here. This evidence can be evaluated as it is offered and the Court of course retains the authority to determine whether the comment is admissible for the purpose offered in the context of the testimony. This same approach is equally workable in the punitive phase.

### 4. MGA's Objections Remain Appropriate for Cross-Examination, Not Exclusion.

MGA's remaining concerns, which include that individual commenters may not have purchased the dolls, that their statements were prompted by a social media post, that they are followers of Ms. Pullins, and that their identities cannot be confirmed as real persons, is a proper subject of cross-examination and of argument to the jury. MGA will have the same opportunity to cross-examine these witnesses at the punitive damages phase that it had at the liability trial. Indeed, during the last trial, counsel questioned Ms. Harris about purported "bot" comments, and on redirect, she explained "[b]ots, usually they will have, like, a weird picture, and . . .they type, like, weird stuff. You kind of can tell when someone is a bot because it's, like -- it will be, like, ads [or] they'll say little stuff that's, like, just random." Day 7 PM at 97:4-10. The punitive jury is fully capable of weighing similar

testimony in light of whatever limitations MGA identifies on cross. It is not a basis for exclusion.

The new jury must be afforded some window into the conduct that warranted liability, including the fact that normal everyday doll purchasers were confused into believing the OMG Dolls were sponsored or produced by the OMG Girlz due to the use of their name, image, and likeness. Because courts within the Ninth Circuit have consistently recognized that punitive damages must be tethered to the underlying liability, to shield these comments from the jury deciding punitive damages could similarly constitute reversible error. *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 398–402 (Ct. App. 1983) (holding trial court erred in rejecting evidence of other injuries and deaths, regulatory pressure, market withdrawal, inadequate testing, and defendant's subsequent marketing conduct because it was highly probative of "conscious disregard concept of malice" and finding that on the issue of punitive damages, a "plaintiff may present any evidence which would tend to prove the essential factors of the conscious disregard concept of malice"). *Cf. White v. Ford Motor Co.*, 500 F.3d 963, 974–75 (9th Cir. 2007) (finding the district court's "decision to familiarize the second jury with facts previously relied on" was not an abuse of discretion in a punitive damages trial).

And while the comments were predominantly used to show confusion for purposes of trade dress infringement, they similarly rebutted Mr. Larian's contention that the OMG Girlz are "nowhere" by demonstrating the volume of individuals that were aware of the group. Dkt. 1026 TT Day 2 AM at 105. Like the consumer testimony, the comments and poll are further evidence of MGA's reprehensibility and conscious disregard for the OMG Girlz' rights. These comments and the Instagram poll show the sheer volume of people that MGA's misappropriation impacted.

### C.     Rule 403 Does Not Warrant Exclusion

Each of the reasons MGA cites to support its case to exclude the consumers

and comments under Rule 403 are cross examination topics—not actual reasons for exclusion. Rule 403 should *only* be used to exclude evidence where the probative value is substantially outweighed by the danger of unfair prejudice, and thus should be used sparingly. Courts regularly expand (not contract) the body of evidence to be considered by a jury during the punitive phase. *See Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1335 (9th Cir. 1985), opinion corrected, 773 F.2d 1049 (9th Cir. 1985) ("there was additional evidence which was not admissible at the general liability phase which would have been admissible to show wanton disregard" in the punitive damages context).

First, MGA has had multiple opportunities to cross examine these witnesses and expose any potential "bias." This issue goes to weight not admissibility and the jury can determine whether and how much to credit these third party witnesses' testimony.

Second, although confusion is not a *required* element of a misappropriation claim, evidence of such confusion may still be relevant to demonstrating harm or injury. *Cf. Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (2015) (Lanham Act claims "require an additional element—that the use be likely to confuse as to the sponsorship or approval of a defendant's goods," while state publicity right claims only require that "the defendant uses the plaintiff's identity for commercial advantage, without permission"). The fact that there was consumer confusion in the present case further demonstrates reprehensibility. The OMG Girlz were unable to locate any case law supporting MGA's argument that consumer confusion is irrelevant to a right of publicity claim and therefore inadmissible. And given that this is the first time that MGA has raised any issue regarding the purposes for which the jury would be considering confusion evidence—without any case support—there is no basis to exclude consumer confusion on these grounds.

Third, the OMG Girlz do not intend to offer the comments or the poll as "survey evidence."

Finally, the OMG Girlz recognize each side has eight hours and will put on their case and cross examinations within that. Any waste of time or cumulativeness is to only to the OMG Girlz' detriment, so the OMG Girlz will not be wasting time. MGA should not be able to use the time restriction to preemptively prevent the OMG Girlz from putting on their case.

## IV.   CONCLUSION

For the reasons above, the OMG Girlz should be allowed to present this evidence at the new trial on punitive damages.

Dated: May 14, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/John R. Keville
John R. Keville
Attorneys for Defendants and Counterclaimants Clifford "T.I." Harris, Tameka "Tiny" Harris, OMG Girlz LLC, and Counterclaimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC

Case No. 2:20-cv-11548-JVS-AGR

OPPOSITION TO MGA'S 2026 MIL 3

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Defendant/Counter-Claimants, certifies that this brief contains <u>4541</u> words, which complies with the word limit of L.R. 11-6.1.

By: /s/John R. Keville
John R. Keville
Attorneys for Defendants and
Counterclaimants Clifford "T.I."
Harris, Tameka "Tiny" Harris, OMG
Girlz LLC, and Counterclaimants
Grand Hustle, LLC, Pretty Hustle,
LLC, and OMG Girlz LLC