Mark A. Finkelstein (SBN 173851)
mfinkelstein@uzllp.com
Ellen S. Kim (SBN 329348)
ekim@uzllp.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

Chad S. Hummel (SBN 139055)
chummel@McKoolSmith.com
Makenna A. Miller (SBN 329244)
mmiller@McKoolSmith.com
MCKOOL SMITH PC
One California Plaza
300 South Grand Avenue, Ste. 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200

Gary Cruciani (*pro hac vice*)
gcruciani@McKoolSmith.com
Tyler Freeman (*pro hac vice*)
tfreeman@McKoolSmith.com
MCKOOL SMITH PC
300 Crescent Court, Ste. 1500
Dallas, TX 75201
Telephone: (214) 978-4009

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT INC.,<br>Plaintiff,<br><br>v.<br><br>CLIFFORD "T.I." HARRIS, et al.,<br>Defendants.<br><br>GRAND HUSTLE, LLC, et al.,<br>Counter-Claimants,<br><br>v.<br><br>MGA ENTERTAINMENT INC., et al.<br>Counter-Defendants. | Case No. 2:20-cv-11548-JVS-CTS<br>Assigned to:  Hon. James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50(a)); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed: December 22, 2020<br>Trial Date:          June 23, 2026 |

-1-

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff and Counter-Defendant MGA Entertainment Inc. and Counter-Defendant Isaac Larian ("Larian" and, collectively, "MGA") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 50(a) for Judgment as a Matter of Law on the issue of punitive damages for the common law misappropriation of name, identity, or likeness ("NIL"), alleged in the Third Amended Counter-Claims ("TACC") brought by Counter-Claimants Grand Hustle, LLC, Pretty Hustle, LLC, and OMG Girlz LLC (collectively, "Counterclaimants") in this action (Dkt. 63) or, in the alternative, for partial Judgment as a Matter of Law, as follows:

1.      The evidence does not support a finding by clear and convincing evidence that any "director, officer, or managing agent" of MGA acted with, authorized, or knew and adopted/approved the requisite malice, oppression, or fraud to support punitive damages;

2.      The evidence does not support a finding by clear and convincing evidence that Larian, individually, acted with malice, oppression, or fraud;

3.      Any punitive award above a nominal amount would be constitutionally excessive, given the lack of reprehensibility and lack of harm to the OMG Girlz;

4.      Punitive damages here are equitable and should not go to the jury;

5.      Punitive damages are unavailable as a matter of law for a common law NIL misappropriation claim; and

6.      Punitive damages are unavailable as a matter of law because Counterclaimants sustained no actual damages, as required under California law.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, all of the trial evidence entered to date, the trial record,

and upon any such additional evidence entered at trial at or before the hearing on this Motion, as well as any argument regarding this Motion.

Dated:  June 29, 2026

UMBERG ZIPSER LLP

By  /s/ Mark A. Finkelstein
MARK A. FINKELSTEIN

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

Case No. 2:20-cv-11548-JVS-CTS
MGA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 8

II.   LEGAL STANDARD .......................................................................................... 9

III.  ARGUMENT ...................................................................................................... 10

    A.   The Evidence Was Insufficient To Show That Any Director, Officer, Or Managing Agent Of MGA Acted With, Authorized, Or Otherwise Knew and Adopted/Approved Of The Requisite Malice, Oppression, Or Fraud......................................................... 10

        1.    No Intentional or "Despicable" Conduct............................. 11

        2.    No Authorization, Adoption, or Approval .......................... 14

        3.    No Harm to the OMG Girlz................................................ 14

    B.   The Evidence Was Insufficient To Show That Mr. Larian, Individually, Acted With The Requisite Malice, Oppression, Or Fraud To Support Punitive Damages. ........................................................................ 15

    C.   Any Punitive Damages Beyond A Nominal Amount Would Be Constitutionally Excessive. ........................... 16

        1.    No Reprehensibility.............................................................. 17

        2.    Disparity Between Harm And Requested Punitive Award ....................................................................... 18

        3.    Difference Between Requested Punitive Award And Civil Penalty Under Cal. Civ. Code § 3344(a) ......................................................... 18

    D.   Punitive Damages Are Equitable In This Case.............................. 19

    E.   Punitive Damages Are Unavailable As A Matter Of Law For A Common Law Misappropriation of NIL Claim. ............................................................................ 21

    F.   Punitive Damages Are Unavailable Because Plaintiffs Sustained No Actual Damages.................................... 23

IV.   CONCLUSION.................................................................................................... 25

Case No. 2:20-cv-11548-JVS-CTS

MGA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bardis v. Oates*,
119 Cal. App. 4th 1 (2004) ............................................................................ 24

*BMW of N. Am. v. Gore*,
517 U.S. 559 (1996) ............................................................... 8, 16, 17, 18

