John R. Keville (*pro hac vice*)
jkeville@sheppard.com
Michelle C. Replogle (*pro hac vice*)
mreplogle@sheppard.com
Robert L. Green (*pro hac vice)*
rgreen@sheppard.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppard.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
845 Texas Avenue, 25th Floor
Houston, TX 77002
Telephone: (713) 431-7100

Valerie E. Alter (SBN: 239905)
valter@sheppard.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067

*Attorneys for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA*
*"TINY" HARRIS, OMG GIRLZ LLC, and*
*Counter-Claimants GRAND HUSTLE, LLC,*
*PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  2:20-cv-11548-JVS-AGR<br><br>**OMG GIRLZ' PROPOSED SPECIAL INSTRUCTIONS ON MGA'S FINANCIAL CONDITION** |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN, and DOES 1 – 10, inclusive,<br><br>Counter-Defendants. | Judge: Hon. James V. Selna<br><br>Complaint Filed:  December 20, 2020<br><br>Trial Date:  June 23, 2026 |

## I.      INTRODUCTION

OMG Girlz respectfully submit this supplemental proposed special instruction in direct response to the Court's invitation during opening statements. The instruction is needed to fill a specific gap in the Court's current final punitive damages instructions—which do not specify which financial metrics the jury may consider—and to address the Court's interim ruling that revenue is categorically irrelevant. California law is to the contrary.

Based on the authority cited therein, OMG Girlz submit the supplemental proposed special instruction on determining MGA's financial condition, including the usage of revenue, attached hereto as Exhibit A.

## II.      RELEVANT BACKGROUND

Following the OMG Girlz opening statement and prior to MGA's opening statement, the parties addressed the mention of revenue in OMG Girlz opening. The Court ruled:

> THE COURT: I'm going tell the jury about the rule here. If you can convince me that there's authority out there for the proposition that obstruction in obtaining net worth or profit revenues **permit a party to offer revenue figures in lieu**, I would be happy to see that.

Trial Tr. Day 1 Vol II at 56:1-5 (emphasis added).  When the jury returned to the court room, the Court proceeded to instruct the jury to disregard mention of revenue with the following:

> THE COURT: Ladies and gentlemen, during Mr. Keville's opening statement, he referred to revenues that MGA had earned. However, there's a different focus when you come to punitive damages. You'll be required to consider the wealth of the corporation and the individual. When that comes in, particularly for the corporation, revenues are not relevant. It's net profit that's relevant. **I'll clarify this in the closing instructions**, but for purposes of determining the financial

OMG GIRLZ' PROPOSED SPECIAL INSTRUCTION ON MGA'S FINANCIAL CONDITION

worth of a party or a corporation, revenues are irrelevant, and you'll be instructed to disregard revenues.

*Id.* at 56:19-57:4 (emphasis added).

## III.   THE JURY INSTRUCTIONS DO NOT ADDRESS THIS POINT

In the Court's Instruction No. 16, the Court directs the jury to consider MGA's financial condition, by stating in relevant part:

> (c) In view of that defendant's financial condition, what amount is necessary to punish ~~MGA~~ it or him and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

June 23, 2026 Courts Final Jury Instructions at No. 16.  However, the jury instructions presently do not define the terms, "defendant's financial condition" and "defendant's ability to pay."  Accordingly, for this reason in addition to clarifying the relevance of revenue when considering punitive damages, the OMG Girlz request a special instruction for the jury just as the Court indicated that it would.

Dated:  June 30, 2026                    SHEPPARD MULLIN RICHTER & HAMPTON LLP


By: /s/  *John R. Keville*
    John R. Keville

*Attorney for Defendants*
*CLIFFORD "T.I." HARRIS, TAMEKA "TINY" HARRIS, OMG GIRLZ LLC, and Counter-Claimants GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC*

OMG GIRLZ' PROPOSED SPECIAL INSTRUCTION ON MGA'S FINANCIAL CONDITION

# Exhibit A

## SUPPLEMENTAL PROPOSED SPECIAL INSTRUCTION TO COURT'S INSTRUCTION NO. 16

In determining the appropriate amount of punitive damages, you must consider MGA's and Mr. Larian's financial condition and ability to pay.[1]

In evaluating MGA's and Mr. Larian's financial condition and ability to pay, you are not limited to any single financial metric.[2] A party's financial condition is assessed holistically,[3] and you may consider any evidence bearing on MGA's ability to pay, including revenues, net profit, cashflow profit, borrowing capacity, cash on hand, available lines of credit, and any other indicators of financial

---

[1] *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 550 (N.D. Cal. 2012) (quoting *Baxter v. Peterson,* 150 Cal.App.4th 673, 680, 58 Cal.Rptr.3d 686 (2007) ("Ultimately, '[w]hat is required is evidence of the defendant's ability to pay the damage award.'").

[2] *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 549-50 (N.D. Cal. 2012) ("There is no single required method or standard for determining a defendant's financial condition when evaluating an award of punitive damages.").

[3] *Rufo v. Simpson*, 86 Cal. App. 4th 573, 625 (2001) ("Furthermore, the court that compiled a list of  cases in an attempt to discover a formula for determining whether a given percentage of net worth is excessive ultimately concluded there is no formula, and that each case must be decided on its own facts, considering all three factors and various indicators of wealth.").

strength or condition.[4] Net worth is one measure you may consider, but it is not the

only measure, and you are not required to rely on it exclusively or at all.[5]

---

[4] *Zaxis Wireless Commc'ns, Inc. v. Motor Sound Corp.*, 89 Cal. App. 4th 577, 581, (2001) ("Zaxis claims the evidence that Motor Sound had average annual revenues in excess of a quarter of a billion dollars, showed a net profit from residuals for telephone charges of approximately $7.5 million, and had a credit line of $50 million, is sufficient to sustain the punitive damage award. We agree.); *see also Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68, 83-84 (2012) (finding that the jury's finding that defendant had ability to pay $4.5 million punitive damages award was fully supported by the evidence, listing defendant's cashflow profit, net profit, CEO compensation, borrowing capacity, and cash on hand, even though defendant had a negative worth).

[5] *Zaxis Wireless Commc'ns, Inc. v. Motor Sound Corp.,* 89 Cal. App. 4th 577, 582, (2001) ("However, the [California] Supreme Court has expressly declined to adopt net worth as the standard for determining a defendant's ability to pay in any given situation."); *Rufo v. Simpson*, 86 Cal. App. 4th 573, 624-625 (2001) ) ("Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition. *Adams v. Murakami, supra*, 54 Cal. 3d at p. 116, fn. 7; *Lara v. Cadag, supra*, 13 Cal. App. 4th 1061, 1064-1065 & fn. 3 [net worth is subject to easy manipulation, and blind adherence to that or any single standard could lead to awards that fail to deter and punish, or deter and punish too much].)").