# Exhibit A

**SUPPLEMENTAL PROPOSED SPECIAL INSTRUCTION TO
COURT'S INSTRUCTION NO. 16**

In determining the appropriate amount of punitive damages, you must consider MGA's and Mr. Larian's financial condition and ability to pay.[1]

In evaluating MGA's and Mr. Larian's financial condition and ability to pay, you are not limited to any single financial metric.[2] A party's financial condition is assessed holistically,[3] and you may consider any evidence bearing on MGA's ability to pay, including revenues, net profit, cashflow profit, borrowing capacity, cash on hand, available lines of credit, and any other indicators of financial

---

[1] *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 550 (N.D. Cal. 2012) (quoting *Baxter v. Peterson,* 150 Cal.App.4th 673, 680, 58 Cal.Rptr.3d 686 (2007) ("Ultimately, '[w]hat is required is evidence of the defendant's ability to pay the damage award.'").

[2] *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 549-50 (N.D. Cal. 2012) ("There is no single required method or standard for determining a defendant's financial condition when evaluating an award of punitive damages.").

[3] *Rufo v. Simpson*, 86 Cal. App. 4th 573, 625 (2001) ("Furthermore, the court that compiled a list of cases in an attempt to discover a formula for determining whether a given percentage of net worth is excessive ultimately concluded there is no formula, and that each case must be decided on its own facts, considering all three factors and various indicators of wealth.").

2

strength or condition.[4] Net worth is one measure you may consider, but it is not the

only measure, and you are not required to rely on it exclusively or at all.[5]

---

[4] *Zaxis Wireless Commc'ns, Inc. v. Motor Sound Corp.*, 89 Cal. App. 4th 577, 581, (2001) ("Zaxis claims the evidence that Motor Sound had average annual revenues in excess of a quarter of a billion dollars, showed a net profit from residuals for telephone charges of approximately $7.5 million, and had a credit line of $50 million, is sufficient to sustain the punitive damage award. We agree.); *see also Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68, 83-84 (2012) (finding that the jury's finding that defendant had ability to pay $4.5 million punitive damages award was fully supported by the evidence, listing defendant's cashflow profit, net profit, CEO compensation, borrowing capacity, and cash on hand, even though defendant had a negative worth).

[5] *Zaxis Wireless Commc'ns, Inc. v. Motor Sound Corp.,* 89 Cal. App. 4th 577, 582, (2001) ("However, the [California] Supreme Court has expressly declined to adopt net worth as the standard for determining a defendant's ability to pay in any given situation."); *Rufo v. Simpson*, 86 Cal. App. 4th 573, 624-625 (2001) ) ("Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition. *Adams v. Murakami, supra*, 54 Cal. 3d at p. 116, fn. 7; *Lara v. Cadag, supra*, 13 Cal. App. 4th 1061, 1064-1065 & fn. 3 [net worth is subject to easy manipulation, and blind adherence to that or any single standard could lead to awards that fail to deter and punish, or deter and punish too much].)").