Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Ellen S. Kim (SBN 329348)
ekim@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment Inc., and Counter-Defendant Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MGA ENTERTAINMENT, INC., a California corporation,

Plaintiff,

vs.

CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,

Defendants,

GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC and OMG GIRLZ LLC,

Counter-Claimants,

vs.

MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,

Counter-Defendants.

Case No. 2:20-cv-11548-JVS-CTS

**MGA'S OBJECTIONS TO OMG GIRLZ'S [SECOND PROPOSED] AMENDED FINAL JUDGMENT (DKT. 1322)**

The OMG Girlz's [Second Proposed] Amended Judgment includes the following language (hereinafter, the "Proposed Injunction"):

> For a period of three years, MGA is enjoined from manufacturing, distributing, and selling the 15 infringing OMG Dolls as well as any other doll that is no more than colorably different from any of the 15 infringing dolls, and is ordered to cease MGA's sales of any products featuring any of the 15 infringing OMG Dolls.

Dkt. 1322 at 5:1-5.

MGA objects to the Proposed Injunction for three reasons.

**First**, the proposed clause barring sales of any products "featuring any of the 15 infringing OMG Dolls" is improper. In its November 20, 2026 Order, the Court considered an injunction that would prohibit MGA "from manufacturing, distributing, and selling the 15 infringing OMG Dolls as well as any other doll that is no more than colorably different from any of the 15 infringing dolls." Dkt. 1321 at 5. The Court instructed the OMG Girlz to file a proposed amended final judgment "consistent with" that Order. *Id.* at 10. Instead, the OMG Girlz have included proposed language that seeks to greatly expand the injunction by also enjoining MGA from selling "any products featuring any of the 15 infringing OMG Dolls." Not only is that language absent from the Court's Order, but it is also absent from the proposed order that the OMG Girlz submitted with its Rule 59 motion (Dkt. 1295-9). Because this language was not Ordered by the Court, or even previously requested by the OMG Girlz, it should not be included in the final Judgment.

Moreover, the word "featuring" in the Proposed Injunction is vague and unspecific. Rule 65 requires injunctions to "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). Thus, injunctive relief should be "tailored to eliminate

only the specific harm alleged," *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992), and be no more burdensome to the defendant than necessary "to redress the complaining parties," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). In other words, an injunction "must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiff[ ], rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal quotation marks omitted); *see E&J Gallo*, 967 F.2d at 1297 ("An overbroad injunction is an abuse of discretion."). The "featuring" language is overbroad, creates uncertainty, and fails to provide proper notice to MGA, and thus runs afoul of Rule 65.

In addition, the OMG Girlz's Proposed Injunction (which goes beyond the Court's Order and its own prior proposed language) could broadly be read to force MGA to remove illustrations of the 15 infringing dolls, as well as animated characters associated with the 15 dolls, from online sources and entertainment channels, including movies, if any products "feature" those online sources. But there was ***no evidence*** that consumers were confused by such illustrations and animated characters, or that those animated characters share the OMG Girlz's likeness. *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (holding that "[c]ourts should not enjoin conduct that has not been found to violate any law," and "[i]njunctive relief under the Lanham Act must be narrowly tailored to the scope of the issues tried in the case"). Indeed, those questions were never asked of the September 2024 jury, as that jury found only that the 15 physical dolls themselves, when viewed in connection with the "O.M.G." packaging, infringed the OMG Girlz's rights. *See* Dkt. 1009 at 2.

Furthermore, by potentially prohibiting online content and animated movies, the Proposed Injunction would reach conduct that is protected by the First Amendment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks to restrain the defendants

from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation."); *Traffic School.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 830-31 (9th Cir. 2011) (finding that a permanent injunction that prohibited content that is "commingled with truthful commercial speech" raised First Amendment concerns).

The OMG Girlz's added language regarding "any products featuring any of the 15 infringing OMG Dolls" also would seemingly enjoin MGA from selling certain dolls in their packaging – even where this Court or the jury specifically found the doll/packaging ***does not infringe*** on the OMG Girlz's claimed trade dress or likeness. For instance, the jury ruled that MGA's Ferocious doll, including its packaging, was ***non-infringing***. Dkt. 1009 at 7. But because the packaging arguably "features" two illustrations of infringing dolls on the back, the Proposed Injunction presumably would prevent MGA from continuing to sell Ferocious:




(Front)




(Back)

Dkt. 1109-2, ¶ 2.