*Brophy v. Almanzar*,
2019 WL 10837404
(C.D. Cal. Aug. 22, 2019) ............................................................................ 23

*California v. Altus Fin. S.A.* (*Altus Fin.*),
540 F.3d 992 (9th Cir. 2008) ................................................................. 23, 24

*Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.*,
48 Cal. 2d 71 (1957) .................................................................................... 24

*Curtis v. Loether*,
415 U.S. 189 (1974) .................................................................................... 20

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ................................................................. 21, 22

*Epic Systems Corp. v. Tata Consultancy Services, Ltd.*,
980 F.3d 1117 (7th Cir. 2020) ...................................................................... 16

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) ...................................................................... 20

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
28 F.4th 35 (9th Cir. 2022) ........................................................................... 20

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021) ........................................................................ 16

*Kizer v. County. of San Mateo*,
53 Cal. 3d 139 (1991) ................................................................................... 24

*In re Late Fee & Over-Limit Fee Litig.*,
741 F.3d 1022 (9th Cir. 2014) ...................................................................... 16

-5-

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ...................................................................................... 20

*Mattel, Inc. v. MGA Ent., Inc.*,
   801 F. Supp. 2d 950 (C.D. Cal. 2011)......................................................... 24

*Miller v. Collectors Universe, Inc.*,
   159 Cal. App. 4th 988 (2008)...................................................................... 22

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998)................................................................. 21, 23

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014) ......................................................................9

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) ...................................................................................... 16

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of
   Life Activists*,
   422 F.3d 949 (9th Cir. 2005)........................................................................ 16

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993).................................................................................... 24

*Proofpoint, Inc. v. Vade USA, Inc.*,
   2024 WL 4003096 (9th Cir. Aug. 30, 2024).......................................... 19, 20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ........................................................................................9

*Riley v. Volkswagen Grp. of Am., Inc.*,
   51 F.4th 896 (9th Cir. 2022)........................................................................ 17

*Shakey's Inc. v. Covalt*,
   704 F.2d 426 (9th Cir. 1983)..........................................................................9

*Sherman-Bey v. Marshall*,
   No. CV 09-06494 JGB (RZ), 2014 WL 3557202
   (C.D. Cal. Mar. 14, 2014)............................................................................ 23

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ................................................................................ 15, 18

*Summers v. Delta Air Lines, Inc.*,
      508 F.3d 923 (9th Cir. 2007) ........................................................................ 10

**Statutes**

Cal. Civ Code § 3344 ................................................................................... *passim*

**Other Authorities**

CACI No. 3945 ..................................................................................... 10, 11

Fed. R. Civ. P. 39 ................................................................................. 19, 20, 21

Fed. R. Civ. P. 50(a) ................................................................................. 9, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counterclaimants were given a second chance to prove punitive damages – and they came back with nothing new.  In granting MGA's motion for a new trial on punitive damages, the Court found that evidence of willfulness, intent, or conscious disregard with respect to MGA's conduct fell short of clear and convincing.  *See generally* Dkt. 1133 at 7-13.  The Court suggested that Counterclaimants would need to "supplement the record ***with additional evidence proving willfulness that was not viewed at the September 2024 trial***," in order to establish punitive damages.  Dkt. 1144 at 6 (emphasis added).  They failed to do so.  Counterclaimants failed to establish, by clear and convincing evidence, that MGA acted with the requisite malice, oppression, or fraud in misappropriating the OMG Girlz' name, identity, or likeness ("NIL") as to the seven L.O.L. Surprise! O.M.G. dolls for which disgorgement was awarded.

Punitive damages are unavailable and unwarranted for several reasons, as a matter of law.  First, there is no evidence – let alone clear and convincing evidence – showing that any director, officer, or managing agent of MGA acted with the requisite malice, oppression, or fraud.  Second, for the same reason, there is insufficient evidence to justify punitive damages against Mr. Larian, individually.  Third, any punitive award exceeding a nominal amount would be constitutionally excessive under the due process framework established in *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996).  Fourth, punitive damages tethered to equitable disgorgement, as here, are also equitable in nature and should be a question for the Court and not the jury (to be clear, MGA does ***not*** consent to a jury trial on punitive damages).  Fifth, punitive damages are unavailable for a common law misappropriation of NIL claim, unlike for the statutory misappropriation NIL claim (California Civil Code § 3344).  Finally, punitive

damages are unavailable because Counterclaimants sustained no actual damages, a prerequisite under California law.

MGA therefore respectfully requests that the Court grant this Motion and find that punitive damages are either unavailable or cannot be awarded as a matter of law.  Alternatively, to the extent the Court believes the evidence supports a punitive award, the award should be nominal.