It is entirely improper for the OMG Girlz to seek to enjoin MGA from selling such dolls in their boxes when ***MGA prevailed*** as to those dolls/boxes in its declaratory judgment claim. *See Skydive Ariz., Inc.*, 673 F.3d at 1116. The OMG Girlz already conceded such an injunction goes too far: "The OMG Girlz are *not requesting* that MGA cease manufacturing and sale of dolls that were *not* found to infringe the trade dress or right of publicity of the OMG Girlz." Dkt. 1303 at 13:13-15 (first emphasis added, second emphasis in original).

**<u>Second</u>**, the Court should not enjoin MGA from selling dolls that are no more than "colorably different" from the 15 dolls. Indeed, every L.O.L. Surprise! O.M.G. doll shares the exact same sculpt. *See* Trial Tr. ("TT") 9/17/2024 AM at 29:13; TT 9/17/2024 PM at 38:2-5. Thus, any distinction between the dolls is based predominantly on their colors (of their hair, skin, eyes, etc.) and fashion. Adopting the "colorably different" language into the final Amended Judgment would create confusion and uncertainty and would almost certainly lead to repeated visits back to this Court to obtain a ruling regarding whether a particular doll is "no more than colorably different" from an infringing doll. For example, after the Court dismissed over 40 dolls at summary judgment, ***both sides*** moved for reconsideration, arguing that the Court should have dismissed additional or fewer dolls based on the Court's same reasoned criteria. *See* Dkts. 324, 325.

Because "[i]njunctive relief should be narrowly tailored to fit specific legal violations," an injunction "should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (internal citations omitted). The Court recognized the problems of the "colorably different" language in its Tentative Order regarding the OMG Girlz's motion to amend the judgment:

> As an initial matter, the Court declines to issue a permanent injunction for 'any other doll that is no more colorably different' ***because this language***

> ***extends to non-infringing conduct.*** *See GS Holistic, LLC v. Abdulqawi*, No. 1:23-CV-00286-KJM-CSK, 2025 WL 2717508, at *4 (E.D. Cal. Sept. 24, 2025) ('[t]he scope of relief plaintiff seeks goes well beyond the infringing conduct alleged in the complaint[.] [...] [A] single sale of a counterfeit object cannot support the imposition of a permanent injunction so broad in scope and applicability.')

Dkt. 1317-1, Ex. 1 ("Tentative Order") at 8 (emphasis added).

**Third**, because the Court found an injunction appropriate based on MGA's post-verdict sales (Dkt. 1321 at 8), the injunction should be limited only to those dolls for which there were post-verdict sales in 2025 or 2026. *See* Tentative Order, at 10 ("The sales are attributable to four of the infringing dolls; there were no post-verdict sales for the remaining eleven infringing dolls. ***There is clearly no irreparable harm and no error as to those eleven dolls***.") (internal citations omitted and emphasis added).

Here, there were no recorded sales in the United States of the following dolls between May 1, 2024 and the present: Runway Diva, Miss Divine, Shadow, Miss Independent, Metal Chick, and Punk Grrrl. Dkt. 1317-2 at 5:7-9. Further, there were no recorded sales in the United States of the following dolls between January 1, 2025 and the present: Runway Diva, Miss Divine, Shadow, Miss Independent, Metal Chick, Punk Grrrl, Downtown B.B., Bhad Gurl, Chillax, and Prism. *Id.* at 5:10-13.

**Finally**, the Court should clarify that the injunction is limited to the United States. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023) (holding that the Lanham Act is "not extraterritorial"); *LegalForce RAPC Worldwide, P.C. v. Legalforce, Inc.*, 124 F.4th 1122, 1127 (9th Cir. 2024) (the Lanham Act "cannot apply" to services outside of the United States).

Accordingly, and while MGA maintains that no injunction should be entered, any injunction in the Amended Judgment should be limited as follows:

> For a period of three years, MGA is enjoined from manufacturing, distributing, and selling the following L.O.L. Surprise! O.M.G. dolls in the United States: Virtuelle, City Babe, Roller Chick, Honeylicious, and Miss Glam.

In the alternative, and at the very least, the Court should limit the injunction to what was set forth in its November 20, 2026 Order, and clarify the scope is limited to the United States:

> For a period of three years, MGA is enjoined from manufacturing, distributing, and selling the 15 infringing OMG Dolls as well as any other doll that is no more than colorably different from any of the 15 infringing dolls in the United States.

MGA is submitting concurrently herewith a [Proposed] Final Amended Judgment that includes this language.

Dated: November 25, 2026

UMBERG ZIPSER LLP

*/s/ Mark A. Finkelstein*

Mark A. Finkelstein
Attorneys for Plaintiff and Counter-Defendant MGA Entertainment Inc., and Counter-Defendant Isaac Larian