## II.    LEGAL STANDARD

Under Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the Court may "resolve that issue against the party" and "grant a motion for judgment as a matter of law . . . ." Fed. R. 50(a)(1).  A motion under Rule 50(a) may be made "at any time before the case is submitted to the jury." Fed. R. 50(a)(2).

A judgment as a matter of law ("JMOL") is "proper if the evidence permits only one reasonable conclusion as to the verdict."  *Shakey's Inc. v. Covalt*, 704 F.2d 426, 430 (9th Cir. 1983).  The evidence must be viewed as a whole and all inferences must be drawn "in favor of the non-moving party."  *Id*. While this standard mirrors "the standard for summary judgment," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), the fact that the Court considered the same or similar issues at summary judgment is not dispositive.  *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("[T]he denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing.").  Indeed, at summary judgment "trial courts ask only whether there could be a material issue of fact . . . But when considering whether to grant judgment as a matter of law, they look only at the evidence ***actually introduced at trial***." *Id.* (emphasis added).

-9-

The Court may grant JMOL as to the entire case, or as to a portion of the case.  *See* Fed. R. Civ. P. 50(a); *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007).

## III.   ARGUMENT

### A.   The Evidence Was Insufficient To Show That Any Director, Officer, Or Managing Agent Of MGA Acted With, Authorized, Or Otherwise Knew and Adopted/Approved Of The Requisite Malice, Oppression, Or Fraud.

There is no evidence – let alone clear and convincing evidence – to support a finding that Mr. Larian acted with the requisite malice, oppression, or fraud, or otherwise authorized or knew *and* adopted/approved of such conduct with respect to the OMG Girlz.  To be clear, the *only* officer, director, or "managing agent" of MGA that Counterclaimants have identified to support a punitive award is Mr. Larian, who is the founder, CEO, and majority owner of MGA.  *See* Trial Transcript ("TT") 6/24/2026 AM at 121:23-122:1; TT 6/24/2025 PM at 30:25-31:2; *see also* TT 6/23/2026 PM at 84:9-14 (stating that "[t]he whole company reports to [him]," and that the "buck stops with [him] for everything at MGA").  Counterclaimants failed to show that *any other person at MGA* "exercise[d] substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy."[1]  *See* Court's Proposed Jury Instruction No. 16; CACI No. 3945.  *See also, e.g.*, TT 9/24/2026 AM at 122:2-7 (confirming that MGA's designer witnesses have "no power to make corporate policy"); TT 6/25/2026 PM at 13:7-8 (similar).

---

[1] Blanche Consorti, lead designer of the O.M.G. line, testified that she lacked corporate decision-making authority and could not (and has not) set any company-wide policy.  *See* TT 6/25/2026 PM at 12:14-13:22.  Mr. Larian confirmed that neither Ms. Consorti nor another designer, Lora Stephens, had "power to make corporate policy" at MGA.  *See* TT 6/24/2026 AM at 122:2-7.

-10-

### ***1.    No Intentional or "Despicable" Conduct***

Conduct constituting "malice," "oppression," or "fraud" requires, at minimum, either intentional or "despicable" conduct.  *See* Court's Proposed Jury Instruction No. 16; CACI No. 3945 (defining each term).  However, the trial record did not support a sufficient basis to find – let alone by clear and convincing evidence – that Mr. Larian or any other MGA employee ever acted intentionally or despicably in connection with the misappropriation found by the prior jury.

Mr. Larian testified that he first learned of the OMG Girlz when he received Counterclaimants' cease-and-desist letter in December 2020.  TT 6/24/2026 AM at 96:12-24.  Mr. Larian never discussed the OMG Girlz with anyone at MGA before he received that letter, and he did not direct or authorize anyone to copy the OMG Girlz' NIL afterward.  TT 6/24/2026 AM at 95:7-10, 96:25-97:5; *see also* TT 6/25/2026 PM at 11:25-12:11, 21:23-22:4.  To the contrary, Mr. Larian testified that there are many sayings "all over [MGA's] offices," including the mantra: "Be original; don't copy."  TT 6/24/2026 PM at 9:16-22.  He had ***no intent*** to exploit or harm the OMG Girlz, and ***did not act*** with personal malice toward Counterclaimants at any point.  *See id.* at 22:5-11.

At most, the trial record might show that some of MGA employees had knowledge about the OMG Girlz' existence prior to the December 2020 cease-and-desist letter, and that there were some similarities between elements of the dolls and the OMG Girlz' appearance in specific instances, including those curated by Counterclaimants themselves.  *See, e.g.*, TT 6/24/2026 PM at 94:8-14 (Counterclaimants staged the images of certain dolls to make them look more like the OMG Girlz).[2]  But such evidence was insufficient to establish willfulness in the prior trial, see Dkt. 1133, and Counterclaimants have

---

[2] If the similarities required staging to be visible, they were not the product of intentional misappropriation.

-11-

presented **no additional evidence** that the seven dolls at issue were intentionally based on the OMG Girlz, or that they were designed with willful and knowing disregard of the OMG Girlz' rights – let alone that Mr. Larian did, authorized, or approved any such action.

As in the prior trial, Blanche Consorti testified that she did not know of OMG Girlz' existence until New Year's Eve 2019, more than a year after design work commenced.[3] *Compare* TT 6/25/2026 AM at 58:7-9 *with* TT 9/10/2024 PM at 47:5-11. MGA employees had mistakenly believed that the dolls were referenced in the lyrics of a song, and Ms. Consorti received an email from another employee, expressing disappointment that the reference was likely to the "OMG Girlz" instead. TT 6/25/2026 PM at 10:3-21; Ex. 407. While Ms. Consorti learned the name of the band, she did not see any of the OMG Girlz at the time, and she has consistently testified that she never clicked on the YouTube link to an OMG Girlz music video contained in that same email.[4] *See, e.g.*, TT 6/24/2026 PM at 65:1-15; TT 6/25/2026 PM at 9:15-10:22; *see also* TT 9/10/24 PM 47:5-49:25.

Further, both Mr. Larian and Ms. Consorti testified unequivocally that the OMG Girlz played no role whatsoever in the design process. *See, e.g.*, TT 6/24/2026 AM at 96:2-11 (no reference to the OMG Girlz with respect to the dolls at issue); *id.* at 121:16-17 (no reference of OMG Girlz in "hundreds" of

---

[3] Nor was there evidence that any other MGA designer copied or were inspired by the OMG Girlz in designing the seven dolls at issue. *See, e.g.*, TT 6/24/2026 PM at 60:14-19 (no knowledge whether Shir-Ami Thompson was a fan of the Harrises or watched their T.V. show); TT 6/25/2026 PM at 7:5-7 (no mention of OMG Girlz in "hundreds" of design meetings).

[4] The Court previously found that this email exchange and testimony "tend[ed] to support a finding that some employees and at least one designer, Consorti, were aware of the OMG Girlz existence in December 2019," **but** "this evidence **largely fails to show that there was a deliberate intent to copy** their trade dress upon learning of their identity." Dkt. 1090 at 7 (emphasis added).

-12-

meetings); TT 6/25/2026 AM at 59:4-18 (no inspiration from the OMG Girlz); TT 6/25/2026 PM at 14:18-21 (no appearance of OMG Girlz in any design documents). To the contrary, the trial record establishes that MGA's painstaking design and development process for each of the O.M.G. dolls began with the L.O.L. Surprise! Tots, none of which copied or were inspired by the OMG Girlz. *See, e.g.*, TT 6/25/2026 AM at 85:25-86:5; *id.* at 114:12-115:7; TT 6/25/2026 PM at 116:6-9. Ms. Consorti explained in depth how the O.M.G. dolls capitalized on the unboxing concept already popularized by the Tots. *See* TT 6/25/2026 PM at 51:23-56:19 (unboxing "Chillax"). She testified that the dolls were also inspired by pop culture, fashion, and MGA's other original IP, including the iconic Bratz dolls. *See, e.g.*, TT 6/25/2026 AM at 73:5-13; TT 6/25/2026 PM at 18:24-19:10. These inspirations were reflected in the designers' mood boards, none of which feature any of the OMG Girlz. *See* TT 6/25/2026 AM at 19:13-17; *id.* at 41:12-20; TT 6/25/2026 PM at 14:18-21.

Critically, Counterclaimants' own witnesses could not identify any evidence of intentional misconduct by anyone at MGA.[5] Zonnique Pullins, one of the OMG Girlz bandmembers, admitted that she could not speak to the intent of Mr. Larian, Ms. Consorti, or any of the other designers; nor could Ms. Pullins identify any design decisions that MGA made based on the OMG Girlz or any instance of MGA having seen the OMG Girlz' specific looks. *See, e.g.*, TT 6/26/2026 PM at 41:5-12, 45:22-46:9, 62:18-24, 67:18-20. Similarly, Ms. Pullins testified that she was unsure and did not know that there was any document that proved MGA intentionally and maliciously copied the OMG

---

[5] Indeed, Counterclaimants' witnesses were unable to articulate how MGA could have intentionally misappropriated the OMG Girlz' NIL without knowing precisely what constituted their likeness. *See* Ex. 1099; TT 9/26/2026 PM at 108:24-109:4 (Ms. Pullins agreeing that there were "literally . . . thousands of different looks").

Girlz. *Id.* at 103:24-104:2; *see id.* at 107:5-20 (acknowledging that she did not know the intent of Mr. Larian or any MGA designer).

Thus, even viewing the above evidence in the light most favorable to Counterclaimants, the infringement found by the prior jury does not rise to the level of intentional or despicable conduct.

### 2. *No Authorization, Adoption, or Approval*

Counterclaimants failed to present sufficient evidence that Mr. Larian authorized, adopted, and/or approved any conduct constituting malice, oppression, or fraud. As explained above, trial testimony establishes that Mr. Larian **did not** direct or authorize anyone to copy the OMG Girlz. *See* TT 6/24/2026 AM at 97:3-5; TT 6/25/2026 PM at 12:9-11, 22:2-4.

During trial, Counterclaimants' counsel attempted to elicit testimony from Mr. Larian that he knew of and adopted or approved such conduct after the fact. *See* TT 6/24/2026 AM at 93:2-18 (questioning whether Mr. Larian "approve[d]" of the decisions made by the designers in designing or selling the dolls that were found to misappropriate). Mr. Larian responded only that he stood behind his designers because he believes they are honest and the best in the industry. TT 6/24/2026 PM at 41:12-22.

### 3. *No Harm to the OMG Girlz*

Additionally, the trial record fails to show that the misappropriation found by the prior jury somehow subjected the OMG Girlz to "cruel and unjust hardship." Since disbanding in 2015, the OMG Girlz are back to performing together and taking on new projects at a larger scale than ever before, including by going on tour and working on an album (which the OMG Girlz have yet to release). *See* TT 6/26/2026 PM at 59:9-60:6, 85:7-11, 86:4-11, 87:4-9. Unable to identify any harm, Counterclaimants' witnesses instead point to conduct related to the parties' litigation. *See, e.g.*, TT 6/26/2026 PM at 92:25-93:19 (Breaunna Womack described feeling "dismissed and demeaned" because

-14-

Counterclaimants' claims were challenged).  It is improper to seek punitive damages based on such conduct unrelated to the underlying misappropriation.[6] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) (evidence of tortious conduct justifying punitive damages "***must have a nexus to the specific harm suffered by the plaintiff***") (emphasis added).

Accordingly, the evidence is insufficient to justify punitive damages against MGA.

**B.      The Evidence Was Insufficient To Show That Mr. Larian, Individually, Acted With The Requisite Malice, Oppression, Or Fraud To Support Punitive Damages.**

Counterclaimants seek $90-125 million in punitive damages personally against Mr. Larian.  The evidence does not support it.  The case against Mr. Larian individually is, if anything, weaker than the case against MGA as an entity.  Mr. Larian did not learn of the OMG Girlz until December 2020, when he received Counterclaimants' cease-and-desist letter – after the dolls at issue were already designed, manufactured, and sold.  He never discussed the OMG Girlz with anyone at MGA before that letter, and he did not direct or authorize anyone to copy the OMG Girlz' NIL before or after receiving it.  *See* Section III.A *supra*.  Further, trial testimony established that Mr. Larian was not involved in the intricacies of designing the dolls themselves and did not attend every one of the "hundreds of meetings" held by the design group.  *See* TT 6/24/2026 AM at 120:25-121:2; TT 6/25/2026 PM at 11:18-24.

Further, Mr. Larian made clear he ***did not*** harbor any malice or ill will toward the OMG Girlz, then or now.  *See* TT 6/24/2026 AM at 97:6-9, 138:11-

---

[6] The Court excluded evidence of emotional harm or distress, which cannot serve as the basis for any punitive damages in this case. *See* TT 6/23/2026 AM at 58:3-16; TT 6/26/2026 PM at 38:2-39:6 (sustaining multiple objections to questions regarding the OMG Girlz's feelings); *see also* Dkts. 502, 521.

13. And Counterclaimants admitted that they did not have any direct evidence of his intent to the contrary. *See* TT 6/26/2026 PM at 41:5-12, 45:22-46:9, 62:18-24, 67:18-20, 107:5-20.

### C.     Any Punitive Damages Beyond A Nominal Amount Would Be Constitutionally Excessive.

To the extent the Court continues to believe that there was some modicum of harm to Counterclaimants, and to the extent the Court believes that clear and convincing evidence supports a punitive award, the award would need to be nominal. *See Epic Systems Corp. v. Tata Consultancy Services, Ltd.*, 980 F.3d 1117, 1143 (7th Cir. 2020) (where the only amount of "harm" was based on a benefit to the defendant, satisfying due process for a punitive award "pose[s] a challenging task").

"[P]unitive damages are not designed to be a form of supercompensation for plaintiffs." *In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014); *see Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (forbidding "grossly excessive" punitive awards). Courts consider three guideposts set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. at 575, for assessing whether an award comports with due process:

> (1)  the degree of reprehensibility of the defendant's misconduct;
> (2)  the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
> (3)  the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005).

Reprehensibility is the "weightiest factor." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972 (9th Cir. 2021); *see Gore*, 517 U.S. at 580 (conduct was not

-16-

"egregiously improper" and therefore not sufficiently reprehensible to warrant exemplary damages). To assess reprehensibility, courts consider whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 900 (9th Cir. 2022) (citing State Farm, 538 U.S. at 419).

Here, all three *Gore* factors favor MGA:

### 1.   No Reprehensibility

None of the "reprehensibility" considerations support a punitive award.

First, as discussed above, the OMG Girlz did not suffer any physical or economic harm, and any alleged "harm" was not the result of intentional malice, trickery, or deceit.

Second, there was no evidence presented that MGA's actions demonstrated indifference to or reckless disregard for the health or safety of others, as Counterclaimants do not appear to dispute.

Third, Counterclaimants, and the OMG Girlz, were not financially weak or vulnerable. TT 6/26/2026 AM at 132:12-24[7]; TT 6/26/2026 PM at 43:5-7.

Finally, Counterclaimants fail to present sufficient evidence that the misappropriation as to the seven dolls at issue involved repeated pattern of similar actions. Counterclaimants attempted to muddy the waters by discussing MGA's unrelated litigation (involving completely different products and intellectual property regimes) and perceived, alleged similarities between other

---

[7] The Court would not allow Ms. Harris to testify as to whether she was "financially weak," but she certainly is not given her wealth. TT 6/26/2026 AM at 132:25-133:5.

celebrities and certain L.O.L. Surprise! Tots, none of which are accused here. *See, e.g.*, TT 6/26/2026 AM at 68:18-71:14; TT 6/26/2026 PM at 56:14-16.  As the Supreme Court explained, "[a] defendant's ***dissimilar*** acts, independent from the acts upon which liability was premised, ***may not*** serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."  *State Farm*, 538 U.S. at 422-23.

**2.      *Disparity Between Harm And Requested Punitive Award***

As to the second *Gore* factor, the disparity between the harm suffered by Counterclaimants and any punitive award beyond a nominal amount is extreme. *See State Farm*, 538 U.S. at 426 (award must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered").  Here, Counterclaimants seek $90-125 million in punitive damages (***over double*** what they requested in the prior trial), but compensatory damages were neither sought nor awarded.  *Compare* TT 6/23/2026 PM at 54:2-7 *with* TT 9/23/2024 at 31:13-22 (seeking $35.6-71.2 million).  Given that Counterclaimants have suffered ***zero dollars*** in actual damages and failed to present sufficient evidence of any harm, the requested punitive award is improper.

**3.      *Difference Between Requested Punitive Award And Civil Penalty Under Cal. Civ. Code § 3344(a)***

As to the third *Gore* factor, California Civil Code § 3344, which in many respects is analogous to the common law misappropriation claim, provides a statutory penalty of $750 (or actual damages) where there is a violation.  *See* Cal. Civ. Code § 3344(a).  Thus, any punitive award above a nominal award is excessive and violates due process.

Accordingly, the Court should reduce the punitive damages award to $0 (or at most, $750).

-18-

### D.    Punitive Damages Are Equitable In This Case.

As MGA previously argued, punitive damages here are equitable.[8]  *See, e.g.*, Dkt. 1139.  When punitive damages are sought from an underlying award of equitable disgorgement, that is an equitable issue to be decided by the Court.  As the Court explained in its Tentative Equitable Issues Order: "Punitive damages are a mainstay of equity when 'a remedy is tethered to a wrongdoer's net unlawful profits, whatever the name[.]'"  Dkt. 1096-4 at 21-22 (citing *Liu v. SEC*, 591 U.S. 71, 80 (2020); *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946); *Proofpoint, Inc. v. Vade USA, Inc.*, 2024 WL 4003096, at *1 (9th Cir. Aug. 30, 2024)).[9]

In *Proofpoint*, the Ninth Circuit affirmed the district court's denial of the plaintiffs' request for a jury trial on exemplary damages in a trade secret misappropriation case, concluding that the Seventh Amendment right to a jury trial did not extend to exemplary damages where the sole relief awarded was "disgorgement of the defendant's profits."  2024 WL 4003096, at *1 (citing *Liu*, 591 U.S. at 80).  The Ninth Circuit further explained: "[T]he Seventh Amendment embraces all suits that are <u>not</u> in equity or admiralty jurisdiction. Thus the Seventh Amendment extends to a statutory claim only if that particular claim is legal in nature, which disgorgement is not."  *Id.* (citing *SEC v. Jarkesy*, 603 U.S. 109, 110 (2024)) (emphasis in original and internal citations omitted).  The Ninth Circuit concluded as follows:  "***[w]here, as here, an award for***

---

[8] However, the Court rejected this argument and found that punitive damages are legal.  Dkt. 1144.

[9] While the final Equitable Issues Order did not address the issue of whether punitive damages here are equitable because the Court separately ruled that the parties had consented to a jury trial on punitive damages under Rule 39 (Dkt. 1090 at 19), the Court correctly concluded in its Tentative Equitable Issues Order that punitive damages here are equitable.  *See* Dkt. 1096-4 at 21-22.

***unjust enrichment rests on disgorgement of the defendant's profits, [exemplary damages] is an equitable remedy***." *Id.* (emphasis added).

The *Proofpoint* opinion, though unpublished, was faithful to Supreme Court and Ninth Circuit precedent.[10] Not all punitive damages are legal remedies for the jury to decide just because they are monetary. *See Curtis v. Loether*, 415 U.S. 189, 196 (1974) (refusing to hold "that any award of monetary relief must necessarily be 'legal' relief"). The Seventh Amendment preserves the right to jury trial if it "existed under the English common law when the [Seventh] Amendment was adopted." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996) (citation omitted). And as the Ninth Circuit held, "actions for disgorgement of improper profits are equitable in nature" and were not "traditionally tried to a jury" in actions at law. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015).

Here, the disgorgement award (under both the Lanham Act and common law misappropriation) was equitable, and thus the jury's decision on that issue was purely advisory. Dkt. 1090 at 22. Counterclaimants agreed: "The OMG Girlz do not dispute that disgorgement of profits under the Lanham Act and for Common Law Misappropriation are equitable issues." Dkt. 1064 at 2:11-12. Although the Court previously ruled that the prior jury's award of punitive damages was binding due to the parties' consent under Federal Rule of Civil Procedure 39(c), such consent does not extend to the new trial.[11] *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 41 (9th Cir.

[10] *Proofpoint* is indicative of how the Ninth Circuit would almost certainly rule today. *See* 2 Callmann on Unfair Comp., Tr. & Mono. § 14:49 (4th ed.) ("The Ninth Circuit has held that because unjust enrichment is an equitable remedy, the Seventh Amendment does not require a jury trial on exemplary damages when disgorgement is awarded but actual damages are not.").

[11] MGA maintains that the parties did not consent to a binding jury trial for punitive damages, expressly or impliedly. *See, e.g.*, Dkt. 1096-1.

-20-

2022) (concluding that "Rule 39(c) does not require that [a] retrial on remand be a jury trial," and that there is no "free-floating right to a jury trial, as to a concededly equitable issue, that is untethered to [a] now-vacated verdict"). On retrial, MGA **did not** consent to a binding jury verdict on the equitable issue of punitive damages. Dkt. 1139 at 4. That continues to be MGA's position, and the Court acknowledged that "MGA does not waive its position that the Verdicts on equitable issues should be regarded as advisory." Dkt. 1215 at 3.

Accordingly, the Court should find that punitive damages here are an equitable question for the Court.

### E.    Punitive Damages Are Unavailable As A Matter Of Law For A Common Law Misappropriation of NIL Claim.

Separately, as MGA previously argued, punitive damages are unavailable for a common law misappropriation claim under California law.[12] *See, e.g.*, Dkt. 750 at 9-11 (MGA's objections to Jury Instructions).

"To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (citation and internal quotations omitted). "This California common law cause of action has been complemented by the enactment of Cal. Civ. Code § 3344. That section neither replaces nor codifies the common law cause of action." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691–92 (9th Cir. 1998).

To bring a statutory cause of action for misappropriation under section 3344, however, "a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must allege a knowing use by the

---

[12] The Court previously rejected this argument. *See* Dkt. 764 (Jury Instructions given).

defendant as well as a direct connection between the alleged use and the commercial purpose." *Downing*, 265 F.3d at 1001.  As this Court recognized in granting MGA's motion for summary judgment on Counterclaimants' statutory misappropriation claim, that claim is narrower than the common law claim because "the common law action more broadly encompasses the plaintiff's identity and is not limited to the appropriation of name or likeness."  Dkt. 326 at 25.

A plaintiff that can demonstrate a violation of section 3344 is allowed to recover additional damages.  Specifically, a plaintiff bringing a claim under section 3344 is expressly allowed under the statute to recover "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages."  This provision for disgorgement was not in the statute when it was originally enacted.  *See generally* Cal. Civil Code § 3344 (1971 ed.).  Section 3344, as originally drafted, permitted statutory damages, but did not allow for a disgorgement remedy.  *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (tracing the history of section 3344); Cal. Assem. Bill 826 (1971 Reg. Session) (codifying Section 3344(a)).  Section 3344(g), as originally drafted, provides that the "remedies provided for [under section 3344] are cumulative and shall be in addition to any others provided for by law."  Cal. Civil Code § 3344(g) (1971 ed.).[13]

Nevertheless, despite the remedies under section 3344 being "cumulative" and "in addition to any others provided for by law," in 1984 the California legislature amended section 3344.  The 1984 amendment modified section 3344(a) to "allow[] a plaintiff to recover punitive damages and the defendant's disgorged profits."  *Miller*, 159 Cal. App. 4th at 1002.  This

---

[13] Section 3344(g) has not been amended and currently provides "[t]he remedies provided for in [section 3344] are cumulative and shall be in addition to any others provided for by law."

amendment would not have been necessary if punitive damages were permitted for common law misappropriation claims.  In other words, since the remedies in section 3344 are "in addition to" any others provided by law, there would have been no reason for the legislature to amend section 3344 to include punitive damages if that remedy was already authorized under common law.  *Accord Newcombe*, 157 F.3d at 692 (noting section 3344(g) "specifically provides that the statutory remedies of the section are cumulative and in addition to any others provided by law"); *Brophy v. Almanzar*, 2019 WL 10837404, at *8 (C.D. Cal. Aug. 22, 2019) ("California Civil Code § 3344 provides a statutory remedy for commercial misappropriation, complementing the remedies available in the common law." (citing *Downing*, 265 F.3d at 1001)).

The legislative history of section 3344 and case law interpreting the damages available for a *statutory* misappropriation of likeness claim demonstrate that punitive damages cannot be available for a *common law* misappropriation claim.

**F.     Punitive Damages Are Unavailable Because Plaintiffs Sustained No Actual Damages.**

As MGA previously argued (*see, e.g.*, Dkt. 1121-1), punitive damages are unavailable where there are no compensatory damages based on harm.[14]  *See California v. Altus Fin. S.A.* (*Altus Fin.*), 540 F.3d 992, 1000 (9th Cir. 2008) ("Actual damages must be found as a predicate for exemplary damages." (quoting *Mother Cobb's Chicken Turnovers, Inc. v. Fox*, 10 Cal. 2d 203, 205 (1937)); *Sherman-Bey v. Marshall*, No. CV 09-06494 JGB (RZ), 2014 WL 3557202, at *3 (C.D. Cal. Mar. 14, 2014) ("[P]unitive damages are unavailable unless (1) the plaintiff also wins compensatory or nominal damages or (2) a statute authorizes a standalone award punitive damages.").

---

[14] The Court previously rejected this argument.  Dkt. 1133.

This makes sense.  Punitive damages "must bear a reasonable relationship and be proportionate to the actual harm suffered by the plaintiff (i.e., compensatory damages)."  *Bardis v. Oates*, 119 Cal. App. 4th 1, 17 (2004) (emphasis added).  Thus, California law is "well-established and quite clear" that where the jury finds zero compensatory damages the general rule precludes punitive damages.  *Altus Fin.*, 540 F.3d at 1001, 1004 (reversing portion of verdict awarding $700 million in punitive damages because jury found "$0" in compensatory or nominal damages, and concluding that the district court's equitable award of $241 million in restitution cannot serve "as a predicate for punitive damages" under such circumstances); *see also Kizer v. County. of San Mateo*, 53 Cal. 3d 139, 147 (1991) ("[A]ctual damages are an ***absolute predicate*** for an award of exemplary or punitive damages") (emphasis added); *Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.*, 48 Cal. 2d 71, 77 (1957) ("Punitive damages are not recoverable where compensatory damages are not."); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993) ("Punitive damages sometimes may be assessed . . . so long as actual, substantial damages have been awarded." (cleaned up)); *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 955 (C.D. Cal. 2011) ("[T]he California Supreme Court has made clear that compensatory damages and exemplary damages should share a direct relationship, such that a low compensatory award . . . cannot trigger the 'maximum possible amount in exemplary damages.'") (internal citations omitted) *rev'd in part on other grounds*, 705 F.3d 1108 (9th Cir. 2013).

Here, there were zero actual damages awarded for Counterclaimants' alleged harm in connection with their NIL claim.  The Court should thus find that punitive damages are unavailable as a matter of law.

///

///

-24-

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Motion should be granted and the Court should find, as a matter of law, that punitive damages cannot be awarded.


Dated:  June 29, 2026

UMBERG ZIPSER LLP


By  <u>/s/ Mark A. Finkelstein</u>
MARK A. FINKELSTEIN
*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

-25-

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Mark A. Finkelstein, counsel of record for Plaintiff and Counter-Defendants, certifies that this brief contains 5,298 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 29, 2026                    UMBERG ZIPSER LLP


                                         */s/ Mark A. Finkelstein*
                                         Mark A. Finkelstein

                                         *Attorneys for Plaintiff and Counter-Defendant MGA Entertainment Inc. and Counter-Defendant Isaac Larian*

Case No. 2:20-cv-11548-JVS-CTS
MGA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW